BISHOP LONDON & DODDS
Alice London (Texas Bar No. 15292000)
(alondon@bishoplondon.com)
3701 Bee Cave Road, Suite 200
Austin, Texas 78746
Telephone: 512-479-5900
Facsimile: 512-479-5934

Attorneys for Plaintiff, Jane Peddicord

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: FACEBOOK INTERNET TRACKING LITIGATION | No: 5:12-md-02314-EJD |
| JANE PEDDICORD Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC<br><br>DOES 1 THROUGH 10,<br><br>Defendants | No: 5:12 –CV-00670-EJD |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff, on behalf of herself and all others similarly situated, alleges and avers as follows:

# INTRODUCTION

1. This class action arises out of improper and unlawful actions by the Defendants, who participated in a scheme to intercept, endeavor to intercept, or procure the Plaintiff and the Class members' personal information as prohibited by law.

2. Plaintiff and the Class members are individuals who subscribe to the online social media site Facebook, Inc. ("Facebook").

3. Facebook maintains personal information pertaining to each individual as well as monitors the individual online habits of its users keeping track of websites they visit.

4. Upon obtaining personal information and/or wire or electronic communications of the Plaintiff and the Class members, Facebook conspired to use said information for target marketing which pertained to the Plaintiff and the individual Class members, over the Internet.

5. Such conduct was committed in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 as amended by the Electronic Communication Privacy Act of 1986, 18 U.S.C. § 2511, *et seq.* (the "Wiretap Act").

# PARTIES

## Plaintiffs

6. Plaintiff, Jane Peddicord is an individual who resides in Austin, Texas. Upon information and belief, Defendants intercepted, collected and stored personal information from Plaintiff.

## Defendants

7. Defendant is a company organized and existing under the laws of Delaware with its principal place of business at 1601 S. California Ave. Palo Alto, California 94304. Upon

information and belief, Facebook owns and/or operates websites including www.facebook.com, which offer online social interaction and picture storage. Facebook is registered with the Texas Secretary of State to do business in Texas and may be served through its registered agent for service, CSC dba CSC-Layers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

8. Defendants Does 1 through 10 are the remaining directors, employees, agents, or contractors of Facebook that are yet to be named and whose identity will become known through discovery and/or by requests made by Plaintiff or the members of the plaintiff class, after which such remaining defendants will be added as individual defendants.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action and all the defendants pursuant to 28 U.S.C. § 1331 in that this action arises under statutes of the United States, specifically violations of the "Wiretap Act".

10. Additionally, this Court has personal jurisdiction over Defendant Facebook pursuant to the Texas long-arm statute, § 17.042 TXCPRC., since Facebook transacted business and made contracts in Texas directly through the website www.facebook.com, violated the law within the state of Texas, and otherwise has sufficient minimum contacts with the state of Texas as more particularly described below.

11. Defendant Facebook has sufficient minimum contacts such that the maintenance of this suit does not offend traditional notions of fair play and substantial justice. Facebook has voluntarily submitted itself to the jurisdiction of this Court and jurisdiction is proper because, among other things:

   a. Facebook directly and purposefully obtained, misappropriated and used personal

information and/or information relating to wire or electronic communications of individuals living in Texas, including the Plaintiff and the individual Class members;

b. Facebook committed tortuous acts within this state by misappropriating personal information and/or wire or electronic communications of citizens of Texas and otherwise violating the Wiretap Act and 42 U.S.C. § 1983;

c. Plaintiff's and the Class members' causes of action directly arise from Facebook's commission of tortious and unlawful acts in Texas.

d. Plaintiff's and the Class members' causes of action directly arise from Facebook's transaction of business in Texas;

e. Facebook should reasonably anticipate being haled into court in Texas to answer for its unlawful acts. Texas has a strong interest in providing a forum for its residents aggrieved by violations of the law.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(c) because a substantial amount of the acts and omissions giving rise to this cause of action occurred in the Western District of Texas.

## GENERAL ALLEGATIONS

13. Defendant Facebook operates a website, www.facebook.com, which is primarily a social networking site.

14. In conducting its business, Facebook aggregates data on individual members of the public and uses that information in furtherance of marketing and advertising.

15. Facebook tracks, collects and stores wire or electronic communications of its users, including but not limited to their Internet browsing history.

16. Leading up to September 23, 2011, Facebook tracked, collected and stored its users' wire or electronic communications, including but not limited to portions of their Internet browsing history even when the users were not logged-in to Facebook.

17. Plaintiff and Class members did not give consent or otherwise authorize Facebook to intercept, track, collect and store her wire or electronic communications, including but not limited to her Internet browsing history when not logged-in to Facebook.

