COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
MATTHEW D. BROWN (196972)
(brownmd@cooley.com)
JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:     (415) 693-2000
Facsimile:      (415) 693-2222

Attorneys for Defendant
FACEBOOK, INC.

(Additional counsel on signature page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In Re FACEBOOK INTERNET TRACKING LITIGATION | No. 5:12-md-02314-EJD<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:         June 29, 2012<br>Time:        2:00 p.m.<br>Judge:      Hon. Edward J. Davila<br>Trial Date: None Set |

Plaintiffs Perrin Davis, Cynthia Quinn, Brian Lentz, and Matthew Vickery (collectively, "Plaintiffs") and Defendant Facebook, Inc. ("Facebook") (Plaintiffs and Facebook collectively, the "Parties") jointly submit this Joint Case Management Statement pursuant to the Court's April 3, 2012 Order Granting Plaintiffs' Motion to Consolidate and Appoint Interim Class Counsel, the Standing Order for All Judges of the Northern District of California dated July 1, 2011, and Civil Local Rule 16-9.

## 1. JURISDICTION AND SERVICE

This Court has subject matter jurisdiction over the federal claims asserted in the Related Actions under 28 U.S.C. §§ 1331 and 1332. This Court has personal jurisdiction over Defendant Facebook, Inc. ("Facebook") because it is headquartered in the State of California. Venue is proper by agreement under 28 U.S.C. § 1391(b) and through assignment from the Judicial Panel on Multidistrict Litigation. Facebook is the only named Defendant in any of the Related Actions and was served with a summons and complaint, or agreed to waive service pursuant to Federal Rule of Civil Procedure 4(d), in all cases except *Maguire v. Facebook, Inc.*, No. 5:12-cv-00807-EJD.

## 2. STATEMENT OF FACTS AND FACTUAL DISPUTES

### a. Plaintiffs' Statement of Facts

Defendant Facebook operates the world's largest social networking web site, with more than 800 million users globally, and 150 million users in the United States. Although Facebook members are not required to pay a monetary subscription fee, membership is conditioned upon users providing sensitive personal information to Facebook upon registration, including name, birth date, gender and email address. More importantly, use of Facebook is conditioned upon the user accepting numerous Facebook cookies on the user's computer which track browsing history. This information, including the member's unique Facebook identifier, is then harvested by Facebook from the user's computer. Facebook uses the information to generate approximately $4 billion of revenue annually for the company.

Facebook installs two types of cookies on members' computers: session cookies, and tracking cookies. According to the Electronic Frontier Foundation in San Francisco:

> ***Session cookies*** *are set when you log into Facebook and they include data like your unique Facebook user ID. They are directly associated with your Facebook account. When you log out of Facebook, the session cookies are supposed to be deleted.*
>
> ***Tracking cookies*** *- also known as persistent cookies - don't expire when you leave your Facebook account. Facebook sets one tracking cookie known as 'datr' when you visit Facebook.com, regardless of whether or not you actually have an*

> *account. This cookie sends data back to Facebook every time you make a request of Facebook.com, such as when you load a page with an embedded Facebook 'like' button. This tracking takes place regardless of whether you ever interact with a Facebook 'like' button. In effect, Facebook is getting details of where you go on the Internet.*
>
> *When you leave Facebook <u>without</u> logging out and then browse the web, you have both tracking cookies and session cookies. Under those circumstances, Facebook knows whenever you load a page with embedded content from Facebook (like a Facebook 'like' button) and also can easily connect that data back to your individual Facebook profile.*

Use of Facebook is governed by the Statement of Rights and Responsibilities and a number of other documents and policies, including a Data Use Policy and a Privacy Policy. Although the governing documents make clear that users consent to Facebook installing cookies on the user's computer, and although the users consent to these cookies tracking and transmitting to Facebook data regarding each user's web browsing, such consent was limited to internet usage while the user is logged on to Facebook. Users do not consent to having records of their web browsing tracked after logging out of Facebook, because the session cookies were supposed to be deleted. On Facebook's online help center, Facebook clearly and unambiguously emphasized, "When you log out of Facebook, we remove the cookies that identify your particular account."

