```
1                    UNITED STATES DISTRICT COURT

2               FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                         SAN JOSE DIVISION


4
                                  CASE NO.  MD-12-02314-EJD

5    IN RE:  FACEBOOK INTERNET
     TRACKING LITIGATION.        SAN JOSE, CALIFORNIA
6
                                 OCTOBER 5, 2012
7
                                 PAGES 1 - 58
8


9


10                   TRANSCRIPT OF PROCEEDINGS

              BEFORE THE HONORABLE EDWARD J. DAVILA

11                  UNITED STATES DISTRICT JUDGE

12

                    A-P-P-E-A-R-A-N-C-E-S

13


14    FOR THE PLAINTIFFS:   KEEFE BARTELS

                            BY:   STEPHEN G. GRYGIEL

15                          170 MONMOUTH STREET

                            RED BANK, NEW JERSEY 07701

16
                            STEWARTS LAW

17                          BY:  DAVID A. STRAITE

                            535 FIFTH AVENUE

18                          NEWS YORK, NEW YORK 10017

19                          KIESEL BOUCHER LARSON

                            BY:  PAUL R. KIESEL

20                          8648 WILSHIRE BOULEVARD

                            BEVERLY HILLS, CALIFORNIA 90211

21
          (APPEARANCES CONTINUED ON THE NEXT PAGE.)

22

23    OFFICIAL COURT REPORTER:    IRENE L. RODRIGUEZ, CSR, CRR

                                  CERTIFICATE NUMBER 8074

24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
      TRANSCRIPT PRODUCED WITH COMPUTER.
```

1

2      A P P E A R A N C E S: (CONT'D)

3


4      FOR THE DEFENDANTS:        COOLEY
                                  BY:  MATTHEW D. BROWN
5                                 101 CALIFORNIA STREET, 5TH FLOOR
                                  SAN FRANCISCO, CALIFORNIA
6                                 94111

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|   |   |
|---|---|
| 1 | SAN JOSE, CALIFORNIA                    OCTOBER 5, 2012 |
| 2 | P R O C E E D I N G S |
| 3 | (COURT CONVENED.) |
| 09:43AM 4 | THE CLERK:  CALLING MDL-12-2314, IN RE:  FACEBOOK |
| 09:43AM 5 | INTERNET TRACKING LITIGATION. |
| 09:43AM 6 | ON FOR MOTION TO DISMISS AND PLAINTIFF'S CORRECTED FIRST |
| 09:43AM 7 | AMENDED CONSOLIDATED CLASS ACTION. |
| 09:43AM 8 | COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES. |
| 09:43AM 9 | MR. BROWN:  MATTHEW BROWN WITH COOLY FOR FACEBOOK. |
| 09:43AM 10 | THE COURT:  THANK YOU.  GOOD MORNING. |
| 09:43AM 11 | MR. GRYGIEL:  GOOD MORNING, YOUR HONOR.  STEVE |
| 09:43AM 12 | GRYGIEL FROM KEEFE BARTELS FOR THE CLASS PLAINTIFFS. |
| 09:43AM 13 | THE COURT:  THANK YOU.  GOOD MORNING. |
| 09:43AM 14 | MR. STRAITE:  GOOD MORNING, YOUR HONOR.  DAVID |
| 09:43AM 15 | STRAITE FROM STEWARTS LAW U.S., CO-LEAD COUNSEL FOR THE |
| 09:43AM 16 | PLAINTIFFS. |
| 09:43AM 17 | THE COURT:  THANK YOU.  GOOD MORNING. |
| 09:43AM 18 | MR. KIESEL:  AND, YOUR HONOR, LAST BY NOT LEAST PAUL |
| 09:44AM 19 | KIESEL FROM KIESEL BOUCHER LARSON FOR PLAINTIFFS. |
| 09:44AM 20 | THE COURT:  THANK YOU.  GOOD MORNING. |
| 09:44AM 21 | MR. BROWN, I BELIEVE THIS IS YOUR MOTION, AND WHAT I FOCUS |
| 09:44AM 22 | MY ATTENTION ON, JUST FOR ALL OF YOUR BENEFITS, IS REALLY THE |
| 09:44AM 23 | STANDING ISSUE AND THAT JURISDICTIONAL QUESTION AND THAT SEEMS |
| 09:44AM 24 | THAT'S REALLY THE PARAMOUNT TOPIC OF DISCUSSION HERE. |
| 09:44AM 25 | AND I'M EAGER TO HEAR FROM THE PLAINTIFFS.  BUT, |

09:44AM   1      MR. BROWN, I'D ALSO LIKE TO HEAR FROM YOU AS TO YOUR THOUGHTS

09:44AM   2   ADDITIONALLY AS TO THE WIRETAP STATUTE AND THE SCA STATUTE AND

09:44AM   3   YOUR THOUGHTS ABOUT THAT AND WHETHER OR NOT THIS CASE --

09:44AM   4   WHETHER OR NOT PLAINTIFFS HAVE STATED SUFFICIENT GROUNDS TO

09:44AM   5   ALLOW THE CASE TO REMAIN.

09:44AM   6      SO I'M HAPPY TO HEAR FROM YOU.

09:44AM   7         MR. BROWN:  THANK YOU.  WELL, I'M HAPPY THAT YOU

09:44AM   8   HAVE BROUGHT THAT UP BECAUSE THAT'S WHERE I WAS GOING TO BEGIN

09:44AM   9   IN ANY EVENT.

09:44AM   10     AND ONE OF THE MOST STRIKING THINGS, I THINK, ABOUT THE

09:45AM   11  COMPLAINT IS JUST THE UTTER LACK OF ALLEGATIONS OF ANY SORT OF

09:45AM   12  INJURY TO THESE PARTICULAR NAMED PLAINTIFFS.

09:45AM   13     AND AS WE KNOW, EVEN THOUGH IT'S PLED AS A PUNITIVE CLASS

09:45AM   14  ACTION, THE NAMED PLAINTIFFS THEMSELVES HAVE TO ALLEGE INJURY,

09:45AM   15  AND, IN FACT, THAT WAS PROXIMATELY CAUSED BY THE ALLEGED

09:45AM   16  CONDUCT, AND HERE THEY HAVE NOT DONE ANYTHING CLOSE TO THAT LET

09:45AM   17  ALONE FOR CLASS MEMBERS.

09:45AM   18     PLAINTIFFS HAVEN'T ALLEGED WHAT WEBSITES THEY VISITED,

09:45AM   19  THEY HAVEN'T ALLEGED WHAT SORT OF DATA OR INFORMATION WAS

09:45AM   20  ACTUALLY COLLECTED.  THEY DON'T HAVE ANY ALLEGATIONS AS TO

09:45AM   21  WHETHER FACEBOOK USED THIS IN SOME WAY OR DISCLOSED IT TO

09:45AM   22  ANYBODY ELSE AND ANY THIRD PARTY.

09:45AM   23     THEY HAVE A CONCLUSORY ALLEGATION THAT THEIR PERSONAL

09:45AM   24  INFORMATION OR THE BROWSING HISTORY HAS VALUES AND SOME SORT OF

09:45AM   25  ECONOMIC VALUE.

| | | |
|---|---|---|
| 09:45AM | 1 | THE COURT:  WELL, IT HAS VALUE TO FACEBOOK. |
| 09:46AM | 2 | MR. BROWN:  WELL, IT MAY.  BUT THERE HAVE BEEN -- I |
| 09:46AM | 3 | MEAN, OUR BRIEFS ARE REPLETE WITH CITATIONS TO CASE LAW WHERE |
| 09:46AM | 4 | THIS VERY CLEARLY HAS BEEN REJECTED.  THIS THEORY NOW.  I MEAN, |
| 09:46AM | 5 | I CAN THINK OF CASES IN JUST THE LAST THREE YEARS WHERE THIS |
| 09:46AM | 6 | THEORY HAS PROBABLY BEEN REJECTED TEN TIMES. |
| 09:46AM | 7 | THE COURT:  THIS THEORY BEING THE INDIVIDUAL VALUE |
| 09:46AM | 8 | OF PERSONAL IDENTITY IN AN INDIVIDUAL CAPACITY. |
| 09:46AM | 9 | MR. BROWN:  YEAH, THAT'S RIGHT.  AND THE FACT IS |
| 09:46AM | 10 | THAT THEY HAVEN'T ALLEGED WHATSOEVER THAT THEY HAVE EVER BEEN |
| 09:46AM | 11 | OFFERED BY ANYONE TO BE PAID FOR THIS INFORMATION AND THAT |
| 09:46AM | 12 | THERE'S ANY SORT OF MARKET THAT THEY PERSONALLY CAN TAKE |
| 09:46AM | 13 | ADVANTAGE OF AND IT'S A LOT OF HIGH THEORY ABOUT THINGS LIKE |
| 09:46AM | 14 | VALUE-FOR-VALUE EXCHANGE, BUT I WAS ACTUALLY SURPRISED TO SEE |
| 09:46AM | 15 | LANGUAGE LIKE THAT IN THE COMPLAINT BECAUSE THERE ARE CASES |
| 09:46AM | 16 | THAT LITERALLY USE THAT SAME LANGUAGE BECAUSE IT'S BEEN ALLEGED |
| 09:46AM | 17 | IN OTHER COMPLAINTS IN OTHER CASES LIKE THE LACOURT VERSUS |
| 09:46AM | 18 | SPECIFIC MEDIA CASE, LIKE THE IPHONE APPLICATION CASE THAT IS |
| 09:47AM | 19 | PENDING BEFORE JUDGE KOH, AND THAT THEORY HAS BEEN REJECTED |
| 09:47AM | 20 | TIME AND TIME AGAIN. |
| 09:47AM | 21 | SO IN TERMS OF JUST BRACKETING FOR A SECOND THE WIRETAP |
| 09:47AM | 22 | ACT AND THE SCA, JUST LOOKING AT SORT OF THE BIG PICTURE AT THE |
| 09:47AM | 23 | CASE, THERE'S JUST AN UTTER LACK OF ANY ALLEGATION IN THE |
| 09:47AM | 24 | COMPLAINT THAT THESE SPECIFIC PLAINTIFFS WERE HARMED PERSONALLY |
| 09:47AM | 25 | AND IN A WAY THAT WAS TETHERED TO THE ALLEGED CONDUCT. |

```
09:47AM   1        AND, AGAIN, BEFORE GETTING TO THAT SCA AND WIRETAP ACT,
09:47AM   2   PORTIONS OF THE ANALYSIS I WOULD HIGHLIGHT THAT WE HAVE
09:47AM   3   OBVIOUSLY HIGHLIGHTED MANY CASES IN OUR BRIEFS THAT STAND ON
09:47AM   4   THOSE BUT TO DRAW OUT A FEW CITATIONS, THE LOW VERSUS LINKEDIN
09:47AM   5   CASE WHICH JUDGE KOH ISSUED A DECISION ON NOVEMBER 11TH, 2011.
09:47AM   6        THAT WAS A CASE WHERE IT WAS ALLEGED LINKEDIN HAD PLACED
09:47AM   7   COOKIES ON THE PLAINTIFF'S COMPUTERS AND PERMITTED THIRD
09:47AM   8   PARTIES TO VIEW THE BROWSER HISTORY AND LINKED TO THE USER I.D.
09:48AM   9   FAIRLY ANALOGOUS.
09:48AM  10        THEY ALLEGE THAT THE RELEVANT HISTORY WAS PERSONAL
09:48AM  11   PROPERTY WITH THE MARKET VALUE THAT WAS TAKEN WITHOUT
09:48AM  12   COMPENSATION AND YET THAT COMPLAINT WAS DISMISSED ON ARTICLE
09:48AM  13   III GROUNDS BECAUSE JUDGE KOH HELD IT WAS TOO ABSTRACT AND
09:48AM  14   HYPOTHETICAL AND PLAINTIFF HAD NOT YET ARTICULATED OR ALLEGED A
09:48AM  15   PARTICULARIZED AND CONCRETE HARM, AND I THINK THAT'S EXACTLY
09:48AM  16   WHAT WE HAVE HERE.  THE ANALOGIES ARE STRIKING.
09:48AM  17        SIMILARLY IN THE IPHONE APPLICATION LITIGATION, AND I'M
09:48AM  18   LOOKING SPECIFICALLY AT THE DECISION OF SEPTEMBER 20TH, 2011,
09:48AM  19   ALSO BY JUDGE KOH.
09:48AM  20        AND IN THAT DECISION, JUDGE KOH IDENTIFIED SORT OF TWO
09:48AM  21   DIFFERENT ASPECTS OF THE ANALYSIS.  AND THE FIRST WAS THAT THE
09:48AM  22   RISK OF INJURY THAT THE PLAINTIFFS ALLEGE WAS NOT CONCRETE AND
09:48AM  23   PARTICULARIZED TO THEMSELVES.
09:48AM  24        AND SHE HELD THERE THAT PLAINTIFFS DO NOT IDENTIFY WHAT
09:49AM  25   I-DEVICES THEY USE, DO NOT IDENTIFY WHICH DEFENDANT, IF ANY,
```

09:49AM 1   ACCESSED OR TRACKED THEIR PERSONAL INFORMATION, DO NOT IDENTIFY

09:49AM 2   WHICH APPS THEY DOWNLOADED THAT ACCESS OR TRACK THEIR PERSONAL

09:49AM 3   INFORMATION -- I'LL SLOW DOWN -- AND DO NOT IDENTIFY WHAT HARM,

09:49AM 4   IF ANY, RESULTED FROM THE ACCESS OR TRACKING OF THEIR PERSONAL

09:49AM 5   INFORMATION.

09:49AM 6       SO, IN OTHER WORDS, IT'S NOT ENOUGH TO ALLEGE JUST

09:49AM 7   INFORMATION HAS BEEN ACCESSED OR TRACKED, BUT YOU HAVE TO SHOW

09:49AM 8   SOME RESULTING HARM.  THAT'S THE ALLEGED VIOLATION.  BUT YOU

09:49AM 9   STILL HAVE TO SHOW SOME HARM THAT IS PROXIMATELY CAUSED BY THAT

09:49AM 10  VIOLATION, AND THOSE ARE TWO DISTINCT THINGS.

09:49AM 11      THE SECOND AND SORT OF DISTINCT GROUND ON WHICH SHE HELD

09:49AM 12  THAT THERE WAS NO ARTICLE III STANDING WAS THAT THE PLAINTIFFS

09:49AM 13  HAD NOT IDENTIFIED A CONCRETE HARM FROM THE ALLEGED COLLECTION

09:49AM 14  AND TRACKING OF THEIR PERSONAL INFORMATION.

09:49AM 15      AND IT'S SLIGHTLY DIFFERENT.  IT SOUNDS SIMILAR, BUT ONE

09:50AM 16  IS ARE THE ALLEGATIONS PARTICULARIZED AS TO THE PLAINTIFFS

09:50AM 17  THEMSELVES AND THE OTHER IS, IS THERE TRULY A CONCRETE HARM?

09:50AM 18      AND JUDGE KOH CITED LACOURT VERSUS SPECIFIC MEDIA CASE

09:50AM 19  THAT I MENTIONED BEFORE AND SAID -- AND NORMALLY I DON'T USE

09:50AM 20  LONG QUOTES FROM CASES IN ORAL ARGUMENT, BUT I THINK IT'S

09:50AM 21  IMPORTANT TO EMPHASIZE THIS POINT.

09:50AM 22      IN SPECIFIC MEDIA PLAINTIFFS ACCUSED AN ONLINE THIRD-PARTY

09:50AM 23  ADMIN, SPECIFIC MEDIA, IN SELLING COOKIES ON THEIR COMPUTERS TO

09:50AM 24  CERTAIN USER PRIVACY CONTROLS AND TRACK INTERNET USE WITHOUT

09:50AM 25  KNOWLEDGE OR CONSENT.

09:50AM 1      THE COURT, HOWEVER, HELD THAT THE PLAINTIFFS LACKED

09:50AM 2  ARTICLE III STANDING BECAUSE THEY HAD NOT ALLEGED THAT ANY

09:50AM 3  NAMED PLAINTIFF WAS ACTUALLY HARMED BY DEFENDANT'S ALLEGED

09:50AM 4  CONDUCT; AND, TWO, THEY HAD NOT ALLEGED ANY PARTICULARIZED

09:50AM 5  EXAMPLE OF ECONOMIC INJURY OR HARM TO THEIR COMPUTERS BUT

09:50AM 6  INSTEAD ONLY OFFERED ONLY ABSTRACT CONCEPTS SUCH AS OPPORTUNITY

09:50AM 7  COSTS, VALUE-FOR-VALUE EXCHANGES, CONSUMER CHOICE, AND

09:50AM 8  DIMINISHED PERFORMANCE.

09:51AM 9      OTHER CASES HAVE HELD THE SAME AND THE COURT ALSO CITES

09:51AM 10  THE DOUBLECLICK CASE AND THE JETBLUE CASE, WHICH WE'VE ALSO

09:51AM 11  CITED IN OUR PAPERS.

09:51AM 12      THE SAME IS TRUE HERE.  THE COURT HELD IN THE IPHONE

09:51AM 13  LITIGATION, THE PLAINTIFFS HAVE NOT YET ARTICULATED A COHERENT

09:51AM 14  AND FACTUALLY SUPPORTIVE THEORY OF INJURY.  THE PLAINTIFFS HAVE

09:51AM 15  STATED GENERAL ALLEGATIONS ABOUT IN THAT CASE THE MOBILE

09:51AM 16  INDUSTRY DEFENDANTS, THE MARKET FOR APPS, AND SIMILAR ABSTRACT

09:51AM 17  CONCEPTS, E.G., OPPORTUNITY COSTS, VALUE-FOR-VALUE EXCHANGES,

09:51AM 18  BUT PLAINTIFFS HAVE NOT IDENTIFIED ANY ACTUAL INJURY TO

09:51AM 19  THEMSELVES FOR ARTICLE III STANDING.

09:51AM 20      AND THANKS FOR YOUR INDULGENCE IN ALLOWING ME TO SPIT ALL

09:51AM 21  OF THAT OUT.

09:51AM 22      BUT THE PARALLELS HERE BETWEEN THE LOW VERSUS LINKEDIN

09:51AM 23  DECISION THAT I CITED EARLIER, THE IPHONE APPLICATION DECISION

09:51AM 24  THAT I JUST READ FROM, WHICH ITSELF CITES THE SPECIFIC MEDIA

09:51AM 25  CASE, DOUBLECLICK, AND JETBLUE, THE PARALLELS ARE QUITE

09:52AM 1      STRIKING.

09:52AM 2          I WOULD BRING TO THE COURT'S ATTENTION AND REMIND THE

09:52AM 3      COURT SINCE THIS COURT IS FAMILIAR WITH THE GAOS VERSUS GOOGLE

09:52AM 4      DECISION.  IN THERE THE ALLEGATIONS WERE THAT GOOGLE DISCLOSED

09:52AM 5      TO THIRD PARTIES THESE URL'S THAT CONTAINED WITHIN THEM THE

09:52AM 6      SEARCH QUERIES THAT PEOPLE ENTERED AND IN THAT CASE THE

09:52AM 7      PLAINTIFFS HAD ACTUALLY ALLEGED THAT THEY HAD DONE SEARCHES FOR

09:52AM 8      THEIR OWN NAMES, FOR FAMILY MEMBER NAMES, THAT THEY THEMSELVES

09:52AM 9      CLICKED ON THE LINKS ON THE SEARCH RESULTS PAGE, THAT GOOGLE

09:52AM 10     SENT URL'S TO THIRD PARTIES AND THIS PLAINTIFF DID NOT

09:52AM 11     AUTHORIZE ANY OF THAT.

