1  Stephen G. Grygiel (admitted *pro hac vice*)
2  **SILVERMAN THOMPSON SLUTKIN &**
   **WHITE, LLC**
3  26ᵗʰ Floor
   201 N. Charles Street
4  Baltimore, MD 21230
   Telephone:  (410) 385-2225
5  Facsimile:  (410) 547-2432
   Sgrygiel@mdattorney.com
6
7  *Plaintiffs' Executive Committee*

8              **UNITED STATES DISTRICT COURT**
9            **NORTHERN DISTRICT OF CALIFORNIA**
                    **SAN JOSE DIVISION**
10
                                    Case No.: 5:12-MD-02314-EJD
11
12  IN RE: FACEBOOK INTERNET          **DECLARATION OF STEPHEN G. GRYGIEL**
    TRACKING LITIGATION               **IN SUPPORT OF MOTION FOR**
13                                    **ADMINISTRATIVE RELIEF TO AMEND**
                                      **CONSOLIDATION ORDER**
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I, Stephen G. Grygiel, declare as follows:

1. I am a partner in the law firm of Silverman Thompson Slutkin & White, LLC, and am admitted to practice *pro hac vice* before this Court.

2. Movants and plaintiffs Matthew Vickery, Perrin Davis, Brian Lentz and Cynthia Quinn move this Court for an Order modifying the previous order of consolidation and appointment of lead counsel.

3. I respectfully submit this Declaration in support of Movants' motion. If called as a witness, I could and would competently testify thereto all facts within my personal knowledge.

4. Attached hereto as **Exhibit A** is a true and correct copy of the firm resume for Silverman Thompson Slutkin & White LLC.

5. Attached hereto as **Exhibit B** is a true and correct copy of my personal CV (without Exhibits).

6. Attached hereto as **Exhibit C** is a true and correct copy of a Motherboard.vice.com February 23, 2015 article, Lenovo is Getting a Crash Course in Calculating Damages for Privacy Violations, that quotes me as "an attorney who has litigated complex privacy rights cases and is one of the co-lead counsel for plaintiffs in a 2013 class action lawsuit against Google...for slipping cookies...into web browsers."

7. My co-counsel, David Straite, contacted counsel for Defendant Facebook, Inc. via email on March 5, 2015 regarding the pendency of this motion, and I was copied. We have received no response from Facebook to date.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 10th day of March, 2015, in Baltimore, Maryland.

Stephen G. Grygiel

1

# Exhibit A



## LEAD COUNSEL FIRM RESUME

### General Firm Overview

The Maryland-based law firm of Silverman | Thompson | Slutkin | White (STSW) is widely regarded as one of the premier law firms for litigation in the Baltimore-Washington metropolitan area. The firm features a unique blend of the area's top lawyers with diverse backgrounds, such as former state and federal prosecutors, a retired Federal District Court judge, a retired state Supreme Court judge and a law school dean.

STSW takes on complex high-stakes civil and class action litigation, as well as high-profile criminal cases, throughout the Baltimore-Washington metropolitan area, and the United States. Many of the firm's diverse and high-stakes cases have been profiled in recent years by *60 Minutes*, the Discovery Channel and other international media.

The firm's seasoned attorneys spend hundreds, if not thousands, of hours in the courtroom each year. Nearly all of the firm's civil litigators were "big firm" trained and recognized as rising stars prior to joining STSW. The firm's clients benefit from representation by lawyers who know the judiciary by practicing law on the front lines rather than watching from the sidelines. STSW lawyers have authored leading treatises including *Jones on Evidence*, *Civil & Criminal* (7th), *Wiretapping and Eavesdropping*, *3D: Surveillance in the Internet Age and The Maryland Evidence Handbook* (4th).

Although STSW handles cases all across the United States, the firm's approximately 35 lawyers are based in a single office in downtown Baltimore. As a result, STSW has a genuinely collaborative and collegial culture not commonly found, and is the only law firm named in *Baltimore Magazine's* 2013 "Best Places to Work" issue. STSW views all clients as firm clients and uses all of the firm's collective resources to further our clients' best interests.

### Class Action Experience

**Active Cases:**

1. *Jane Doe No. 1, et al. v. Johns Hopkins Hospital, et al.*
   Class Action
   Case No. 24-C-13-001041
   In the Circuit Court for Baltimore City

**Case Synopsis**: In what is believed to be the largest recovery of its kind, a $190 million dollar proposed Settlement has been preliminarily approved by the Court that offers payments to the

"LEVY Settlement Class," consisting of all former patients of Dr. Nikita A. Levy ("Dr. Levy") or all such persons' personal representatives, heirs or assigns, wherever located, who have or may in the future have any claim against (1) Dr. Levy or the Estate of Nikita A. Levy, M.D. or (2) Johns Hopkins arising out of, based upon, related to, or involving injuries and damages claimed as a result of Dr. Levy's photographing or videotaping activities or boundary violations while he was an actual or apparent agent, servant, or employee of Johns Hopkins. STSW represents a number of the plaintiffs, is on the Plaintiff's Steering Committee, and heads the Minority Claimants Committee.

