# Exhibit HH



FILED
JUL 0 2 2012
DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY_____ DEPUTY
J. Alvarez

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SANTA CLARA

| | |
|---|---|
| RYAN UNG, CHI CHENG, and ALICE ROSEN, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No. 1-12-CV-217244<br><br>ORDER RE: DEMURRER |

The demurrer to the Complaint filed by defendant Facebook, Inc. came on for hearing before the Honorable Joseph H. Huber on June 19, 2012, at 9:00 a.m. in Department 2. The matter having been submitted, the Court orders as follows:

Defendant's request for judicial notice is DENIED.

Plaintiffs' request for judicial notice is DENIED.

//

1    The Court finds that Plaintiffs Ryan Ung, Chi Cheng, and Alice Rosen (collectively,
2  "Plaintiffs") are not required to separately establish "standing." Rather, Plaintiffs must simply
3  establish the elements of each of their causes of action. Therefore, Defendant's "standing"
4  argument has no merit.

6    Defendant argues that Plaintiffs have no privacy interest in their browsing history. In
7  response, Plaintiffs argue that they have a legally protected privacy interest in the whole of their
8  browsing history. As explained in the case of *United States v. Maynard*, 615 F.3d 544, 562
9  (D.C. Cir. 2010):

> Prolonged surveillance reveals types of information not revealed by short-term
> surveillance, such as what a person does repeatedly, what he does not do, and
> what he does ensemble. These types of information can each reveal more about a
> person than does any individual trip viewed in isolation. Repeated visits to a
> church, a gym, a bar, or a bookie tell a story not told by any single visit, as does
> one's not visiting any of these places over the course of a month. The sequence of
> a person's movements can reveal still more; a single trip to a gynecologist's office
> tells little about a woman, but that trip followed a few weeks later by a visit to a
> baby supply store tells a different story. A person who knows all of another's
> travels can deduce whether he is a weekly church goer, a heavy drinker, a regular
> at the gym, an unfaithful husband, an outpatient receiving medical treatment, an
> associate of particular individuals or political groups -- and not just one such fact
> about a person, but all such facts.

The reasoning of this case is persuasive. Even tracking a portion of a person's browsing
history, which would include visits to a large number of sites given that Facebook's cookies exist
on millions of websites, can paint a comprehensive picture of a person's life. For example,
repeated visits to certain websites could show a person has a particular disease, or religious

affiliation, or is contemplating having an abortion, or any number of private facts about a person. "Legally recognized privacy interests are generally of two classes: (1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal. 4th 1, 35.) Compiling a comprehensive profile of a person through their web activities necessarily implicates both informational privacy and autonomy privacy. Accordingly, the Court finds that there is a legally protected privacy interest in a person's identifiable browsing history.

However, there is no legally protected privacy interest in anonymous data. (See *London v. New Albertson's, Inc.*, 2008 U.S. Dist. LEXIS 76246, 24-25 (S.D. Cal. Sept. 30, 2008).) Therefore, non-Facebook members do not have any privacy right in their browsing data that has not been linked to their identities. Plaintiffs argue that the browsing data of non-Facebook members can be linked to them if the non-Facebook members ever join Facebook. While that may be true, at this point the browsing history of non-Facebook members is anonymous and is not subject to protection under the right to privacy.

Defendant contends that Plaintiffs have failed to allege that they had a reasonable expectation of privacy in their browsing history because Facebook discloses its use of cookies in its Privacy Policy, which is published on its website. The Privacy Policy states, in relevant part:

> **Cookie Information.** We use "cookies" (small pieces of data we store for an extended period of time on your computer, mobile phone, or other device) to make Facebook easier to use, to make our advertising better, and to protect both you and Facebook. For example, we use them to store your login ID (but never your password) to make it easier for you to login whenever you come back to Facebook. We also use them to confirm that you are logged into Facebook, and

        to know when you are interacting with Facebook Platform applications and websites, our widgets and Share buttons, and our advertisements. You can remove or block cookies using the settings in your browser, but in some cases that may impact your ability to use Facebook.

(Declaration of Ana Yang Muller in Support of Defendant Facebook, Inc.'s Demurrer to Plaintiffs' Class Action Complaint, Exhibit B.)

      First, the Privacy Policy is not the proper subject of judicial notice, so it is not properly before the Court on demurrer. Even if the Court were to consider the language of the Privacy Policy, however, it would not show that Facebook members have consented to having their Internet activity tracked.

      The above portion of the Privacy Policy states generally that Facebook uses cookies to store information about users, but it does not make clear the extent of the information Facebook allegedly gathers about each user. According to the allegations of the Complaint, more than 2.5 million websites have integrated the Facebook "Like" button. (Complaint, ¶ 12.) Facebook uses the "datr tracking cookie" to track members' visits to those websites even if the website visitor does not click on the "Like" button" and even if the Facebook member is logged out of Facebook. (*Id.*, ¶¶ 14-15.) This type of widespread tracking is not apparent from Facebook's Privacy Policy. Although a person might not have any reasonable expectation of privacy from Facebook while interacting with the Facebook website itself, that does not mean a person would expect Facebook to track all or a large part of the person's Internet activity when not on the actual Facebook website.

