COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
MATTHEW D. BROWN (196972)
(brownmd@cooley.com)
JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
KYLE C. WONG (224021)
(kwong@cooley.com)
ADAM C. TRIGG (261498)
(atrigg@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:      (415) 693-2000
Facsimile:      (415) 693-2222

Attorneys for Defendant
FACEBOOK, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| In re: Facebook Internet Tracking Litigation | Case No. 5:12-md-02314 EJD |
|---|---|
| | **EXHIBIT A TO DECLARATION OF KYLE C. WONG IN SUPPORT OF DEFENDANT FACEBOOK, INC.'S MOTION FOR PROTECTIVE ORDER** |
| | Date:            April 28, 2016 |
| | Time:           9:00 a.m. |
| | Courtroom:    4 |
| | Judge:          Edward J. Davila |
| | Trial Date:    None Set |

# EXHIBIT A

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.

EXHIBIT A TO WONG DECLARATION ISO
FACEBOOK'S MOTION FOR PROTECTIVE ORDER
CASE NO. 5:12-MD-02314 EJD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re: Facebook Internet Tracking Litigation | Case No. 12-md-02314 EJD |

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION
## OF DOCUMENTS TO DEFENDANT FACEBOOK

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs Perrin Davis, Cynthia Quinn, Brian Lentz and Matthew Vickery (collectively, "Plaintiffs"), by their attorneys, hereby demand that Defendant Facebook produce the documents described below, at the offices of Stewarts Law US LLP, 1201 North Orange Street, Suite 740, Wilmington, Delaware 19801 within the time prescribed by such rules, or at such other time and place as may be mutually agreed upon by counsel.

## DEFINITIONS

1.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), including, without limitation, correspondences, letters, memos, e-mails or faxes, whether handwritten or typewritten. The term also includes any audio and video tapes, transcripts, or notes made of telephone calls.

2.      "Document" is defined in the broadest possible sense and includes all electronically stored information ("ESI").  Documents responsive to these requests include all originals, non-identical copies and drafts of any documents, including without

4194-3

limitation, any and all written, printed, typed, photostatic, photographic, recorded, electronic or graphic material, however produced or reproduced, tapes or other voice recordings, and all other tangible objects, including without limitation:  booklets, brochures, magazines, trade publications, pamphlets, circulars, catalogs, notices, periodicals, paper, income statements, balance sheets, spreadsheets, tables, presentations, projections, forecasts, budgets, statements of cash flows, statements of operations, contracts, agreements, photographs, agendas, minutes, records of meetings, memoranda, messages, records, trade letters, comparisons, appraisals, analyses, reports, questionnaires, plans, evaluations, financial calculations and representations, diary entries, calendars, telephone logs, telephone records, sales call reports, correspondence, telegrams, telecopies, press releases, advertisements, notes (handwritten or otherwise), transcripts, working papers, drawings, schedules, tabulations and projections, surveys, scripts, studies, graphs, charts, films, printouts, video and audiotapes, time records and employee performance evaluations, computer files, computerized data, computer drives, home or personal computer contents, computer disks, databases, notes, memorializations and all other data, whether recorded or stored by electronic or any other means, including without limitation, all computer-generated or computer-stored information, e-mail, Easylink, internet, intranet, network or any other "in-house" electronic communication system (*e.g.*, Lotus ccmail), whether or not reduced to printed form, and drafts of any of the foregoing.  If a document was prepared in several copies or if additional copies were made, and if any such copies are not identical or are no longer identical for reason of any subsequent notation or modification whatsoever, including without limitation, notations

on the front or back on any of the pages thereof, then each non-identical copy is a separate document and must be produced.

3.      "Person" means any natural person; public or private corporation, whether or not organized for profit; governmental entity; partnership; association; cooperative; joint venture; sole proprietorship; or other legal entity.  With respect to a business entity, the term "person" includes any natural person acting formally or informally as an employee, officer, agent, attorney, or other representative of the business entity.

4.      "Policy" means each rule, procedure, or directive, formal or informal, that was recognized as such by your present or former officers, directors, employees, agents, or other persons acting or purporting to act on your behalf, that was in effect at any time during the period covered by these requests and includes any changes of policy.

5.      "You," "your," and "your company" as used herein means Facebook, Inc., as defined herein.

