Stephen G. Grygiel (*admitted pro hac vice*)
**SILVERMAN THOMPSON
SLUTKIN WHITE LLC**
201 N. Charles Street, 26TH Floor
Baltimore, MD 21201
Tel.:    (410) 385-2225
Fax:    (410) 547-2432
*sgrygiel@mdattorney.com*

Frederic S. Fox (admitted *pro hac vice*)
David A. Straite (admitted *pro hac vice*)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Tel.:    (212) 687-1980
Fax:    (212) 687-7714
*dstraite@kaplanfox.com*

Laurence D. King (206423)
Mario Choi (243409)
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street, 4th Floor
San Francisco, CA 94104
Tel.:    (415) 772-4700
Fax:    (415) 772-4707
*lking@kaplanfox.com*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. INTERNET TRACKING LITIGATION | No. 5:12-md-02314-EJD<br><br>**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL, AND OBJECTION AND MOTION TO STRIKE PORTIONS OF DEFENDANT'S RESPONSE AND PORTIONS OF DECLARATIONS ATTACHED THERETO**<br><br>F.R.C.P. 26(c) and 37(a)<br>N.D. Cal. L.R. 37-1 and 37-2<br><br>Date:        April 28, 2016<br>Time:        9:00 a.m.<br>Courtroom:  4<br>Judge:        The Honorable Edward J. Davila<br>Trial Date:  None Set |

## I.    INTRODUCTION

In its Response dated March 30, 2016 (the "Response") [ECF No. 114] to Plaintiffs' Motion to Compel Discovery and Compliance with the Protective Order, Facebook repeats the argument in its Motion to Stay: in essence, further discovery would be burdensome during the pendency of its motion to dismiss because plaintiffs elected not to maximize discovery burdens earlier in the case.  However, the Response fails to address Facebook's decision (objectively unreasonable under Rule 26(g)) to identify only three employees in its initial disclosures as persons likely to have discoverable information.  In fact Rule 26(g) is never once mentioned in the Response.  Facebook also fails to offer any good faith basis for designating more than 99.9% of its production as highly confidential (arguing only that a "majority" of the types of documents are sensitive), and instead claims that such a discovery abuse should be excused if plaintiffs do not assume the burdens of challenging the designations on a page-by-page basis.

In support of today's Reply, plaintiffs submit the Supplemental Declaration of David A. Straite dated April 6, 2016, providing several documents referenced in the discussion below.  Plaintiffs also object to portions of two declarations submitted by Facebook in support of the Response.  Each Facebook declaration contains statements not made on personal knowledge.  Under Northern District local rules, these portions should be stricken and those portions of the Response relying on the stricken material should also be stricken.

## II.    DISCOVERY UPDATE AND ADDITIONAL FACTUAL BACKGROUND

In the March 30th Response, Facebook provides a summary of "discovery to date."  Response at 3-4.  Since that date, Facebook has produced further discovery.

Plaintiffs' request for documents dated Nov. 5, 2012 [ECF No. 108-2], request no. 2, asked for documents relating to "consent" that Facebook contends plaintiffs gave to tracking their internet activity post-logout.  In its objections and responses, Facebook agreed to produce relevant historical Statements of Rights and Responsibilities, Data Use Policies, Privacy Policies and Help Center pages.  [ECF No. 108-3].  With respect to the Help Center pages, on April 11, 2014 Facebook produced a single two-page document which appears to be a cut-and-paste of historical versions of a single FAQ on the Help Center. *See* Supp. Straite Decl. Ex. 1.  Facebook represented to the undersigned in November 2014 that its document production was complete subject to pending objections, and then chastised plaintiffs for

failing to attach to the amended complaint the documents Facebook failed to produce. *See, e.g.*, Motion to Dismiss dated Jan. 14, 2016 at 34 [ECF No. 101]. Just last month, Facebook repeated the admonition in its Reply in further support of the Motion to Dismiss, and also noting that the amended complaint "never alleges the URL address where this [Help Center] entry can be found." ECF No. 109 at 23.

