Stephen G. Grygiel (*admitted pro hac vice*)
**SILVERMAN THOMPSON SLUTKIN WHITE LLC**
201 N. Charles Street, 26TH Floor
Baltimore, MD 21201
Tel.: (410) 385-2225
Fax: (410) 547-2432
*sgrygiel@mdattorney.com*

Frederic S. Fox (admitted *pro hac vice*)
David A. Straite (admitted *pro hac vice*)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Tel.: (212) 687-1980
Fax: (212) 687-7714
*dstraite@kaplanfox.com*

Laurence D. King (206423)
Mario M. Choi (243409)
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street, 4th Floor
San Francisco, CA 94104
Tel.: (415) 772-4700
Fax: (415) 772-4707
*lking@kaplanfox.com*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: FACEBOOK, INC. INTERNET TRACKING LITIGATION | No. 5:12-md-02314-EJD<br><br>**PLAINTIFFS' RESPONSE TO FACEBOOK'S SUPPLEMENTAL *SPOKEO* BRIEF** |

## I. INTRODUCTION

Plaintiffs respectfully respond to Facebook's brief dated May 31, 2016 ("Facebook Spokeo Brief") [ECF No. 128]. *Spokeo,* a procedural decision, confirmed that Article III injury-in-fact has two distinct elements, "particularized" injury and "concrete" injury. The Court articulated no new substantive rule, and overturned no prior Court authority. The violation of a legal right traditionally recognized at common law can be concrete harm, and Congress still has the right to create new legally protected interests where none existed at common law. The violation of the traditional common law right or invasion of the new legal interest can satisfy both elements even absent economic loss.

Despite *Spokeo's* limited holding, Facebook remarkably posits that Congress is now Constitutionally prohibited from outlawing unauthorized spying on electronic communications unless the victim also suffers economic injury as a consequence. Nothing in *Spokeo* supports this view.

## II. INVASION OF PRIVACY IS CONCRETE HARM UNDER *SPOKEO*

Facebook argues that the Second Amended Complaint ("SAC") fails to plead economic harm caused by Facebook's post-logout tracking. *See* Facebook Spokeo Brief at 1 ("Plaintiffs did not show they lost the opportunity to sell their browsing histories"); *id*. at 3 ("The SAC . . . contains no allegations that the value of their information has been diminished."). As an initial matter, Facebook is incorrect. The SAC has an entire section alleging the economic value of the data Facebook misappropriated, building on allegations in the First Amended Complaint. *See* SAC ¶¶ 129-143; *see also* Order on Motion to Dismiss dated October 23, 2015 [ECF No. 87], 2015 WL 6438744, at *6 (N.D. Cal., Oct. 23, 2015) ("Unlike other data privacy cases, Plaintiffs have alleged the existence of a limited market for their browsing histories."). The trend in this District and elsewhere is to consider these allegations sufficient to establish economic harm even absent further allegations of diminished ability to sell the data. *See, e.g., In re: Anthem, Inc. Data Breach Litig*., No. 15-md-2617-LHK, 2016 WL 3029783, at *15 (N.D. Cal. May 27, 2016) (plaintiffs need only allege "that there was either an economic market for their PII *or* that it would be harder to sell their own PII, not both") (italics in original).

More fundamentally, as plaintiffs' opening Spokeo brief [ECF No. 129] noted, injury-in-fact need not be economic to invoke this Court's jurisdiction. "'Concrete' is not, however, necessarily synonymous with 'tangible.'" *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1549 (2016). Some of our most

- 1 -

PLAINTIFFS' RESPONSE TO FACEBOOK'S SUPPLEMENTAL *SPOKEO* BRIEF
No. 5:12-md-02314-EJD

precious rights are intangible, including the freedom of religion, the right to vote, freedom of speech, and the right to be free from libel and slander. The loss of these rights is concrete harm even if unaccompanied by loss of treasure.

The right of privacy pre-dates the Republic and is enshrined in "specific guarantees in the Bill of Rights." *Griswold v. Connecticut*, 381 U.S. 479, 484 (1965). Justice Brandeis, in his *Olmstead* dissent that forms the foundation of modern Fourth Amendment jurisprudence, called the right of privacy "the most comprehensive of rights and the right most valued by civilized men." *Olmstead v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting); *accord, Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 487 (1974) (privacy is a "most fundamental human right").

Like other intangible rights, the right to privacy does not exist solely to prevent other harms. The violation itself can be the harm.[1] When Warren and Brandeis first proposed a tort for the invasion of privacy, they noted that some invasions constitute harm *per se*, like some species of libel or slander, and proposed the same for the tort of invasion of privacy. Samuel D. Warren and Louis D. Brandeis, "The Right to Privacy," 4 HARV. L. REV. 193 (1890). Fifteen years later, Georgia's Supreme Court became the first to recognize a tort for the invasion of privacy: "The right of privacy has its foundation in the instincts of nature. It is recognized intuitively, consciousness being the witness that can be called to establish its existence . . . [it] is therefore derived from natural law." *Pavesich v. New England Life Ins. Co.*, 50 S.E. 68, 69-70 (Ga. 1905). As Warren and Brandeis advocated, the Georgia Supreme Court held that money damages are not required: "It is a tort, and it is not necessary that special damages should have accrued from its violation in order to entitle the aggrieved party to recover." *Id.* at 73.