18. The electronic information procured by Facebook while Plaintiff and Class members were not logged-in to Facebook contained personal information and/or wire or electronic communications of the Plaintiff and Class members.

19. At all times material, Defendants knew, or reasonably should have known, that their actions violated clearly established statutory rights of the Plaintiff and the Class members.

## CLASS ACTION ALLEGATIONS

20. This action is properly brought as a plaintiff class action pursuant to Fed. R. Civ. P. 23(b)(3). Plaintiff brings this action on her own behalf and all others similarly situated, as representative of the following class and subclass:

> All individuals in the United States who subscribe to Facebook and whose electronic internet information was intercepted by Facebook when the individuals were not logged-in to Facebook.

Excluded from the Class are (1) any individual who opts out of the class and/or (2) any individual defendant and any member of the immediate family of any individual defendant.

21. The particular members of the Class are capable of being described without difficult managerial or administrative problems. The members of the Class are readily identifiable from the information and records in the possession or control of the defendants.

22. The Class members are so numerous that individual joinder of all members is impractical. This allegation is based upon information and belief that Defendants intercepted the personal information of millions of Facebook users of which there are more than 150 million in the United States.

23. There are questions of law and fact common to the Class, which questions predominate over any questions affecting only individual members of the Class, and, in fact, the wrongs suffered and remedies sought by Plaintiff and the other members of the Class are premised upon an unlawful scheme participated in by all defendants. The principal common issues include, but are certainly not limited to the following:

    a.    The nature and extent of the Defendants' participation in intercepting the and/or wire or electronic communications of Class members;

    b.    Whether or not the interception of wire or electronic communications was intentional;

    c.    Whether or not Defendants should be enjoined from intercepting any wire or electronic communications without the consent of its users;

    d.    Whether the actions taken by Defendants in intercepting the wire or electronic communications of Class members violate the Wiretap Act;

    e.    The nature and extent to which the wire or electronic communications of Class members was unlawfully intercepted, tracked, stored or used;

    f.    The nature and extent to which Defendants were unjustly enriched by their actions;

    g.    The nature and extent to which Defendants intruded upon the seclusion of Class members

    h.    The nature and extent to which Defendants committed a trespass to Class

members' personal property

    i. The nature and extent of the Class members actual damages;

    j. The nature and extent of all statutory penalties or damages for which the Defendants are liable to the Class members; and

    k. Whether punitive damages are appropriate.

24. Plaintiff's claims are typical of those of the Class and are based on the same legal and factual theories.

25. Plaintiff will fairly and adequately represent and protect the interests of the Class. She has suffered injury in her own capacity from the practices complained of and is ready, willing and able to serve as class representative. Moreover, Plaintiff's counsel is experienced in handling class actions and actions involving unlawful commercial practices. Neither Plaintiff nor her counsel has any interest that might cause them not to vigorously pursue this action.

26. Certification of a plaintiff class under Fed. R. Civ. P. 23(b)(3) is appropriate in that Plaintiff and the Class members seek monetary damages, common questions predominate over any individual questions, and a plaintiff class action is superior for the fair and efficient adjudication of this controversy. A plaintiff class action will cause an orderly and expeditious administration of the Class members' claims and economies of time, effort and expense will be fostered and uniformity of decisions will be ensured. Moreover, the individual Class members are unlikely to be aware of their rights and not in a position (either through experience or financially) to commence individual litigation against the likes of the defendants.

27. Alternatively, certification of a plaintiff class under Fed. R. Civ. P. 23(b)(1) is

appropriate in that inconsistent or varying adjudications with respect to individual members of the Class would establish incompatible standards of conduct for the defendants or adjudications with respect to individual members of the Class as a practical matter would be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interests.

## COUNT I
### (Violation of the Wiretap Act)

28. Plaintiff and Class members incorporate all preceding paragraphs as though fully set forth herein.

29. As described herein, Facebook intentionally intercepted and collected wire or electronic communications from its users.

30. At times, Facebook intercepted and collected information from its users without their consent while the users were not logged-in to Facebook.

31. The transmission of data between Plaintiff's computer and the Internet constitute "electronic communication" within the meaning of 18 U.S.C. § 2510(12).

32. Facebook's data collection practices as described herein constitute "interceptions" within the meaning of § 2510(4).

33. As a direct and proximate result of such unlawful conduct, Defendants violated 18 U.S.C. § 2511 in that the Defendants:

    a. Intentionally intercepted, endeavored to intercept, or procured another person to intercept wire and/or electronic communications of the Plaintiff and Class members;

  b. Upon belief predicated upon further discovery, intentionally disclosed or endeavored to disclose to another person the contents of Plaintiff's and Class members' wire or electronic communications, knowing or having reason to know that the information was obtained through the interception of wire or electronic communications in violation of 18 U.S.C. §2511(1)(a).

  c. Upon belief predicated upon further discovery, intentionally used or endeavored to use the contents of Plaintiff's and Class members' wire or electronic communications, knowing or having reason to know that the information through the interception of wire or electronic communications in violation of 18 U.S.C. §2511(1)(a).