Sometime in 2010, an Australian technology writer, Nik Cubrilovic, discovered that the session cookies Facebook placed on its users' computers were still active even after users had logged off of Facebook. Mr. Cubrilovic warned Facebook of this problem on at least two occasions starting in November, 2010, but Facebook failed to take corrective action and continued to collect data from its millions of active cookies worldwide.

Mr. Cubrilovic went public with his research on September 25, 2011. The next day, on September 26, 2011, Facebook publicly admitted that its session cookies continued to remain even after logoff, and agreed to fix the "bug" as the company called it. The next day, the Irish Government announced an audit of Facebook under EU privacy rules (Facebook's primary

European data center is in Ireland).  Two days letter, U.S. Representatives Edward Markey and Joe Barton, Co-Chairman of the Congressional Bi-Partisan Privacy Caucus, sent a letter to the Federal Trade Commission demanding to know what action the FTC was taking under Section 5 of the FTC Act.

The following day, on September 29, 2011, the Electronic Privacy Information Center, joined by the American Civil Liberties Union, the American Library Association, the Bill of Rights Defense Committee, the Center for Digital Democracy, the Center for Media and Democracy, Consumer Action, Consumer Watchdog, Privacy Activism, and Privacy Times also recommended that the FTC investigate.  In their letter to the FTC, the group added that Facebook might not have actually fixed the problem as claimed.

Finally, despite Facebook's claim that it fixed the "bug," researchers are uncovering yet more methods whereby Facebook is able to track its users even after logout.  For example, a researcher at Stanford University has discovered instances in which Facebook was setting tracking cookies on browsers of people when they visited sites other than Facebook.com. These tracking cookies were being set when individuals visited certain Facebook Connect sites.  As a result, people who never interacted with a Facebook.com widget, and who never visited Facebook.com, were still facing tracking by Facebook cookies.  The EFF notes in the October 11, 2011 report that Facebook now can track web browsing history without cookies:

> *Facebook is able to collect data about your browser – including your IP address and a range of facts about your browser – without ever installing a cookie. They can use this data to build a record of every time you load a page with embedded Facebook content. They keep this data for 90 days and then presumably discard or otherwise anonymize it. That's a far cry from being able to shield one's reading habits from Facebook.*

The Plaintiffs believe that the principal factual issues in dispute include but are not limited to:

    (a)    Whether or not Defendant Facebook's Terms of Use and other governing documents and policies permitted Facebook to track the internet use of its members post-

logout;

(b) Whether or not Defendant Facebook tracked the internet use of its members post-logout;

(c) Whether or not Facebook members consented to being tracked post-logout;

(d) Whether or not Facebook members sustained compensable harm under relevant law as a result of Facebook's actions;

(e) The methods by which Facebook tracked the internet use of its members, including but not limited to session cookies, tracking cookies, tracking pixels, javascript, or other;

(f) The extent of information tracked and gathered by Facebook from its members;

(g) Whether the information intercepted by Facebook was "in flight" within the meaning of relevant statutes;

(h) Whether and to what extent Facebook remedied the problem; and

(i) The extent to which Facebook maintained or is still maintaining data improperly tracked; and

(j) Whether Facebook's post-logout tracking was done knowingly.

**b.     Facebook's Statement of Facts**

As an initial matter, Facebook believes that Plaintiffs' argumentative statement of the case is neither necessary nor appropriate for this case management statement. But since Plaintiffs insist on including it, Facebook is compelled to respond briefly.

Facebook is a social networking website that enables people to connect and share with their friends, families, and communities. To join, Users need only provide their name, age, gender, and a valid e-mail address; they are also informed of Facebook's Privacy Policy (now called the "Data Use Policy"), which specifically discloses that Facebook uses cookies for certain

purposes. Once Users register, they create a profile and may begin connecting with other Users by inviting them to become Facebook "Friends." Facebook provides a service that hundreds of millions of people use every day to connect with the people they care about—for free.

Facebook offers Users an array of options for sharing content and communicating with each other both on Facebook and third-party websites. These options include the Facebook Like button, which allows Users to click a button associated with some particular content (e.g., a news article, a video, a blog post, or a video) in order to share or communicate their affinity for that content with their Facebook Friends.