09:52AM 12         THAT WAS THE STATE OF THE PLEADINGS IN THAT CASE.  YOUR

09:52AM 13     HONOR RULED THERE THAT -- AGAIN, BACK JUST FOR A SECOND, THE

09:52AM 14     SCA CLAIMS, AS TO ALL OTHER CLAIMS, SIX COMMON LAW CLAIMS,

09:53AM 15     THERE WAS NO STANDING BECAUSE THAT EVEN WASN'T SUFFICIENTLY

09:53AM 16     PARTICULARIZED OR CONCRETE ENOUGH TO CONSTITUTE ARTICLE III

09:53AM 17     STANDING AND THERE WERE CLAIMS FOR FRAUD, PUBLIC DISCLOSURE OR

09:53AM 18     PRIVATE FACTS SOMEWHAT SIMILAR TO THE CLAIMS IN THIS CASE AND

09:53AM 19     THERE WERE OTHER CLAIMS AS WELL.

09:53AM 20         TURNING THEN TO THE SCA CLAIM AND HERE ALSO THE WIRETAP

09:53AM 21     ACT CLAIM, AS AN INITIAL MATTER, WE WOULDN'T CONCEDE THAT THE

09:53AM 22     ADWORDS VERSUS FIRST AMERICAN DECISION IN THE NINTH CIRCUIT WAS

09:53AM 23     CORRECTLY DECIDED BUT WE ACKNOWLEDGE THAT THAT CASE LAW IS OUT

09:53AM 24     THERE IN THE NINTH CIRCUIT.

09:53AM 25         AND THERE HAVE BEEN SOME DECISIONS FOLLOWING FROM THAT

09:53AM 1    THAT HAVE HELD ON THE PARTICULAR FACTS OF THOSE CASES, THAT

09:53AM 2    THERE WAS STANDING DUE TO THE ALLEGATIONS OF WIRETAP ACT

09:53AM 3    VIOLATIONS OR SCA VIOLATIONS, BUT, AGAIN, THE GAOS VERSUS

09:54AM 4    GOOGLE CASE, I THINK IS AN INTERESTING COUNTERPOINT.

09:54AM 5         YOUR HONOR THERE HELD THAT THERE WAS STANDING FOR THAT

09:54AM 6    PARTICULAR CLAIM, NOT FOR THE REST OF THE CLAIMS, BUT THE FACTS

09:54AM 7    WERE DIFFERENT THERE, AND I SET THEM FORTH JUST A FEW MINUTES

09:54AM 8    AGO.

09:54AM 9         I MEAN, VERY DETAILED ALLEGATIONS ABOUT WHAT KIND OF

09:54AM 10   SEARCHES THEY DID, INCLUDING THEIR NAME AND THEIR FAMILY'S

09:54AM 11   NAMES, THAT THEY ACTUALLY CLICKED ON THE LINKS.  THEY

09:54AM 12   APPARENTLY UNDER RULE 11 WERE ABLE TO ALLEGE THAT GOOGLE HAD

09:54AM 13   TRANSMITTED THOSE PARTICULAR URL'S TO THIRD PARTIES.  I DON'T

09:54AM 14   KNOW ENOUGH ABOUT THE CASE TO KNOW EXACTLY HOW THEY COULD DO

09:54AM 15   THAT, BUT APPARENTLY THEY COULD CONSISTENT WITH RULE 11 AND

09:54AM 16   THAT THAT PARTICULAR PLAINTIFF DID NOT AUTHORIZE IT.

09:54AM 17        THAT'S DISTINCT FROM THE SITUATION THAT WE HAVE HERE.  AND

09:54AM 18   JUST BECAUSE YOU HAVE AN SCA AND YOU ALLEGE AN SCA VIOLATION TO

09:54AM 19   THROW IT INTO YOUR COMPLAINT OR YOU THROW A WIRETAP ACT CLAIM

09:54AM 20   INTO YOUR CLAIM OR INTO YOUR COMPLAINT, DOESN'T MEAN YOU GET A

09:54AM 21   FREE PASS IN ARTICLE III STANDING.  IT'S NOT AS THOUGH THE

09:54AM 22   ANALYSIS ENDS THERE.

09:55AM 23            THE COURT:  WHAT IS LACKING?

09:55AM 24            MR. BROWN:  WELL, YOU STILL HAVE TO SHOW THAT, YOU

09:55AM 25   HAVE TO HAVE ENOUGH FACTS IN YOUR COMPLAINT THAT SHOW THAT THAT

09:55AM  1    VIOLATION IS SOMEHOW TETHERED TO YOU.  IT CAN'T JUST BE A

09:55AM  2    GENERALIZED SORT OF POLICY COMPLAINT ABOUT THE CONDUCT AT

09:55AM  3    ISSUE.  THAT'S APPROPRIATE FOR LETTERS TO THE COMPANY, PERHAPS,

09:55AM  4    OR LETTERS TO THE EDITOR OR THERE ARE A LOT OF OTHER DIFFERENT

09:55AM  5    FORUMS THAT YOU CAN EXPRESS YOUR OPINIONS ON THOSE THINGS BUT

09:55AM  6    HERE IN FEDERAL COURT YOU'RE SUPPOSED TO HAVE A CASE OR

09:55AM  7    CONTROVERSY, AND IF YOU DON'T HAVE A CASE OR CONTROVERSY THAT

09:55AM  8    DEALS WITH THIS SPECIFIC NAMED PLAINTIFF IN THE CASE, THEN

09:55AM  9    THERE'S NO STANDING AND THE COURT DOESN'T EVEN HAVE SUBJECT

09:55AM 10    MATTER JURISDICTION, AND I THINK THAT THAT IS LACKING HERE AND

09:55AM 11    ALTHOUGH THERE HAVE BEEN SOME OTHER CASES THAT HAVE HELD ON THE

09:55AM 12    PARTICULAR FACTS ALLEGED IN THE COMPLAINT THAT THERE WAS

09:55AM 13    STANDING, BUT I THINK THIS CASE IS DISTINCT.

09:55AM 14            THE COURT:  THANK YOU VERY MUCH.  MR. STRAITE OR

09:55AM 15    MR. GRYGIEL.

09:56AM 16            MR. GRYGIEL:  GOOD MORNING, YOUR HONOR.  I'LL BE

09:56AM 17    ADDRESSING THE STANDING ISSUE AND WIRETAP ACT AND MY COLLEAGUE,

09:56AM 18    MR. STRAITE, WILL ADDRESS THE STORED COMMUNICATIONS ACT.

09:56AM 19        LET ME START WITH A COUPLE OF POINTS.  WE ARE HERE ON A

09:56AM 20    MOTION TO DISMISS AS WELL AS A MOTION FOR A LACK OF STANDING,

09:56AM 21    12(B)(1) AND 12(B)(6).

09:56AM 22        NOW, WHAT I JUST HEARD IS ESSENTIALLY THE EQUIVALENT OF A

09:56AM 23    RULE 56 ARGUMENT, AND I WOULD SUBMIT TO THE COURT IT'S ONE RULE

09:56AM 24    AT A TIME.  12(B)(1) IS A VERY DIFFERENT STANDARD FROM

09:56AM 25    12(B)(6), WHICH IS A VERY DIFFERENT STANDARD FROM RULE 56.

09:56AM  1      LET'S START THEN WITH WHAT WE ACTUALLY PLEADED IN OUR

09:56AM  2   COMPLAINT, AND I DIDN'T HEAR ANY MENTION OF IT.  LET'S LOOK AT

09:56AM  3   PARAGRAPH 19 OF OUR COMPLAINT.

09:56AM  4      PARAGRAPH 19 OF OUR COMPLAINT, PARAGRAPH 16 OF OUR

09:56AM  5   COMPLAINT, AND PARAGRAPH 26 OF OUR COMPLAINT.  WHAT DO WE

09:56AM  6   ALLEGE?  IT WENT WHEN THIS COMPANY WAS CONFRONTED WITH EVIDENCE

09:56AM  7   THAT HAD IT HAD BEEN DOING PRECISELY THAT WHICH IT PROMISED IT

09:56AM  8   WOULD NOT DO, THAT IS, TO TRACK ITS USERS AFTER THEY HAD LOGGED

09:56AM  9   OUT, A VERY SIMPLE PARAGRAPH, WHEN THEY DISCOVERED TO HAVE BEEN

09:57AM 10   DOING THAT, WHAT WE DIDN'T HEAR IS ANY OF THE LAWYER CONGERIES

09:57AM 11   WE HAVE READ IN THE PAPERS, WHAT EVERYONE KNEW, IT WAS

09:57AM 12   CONSENTED TO, WE DISCLOSED IT.  NO.

09:57AM 13      AN ENGINEER, GREGG STEFANCIK, FOR THE COMPANY SAID AS

09:57AM 14   FOLLOWS:  WE DIDN'T EXPLAIN IT WELL ENOUGH.  WE WILL BE

09:57AM 15   ADDRESSING THAT TODAY.  YOUR POST, HE WROTE TO THE BLOGGER WHO

09:57AM 16   DISCOVERED THIS, HAS RAISED A LOT OF IMPORTANT ISSUES.  IT

09:57AM 17   APPEARS THAT THE A USER COOKIE WAS NOT DELETED UPON LOGOUT AS

09:57AM 18   IT WOULD SUPPOSED TO HAVE BEEN.  I'M PARAPHRASING, BUT THAT'S

09:57AM 19   QUITE CLOSE.  WE WILL BE FIXING THAT TODAY.

09:57AM 20      LET'S PAUSE RIGHT THERE.  WHAT HE SAID WAS THAT WE WERE

09:57AM 21   TRACKING YOU, WE INTENDED TO DO IT, WE KNEW WE WERE DOING IT,

09:57AM 22   AND WE HAVE NOT DISCLOSED IT.

09:57AM 23      AND THIS MUST BE A HARM OTHERWISE THERE WOULD BE NO --

09:57AM 24          THE COURT:  SAY AGAIN.

09:57AM 25          MR. GRYGIEL:  THIS MUST BE A HARM BECAUSE OTHERWISE

09:57AM   1       THERE WOULD BE NO NEED TO, QUOTE, FIX IT BOTH AS TO POLICY OF

09:58AM   2    DISCLOSURE AND AS TO THE FACT THAT WE HAVE THESE TRACKING

09:58AM   3    COOKIES IN THE PROGRAM THAT WERE SUPPOSED TO HAVE BEEN DELETED.

09:58AM   4       SO WE START OUT WITH SOME VERY SERIOUS ADMISSIONS THAT I

09:58AM   5    THINK SHAPES EVERYTHING THE COURT NEEDS TO DO IN TERMS OF

09:58AM   6    LOOKING AT THE SUFFICIENCY OF THE ALLEGATIONS.  THAT'S

09:58AM   7    PARTICULARLY TRUE UNDER THE NINTH CIRCUIT'S VIEW OF THE

09:58AM   8    PLEADING RULES AS SET OUT BY TWOMBLY.

09:58AM   9       WE LOOK AT STARR VERSUS BACA.  I DON'T HEAR ANYTHING FROM

09:58AM  10    THE DEFENDANTS ABOUT IT AND THAT DOESN'T SURPRISE ME.  WHY IS

09:58AM  11    THAT?  BECAUSE STARR VERSUS BACA SAYS THAT TWOMBLY SAID THAT

09:58AM  12    NOTICE PLEADING IS THE WAY WE LOOK AT THESE CASES.  ALL YOU

09:58AM  13    NEED TO DO IS TO PROVIDE FAIR NOTICE OF THE CLAIM AND THE

09:58AM  14    GROUNDS UPON WHICH IT IS BASED AND THEN WE MOVE TO DISCOVERY.

09:58AM  15    ALL OF THOSE RULES BETWEEN 12 AND 56 ACTUALLY HAVE SOME IMPORT,

09:58AM  16    AND THAT'S WHAT THAT CASE SAYS.

09:58AM  17       WE FRAME OUR ANALYSIS IN TERMS OF WHAT WE ACTUALLY PLEADED

09:58AM  18    AND IN TERMS OF WHAT THE DEFENDANT HAS ADMITTED, AND WE GET A

09:58AM  19    VERY LONG WAY HOME TOWARDS, A, THE SUBSTANTIVE ELEMENTS OF ALL

09:58AM  20    OF THE CLAIMS, EASILY CLEAR THE STANDING HURDLES, WHICH I'LL

09:59AM  21    COME TO IN A MOMENT, AND COME VERY FAR DOWN TO PLEADING

09:59AM  22    ESSENTIALLY ALL OF THE ELEMENTS OF OUR CAUSES OF ACTION.

09:59AM  23       LET'S TALK ABOUT THE PERSONALLY IDENTIFIABLE INFORMATION

09:59AM  24    IF I CAN DIGRESS TO THAT FOR A MOMENT.

09:59AM  25            THE COURT:  DOES THIS RELATE TO STANDING?

09:59AM 1          MR. GRYGIEL:  YES, IT DOES.  ONE OF THE POINTS, AND

09:59AM 2     IN FACT, WHAT YOU HEAR IS PII, PERSONALLY IDENTIFIABLE

09:59AM 3     INFORMATION, THAT HAS NO VALUE AND LOTS OF COURTS HAVE SAID SO.

09:59AM 4          THE FIRST THING IS THAT FOR PURPOSES OF A MOTION TO

09:59AM 5     DISMISS ON 12(B)(1), CONSTITUTIONAL LAW TEACHES US FROM THE

09:59AM 6     DAYS OF WARTH VERSUS SELDIN FROM THE HOUSING CASES OF THE '60S

09:59AM 7     AND THE '70S, GLADSTONE REALTY, HAVENS, LUJAN V. NATIONAL

09:59AM 8     WILDLIFE, THAT GENERALIZED ALLEGATIONS OF HARM, I REPEAT,

09:59AM 9     GENERALIZED ALLEGATIONS OF HARM SUFFICE BECAUSE THEY ARE DEEMED

09:59AM 10    TO INCLUDE SPECIFIC ALLEGATIONS OF THE HARM THAT GO TO THE

09:59AM 11    CAUSE OF ACTION.

09:59AM 12         SO WHEN I HEAR MY COLLEAGUE SAY THAT THEY DON'T PLEAD X,

09:59AM 13    Y, AND Z AS TO THEMSELVES, THE SHORT ANSWER, AND NOT TO BE FLIP

10:00AM 14    IS, THE LAW OF THE LAND SAYS THAT WE NEED NOT.  WE ARE AT

10:00AM 15    12(B)(1) GIVING NOTICE OF OUR CLAIM.

10:00AM 16         TO THE SECOND POINT WHEN HE SAYS THAT THEY HAVE TO TETHER

10:00AM 17    IT TO THEMSELVES SOMEHOW?  WE DO FOR PURPOSES OF GAOS AND ANY

10:00AM 18    OTHER STATUTORY CLAIM.

10:00AM 19         WHAT WE HAVE TO ALLEGE AND WHAT WE HAVE MORE THAN

10:00AM 20    SATISFACTORILY ALLEGED IS THAT WE WERE USERS; WE USED THE

10:00AM 21    COMPUTERS IN THE WAY THAT WE THOUGHT WE WERE ENTITLED TO; THERE

10:00AM 22    WAS NO DISCLOSURE REGIME THAT TOLD US THAT WE WOULD BE TRACKED

10:00AM 23    POST LOGOUT, AND THAT IS A VIOLATION OF OUR RIGHTS UNDER THE

10:00AM 24    STORED COMMUNICATIONS ACT AND THE WIRETAP ACT, AND THAT'S

10:00AM 25    ENOUGH.

10:00AM 1       THE COURT:  THOSE STATUTES THAT PROTECT YOUR

10:00AM 2   CLIENT'S INTERESTS THAT HAVE BEEN VIOLATED.

10:00AM 3       MR. GRYGIEL:  ON THE WIRETAP ACT, YOUR HONOR?

10:00AM 4       THE COURT:  AND THE SCA.

10:00AM 5       MR. GRYGIEL:  YOU'RE ASKING ME WHAT IS THE HARM?

10:00AM 6       THE COURT:  RIGHT.

10:00AM 7       MR. GRYGIEL:  THE HARM IS THE INVASION OF THE

10:00AM 8   STATUTORILY PROTECTED RIGHT THAT BELONGS TO ME PERSONALLY.

10:00AM 9     NOW, WHAT I HEAR --

10:00AM 10      THE COURT:  TELL ME WHAT THAT MEANS.

10:00AM 11      MR. GRYGIEL:  SURE.  THAT I HAVE THE RIGHT AS THE

10:00AM 12  WIRETAP ACT AND THE STORED COMMUNICATIONS ACT PROVIDES ME TO BE

10:01AM 13  FREE FROM UNCONSENTED TO, UNDISCLOSED INTERCEPTION OF MY

10:01AM 14  COMMUNICATIONS WITH SOMEBODY ELSE, THAT BY ITSELF THE UNITED

10:01AM 15  STATES CONGRESS IN ITS WISDOM HAS DECIDED IS A HARM SUFFICIENT

10:01AM 16  TO GRANT STATUTORY STANDING WITH NOTHING MORE.

10:01AM 17      THE COURT:  DO I NEED TO DRILL DOWN, AND I DON'T

10:01AM 18  MEAN TO SUGGEST AND GO INTO THE MERITS, BUT DO I NEED TO DRILL

10:01AM 19  DOWN AS TO WHETHER OR NOT THERE WAS A PURPOSE OF INTERCEPTION?

10:01AM 20      MR. GRYGIEL:  FOR PURPOSES OF STANDING, YOUR HONOR?

10:01AM 21      THE COURT:  YES.

10:01AM 22      MR. GRYGIEL:  I THINK IT'S WRONG, TO GO BACK TO

10:01AM 23  TWOMBLY; MAYA VERSUS CENTEX, A NINTH CIRCUIT CASE; JEWEL,

10:01AM 24  ANOTHER NINTH CIRCUIT CASE, THEY DON'T JUST SAY THAT YOU CAN

10:01AM 25  JUST SAY IT, BUT THEY DO SAY THAT IT'S SUFFICIENT IF YOU GIVE

10:01AM 1   ENOUGH FACTUAL SPECIFICITY TO RAISE THE CLAIM, TO QUOTE

10:01AM 2   TWOMBLY, ABOVE THE LEVEL OF SPECULATION, OR TO QUOTE TWOMBLY

10:01AM 3   AGAIN, IN THE TEST THAT REALLY DOES APPLY, WHETHER YOU HAVE

10:01AM 4   ALLEGED FACTS SUFFICIENT SO THAT IT IS REASONABLE TO BELIEVE

10:01AM 5   THAT DISCOVERY WOULD REVEAL THE EVIDENCE THAT YOU NEED TO PROVE

10:02AM 6   THE CLAIM.

10:02AM 7       AND AS YOUR HONOR SAID IN GAOS, IT'S ONE THING TO ALLEGE A

10:02AM 8   CLAIM, AND IT'S ANOTHER THING TO PROVE THAT CLAIM FOR RELIEF.