2. *Richard Dent, et al. v. National Football League*
   Putative Class Action
   Case No. C-14-2324 KAW
   In the United States District Court: Northern District of California

**Case Synopsis**: The lawsuit alleges that, violating federal criminal laws, the NFL intentionally, recklessly, and negligently created and maintained a culture of drug misuse, putting profit in place of players' health. Plaintiffs seek financial compensation for the long-term chronic injuries, financial losses, expenses, pain and suffering, mental anguish and other losses they have suffered as a result of the NFL's misconduct, and medical monitoring for the problems from which the Plaintiffs currently or will in the future suffer. STSW investigated the facts and researched the issues in this lawsuit for over two years, and filed this case in May, 2014. STSW actively represents over 1000 retained former NFL players and is Co-Lead Counsel.

3. *In re National Hockey League Players Concussion Injury Litigation*
   Putative Class Action
   United States District Court, District of Minnesota
   MDL No. 14-2551 (SRN/JSM)

**Case Synopsis**: One of three Co-Lead Counsel in Multi-District Litigation case, consolidated and transferred to District of Minnesota, alleging the National Hockey League's responsibility for increased risk, frequency and severity of brain diseases such as ALS, Alzheimer's Disease, Chronic Traumatic Encephalopathy and other neuro-cognitive impairments and deficits secondary to concussive and sub-concussive impacts.

4. *In re: Facebook, Inc. Internet Tracking Litigation*
   Putative Class Action
   United States District Court, Northern District of California
   Case No.: 5:12-md-02314-EJD

**Case Synopsis**: Co-Lead Counsel in Multi-District Litigation case, consolidated and transferred to Northern District of California (San Jose Division), alleging that Facebook, contrary to its promises to users and violating reasonable expectations of privacy, continued to track Facebook users even after they had logged out of Facebook sessions, violating federal and state laws.

5. *In re: Google, Inc. Cookie Placement Consumer Privacy Litigation*
   Putative Class Action
   United States District Court, District of Delaware

C.A. No. 12-MD-2358 (SLR)

**Case Synopsis**: Co-Lead Counsel in Multi-District Litigation case, consolidated and transferred to District of Delaware, alleging that Google and other ad-serving companies secretly disabled blocking settings on web users' internet browsers and placed tracking "cookies" on those devices, violating federal and state laws.

6.  *South Florida Wellness, Inc. v. Allstate Insurance Company*
    Putative Class Action
    United States District Court, Middle District of Florida
    Case No. 13-cv-61759-CIV - Dimitrouleas

**Case Synopsis**: Co-counsel in putative federal court class action under Florida law for declaratory judgment on behalf of insureds and their medical provider assignees, seeking ruling that Allstate did not make required clear and unambiguous election of reimbursement formula in policy under which Allstate can reduce insurance reimbursements; $65 Million amount in controversy.

7.  *Pierce v. Allstate Insurance Company*
    Putative Class Action
    Cir. Ct. of 17th Judicial District, Broward Cty., Florida
    Case No.: CACE-13-018792

**Case Synopsis**: Co-counsel in putative state court class action under Florida law for declaratory judgment on behalf of insureds, seeking ruling that Allstate failed to apply stated deductibles to 100% of covered expenses and losses, but instead first reduced the covered expenses and losses by an arbitrary amount and only then applied the deductible to the impermissibly reduced amount.

## **Prior Significant Matters Litigated by Members of STSW**

1.  *In Re New York Stock Exchange/ Archipelago Merger Litigation*
    (N.Y. Sup Ct., Index 601646/05) Class
    and Trial Counsel
    Role: Counsel (including trial counsel) for NYSE seatholders
    Nature of case: NYSE seatholders claimed undervaluation of their interests in NYSE merger with electronic trading platform, Archipelago
    Result: successful litigation, producing settlement after 1.5 days of injunction trial, producing re-done valuation for seatholders

2.  *In re Sprint Corp. Shareholders Litigation*
    (Dist. Ct., Johnson Cty., Kansas, 04-CV-01714)
    Class Action
    Role: Class Counsel
    Nature of case: shareholders claimed undervaluation of their shares in tracking stock recombination
    Result: $57.5 Million Settlement

3. *In re Marsh & McLennan Companies, Inc. Sec. Litigation*
   (S.D.N.Y. 04-CV-08144)
   Class Action
   Role: Class Counsel
   Nature of case: shareholders claimed stock drop resulting from disclosure of improper insurance placement payments
   Result: $400 Million Recovery

4. *In re Vytorin/Zetia Markting, Sales Practices & Prod. Liab. Litigation*
   (D.N.J., MDL 1938)
   Role: Plaintiffs' Steering Committee
   Nature of case: misleadingly favorable claims for pharmaceuticals
   Result: $41,500,000 settlement

## STSW Class Action Litigation Team:

**Phillip J. Closius (Of Counsel)**

J.D., Columbia University, 1975
Stone Scholar, 3 years

B.A., University of Notre Dame, 1972
*Magna Cum Laude*; Notre Dame Scholar

Mr. Closius is a former Dean of two national law schools and currently is a tenured professor at the University of Baltimore School of Law. He has represented professional athletes for several decades, teaches sports law, and has been published on the topic in several law reviews.

**Stephen G. Grygiel (Partner)**

J.D., Harvard Law School, 1986

A.B., Hamilton College, 1979
Phi Beta Kappa, *Magna Cum Laude*

*Bar Admissions:* In good standing and admitted to practice before highest courts of Maine, Massachusetts, Delaware, New York, Maryland; Federal District Courts for the Districts of Maine and Delaware; United States Courts of Appeals for the Third Circuit and Ninth Circuit.