      Defendant asserts that the use of cookies to provide Internet services is a longstanding practice and courts have repeatedly rejected attempts to impose liability for such conduct. While this may be true as to the use of cookies on a single website, Facebook's alleged conduct goes far

beyond that. Facebook is alleged to have used cookies to track large portions of people's browsing histories across numerous other websites so that a profile of each person can be put together. Given the types of information that this can reveal about a person (as discussed above), the Court finds that Facebook's alleged conduct constitutes a serious invasion of a privacy interest.

In sum, Plaintiffs have sufficiently alleged that Defendant's conduct constitutes a serious invasion of a legally protected privacy interest in which there is a reasonable expectation of privacy for Facebook members. However, there is no legally protected privacy interest for non-Facebook members. Accordingly, Defendant's demurrer to the first cause of action (Violation of Article 1, Section 1 of the California Constitution) is OVERRULED as to plaintiff Ryan Ung (a Facebook member) and SUSTAINED WITH 10 DAYS' LEAVE TO AMEND as to plaintiffs Chi Cheng and Alice Rosen (non-Facebook members).

Plaintiffs' unjust enrichment cause of action is based on Facebook receiving money "as a result of collecting and storing its users' personal information. . . ." (Complaint, ¶ 36.) This allegation shows that the cause of action is essentially a remedy being sought in connection with Facebook's alleged violation of Plaintiffs' right of privacy (i.e. the first cause of action). The proper method to attack an improper remedy is through a motion to strike, not a demurrer. (See *Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal. App. 4th 365, 385 ["The appropriate procedural device for challenging a portion of a cause of action seeking an improper remedy is a motion to strike."].) Accordingly, Defendant's demurrer to the second cause of action (Unjust Enrichment) is OVERRULED.

With regard to the third cause of action (Violation of the California Invasion of Privacy Act/Unlawful Wiretaps - California Penal Code § 631, *et seq*.), Plaintiffs allege that "[t]he communications of Plaintiffs with third-party websites were intentionally obtained by Facebook while in transit over wires, lines, cables, or instruments through the State of California and while

they were being sent from or received at a place within California in violation of California Penal Code § 631." (Complaint, ¶ 43.) "Facebook willfully, intentionally, and without the consent of Plaintiffs, or any party to the communications, and in an unauthorized manner using an unauthorized connection, obtained, read, attempted to read and learned, and attempted to learn the contents of such electronic communications of Plaintiffs while they were in transit in or through California in violation of California Penal Code § 631." (*Id.*, ¶ 44.) "Facebook used and communicated such illegally obtained electronic communications of Plaintiffs in violation of California Penal Code § 631." (*Id.*, ¶ 45.)

Defendant argues that these vague, unsupported, and conclusory allegations are insufficient to state a claim. Defendant is correct that conclusory allegations are insufficient to survive demurrer. (*Curcini v. County of Alameda* (2008) 164 Cal. App. 4th 629, 650.) Plaintiffs have alleged only legal and factual conclusions and therefore have not sufficiently stated a claim pursuant to Penal Code section 631.

Even if Plaintiffs included more detailed allegations, however, Plaintiffs would not be able to maintain this cause of action. Section 631 "has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation." (*Warden v. Kahn* (1979) 99 Cal. App. 3d 805, 811.)

Plaintiffs' theory is as follows:

> When a website includes Facebook Third-Party Content on one of its web pages, the page does not actually contain the Facebook Content itself. [] Rather the page contains instructions that, when a Plaintiff or Class member visits the page, cause the Plaintiff's or Class member's browser to ask Facebook to deliver the Facebook Content to the browser, to be displayed as part of the page. . . . Accordingly, the Facebook Content is third-party content that is incorporated onto

> the (first-party) page as the page is loading, and Facebook is a third party to any communications directly between the Plaintiff or Class member and the web server that hosts the page.

(Plaintiffs' Memorandum of Points and Authorities in Opposition to Facebook's Demurrer, p. 19:1-9.)

Plaintiffs' description shows that Facebook is actually a participant in the communication between a plaintiff's or class member's browser and a website because Facebook is requested to and does deliver information to be displayed on the website. Moreover, Plaintiffs do not make clear how Facebook learns the contents of any communications aside from the information that Facebook itself sends upon request to be displayed as part of web page. Consequently, even if Plaintiffs had included allegations explaining their theory (quoted above), the conduct Facebook is accused of does not violate Penal Code section 631. Accordingly, Defendant's demurrer to the third cause of action (Violation of the California Invasion of Privacy Act/Unlawful Wiretaps - California Penal Code § 631, *et seq.*) is SUSTAINED WITH 10 DAYS' LEAVE TO AMEND.

Plaintiffs' fourth cause of action relies on allegations of a violation of Penal Code section 631. (Complaint, ¶ 51.) As discussed above, Plaintiffs have not stated a claim for a violation of Penal Code section 631. Therefore, Plaintiffs cannot maintain a cause of action for negligence based on such a violation. Accordingly, Defendant's demurrer to the fourth cause of action (Negligence *Per Se*) is SUSTAINED WITH 10 DAYS' LEAVE TO AMEND.

Dated: 7-2-12

Hon. Joseph H. Huber
Judge of the Superior Court

Case No. 1-12-CV-217244    7
Order Re: Demurrer