6.      The terms "and" and "or" shall be read as "and/or" and construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed outside of its scope.

7.      The use of the singular form of any word includes the plural and *vice versa*.  In addition, the use of any tense of any verb includes all other tenses of the verb.

8.      "He" or "his' shall be read also to refer, where applicable, to "she" or "her."

9.      The word "including" shall be deemed to be followed by the phrase "but not limited to."

10.     The phrases, "concerning," "relates to," or "relating to" include reflecting, analyzing, constituting, memorializing, discussing, regarding, evidencing, referring to, involving, explaining, dealing with, in connection with, referenced in, attached to, and/or bearing upon (whether legally, factually or otherwise) in whole or in part.

11.     "Complaint" means the corrected version of Plaintiffs' First Amended Consolidated Class Action Complaint, filed in this Court on or around May 23, 2012.

12.     "ESI" means electronically stored information, electronically stored data or electronic data, and is to be interpreted broadly, as used in the Federal Rules of Civil Procedure and the advisory committee notes thereto, to include all types of information, regardless of the storage media (*e.g*, hard drive, CD-ROM, DVD, disc, tape, thumb drive, etc.), that requires a computer or other machine to read or process it.

13.     "Facebook" means Facebook, Inc., its present and former officers, directors, shareholders, employees, trustees, principals, agents, servants, parent corporations, subsidiaries, divisions, affiliates, franchisee, associated or related entities, predecessors, successors, accountants, and attorneys; all other persons, corporations and organizations acting on its behalf; and any or all of the foregoing.

14.     "PII" means information obtained from or about Facebook members.

## INSTRUCTIONS

1.     You are requested to produce all documents described below that are in Your possession, custody or control.  All documents shall be produced in the form and order they are kept in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimiles thereof.  Documents that were stapled, clipped or otherwise fastened together in their original condition shall be

produced in such form.  Any index of responsive documents and any electronic copy of responsive documents (including without limitation those recorded on CD) shall also be produced.  In addition, You are required to supplement and/or amend Your responses on a going-forward basis, as appropriate.

2.      You shall produce the original of each document described below or, if the original is not in Your custody, then a copy thereof, and in any event, all non-identical copies which differ from the original or from the other copies produced for any reasons, including, without limitation, the making of notes thereon.

3.      If any portion of any document is responsive to any request, then the entire document must be produced.  If any requested document cannot be produced in full, produce the document to the extent possible, specifying each reason for Your inability to produce the remainder of the document and stating whatever information, knowledge or belief You have concerning the portion not produced.

4.      If any responsive document was, but is no longer in Your possession, custody, or control, state whether it is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance explain the circumstances surrounding such disposition thereof.

5.      If any responsive document is withheld, in whole or in part, for any reason, including, without limitation, any claim of privilege, confidentiality, trade secret, or any other objection, set forth separately with respect to each such document: (a) the type of document (i.e., letter, memorandum, etc.); (b) the author(s) of the document; (c) the addressee(s) of the document; (d) the date of the document; (e) the identity of all persons having received copies of the document, seen the document, or to whom the

document was disclosed; (f) the subject matter of the document; (g) a brief statement or synopsis of the substance of the document and/or the circumstances surrounding the making of the document; and (h) the nature of the privilege or other rule relied upon in withholding production of the document. The foregoing information shall be produced in the form of a "Privilege Log" within one (1) day after the withholding or partial production of any applicable documents.

6.      If a portion of any responsive document is protected from disclosure by privilege, work product or otherwise, that portion of the document may be redacted provided that the document is marked with the legend "Redacted," so as to reflect any and all portions which have been redacted and provided the information requested in ¶ 5 of these Instructions is furnished in the form of a "Privilege Log."

7.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

8.      The use of the singular form of any word includes the plural and vice versa.

**<u>TIME PERIOD</u>**

Unless stated otherwise, the time period to which these requests refer is May 27, 2008 through the present (the "Time Period").  If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier or subsequent document as well.  If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the production request.

## DOCUMENTS REQUESTED

**REQUEST NO. 1:**

All documents relating to any tracking by Facebook of Facebook user internet activity after those users had logged out of their Facebook session, as alleged in the Complaint at ¶¶ 71-84 and elsewhere, including information about websites visited by such users.