Yesterday, however (April 5, 2016), Facebook produced approximately two-dozen Help Center pages not previously produced. *See* Supp. Straite Decl. Ex. 2. These newly produced documents contain representations referenced in the complaint, in the press, and by privacy advocates. *See, e.g.*, FB_MDL_00064920 ("because you're not logged in to Facebook, we don't receive your user ID"). It is unclear if more are coming. But certainly yesterday's production underscores the continuing need for discovery even during the pendency of defendant's motion to dismiss and demonstrates the lack of seriousness with which Facebook has approached its discovery obligations.

## III.    OBJECTION AND MOTION TO STRIKE

Plaintiffs object to and move to strike material in two declarations and those portions of the Response that rely on them. Once plaintiffs have demonstrated the relevancy of material sought in discovery, as they have in the Motion to Compel, the burden then shifts to Facebook to demonstrate with actual facts that the material is worthy of court protection. *See, e.g., Dolfo v. Bank of America, N.A.*, 2013 WL 1316705 (S.D. Cal. 2013). Here, defendant uses two declarations to support points in its Reply. In the Northern District of California, however, the local rules require that "[a]n affidavit or declaration . . . must conform as much as possible to the requirements of Fed. R. Civ. P. 56(e). . . . An affidavit or declaration not in compliance with this rule may be stricken in whole or in part." L.R. 7-5(b). Rule 56(e) of the Federal Rules requires, among other things, that "an assertion of fact" must have proper support, and procedurally, if an affidavit or declaration is the method used to properly support a fact, the affidavit or declaration "***must be made on personal knowledge***" and must be set out in admissible form. Fed. R. Civ. P. 56(c)(4) (emphasis added).

Facebook has violated L.R. 7-5(b) with respect to portions of both declarations. First, plaintiffs challenge Facebook's blanket confidentiality designations. In support of the current designations, Facebook argues that a "majority" of the documents are sensitive. Reply at 17. Leaving aside for a moment whether a party may designate <u>all</u> documents confidential simply because a <u>majority</u> of the

documents may be worthy of protection, Facebook's only proof that the majority of documents are worthy of protection is a single declaration, signed by Facebook in-house counsel Natalie Naugle [ECF No. 114-1].  But in her declaration, Ms. Naugle does not represent that she participated in the review of the documents prior to their production nor does she represent that she had even worked at Facebook at the time.  She only states:

> I am <u>familiar with a number of the documents</u> produced in this case and can comment generally on the sensitivity of the information they contain.  <u>I am informed</u> that the vast majority of the documents produced in this case consist of certain categories of documents: 1) Facebook task troubleshooting emails; 2) 'Phabricator emails' regarding technical revisions to Facebook's website or other code, 3) weekly engineering team reports, 4) internal Facebook "wikis," and 5) technical discussions between Facebook engineers.

Naugle Decl. ¶ 3 (emphasis added). Ms. Naugle never claims to have actual knowledge of how many of the Facebook documents fall into these five categories, and (to her credit) candidly admits that someone else gave her the information.  But she never identifies who told her, when she was told, and what "vast majority" means here. She also never identifies how many documents in the production she is "familiar" with (only stating that it is a "number") and does not actually represent that she is familiar with all five of the categories she describes.

Because Ms. Naugle does not have personal knowledge as required by L.R. 7-5(b), paragraph 3 of the Naugle Decl. should be stricken as hearsay.  Likewise, in the Reply, Facebook offers Ms. Naugle's hearsay statement in paragraph 3 as its sole evidence to support the argument that the <u>majority</u> of documents were properly designated highly confidential: "the majority of the production involves highly technical discussions of bug reports, trace logs, and other highly sensitive documents that would create a substantial risk of competitive harm if disclosed."  Reply at 17.  As such, this paragraph should also be stricken.