Other states quickly followed Georgia's lead so that by the time the Restatement of Torts was drafted, a tort for interference with privacy rights had become blackletter law. *See* Restatement (First) of Torts § 867 (1939) ("Interference with Privacy"); *see id., cmt. b* ("This interest appears only in a comparatively highly developed state of society"). Today, 44 states and the District of Columbia

---

[1] *See, e.g., Mendelson v. McCabe*, 144 Cal. 230 (1904) (trespass actionable even without actual damage); *Vermont Microsystems, Inc. v. Autodesk, Inc*., 88 F.3d 142, 151 (2d Cir. 1996) (misappropriation of trade secrets actionable even if plaintiff cannot show lost profits); *Spokeo*, 136 S. Ct. at 1551 (Thomas, J., concurring) ("Many traditional remedies for private-rights causes of action – such as for trespass, infringement of intellectual property, and unjust enrichment – are not contingent on a plaintiffs' allegation of damages beyond the violation of his private legal right.").

recognize various privacy torts, *see* **Exhibit A, Table 1**, and the last few holdouts protect privacy statutorily. *See* **Exhibit A, Table 2**. When the Second Restatement was issued in 1977, four distinct privacy torts had evolved, *see generally* Restatement (Second) of Torts §§ 652A-652E, and at least for intrusion upon seclusion (652B) and misappropriation (652C), monetary losses are not required. *Id*. § 652H (damages recoverable for "special damages," or "mental distress," or the harm to the victim's "interest in privacy" generally); *id., cmt. a* (invasion of seclusion or loss of exclusive use of identity is harm without more; only 652D and 652E require harm to reputation or other consequential injury). The text of each relevant Restatement section is provided in **Exhibit A, Table 3**. The loss of privacy alleged in this case is thus an intangible harm that "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549.

The invasion of privacy is concrete injury even if the victim is unaware of the invasion. For example, in 2008, Yahoo! Inc. challenged an order forcing it to monitor the email of certain customers. At oral argument, the panel asked, "What is your injury?" *See* Declassified Transcript of Oral Argument before FISA Court of Review on June 19, 2008 at 7, attached hereto as **Exhibit B**. Yahoo responded that "an intrusion into someone's privacy" is harm, even "if the government makes no further use of it." *Id*. at 14. Yahoo further argued that "wiretapping individuals' private communications is the greatest harm an individual can experience." *Id*. at 16. Finally, Yahoo argued, as plaintiffs do here, that the aggregation of intercepted communications is a particularly serious privacy harm: "I understand your point that they don't know they're experiencing that harm, so it can't be that great, but the government building a database on millions of people in the United States, even if they don't know it, I would argue would be a grave harm." *Id*.

Likewise, in a joint letter sent to Congress this week, privacy advocates and technology companies voiced opposition to a proposed ECPA amendment expanding the FBI's ability to obtain sensitive online data, including IP addresses in users' web browsing histories. *See* **Exhibit C**. Facebook signed the letter. Although the bill would not grant access to the "contents" of communications (for example, full URLs), the letter notes even mere IP addresses and metadata, when aggregated, "would paint an incredibly intimate picture of an individual's life" and raises "civil liberties and human rights concerns." Plaintiffs agree, and have so argued in this case. ECF No. 104-3 at 24-26.

### III. CONGRESS MAY CREATE LEGAL RIGHTS PREVIOUSLY NOT RECOGNIZED AT COMMON LAW, THE INVASION OF WHICH IS CONCRETE HARM

Even if an invasion of privacy were not a concrete harm as traditionally regarded by English or American common law, Congress has the power to create a right the invasion of which can be a concrete harm. *Spokeo*, 136 S. Ct. at 1549. This has always been the case, and the *Spokeo* Court simply repeated long-established law. As Professor Erwin Chemerinsky of the University of California at Irvine noted:

> Significantly, the court did not change the law: Congress, by statute, can create rights the infringement of which is sufficient for standing to sue in federal courts. The court approvingly quoted Justice Anthony Kennedy's opinion in *Lujan v. Defenders of Wildlife* that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before."

Erwin Chemerinsky, "These Two Decisions Highlight How Scalia's Absence Has Affected the Court," www.abajournal.com (Jun. 2, 2016).