34. Facebook's actions described in ¶33 occurred without the consent of Plaintiff or Class members and violated Facebook's own Privacy Policy per the following promises it made to users:

  a. "We receive data whenever you visit a….website that uses Facebook Platform or visit a site with a Facebook feature….This may include the date and time you visit the site; the web address, or URL, you're on; technical information about the IP address, browser and the operating system you use; and, if you are logged in to Facebook, your User ID." Facebook Data Use Policy, available at http://www.facebook.com/full_data_use_policy as of October 4, 2011 and last updated September 23, 2011.

  b. "Does Facebook use cookies if I don't have an account or have logged out of my account? When you log out of Facebook, we remove the cookies that identify your particular account, but we do use other cookies primarily to help keep you and others on Facebook safe and secure. For example, we use cookies to identify and disable the accounts of spammers and phishers, to prevent people who are underage from signing up with a false birth date, to help you recover your account if you lose access to it or it's compromised, to power our opt-in security features like Login Notifications and Login Approvals, and to help identify public computers so that we can discourage people from using "Keep me logged in." We may also use anonymized or aggregate information to improve our products. We also use cookies if you don't have a Facebook account, but

        have visited facebook.com. Again, these cookies help us protect Facebook and the people who use it from malicious activity. For example, they help us detect and prevent denial-of-service attacks and the mass creation of fake accounts. We do not use these cookies to create a profile of your browsing behavior on third-party sites. *Facebook Frequently Asked Questions*, available at permalink: https://www.facebook.com/help/?faq=239530772765713#Does-Facebook-use-cookies-if-I-don't-have-an-account-or-have-logged-out-of-my-account? on October 4, 2011; and

    c.    "What information does Facebook receive when I visit a site with the Like button or another social plugin?..... If you're logged out or don't have a Facebook account and visit a website with the Like button or another social plugin, your browser sends us a more limited set of information. For example, because you're not logged in to Facebook, we don't receive your user ID." *Facebook Frequently Asked Questions*, available at permalink: https://www.facebook.com/help/?faq=293506123997323#What-information-does-Facebook-receive-when-I-visit-a-site-with-the-Like-button-or-another-social-plugin? on October 4, 2011.

35.    Facebook's actions described in ¶33 occurred without the consent of Facebook-affiliated websites, including, for example, the websites for the New York Times and Washington Post newspapers, in that:

    a.    The interception and collection of information described in this paragraph caused the New York Times to violate its own Privacy Policy for its websites, including www.nytimes.com, which informs readers:

        "If you have registered online for one of our sites, The New York Times will not sell, rent, swap or authorize any third party to use your e-mail address without your permission. This also applies to any information that personally identifies you, except as noted immediately below;" and

        "NYTimes.com will not share personal information about you as an individual to third parties without your consent."

        http://www.nytimes.com/content/help/rights/privacy/highlights/privacy-highlights.html

    b.    The interception and collection of information described in this paragraph

caused the Washington Post to violate its own Privacy Policy for its websites, including www.washingtonpost.com, which informs readers:

> **Do other companies or people have access to personally identifiable information I provide to washingtonpost.com?**
>
> When you are on an area of washingtonpost.com and are asked for personally identifiable information, you are providing that information to The Washington Post Company, its divisions or affiliates, or vendors providing contractual services for washingtonpost.com (such as hosting vendors and list managers). If personally identifiable information is being provided to and/or maintained by any company other than these, our policy is that we will not transfer that personally identifiable information unless notice is given prior to transfer. If you do not want your information to be shared, you can choose not to allow the transfer by not using that particular service or by expressing this preference, if requested.
>
> http://www.washingtonpost.com/wp-srv/interact/longterm/talk/members.htm

36. Regardless of the consent alleged by Facebook from Plaintiff or the Facebook-affiliated websites, such consent was not valid because Facebook's actions described herein were for the purpose of committing tortuous acts in violation of the laws of the United States or of any State. In taking its actions, Facebook committed the following tortious acts alleged in this petition:

   a. Intrusion upon Plaintiff's and Class members' seclusion;

   b. Trespass to personal property;

37. As a result of the above violations and pursuant to 18 U.S.C. § 2520, Defendants are liable to Plaintiff and the Class members in the sum of statutory damages consisting of the greater of $100 for each day each of the Class members' data was wrongfully obtained or $10,000.00 per violation; injunctive and declaratory relief; punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by Facebook in the future, and a reasonable attorney's fee and other litigation costs

reasonable.