The main allegations in these cases are based primarily on the September 2011 blog posts of Australian technology blogger, Nik Cubrilovic and concern Facebook's alleged use of cookies to collect browsing history when Users were logged out of their Facebook account. Plaintiffs' inflammatory claims notwithstanding, the use of cookies is ubiquitous throughout the Internet. Most interactive websites with any level of meaningful functionality could not operate without them. Facebook uses cookies for a variety of functions including, for instance, offering features on other websites (e.g., the Like, Share, and Recommend buttons and other enhancements) and ensuring the security of the Facebook site and Facebook Users.

As Facebook will show, Plaintiffs do not state any claims in their Corrected First Amended Consolidated Class Action Complaint ("Complaint"), and neither the named Plaintiffs nor the members of the putative class have been harmed by the alleged conduct in any way. Facebook reserves any and all rights, defenses, and objections to the facts alleged by the Plaintiffs.

**3.  LEGAL ISSUES**

Plaintiffs contend that the following are the main disputed points of law:

(a) Whether Facebook violated state and/or federal law by tracking the internet use of its members post-logout; and

(b) Whether the theft of personally identifiable information ("PII") is a compensable injury sufficient to confer standing within Article III of the United States Constitution; and

        (c)    Whether the proposed class can be certified under Fed. R. Civ. P. 23.

Facebook denies the allegations in the complaints and denies that the requirements of Rule 23 can be met in any of the pending cases.

**4.   MOTIONS**

    **a.**    There have been motions to appear Pro Hac Vice granted by this court. No such motions are outstanding.

    **b.**    Facebook has filed several motions to relate cases. The Court has granted all such motions but for certain *pro se* cases, which the Court has already ruled unrelated.

    **c.**    Facebook has filed a number of motions to extend time. None are currently pending.

    **d.**    Counsel for Plaintiffs filed a motion to consolidate related actions and appoint interim class counsel, which the Court granted on April 3, 2012.

    **e.**    Plaintiff Michael Singley in the action *Peddicord v. Facebook, Inc.* (formerly *Singley v. Facebook, Inc.*), No. 5:12-cv-00670-EJD filed a motion to withdraw as representative plaintiff and substitute Jane Peddicord on March 27, 2012, which the Court granted on March 30, 2012.

    **f.**    Plaintiff Laura Maguire in the action *Maguire v. Facebook, Inc.*, No. 5:12-cv-00807-EJD filed a motion to withdraw as a representative plaintiff on April 18, 2012, which the Court granted on April 18, 2012.

    **g.**    Plaintiffs filed a motion to substitute interim co-lead counsel on May 9, 2012, which the Court granted on May 10, 2012.

    **h.**    The Parties submitted a stipulation requesting an order setting a briefing schedule and enlarging page limits regarding Facebook's anticipated motion to dismiss Plaintiffs' Complaint on June 6, 2012. The Court so ordered this briefing schedule and enlargement of page limits on June 18, 2012.

    **i.**    On June 21, 2012, plaintiff Janet Seamon filed a motion seeking an order permitting Joseph E. Blackwell of the firm of Hymel Davis & Petersen, L.L.C. to withdraw as counsel of record. Mr. Blackwell is leaving the firm to take a position with the federal government but the firm will continue to represent Ms. Seamon. The Court has yet to rule on this motion.

    **j.**    Facebook anticipates moving to dismiss the Complaint on July 2, 2012.

    **k.**    Plaintiffs intend to file a motion for class certification at the appropriate time during the litigation.

    **l.**    Facebook may file a motion to stay discovery pending the resolution of any initial motion practice under Rule 12(b) concerning the Complaint or any amendments thereto.

    **m.**    The Parties may file motions for summary judgment or partial summary judgment.

**5.   AMENDMENT OF PLEADINGS**

If this action survives initial motion practice on the sufficiency of the pleadings, Facebook believes that any further amendment to the pleadings should be completed within three (3) months of any decision allowing any of Plaintiffs' claims to go forward. Plaintiffs believe any such deadline should not precede the completion of fact discovery. All parties agree, however, that the setting or proposing of any such deadline should be done during the parties' Rule 26(f) conference, discussed below.

**6.   EVIDENCE PRESERVATION**

The Parties are aware of and taking reasonable steps to comply with their evidence preservation obligations under the Federal Rules of Civil Procedure, including the rules governing electronic discovery.

Plaintiff Thompson sent a certified spoliation letter to Facebook on October 4, 2011 explaining and explicitly itemizing the potentially discoverable material under Defendant's control. Plaintiffs take the position that Defendant is required to take all necessary measures to

ensure that all electronic records pertaining to Plaintiffs and the putative class members are being preserved, as well as all relevant non-electronic records.