10:02AM 9       THE COURT:  SO FOLLOWING ON THAT, DO I NEED TO THEN

10:02AM 10  ENGAGE IN SOME TYPE OF A DISCUSSION ABOUT INTERCEPTION AND

10:02AM 11  WHETHER OR NOT THERE WAS -- THIS -- WHAT YOU HAVE ALLEGED

10:02AM 12  CONSTITUTES AN INTERCEPTION?

10:02AM 13      MR. GRYGIEL:  SURE.  AND I'M HAPPY TO DO IT RIGHT

10:02AM 14  NOW, YOUR HONOR.  I THINK, FRANKLY, WHAT WE HAVE ALLEGED IN

10:02AM 15  THIS COMPLAINT, OBVIOUSLY I THINK THAT IT'S CLEAR, BUT I

10:02AM 16  BELIEVE WE HAVE MORE THAN SUFFICIENTLY ALLEGED, LOOK AT

10:02AM 17  PARAGRAPHS 71 THROUGH 84, NOT JUST WHO DO DID IT, FACEBOOK; NOT

10:02AM 18  JUST WHY THEY DID IT, LOOK AT PARAGRAPH 12 AND 13, THEIR VALUE

10:02AM 19  PROPOSITION IS INFORMATION.  THAT'S WHAT THEY SELL TO

10:02AM 20  ADVERTISERS, AND THAT'S HOW THEY GET INVESTMENTS.

10:02AM 21      WHEN THEY GET IT, THE CLASS PERIOD; WHERE THEY GET IT, IN

10:02AM 22  AMERICA AND THESE CYBERSPACE EXCHANGES WHICH FACEBOOK IS AN

10:02AM 23  UNINVITED PARTY AND CAME IN THROUGH THE BACKDOOR.

10:02AM 24      THE COURT:  WELL, LET'S TALK ABOUT THAT BECAUSE I

10:02AM 25  THINK THAT REALLY CUTS TO THE INTERCEPTION, DOESN'T IT?

| | | |
|---|---|---|
| 10:03AM | 1 | MR. GRYGIEL:  YES, IT DOES. |
| 10:03AM | 2 | THE COURT:  IS THIS AN INTERCEPTION OR IS THIS ONE |
| 10:03AM | 3 | CONTINUOUS COURSE OF COMMUNICATION? |
| 10:03AM | 4 | MR. GRYGIEL:  THIS IS AN INTERCEPTION, AND LET ME |
| 10:03AM | 5 | EXPLAIN WHY IF I CAN.  UNDER THE WIRETAP ACT WE HAVE TO SHOW |
| 10:03AM | 6 | OBVIOUSLY INTERCEPTION. |
| 10:03AM | 7 | THE LAW OF THE LAND BASICALLY HAS BEEN SOMEWHAT MUDDLED |
| 10:03AM | 8 | ABOUT THIS, BUT LET'S TAKE THE WORD OF KONOP, K-O-N-O-P, ROMAN |
| 10:03AM | 9 | NUMERAL II. |
| 10:03AM | 10 | WELL, THE FIRST THING THAT KONOP SAYS IS THAT THIS |
| 10:03AM | 11 | INTERCEPTION HAS TO BE CONTEMPORANEOUS.  WHEN YOUR HONOR LOOKS |
| 10:03AM | 12 | AT OUR COMPLAINT PARAGRAPHS 68 AND 80, WHAT YOU SEE IS THAT WE |
| 10:03AM | 13 | ALLEGE EXACTLY THAT CONTEMPORANEOUS INTERCEPTION OR OUR |
| 10:03AM | 14 | COMMUNICATION TO A THIRD-PARTY WEBSITE TO WHICH FACEBOOK HAS |
| 10:03AM | 15 | MADE ITSELF THROUGH A TRICK, AN UNINVITED PARTICIPANT, AND GETS |
| 10:03AM | 16 | A COPY OF THAT COMMUNICATION BEFORE IT EVEN COMES TO THE |
| 10:03AM | 17 | PLAINTIFFS. |
| 10:03AM | 18 | THE COURT:  IS THAT AN INTERCEPTION? |
| 10:03AM | 19 | MR. GRYGIEL:  YES, IT IS, YOUR HONOR.  THEY HAVE |
| 10:03AM | 20 | INTERCEPTED IN TRANSIT A COMMUNICATION BEFORE IT GETS TO THE |
| 10:03AM | 21 | INTENDED RECIPIENT, WHO IS US, AND THAT'S CLEARLY INTERCEPTION |
| 10:03AM | 22 | UNDER KONOP. |
| 10:03AM | 23 | THE COURT:  LET'S PARSE THAT OUT. |
| 10:04AM | 24 | MR. GRYGIEL:  SURE. |
| 10:04AM | 25 | THE COURT:  SO YOU PUSH THE BUTTON TO GO TO WHEREVER |

| | | |
|---|---|---|
| 10:04AM | 1 | IT IS YOU WANT TO GO? |
| 10:04AM | 2 | MR. GRYGIEL:  RIGHT. |
| 10:04AM | 3 | THE COURT:  I WANT TO FIND FANCY BOW TIES. |
| 10:04AM | 4 | MR. GRYGIEL:  THERE'S ACTUALLY A WEBSITE CALLED |
| 10:04AM | 5 | B-A-U-T-I-E-S, THAT IS IN VERMONT, DON'T BUY THEM THERE. |
| 10:04AM | 6 | THE COURT:  YOU PUSHED A BUTTON AND THE SIGNAL GOES |
| 10:04AM | 7 | OUT.  AND WHAT HAPPENS NEXT? |
| 10:04AM | 8 | MR. GRYGIEL:  LET ME SEE IF I CAN EXPLAIN THIS AS |
| 10:04AM | 9 | CLEARLY AS I CAN FOLLOWING PARAGRAPH 71 THROUGH 84. |
| 10:04AM | 10 | I'M SITTING THERE IN THE PRIVACY OF MY HOME.  I LOGGED OUT |
| 10:04AM | 11 | OF FACEBOOK, WHICH IS A VERY IMPORTANT POINT SINCE FACEBOOK |
| 10:04AM | 12 | NOWHERE EVER DISCLOSED UNTIL THREE DAYS BEFORE THE END OF THE |
| 10:04AM | 13 | CLASS PERIOD THAT THEY JUST MIGHT BE DOING THE TRACKING. |
| 10:04AM | 14 | I PUNCH THE BUTTON, AND I GO TO WWW.ABUSEDBYPRIESTS.COM. |
| 10:04AM | 15 | LET'S SAY THAT WEBSITE, IN WHICH OBVIOUSLY I HAVE AN EXPECTANCY |
| 10:04AM | 16 | OF CONFIDENTIALITY BECAUSE IT'S JUST ME IN MY HOUSE REACHING |
| 10:04AM | 17 | OUT TO THAT WEBSITE, I'M NOT LOOKING FOR FACEBOOK TO BE A PARTY |
| 10:04AM | 18 | TO THIS.  LET'S SAY THAT WEBSITE HAS, AND THIS IS AN ALLEGATION |
| 10:04AM | 19 | IN THE COMPLAINT, AND USING CNN AS AN EXAMPLE, A SPACE FOR |
| 10:05AM | 20 | ESSENTIALLY SOCIAL NETWORK PLUG-IN MATERIAL FROM FACEBOOK.  THE |
| 10:05AM | 21 | ACTUAL FACEBOOK CONTENT, YOUR HONOR, IS NOT IN THE WEBSITE I |
| 10:05AM | 22 | VISITED.  THERE IS INSTEAD THIS IMBEDDED HTML CODE, NOT THE |
| 10:05AM | 23 | CONTENT, THE CODE.  FACEBOOK USES THE CODE. |
| 10:05AM | 24 | THE INFERENCE UNDER TWOMBLY IS CLEAR BECAUSE THAT ALLOWS |
| 10:05AM | 25 | THEM TO BE A PARTICIPANT TO THE COMMUNICATION.  I HIT THE |

| 10:05AM | 1 | BUTTON.  THE WEBSITE STARTS ON ITS WAY TO ME BUT AS IT COMES TO |

10:05AM   1    BUTTON.  THE WEBSITE STARTS ON ITS WAY TO ME BUT AS IT COMES TO

10:05AM   2    ME, THERE'S A PROBLEM.  IT DOESN'T HAVE THAT FACEBOOK MATERIAL.

10:05AM   3         IT HAS WHAT STATES FOR PURPOSES OF PLAIN ENGLISH LIKE FOR

10:05AM   4    AN OLD GUY LIKE ME A SPACE BOARD AND THAT SPACE IS HELD BY A

10:05AM   5    PLACE HOLDER CODE.  THAT CODE COMES TO THE USER COMPUTER, THAT

10:05AM   6    IS MY COMPUTER IN MY LITTLE KITCHEN, AND WHAT HAPPENS THEN IS

10:05AM   7    THAT THAT TRIGGERS MY BROWSER TO REACH TO FACEBOOK TO GET THE

10:05AM   8    CONTENT FROM FACEBOOK'S SERVER.  NOW FACEBOOK IS GROUPED INTO

10:05AM   9    THIS CONVERSATION, UNBEKNOWNST TO ME.

10:05AM   10        IF I'M A FACEBOOK USER, WHICH WE ALLEGE ALL OF THE

10:06AM   11   PLAINTIFFS WERE, FACEBOOK HAS PREVIOUSLY DEPOSITED COOKIES,

10:06AM   12   WHICH ARE SMALL TEXT FILES THAT ALLOWS CERTAIN INTERFACES.

10:06AM   13        THE COURT:  WE'LL TALK ABOUT WHETHER OR NOT THAT'S

10:06AM   14   STORAGE IN THE OTHER.

10:06AM   15        MR. GRYGIEL:  RIGHT.  EXACTLY.  WHAT HAPPENS THEN IS

10:06AM   16   MY BROWSER GETS THIS CODE AND SAYS, WHOOPS, GO TO THE FACEBOOK

10:06AM   17   SERVER AND GET THIS CONTENT.  THAT ALSO MEANS THAT MY BROWSER

10:06AM   18   AND FACEBOOK INTERACT.  FACEBOOK REALIZES, OH, THIS IS SOMEBODY

10:06AM   19   WHO WE HAVE BEEN IN COMMUNICATION WITH.  HE'S A FACEBOOK USER

10:06AM   20   AND SO THAT MEANS MY COOKIE ALSO GOES TO FACEBOOK.

10:06AM   21        NOW, TO SUM UP THE CONNECTION HERE, FACEBOOK BY THIS

10:06AM   22   DEVICE OF THE IMBEDDED CODE IN THE THIRD-PARTY WEBSITE,

10:06AM   23   UNDISCLOSED TO THE PLAINTIFF, HAS BECOME A PARTICIPANT TO THIS

10:06AM   24   CONVERSATION AND OPERATIVELY.

10:06AM   25        THE COURT:  IN WHAT WAY?

10:06AM  1          MR. GRYGIEL:  IN THIS WAY, YOUR HONOR, THEY GET A

10:06AM  2     COPY.  THEY DUPLICATE A COPY OF MY REQUEST, AND THIS IS IN

10:06AM  3     PARAGRAPHS 82 AND 83.  THEY GET A COPY OF MY REQUEST TO THAT

10:06AM  4     WEB PAGE, AND THEY GET A COPY OF WHAT I LOOKED FOR AND WHAT

10:07AM  5     CONTENT I VISITED ON THOSE PAGES.

10:07AM  6          FOR EXAMPLE, IF YOU WERE ABUSED BY PRIESTS IN UPSTATE NEW

10:07AM  7     YORK OR ABUSED BY PRIESTS IN KENTUCKY, THEY CAN GET THAT.  THEY

10:07AM  8     ALSO GET THROUGH THE COOKIE CERTAIN USER IDENTIFYING

10:07AM  9     CHARACTERISTICS THAT ARE PERSONALLY IDENTIFIABLE INFORMATION,

10:07AM 10     UNLIKE DOUBLECLICK, THIS IS NOT JUST THE COMPUTER, THIS IS THE

10:07AM 11     USER WHO IS BEING IDENTIFIED.

10:07AM 12          THE COURT:  SO YOU'RE SAYING THAT IN YOUR

10:07AM 13     HYPOTHETICAL EXPLANATION, ONCE THAT GOES TO FACEBOOK, THEY THEN

10:07AM 14     HAVE ACCESS TO EVERYTHING YOU DO ON THAT PARTICULAR WEBSITE?

10:07AM 15          MR. GRYGIEL:  THEY GET ALL OF THE INFORMATION THAT I

10:07AM 16     HAVE ON THAT PARTICULAR WEBSITE, AND THAT'S WHAT WE ALLEGE.

10:07AM 17          THE COURT:  THE INFORMATION THAT YOU HAVE?

10:07AM 18          MR. GRYGIEL:  THE INFORMATION, YOUR HONOR, WHAT WE

10:07AM 19     LOOKED AT, WHAT OTHER PAGES I WENT TO, WHAT CONTENT WAS THERE,

10:07AM 20     AND IF I WENT AROUND THAT SITE, WHERE I WENT ON THAT SITE.  SAY

10:07AM 21     I WENT TO SOME PLACE SPECIFIC.  IF YOU'RE LOOKING FOR

10:07AM 22     COUNSELING HELP OR THINGS LIKE THAT, THAT'S WITHIN THE AMBIT OF

10:07AM 23     OUR PARAGRAPHS 82 AND 83.

10:07AM 24          THE COURT:  AND YOU'RE SAYING THAT FORMS THE BASIS

10:07AM 25     OF AN INTERCEPTION WHICH, THEREFORE, ALLOWS YOU TO PURSUE THIS

```
10:08AM   1    CAUSE OF ACTION UNDER THE WIRETAP STATUTE?

10:08AM   2              MR. GRYGIEL:  CORRECT.  YES, YOUR HONOR.  A NUT

10:08AM   3    SHELL, THE PROVERBIAL NUT, THERE IT IS, BUT THERE ARE A COUPLE

10:08AM   4    OF OTHER THINGS THAT FACEBOOK SAYS ABOUT THE INTERCEPTION.

10:08AM   5         THEIR FIRST ARGUMENT ABOUT THE INTERCEPTION IS IT HAS TO

10:08AM   6    BE IN FLIGHT.  WE ALLEGE, AND WHICH IS ALL WE NEED TO DO HERE,

10:08AM   7    AND THERE'S A GOOD FACTUAL BASIS FOR, PARAGRAPHS 82 AND 83 ARE

10:08AM   8    HIGHLY SPECIFIC OF EXACTLY HOW THAT HAPPENED, AND WE PASS ANY

10:08AM   9    SPECIFICITY TEST.

10:08AM  10         AND BY THE WAY, FOR STANDING IN PARTICULAR, THAT

10:08AM  11    SPECIFICITY TEST IS TOTALLY INAPPLICABLE AS MAYA VERSUS CENTEX,

10:08AM  12    THE NINTH CIRCUIT CASE, SAYS, SAYING THAT TWOMBLY AND IQBAL

10:08AM  13    WITH THEIR SPECIFICITY REQUIREMENTS ARE ILL-SUITED TO THE

10:08AM  14    12(B)(1) CONTEXT.  THAT BASICALLY TAKES CARE OF THEIR STANDING

10:08AM  15    ARGUMENT.

10:08AM  16         THE SECOND POINT I WOULD MAKE THERE, YOUR HONOR, IS THAT

10:08AM  17    THEY SAY THAT, WELL, KONOP SAYS THAT THIS JUST HAS TO BE

10:08AM  18    COMPLETELY IN TRANSIT.  IT CAN NEVER BE IN STORAGE.  THAT'S

10:08AM  19    WHAT WE ALLEGE.  THAT'S WHAT WE ALLEGE.  IT'S IN TRANSIT.

10:08AM  20         NUMBER TWO, KONOP WAS A SUMMARY JUDGMENT CASE; AND,

10:08AM  21         NUMBER THREE, KONOP, VERY MUCH LIKE CHANCE, ANOTHER ONE OF

10:09AM  22    THE CASES THAT THEY CITE, AND VERY MUCH LIKE BUNNELL, ANOTHER

10:09AM  23    CASE THAT THE DEFENDANTS CITE, IN THOSE CASES, YOUR HONOR, THE

10:09AM  24    FACTUAL SCENARIO OF THE INTERCEPTION IS VERY DIFFERENT.  THERE

10:09AM  25    YOU HAVE A STACK OF COMMUNICATION THAT SOMEONE COMES AND GETS.
```

10:09AM   1    THEY'RE NOT INTERCEPTING IT IN THE WAY THAT WE CONCEIVE OF A

10:09AM   2    WIRETAP OR THE INTERCEPTION.

10:09AM   3        WE HAVE SOMEONE DOING WHAT THE CONDE CASE, ONE OF THE

10:09AM   4    DEFENDANT'S CASES, SAYS IT IS NOT INTERCEPTION.  HOW?  IT'S

10:09AM   5    LIKE SOMEONE COMES IN AND LOOKS OVER YOUR SHOULDER ON SOMETHING

10:09AM   6    THAT IS ALREADY ON YOUR SCREEN.  THAT'S DIFFERENT FROM THE

10:09AM   7    SIMULTANEOUS INTERCEPTION OF SOMETHING CONTEMPORANEOUSLY OF THE

10:09AM   8    USER ACTUALLY RECEIVING IT.

10:09AM   9        IN FACT, IN KONOP, WHAT WE HAVE THERE WERE TWO EMPLOYEES,

10:09AM   10   MR. WONG AND GARDNER, AND THEY WERE PILOTS FOR HAWAIIAN

10:09AM   11   AIRLINES AND WHAT THEY DID WAS GET PERMISSION TO GO ONTO A

10:09AM   12   WEBSITE OF MR. KONOP.  MR. KONOP WAS A DISGRUNTLED EMPLOYEE OF

10:10AM   13   THE COMPANY, AND HE POSTED HIS VARIOUS VITRIOLIC SCREAM ABOUT

10:10AM   14   THE COMPANY'S DOINGS WITH RESPECT TO LABOR.

10:10AM   15       WELL, THESE TWO GUYS, WONG AND GARDNER, DECIDED IT WOULD

10:10AM   16   BE A GOOD IDEA TO LET THEIR SUPERVISOR, MR. DAVIS, TAKE A LOOK.

10:10AM   17   SO EVERY NOW AND THEN MR. DAVIS COMES IN AND HE TAKES A LOOK AT

10:10AM   18   THIS WEBSITE.  HE GETS UNAUTHORIZED -- HE GETS ACCESS.  THE

10:10AM   19   QUESTION IS WHETHER IT'S AUTHORIZED OR NOT.  I'LL LEAVE THAT TO

10:10AM   20   MR. STRAITE.  BUT HE COMES IN AND HE LOOKS AT WHAT IS ON THE

10:10AM   21   SCREEN.  THAT'S ENTIRELY DIFFERENT.  WE HAVE THERE INTENDED

10:10AM   22   RECIPIENTS, WONG AND GARDNER, GIVING AUTHORITY TO A THIRD PARTY

10:10AM   23   TO TAKE A LOOK AT IT.