Mr. Grygiel focuses on representing plaintiffs in high-profile, national class action cases. Mr. Grygiel has been serving as one of two Co-Lead Class Counsel in the Multi-District Litigation major internet privacy case *In re Facebook Internet Tracking Litigation* (one of two counsel who conducted oral argument opposing Motion to Dismiss) and one of three Co-Lead Class Counsel in another major internet privacy rights Multi-District Litigation case, *In re Google, Inc. Cookie Placement Consumer Privacy Litigation* (Mr. Grygiel was

one of two plaintiffs' counsel who handled oral argument opposing Motion to Dismiss). Mr. Grygiel has served as one of his firm's lead lawyers in *Richard Dent, et al. v. National Football League* (conducted the oral argument against Motion to Dismiss) and is one of three Co-Lead counsel in *In re National Hockey League Players Concussion Injury Litigation* (conducted oral argument on preemption Motion to Dismiss). He was one of his firm's two trial counsel in *In re New York Stock Exchange/Archipelago Merger Litigation,* in which NYSE seatholders successfully challenged the NYSE's valuation of their interests. Mr. Grygiel litigated *In re Sprint Corp. Shareholders Litigation,* resulting in a $57.5 MM settlement, *In re Marsh & McLennan Companies, Inc. Sec. Litigation,* which produced a $400 MM settlement. Mr. Grygiel also served on the Plaintiffs' Steering Committee in the MDL *In re: Vytorin/Zetia Marketing Sales Practices and Products Liability Litigation*, which settled for a total of $41,500,000.

## Hon. Joseph F. Murphy, Jr. (RET) (Partner)

J.D., University of Maryland School of Law, 1969

B.A., Boston College, 1965

The Honorable Joseph F. Murphy retired from Maryland's highest court, the Court of Appeals of Maryland, to join Silverman Thompson Slutkin and White in 2011. He served previously as Chief Judge, Court of Special Appeals, a trial judge and as a Deputy States Attorney in Baltimore City, Maryland. He has served on the Judicial Cabinet, the Ad Hoc Committee on Sentencing Alternatives, Re-Entry, and Best Practices, and on numerous other committees, commissions and task forces. He also previously served as Assistant State's Attorney and Deputy State's Attorney in Baltimore City for six years. Judge Murphy teaches evidence and trial practice at the University of Maryland School of Law and the University of Baltimore School of Law, and is a prolific author. He focuses on alternative dispute resolution and provides appellate and litigation consultation. He is considered a foremost expert in civil procedure, appellate advocacy and has published several treatises on evidence.

## Hon. Alexander Williams, Jr. (RET) (Partner)

J.D., Howard University, *Cum Laude*

B.A., Howard University

Judge Alexander Williams, Jr. was President Bill Clinton's first African American nominee to the Federal Court and following his confirmation by the United States Senate served as a Federal Judge on the United States District Court for the District of Maryland from September 2, 1994 to January 3, 2014. Prior to his appointment to the federal bench, Judge Williams served two terms from 1987 to 1994 as the elected State's Attorney for Prince George's County, Maryland.

Judge Williams is a native of Washington, D.C. and has practiced law in both the State of Maryland and the District of Columbia. Judge Williams presently teaches at both Howard Law School and the Howard School of Divinity. He has served the public in various capacities throughout Maryland and the Washington Metropolitan area. In addition to his judicial and professorial service, Judge Williams has lectured and participated in numerous conferences abroad including visits to Bulgaria; Vitoria, Brazil; and to the region of Hong Kong as well as to the provinces of Guanghou and Beijing in China.

Judge Williams was part of a joint inspection team sponsored by the U.S. Department of Justice and the U.S. Department of State to assess issues of justice in Liberia following that country's civil war. During that assignment in Liberia, he was invited and did lecture at the Grimes School of Law located on the campus of the University of Liberia. Judge Williams has also participated in several international seminars on judicial independence and other rule of law issues, attending conferences in Accra, Ghana; Dar es Salaam, Tanzania; and Bamako, Mali.

Judge Williams is a graduate of Howard University where he earned a B.A. (Bachelor of Arts) in Government; a M.A (Master of Arts); and a J.D. (Juris Doctor, cum laude); and also graduated from Temple University where he earned a Master of Arts Degree in Religion/ Ethics.

## Steven D. Silverman (Managing Partner)

J.D., University of Baltimore School of Law, 1991

B.A., University of Richmond, 1988

Mr. Silverman is the managing partner of Silverman Thompson Slutkin and White with over twenty years of litigation experience. He has been lead counsel in thousands of contested hearings and trials in state and federal court and has tried several hundred jury trials to verdict. Mr. Silverman has been recognized as one of the Top 10 trial lawyers in the Northeast United States. He has extensive media experience in managing high-profile cases and public relations.

## William Sinclair (Partner)

J.D., University of Virginia School of Law, 2002

B.A., University of California at San Diego, 1999
*Magna Cum Laude*

*Bar Admissions:* Admitted to practice before, and in good standing, highest courts of California, Georgia, District of Columbia and Maryland; all Federal District Courts for District of California; Federal District Courts for Federal Districts of Georgia, District of Columbia, and Maryland; United States Courts of Appeal for Fourth and Eleventh Circuits.

Mr. Sinclair has been counsel on several class actions, involving personal injury and product liability. He is a former law clerk to a United states District Court Judge, and an adjunct professor at the University of Maryland School of Law. Class actions have constituted a significant part of Mr. Sinclair's practice. He was co-lead counsel in a Federal class action against a local municipality that resulted in significant monetary and injunctive relief for his clients and was co-lead defense counsel in a State putative class action product liability suit against a local utility. He currently serves as co-lead counsel in the defense of three putative class actions involving RESPA and other real estate matters, one of which is pending in Federal court and another of which is on appeal to the Maryland Court of Special Appeals after the defense convinced a lower court Judge to deny class certification and dismiss plaintiffs' claims.