**REQUEST NO. 2:**

All documents relating to any consent that Facebook contends the plaintiffs or other putative class members gave Facebook for the tracking of user internet activity post-log-out.

**REQUEST NO. 3:**

All documents describing or containing the names, descriptions, usage or identifying features of the log entries ("Log Files") that Facebook created, maintained, reviewed, analyzed or used to organize data about Facebook users' internet activity, as described in the Complaint at ¶ 79 and elsewhere, inclusive of whether those users were logged-in or logged-out of Facebook.

**REQUEST NO. 4:**

All documents concerning all databases Facebook created, maintained, reviewed, analyzed or used to store information about Facebook users, including internet activity for those users, and including all documents identifying or describing any tables in any Facebook database and the overall nature of Facebook's database structure.

**REQUEST NO. 5:**

All documents relating to the methods by which Facebook collects and stores data from Facebook users, both while they are logged-in to and after log-out from Facebook.

**REQUEST NO. 6:**

All documents constituting Facebook's corporate organizational charts, including those that describe or depict the "Data Science Team" however it might now be called (inclusively, "Data Science Team"), as described in the July/August 2012 Technology Review article, "What Facebook Knows," by Tom Simonite.

**REQUEST NO. 7:**

All documents relating to the Data Science Team's analyses, studies or recommendations of ways in which Facebook might directly or indirectly generate revenue from user data Facebook obtains.

**REQUEST NO. 8:**

All documents relating to studies, analyses or evaluations of Facebook's actual or potential revenue or profits associated with personalized advertisements whereby Facebook users or non-users are described as users of a particular product or service.

**REQUEST NO. 9:**

All documents concerning studies, analyses or evaluations by Facebook of the value, including monetary value, of PII.

**REQUEST NO. 10:**

All documents concerning studies, analyses or evaluations of the "key value" pairs Facebook ascribed to cookies Facebook placed on user's browsers or in user's computers when such users were either logged in to Facebook or logged out of Facebook.

**REQUEST NO. 11:**

All documents, including but not limited to instructions, manuals, protocols or policies, relating to Facebook's linking of PII to a particular user's computer and/or Facebook account.

**REQUEST NO. 12:**

All documents, including but not limited to measurements, studies, analyses or evaluations, of the length of the time periods during which electronic communications between Facebook and third party websites visited by a Facebook user who is logged in to Facebook (or logged off of Facebook) reside in (a) registers in any central processing unit; (b) the random access memory; or (c) the hard drive of any of the computers or servers involved in transmitting such electronic communications.

**REQUEST NO. 13:**

All documents concerning the methods by which Facebook obtains PII through mobile applications.

**REQUEST NO. 14:**

All documents concerning Facebook's retention of the user IDs of Facebook users after logging out of Facebook.

**REQUEST NO. 15:**

All documents concerning (a) Facebook's Statement of User Rights and Responsibilities; (b) Facebook's Data Use Policy; and/or (c) Facebook's Terms of Service, including all drafts and revisions thereof, that were in effect during the Relevant Time Period.

**REQUEST NO. 16:**

All documents concerning the named Plaintiffs.

**REQUEST NO. 17:**

All documents describing or constituting (a) the bases for; (b) any analyses, studies or evaluations of; and/or (c) any modification to the following:

1.      The statement that "[w]hen you log out of Facebook, we remove the cookies that identify your particular account," which appeared on Facebook's online help center in response to the question**:** *"Does Facebook use cookies if I don't have an account or have logged out of my account*?"

2.      The statement that "[w]e do not use cookies to create a profile of your browsing behavior on third-party sites or to show you ads...," which appeared on Facebook's online help center in response to the question: *"How does Facebook use cookies?"*

3.      The statements that "we receive data whenever you visit a game, application, or website that uses Facebook Platform or visit a site with a Facebook feature (such as a social plug-in).  This may include…if you are logged in to Facebook, your user ID," which appeared in Facebook's data use policy.

4.      The statement:  "Pre-Approved Third-Party Websites and Applications – In order to provide you useful social experiences off of Facebook, we occasionally need to provide General Information about you to pre-approved third-party websites and applications that use Platform at the time you visit them (if you are still logged in to Facebook)…In addition, if you log out of Facebook before visiting a pre-approved application or website, it will not be able to access your information," which appeared in .