Second, in its discussion of the meet-and-confer process in the Reply, Facebook offers a declaration signed by Facebook outside counsel Adam C. Trigg [ECF No. 114-2].  *See* Reply at 4.  The entirety of paragraph 7 of the Trigg Decl. is hearsay, other than the first sentence.  Mr. Trigg attempts to describe the substance of two meet-and-confer teleconferences in November, 2014, but Mr. Trigg does not say whether he attended these meetings.  Instead, he merely reports what he was told happened at

these meetings and (like Ms. Naugle) candidly admits the report is based on second-hand information. *See* Trigg Decl. ¶ 7 ("I am informed that during these calls . . ."). As hearsay, the entire paragraph (with the exception of the first sentence) should be stricken, and the sentence on page 4 of the Reply relying on the Trigg Decl. should likewise be stricken.

## IV.    ARGUMENT IN FAVOR OF MOTION TO COMPEL

### A.  Facebook Should be Compelled to Search More than 3 Employees for Documents

On July 27, 2012, Facebook served its Rule 26(a) initial disclosures. *See* Supp. Straite Decl., Ex. 3. Although required to disclose the names of each individual likely to have discoverable information, Facebook disclosed only three employees, who later were the only three individuals searched for documents.[1] Rule 26(g) requires every 26(a) disclosure to be signed by at least one attorney of record "in the attorney's own name," certifying that the disclosure is believed to be complete, and that such belief is formed after a "reasonable inquiry." *Brock v. County of Napa*, 2012 WL 2906593, at *4 (N.D. Cal., July 16, 2012). The "reasonableness" of the inquiry is measured by an objective standard and "there is no required showing of bad faith." *Id*. "The Court, therefore, considers the question from the perspective of a reasonable person." *Id*. (citing *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003)); *accord, Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon L.P.*, 76 F.3d 1003, 1007 (9th Cir. 1996). "Finally, a party must supplement its initial disclosures in a 'timely manner' if it learns that its initial disclosures are incomplete or incorrect." *Curley v. Wells Fargo & Co.*, 120 F. Supp. 3d 992, 999 (N.D. Cal. 2015) (citing Rule 26(e)).

Under any objective standard, Facebook's disclosure of only three individuals likely to have discoverable information (and the subsequent decision to limit the search for documents to these same three individuals) is incomplete. The advisory committee notes to the 1993 enactment of Rule 26(a) make clear that "'disclosure requirements should, in short, be applied with common sense' to help focus the attention on the 'discovery that is needed,' and not used to 'indulge in gamesmanship with respect to the disclosure obligations.'" *Robinson v. Champaign Unit 4 Sch. Dist.*, 412 Fed. Appx. 873, 877 (7th Cir. 2011) (citing advisory committee note). The committee notes also make clear that "'a major

---

[1]  Although only three employees are named, Facebook does name 27 plaintiffs as individuals likely to have discoverable information. Supp. Straite Decl., Ex. 3, at 3-4.

purpose' of the initial disclosure requirements 'is to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information.'" *R&R Sails, Inc. v. Insurance Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012) (citing committee notes).

Facebook's Response is silent on these obligations, and never once mentions Rule 26(g) or 26(a). No attempt is made to argue that identifying and searching only three employees is "objectively reasonable" nor did Facebook attempt to describe (subjectively) what actual steps were taken to satisfy the "reasonable inquiry" duty of Rule 26(g). No case law was cited justifying the small number, especially given the magnitude of the allegations in this case. Plaintiffs are unaware of any nationwide class action where only three employees had any discoverable information. Even outside of the class action context, custodian lists of more than 100 people are not uncommon. *See, e.g., Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 543 (N.D. Cal. 2009) (parties agreed to limit number of custodians to 140).