Facebook overstates *Spokeo's* meaning in arguing that a bare violation of a statute no longer suffices for standing. Facebook Spokeo Brief at 2 ("That is no longer true."). Respectfully, it is still true. The Court held that the bare violation of a "right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, **a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified**." *Spokeo*, 136 S. Ct. at 1549 (italics in original) (emphasis added). *Spokeo,* citing *Lujan,* did hold that injury is not <u>automatic</u> whenever a statute is violated, and a court must determine whether the harm caused by the violation is what Congress intended to prevent. But if so, the bare statutory violation confers standing.

In updating the wiretap laws in 1986 (the ECPA), Congress sought to protect the privacy of electronic communications. "[T]he law must advance with the technology to ensure the continued vitality of the fourth amendment. … Congress must act to protect the privacy of our citizens. If we do not, we will promote the gradual erosion of this precious right." S. Rep. 99-541 at 5; *accord*, H.R. Rep. 99-647 at 19. Neither the Senate nor House Reports identifies mitigation of economic loss as the purpose of the statute, and the private right of action in the ECPA contains no jurisdictional threshold like other statutes. *Cf., e.g.,* Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (requiring monetary damages as element of the claim). Likewise, the purpose of the California Invasion of Privacy Act ("CIPA") is "to protect the right of privacy." *In re: Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1036 (N.D.

Cal. 2014); Cal. Penal Code § 630 ("The Legislature hereby declares" that electronic surveillance "has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.").[2] The California Legislature provided a private right of action for anyone "injured" by unauthorized wiretapping even in the absence of monetary damages, underscoring that an invasion of privacy can be harm even without out-of-pocket loss. *See Kearney v. Salomon Smith Barney, Inc*., 39 Cal.4th 95, 116 (2006).

Plaintiffs allege that Facebook intercepted communications, violating their substantive statutory privacy rights. Facebook did not commit a minor "procedural violation" but rather inflicted the very harm that Congress and the California Legislature tried to prevent. Plaintiffs thus suffered actual, concrete harm caused by the statutory violation even without alleging special economic damages as a result. Under *Spokeo*, these statutory violations are sufficient to confer standing.

## IV. THE THIRD CIRCUIT DECISION *IN RE: GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION* REMAINS GOOD LAW FOLLOWING *SPOKEO*

Finally, Facebook argues that *Spokeo* implicitly overruled the Third Circuit's ruling on standing in *In re: Google Inc. Cookie Placement Consumer Privacy Litig*., 806 F.3d 125 (3d Cir. 2015). However, the Third Circuit's analysis comports with *Spokeo's* holding in every respect. The Third Circuit found particularized harm because the defendants wrote tracking cookies to the plaintiffs' personal computers and tracked their web browsing. *Id.* at 134. For the common law claims, the plaintiffs alleged a serious invasion of privacy under California law, *id*. at 149-152, and for the statutory claims, the plaintiffs alleged a violation of the very privacy rights the statutes were designed to protect. *Id*. at 134-35. And rejecting defendants' argument that harm must be pecuniary to be concrete, *id*., the court anticipated the same holding in *Spokeo*. Facebook is therefore only advancing the formalistic proposition that a court must confine a standing analysis to a single section of the opinion, or separately label portions of the analysis "particularized injury" and "concrete injury." *Spokeo* speaks to a procedural requirement, not a formatting requirement, and *Google Cookie Placement* remains good law.

///

---

[2] For purposes of today's brief, plaintiffs do not dispute Facebook's contention that *Spokeo* would apply to claims under state statutes. *See* Facebook Spokeo Brief at 4.

| | |
|---|---|
| Dated: June 10, 2016 | Respectfully submitted, |

| | |
|---|---|
| **SILVERMAN, THOMPSON, SLUTKIN & WHITE LLC** | **KAPLAN, FOX & KILSHEIMER LLP** |
| By:   */s/ Stephen G. Grygiel* <br> Stephen G. Grygiel (admitted *pro hac vice*) <br> 201 N. Charles St., #2600 <br> Baltimore, MD 21201 <br> Telephone (410) 385-2225 <br> Facsimile: (410) 547-2432 <br> *sgrygiel@mdattorney.com* <br><br> *Interim Co-Lead Counsel* | By:   */s/ David A. Straite* <br> Frederic S. Fox (admitted *pro hac vice*) <br> David A. Straite (admitted *pro hac vice*) <br> 850 Third Avenue <br> New York, NY 10022 <br> Telephone: (212) 687-1980 <br> Facsimile: (212) 687-7714 <br> *dstraite@kaplanfox.com* <br><br> Laurence D. King (206423) <br> Mario M. Choi (243409) <br> 350 Sansome Street, 4th Floor <br> San Francisco, CA 94104 <br> Tel.: (415) 772-4700 <br> Fax: (415) 772-4707 <br> *lking@kaplanfox.com* <br><br> *Interim Co-Lead Counsel* |

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, David A. Straite, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 10th day of June, 2016, at San Francisco, California.

                                                                            */s/ David A. Straite* <br>
                                                                            DAVID A. STRAITE