## COUNT II
### (Unjust Enrichment)

37. Plaintiff and Class members incorporate all preceding paragraphs as though fully set forth herein.

38. Plaintiff and Class members conferred a benefit on Defendants without Plaintiff's or Class members' consent, namely access to her wire or electronic communications over the Internet.

39. Upon information and belief, Defendants realized such benefits through either sales to third-parties or greater knowledge of its own users' behavior without their consent.

40. Acceptance and retention of such benefit without Plaintiff's or Class members' consent is unjust and inequitable.

## COUNT III
### (Intrusion Upon Seclusion)

41. Plaintiff and Class members incorporate all preceding paragraphs as though fully set forth herein.

42. In intercepting Plaintiff's and Class members' wire and electronic communications on the Internet, Defendants intentionally intruded upon their solitude or seclusion.

43. Plaintiff and Class members did not consent to Defendants' intrusion.

44. Defendants' intentional intrusion on Plaintiff's and Class members' solitude or seclusion without their consent would be highly offensive to a reasonable person.

## COUNT IV
### (Trespass to Personal Property)

45. Plaintiff and Class members incorporate all preceding paragraphs as though set forth herein.

46. Defendants, intentionally and without consent or other legal justification, tracked Plaintiff's and Class members' activity while the Plaintiff and Class members were logged-off of the website Facebook.com, and, in the process, connected Plaintiff's and Class members' personally identifiable information to their specific actions on the Internet.

47. Defendants, intentionally and without consent or other legal justification, placed cookies on Plaintiff's and Class members' computers which tracked her activity while logged-off of Facebook.

48. Defendants' intentional and unjustified placing of a cookie designed to track Plaintiff's and Class members' Internet activities while logged-off of Facebook and actual tracking of Plaintiff's and Class members' activities interfered with Plaintiff's and Class members' use of the following personal property owned by the Plaintiff and Class members:

    a. Plaintiff's and Class members' computer; and

    b. Plaintiff's and Class members' personally identifiable information.

## PRAYER FOR DAMAGES

**WHEREFORE**, Plaintiff, on behalf of herself and all members of the Class respectfully prays for judgment against the defendants as follows:

a) For an order certifying that this action may be maintained as a class action under Fed. R. Civ. P. 23(b)(3) or, in the alternative, Fed. R. Civ. P. 23(b)(1) and appointing Plaintiff and her counsel, to represent the Class and directing that reasonable notice of this action be given to all other members of the Class as necessary and appropriate;

b) For a declaration that the Defendants' actions violated the 18 U.S.C. 2511 *et seq.*;

c) For a declaration that the Defendants, through their actions and misconduct as alleged

above, have been unjustly enriched and an order that Defendants disgorge such unlawful gains and proceeds;

d) For a declaration that the Defendants, through their actions and misconduct as alleged above, have intruded upon Plaintiff's and Class members' seclusion and an order assessing damages against Defendants for such violations;

e) For a declaration that the Defendants, through their actions and misconduct as alleged above, have committed trespass upon the personal property of Plaintiff and Class members and an order assessing damages against the Defendants for violations of Plaintiff's and Class members' personal property rights;

f) For all actual damages, statutory damages, penalties, and remedies available for the defendants' violations of 18 U.S.C. 2511 *et seq.*;

g) That judgment be entered against Defendants for statutory damages pursuant to 18 U.S.C. §2520(c)(2)(B);

h) That judgment be entered against Defendants for statutory damages pursuant to 18 U.S.C. §2520(b)(2);

i) That Plaintiff and the Class members recover pre-judgment and post-judgment interest as permitted by law;

j) For an award to Plaintiff and the Class members of their reasonable attorneys fees and other litigation costs reasonably incurred pursuant to 18 U.S.C. §2520(b)(3);

k) That the court enter an order granting Plaintiff and the Class members a preliminary and permanent injunction restraining and enjoining Defendants from any act to intercept electronic information from its users when they are not logged in and from disclosing any of the information already acquired on its servers;

1)  That the Court grants such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands that all issues so triable in this Complaint be tried to a jury.

Dated this ___3___ day of __April__, 2012.

Respectfully submitted,

**BISHOP LONDON & DODDS, PC**

_____
Alice London
Texas State Bar No. 15292000
Daniel W. Bishop, II
State Bar No. 02348500

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document, together with the First Amended Class Action Complaint of Jane Peddicord was served on all counsel who are deemed to have consented to electronic service in each of the cases captioned Local Rule CV 5(a).

_____
Alice London