### 7. DISCLOSURES

In accordance with their understanding of the Court's intention, expressed at the March 30, 2012 case management conference, to divide the litigation of the action into four phases, the third of which is to involve the timing and sequence of "motion practice and discovery," the Parties have not met and conferred pursuant to Rule 26(f). The Parties await the Court's guidance as to when the Parties should hold the Rule 26(f) conference and propose to discuss the topic at the June 29, 2012 CMC.

Facebook believes no Rule 26(f) conference should be held until 14 days after any initial motion practice under Rule 12(b) regarding the Complaint or any amendments to the Complaint has been resolved.

Plaintiffs oppose any discovery stay in this case and believe that a Rule 26(f) conference should be held on or prior to July 6, 2012, and discovery should proceed normally as contemplated by the Federal Rules.

The Parties have agreed to seek the Court's guidance on the question of a discovery stay at the June 29, 2012 CMC, and the parties propose that, pursuant to Rule 26(a)(1)(C), initial disclosures be exchanged within 14 days after the Parties' Rule 26(f) conference.

### 8. DISCOVERY

No formal discovery has yet occurred. The Parties propose filing a joint proposed discovery plan promptly after the Rule 26(f) conference discussed in section 7 above.

In light of the number of causes of action pled in the complaint and the forthcoming motion to dismiss, Facebook believes that discovery should not commence until the Court resolves which, if any, claims will go forward.

Plaintiffs oppose any discovery stay and believe that discovery should proceed normally as contemplated by the Federal Rules.

The Parties have agreed to seek the Court's guidance on the question of a discovery stay at the June 29, 2012 CMC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9.

JOINT CASE MANAGEMENT STATEMENT
NO. 5:12-MD-02314-EJD

### 9. CLASS ACTION

Plaintiffs have asserted class claims pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a Class of all persons who had active Facebook accounts and used Facebook between May 27, 2010 and September 26, 2011, both dates inclusive, and whose privacy Facebook violated. Excluded from the Class are Facebook, and its officers, directors, employees, affiliates, legal representatives, predecessors, successors and assigns, and any entity in which any of them have a controlling interest.

Facebook denies that this action meets the requirements for class certification under Rule 23.

### 10. RELATED CASES

On March 16, 2012, Facebook filed a Notice of Pending Action pursuant to Civil Local Rule 3-13 to inform the Court of a related case, *Ung v. Facebook, Inc.*, No. 112-cv-217244, pending in Santa Clara Superior Court. Facebook moved for a stay of the *Ung* case pending the final outcome of the present case, and also filed a demurrer. The Superior Court held a hearing on June 19, 2012 and has taken the matter under advisement.

### 11. RELIEF SOUGHT

Plaintiffs seek monetary relief in the form of damages including but not limited to actual damages, statutory damages, punitive damages, and attorneys fees. At this time the precise monetary amount is unknown as both the size of the class and method for calculating the non-statutory damages is not presently known to Plaintiffs. It can be said, however, that at the time of filing there were over 150 million Facebook users in the United States during the proposed Class Period (May 27, 2010 to September 26, 2011, inclusive), and 800 million users globally, and the claims for violations of one of the relevant statutes (the Federal Wiretap Act) provides for $100 per day for each day of violation or $10,000, whichever is greater. Plaintiffs also seek injunctive relief.

Facebook denies that Plaintiffs are entitled to any relief whatsoever. Additionally, Facebook reserves all rights, claims, and defenses available under law.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

JOINT CASE MANAGEMENT STATEMENT
NO. 5:12-MD-02314-EJD

**12.   SETTLEMENT AND ADR**

The Parties do not believe that any ADR process is appropriate at this time.

**13.   CONSENT TO MAGISTRATE JUDGE**

The Parties do not consent to have a magistrate judge conduct all further proceedings.

**14.   OTHER REFERENCES**

The Parties in the MDL and related actions (except the Plaintiffs in *Maguire*) have previously appeared before the Judicial Panel on Multidistrict Litigation in this matter and appear before this transferee Court as a result of the order dated February 8, 2012 (MDL No. 2314). The Parties do not believe this case is suitable for other reference, be it binding arbitration or a special master.