10:10AM   24       VERY DIFFERENT FROM OUR CASE WHERE WHAT WE ALLEGE IS THE

10:10AM   25   FIRST INFORMATION IS NOT STATIC, IT'S IN TRANSIT, AND IT'S

10:10AM  1    BEING INTERCEPTED IN TRANSIT.  AND THE SECOND THING WE ARE

10:10AM  2    ARGUING IS THAT WE HAD NO POSSIBLE WAY OF KNOWING ABOUT IT

10:10AM  3    BECAUSE FACEBOOK AFFIRMATIVELY DECLARED WE HAD NOT BECOME A

10:10AM  4    PARTICIPANT IN THESE COMMUNICATIONS.

10:10AM  5         SO THE KONOP CASE, I THINK, ESSENTIALLY SHOWS BY

10:10AM  6    DEFINITION WHAT OUR CASE IS NOT AND WHY WE HAVE AN

10:11AM  7    INTERCEPTION.

10:11AM  8         FINALLY ON THE WIRETAP ISSUE, THE DEFENSE SAYS THERE'S NO

10:11AM  9    DEVICE AND THE ANSWER TO THAT IS I THINK THAT'S EASILY

10:11AM  10   RECOGNIZABLE.

10:11AM  11        WE'D ARGUE ABOUT THE EMBEDDED CODE, THE SERVERS, AND WE'D

10:11AM  12   ARGUE ABOUT THE COMPUTERS AND THE ROUTERS, AND THE POINT IS

10:11AM  13   LET'S LOOK AT THE DEFINITION OF 18 U.S.C. 2510.  THE DEFINITION

10:11AM  14   OF A DEVICE IS ANY, ESSENTIALLY, APPARATUS THAT ALLOWS THE

10:11AM  15   INTERCEPTION WITH TWO EXCLUSIONS.  ONE OF THE EXCLUSIONS IS FOR

10:11AM  16   TELEPHONE EQUIPMENT.

10:11AM  17        NOBODY HERE IS ALLEGING ANYTHING ABOUT TELEPHONE

10:11AM  18   EQUIPMENT.  THE OTHER IS FOR HEARING AIDS.  WE'RE NOT TALKING

10:11AM  19   ABOUT HEARING AIDS HERE.  THE DEVICE CONCEPT IS EXTREMELY

10:11AM  20   BROAD.

10:11AM  21        THE DEFENDANT SAYS THAT WE'RE NOT -- WE'RE NOT GETTING ANY

10:11AM  22   CONTENTS SO EVEN IF YOU HAVE THE OTHER ELEMENTS, YOU CAN'T HAVE

10:11AM  23   THE WIRETAP IN THAT CLAIM.  WE ALLEGE IN PARAGRAPHS 82 AND 83

10:11AM  24   SPECIFICALLY WHAT THE CONTENTS ARE, AND WE'RE ALLEGING IT AS TO

10:11AM  25   ALL OF THE COMMUNICATIONS THAT WE HAVE WITH THESE THIRD-PARTY

10:11AM 1    WEBSITES TO WHICH FACEBOOK HAS PLAYED THE IMBEDDED CODE GAME.

10:11AM 2         FACEBOOK FINALLY SAYS, WELL, YOU CONSENTED THAT FACEBOOK

10:12AM 3    WOULD BECOME A PARTY AND YOU CONSENTED THAT FACEBOOK WOULD KNOW

10:12AM 4    ABOUT THIS STUFF.

10:12AM 5         TWO QUICK POINTS ON THAT, YOUR HONOR.  FIRST, IF THAT WERE

10:12AM 6    TRUE, YOU CAN BE SURE THAT WHEN CONGRESS ASKED FACEBOOK JUST

10:12AM 7    WHAT THE HECK ARE WE DOING WITH THESE INTERCEPTIONS POST

10:12AM 8    LOGOUT, YOU NEVER HEARD FACEBOOK COMING BACK AND SAYING, WELL,

10:12AM 9    THEY CONSENTED.  YOU DIDN'T HEAR ANYTHING ABOUT CONSENT.

10:12AM 10        AS WE SAY IN OUR COMPLAINT, PARAGRAPHS 35 THROUGH 37,

10:12AM 11   CONGRESSMAN MARKEY AND BARTON SAY FACEBOOK BASICALLY IS SAYING,

10:12AM 12   WELL, WE'RE NOT DOING IT ANY MORE, BUT THEY'RE NOT OBJECTING TO

10:12AM 13   WHAT WENT ON BEFORE.  THAT'S NUMBER ONE.

10:12AM 14        AND THE SECOND POINT THERE ON CONSENT IS THAT YOU CANNOT

10:12AM 15   VIOLATE THE STATUTE AS WE CLEARLY ALLEGE THAT FACEBOOK DID AND

10:12AM 16   THROUGH THAT VERY VIOLATION OF THE LIABILITY CREATING STATUTE

10:12AM 17   IN THE FIRST INSTANCE, DEVOLVE UPON YOURSELF, ARROGATE FOR

10:12AM 18   YOURSELF AN EXCEPTION TO THAT LIABILITY.  THAT'S WHAT THE APPLE

10:12AM 19   LITIGATION CASE SAYS THAT WE CITE, AND THERE'S NO WAY THAT YOU

10:12AM 20   CAN MANUFACTURE AN EXCEPTION TO LIABILITY FOR THE VERY CRIMES

10:12AM 21   YOU COMMITTED OR THE CIVIL CLAIM THAT YOU HAVE GIVEN RISE TO BY

10:12AM 22   DOING THAT ACTION.

10:13AM 23             THE COURT:  NOW, ARE YOU GOING TO SPEAK ABOUT SCA?

10:13AM 24             MR. GRYGIEL:  I AM NOT, YOUR HONOR.  I'M GOING TO

10:13AM 25   SPEAK ABOUT -- IF I COULD TAKE ONE MORE MOMENT.  WE HAVE HEARD

10:13AM 1    ABOUT THE ECONOMIC HARM, AND I WANT TO COME BACK TO THAT FOR

10:13AM 2    JUST A SECOND.

10:13AM 3       THE CASES THAT THE DEFENDANTS RELY ON ARE NOT LIKE OUR

10:13AM 4    CASE FOR A COUPLE OF QUICK REASONS.

10:13AM 5       NUMBER ONE, WE SPECIFICALLY ALLEGE THAT THE DOLLAR VALUES

10:13AM 6    OF THE INFORMATION THAT WE ALLEGE WAS WRONGFULLY TAKEN,

10:13AM 7    DEMOGRAPHIC, PERSONAL, BROWSING HISTORIES.  THAT'S IN OUR

10:13AM 8    COMPLAINT WITH DOLLAR VALUES.

10:13AM 9       NUMBER TWO, WE ALLEGE --

10:13AM 10        THE COURT:  THOSE DOLLAR VALUES ARE BASED ON WHAT?

10:13AM 11        MR. GRYGIEL:  INDUSTRY STUDIES.  I HAVE A CHART

10:13AM 12    ACTUALLY AND AGGREGATES THAT COME FROM VARIOUS SOURCES IN THE

10:13AM 13    INDUSTRY WHICH FOR PURPOSES OF THE COMPLAINT HAVE TO BE TAKEN

10:13AM 14    AS FACTUALLY WELL PLED.

10:13AM 15        THE COURT:  BUT DOLLAR VALUE, AND I'M SORRY, BUT THE

10:13AM 16    DOLLAR VALUE ARE VALUES TO CORPORATIONS?

10:13AM 17        MR. GRYGIEL:  THAT'S OKAY.  YES.

10:13AM 18        THE COURT:  AS OPPOSED TO THE INDIVIDUALS?

10:13AM 19        MR. GRYGIEL:  YES.  THE VALUES OF INFORMATION.

10:13AM 20        THE COURT:  TO CORPORATIONS, NOT THE INDIVIDUALS.

10:13AM 21        MR. GRYGIEL:  THAT'S MY UNDERSTANDING, YOUR HONOR,

10:13AM 22    YEAH.

10:13AM 23        THE COURT:  AND THERE'S A DISTINCTION FOR SOME

10:14AM 24    REASON?

10:14AM 25        MR. GRYGIEL:  OH, ABSOLUTELY.

10:14AM 1        I MEAN, MR. BROWN SAID, WELL, IT HAS VALUE TO FACEBOOK,

10:14AM 2    DOESN'T IT, BECAUSE IF WE WERE HAVING THIS CONVERSATION OVER A

10:14AM 3    CUP OF COFFEE, WHY WOULD FACEBOOK SPEND ALL OF ITS MONEY TO GET

10:14AM 4    THIS INFORMATION IF IT DIDN'T HAVE SOME VALUE?

10:14AM 5        THE COURT:  RIGHT, THAT'S PROBABLY COMMON KNOWLEDGE.

10:14AM 6        MR. GRYGIEL:  RIGHT, EXACTLY.  BUT THEN THE NEXT

10:14AM 7    QUESTION IS WE ALLEGE THAT NOT ONLY DO WE HAVE SPECIFIC DOLLAR

10:14AM 8    VALUES AND THE INDUSTRY CONSENTS IT'S $5 ON CERTAIN KINDS OF

10:14AM 9    INFORMATION USING THIS GOOGLE CARD, WHAT WE ARGUE IS THAT

10:14AM 10   FACEBOOK ITSELF ADMITS THIS STUFF HAS REAL VALUE.

10:14AM 11       THE COURT:  I GUESS I'M LOOKING AT AN INDIVIDUAL AND

10:14AM 12   I CAN'T GO OUT DOWN TO A KIOSK IN DOWNTOWN SAN JOSE AND SAY WHO

10:14AM 13   WANTS TO BUY -- I KNOW PEOPLE BUY WHOLESALE PHONES AND THAT

10:14AM 14   KIND OF THING, BUT I DON'T KNOW IF THERE'S A KIOSK THAT BUYS

10:14AM 15   PERSONAL INFORMATION.

10:14AM 16       MR. GRYGIEL:  I THINK, YOUR HONOR, ON THAT, IF I

10:14AM 17   MAY, IF THE COURT WILL INDULGE ME, I'LL GO BACK TO CASES LIKE

10:14AM 18   KATZ AND HOMESTEAD, AND, THAT IS, AND THEY'RE REALLY REFLECTED,

10:14AM 19   I THINK, IN THE LANGUAGE AND IN THE IMPETUS BOTH IN THE WIRETAP

10:14AM 20   ACT AND THE STORED COMMUNICATIONS ACT AS WELL AS IN THE

10:15AM 21   AMENDMENTS IN 1986 WHICH WERE MEANT TO PROTECT THE ELECTRONIC

10:15AM 22   COMMUNICATIONS AND THAT IS THIS:  I HAVE A RIGHT, A VALUABLE

10:15AM 23   RIGHT IN KNOWING WHO KNOWS WHAT ABOUT ME.  AND I MIGHT NOT VERY

10:15AM 24   WELL WANT FACEBOOK OR ANYONE TO WHOM IT SELLS INFORMATION OR

10:15AM 25   HELPS IN THE TARGETED AD PROGRAM TO KNOW THAT I VISITED

10:15AM 1    WWW.PEDOPHILE.COM OR SUPPORTFORALCOHOLICS.COM, I HAVE A VALUE

10:15AM 2    IN THAT, AND THAT'S WHY THE STATUTORY STANDING TESTS, WHICH IS

10:15AM 3    SIMPLY WAS IT YOUR RIGHT THAT WAS VIOLATED AND THEN YOU HAVE

10:15AM 4    SUFFICIENT HARM BECAUSE CONGRESS SAID SO IS THE LAW OF THE

10:15AM 5    LAND, AND IT'S THE SAME THING.

10:15AM 6          THE COURT:  BUT WE'RE TALKING ABOUT THE VALUE PART,

10:15AM 7    AND I'M JUST, IN LIGHT OF MY TORTURED QUESTION, IS THERE A

10:15AM 8    KIOSK WHERE I CAN SELL THIS INFORMATION?

10:15AM 9          MR. GRYGIEL:  YOUR HONOR, MY UNDERSTANDING IS, NO,

10:15AM 10   BUT THERE ARE PEOPLE THAT YOU CAN PROTECT PEOPLE FROM GETTING

10:15AM 11   THAT INFORMATION FROM YOU, AND WE ALLEGE THAT IN OUR COMPLAINT.

10:15AM 12         THE COURT:  AND THAT'S A WHOLE DIFFERENT INDUSTRY

10:15AM 13   THAT HAS CROPPED UP BECAUSE OF A RESULT OF ALL OF THIS AND IT'S

10:15AM 14   CALLED THE MUSHROOM EFFECT.

10:16AM 15         MR. GRYGIEL:  RIGHT.  WELL, WE USED TO MAKE CONGRESS

10:16AM 16   DEAL WITH THINGS AND NOW WE MAKE ARGUMENTS LIKE THE ONE I'M

10:16AM 17   MAKING TODAY.

10:16AM 18       BUT THE ISSUE THERE IS THAT ITSELF IS REFLECTIVE OF THE

10:16AM 19   VALUE.  TO SUMMARIZE ON THE VALUE ISSUE, WE PLEAD DIFFERENTLY.

10:16AM 20   WE PLEAD SPECIFIC VALUES OF THIS;

10:16AM 21        NUMBER TWO, FACEBOOK OBVIOUSLY RECOGNIZES THAT VALUE OR IT

10:16AM 22   WOULDN'T BE DOING WHAT IT DOES TO GET THAT INFORMATION; AND,

10:16AM 23        NUMBER THREE, FACEBOOK IS TELLING ITS INVESTORS AND

10:16AM 24   ADVERTISERS, THIS IS WHAT WE'RE OUT THERE GETTING AND THIS IS

10:16AM 25   WHAT OUR VALUE PROPOSITION IS.

10:16AM 1        NOW, FOR PURPOSES OF 12(B)(1) AND 12(B)(6), YOUR HONOR,

10:16AM 2    THAT STATES A CLAIM.  WE NEED NOT GO ANY FARTHER.  THE

10:16AM 3    DEFENDANTS ARE VERY BIG ON TRYING TO CREATE, I THINK, A

10:16AM 4    SPECIFICITY TEST FOR THE PLEADINGS AND IT DOESN'T EXIST.  THE

10:16AM 5    MAYA CASE TELLS US THAT AND THE JEWEL CASE THAT THEY CITE TELLS

10:16AM 6    US THAT.

10:16AM 7          THE COURT:  I READ YOUR COMMENTS.

10:16AM 8          MR. GRYGIEL:  ANYTHING ELSE?

10:16AM 9          THE COURT:  NO.  I WANT TO MOVE TO SCA, BUT I WANT

10:16AM 10   TO GIVE MR. BROWN AN OPPORTUNITY TO RESPOND TO YOUR COMMENTS IF

10:16AM 11   HE WISHES.

10:16AM 12         MR. BROWN:  YES, YOUR HONOR.  SO THERE ARE A NUMBER

10:16AM 13   OF THINGS TO ADDRESS HERE.  STARTING WITH THE CONSENT ISSUE, I

10:17AM 14   THOUGHT WE WERE GOING TO LIMIT IT TO ARTICLE III STANDING.

10:17AM 15         THE COURT:  THAT'S WHERE I STARTED AND THEN IT

10:17AM 16   DRIFTED A LITTLE.

10:17AM 17         MR. BROWN:  SO ON THE CONSENT ISSUE, REALLY, THE

10:17AM 18   SECOND KIND OF BIG PICTURE AND MAJOR STRIKING POINT ABOUT THE

10:17AM 19   COMPLAINT IN MY VIEW IS THAT LACK OF CONSENT IS REALLY THE

10:17AM 20   GRAVAMEN OF THEIR COMPLAINT.  IT'S FUNDAMENTAL TO MANY OF THEIR

10:17AM 21   CAUSES OF ACTION IF NOT EVERY SINGLE ONE.

10:17AM 22      AND THERE'S JUST AN UTTER FAILURE OF PLEADING ON THAT

10:17AM 23   POINT.  AND THEY SAY A LOT OF THINGS AND MAKE IT SOUND AS

10:17AM 24   THOUGH THEY HAVE DONE THEIR JOB IN THE PLEADINGS, BUT IT'S JUST

10:17AM 25   SIMPLY NOT TRUE.

10:17AM 1       WELL, FIRST OFF LET ME SAY THIS, THE PLAINTIFFS ALLEGE AND

10:17AM 2    THEY ACKNOWLEDGE IN THE COMPLAINT THAT THE GOVERNING DOCUMENTS

10:17AM 3    FOR THE FACEBOOK CITE ARE THE TERMS OF USE, WHICH FACEBOOK ALSO

10:17AM 4    STATES IN THEIR RIGHTS AND RESPONSIBILITIES, AND THE PRIVACY

10:17AM 5    POLICY, AND THAT'S FROM THE PLAINTIFF'S COMPLAINT.

10:18AM 6       THE PRIVACY POLICY, THE VERSION DATED APRIL 22ND, 2010,

10:18AM 7    WHICH WAS IN EFFECT AT THE BEGINNING OF THE CLASS PERIOD IN

10:18AM 8    THIS CASE, HAD AN ENTRY TITLED IN BOLD FACE "COOKIE

10:18AM 9    INFORMATION" AND IT SAID WE USE COOKIES, SMALL PIECES OF DATA,

10:18AM 10   AND WE STORE FOR AN EXTENDED PERIOD OF TIME ON YOUR COMPUTER TO

10:18AM 11   MAKE FACEBOOK EASIER TO USE, TO MAKE OUR ADVERTISING BETTER AND

10:18AM 12   TO PROTECT YOU AND FACEBOOK.

10:18AM 13      FOR EXAMPLE, WE USE THEM TO STORE YOUR LOGIN I.D., AND

10:18AM 14   THIS IS IN THE PRIVACY POLICY, BUT NEVER YOUR PASSWORD TO MAKE

10:18AM 15   IT EASIER TO LOG IN WHEN YOU RETURN BACK TO FACEBOOK.  AND WE

10:18AM 16   ALSO USE THEM TO CONFIRM THAT YOU WERE LOGGED INTO FACEBOOK AND

10:18AM 17   TO KNOW WHEN YOU ARE INTERACTING WITH FACEBOOK PLATFORM

10:18AM 18   APPLICATIONS AND WEBSITES, MEANING THIRD-PARTY WEBSITES ON THE

10:18AM 19   FACEBOOK PLATFORM, OUR WIDGETS AND SHARE BUTTON, LIKE THE LIKE

10:19AM 20   BUTTON THAT APPARENTLY THIS CASE IS ABOUT ON THIRD-PARTY

10:19AM 21   WEBSITE, AND OUR ADVERTISEMENTS.

10:19AM 22      YOU CAN REMOVE OR BLOCK COOKIES USING THE SETTINGS IN YOUR

10:19AM 23   BROWSERS BUT IN SOME CASES THAT MAY IMPACT YOUR ABILITY TO USE

10:19AM 24   FACEBOOK.

10:19AM 25      THIS IS RIGHT IN THE PRIVACY POLICY.  THIS DISCLOSURE

10:19AM 1   RIGHT HERE DISCLOSES THE VERY CONDUCT THAT THEY'RE ALLEGING IS

10:19AM 2   WRONGFUL IN THIS CASE.  AND IF YOU READ THE COMPLAINT, THERE

10:19AM 3   ARE VERY BRIEF ILLUSIONS TO THE PRIVATE POLICY WHILE

10:19AM 4   ACKNOWLEDGING THAT THEY'RE ONE OF THE GOVERNING DOCUMENTS OF

10:19AM 5   THIS SITE, BUT THERE'S NO REAL ACCOUNTING FOR THIS VERY

10:19AM 6   EXPLICIT DISCLOSURE WHICH COVERS THE VERY CONDUCT THAT THIS

10:19AM 7   CASE IS ALL ABOUT.