**Andrew G. Slutkin (Partner)**

J.D., Duke University School of Law, 1991

B.S., University of Baltimore, 1988

Mr. Slutkin is an experienced trial lawyer, concentrating his practice on complex civil litigation involving catastrophic injury, medical malpractice, product liability and wrongful death. He earned his Juris Doctorate from Duke University School of Law, and has been named a "Top Rated Lawyer" in personal injury law and in medical malpractice by *US News and World Report* and *Martindale Hubbell* and was named *Baltimore Medical Malpractice Lawyer of the Year* by Best Lawyers. Mr. Slutkin regularly obtains million-dollar plus settlements and verdicts for his clients, including a $276 million fraud verdict against First Union National Bank, and a $125 million recovery against Ernst & Young accounting firm. Mr. Slutkin has been an adjunct professor at the University of Baltimore School of Law since 2002, where he has taught Litigation Process and currently teaches Medical Malpractice Litigation. He also is on the faculty of the Maryland Trial Advocacy Institute, where he demonstrates and teaches trial advocacy to Maryland attorneys.

**Andrew C. White (Partner)**

LLM, Georgetown University Law Center, 1987

J.D., Syracuse University College of Law, 1985
Editor, Syracuse Law Review

B.A., University of Vermont, 1981

Andrew White is a former Assistant United States Attorney and decorated Federal Prosecutor of the Year who also served as a Senior Litigation Advisor to the Clinton Independent Counsel in the Monica Lewinsky investigation. During the investigation and prosecution of President William J. Clinton, Mr. White helped to coordinate the grand jury investigation of the President and worked with the Independent Counsel to prepare the case for trial. He has over 25 years of experience trying civil and criminal cases of all kinds. He has coordinated hundreds of complex federal criminal investigations and has

tried over 400 state and federal criminal trials, including over 30 federal jury trials. His substantive expertise, trial skill and knowledge of the relationships between various law enforcement agencies are invaluable in the prosecution of civil matters with overlapping state and federal criminal issues.

**STSW Class Action Litigation Support & Legal Research Team**

**Amy B. Chappell (Member)**

    J.D., Duke University School of Law, 1991

    B.A., New York University, 1988

**Sima G. Fried (Associate)**

    J.D., New York University School of Law, 2008

    B.A., Duke University, 2004

**Steven J. Kelly (Member)**

    J.D., Georgetown University Law Center, 2003
    *Cum Laude*, Journal of Law and Public Policy

    B.A., American University, 1997
    *Magna Cum Laude* and with University Honors

**Chris Mincher (Associate)**

    J.D., University of Virginia School of Law, 2011

    B.A., University of Maryland (College Park, Md.), 2002
    *Cum Laude*, Journalism

**Edward P. Parent (Associate)**

    J.D., University of Maryland School of Law, 2006
    *Magna Cum Laude*
    Order of the Coif
    Order of the Barristers
    Finalist, 2005 Morris B. Myerowitz Moot Court Competition

    B.A., The Johns Hopkins University, 2000

**Kathleen Hanlon Sinclair (Member)**

    J.D., University of Virginia School of Law, 2002

    B.A., The University of North Carolina at Chapel Hill, 1999

**Jamison G. White (Partner)**

       J.D., Case Western Reserve University School of Law, 2000
       *Cum Laude*
       Law Review: Managing Editor

       B.A., Davidson College, 1997

# Exhibit B

Stephen G. Grygiel

Silverman Thompson Slutkin White, LLC

26th Floor, 201 N. Charles St.

Baltimore, MD 21201

410-385-2225 (main)

443-909-7516 (direct)

407-505-9463 (cell)

sggrygiel@mdattorney.com

## STEPHEN G. GRYGIEL: *CURRICULUM VITAE*

**PRACTICE**

Trials and litigation of high stakes corporate/commercial, securities, board governance, consumer, pharmaceutical, health and privacy rights cases and class actions.

**SKILLS & ABILITIES**

AV-Preeminent rated trial lawyer, class action litigator and oral advocate.  *See, e.g.,* Exhibits **A** (10/14/13 email from Edward Kushell, franchising expert), **D** (3/28/12 memo (redacted) from John E. Keefe, Jr. to co-counsel), **F** (10/18/13 letter from Jan Douglas Atlas).

First chair in numerous jury and bench trials, arbitrations and mediations.  *See, e.g.,* Exhibits **L, M, P, Q, R, S, U(9), U(10), U(11), U(13), U(14).**

Argued over one hundred motions, including dispositive motions, in pharmaceutical overpromotion (RICO), securities and corporate governance (PSLRA, SLUSA, CAFA), labor law (Sec. 301 LMRA preemption), privacy rights (Wiretap Act, Stored Communications Act, Computer Fraud and Abuse Act), consumer fraud (state Unfair and Deceptive Trade Practices Acts), products liability (failure to warn, design defect), insurance coverage and other contract, commercial and tort law cases.  *See, e.g.,* Exhibits **G, H, I, J, K, N**, **O, V**.

Taken hundreds of depositions, including of CEOs, CFOs, COOs and board members of major companies, economic and damages experts and investment bankers, liability experts, in securities, corporate and commercial, products liability, consumer fraud, and other litigation.  *See, e.g.,* Exhibit **D**.