Facebook's privacy policy (April, 22 2010) and is attached as Exhibit C to Facebook's response to Plaintiffs' motion to dismiss the Complaint in this action (Dkt. No. 44).

**REQUEST NO. 18:**

All documents supporting any contention by Facebook that the post-log out tracking alleged in the Complain was accidental and/or the result of a "bug."

**REQUEST NO. 19:**

All documents relating to Facebook's policies, protocols or procedures concerning the maintenance and/or deletion of PII, including the length of time that PII is stored.

**REQUEST NO. 20:**

All documents concerning Facebook's policies, procedures or protocols for deleting Facebook-placed cookies from the computers or browsers of Facebook users.

**REQUEST NO. 21:**

All documents sufficient to identify the persons or entities involved in conceiving, drafting, reviewing, editing and finalizing (a) Facebook's Statement of User Rights and Responsibilities; (b) Facebook's Data Use Policy; and/or (c) Facebook's Terms of Service.

**REQUEST NO. 22:**

All documents relating to any user PII that Facebook scrubbed or deleted from any Facebook database.

**REQUEST NO. 23:**

All documents concerning any agreement, whether formal or informal, between Facebook and any third party, which permits Facebook to track the internet activity of Facebook users on said third party's website.

**REQUEST NO. 24:**

All documents relating to U.S. Patent Application No. 20110231240, filed February 8, 2011 and published September 22, 2011.

**REQUEST NO. 25:**

All documents and communications between Facebook and any person, including but not limited to Australian blogger Nik Cubrilovic, concerning any allegation that Facebook tracked the internet activities of users post log-out.

**REQUEST NO. 26:**

All documents concerning the benefits of advertising to Facebook users based on PII.

**REQUEST NO. 27:**

All documents concerning instructions, manuals, protocols, policies or methods by which PII obtained from Facebook users when they were not logged-in to Facebook.

**REQUEST NO. 28:**

All documents concerning the methods used by Facebook to determine or record whether a Facebook user is logged-in, logged-out, active or inactive.

**REQUEST NO . 29**:

All documents concerning the creation, design, scope, monetization, or modification of the following cookies: (a) the a_user cookie; (b) the c_user cookie; and (c) the datr cookie.

**REQUEST NO. 30:**

All documents produced or provided to any governmental or regulatory agency or authority, including but not limited to (a) the U.S. Congressional Bi-Partisan Privacy Caucus; (b) the U.S. Senate Commerce Committee; (c) the Federal Trade Commission; (d) the Office of the Data Protection Commission of Ireland; (e) the German data protection commission; (f) the Information Commissioner's Office; and (g) the European Commission, in connection with any investigation or legal action concerning allegations that Facebook has tracked its users, collected, stored and/or retained PII, or otherwise violated consumer protection and/or privacy laws, directives or regulations.

**REQUEST NO. 31:**

All transcripts of any proceedings before any governmental or regulatory agency or authority, including but not limited to (a) the U.S. Congressional Bi-Partisan Privacy Caucus; (b) the U.S. Senate Commerce Committee; (c) the Federal Trade Commission; (d) the Office of the Data Protection Commission of Ireland; (e) the German data protection commission; (f) the Information Commissioner's Office; and (g) the European Commission, in connection with any investigation or legal action concerning allegations that Facebook has tracked its users, collected, stored and/or retained PII, or otherwise violated consumer protection and/or privacy laws, directives or regulations.

Dated: November 5, 2012

**STEWARTS LAW US LLP**

_____ /s/ David A. Straite _____
DAVID A. STRAITE
RALPH N. SIANNI
MICHELE S. CARINO
LYDIA E. YORK
1201 North Orange Street
Wilmington, DE 19801
Telephone:     (302) 298-1200
Facsimile:      (302) 298-1222
*dstraite@stewartslaw.com*

**BARTIMUS, FRICKLETON, ROBERTSON,
& GORNY, P.C.**
EDWARD D. ROBERTSON, JR.
JAMES P. FRICKLETON
STEPHEN M. GORNY
MARY D. WINTER
EDWARD D. ROBERTSON III
11150 Overbook Road, Suite 200
Leawood, KS 66211
Telephone:     (913) 266-2300
Facsimile:      (913) 266-2366
*chiprob@earthlink.net*

**Attorneys for Plaintiffs**