Here, plaintiffs are not suggesting that Facebook search 140 custodians. However, three is objectively improper and simply by reading the documents produced from the files of the three custodians, plaintiffs have been able to identify at least 20 custodians who should have been searched, and brought these names to Facebook's attention. Facebook refused to discuss them absent an agreed discovery stay. Thus, Facebook seems to argue that it is exempt from its Rule 26(a) and 26(g) obligations unless and until the plaintiffs move to compel and prove that additional custodians were improperly withheld from disclosure. This would turn Rule 26(a) on its head and ignore the purpose of the rule: "to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information." *R&R Sails, Inc.*, 673 F.3d at 1246; *accord, Norman v. CP Rail Sys.*, 2000 WL 1700137 (N.D. Ill. Nov. 13, 2000) (Rule 26(a) is a "fairness rule, not a technicality. The point is to avoid having to slog through heaps of discovery material."). Facebook requests permission to engage in the very "gamesmanship" that the 1993 enactment was designed to eliminate.

Furthermore, plaintiffs do demonstrate with actual documents that Facebook's disclosures (and identical custodian list) were insufficient. As noted in the Motion to Compel, one of the three custodians himself identified a different Facebook employee as the person who knew the most about a key issue in the case, and two additional Facebook employees were identified in the limited Facebook document production as knowledgeable people with respect to a different key issue. The Response also

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL
AND OBJECTION AND MOTION TO STRIKE
No. 5:12-md-02314-EJD

says that the Motion to Compel only makes a "vague reference" to additional custodians whose documents were appended to the complaint, yet it is unclear what more is needed. The Court has actual documents authored by Facebook employees whom Facebook never searched, and thus there is nothing "vague" about the descriptions of those documents.

B. <u>Facebook Should be Compelled to Produce Additional Categories of Documents</u>

In a motion to compel, Facebook correctly argues that the moving party has the burden to identify the relevance of the documents requested. *See, e.g., Hupp v. San Diego County*, 2014 WL 2480586, at * 2 (S.D. Cal. June 3, 2014). Yet it is also true that once a movant identifies the relevance, "[t]he party resisting discovery bears the burden of opposing disclosure." *Id*. (citing *Miller v. Pancucci*, 141 F.R.D. 292, 299 (D.C. Cal. 1992)); *Khalilpour v. CELLCO P'ship*, 2010 WL 1267749, at *3 (N.D. Cal. Apr.1, 2010). Here, plaintiffs met their burden of demonstrating the relevancy of four categories of documents. "Relevance is construed broadly to include any matter that bears on, or reasonably could lead to other matter that could bear on, any issue that may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The burden then shifted to Facebook to demonstrate why the requested material should be protected from disclosure. Facebook failed to do so.

1. *Request No. 16*

After two years of refusing to produce any documents responsive to request no. 16 ("all documents related to the named plaintiffs"), Facebook now agrees that plaintiffs are entitled to at least some documents related to them. Response at 9-10. However, Facebook is only willing to produce those documents related to "internet browsing." This limitation is unduly narrow for several reasons. First, plaintiffs allege that the aggregation of personal data is the harm in this case, and if Facebook is associating internet search history with other data-points, Facebook should produce documents related to such association. The limitation proposed by Facebook creates an obvious incentive to engage in further gamesmanship in deciding whether a document related to a named plaintiff also qualifies as "internet browsing." Second, the plaintiffs are seeking to represent a class, and as such any document related to them in the custody, control or possession of defendant is discoverable on the issues of adequacy and typicality. Facebook cites to no authority to the contrary and in fact fails to acknowledge in the Response the lead plaintiffs' potential class representative roles. The phrases "class representatives" or

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL
AND OBJECTION AND MOTION TO STRIKE
No. 5:12-md-02314-EJD

1    "lead plaintiffs" are conspicuously absent.  It is for this reason that the requests are limited to the four

2    named plaintiffs and not the additional plaintiffs whose cases are consolidated with this MDL, a fact

3    contrary to Facebook's claim that the request is "unbounded."  Response at 9.  Finally, Facebook argues

4    that producing everything it has on the named plaintiffs would be burdensome.  But Facebook provides

5    no facts to support its burden claim (only conclusory argument), and furthermore Facebook produced

6    similar documents (more than 1,000 pages of them) to Max Schrems, the plaintiff in a class action

7    against Facebook in Austria.  *See* SAC ¶¶ 146-53; *see also* Supp. Straite Decl., Ex. 4.  Facebook thus

8    clearly has the ability to provide the requested information, and the volume is modest.