**15.   NARROWING OF ISSUES**

At this time, the Parties do not believe there are any issues that can be narrowed.

**16.   EXPEDITED TRIAL PROCEDURE**

The Parties do not believe this case is of the type that can be handled on an expedited basis.

**17.   SCHEDULING**

The Court has provided the following initial case scheduling: Facebook's deadline to answer, move to dismiss, or otherwise respond to the Complaint is July 2, 2012. The Parties have stipulated to (Dkt. 37) and the Court has granted (Dkt. 39) a briefing schedule for Facebook's anticipated motion to dismiss the Complaint. Plaintiffs' opposition to the motion is due July 31, 2012. Facebook's reply in support of the motion is due August 22, 2012. A hearing on the motion is scheduled for September 21, 2012.

At the case management conference held on March 30, 2012 before this Court, the Parties understand that the Court stated its intention that scheduling for this litigation should proceed in four phases: (1) consolidation and appointment of interim class counsel, (2) initial case scheduling, (3) motion practice and discovery, and (4) pretrial and trial scheduling issues. The Plaintiffs believe that we are in the third phase, and discovery should commence now as provided by the Federal Rules, concurrently with the currently pending motion practice. Facebook does

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

JOINT CASE MANAGEMENT STATEMENT
NO. 5:12-MD-02314-EJD

not understand the case to have entered the discovery phase yet, and believes that, in any event, discovery should be stayed pending its forthcoming motion to dismiss all claims asserted in the Complaint.  In light of these differing understandings of the timing of the phases outlined by the Court and Facebook's forthcoming motion to dismiss, the Parties believe it is premature to propose further deadlines in this Joint Statement until they receive guidance and input from the Court at the June 29, 2012 CMC.

### 18. TRIAL

As discussed in Section 17 above, in light of the phases outlined by this Court, the Parties believe it is premature to propose trial scheduling for this action until they receive guidance and input from the Court at the next case management conference.

### 19. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Facebook filed its Federal Rule of Civil Procedure 7.1 Disclosure Statement and Civil Local Rule 3-16 Certification of Interested Entities or Persons on April 13, 2012.  Pursuant to Federal Rule of Civil Procedure 7.1 and Civil Local Rule 3-16, Facebook certifies that as of this date, other than the named parties, there is not such interest to report.

### 20. OTHER MATTERS

There are no additional matters to add to this joint statement.

Dated: June 22, 2012                                COOLEY LLP

                                                   */s/ Jeffrey M. Gutkin*
                                                   JEFFREY M. GUTKIN

                                                   Attorneys for Defendant FACEBOOK, INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

JOINT CASE MANAGEMENT STATEMENT
NO. 5:12-MD-02314-EJD

Dated:  June 22, 2012

BARTIMUS, FRICKLETON, ROBERTSON, & GORNY, P.C.

*/s/ Edward D. Robertson, Jr.*
EDWARD D. ROBERTSON, JR.
BARTIMUS, FRICKLETON, ROBERTSON, & GORNY, P.C.
EDWARD D. ROBERTSON, JR.
(chiprob@earthlink.net)
JAMES P. FRICKLETON
STEPHEN M. GORNY
MARY D. WINTER
EDWARD D. ROBERTSON III
11150 Overbook Road, Suite 200
Leawood, KS 66211
Telephone:   (913) 266-2300
Facsimile:   (913) 266-2366

STEWARTS LAW US LLP
DAVID A. STRAITE (admitted *pro hac vice*)
*dstraite@stewartslaw.com*
RALPH N. SIANNI
MICHELE S. CARINO
LYDIA E. YORK
1201 North Orange Street
Wilmington, DE  19801
Telephone:   (302) 298-1200
Facsimile:   (302) 298-1222

Interim Co-Lead Class Counsel

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

JOINT CASE MANAGEMENT STATEMENT
NO. 5:12-MD-02314-EJD

**ATTESTATION PURSUANT TO GENERAL ORDER 45**

I, Jeffrey M. Gutkin, attest that concurrence in the filing of this document has been obtained from each of the other signatories. Executed this 22nd day of June, 2012, at San Francisco, California.

*/s/ Jeffrey M. Gutkin*
JEFFREY M. GUTKIN

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

**JOINT CASE MANAGEMENT STATEMENT**
**NO. 5:12-MD-02314-EJD**