10:19AM 8          THE COURT:  MR. STRAITE JUST SAID THAT WE HAD NO

10:19AM 9   KNOWLEDGE, AND I THINK HE SAID THAT SEVERAL TIMES.

10:19AM 10          MR. BROWN:  WELL, THEY DID, BECAUSE, IN FACT, TO

10:19AM 11  REGISTER, NOT ONLY IS IT STARING AT THEM IN THE FACE OF THE

10:19AM 12  PRIVACY POLICY BUT WHEN YOU REGISTER FOR THE SITE, YOU ACTUALLY

10:19AM 13  HAVE TO ACKNOWLEDGE THAT YOU READ THE PRIVACY POLICY AND IT'S

10:19AM 14  ALSO REFERENCED IN THE TERMS OF USE.

10:19AM 15       AND I'M NOT JUST BRINGING THAT UP AS A MATTER OUTSIDE OF

10:20AM 16  THE PLEADINGS.  THEY ACTUALLY ALLEGE THAT.

10:20AM 17       WHAT THEY BASICALLY DO, THEIR MANEUVER HERE, BECAUSE THEY

10:20AM 18  CONCEDE, WHAT THEY SAY IS THAT WE CONCEDE THAT FACEBOOK HAD THE

10:20AM 19  RIGHT TO DO EVERYTHING, WE'RE ALLEGING, IF USERS WERE LOGGED

10:20AM 20  IN.  THEY, THEY -- I MEAN, THAT IS RIGHT IN THEIR COMPLAINT.

10:20AM 21  THEY MAKE THAT ADMISSION.

10:20AM 22       SO THIS CASE IS ALL ABOUT LOGGED OUT FACEBOOK USERS.

10:20AM 23  THERE'S NOTHING THAT I JUST READ TO YOU THAT LIMITS THE

10:20AM 24  DISCLOSURES SOMEHOW TO ONLY LOGGED IN USERS.

10:20AM 25       THE MANEUVER THAT THEY HAVE TO MAKE IS THAT THEY HAVE GONE

10:20AM   1    AND FOUND ONE SENTENCE IN THE HELP CENTER, THE HELP CENTER OF

10:20AM   2    THE WEBSITE THAT, YOU KNOW, THAT SAYS THAT CERTAIN TYPES OF

10:20AM   3    COOKIES WILL BE DELETED WHEN YOU LOG OUT.

10:20AM   4         BUT THERE'S ABSOLUTELY NO ALLEGATION IN THE COMPLAINT THAT

10:20AM   5    ANY OF THESE NAMED PLAINTIFFS EVER SAW THAT HELP CENTER

10:20AM   6    STATEMENT, LET ALONE ANY ALLEGATION THAT THESE NAMED PLAINTIFFS

10:20AM   7    RELIED ON IT.  THAT'S FATAL TO ALL OF THEIR CLAIMS THAT RELY ON

10:21AM   8    LACK OF CONSENT.  IT'S FATAL.  AND THERE'S BEEN NO ACCOUNTING

10:21AM   9    EITHER IN THEIR PLEADING OR THEIR PAPERS OR ARGUMENT TODAY TO

10:21AM  10    DEAL WITH THAT MAJOR FAILURE OF PLEADING.

10:21AM  11         I'D LIKE TO MOVE FROM THERE THEN TO -- SO I SHOULD JUST

10:21AM  12    MENTION THAT I SAY THAT'S FUNDAMENTAL TO MANY OF THEIR CAUSES

10:21AM  13    OF ACTION, AND IT'S FUNDAMENTAL TO THEIR WIRETAP CLAIM AND SCA

10:21AM  14    CLAIMS IN PARTICULAR.

10:21AM  15         THEIR COMMENT EARLIER ABOUT FACEBOOK ENGINEERS MAKING

10:21AM  16    CERTAIN STATEMENTS, I WOULD SUBMIT IT'S SMOKE AND MIRRORS.

10:21AM  17    JUST BECAUSE FACEBOOK SAID THAT THEY DIDN'T INTEND TO NOT

10:21AM  18    DELETE CERTAIN TYPES OF COOKIES UPON LOGOUT AND THEY DIDN'T

10:21AM  19    COMPLY WITH WHAT THEY INTENDED TO DO IS MUCH DIFFERENT THAN

10:21AM  20    SAYING THAT THERE IS LEGAL LIABILITY FOR DOING THAT.  THOSE ARE

10:22AM  21    TWO VERY DISTINCT THINGS.

10:22AM  22         THEY HAVE ALLEGED CERTAIN CAUSES OF ACTION THAT REQUIRE

10:22AM  23    LACK OF CONSENT.  FACEBOOK HAD THE CONSENT.  WHETHER IT

10:22AM  24    INTENDED TO DO A CERTAIN THING OR NOT AND LATER CHARACTERIZED

10:22AM  25    IT AS A MISTAKE IS A VERY DIFFERENT THING FROM WHETHER THAT'S

10:22AM 1   AN ADMISSION THAT THEY WERE SOMEHOW LEGALLY LIABLE UNDER

10:22AM 2   PARTICULAR STATUTES OR UNDER TORT LAW.  TWO VERY DIFFERENT

10:22AM 3   THINGS.

10:22AM 4         MOVING NOW TO THE ISSUE OF VALUE, GETTING BACK TO ONE OF

10:22AM 5   THE CORE ARTICLE III CONCEPTS, I WAS LISTENING VERY CAREFULLY

10:22AM 6   WHEN YOU WERE HAVING THE COLLOQUY WITH COUNSEL AND THE DIRECT

10:22AM 7   QUESTION WAS, WAS THERE ANY ALLEGATION THAT THIS PARTICULAR

10:22AM 8   INFORMATION HAS DEMONSTRABLE VALUE TO THESE NAMED PLAINTIFFS?

10:22AM 9   AND THE ANSWER REALLY IS, NO, THERE IS NO ALLEGATION IN THE

10:22AM 10  COMPLAINT.

10:23AM 11        AND, YOU KNOW, THE PHRASE THAT WAS USED A FEW TIMES WAS

10:23AM 12  THAT WE HAVE ALLEGED SPECIFIC VALUES OF THIS.

10:23AM 13        WELL, IT'S NOT A SPECIFIC VALUE OF THIS.  SOME ARE OUT

10:23AM 14  THERE IN THE WORLD BASED ON SOME STUDY THAT HAS BEEN DONE OR

10:23AM 15  VALUE TO WHO KNOWS WHAT CORPORATION AND WHERE.

10:23AM 16        IT HAS TO BE DEMONSTRABLE VALUE SHOWN TO THESE NAMED

10:23AM 17  PLAINTIFFS AND OUR PAPERS ARE JUST FILLED WITH CITATIONS TO

10:23AM 18  CASES THAT ARE ON POINT.  I'M NOT GOING TO TRY TO RECITE THEM

10:23AM 19  ALL RIGHT NOW, WHICH WOULD BE PROBABLY A FOOL'S ERRAND.

10:23AM 20        BUT I WOULD JUST POINT OUT THAT THERE'S A COUPLE THAT CAME

10:23AM 21  QUICKLY TO MIND.  ONE IS IN RE:  FACEBOOK PRIVACY LITIGATION IN

10:23AM 22  THIS DISTRICT BEFORE JUDGE WARE, AND JUDGE WARE HELD THAT

10:23AM 23  FACEBOOK WAS FREE, AND, THEREFORE, PLAINTIFFS COULD NOT ALLEGE

10:23AM 24  THAT THEY LOST ANY MONEY OR PROPERTY AS A RESULT OF THE CONDUCT

10:23AM 25  THERE.  AND IT'S PRECISELY THE SAME DEFENDANT AND THE SAME

10:24AM 1    WEBSITE AND THE FACT IS THAT FACEBOOK IS FREE, THERE'S NO MONEY

10:24AM 2    PAID TO JOIN THE SITE AND THEY HAVE TO TIE THEMSELVES IN KNOTS

10:24AM 3    IN THESE SORT OF VALUE-FOR-VALUE EXCHANGE THEORIES, WHICH I

10:24AM 4    HAVE SAID BEFORE HAVE BEEN REJECTED REPEATEDLY BY THE COURTS.

10:24AM 5         AND, FURTHERMORE, IN THE IPHONE APPLICATION LITIGATION

10:24AM 6    BEFORE JUDGE KOH, AGAIN, A PLAINTIFF'S PERSONAL INFORMATION

10:24AM 7    DOES NOT SUBSTITUTE MONEY OR PROPERTY.  AND THOSE ARE TWO

10:24AM 8    EXAMPLES, AND WE HAVE CITED MANY OTHERS.  AND SO THAT SHOULD

10:24AM 9    REALLY BE THE END.

10:24AM 10        THE COURT:  DOES THAT PUT THE END TO ALL OF THESE

10:24AM 11   KINDS OF CASES IN YOUR OPINION IF YOU CAN'T SHOW VALUE?

10:24AM 12        MR. BROWN:  WELL, IT DEPENDS ON EXACTLY WHAT THE

10:24AM 13   THEORY OF INJURY IS.  I DON'T WANT TO SAY -- I DON'T WANT TO

10:24AM 14   SPEAK BROADLY BECAUSE I DON'T KNOW IT'S NECESSARY TO DISPOSE OF

10:24AM 15   THIS CASE TO TAKE SOME BROAD POSITION ON THAT.

10:24AM 16        IT'S CERTAINLY IN A LOT OF THESE PRIVACY CLASS ACTIONS

10:24AM 17   THAT HAVE BEEN BROUGHT IN THE LAST COUPLE OF YEARS, MANY OF THE

10:25AM 18   COMPLAINTS HAVE GOTTEN DISMISSED ON THIS VERY GROUND.  IT

10:25AM 19   DOESN'T MEAN THAT EVERY ONE HAS, AND IT DOESN'T MEAN THAT THERE

10:25AM 20   COULDN'T BE CERTAIN FACT PATTERNS.

10:25AM 21        FOR INSTANCE, YOU KNOW, A WEBSITE THAT CHARGES A FEE,

10:25AM 22   POSSIBLY, IT DEPENDS ON THE FACTS, AND IT DEPENDS ON WHETHER

10:25AM 23   THE FEE FOR THE USE OF THE WEBSITE IS SOMEHOW TETHERED TO THE

10:25AM 24   USE OF THE ALLEGED WRONGFUL CONDUCT.

10:25AM 25        THE COURT:  SURE.  I THINK WE CAN ALL HYPOTHECATE

| | |
|---|---|
| 10:25AM | 1 |

10:25AM 1 ALL KINDS OF DIFFERENT FACTS, AND I DIDN'T MEAN TO PUT YOU IN A

10:25AM 2 POSITION TO ARGUE AGAINST YOURSELF, BUT I'M JUST CURIOUS

10:25AM 3 WHETHER OR NOT IF YOU CAN'T SHOW THE INJURY AND THERE'S NO

10:25AM 4 VALUE TO ANY OF THIS INFORMATION TO AN INDIVIDUAL, THEN WHAT IS

10:25AM 5 THE INDIVIDUAL'S REDRESS?  WHAT DO THEY DO?  HOW DO THEY EVER

10:25AM 6 GET INTO COURT?

10:25AM 7 　　　　MR. BROWN:  WELL, YOU KNOW, YOU OFTEN DO HAVE THESE

10:25AM 8 STATUTORY VIOLATIONS.  AGAIN, THERE HAS GOT TO BE SOME

10:26AM 9 TETHERING TO THE ALLEGED STATUTORY VIOLATION AND SOME SORT OF

10:26AM 10 PARTICULARITY TO THE USERS -- I'M SORRY -- TO THE PLAINTIFF.

10:26AM 11 　　　　BUT, NO, I DON'T ACTUALLY THINK OUR POSITION LEADS YOU

10:26AM 12 DOWN THAT SLIPPERY SLOPE.  I THINK YOU HAVE TO TAKE EVERY CASE

10:26AM 13 THAT COMES BEFORE YOU AND THEN THERE ARE GOING TO BE PLENTY OF

10:26AM 14 CASES THAT YOU CAN SHOW ACTUAL INJURY, IT'S JUST THAT, FRANKLY,

10:26AM 15 THERE HAVE BEEN A LOT, IN MY PERSONAL VIEW, THERE HAVE BEEN A

10:26AM 16 LOT OF CLASS ACTIONS BROUGHT IN THE PAST FEW YEARS WHERE IT IS

10:26AM 17 A HOT AREA AND WHERE THERE REALLY ISN'T AN INJURY.  AND SO TO

10:26AM 18 COMPENSATE FOR WHAT THEY'RE LACKING IN THE REAL WORLD WITH

10:26AM 19 ACTUAL FACTS, PEOPLE HAVE COME UP WITH TORTURED THEORIES OF

10:26AM 20 INJURY AND SO YOU ARE SEEING A LOT OF COURTS THROWING THESE

10:26AM 21 CASES OUT.

10:26AM 22 　　　　MOVING NOW, IF I COULD, TO THE WIRETAP ACT, BECAUSE WE ARE

10:27AM 23 SORT OF, WE'VE MORE THAN INCHED, I THINK, INTO THE MERITS OF

10:27AM 24 THAT CLAIM.

10:27AM 25 　　　　JUST TO GIVE YOU AN OVERVIEW OF OUR ARGUMENT, AND IT WAS

10:27AM  1    DEALT WITH QUITE THOROUGHLY IN OUR PAPERS, BUT THERE ARE REALLY

10:27AM  2    IN MY MIND SIX DIFFERENT REASONS WHY THIS CLAIM SHOULD FAIL,

10:27AM  3    ALL OF THEM INDEPENDENT.

10:27AM  4         ONE OF THOSE IS BECAUSE THERE'S NO INTERCEPTION;

10:27AM  5         TWO, WE'RE NOT TALKING ABOUT CONTENTS OF COMMUNICATIONS AS

10:27AM  6    THAT'S UNDERSTOOD UNDER THE STATUTE; AND,

10:27AM  7         THREE, THERE WAS NO DEVICE ALLEGED, WHICH IS A REQUIREMENT

10:27AM  8    FOR A CLAIM UNDER THE STATUTE;

10:27AM  9         FACEBOOK WAS A PARTY TO THE COMMUNICATION, WHICH

10:27AM  10   ABSOLUTELY DECIMATES THEIR CLAIM;

10:27AM  11        THE PLAINTIFFS CONSENTED TO THE USE OF COOKIES, AS I JUST

10:27AM  12   MENTIONED, BECAUSE OF THE PRIVACY POLICY DISCLOSURE; AND,

10:27AM  13        FINALLY, THIRD-PARTY WEBSITES ALSO CONSENTED AND THAT CAN

10:27AM  14   BE A DEFENSE AS WELL UNDER THE WIRETAP ACT.

10:27AM  15        THE COURT:  LET ME EXPLORE JUST FOR A MOMENT THE

10:28AM  16   PARTY AND THE INTERCEPTION.  YOU INDICATED THE PARTY, FACEBOOK,

10:28AM  17   WAS A PARTY TO THE COMMUNICATION, WHICH IT SEEMS LIKE IT WOULD

10:28AM  18   THEN DO AWAY WITH AN INTERCEPTION ARGUMENT.  AND TELL ME HOW

10:28AM  19   THAT WORKS OUT.

10:28AM  20        MR. BROWN:  IT DOES DO AWAY WITH IT.  AND THE

10:28AM  21   PROBLEM HERE, AGAIN, I DON'T MEAN TO BE IMPRECISE, AND I'LL GET

10:28AM  22   VERY PRECISE IN A SECOND, BUT THE PROBLEM IS THEY'RE TRYING TO

10:28AM  23   FIT A SQUARE PEG INTO A ROUND HOLE AND THIS IS NOT A STATUTE

10:28AM  24   THAT IS EVER DESIGNED TO COVER CONDUCT LIKE THAT.  THIS IS THE

10:28AM  25   WIRETAP ACT.

10:28AM   1          THE COURT:  THIS WAS DEVELOPED WAY BEFORE.

10:28AM   2          MR. BROWN:  WAY BEFORE.

10:28AM   3          THE COURT:  BEFORE OUR FORMER VICE PRESIDENT

10:28AM   4   INVENTED THE INTERNET.

10:28AM   5          MR. BROWN:  YEAH.  I MEAN, AND SO NATURALLY YOU'RE

10:28AM   6   GOING TO STRUGGLE TO TRY TO APPLY A STATUTE LIKE THIS TO A SET

10:28AM   7   OF FACTS LIKE THIS.

10:28AM   8       AND WHEN YOU START FINDING YOURSELF SEARCHING FOR HOW YOU

10:28AM   9   CAN MAKE THESE PROVISIONS WORK, IT OUGHT TO BE A RED FLAG.

10:29AM   10      HERE THERE IS NO INTERCEPTION.  WHAT WE HAVE HERE IS TWO

10:29AM   11  SEPARATE AND CONSECUTIVE TRANSMISSIONS.  AND THIS IS FROM THE

10:29AM   12  COMPLAINT, WE'RE TAKING THE NONCONCLUSORY FACTUAL ALLEGATIONS

10:29AM   13  OF THEIR COMPLAINT AS TRUE FOR PURPOSES OF THIS MOTION.

10:29AM   14      NOW, THERE ARE TWO SEPARATE AND CONSECUTIVE TRANSMISSIONS.

10:29AM   15  ONE IS A COMMUNICATION.  FIRST OF ALL, IF YOU ASSUME THERE'S A

10:29AM   16  COMMUNICATION, AND I WOULDN'T CONCEDE THAT.

10:29AM   17         THE COURT:  THE CLICKING AND THE HYPOTHETICAL THAT I

10:29AM   18  USED, THE CLICKING OF WHEREVER IT WAS AND THAT'S NOT A

10:29AM   19  COMMUNICATION?  SENDING THAT REQUEST TO A WEBSITE IS NOT A

10:29AM   20  COMMUNICATION?

10:29AM   21         MR. BROWN:  I WOULDN'T CONCEDE THAT, NO.  CERTAINLY

10:29AM   22  NOT THE CONTENTS OF THE COMMUNICATION, BUT I DON'T THINK THAT

10:29AM   23  WE NEED TO GET THERE TO DISPOSE OF THE CLAIM.

10:29AM   24         THE COURT:  SURE.