Researched, analyzed and briefed hundreds of issues in many different legal and factual contexts, including MDLs (remands, forum selection); bases for liability under 1933 Securities Act and 1934 Securities and Exchange Act, "bespeaks caution" doctrine and other corporate disclosure safe harbors;  nature and content of allegations sufficient under Rules 8(a)(2), 12(b)(1), 12(b)(6); injunctive relief in corporate mergers and acquisitions; CAFA removal requirements, determining amount in controversy, bases for and appealability of CAFA remand orders; presumption against and limits of federal jurisdiction, plaintiff's rights as "master of complaint" measured against "artful pleading" doctrine; Bankruptcy Court jurisdiction, bankruptcy trustee asset sales as impermissible reorganization plans, due process rights of unrepresented future claimants against bankruptcy estate, requirements for establishment of Equity Committee in reorganization; RICO causation requirements; class action choice of law issues, extraterritorial application of single state law in Rule 23 predominance and manageability inquiries; expert witness qualifications under *Daubert* and state law analogues; numerous trial and *in limine* motions.

Well versed in key legal issues, including:

(i)     <u>pleadings standards doctrine and cases</u> (*Iqbal's* departure from *Twombly, Twombly's* revision of *Conley v. Gibson's* dismissal test, and erroneous "*Twombal*" and "*Twiqbal*" conflations; implications of  Supreme Court rulings in

*Swierkiewicz v. Sorema, N.A., Erickson v. Pardus,* and *Skinner v. Switzer* for pleadings tests; 12(b)(1) and 12(b)(6) pleading test differences);

(ii) <u>narrowed aiding and abetting liability</u> (*e.g., Central Bank of Denver v. First Interstate Bank of Denver; Stoneridge Inv. Partners v. Scientific-Atlanta, Inc.*, "speaker" test, "primary or secondary actor" analysis, and "reliance" inquiry for secondary actor liability under Section 10(b) and Rule 10-b-5);

(iii) <u>scienter requirements</u> (*e.g., Tellabs, Inc. v. Makor Issues & Rights*, including proof required for corporate scienter, individual scienter and so-called "strong," "weak" and "intermediate" forms of corporate scienter);

(iv) <u>standing</u> (Art. III requirements, prudential and statutory tests (*Edwards* (9th Cir.), *Alston* (3d Cir.), including in privacy rights and other cases involving little to no immediate financial damages; parameters of "identifiable trifle" constituting injury-in-fact);

(v) <u>evolving class action principles</u> (*e.g., Butler v. Sears Roebuck*, J. Posner finding "predominance is a question of efficiency" and rejecting a "common answers" requirement in favor of "common questions" predicate for Rule 23(b)(3) analysis; *Amgen, Inc. v. Ct. Retirement Plans and Trust Funds* finding "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class" (emphasis in original) compared to *Wal-Mart Stores, Inc. v. Dukes's* finding class certification turns on class action's ability "to generate common answers apt to drive the resolution of the litigation" not on "raising of common 'questions' – even in droves;" *McReynolds v. Merrill Lynch*,

disparate-impact employment case in which J. Posner took more limited view of *Wal-Mart*, saying even if "hundreds of separate trials may be necessary to determine" who was adversely affected and what their damages were, "at least it wouldn't be necessary in each of those trials to determine whether the challenged practices were unlawful" and noting Rule 23(c)(4)'s provision of class treatment "'with respect to particular issues;'" *Comcast v. Behrend's* teaching that certification requires demonstration of class-wide damages – methodology versus actual data; *In re Hydrogen Peroxide Antitrust Litig.* analysis of merits and class cert issues overlap, scope of "rigorous" merits analysis at class certification stage; ascertainability requirement; Rule 23(g) counsel selection issues;

(vi)    PSLRA (direct and derivative actions, demand futility doctrine, fiduciary duties, necessity and duties of special committees, showings required for disqualifying board member self-interest, bondholder rights, lead plaintiff formation and litigation conduct issues); and

(vii)   mandatory arbitration clauses/class action waivers (significance of Sec. 2 of Fed. Arb. Act, judicial rejection of "vindication of rights" argument against class action waivers (*e.g., AT&T v. Concepcion; AMEX v. Italian Colors*)).

Able teacher of less experienced lawyers; ran former firm's instructional program for new lawyers.  *See* Exhibits **B** (3/8/13 email from former partner John E. Keefe, Jr. re: instructional memo), **C** (10/8/13 email from opposing counsel in putative class case).

EXPERIENCE    SILVERMAN THOMPSON SLUTKIN WHITE; BALTIMORE, MD (PARTNER, 4/15/14 – PRESENT)

Co-Lead counsel in *Dent v. NFL* (putative class action alleging NFL's illegal administration of painkillers) and *In re National Hockey League Players Concussion Injury Litigation* (putative class action alleging NHL's responsibility for brain diseases and neurocognitive deficits secondary to concussions and other head injuries); Co-Lead counsel in two major MDL privacy rights cases, respectively, *In re Google, Inc. Cookie Placement Consumer Priv. Litig.* and *In re Facebook Internet Tracking Litig.*; Co-counsel to plaintiffs in Florida state court and Florida federal court putative class actions alleging insurers' wrongful coverage determinations; Co-counsel in wrongful termination case in Connecticut federal court against U.S. and foreign defendants; counsel to investment fund on securities laws and regulations, corporate governance and board of directors issues. *See, e.g.,* Exhibit **V** (comments from co-counsel after recent oral arguments; "amazing;" "personification of the term lawyer's lawyer").