9                        **2.  *Request Nos. 8 and 9***

10        Facebook challenges these requests on relevancy grounds, not burdens grounds.  But documents

11    related to the studies of the value of PII and personalized advertisements are clearly relevant to the issue

12    of damages, and the value of the PII and disgorgement of Facebook's unjust enrichment is alleged to be

13    relevant to several claims.  SAC ¶¶ 251, 261, 269, 293 and 295.  Plaintiffs concede Facebook's point on

14    page 10 of the Response, however, that these requests can be limited to Facebook users.

15                        **3.  *Request No. 24***

16        As above, Facebook challenges this request on relevancy grounds.  The patent at issue, attached

17    to the Supp. Straite Decl. as Exhibit 5, is described in detail in the SAC in paragraphs 79-84.  Facebook

18    argues that the patent was filed "nearly a year after Plaintiffs allege the tracking began," but the filing

19    date (February 11, 2011) is at the mid-point of the class period as currently alleged.  Facebook also

20    argues that the patent is "unrelated" because it tracks users across domains via a tracking pixel instead of

21    a cookie.  But this distinction is a smokescreen.  As the Electronic Frontier Foundation noted in an

22    interview in October 2011, the tracking pixels might be used to associate the same data at issue in this

23    case.  The EFF explicitly linked tracking pixels and tracking cookies and noted the danger:

24            It's clear that Facebook does extensive cross-domain tracking, with two types of
               cookies and even without.  With this data, Facebook could create a detailed
25            portrait of how you use the Internet: what sites you visit, how frequently you load
               them, what time of day you like to access them.  This could point to more than
26            your shopping habits – it could provide a candid window into health concerns,
               political interests, reading habits, sexual preferences, religious affiliations, and
27            much more.

28

See Supp. Straite Decl., Ex. 6.  Because the SAC alleges harm arising from the association of the types of data gathered form plaintiffs (regardless of whether obtained via a pixel or cookie), documents related to pixels tracking users across domains are relevant.

      C.  <u>Facebook Should be Compelled to Produce Documents in Full Form</u>

      Facebook has developed a curious approach to producing documents partially containing "sensitive" information.  On the one hand, this Court has ordered the parties to designate portions of documents confidential (rather than the entire document) where practical.  *See* Protective Order, ECF No. 75, § 5.1 ("to the extent it is practical to do so, the Designating Party must designate for protection only those parts of material . . . that qualify – so that other portions of the material . . . for which protection is not warranted are not swept unjustifiably within the ambit of this Order").  Facebook has failed to designate a single document as partially confidential pursuant to this provision; there are apparently no documents with some portions confidential and other portions not confidential.  Yet when Facebook deemed ostensibly sensitive material "non-responsive," it redacted portions (sometimes single words) of documents more than 100 times, even absent authority to do so.

      As discussed in the Motion to Compel, courts disfavor Facebook's approach to redacting "non-responsive" portions of documents.  Facebook cites to some cases allowing the practice, but these cases are distinguishable because the redactions would protect personal privacy or serve some other purpose, not just shield "highly sensitive" information from the plaintiffs.  Indeed, as noted by Facebook, plaintiffs agreed during a recent meet-and-confer that plaintiffs would not object to the redaction of social security numbers or home phone numbers.  Response at 13.  But Facebook does not represent that it redacted social security numbers or other personal information of individuals.  Instead, the information is simply alleged to be "highly sensitive."  The Protective Order provides an "attorneys eyes only" sub-category of confidentiality to accommodate such super-sensitive information, and Facebook's better recourse would be to designate these portions as "highly confidential" under the Protective Order.