10:29AM   25         MR. BROWN:  SO LET'S TAKE CNN.COM AS AN EXAMPLE.

| | | |
|---|---|---|
| 10:29AM | 1 | THE FIRST COMMUNICATION WOULD BE A GET REQUEST TO DISPLAY THAT |
| 10:30AM | 2 | PARTICULAR CNN WEB PAGE TO THE USER AND PLUS ANY INFORMATION |
| 10:30AM | 3 | CONTAINED IN THE CNN.COM WEB PAGE TO THE BROWSER. |
| 10:30AM | 4 | THEN AFTER THAT, THE USER OF THE BROWSER SENDS A DIFFERENT |
| 10:30AM | 5 | GET REQUEST TO FACEBOOK SERVERS IN ORDER TO GET THE FACEBOOK |
| 10:30AM | 6 | LIKE BUTTON IMAGE THAT NEEDS TO BE DISPLAYED BY THE CNN SITE |
| 10:30AM | 7 | AND ALONG WITH THAT ANY INFORMATION THAT WAS IN THE FACEBOOK |
| 10:30AM | 8 | COOKIE THAT WAS ON THE USER'S BROWSER.  TWO DIFFERENT |
| 10:30AM | 9 | COMMUNICATIONS. |
| 10:30AM | 10 | AND, YOU KNOW, PEOPLE MIGHT SAY THIS IS A HYPER TECHNICAL |
| 10:30AM | 11 | LOOK, THE READING OF THE STATUTE.  WELL, IT'S A TECHNICAL |
| 10:30AM | 12 | STATUTE AND IT'S A CERTAIN SET OF FACTS THAT HAVE BEEN BROUGHT |
| 10:30AM | 13 | BEFORE THE COURT, AND IT DOESN'T FIT. |
| 10:30AM | 14 | THE COURT:  SO YOU'RE SAYING IT'S TWO SEPARATE |
| 10:30AM | 15 | COMMUNICATIONS AS OPPOSED TO ONE COMMUNICATION THAT WAS THEN |
| 10:30AM | 16 | INTERCEPTED BY THE FACEBOOK PROCESS, WHATEVER THAT IS? |
| 10:30AM | 17 | MR. BROWN:  THAT'S CORRECT.  AND SO THAT'S ONE |
| 10:31AM | 18 | DISTINCT GROUND IN WHICH THIS CLAIM FAILS AND A DISTINCT GROUND |
| 10:31AM | 19 | FROM THAT, A SECOND GROUND, IS THAT FACEBOOK, AS I JUST SET |
| 10:31AM | 20 | FORTH, IS ACTUALLY A PARTY TO THE COMMUNICATION. |
| 10:31AM | 21 | THE COURT:  AND HOW DOES THAT WORK?  HOW ARE THEY A |
| 10:31AM | 22 | PARTY TO THE USER AT HOME AND IN YOUR COLLEAGUE'S KITCHEN WHEN |
| 10:31AM | 23 | HE WISHES TO GET, HOW ARE THEY A PARTY TO THAT? |
| 10:31AM | 24 | MR. BROWN:  WELL, AGAIN, IF YOU ASSUME IT'S A |
| 10:31AM | 25 | COMMUNICATION, FIRST OF ALL, AS OPPOSED TO JUST THE PROCESS OF |

10:31AM 1      HOW THE INTERNET WORKS AND HOW IT HAS WORKED FOR A LONG TIME, I

10:31AM 2      MIGHT ADD, THEN EITHER THEY'RE A RECIPIENT OF THE COMMUNICATION

10:31AM 3      BETWEEN THE USER OR THE USER'S BROWSER, REALLY TECHNICALLY, AND

10:31AM 4      FACEBOOK, OR THIS IS NOT THE WAY THAT I READ THEIR COMPLAINT OR

10:31AM 5      IF THEY WANT TO CHARACTERIZE THEIR COMPLAINT AS BEING SOMEHOW A

10:31AM 6      COMMUNICATION FROM CNN.COM AND FACEBOOK IS STILL A PARTY TO

10:31AM 7      THAT COMMUNICATION AS WELL.  EITHER WAY.

10:31AM 8              THE COURT:  BY VIRTUE OF?

10:31AM 9              MR. BROWN:  THE COMMUNICATION, IF WE'RE CALLING IT

10:32AM 10     THAT, HAS TO GO TO FACEBOOK, BECAUSE IN ORDER TO POPULATE THE

10:32AM 11     CNN WEBSITE WITH THE FACEBOOK LIKE BUTTON, THERE HAS TO BE A

10:32AM 12     COMMUNICATION WITH THE FACEBOOK SERVER IN ORDER FOR THAT LIKE

10:32AM 13     BUTTON TO GET DISPLAYED.

10:32AM 14             THE COURT:  AND THAT LIKE BUTTON WILL BE DISPLAYED

10:32AM 15     IF THEY LOGGED OFF?

10:32AM 16             MR. BROWN:  THAT'S RIGHT.  THAT'S RIGHT.  AND THAT'S

10:32AM 17     JUST THE WAY THAT THE INTERNET WORKS AND IT'S NOT AS IF CNN.COM

10:32AM 18     CAN JUST POPULATE THAT LIKE BUTTON WITHOUT THIS SERVER REQUEST

10:32AM 19     GOING TO FACEBOOK.

10:32AM 20         SO WE TALK THERE ABOUT NO INTERCEPTION AND FACEBOOK WAS A

10:32AM 21     PARTY TO THE COMMUNICATION.  THE PLAINTIFF'S COUNSEL -- OH,

10:32AM 22     ACTUALLY JUST ON INTERCEPTION FOR A MOMENT, STICKING WITH THAT,

10:32AM 23     PLAINTIFF'S COUNSEL AT ONE POINT SAID ASSUMING THAT KONOP

10:32AM 24     VERSUS HAWAIIAN AIRLINES IS GOVERNING LAW.

10:32AM 25         WELL, WE DON'T HAVE TO ASSUME IT.  WE ARE IN THE NINTH

10:33AM 1      CIRCUIT.  IT IS THE GOVERNING LAW.  AND THE PLAINTIFFS AGAIN

10:33AM 2      WENT OUT OF THEIR WAY TO ARGUE FIRST CIRCUIT AUTHORITY AND

10:33AM 3      SEVENTH CIRCUIT AUTHORITY, AND THEY SEEMED TO LIKE THAT BETTER,

10:33AM 4      BUT WE ARE IN THE NINTH CIRCUIT AND IT IS GOVERNING LAW.

10:33AM 5          AND UNDER KONOP, THE NINTH CIRCUIT HAS HELD THAT IT MUST

10:33AM 6      BE DURING TRANSMISSION, AND THAT'S WHAT INTERCEPTION MEANS, AND

10:33AM 7      THEY DESCRIBE THAT AS THE VERY SHORT PERIOD WHERE TRAVELS

10:33AM 8      ACROSS THE WIRES OF THE SPEED OF LIGHT.

10:33AM 9          SO HAVING TWO SEPARATE COMMUNICATIONS THAT ARE CLOSE IN

10:33AM 10     TIME OR SOMETHING LIKE THAT DOESN'T CUT IT.

10:33AM 11             THE COURT:  ARE THERE ANY CASES, NINTH CIRCUIT OR

10:33AM 12     OTHERWISE, THAT ACTUALLY TELL US WHAT A COMMUNICATION IS, WHAT

10:33AM 13     AN INTERCEPTION IS, WHAT A TRANSMISSION IS VIS-À-VIS THE USE OF

10:33AM 14     THE INTERNET AND THE USER'S USE OF THEIR COMPUTER TRYING TO

10:34AM 15     ACCESS INFORMATION ON THE INTERNET?  IS THERE ANY CASE TELLING

10:34AM 16     US THAT'S WHAT THAT IS, AND, IF NOT, ISN'T THAT WHAT YOU'RE

10:34AM 17     ASKING THE COURT TO DEFINE?

10:34AM 18         THAT'S A QUESTION FOR BOTH OF YOU.

10:34AM 19             MR. BROWN:  I'M GOING TO BE TOTALLY FRANK WITH THE

10:34AM 20     COURT, I'M A LITTLE BIT ON THE SPOT ON THIS ONE AND I'M FELLING

10:34AM 21     ON THE SPOT.

10:34AM 22             THE COURT:  THAT'S WHY WE ASK THIS QUESTION.

10:34AM 23             MR. BROWN:  AND I SHOULD, FRANKLY, BE PREPARED TO

10:34AM 24     ANSWER IT AND I SAY THAT SHEEPISHLY.  AND I THINK WE ADDRESS A

10:34AM 25     COUPLE OF THOSE CASES IN OUR PAPERS, AND I'LL HAVE TO GO BACK

10:34AM 1    AND LOOK.

10:34AM 2        ONE THAT COMES TO MIND ACTUALLY, AND IT'S CLOSE, I'M NOT

10:34AM 3    SURE IF IT'S EXACTLY WHAT YOU'RE GETTING AT, BUT I THINK IT'S

10:34AM 4    CLOSE, IS THE FACEBOOK PRIVACY LITIGATION.  AND SO THAT WAS A

10:34AM 5    CASE WHERE YOU HAD THE ALLEGATION WAS THAT WHEN A FACEBOOK USER

10:34AM 6    CLICKED ON A THIRD-PARTY ADVERTISEMENT THAT APPEARED IN THE

10:34AM 7    FACEBOOK WEBSITE AND THE STANDARD FUNCTIONING OF THE INTERNET,

10:35AM 8    AGAIN, WHAT HAPPENS IS A REFERRER GETS TRANSMITTED FROM THE

10:35AM 9    USER'S BROWSER TO THE KIND OF RECEIVING WEBSITE OR THE

10:35AM 10   ADVERTISER'S WEBSITE.  AND THEN, YOU'RE RIGHT.

10:35AM 11       AND THERE JUDGE WARE -- AND THAT'S A STANDARD FUNCTION OF

10:35AM 12   THE INTERNET, BUT THERE JUDGE WARE HELD THAT ESSENTIALLY

10:35AM 13   FACEBOOK IS A PARTY TO THAT COMMUNICATION ONE WAY OR THE OTHER,

10:35AM 14   AND, THEREFORE, THERE CAN'T BE ANY CLAIM UNDER EITHER THE

10:35AM 15   WIRETAP ACT OR THE SCA.

10:35AM 16       IN TERMS OF THE ELEMENT OF THE WIRETAP ACT, RELATING TO

10:35AM 17   DEVICE, THE WIRETAP ACT REQUIRES THAT THE INTERCEPTION BE

10:35AM 18   ACCOMPLISHED USING AN ELECTRONIC, MECHANICAL OR OTHER DEVICE.

10:35AM 19       THE CROWLEY VERSUS CYBERSOURSE CASE, ANOTHER NORTHERN

10:35AM 20   DISTRICT OF CALIFORNIA CASE, EXPLAINED THAT IT HAD TO BE

10:35AM 21   SOMETHING OTHER THAN THE TOOLS THAT ARE USED IN THE ORDINARY

10:35AM 22   COURSE OF COMMUNICATION.

10:36AM 23       SO -- AND THAT MAKES SENSE, RIGHT?  I MEAN, THIS IS THE

10:36AM 24   WIRETAP ACT.  THE QUINTESSENTIAL EXAMPLE IS THAT YOU TAP A

10:36AM 25   PHONE LINE, YOU TAKE A DEVICE, AND THERE'S A PHONE LINE AND ONE

10:36AM  1     PERSON IS TALKING TO ANOTHER PERSON AND YOU USE IT AND YOU TAP

10:36AM  2     THIS DEVICE, AND YOU STICK IT ON THE PHONE LINE, AND THAT'S THE

10:36AM  3     DEVICE.

10:36AM  4          SO, FINE, OR MAYBE WE'RE NOT IN THAT WORLD IN THIS CASE,

10:36AM  5     BUT I THINK IT'S USEFUL TO THINK ABOUT WHERE THIS STATUTE CAME

10:36AM  6     FROM.

10:36AM  7          SO IF YOU'RE SIMPLY POINTING TO ALL OF THE TYPICAL TOOLS

10:36AM  8     THAT ARE USED IN STANDARD INTERNET USAGE THE WAY THE INTERNET

10:36AM  9     WORKS, THAT'S NOT SUFFICIENT.  THOSE CAN'T BE DEVICES.  IT HAS

10:36AM 10     TO BE SOMETHING BEYOND THAT.

10:36AM 11          AND THE ONLY THING THAT THEY REALLY POINTED TO, AND

10:36AM 12     THEY'RE ALL OVER THE PLACE AND YOU HAVE TO GO BACK AND LOOK

10:36AM 13     CAREFULLY AT THE COMPLAINT TO LOOK AT WHAT THEY ALLEGED THERE

10:36AM 14     TO SEE WHAT THEY BROUGHT INTO THEIR OPPOSITION BRIEF, WHICH IS

10:36AM 15     A DIFFERENT STORY.

10:36AM 16          BUT ANYTHING THAT THEY POINTED TO, THE COOKIES THEMSELVES,

10:37AM 17     BROWSERS, THEIR COMPUTERS, FACEBOOK SERVERS, THOSE ARE ALL

10:37AM 18     TOOLS THAT WOULD BE USED ORDINARILY TO ACCOMPLISH WHAT IS

10:37AM 19     TRYING TO BE ACCOMPLISHED, WHICH IS TO PULL UP A WEB PAGE AND

10:37AM 20     SHOW THE FACEBOOK LIKE BUTTON.

10:37AM 21          THE COURT:  SO THOSE ARE NOT UNUSUAL IN THE CURRENT

10:37AM 22     TECHNOLOGY, AND I MEANT NO DISRESPECT TO OUR FORMER VICE

10:37AM 23     PRESIDENT, BUT SINCE THE ADVENT OF THE INTERNET AND ALL OF THE

10:37AM 24     IMPROVEMENTS THAT IT HAS TAKEN, YOU'RE SAYING THAT THE GROWTH

10:37AM 25     OF THE TECHNOLOGY, THE EQUIPMENT TO ACCESS THAT.

| | | |
|---|---|---|
| 10:37AM | 1 | MR. BROWN:  YEAH.  I MEAN, THIS IS THE WAY THAT THE |
| 10:37AM | 2 | MODERN INTERNET WORKS AND IT NEEDS ALL OF THESE TOOLS AND SO |
| 10:37AM | 3 | THAT CAN'T BE SORT OF THE, YOU KNOW, EXTERNAL DEVICE, IF YOU |
| 10:37AM | 4 | WILL, THAT IS BEING EMPLOYED TO UNDERTAKE THIS ALLEGED |
| 10:37AM | 5 | INTERCEPTION WHILE IN TRANSIT.  IT'S NOT ANALOGOUS TO THE OLD |
| 10:37AM | 6 | FASHIONED PHONE WIRETAP. |
| 10:38AM | 7 | FINALLY, THIRD-PARTY WEBSITES ALSO CONSENTED AND COURTS |
| 10:38AM | 8 | HAVE OFTEN INFERRED CONSENT WHERE IT'S CLEAR FROM THE BUSINESS |
| 10:38AM | 9 | ARRANGEMENT? |
| 10:38AM | 10 | OBVIOUSLY CNN IS CONSENTING TO THE GET REQUEST AND THE |
| 10:38AM | 11 | TRANSMISSION TO FACEBOOK BECAUSE CNN OBVIOUSLY WANTS ITS OWN |
| 10:38AM | 12 | WEB PAGE TO BE POPULATED WITH THE LIKE BUTTON.  AND SO ONCE |
| 10:38AM | 13 | AGAIN, AND WE HAVE CITED SOME CASES, TOYS 'R' US PRIVACY |
| 10:38AM | 14 | LITIGATION, DOUBLECLICK, THE CHANCE CASE THAT SUPPORT THAT |
| 10:38AM | 15 | PROPOSITION AS WELL. |
| 10:38AM | 16 | THE COURT:  WHY DON'T WE MOVE TO THE SCA, AND I KNOW |
| 10:38AM | 17 | MR. GRYGIEL IS GOING TO SPEAK TO THAT, BUT WHY DON'T YOU TELL |
| 10:38AM | 18 | ME YOUR THOUGHTS ABOUT THAT.  I WAS THINKING ABOUT THE COOKIES |
| 10:38AM | 19 | THING.  YOU'LL HAVE A CHANCE. |
| 10:38AM | 20 | MR. GRYGIEL:  NO, ACTUALLY, YOUR HONOR, MR. STRAITE |
| 10:39AM | 21 | IS GOING TO. |
| 10:39AM | 22 | THE COURT:  THAT'S RIGHT.  I BEG YOUR PARDON. |
| 10:39AM | 23 | MR. STRAITE, YOU'RE GOING TO DO THAT. |
| 10:39AM | 24 | MR. GRYGIEL:  BUT IF HE DOES A GOOD JOB, I'D RATHER |
| 10:39AM | 25 | BE HIM. |

10:39AM 1               THE COURT: SO THIS COOKIE STORAGE, I GUESS THAT'S

10:39AM 2   ONE OF THE FIRST QUESTIONS, THE COOKIE STORAGE.

10:39AM 3               MR. BROWN: SO LET'S START WITH THAT. THERE ARE

10:39AM 4   FOUR MAIN POINTS TO MAKE ON THE SCA, AND, AGAIN, I'LL TRY NOT

10:39AM 5   TO REGURGITATE THE BRIEFING THAT WE SUBMITTED.

10:39AM 6               THE COURT: AND LET ME STOP YOU THERE. BOTH OF YOUR

10:39AM 7   PLEADINGS ARE FANTASTIC. THEY'RE VERY HELPFUL. I APPRECIATE

10:39AM 8   IT. IT'S ALWAYS A PLEASURE TO HAVE WONDERFUL PLEADINGS IN

10:39AM 9   FRONT OF THE JUDGE, AND I APPRECIATE THAT.

10:39AM 10             MR. GRYGIEL: THANK YOU, YOUR HONOR.

10:39AM 11             MR. BROWN: SO THE DEFINITION OF ELECTRONIC STORAGE

10:39AM 12   UNDER THE STATUTE MEANS EITHER TEMPORARY, INTERMEDIATE STORAGE

10:39AM 13   OF A WIRE OR ELECTRONIC COMMUNICATION INCIDENTAL TO AN

10:39AM 14   ELECTRONIC COMMUNICATION OR STORAGE OF SUCH COMMUNICATION BY AN

10:39AM 15   ELECTRONIC COMMUNICATION SURFACE FOR PURPOSES OF BACKUP

10:39AM 16   PROTECTION.

10:39AM 17      I'LL GET INTO THIS IN A LITTLE MORE DETAIL, BUT I THINK,

10:40AM 18   YOU KNOW, JUST LINGERING FROM ON THAT TECHNICAL DEFINITION OF

10:40AM 19   THE STATUTE LEADS YOU TO WONDER HOW THAT DEFINITION COULD EVER

10:40AM 20   BE SATISFIED IN THIS CASE. IT'S A SQUARE PEG, ROUND HOLE

10:40AM 21   PROBLEM ALL OVER AGAIN.

10:40AM 22      AND THE DATA STORED ON PLAINTIFF'S PERSONAL COMPUTERS IS

10:40AM 23   NOT AN ELECTRONIC STORAGE. AND AS THE COMPLAINT ALLEGES,

10:40AM 24   COOKIE IS JUST A TEXT FILE THAT RESIDES ON THE PLAINTIFF'S

10:40AM 25   COMPUTER AND IS PART OF THE BROWSER.

10:40AM  1        AND NONTEMPORARY DATA, AND PARTICULARLY DATA STORED ON A

10:40AM  2    PERSONAL COMPUTER HAS BEEN HELD NOT TO BE ELECTRONIC STORAGE

10:40AM  3    UNDER THE SCA, AGAIN, TOYS 'R' US PRIVACY LITIGATION; IPHONE

10:40AM  4    APPLICATION LITIGATION, THE SECOND OPINION; AND THE COUNCIL ON

10:40AM  5    AMERICAN-ISLAMIC RELATIONS, ALL CASES THAT WE CITED IN OUR

10:40AM  6    BRIEFS.