KEEFE BARTELS; RED BANK, NJ (PARTNER, 5/2/11-9/30/13)

*See* Exhibits **D** (3/28/12 memo (redacted) from John E. Keefe, Jr. to co-counsel stating that without Steve Grygiel's work a favorably settled class case would "likely have paid *nothing*" (emphasis in original), "Steve's deposition work largely drove this case to settlement," and describing successful mediation as entirely "Steve's show"), **E** (3/23/12 unsolicited praise from expert in that case), **F** (7/28/13 email from co-counsel referring to "Steve's amazing effort" in same case) (10/18/13 recommendation letter from same co-counsel: "In all my years of practice (fast approaching 45) I have never, and I truly mean never, seen an attorney absorb and digest such an overwhelming quantum of information, synthesize it, separate the value from the worthless, and distribute a well-reasoned and well-documented position. We have worked on a number of matters together and my admiration and respect for Steve has only increased.").  *See* Exhibits **G** (7/26/13 email from observer of 7/25/13 oral argument on *Google* dismissal motion: "…allow me to express how impressed I was…your command of the facts and the law, ability to distill their complexity to an understandable essence, and your confident but relaxed manner were all excellent."), **H** (7/26/13  email from another

*Google* argument observer: "I thought Steve Grygiel …[was] superb."), **I** (7/28/13 email from another *Google* oral argument attendee: "you guys did an excellent job of taking a complex technical subject and putting it into laymen's terms by using the slide presentations and commonplace analogies….the facts and issues were presented so clearly….It was a pleasure to observe such great lawyering."), **J** (7/29/13 email from same observer: "Again, your preparation showed.  You hardly looked at your notes!), **K** (email from observer of *Facebook* dismissal oral argument: "I was very impressed with your argument.  You have a great style.").  *See also* Exhibits **L** (5/3/13 email from expert witness in 2 week jury trial: "Very much enjoyed watching you in court yesterday…My untrained eye saw the jury listen to you carefully."), **M** (5/10/13 email from opposing trial counsel after that trial: "…you did a terrific job making the most of a difficult case.  That's to your credit.").

## GRANT & EISENHOFER; WILMINGTON, DE (SR. COUNSEL, PARTNER; 11/28/04-5/1/11)

*See* Exhibits **N** (8/25/10 on-record statement from then-Vice Chancellor Leo V. Strine of Delaware Court of Chancery during oral argument seeking to enjoin merger in *In re Dollar Thrifty S'holder Litig.*, Consol. C.A. No. 5458-VCS, Tr. p 21: (…look, you're a very, very good lawyer"); **O** (10/9/08 on-record statement by Fed. D. Judge Stanley Chesler during oral argument opposing dismissal in pharmaceutical overpromotion case *In re Schering-Plough Corp. Temodar/Intron Consumer Class Action*, Case. Nos. 10-3046 & 10-3047, Tr. pp. 16-17 ("I will tell you, you're very good.").  Primarily responsible for depositions (CEO, COO, CFO and numerous board members ), numerous oral arguments (*e.g.,* application of SLUSA Delaware Carve-Out, jury trial entitlement) and summary judgment briefing in successful *In re Sprint Corp. Shareholders Litig.* (tracking stock recombination; D. Ct. Johnson Cty., KS, 04-CV-01714, $57.5 MM settlement); deposed majority of important witnesses, including two former CEOs, former CFO, numerous board members in *In re Marsh & McLennan Companies, Inc. Sec. Litig.* (securities fraud; S.D.N.Y. 04-CV-08144; $400

MM settlement); took majority of key depositions in *In re New York Stock Exchange/Archipelago Merger Litig.* (challenged valuation of NYSE seatholders' interests; N.Y. Sup. Ct. Index No. 601646/05; settled, obtaining new fairness valuation, after 1.5 days of injunction trial); deposed deal architect, bankers in *La. Mun. Police and Employees Retirement System, et al., on behalf of Shareholders of Caremark RX*, Del. Ct. Chan.*,* 2635-CC (successful challenge, producing new deal terms).

MARCUS, GRYGIEL & CLEGG (now MARCUS, CLEGG & MISTRETTA); PORTLAND, ME (PARTNER, OF COUNSEL, 1996 - present)

Founding partner and lead trial lawyer, then *of counsel* upon becoming Sr. V. P. and Gen. Counsel to one of firm's major clients while continuing active litigation for firm on select cases. *See* Exhibits **P** (11/22/97 letter from client after Lanham Act arbitration: "you did a sensational job…I've never been more impressed with anyone in business than I have with you….you did a great job"), **Q** (9/19/97 on-record statement by Lanham Act case's AAA arbitrator: "I'm stating this to the client [sic]. I don't usually say it….You all have exceptionally good lawyers. I've done a lot of arbitrations….These guys are both very smart and very good…you both did exceptionally good jobs and I just saw that and the clients should know that because it's true."), **R** (5/22/97 post-trial letter from acquitted criminal defense client: "You did a great job….Even if we would have lost, I already knew that you had given me the best representation possible, and if you couldn't win it for me, no one could….You have done me a great service and I thank you from the bottom of my heart"), **S** (5/21/97 post-trial letter from acquitted client's mother: "Those three days in court, watching you defend Jennifer, touched us more than you'll ever know…Your efforts and time in this case were extraordinary.") (5/23/97 post-trial letter from trial judge: "I wanted to tell you that you did a nice job for your client."), **T** (3/25/97 letter from client, former Squire Sanders & Dempsey partner, after depositions of bank personnel produced strong settlement of his claim against major bank for violation of Bankruptcy Code discharge: "You guys are very professional and I have been confident in your care. If you knew me better you would understand how great a compliment that is.").