      Finally, Facebook objects that plaintiffs' demands are "premature" and did not offer a "sensible solution."  Response at 13.  However, the Motion to Compel offered two sensible solutions: either move to modify the Protective Order allowing for redactions, or at least provide a log of redacted material with

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL
AND OBJECTION AND MOTION TO STRIKE
No. 5:12-md-02314-EJD

corresponding bates numbers, to allow for plaintiffs to evaluate the claim of "non-responsiveness." Motion to Compel at 10. Facebook has ignored both of these sensible solutions in its Response.

    D. <u>Facebook's Blanket Confidentiality Designations Violate the Protective Order</u>

In the Motion to Compel, plaintiffs allege that every document produced between the date of the Protective Order and the date of the Motion bears a confidentiality designation; worse, all but five are designated "highly confidential." In the Response, Facebook argues that plaintiffs have waived the objection because the Protective Order only provides two weeks to challenge designations in court after raising the challenge with the producing party. However, plaintiffs have never challenged any confidentiality designation with Facebook, which is the point of the Motion to Compel Compliance with the Protective Order. Plaintiffs should not have to bear the burden of challenging confidentiality on a document-by-document basis when a designating party has inappropriately designated everything confidential. In fact, the only exhibit to the Trigg Decl. [ECF No. 114-3] makes this plain. In the email of March 7, 2016, numbered paragraph 4, the undersigned explicitly rejected the invitation to challenge any designations. In his email response of the same date, Mr. Trigg acknowledged that plaintiffs steadfastly refused to engage in a document-by-document challenge under these conditions. These emails make plain that there has been no challenge and thus no waiver.

Facebook also argues that there is a good faith basis to designate almost every document "highly confidential." However, as noted above, the only evidence in support of Facebook's argument is hearsay and should be stricken. Even if not stricken, the assertion that a <u>majority</u> of the documents are "sensitive" cannot support the designation of <u>all</u> documents as confidential (let alone "highly confidential"). No evidence was produced showing how document reviewers made their determinations and what criteria were used to distinguish between "confidential" and "highly confidential," and Facebook failed to provide the Court documentary examples. Finally, Facebook argues that no prejudice will result at depositions resulting from over-designation at the higher level of confidentiality because at least deponents can be shown their own documents. This argument is, to be blunt, absurd, and cannot justify a plain violation of a court order requiring care confidentiality designations.

**V.    CONCLUSION**

Plaintiffs respectfully request that this Court grant plaintiffs' motion to compel.

- 9 -

1

Dated: April 6, 2016

2

**KIESEL LAW LLP**

3

By:    /s/ Paul R. Kiesel

Paul R. Kiesel (SBN 119854)

4

8648 Wilshire Blvd.

Beverly Hills, CA  90211-2910

5

Telephone: (310) 854-4444

Facsimile:  (310) 854-0812

6

*kiesel@kiesel-law.com*

7

*Interim Liaison Counsel*

8

9

**SILVERMAN, THOMPSON, SLUTKIN &**
**WHITE LLC**

**KAPLAN, FOX & KILSHEIMER LLP**

10

11

By:    /s/ Stephen G. Grygiel

Stephen G. Grygiel (admitted *pro hac vice*)

By:    /s/ David A. Straite

Frederic S. Fox (admitted *pro hac vice*)

12

201 N. Charles St., #2600

David A. Straite (admitted *pro hac vice*)

850 Third Avenue

13

Baltimore, MD  21201

Telephone (410) 385-2225

New York, NY  10022

Telephone: (212) 687-1980

14

Facsimile: (410) 547-2432

*sgrygiel@mdattorney.com*

Facsimile:  (212) 687-7714

*dstraite@kaplanfox.com*

15

16

*Interim Co-Lead Counsel*

Laurence D. King (206423)

Mario Choi (243409)

17

350 Sansome Street, 4th Floor

18

San Francisco, CA 94104

Tel.:    (415) 772-4700

19

Fax:    (415) 772-4707

*lking@kaplanfox.com*

20

21

*Interim Co-Lead Counsel*

22

23

24

25

26

27

28

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL
AND OBJECTION AND MOTION TO STRIKE
No. 5:12-md-02314-EJD