10:41AM  7        SECONDLY, FOR THESE PURPOSES, PLAINTIFFS HAVEN'T ALLEGED

10:41AM  8    THAT FACEBOOK IS AN ELECTRONICS COMMUNICATION SERVICE, LET

10:41AM  9    ALONE ONE THAT STORES THEIR DATA FOR BACKUP PROTECTION

10:41AM 10    PURPOSES.

10:41AM 11        SO, LIKE I SAID, THERE ARE TWO DIFFERENT ASPECTS OF THE

10:41AM 12    DEFINITION, BUT THERE'S SIMPLY NO -- I MEAN, IT'S HARD TO GET

10:41AM 13    YOUR HEAD AROUND HOW THAT CAN BE THE CASE ON THESE FACTUAL

10:41AM 14    ALLEGATIONS, BUT THERE'S ABSOLUTELY NO ALLEGATION IN THE

10:41AM 15    COMPLAINT THAT FACEBOOK IS SOMEHOW STORING THEIR -- THE

10:41AM 16    PLAINTIFF'S DATA FOR BACKUP PROTECTION PURPOSES.  IT'S NOT WHAT

10:41AM 17    THE CASE IS ABOUT.  SO THAT PORTION OF THE DEFINITION CERTAINLY

10:41AM 18    CAN'T BE SATISFIED.

10:41AM 19        AT SOME POINT THEY ACTUALLY ALLEGED A SINGLE PARAGRAPH IN

10:41AM 20    THE SCA, AND PLAINTIFF'S AND CLASS MEMBER'S COMPUTERS ARE THE

10:42AM 21    FACILITIES THROUGH WHICH THE ELECTRONICS COMMUNICATION SERVICE

10:42AM 22    IS PROVIDED.

10:42AM 23        SO, AGAIN, IT APPEARS, I DON'T THINK THAT THEY HAVE

10:42AM 24    ACTUALLY ALLEGED WHO THE ELECTRONICS COMMUNICATION SERVICE IS

10:42AM 25    IN THIS CONTEXT, BUT IT'S THE MOST THAT THEY HAVE DONE IS KIND

10:42AM 1    OF MENTIONED IT OFFHANDLY WITHOUT ACTUALLY IDENTIFYING WHO THE

10:42AM 2    ECS WOULD BE UNDER THE SCA.

10:42AM 3        THE THIRD POINT IS REGARDING PLAINTIFF'S THEORY THAT THEIR

10:42AM 4    COMPUTERS ARE FACILITIES UNDER THE SCA AND THERE ARE MANY

10:42AM 5    DECISIONS THAT HAVE HELD THAT PERSONAL COMPUTERS CAN'T BE

10:42AM 6    FACILITIES UNDER THE SCA.

10:42AM 7        AGAIN, THIS SEEMS TO BE A POPULAR DECISION TODAY, THE

10:43AM 8    IPHONE APPLICATION LITIGATION, 844 F.SUPP. 2D, 1040 AND THERE

10:43AM 9    JUDGE KOH COLLECTED A NUMBER OF CASES AND HELD THAT THE COURTS

10:43AM 10   HAVE TAKEN A CLOSER ANALYTICAL LOOK AND HAVE CONSISTENTLY

10:43AM 11   CONCLUDED THAT AN INDIVIDUAL'S PERSONAL COMPUTER DOES NOT

10:43AM 12   PROVIDE AN ELECTRONICS COMMUNICATION SERVICE SIMPLY BY VIRTUE

10:43AM 13   OF ENABLING USE OF ELECTRONIC COMMUNICATION SERVICES.

10:43AM 14       AND, IN FACT, INTERPRETING FACILITIES TO MEAN PERSONAL

10:43AM 15   COMPUTERS THAT ACTUALLY RENDER PARTS OF THE STATUTE ILLOGICAL,

10:43AM 16   AND WE HAVE CITED SOME CASES IN THAT REGARD THAT HAVE MADE THAT

10:43AM 17   VERY POINT AND HAVE USED THAT AS A REASON TO INTERPRET THE

10:43AM 18   STATUTE IN THE WAY THAT WE'RE SUGGESTING IT SHOULD BE

10:43AM 19   INTERPRETED.

10:43AM 20       SO THOSE ARE -- SO I THINK THOSE ARE THE MAIN POINTS, AND,

10:44AM 21   AGAIN, MANY OF THEM HAVE ALREADY BEEN MADE IN THE BRIEFING BUT

10:44AM 22   IT SEEMS LIKE THE ONE YOU WERE MOSTLY INTERESTED IN WAS THE

10:44AM 23   ELECTRONICS STORAGE POINT, AND I DON'T THINK THAT WE'RE IN THE

10:44AM 24   SAME UNIVERSE FACTUALLY AS WHAT YOU NEED TO BE IN FOR THAT

10:44AM 25   DEFINITION TO BE SATISFIED.

10:44AM 1          THE COURT:  THANK YOU.

10:44AM 2      I'LL ASK, MR. STRAITE, DID YOU WANT TO COMMENT ON THE SCA

10:44AM 3  ISSUES?

10:44AM 4          MR. STRAITE:  SURE.  GOOD MORNING, YOUR HONOR.

10:44AM 5  BEFORE WE TURN TO THE SCA, MAY I JUST CORRECT ONE MISSTATEMENT

10:44AM 6  EARLIER MADE?

10:44AM 7      YOU HAD ASKED WHETHER WE HAD PLED ANY FACTS RELATED TO THE

10:44AM 8  VALUE OF PERSONALLY IDENTIFIABLE INFORMATION TO THE USER AND

10:44AM 9  ACTUALLY WE DO IN OUR COMPLAINT PARAGRAPHS 117, 118, 122, ET

10:44AM 10  CETERA, IN OUR COMPLAINT WHERE WE ALLEGE THAT THERE IS NOW,

10:44AM 11  IT'S A NEW DEVELOPMENT, THERE IS A MARKET FOR THE USER TO SELL

10:44AM 12  HIS OR HER PERSONAL INFORMATION.

10:44AM 13      YOU ASKED IS THERE A KIOSK I CAN GO TO, TO SELL MY PII?

10:45AM 14  AND THE ANSWER IS NOW THERE IS, YES, THERE IS.  A NEW

10:45AM 15  DEVELOPMENT.  AND ONE EXAMPLE, GOOGLE NOW HAS A PANEL CALLED

10:45AM 16  GOOGLE STREETWISE TRENDS WHERE THEY'RE ANALYZING PRECISELY WHAT

10:45AM 17  IS HAPPENING HERE IN THIS CASE, WHERE YOU GO ON THE INTERNET.

10:45AM 18      AND THEY WILL PAY USERS UP TO $5, VARIOUS COUPONS, GO TO

10:45AM 19  RETAILERS SUCH AS BARNES AND NOBLE AND WALMART AND

10:45AM 20  OVERSTOCK.COM AND YOU CAN USE YOUR $5 GIFT CARD.  SO THIS

10:45AM 21  INFORMATION THAT FACEBOOK, WE ALLEGE, IS ILLEGALLY INTERCEPTING

10:45AM 22  OR STEALING IS WORTH $5 TO EACH USER.  WE MAKE THAT ALLEGATION

10:45AM 23  STARTING AT PARAGRAPH 117.

10:45AM 24      ADDITIONALLY, THERE ARE NOW COMPANIES, THERE ARE

10:45AM 25  ELECTRONIC KIOSKS.  ONE COMPANY IS CALLED ALLOW LIMITED.  IT'S

10:45AM 1    A U.K. COMPANY, THEY ALSO WILL PAY USERS FOR THEIR PII

10:45AM 2    PRECISELY SO THAT THEY CAN LEARN WHERE YOU PERSONALLY ARE GOING

10:45AM 3    ON THE INTERNET AND THEN THEY WILL TARGET IT AND ADVERTISE TO

10:45AM 4    YOU.

10:45AM 5        SO THE UNIVERSE HAS NOW CHANGED AND JUST IN THE PAST FEW

10:45AM 6    MONTHS THIS IS NO LONGER A SITUATION.  THERE'S AN ALTERNATIVE

10:46AM 7    UNIVERSE WHICH HAS SORT OF DEVELOPED IN THE CASE LAW WHERE PII

10:46AM 8    HAS NO VALUE TO YOU BUT IT HAS VALUE TO SOMEBODY WHO STEALS IT

10:46AM 9    FROM YOU.

10:46AM 10        NOW, WE HAVE GONE TO A MORE SENSIBLE SITUATION WHERE

10:46AM 11   PEOPLE REALIZE I CAN PAY PEOPLE FOR THEIR DATA AND FOR THE PII

10:46AM 12   AND I CAN MAKE MONEY BY SIMPLY TAKING IT.  AND TO CORRECT AN

10:46AM 13   EARLIER STATEMENT, WE DO ALLEGE IT AND THIS, I THINK, PERHAPS,

10:46AM 14   DISTINGUISHES THIS CASE FROM CASES THAT HAVE GONE BEFORE WHERE

10:46AM 15   COURTS MAY HAVE RULED THAT PII HAS NO VALUE, AND, THEREFORE,

10:46AM 16   THERE'S NO ARTICLE III HARM BECAUSE THE INDUSTRY HAS CHANGED

10:46AM 17   AND WE FEEL THAT THOSE CASES ARE NOW DISTINGUISHABLE AND THAT'S

10:46AM 18   JUST A CORRECTION THERE.

10:46AM 19        MORE SPECIFICALLY ON THE SCA, SINCE I JUST SPOKE ABOUT

10:46AM 20   ARTICLE III STANDING FOR THE THEFT OF PII, I SHOULD NOTE THAT

10:46AM 21   THE SCA DOES NOT REQUIRE THAT.  AS WE HEARD THE CONCESSION

10:46AM 22   EARLIER, BUT IF THE INJURY IS THE -- RELATES TO A STATUTORY

10:46AM 23   PROTECTED RIGHT, WE DON'T NEED TO ACTUALLY SHOW ACTUAL

10:47AM 24   OUT-OF-POCKET LOSS, AND WE ONLY NEED TO SHOW THESE OTHER TYPES

10:47AM 25   OF HARMS.

10:47AM 1      THE COURT:  YOU HAVE TO SHOW THAT WHATEVER THE

10:47AM 2  CONDUCT IS THAT RELATES TO YOU IN THAT STATUTE, RIGHT, YOU HAVE

10:47AM 3  TO DRILL DOWN A LITTLE FURTHER TO SHOW THAT THIS IS WHY WE

10:47AM 4  CHOSE THIS PARTICULAR STATUTE?

10:47AM 5      MR. STRAITE:  YES, WE WOULD HAVE TO ALLEGE IN THE

10:47AM 6  COMPLAINT, FOR INSTANCE, WHAT THE NATURE OF THE HARM WAS.  WE

10:47AM 7  CAN'T JUST SAY FACEBOOK IS SPYING ON PEOPLE.  WE HAVE TO SAY

10:47AM 8  THIS PARTICULAR LEAD PLAINTIFF IS A MEMBER OF FACEBOOK, AND WE

10:47AM 9  HAVE TO SAY AND THIS PERSON LOGGED OUT AND POST LOGOUT INTERNET

10:47AM 10 TRACKING WAS PERFORMED WITHOUT HIS OR HER CONSENT.

10:47AM 11     THE COURT:  AND THAT'S WHAT YOU HAVE TO HAVE FOR THE

10:47AM 12 SCA?

10:47AM 13     MR. STRAITE:  ABSOLUTELY, YOUR HONOR.  RIGHT.

10:47AM 14     THE COURT:  NOTHING MORE?

10:47AM 15     MR. STRAITE:  RIGHT.  I KNOW WE TALKED AT LENGTH

10:47AM 16 ABOUT GAOS V. GOOGLE AND IN THERE BECAUSE THERE WERE SOME

10:47AM 17 COMMUNICATIONS THAT MAY OR MAY NOT HAVE CONTAINED IMPORTANT

10:47AM 18 INFORMATION THAT MAY NOT HAVE BEEN PROTECTED THAT PLAINTIFF

10:47AM 19 SHOWS ACTUALLY ALLEGED WHICH WEBSITE TO VISIT.

10:48AM 20     I FIND IT INTERESTING THAT HERE THE PLAINTIFFS ARE BEING

10:48AM 21 CHASTISED FOR NOT ACTUALLY PLEADING EXACTLY WHICH WEBSITES WERE

10:48AM 22 VISITED AND WHAT INFORMATION WAS TRANSMITTED AND HOW FROM

10:48AM 23 FACEBOOK AND THEN THE SENTENCE FOR COUNSEL FOR FACEBOOK SAYS,

10:48AM 24 I'M NOT SURE HOW UNDER RULE 11 YOU CAN ACTUALLY PLEAD THESE

10:48AM 25 FACTS AND HOW COULD YOU POSSIBLY KNOW THAT?  WELL, THAT'S

```
10:48AM  1      ACTUALLY THE POINT, WE DON'T ACTUALLY KNOW IT.

10:48AM  2          AND, FURTHERMORE, BASED ON THE PLEADINGS STANDARDS IN THIS

10:48AM  3      CIRCUIT, WE DON'T HAVE TO ALLEGE PRECISELY WHICH WEBSITES WERE

10:48AM  4      VISITED ON WHICH DAY BECAUSE EVERY WEBSITE VISITED WAS

10:48AM  5      INTERCEPTED BY FACEBOOK BECAUSE ALL POST LOGOUT INTERNET

10:48AM  6      BROWSING DURING THE CLASS PERIOD WE PROPOSE WAS, IN FACT,

10:48AM  7      TRACKED.  AND SO EVERY SINGLE WEBSITE AND EVERY SINGLE

10:48AM  8      CONVERSATION WHERE THERE WAS STATED FUNCTIONALITY THERE WAS

10:48AM  9      FACEBOOK ON THE BACK END.

10:48AM 10          THE COURT:  AND THAT'S SUFFICIENT YOUR PLEADING

10:48AM 11      SUGGESTS FOR SCA COVERAGE?

10:48AM 12          MR. STRAITE:  ABSOLUTELY.  I DO AGREE WE HAVE TO

10:48AM 13      ALLEGE THAT THE NAMED PLAINTIFFS WERE HARMED, AND WE DO ALLEGE

10:48AM 14      THAT IN SUFFICIENT DETAIL.

10:48AM 15          THE COURT:  I GUESS I WAS LOOKING AT SOME OF THESE

10:48AM 16      OTHER CASES SUGGESTED GREATER, LIKE GAOS AND SOME OTHERS,

10:48AM 17      GREATER SPECIFICITY.

10:49AM 18      THE EDWARDS CASE TALKED ABOUT THE RESPA AND YOU LOOK AT

10:49AM 19      THAT AND, WELL, MY GOSH, THERE WASN'T EVEN -- THAT PLAINTIFF

10:49AM 20      WAS NOT EVEN HARMED AND THERE WAS NOT FINANCIAL HARM BUT IN

10:49AM 21      RESPA, THE COURT, AS YOU RECALL, WENT THROUGH AND PARSED OUT

10:49AM 22      EXACTLY WHAT THE CONDUCT WAS THAT ALLOWED THE RESPA CLAIM TO GO

10:49AM 23      FORWARD.

10:49AM 24          WHEN I LOOKED AT THIS CLAIM, I WAS CURIOUS WHETHER OR NOT

10:49AM 25      YOU HAD DONE THAT SAME TYPE OF ANALYSIS WITH YOUR ALLEGATIONS,
```

10:49AM 1    AND THE COURT ACTUALLY DID IN THE EDWARDS CASE AND I'M CURIOUS

10:49AM 2    WHETHER YOU HAVE DONE THAT.

10:49AM 3              MR. STRAITE:  ABSOLUTELY, YOUR HONOR.  WE GO THROUGH

10:49AM 4    PARAGRAPH BY PARAGRAPH BY PARAGRAPH EXPLAINING IN OBVIOUSLY

10:49AM 5    VERY TECHNICAL DETAIL HOW GET REQUESTS WORK AND WHAT SORT OF

10:49AM 6    INFORMATION AND WHAT SORT OF HTML CODES ARE TRANSMITTED BACK

10:49AM 7    AND FORTH.  AND IT REALLY IS A CONVERSATION BACK AND FORTH

10:49AM 8    BETWEEN THE THIRD-PARTY WEBSITE AND YOUR COMPUTER AND YOU GET

10:49AM 9    REQUESTS AND SOMETIMES VERY REVEALING WEB SEARCHES THAT ARE

10:49AM 10   INCLUDED AND IT'S NOT SIMPLY IT'S PAGES YOU CLICKED THROUGH,

10:49AM 11   AND IT SHOWS WHAT YOU'RE INTERESTED IN, WHEN YOU'RE INTERESTED

10:50AM 12   IN THEM, WHAT YOU CLICK ON AND WHAT YOU SEARCH FOR.

10:50AM 13        AND SOME OF THESE ARE, YOU KNOW, THESE CAN BE VERY LONG

10:50AM 14   CHAINS OF INFORMATION, INCLUDING YOUR NAME AND SEARCH TERMS AND

10:50AM 15   SOMETHING THAT MY LEARNED COLLEAGUE SAID IT WOULD BE VERY

10:50AM 16   DISTURBING IF OTHER PEOPLE KNEW YOU WERE MAKING THESE SEARCHES.

10:50AM 17   THAT INFORMATION IS CONTENT AND THERE IS COMMUNICATION IN THESE

10:50AM 18   SEARCHES, AND WE ALLEGE THAT IN SUFFICIENT DETAIL.

10:50AM 19        BECAUSE FACEBOOK'S ALLEGED ACTIVITIES INVOLVE TRACKING

10:50AM 20   EVERY SINGLE CONVERSATION POST LOGOUT WITH WEBSITES THAT HAVE

10:50AM 21   FACEBOOK FUNCTIONALITY, THERE'S NO NEED TO ACTUALLY GO THROUGH

10:50AM 22   AND REINSTRUCT THE SEARCH HABITS OF EACH NAMED PLAINTIFF.  AND

10:50AM 23   YOU CAN DO THAT, BUT IT'S NOT NEEDED.