PIERCE ATWOOD; PORTLAND, ME (ASSOCIATE, PARTNER, 1987-1995)

1ST chair trial of numerous jury and bench trials, including shareholder

dissolution, bankruptcy court recoupment, personal injury cases; substantial federal criminal case experience (jury trial; defense of health care fraud case resulting in no indictment of client; numerous evidentiary bail hearings, sentencing briefs and evidentiary sentencing hearings). *See* Exhibit **U** (collection of client recommendations, jury surveys, letters from colleagues, court, etc., including, *e.g.*: **U(9)** (5/2/95 letter from insurance company claims superintendent, describing my trial work as "poetry in motion"), **U(8)** (1/25/95 email from partner describing how client "absolutely raved about what a great lawyer you are and how you really saved Dunlap's [insurance brokerage client's] cookies. In his eyes you are the best there is."), **U(5)** (8/19/94 letter from Dunlap Ins. & Bonding Chairman and CEO, and President: "Your performance was brilliant…") **U(7)** (12/1/94 (email from partner to other partners, repeating letter from McDonald's Corp. Labor Relations Counsel: "'Steve performed brilliantly…a wonderful balance of intelligence, personality and practical business sense'").

| | |
|---|---|
| EDUCATION | Harvard Law School, J.D., 1986 |
| | Hamilton College, A.B., 1979 (Phi Beta Kappa, *magna cum laude*, Was Los (Jr. Class Honorary Society), Kneeland Prize in Religion; Senior Travel Grant; Judiciary Board; Vice-President of Delta Upsilon Fraternity). |
| BAR ADMISSIONS & RATING | ME (1986); MA (1986); DE (2007); NY (2011); MD (2015); 3d Cir. (2010); 9th Cir. (2015); District of Maine (1987); District of Delaware (2012) |
| | AV-Preeminent (Martindale-Hubbell) |
| CLERKSHIP | Chief Justice Vincent L. McKusick, Maine Supreme Judicial Court (8/86- 8/87) |
| REFERENCES | ROLIN P. BISSELL: Partner, Chm'n. of Corp. Counseling and Lit. Group - Young, Conaway, Stargatt & Taylor (Wilm., DE) (rbissell@ycst.com) |

ALAN CHARLES RAUL: Partner, Global Coordinator, Privacy, Data Security, Information Law Practice - Sidley & Austin (Wash., DC) (araul@sidley.com)

LAWRENCE S. BADER: Partner, Morvillo, Abramowitz (NYC) (lbader@maglaw.com)

MARK S. CHEFFO: Partner, Quinn Emanuel (NYC) (markcheffo@quinnemanuel.com)

JOSEPH N. SACCA: Partner, Skadden Arps (NYC) (joseph.sacca@skadden.com)

RONALD S. ROLFE: Partner (ret'd), Cravath, Swaine & Moore (NYC) (rrolfe@cravath.com)

LYNN K. NEUNER: Partner, Simpson, Thacher & Bartlett (NYC) (lneuner@stblaw.com)

GAVIN J. ROONEY: Partner, Co-Chair of Class Action and Derivative Litigation Practice - Lowenstein Sandler (Roseland, NJ) (grooney@lowenstein.com)

CLEM C. TRISCHLER: Partner, Chair of Prod. Liab. Prac. Group - Pietragallo, Gordon (Pittsburgh, PA) (cct@pietragallo.com)

RICHARD M. DONALDSON: Partner, Montgomery McCracken (Wilm, DE) (rdonaldson@mmwr.com)

EDWARD ("CHIP") ROBERTSON: Partner - Bartimus, Frickleton, Robertson & Goza (KS and MO) (crob@earthlink.net)

JAN DOUGLAS ATLAS: Partner – Kopelowitz Ostrow (Fort Lauderdale, FL) (atlas@kolawyers.com)

EINER R. ELHAUGE: Petrie Professor of Law, Harvard Law School, (elhauge@law.harvard.edu)

SUSAN FREIWALD: Professor (Cyberlaw, Information Privacy), Univ. of San Francisco (freiwald@usfca.edu)

EDWARD KUSHELL: President - The Franchise Consulting Group (Los Angeles, CA) (ekushell@franchiseconsulting.com)

GREGG ABELLA: Co-Principal - Investment Partners Asset Management (Metuchen, NJ) (gabella@investmentpartners.com)

RAYMOND R. LOVELL: Principal – SIG, Inc. d/b/a Visonic Systems (Oakland Park, FL) (rrlovell@visonic.net)

PERSONAL        **Married; five children and two stepchildren (all grown); 15th place in 1985 Boston Marathon; fitness enthusiast; ice hockey player and fan**

Exhibit C

**(/EN_US?TRK_SOURCE=HEAD**



# Lenovo Is Getting a Crash Course in Calculating Damages for Privacy Violations

Written by **BEN RICHMOND (/AUTHOR/BENRICHMOND)**

February 23, 2015 // 04:30 PM EST

It turns out that shipping computers that are preloaded with software that badly compromises their users' security is a bad PR move–and a potentially expensive one too.