10:50AM 24              THE COURT:  IS THE CRUX OF THE LAWSUIT THEN THE FACT

10:50AM 25   THAT THE CONDUCT OCCURRED AFTER LOGOUT?

| | | |
|---|---|---|
| 10:50AM | 1 | MR. STRAITE:  YES, YOUR HONOR.  YES, YOUR HONOR. |
| 10:50AM | 2 | RIGHT. |
| 10:50AM | 3 | THE COURT:  ALL RIGHT. |
| 10:51AM | 4 | MR. STRAITE:  BACK TO THE SCA, WHILE WE BELIEVE THAT |
| 10:51AM | 5 | THE LANDSCAPE FOR ARTICLE III STANDING FOR THEFT OF PII IS |
| 10:51AM | 6 | CHANGING, NOW THAT WE HAVE THIS NEW MARKETPLACE, IT'S NOT |
| 10:51AM | 7 | NEEDED FOR SCA PURPOSES FOR STANDING BECAUSE THERE IS A |
| 10:51AM | 8 | STATUTORY PROTECTIVE RIGHT THAT HAS BEEN INFRINGED UPON. |
| 10:51AM | 9 | A COUPLE ISSUES THAT WERE RAISED.  DISTINGUISHING THE |
| 10:51AM | 10 | CASES THAT SAY THAT A PC IS NOT A FACILITY, I'M NOT SURE |
| 10:51AM | 11 | ACTUALLY THAT'S WHAT THE IPHONE CASE AND OTHER CASES HELD.  I |
| 10:51AM | 12 | BELIEVE THOSE CASES HELD THAT IT WAS NOT SUFFICIENTLY PLED THAT |
| 10:51AM | 13 | A COMPUTER WAS A FACILITY.  HERE BECAUSE WE HAVE PARAGRAPH |
| 10:51AM | 14 | AFTER PARAGRAPH AFTER PARAGRAPH EXPLAINING PRECISELY HOW |
| 10:51AM | 15 | FACEBOOK HAS TAKEN OVER THESE USER'S COMPUTERS BY PUTTING THE |
| 10:51AM | 16 | COOKIE ONTO THE COMPUTER, WITH CONSENT WHILE YOU'RE LOGGED IN, |
| 10:51AM | 17 | NOT EXPIRING THE COOKIE UPON LOGOUT, AND HAVING THESE |
| 10:51AM | 18 | COMMUNICATIONS WITH THIRD-PARTY WEBSITES THEN COMBINED WITH THE |
| 10:52AM | 19 | INFORMATION THAT IS IN THAT TEXT FILE AND THEN SENDING IT BACK |
| 10:52AM | 20 | TO FACEBOOK WITHOUT THE KNOWLEDGE OR THE CONSENT OF THE USER, |
| 10:52AM | 21 | THAT MEANS THAT THIS COMPUTER IS THE DEVICE, IT IS A FACILITY |
| 10:52AM | 22 | FOR ACCOMPLISHING THE TASK THAT FACEBOOK IS USING IT FOR. |
| 10:52AM | 23 | SO WHILE THERE ARE CASES OUT THERE AND WE ACKNOWLEDGE THEM |
| 10:52AM | 24 | THAT HAVE HELD THAT A PERSON'S PERSONAL COMPUTER MAY NOT BE A |
| 10:52AM | 25 | FACILITY IN THOSE CASES, HERE OUR FACTS ARE DIFFERENT AND THOSE |

10:52AM 1    FACTS REALLY HELD THAT IT WAS NOT PLED AS PROPERLY AS A

10:52AM 2    FACILITY UNDER THE STATUTE WHERE WE HAVE.

10:52AM 3              THE COURT:  OKAY.  GREAT.  THANK YOU.  MR. BROWN.

10:52AM 4              MR. BROWN:  AGAIN, GOING BACK TO THIS ISSUE ABOUT

10:52AM 5    THE VALUE OF THE PERSONAL INFORMATION AND MR. STRAITE MENTIONED

10:52AM 6    SOME OF THESE STUDIES OUT THERE AND THESE COMPANIES LIKE ALLOW

10:52AM 7    LIMITED.

10:53AM 8         THESE THEORIES HAVE ALREADY BEEN TRIED IN A NUMBER OF

10:53AM 9    OTHER CASES, AND THEY HAVE BEEN REJECTED.  SO IT'S NOT TRUE

10:53AM 10   THAT THEIR ALLEGATIONS IN THIS COMPLAINT DISTINGUISH THEMSELVES

10:53AM 11   FROM THESE OTHER CASES.

10:53AM 12        AND I'M DOING THIS OFF THE TOP OF MY HEAD, I MUST

10:53AM 13   ACKNOWLEDGE.  BUT I WOULD -- I THINK IT MIGHT BE AN INTERESTING

10:53AM 14   EXERCISE, SHALL I SAY, TO PULL UP THE COMPLAINTS AND IN THE

10:53AM 15   LACOURT COURT VERSUS SPECIFIC MEDIA CASE AS WELL AS THE IPHONE

10:53AM 16   APPLICATION LITIGATION BECAUSE IT MAY NOT BE -- I THINK

10:53AM 17   ACTUALLY IN THOSE CASES IT IS.  YOU CAN TELL FROM THE OPINIONS

10:53AM 18   THEMSELVES, BUT I THINK IT'S EVEN MORE INTERESTING WHEN YOU

10:53AM 19   PAIR UP THOSE COMPLAINTS WITH THE OPINIONS, AND I THINK YOU

10:53AM 20   WILL FIND THAT THESE VERY THEORIES HAVE ALREADY BEEN ALLEGED IN

10:53AM 21   OTHER CASES AND SOUNDLY REJECTED.

10:53AM 22        ON THE ISSUE OF STATUTORY HARM, YOU KNOW, THE LACK OF

10:53AM 23   CONSENT REQUIREMENT OF THE STATUTE BOTH THE UCL AND THE WIRETAP

10:54AM 24   ACT, I'M SORRY, THE SCA AND THE WIRETAP ACT, REALLY START TO

10:54AM 25   MERGE INTO THE ARTICLE III ANALYSIS AS I THINK THE COURT IS

GETTING AT, AND HERE IT WAS VERY INTERESTING.

SO THE PLAINTIFFS HAVE SAID THAT ALL YOU NEED TO DO IS
ESSENTIALLY SHOW THAT THEY LOGGED OUT AND THEN THEY WENT TO
ACCESS THE WEBSITE THAT HAD THE FACEBOOK LIKE BUTTON.  I MIGHT
BE SIMPLIFYING A LITTLE BIT, BUT THAT'S ESSENTIALLY WHAT
THEY'RE SAYING.  THAT'S ABSOLUTELY WRONG.  THAT CAN'T BE WHERE
THE INQUIRY ENDS BECAUSE THEY HAVE NOT ALLEGED IN THEIR
COMPLAINT SUFFICIENTLY LACK OF CONSENT.  THE ENTIRE CASE IS
ABOUT THE POST-LOGOUT WORLD.

AS WE HAVE SEEN, THE PRIVACY POLICY DISCLOSES THE USE OF
COOKIES AND DOESN'T DISTINGUISH BETWEEN LOG IN AND LOGOUT
USAGE.  THE ONLY THING THAT THEY POINT TO -- THIS IS REALLY
WHAT THE ENTIRE THEORY OF THEIRS COMES DOWN TO IS THE ONE
SENTENCE IN THE HELP CENTER WHICH, FRANKLY, I THINK THAT IS A
PROBLEMATIC BASIS FOR THEM TO BASE THIS ENTIRE THEORY ON ANYWAY
BECAUSE THEY HAVE ALREADY ACKNOWLEDGED THAT THE GOVERNING
DOCUMENTS, THEIR WORDS, ON THE SITE ON THE TERMS OF USE AND THE
PRIVATE POLICY, BUT EVEN IF THAT WEREN'T PROBLEMATIC
FUNDAMENTALLY, THEY HAVE NOT ALLEGED THAT THEY ACTUALLY SAW
THAT HELP CENTER CONTENT OR RELIED ON IT BEFORE TAKING THE
ACTIONS THAT FORM THE BASIS OF THE COMPLAINT.  I DON'T SEE HOW
YOU CAN --

THE COURT:  AND YOU THINK THAT'S FATAL TO THEIR
CLAIM?

MR. BROWN:  I DO.  IT'S FATAL TO THE CLAIMS IF YOU

10:55AM 1    WERE LOOKING AT IT FROM A 12(B)(6) PERSPECTIVE BUT EVEN FROM A

10:55AM 2    12(B)(1) STANDING PERSPECTIVE, IN TERMS OF THE UCL, THE SCA AND

10:55AM 3    THE WIRETAP ACT, EVEN FROM JUST THAT PERSPECTIVE UNDER

10:55AM 4    12(B)(1), I ALSO THINK IT'S FATAL TO THAT BECAUSE THAT'S WHAT

10:55AM 5    WOULD GIVE YOU THE TETHERING BETWEEN THESE NAMED PLAINTIFFS AND

10:55AM 6    THE TYPE OF HARM THAT THE SCA AND THE WIRETAP ACT WERE INTENDED

10:56AM 7    TO PREVENT.

10:56AM 8         AND THAT IS THE STANDARD.  YOU CAN'T SIMPLY JUST ALLEGE

10:56AM 9    THOSE VIOLATIONS KIND OF ON THE FACE OF IT AND HOPE TO, YOU

10:56AM 10   KNOW, PRESENT A CASE FOR CONTROVERSY TO THE COURT.

10:56AM 11        THE COURT:  OKAY.  THANK YOU VERY MUCH.

10:56AM 12   COUNSEL, MR. BROWN IS GOING TO HAVE THE LAST WORD HERE BUT

10:56AM 13   DO YOU WANT TO --

10:56AM 14        MR. GRYGIEL:  I DO, YOUR HONOR, IF I MIGHT.  I

10:56AM 15   PROMISE NOT TO TROUBLE THE COURT LONG.  JUST A COUPLE OF BRIEF

10:56AM 16   POINTS.

10:56AM 17        NUMBER ONE, WE HAVE HEARD ABOUT THE CONSENT ISSUE.  IT IS

10:56AM 18   NOT THE PLAINTIFF'S JOB TO CARRY THE BURDEN ON THE CONSENT

10:56AM 19   DEFENSE, THAT IS THE DEFENDANT'S.  THEY SHOULD CARRY THAT WITH

10:56AM 20   THE SAME SPECIFICITY THAT THEY ARGUE THAT THE PLAINTIFFS SHOULD

10:56AM 21   CARRY IN THEIR CASE IN CHIEF.  THEY HAVEN'T BEGUN TO DO THAT.

10:56AM 22        NUMBER TWO, THE GOVERNING DOCUMENTS.  I WILL SAY THIS

10:56AM 23   ABOUT THE GOVERNING DOCUMENTS.  I WOULD SUBMIT THAT EVERYBODY

10:56AM 24   IN THIS ROOM CAN SPEND FROM NOW UNTIL THE END OF NEXT WEEK

10:56AM 25   READING THEM AND UNDERSTANDING THEM AND YOU WILL COME AWAY WITH

|        |    |                                                              |
|--------|----|--------------------------------------------------------------|
| 10:56AM | 1  | ONE THEME FOR SURE, NOWHERE DOES FACEBOOK AFFIRMATIVELY SAY TO |
| 10:57AM | 2  | ANY USER, WE ARE INVOLVED IN YOUR COMMUNICATIONS WITH |
| 10:57AM | 3  | THIRD-PARTY WEBSITES AFTER YOU LOG OUT. |
| 10:57AM | 4  | WHAT YOU WILL SEE, AND THIS IS IN EXHIBIT C TO THE SOLINKY |
| 10:57AM | 5  | DECLARATION IN THE FIRST BRIEF, WHAT YOU WILL SEE IS FACEBOOK |
| 10:57AM | 6  | SAYING DOWNLOAD THOSE SOFTWARE AND APPELLATES, BASICALLY SAYING |
| 10:57AM | 7  | WE DO CERTAIN THINGS THAT CAN TRIGGER INFORMATION COMING TO US |
| 10:57AM | 8  | FROM THIRD PARTIES.  SO FAR SO GOOD. |
| 10:57AM | 9  | AND AS MR. BROWN'S BRIEF POINTS OUT, PAGE 11 OF HIS FIRST |
| 10:57AM | 10 | BRIEF, WE DON'T DISTINGUISH BETWEEN PRE AND POST LOGOUT AS TO |
| 10:57AM | 11 | COOKIES. |
| 10:57AM | 12 | AND WHAT THAT SAYS IS THAT WHEN WE GET INFORMATION THAT WE |
| 10:57AM | 13 | DON'T THINK THAT WE HAVE DISCLOSED TO YOU THAT WE WILL BE |
| 10:57AM | 14 | GETTING, WE'LL ALERT YOU THE FIRST TIME WE GET IT.  THAT BY |
| 10:57AM | 15 | ITSELF PUTS PAID TO THE IDEA THAT THERE WAS ANY CONSENT BECAUSE |
| 10:57AM | 16 | THERE'S NO ALLEGATION ANYWHERE IN THIS CASE THAT THAT HAPPENED |
| 10:57AM | 17 | AND THEIR FINAL CHANGE IN THE LAST ROUND OF BRIEFING SHOWING |
| 10:57AM | 18 | THAT THREE DAYS BEFORE THE END OF THE CLASS PERIOD THEY GOT A |
| 10:57AM | 19 | LITTLE MORE SPECIFIC IS A READILY ADMISSION THAT THEY NEVER HAD |
| 10:58AM | 20 | DONE SO BEFORE. |
| 10:58AM | 21 | ON THE WIRETAP ACT NOT FITTING MISCONDUCT, I DON'T THINK |
| 10:58AM | 22 | COUNSEL FOR FACEBOOK COULD BE MORE WRONG.  ALL YOU NEED TO DO |
| 10:58AM | 23 | IS LOOK AT THE SENATE REPORTS PRE-AMENDMENTS TO THE WIRETAP ACT |
| 10:58AM | 24 | IN 1986, AND LOOK AT IT AGAIN WITH THE PATRIOT ACT AMENDMENT |
| 10:58AM | 25 | AND WHAT YOU WILL SEE IS CONGRESS'S DESIRE LUMBERING, AND |

10:58AM 1     UNARTFUL IN SOME PLACES, TO PROTECT ELECTRONICS COMMUNICATIONS

10:58AM 2     IN THE SAME WAY THAT THE TELEPHONE AND OTHER ORAL

10:58AM 3     COMMUNICATIONS WERE PROTECTED.

10:58AM 4           THE COURT:  ELECTRONICS COMMUNICATIONS MEANING

10:58AM 5     INTERNET?

10:58AM 6           MR. GRYGIEL:  YES, THAT'S RIGHT, AMONG OTHER THINGS.

10:58AM 7     THERE ARE OTHER WAYS TO DO IT, BUT THE DEFINITION OF ELECTRONIC

10:58AM 8     INTERCEPT OF ELECTRONIC COMMUNICATIONS IS ACTUALLY QUITE BROAD.

10:58AM 9     SO WHAT IT SHOWS IS CONGRESS MEANT TO PROTECT THOSE THINGS.

10:58AM 10    ON THE FACEBOOK PRIVACY ACT, I'M NOT DOING THIS IN ANY

10:58AM 11    SEQUENCE.  THAT WAS A VERY DIFFERENT CASE.  FOR ONE THING, THE

10:58AM 12    FACEBOOK PRIVACY LITIGATION, THE PLAINTIFFS THERE PLEADED THAT

10:58AM 13    FACEBOOK IS FREE.  WE DON'T PLEAD THAT.  WE PLEAD EXACTLY THE

10:58AM 14    OPPOSITE AS MR. STRAITE HAS POINTED OUT.

10:58AM 15    NUMBER TWO, THERE WHEN THE PLAINTIFF WENT ON A WEBSITE

10:59AM 16    WHAT HE GOT WAS AN ADVERTISER'S DESIGN AND SO HE'S DEALING WITH

10:59AM 17    FACEBOOK AND HE'S ALSO DEALING WITH AN ADVERTISER AT THE SAME

10:59AM 18    TIME.  YOUR EXPECTATIONS I THINK, YOUR HONOR, ARE QUITE

10:59AM 19    DIFFERENT WHEN YOU REALIZE YOU'RE DEALING WITH FACEBOOK AND AN

10:59AM 20    ADVERTISER.

10:59AM 21    OUR CASE, TO MAKE A LARGE FACTUAL DISTINCTION, DOESN'T

10:59AM 22    SHOW THAT WE KNEW THAT WE WERE INTERACTING WITH FACEBOOK WHEN

10:59AM 23    WE WERE GOING TO THE THIRD PARTY WEBSITES.  THAT'S A VERY BIG

10:59AM 24    DIFFERENCE.

10:59AM 25          AND FINALLY UNDER THE LACOURT CASE ABOUT WHICH WE HAVE

10:59AM 1    HEARD SO MUCH, THERE THE COURT IS CHARACTERIZING THE

10:59AM 2    PLAINTIFF'S ALLEGATIONS OF FINANCIAL HARM AS FOLLOWS:  TEPID,

10:59AM 3    HALF-HEARTED, ESSENTIALLY ADOPTED THE DEFENDANT'S FRAMING OF

10:59AM 4    THE ISSUE, AND THE COURT WENT ON TO SAY, BUT I WON'T

10:59AM 5    CATEGORICALLY SAY THAT THEY COULDN'T MAKE OUT A CAUSE OF ACTION

10:59AM 6    FOR THIS PARTICULAR VALUE, THEY JUST HAVEN'T DONE SO HERE.

10:59AM 7         THANK YOU, YOUR HONOR.

10:59AM 8         THE COURT:  MR. BROWN, IT'S YOUR MOTION SO YOU'LL

10:59AM 9    HAVE THE LAST WORD HERE.

10:59AM 10        MR. BROWN:  THANK YOU.  IN THE FACEBOOK PRIVACY

10:59AM 11   LITIGATION, WHILE THE PLAINTIFFS THERE MAY HAVE GIVEN LIP

11:00AM 12   SERVICE TO THE UNDENIABLE REALITY THAT FACEBOOK IS FREE, THEY,

11:00AM 13   TOO, ARGUED THAT YOU EFFECTIVELY PAY FOR FACEBOOK WITH YOUR

11:00AM 14   PERSONAL INFORMATION AND SO THAT CASE IS NOT DISTINGUISHABLE IN

11:00AM 15   THAT RESPECT.

11:00AM 16        AND I ARGUED BEFORE JUDGE WARE IN THAT CASE AND I KNOW IT

11:00AM 17   AND THAT THEORY WAS REJECTED.

11:00AM 18        AND THEN SECONDLY, I DON'T KNOW IF I HEARD THIS CORRECTLY

11:00AM 19   OR NOT, BUT I THINK I MAY HAVE HEARD A SUGGESTION THAT

11:00AM 20   SUGGESTING THAT IT'S FACEBOOK'S JOB TO PROVE CONSENT HERE ON

11:00AM 21   THE MOTION TO DISMISS.  AND, IN FACT, WE ARE ON A MOTION TO

11:00AM 22   DISMISS AND LOOKING AT THEIR COMPLAINT AND WHETHER THEIR

11:00AM 23   COMPLAINT IS WELL PLED AND IT'S THEIR BURDEN TO ALLEGE LACK OF

11:00AM 24   CONSENT UNDER THE SCA AND WIRETAP ACT AND NOT TO REPEAT MYSELF,

11:00AM 25   BUT THEY HAVE NOT ALLEGED THAT ANY OF THE NAMED PLAINTIFFS SAW

58

11:01AM   1    THE HELP CENTER CONTENT THAT FORMS THE ENTIRE BASIS OF THAT

11:01AM   2    THEORY OR RELIED ON.

11:01AM   3              THE COURT:  THANK YOU VERY MUCH.  THANK YOU,

11:01AM   4    COUNSEL.  I HAVE ENJOYED THIS.  IT'S BEEN VERY HELPFUL TO ME

11:01AM   5    AND, AGAIN, I WANT TO CONGRATULATE YOU ON THE PLEADINGS AND THE

11:01AM   6    MATTER IS UNDER SUBMISSION.

11:01AM   7              MR. GRYGIEL:  THANK YOU, YOUR HONOR.

        8              MR. BROWN:  THANK YOU, YOUR HONOR.

        9         (COURT CONCLUDED.)

       10

       11

       12

       13

       14

       15

       16

       17

       18

       19

       20

       21

       22

       23

       24

       25

1

2

3                          CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16       _____
         IRENE RODRIGUEZ, CSR, CRR
         CERTIFICATE NUMBER 8076

17

18                       DATED: OCTOBER 17, 2012

19

20

21

22

23

24

25