Late last week, a class-action lawsuit was filed (http://www.scribd.com/doc/256693418/Lenovo-Case) against the computer company Lenovo and the software company Superfish, which made adware that came preloaded on certain Lenovo notebooks. The suit charges both companies with fraudulent business practices; making Lenovo PCs vulnerable to malware and malicious attacks; and using up bandwidth, power, and memory on laptops sold since January 2012. The lawsuit says over a million people were potentially affected.

Stephen G. Grygiel is an attorney who has litigated complex privacy rights cases and is one of the co-lead counsel for plaintiffs in a 2013 class action lawsuit against Google (http://www.bloomberg.com/news/articles/2013-10-09/google-wins-dismissal-of-suit-over-cookies-on-internet-browsers) for slipping cookies—small pieces of tracking software—into web browsers. He directed me to the Federal Wiretap Act's provision outlining the types and amounts of damages Lenovo and Superfish could be looking at.

How do you calculate monetary compensation for a privacy violation? It's not like having your web browsing spied on can be easily converted to a dollar figure. For cases like the one alleged against Lenovo and Superfish, the Wiretap Act provides that "the court may assess as damages" whichever is the greater of the sum of damages suffered by plaintiffs and profits made by Superfish and Lenovo, or "statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000."

Grygiel said that "the Wiretap Act's language, which says a district court 'may' assess statutory damages upon proof of a Wiretap Act violation, led to the spillage of a fair amount of legal ink about whether Wiretap Act damages are mandatory or discretionary."

However, he said, "many lawyers who practice in this area are keenly aware of the crucial practical point—if a court awards Wiretap Act statutory damages, the amounts can get very big very quickly. Depending on the number of violations and time period of the violation, civil damage exposure could pile up fast for Lenovo and Superfish."

# The plaintiffs could be asking for as much as $10 billion in damages

In this case, the lawsuit is pursuing $5,000 per member for violating the California Invasion Privacy Act, and up to $10,000 per class member for the Wiretap count. The lawsuit states that the plaintiff doesn't know the exact number of people impacted but "Plaintiff believes that there are in excess of one million members of the Class located throughout the United States." In other words, the plaintiffs could be asking for as much as $10 billion in damages.

Superfish software intercepts all encrypted connections by replacing legitimate site certificates—the system your browser users to confirm that a website is secure—with its own fake ones. These fake certificates allow the software to monitor user activity and collect personal information, basically hijacking what should be a secure connection. The software is then able to insert more ads into the user's web browser.

The lawsuit cited a Lenovo user who explained how Superfish basically compromises every site. "It sits between you and whatever sites you visit to monitor your sessions and extract information (it says photos) to serve you advertisements for similar products you may be looking for," a user Randune wrote (http://forums.lenovo.com/t5/Yoga-Flex-Laptops-and/Pre-installed-Superfish-VisualDiscovery-on-Lenovo-Flex-2-15/td-p/1896989) on a Lenovo community board in January. "What's even more concerning is that it does this for HTTPS [encrypted] connections that the user would expect to be private between themselves and the server they *believe* they are securely connecting to."

What's worse is that by using a single, self-signed root certificate—which fakes the site's secured certificate—Superfish compromises browser security really badly (http://www.businessinsider.com/the-lenovo-consumer-betrayal-2015-2). Anyone with the very easily hacked key could hack any Superfish-afflicted Lenovo machines over Wi-Fi and silently spy on what you're doing.

Lenovo's CTO admitted (http://www.pcworld.com/article/2886690/lenovo-cto-admits-company-messed-up-and-will-publish-superfish-removal-tool-on-friday.html) to PC World that the company "messed up," and has released an easier way to uninstall the software (http://www.pcworld.com/article/2886690/lenovo-cto-admits-company-messed-up-and-will-publish-superfish-removal-tool-on-friday.html), but it may be too late.

This was "unbelievably ignorant and reckless of [Lenovo]," Marc Rodgers, a security expert, wrote on his blog (http://marcrogers.org/2015/02/19/lenovo-installs-adware-on-customer-laptops-and-compromises-all-ssl/). "It's quite possibly the single worst thing I have seen a manufacturer do to its customer base."

The situation was bad enough for the US Department of Homeland Security to weigh in. The department's computer emergency team issued a statement Friday (https://www.us-cert.gov/ncas/current-activity/2015/02/20/Lenovo-Computers-Vulnerable-HTTPS-Spoofing) warning that Superfish's software contains "a critical vulnerability" and that "exploitation of this vulnerability could allow a remote attacker to read all encrypted web browser traffic (HTTPS), successfully impersonate (spoof) any website, or perform other attacks on the affected system."

The lawsuit against Google for sliding cookies into Microsoft and Apple browsers was thrown out (http://www.bloomberg.com/news/articles/2013-10-09/google-wins-dismissal-of-suit-over-cookies-on-internet-browsers) because, as the judge wrote, "Google did not intercept contents as provided for by the Wiretap Act." Superfish, however, has admitted to intercepting at least images.

Companies like Lenovo are paid by companies like Superfish to preload software onto their laptops. But in this case, both may end up paying quite a bit.

1

# CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 10, 2015.

DATED: March 10, 2015                    Respectfully Submitted,

KIESEL LAW LLP

By: _____/s/ *Paul R. Kiesel*_____
     Paul R. Kiesel
       *kiesel@kiesel-law.com*
     8648 Wilshire Boulevard
     Beverly Hills, California  90211
     Tel.: (310) 854-4444
     Fax: (310) 854-0812