1
2
3
4
5
6
7
8

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
MATTHEW D. BROWN (196972)
(brownmd@cooley.com)
KYLE C. WONG (224021)
(kwong@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:      (415) 693-2000
Facsimile:       (415) 693-2222

Attorneys for Defendant
FACEBOOK, INC.

9
10
11
12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

13
14
15
16
17
18
19
20
21

In re: Facebook Internet Tracking Litigation

Case No. 5:12-md-02314 EJD

**DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT (FED. R. CIV. P. 12(b)(6), 15(C))**

Date:            November 16, 2017
Time:            9:00 a.m.
Courtroom:   4
Judge:           Hon. Edward J. Davila
Trial Date:     None Set

22
23
24
25
26
27
28

# Table of Contents

**Page**

I.   INTRODUCTION ........................................................................................ 1

II.  PROCEDURAL HISTORY AND FACEBOOK'S PRODUCTION OF HELP
     CENTER PAGES ....................................................................................... 2

III. STATEMENT OF FACTS ......................................................................... 4

     A.   Facebook's Use of "Cookies" ......................................................... 4

     B.   Facebook's Terms of Use and Other Webpages ............................. 4

     C.   Expanded Class and Contractual Allegations ................................. 6

     D.   The Plaintiffs and the Putative Class ............................................. 6

IV.  LEGAL STANDARDS ............................................................................. 6

V.   ARGUMENT ............................................................................................ 7

     A.   Plaintiffs Fail to State a Claim for Breach of Contract (Count I) ........... 7

          1.   Plaintiffs Once Again Fail to Specify What Contractual Term
               Facebook Allegedly Breached. ................................................ 7

          2.   Webpages That Were Not Incorporated Into the Contract Between
               Facebook and Its Users Cannot Form the Basis of Plaintiffs' Claim. ........ 8

               a.   The Help Center Pages at Issue Were Not Part of the
                    Contract .......................................................................... 8

                    (1)   The Agreement Does Not "Clearly and Equivocally"
                          Reference the Help Center Pages ........................... 8

                    (2)   Neither the SRR nor the Privacy Policy "Guide the
                          Reader" to the Help Center Pages at Issue ........... 9

                    (3)   The Help Center is Not "Known and Easily
                          Available to the Parties" ..................................... 10

               b.   The Data Policy Was Not Part of the Contract ............................. 11

          3.   Even if the Help Center or Data Policy Were Incorporated Into the
               Contract, The Conduct Alleged Does Not Constitute A Breach of
               Any of the Statements Plaintiffs Identify ................................... 12

          4.   Plaintiffs Fail to Plead Damages .............................................. 15

     B.   Plaintiffs Fail to State a Claim for Breach of the Implied Covenant of Good
          Faith and Fair Dealing (Count II) ....................................................... 18

          1.   Plaintiffs' Implied-Covenant Claim Is Entirely Duplicative of their
               Breach-of-Contract Claim ........................................................ 19

          2.   Plaintiffs Improperly Attempt to Use Their Implied-Covenant
               Claim to Create New Requirements Not Present in the Parties'
               Contract ............................................................................... 19

**Table of Contents**
(continued)

Page

    3.    Aside from the Alleged Breach of Contract, Plaintiffs Have Not and Cannot Allege Any Conduct By Facebook That Prevented Them From Receiving the Benefit of the Bargain ............................................... 20

    4.    Plaintiffs Do Not Allege Damages ........................................................... 21

C.    Plaintiffs' Amendment Impermissibly Expands their Allegations and the Scope of the Class Period Beyond the Applicable Statute of Limitations ........... 21

    1.    Plaintiffs' Allegations That Facebook Breached Contractual Obligations Entered-Into After Class Period I Do Not Relate Back ........................................................................................ …...............22

    2.    Plaintiffs' Additional Class Period II Plaintiffs Do Not Relate Back ....... 23

VI.    CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agosta v. Astor*,
   120 Cal. App. 4th 596 (2004) .................................................................20

*Aguilera v. Pirelli Armstrong Tire Corp.*,
   223 F.3d 1010 (9th Cir. 2000).........................................................17, 18

*In re Alcatel Sec. Litig.*,
   382 F.Supp.2d 513 (S.D.N.Y. 2005).............................................23, 24

*Am. Exp. Bank, FSB v. Kayatta*,
   190 Cal. App. 4th 563 (2010) .........................................................20, 21

*Amtower v. Photon Dynamics, Inc.*,
   158 Cal. App. 4th 1582 (2008) .....................................................8, 9, 12

*Architectural Res. Grp., Inc. v. HKS, Inc.*,
   2013 WL 568921 (N.D. Cal. Feb. 13, 2013) ...................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................15

*Avidity Partners, LLC v. State of Cal.*,
   221 Cal. App. 4th 1180 (2013) .......................................................21

*Avila v. Countrywide Home Loans*,
   2010 WL 5071714 (N.D. Cal. Dec. 7, 2010) .............................19, 21

*In re Bausch & Lomb Sec. Litig.*,
   941 F. Supp. 1352 (W.D.N.Y. 1996) ...............................................24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).......................................................................6, 7

*BF&W Assocs. v. Motorola, Inc.*,
   2006 WL 1156381 (N.D. Cal. May 2, 2006) ..................................23

*Buttram v. Owens–Corning Fiberglas Corp.*,
   16 Cal. 4th 520 (1997) ...................................................................16

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
   222 Cal. App. 3d 1371 (1990).....................................................19, 20

*Cariaga v. Local No. 1184 Laborers Int'l Union of N. Am.*,
   154 F.3d 1072 (9th Cir. 1998).......................................................9, 12

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Carpenter Found. v. Oakes*,
  26 Cal. App. 3d 784 (1972)........................................................................16

*Chan v. Drexel Burnham Lambert, Inc.*,
  178 Cal. App. 3d 632 (1986)........................................................................9

*Conerly v. Westinghouse Elec. Corp.*,
  623 F.2d 117 (9th Cir. 1980)........................................................................22

*Croshal v. Aurora Bank, F.S.B.*,
  2014 WL 2796529 (N.D. Cal. June 19, 2014) .........................................20

*Cty. of Ventura v. Channel Islands Marina, Inc.*,
  159 Cal. App. 4th 615 (2008) .....................................................................16

*Dunkel v. eBay Inc.*,
  2013 WL 415584 (N.D. Cal. Jan. 31, 2013) .............................................7
  2014 WL 1117886 (N.D. Cal. Mar. 19, 2014)..........................................11

*Egan v. Mut. of Omaha Ins. Co.*,
  24 Cal. 3d 809 (1979) .................................................................................21

*Erlich v. Menezes*,
  21 Cal. 4th 543 (1999) ...........................................................................15, 16

*In re Facebook, Inc., PPC Advert. Litig.*,
  282 F.R.D. 446 (N.D. Cal. 2012), *aff'd sub nom. Fox Test Prep v. Facebook,*
  *Inc.*, 588 F. App'x 733 (9th Cir. 2014) ...............................................10, 11

*Fox Test Prep v. Facebook, Inc.*, 588 F. App'x 733 (9th Cir. 2014) ............................10

*In re Facebook Privacy Litig.*,
  192 F. Supp. 3d 1053 (N.D. Cal. 2016) ...............................................17, 18

*Garcia v. GMRI, Inc.*,
  2013 WL 10156088 (C.D. Cal. May 17, 2013) .........................................12

*Gautier v. Gen. Tel. Co.*,
  234 Cal. App. 2d 302 (1965)...................................................................15, 17

*Haagen v. Saks & Co.*,
  160 F. App'x 621 (9th Cir. 2005) ...............................................................18

*In re Google, Inc. Privacy Policy Litig.*,
  2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) .............................................18

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

4

*In re iPhone Application Litig.*,
  2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ........................................................21

5

*In re Kirkland*,
  915 F.2d 1236 (9th Cir. 1990)..................................................................................16

6

7

*Lance Camper Mfg. Corp. v. Republic Indem. Co.*,
  44 Cal. App. 4th 194 (1996) ....................................................................................16

8

9

*Martell v. Trilogy Ltd.*,
  872 F.2d 322 (9th Cir. 1989)...............................................................................22, 23

10

*McKee v. Peoria Unified Sch. Dist.*,
  963 F. Supp. 2d 911 (D. Ariz. 2013).........................................................................22

11

12

*Meneses v. U-Haul Int'l, Inc.*,
  2012 WL 669518 (N.D. Cal. Feb. 29, 2012) ...........................................................18

13

14

*In re Mercury Interactive Corp. Sec. Litig.*,
  2007 WL 2209278 (N.D. Cal. July 30, 2007)..........................................................25

15

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001).......................................................................................6

16

17

*Oasis W. Realty, LLC v. Goldman*,
  51 Cal. 4th 811 (2011) .................................................................................................7

18

19

*Oja v. U.S. Army Corps of Eng'rs*,
  440 F.3d 1122 (9th Cir. 2006)...................................................................................23

20

*Opperman v. Path*,
  84 F. Supp. 3d 962 (N.D. Cal. 2015) ........................................................................18

21

22

*Patent Scaffolding Co. v. William Simpson Const. Co.*,
  256 Cal. App. 2d 506 (1967)......................................................................................16

23

24

*Perkins v. LinkedIn Corp.*,
  53 F. Supp. 3d 1190 (N.D. Cal. 2014) ......................................................................12

25

*In re Pharmatrak, Inc. Privacy Litig.*,
  329 F.3d 9 (1st Cir. 2003) .............................................................................................4

26

27

*Raiser v. Ventura Coll. of Law*,
  488 F. App'x 219 (9th Cir. 2012) ..............................................................................18

28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Ruiz v. Gap, Inc.*,
    622 F. Supp. 2d 908 (N.D. Cal. 2009), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) ....................18

*St. Paul Mercury Ins. Co. v. Am. Safety Indem. Co.*,
    2014 WL 2120347 (N.D. Cal. May 21, 2014) ................................................................8, 9, 10

*Stoval v. Basin St. Props.*,
    2013 U.S. Dist. LEXIS 161265 (N.D. Cal. Nov. 12, 2013)......................................................21

*Svenson v. Google Inc.*,
    2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) ...................................................................18, 20

*Swinerton Builders v. Am. Home Assur. Co.*,
    2013 WL 1122022 (N.D. Cal. Mar. 15, 2013).........................................................................15

*In re Syntex Corp. Sec. Litig.*,
    95 F.3d 922 (9th Cir. 1996)...........................................................................................22, 24, 25

*Thrifty Payless, Inc. v. Americana at Brand, LLC*,
    218 Cal. App. 4th 1230 (2013) .................................................................................................21

*Trafalgar Power Inc. v. Aetna Life Ins. Co.*,
    396 B.R. 584 (N.D.N.Y. 2008) .................................................................................................23

*Troyk v. Farmers Grp., Inc.*,
    171 Cal. App. 4th 1305 (2009) ............................................................................................8, 12

*Versaci v. Superior Court*,
    127 Cal. App. 4th 805 (2005) ...................................................................................................12

*Woods v. Google, Inc.*,
    2011 WL 3501403, at *4 (N.D. Cal. Aug. 10, 2011)..........................................................10, 11

*Young v. Facebook, Inc.*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) ......................................................................................7

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)....................................................................................................26

**Statutes**

Cal. Civ. Code
    § 337.........................................................................................................................................22
    § 3301.................................................................................................................................15, 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Other Authorities**

23 Cal. Jur. 3d Damages § 25 ...................................................................................17

6A Wright & Miller, Federal Practice and Procedure § 1497 (2d ed. 2010) .................................23

Fed. R. Civ. P.
    8.............................................................................................................15
    12(b)(6) .................................................................................................1, 6
    15(c)(1)(B) ...........................................................................................22, 23
    15(c)(1)(C) ...............................................................................................22

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-vii-

**DEF. FACEBOOK'S MOTION TO DISMISS**
**CASE NO. 5:12-MD-02314 EJD**

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 16, 2017 at 9:00 a.m. or as soon thereafter as this Motion may be heard in the above-entitled court, located at 280 South First Street, San Jose, California, in Courtroom 4, 5th Floor, Defendant Facebook, Inc. ("Facebook") will, and hereby does, move to dismiss the Third Amended Consolidated Class Action Complaint ("TAC"). Facebook's Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(6) and 15 and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and all pleadings and papers on file in this matter, and upon such matters as may be presented to the Court at the time of hearing or otherwise.

**STATEMENT OF RELIEF SOUGHT**

Facebook seeks an order dismissing with prejudice Plaintiffs' TAC and each of the two claims alleged therein for failure to state a claim upon which relief can be granted and as barred by the statute of limitations.

**STATEMENT OF ISSUES TO BE DECIDED**

1.  Whether Plaintiffs have stated a claim for breach of contract.

2.  Whether Plaintiffs have stated a claim for breach of the implied covenant of good faith and fair dealing.

3.  Whether Plaintiffs' expanded class period and allegations are barred by the statute of limitations.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

In this Court's June 30, 2017 Order (ECF No. 148 ("Order")) dismissing Plaintiffs' breach-of-contract and breach-of-implied-covenant claims under Rule 12(b)(6), the Court explained that these contract claims could not survive because Plaintiffs failed to allege the actual contract provision Facebook supposedly breached. Plaintiffs' Third Amended Consolidated Class Action Complaint ("TAC") fails to cure this fatal defect. Instead, Plaintiffs re-plead the contract claims without pinpointing "where or when" any allegedly breached provision appears in "[t]he relevant

contract" between Facebook and Plaintiffs, namely, "Facebook's 'Statement of Rights and Responsibilities' ('SRR')."  (Order at 13.)  Nor does the TAC "explain how [] statements [outside the SRR] were incorporated into the binding SRR, . . . for instance, [by] identify[ing] a trail of links leading from the SRR to the statements [the complaint] identifies."  (*Id.*)

After more than six years of litigation, Plaintiffs have finally been forced to acknowledge that evidentiary support for their contract claims is essentially non-existent.  So in a blatant attempt to circumvent the consequences of this reality, Plaintiffs now claim that the end of their class period can no longer be ascertained in order to rely on Facebook Help Center pages that are not incorporated into the contract and that post-date what Plaintiffs previously identified as the relevant class period.  Plaintiffs' clumsy attempt to patch together a contract comprised of extra-contractual statements on different web pages, available at different times, some only ***after*** the previously-alleged class period, fails to state a claim for breach of contract.

Even if Plaintiffs were permitted to cobble together a contract across time and across myriad webpages, they fail to show damages.  In fact, Plaintiffs have narrowed their actual-damages-related allegations down to a single statement: "Plaintiffs and the class sustained non-monetary privacy damages . . . ."  Such conclusory allegations of theoretical harm—unconnected to Plaintiffs themselves, or to Facebook's conduct—are inadequate.

Plaintiffs' implied-covenant claim is duplicative of their breach of contract claim and is not saved by vague references to Facebook's extra-contractual statements in a blog post and in comments made to the press.

Finally, even if Plaintiffs' efforts to expand their class and their contractual allegations beyond the scope of their previous complaints stated contractual claims, these new allegations would be barred by the statute of limitations and should be dismissed.

Plaintiffs have been given ample opportunity to plead their claims against Facebook, but have been unable to do so.  The Court should dismiss the TAC with prejudice.

## II.   PROCEDURAL HISTORY AND FACEBOOK'S PRODUCTION OF HELP CENTER PAGES

Plaintiffs filed their First Amended Consolidated Class Action Complaint ("FAC") on May 17, 2012, alleging 11 claims on behalf of a class of persons with active Facebook accounts between

May 27, 2010 and September 26, 2011.  (ECF No. 33.)  Facebook produced approximately 65,000 pages of documents in discovery in April 2014.  (Declaration of Matt D. Brown ("Brown Decl.") ¶ 2.)  On October 23, 2015, the Court dismissed all of Plaintiffs' claims.  (ECF No. 87.)  Plaintiffs' Second Consolidated Amended Complaint ("SAC"), filed November 30, 2015, replaced four of the dismissed claims with new claims, including breach of contract and breach of the implied covenant. (ECF No. 91-93.)

On June 30, 2017, the Court dismissed Plaintiffs' SAC, granting leave to amend only the breach-of-contract and breach-of-implied-covenant claims.  (Order at 14.)   In dismissing the contract claims, the Court held that Plaintiffs' failure "to explain where or when these [allegedly breached] statements appeared" and "how these statements were incorporated into the binding SRR [Statement of Rights and Responsibilities]" was fatal.  (*Id.* at 13.)

The parties appeared before the Court on July 28, 2017 for a Case Management Conference. Plaintiffs claimed that they needed discovery of certain "relevant historical Help Center pages from the Class Period" to draft their third amended complaint.  (Brown Decl. Ex. 2, Tr. at 4:12-13.) Plaintiffs told the Court, "to our knowledge every single help center page that's relevant for our claim did appear ***during*** the class period."  (*Id.*, Tr. at 3:9-11 (emphasis added).)  Plaintiffs stated that they had identified "***all*** of the relevant language of the historical help center pages that we think are part of the contract" (*Id.*, Tr. at 3:20-23 (emphasis added)), and would identify the relevant language to Facebook so that it could collect and produce the pages Plaintiffs requested (*Id.*, Tr. at 10:1-5).  The Court ordered Plaintiffs to file their amended complaint on August 28, 2017 and gave Facebook until September 8, 2017 to move to dismiss.

On August 14, 2017, more than two weeks after Plaintiffs informed the Court that they had identified "all" the relevant help center pages, Plaintiffs requested historical versions of four different Facebook pages.  (Brown Decl. Ex. 3.)  In response, Facebook informed Plaintiffs that all the requested Help Center pages had been produced to Plaintiffs in April 2016 and that, with two exceptions, each of these documents *post-dated the September 26, 2011 end of the alleged class period* and Facebook therefore did not consider them relevant.  (*Id.* Ex. 4.)  On August 22, 2017 (just three days before the amended complaint was due), Plaintiffs requested production of another

1    historical Facebook page they had "just today" discovered.  (*Id.* Ex. 5.)  Facebook worked diligently

2    on Plaintiffs' eleventh-hour request and provided copies of the requested page prior to Plaintiffs'

3    filing deadline.  (*Id.* ¶ 6.)  Plaintiffs' TAC followed.

4    **III.   STATEMENT OF FACTS[1]**

5        **A.   Facebook's Use of "Cookies"**

6            A "cookie" is a "small text file[]" that a server creates and sends to a browser.  (TAC ¶ 51.)

7    It is "a piece of information . . . that the browser software is expected to save and to send back

8    whenever the browser makes additional requests of the [same] server."  *In re Pharmatrak, Inc.*

9    *Privacy Litig.*, 329 F.3d 9, 14 (1st Cir. 2003).[2]  "Cookies are widely used on the internet by

10   reputable websites to promote convenience and customization[,]" *id.*, including Facebook, which

11   uses cookies to enable its users to share content with each other, including content on third-party

12   websites (TAC Ex. E at p.3).  The TAC discusses several cookies that Facebook allegedly writes

13   to the browsers of Internet users that visit Facebook's website.  (TAC ¶ 53.)  These cookies are

14   stored in the user's browser, and, unless they are removed or expire, they are sent back to

15   Facebook's server when a user views a webpage with a Facebook social plugin.  (*Id.* ¶ 55.)  For

16   example, Facebook uses cookies to permit users to comment on content posted on third-party

17   websites using a Facebook account, or to post content from third-party websites to a user's

18   Facebook page.  (TAC Ex. E at p.3.)  Facebook also uses cookies for security purposes.  (*Id.*)

19       **B.   Facebook's Terms of Use and Other Webpages**

20           **Terms of Use.**  Every Facebook user agreed to Facebook's terms of use, called the

21   Statement of Rights and Responsibilities ("SRR"), which "govern[ed] [Facebook's] relationship

22   with users . . . ."  (*E.g.,* TAC Ex. A at p.2.)  The SRR included an integration clause, which provided

23   that the SRR "makes up the entire agreement between the parties regarding Facebook, and

24   supersedes any prior agreements."  (*E.g., id.*, Ex. A at § 18.1.)  The SRR versions applicable during

25

26   ───────────────────
     [1] By discussing the TAC's factual allegations and documents incorporated by reference, Facebook
     does not thereby make any admissions.

27   [2] Because cookies do not collect information, the TAC incorrectly asserts that cookies "track and
28   record an individual Internet user's . . . activities . . . across the Internet."  (*Id.* ¶ 51.)

the alleged class period made no representations regarding Facebook's use of cookies.  (*Id.* Exs. A-D.)

**Privacy Policy.**  Facebook also maintained a Privacy Policy (later replaced by the Data Use Policy).  Since the start of the alleged class period, the Privacy Policy—which is linked at the bottom of virtually every page on Facebook—disclosed the following to users:

> **Cookie Information.** We use "cookies" (small pieces of data we store for an extended period of time on your computer…) to make Facebook easier to use, to make our advertising better, and to protect both you and Facebook. For example, we use them to store your login ID (but never your password) to make it easier for you to login whenever you come back to Facebook. We also use them to confirm that you are logged into Facebook, and to know when you are interacting with Facebook Platform applications and websites, our widgets and Share buttons, and our advertisements. You can remove or block cookies using the settings in your browser, but in some cases that may impact your ability to use Facebook.

(*Id.* Exs. E-G.)[3]

**Help Center Pages.**  Facebook's website also contains myriad pages collectively referred to as a Help Center that contain answers to "frequently asked questions."  (TAC ¶ 43.)  Neither Facebook's SRR nor Privacy Policy specifically mentions the Help Center.  (*Id.* Exs. A-H.)  Rather, early versions of Facebook's Privacy Policy provided links to a handful of web pages that did not link to frequently asked questions or provide further information about Facebook's practices, but instead provided tools for users to perform a variety of tasks on Facebook's website, including reporting deceased users of Facebook, deleting Facebook accounts, providing "[m]aterials to help parents talk to their children about safe internet use," and assisting users in deleting their contact lists. (*Id.* Exs. E-G.)[4]  Only the September 7, 2011 Data Use Policy linked to actual Facebook Help Center pages.  Specifically, the Data Use Policy links to three Help Center pages, each with the instruction that users may "learn more" about (1) how to request search engines to remove Facebook pages, (2) what happens when users "Like" advertisers' pages, and (3) how cookies work.  (*Id.* Ex. H.)  None of these three Help Center pages contain any language that Plaintiffs allege

---

[3] The September 2011 Data Use Policy included similar language.  (*Id.* Ex. H at p.7.)

[4] Plaintiffs allege that the April 22, 2010 Privacy Policy links to 18 Help Center pages.  (TAC ¶ 44 (citing TAC Ex. A).)  But the supporting citation to the SRR does not link to any Help Center pages and the April 22, 2010 Privacy Policy does not link to any Help Center pages, but rather to 12 tools for managing users' Facebook experience described as "help page[s]."  (*Id.* Ex. G.)  None of these pages contain further language about Facebook's use of cookies.

1  Facebook breached.

2  **C.      Expanded Class and Contractual Allegations**

3  Plaintiffs' first and second consolidated amended complaints alleged a class period that

4  ended on September 26, 2011 ("Class Period I").   Plaintiffs alleged in both complaints that

5  Facebook "fixed" the offending conduct by that date.  (TAC ¶ 19; SAC ¶ 4.)  The TAC, however,

6  proposes to expand the class period until "a later date to be determined upon the completion of

7  discovery" ("Class Period II").  (TAC ¶ 132.)  According to the TAC, the Privacy Policy and Help

8  Center pages published in Class Period I imply, but do not explicitly state, that Facebook will not

9  receive user IDs when logged out users visit third-party websites with Facebook social plugins.

10  (TAC ¶¶ 60, 63, 64, 66, 67.)  Plaintiffs' TAC attempts to avoid this vague language by purporting

11  to extend the end of their class period to include Class Period II, during which time Plaintiffs allege

12  that published Help Center pages explicitly promise that Facebook will not receive user IDs when

13  users have logged out of Facebook.  (TAC ¶¶ 62, 65.)

14  **D.      The Plaintiffs and the Putative Class**

15  The TAC includes nearly identical allegations for each of the four Plaintiffs.  According to

16  the TAC, Plaintiffs had active Facebook accounts and "visited websites containing Facebook social

17  plugins." According to Plaintiffs, Facebook "failed to expire the user-identifying cookies . . . when

18  [Plaintiff] logged out of [his/her] Facebook account.  Facebook was thus able to – and in fact did –

19  track his internet use when visiting Facebook-enabled websites."  (TAC ¶¶ 113-129.)  The TAC

20  does not allege which websites Plaintiffs visited when logged out and does not specify what, if any,

21  communications or personal information Facebook supposedly collected.  The TAC further fails to

22  allege that this unidentified information had any ascertainable value, or that Plaintiffs suffered any

23  damage from the alleged conduct.

24  **IV.    LEGAL STANDARDS**

25  A court must dismiss claims under Rule 12(b)(6) when "there is no cognizable legal theory

26  or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*,

27  250 F.3d 729, 732 (9th Cir. 2001).  "[L]abels and conclusions, and a formulaic recitation of the

28  elements of a cause of action" are not sufficient to save a complaint from dismissal. *Bell Atl. Corp.*

1    *v. Twombly*, 550 U.S. 544, 555 (2007).

2    **V.      ARGUMENT**

3            **A.      Plaintiffs Fail to State a Claim for Breach of Contract (Count I)**

4            Plaintiffs allege that Facebook's receipt of cookies containing a user ID when users are

5    logged-out breached a contract between Facebook and its users.  To plead a claim for breach of

6    contract, Plaintiffs must allege (1) there was a contract, (2) plaintiff performed or was excused from

7    performance under the contract, (3) defendant breached the contract, and (4) plaintiff suffered

8    damages from the breach.  *Oasis W. Realty, LLC v. Goldman,* 51 Cal. 4th 811, 821 (2011).

9    Plaintiffs' multiple pleading failures mandate dismissal.

10                   **1.      Plaintiffs Once Again Fail to Specify What Contractual Term Facebook
                              Allegedly Breached.**

11

12           Plaintiffs' contract claim suffers from the same fatal defect that doomed their last complaint:

13   Plaintiffs do not identify the specific contract language they allege Facebook breached.  Instead,

14   Count I of the TAC vaguely claims—without quoting or citing any contract provision—that

15   "Facebook promised that it would not track user's web browsing after log-out except on an

16   anonymous basis."  (TAC ¶¶ 139-148.)  But, just as with the SAC, the TAC leaves Facebook and

17   the Court to guess what provision of the contract Plaintiffs allege was breached.

18           ***The Court rejected exactly this approach in its Order***.  (Order at 13 ("Because Plaintiffs

19   have not identified the specific contractual provisions they allege were breached, Plaintiffs' breach-

20   of-contract claim will be dismissed with leave to amend.").  But Plaintiffs' TAC fails, yet again, to

21   identify the contract provision upon which their claim is premised.  The reason for this is obvious:

22   Plaintiffs cannot point to a specific contractual provision, in effect during the relevant time, that

23   Facebook violated.  Their breach-of-contract claim should be dismissed as a result.  *See Dunkel v.*

24   *eBay Inc.*, 2013 WL 415584, at *9 (N.D. Cal. Jan. 31, 2013) ("Even if Plaintiffs had properly

25   alleged that the attached exhibits constituted a contract or otherwise pointed to a contract, their

26   claim would still fail because they did not allege which provisions of this contract Defendant has

27   breached."); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (same).

28

**2.      Webpages That Were Not Incorporated Into the Contract Between Facebook and Its Users Cannot Form the Basis of Plaintiffs' Claim**

Instead of specifying what *contract* term they base their breach-of-contract claim on, Plaintiffs quote from *eleven* Help Center pages and the Facebook Data Use Policy, under the heading "Facebook Promised Not to Track Logged-Out Subscribers."  (TAC ¶¶ 57-67.)   But Plaintiffs cannot rely on Help Center pages and the Data Use Policy for their breach-of-contract claim because these webpages were not part of the contract between Facebook and its users.

**a.      The Help Center Pages at Issue Were Not Part of the Contract**

The bulk of Plaintiffs' quotations in the TAC come from various Help Center pages. Plaintiffs allege that the agreement at issue is the SRR, and that the SRR incorporates by reference other documents, including the identified Help Center pages.  (TAC ¶ 19.)  Plaintiffs are correct that the SRR (four versions are attached to the TAC) is the contract that governs here.  But they have, once again, failed to allege facts to support the conclusory assertion that the identified Help Center pages were incorporated into the SRR.  Because these webpages were *not* part of the contract, they cannot serve as the basis for a breach-of-contract claim.

Under California law, "[f]or the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties."  *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1331 (2009) (quotations and citation omitted).  The clear and unequivocal reference must be "to the fact that the terms of the external document ***are incorporated***," *Amtower v. Photon Dynamics, Inc.*, 158 Cal. App. 4th 1582, 1608 (2008) (emphasis added), and "must guide the reader to the incorporated document," *St. Paul Mercury Ins. Co. v. Am. Safety Indem. Co.*, 2014 WL 2120347, at *9 (N.D. Cal. May 21, 2014) (quotations and citation omitted).  The Help Center pages do not meet any of these requirements.

**(1)      The Agreement Does Not "Clearly and Equivocally" Reference the Help Center Pages**

Critically, the SRR ***does not reference—or even hint at—a single one of the Help Center***

*pages Plaintiffs quote from*.  (*See* TAC Exs. A-D.)  In fact, no version of the SRR that Plaintiffs attached to the TAC uses the term "Help Center" *at all*.  *Id.*  Because these Help Center pages were not even referenced in the SRR, they cannot have been incorporated by reference under California law.  *See, e.g.*, *Chan v. Drexel Burnham Lambert, Inc.*, 178 Cal. App. 3d 632, 643-44 (1986) (effective incorporation "requires the incorporating document to refer to the incorporated document with particularity"); *Amtower*, 158 Cal. App. 4th at 1608 (finding without a "clear and unequivocal reference to the fact that the terms of the external document are incorporated," there is no incorporation);  *Cariaga v. Local No. 1184 Laborers Int'l Union of N. Am.*, 154 F.3d 1072, 1075 (9th Cir. 1998) (rejecting incorporation where the agreement did not reference specifically the allegedly incorporated document).

Plaintiffs fare no better with their allegations that the relevant Help Center pages are incorporated into the Privacy Policy, and that, in turn, the Privacy Policy is incorporated into the SRR.  (TAC ¶¶ 35, 43.)  Even if such a chain of incorporation were legally viable, which it is not, the Privacy Policy itself *does not reference any of the Help Center pages* Plaintiffs quote from— let alone clearly and unequivocally.  (*See, e.g*., TAC Ex. E.)  The Privacy Policy does not link to these pages, mention these pages, or otherwise allude to them.  (*Id.*)  Plaintiffs do not and cannot allege otherwise.  Instead, they claim that the Privacy Policy links to *other* Help Center pages not at issue here.  (TAC ¶¶ 43-44.)  But that is insufficient as a matter of California law, which requires Plaintiffs to demonstrate a "clear and unequivocal reference to the fact that the terms of the external document *are incorporated*."  *Amtower*, 158 Cal. App. 4th at 1608 (emphasis added).  Vague references to unrelated Help Center pages are insufficient to meet this standard.

### (2)     Neither the SRR nor the Privacy Policy "Guide the Reader" to the Help Center Pages at Issue

The Court noted in its prior Order that the SAC did not "identify a trail of links leading from the SRR to the statements [the SAC] identifies." (Order at 13.)  The Court also noted that "Plaintiffs fail to explain *where* or when these statements appeared."  (*Id.* (emphasis added).)  Plaintiffs do nothing to address these fatal defects in their TAC, and simply ignore the Court's instruction.  They do not allege that the SRR or the Privacy Policy link directly to the Help Center pages they claim

are incorporated by reference. Nor do they offer any explanation as to where these webpages allegedly appeared or how a Facebook user could link from the SRRs to the Help Center pages, if at all. In other words, Plaintiffs fail to "identify a trail of links leading from the SRR to the statements [the TAC] identifies"—as explicitly directed by this Court as necessary to state a claim. Because Plaintiffs have not and cannot establish that either the SRR or the Privacy Policy "guide the reader" to the relevant Help Center pages, they cannot establish that those pages were incorporated by reference. *See St. Paul Mercury Ins. Co.*, 2014 WL 2120347, at *9; *In re Facebook, Inc., PPC Advert. Litig.*, 282 F.R.D. 446, 457 (N.D. Cal. 2012), *aff'd sub nom. Fox Test Prep v. Facebook, Inc.*, 588 F. App'x 733 (9th Cir. 2014) (rejecting incorporation where the allegedly incorporated Help Center page was not linked-to from the contract documents).

> **(3)      The Help Center is Not "Known and Easily Available to the Parties"**

An undefined set of documents or webpages cannot be incorporated into a contract. *Woods v. Google, Inc.*, 2011 WL 3501403 (N.D. Cal. Aug. 10, 2011) is particularly instructive. In that case, the court rejected the claim that pages from Google's Help Center were incorporated into Google's user agreement. *Id*. at *4. This was so even though the plaintiffs in *Woods*, unlike Plaintiffs here, attached documents showing the chain of links from the user agreement to the Help Center pages at issue. *Id.* Also unlike here, the agreement stated clearly that it incorporated all relevant Google policies. *Id*. at *1. Still, the court found that the Help Center pages were not incorporated as they were not "known or easily available to the contracting parties" because they consisted of a "variety of pages in a variety of formats." *Id*. at *4. The court found that, "in sharp contrast to other Google policies, which include clear terms," it was difficult to discern from the Help Center pages "the terms of any actual and unambiguous contractual obligations." *Id*.

As in *Woods*, the Facebook Help Center is not a discrete, fixed document (in contrast to the SRR). Instead, as the allegations in the Complaint reveal, the Facebook Help Center includes myriad pages, with constantly changing and evolving content and language, linked-to from different places on the Facebook website and publicly available at different times. (TAC ¶¶ 43, 45.) As with the Google Help Center pages in *Woods*, the Help Center pages Plaintiffs have

Cooley LLP
Attorneys At Law
San Francisco

10.

Def. Facebook's Motion to Dismiss
Case No. 5:12-md-02314 EJD

1    identified were not "known or easily available to the contracting parties" because they were "variety

2    of pages in a variety of formats" from varying time periods, making it impossible to discern "the

3    terms of any actual and unambiguous contractual obligations." [5]  2011 WL 3501403, at *4.

4    　　　　Other courts, including this one, have refused to find website Help Center pages

5    incorporated into user agreements for similar reasons.  *See, e.g.*, *Dunkel v. eBay Inc.*, 2014 WL

6    1117886, at *4 (N.D. Cal. Mar. 19, 2014) (finding Plaintiffs "fail[ed] to properly allege the

7    existence of an agreement, particularly in how the 'Help' pages are incorporated into the User

8    Agreement or how the 'Help' articles themselves constitute a contract"); *In re Facebook, Inc., PPC*

9    *Advert. Litig.*, 282 F.R.D. at 457 (finding Facebook Help Center pages were not incorporated into

10   agreement with advertisers).  In *In re Facebook, Inc.*, *PPC Advert. Litig.*, the court found that the

11   SRR did not incorporate the Facebook advertiser Help Center, despite the fact that the SRR itself

12   linked to a Help Center page, in part because the SRR did not link to the Help Center page *at issue*.

13   282 F.R.D. at 457.  The court explained: "Because the Glossary is not referenced in or linked to the

14   'Place Order' page or to the SRR, it is not clear how it can reasonably be considered part of a

15   'uniform written contract.'" *Id.* Here too, the SRR does not link to the allegedly incorporated pages.

16   　　　　Because Plaintiffs do not allege facts showing the Help Center pages were incorporated by

17   reference into the agreement between Facebook and its users, statements from those pages cannot

18   form the basis of Plaintiffs' breach-of-contract claim.  *Dunkel*, 2014 WL 1117886, at *4 ("As

19   Plaintiffs have not adequately alleged that the 'Help' articles are included in the contract . . . their

20   allegations that Defendant acted contrary to these articles do not suffice to state a breach.").

21   　　　　　　　　**b.**　　　**The Data Use Policy Was Not Part of the Contract**

22   　　　　Plaintiffs also quote from the Data Use Policy that was active starting on September 7, 2011.

23   (TAC ¶ 60.)  It is unclear if Plaintiffs allege that Facebook breached language in the Data Use

24   Policy.  Regardless, such an allegation would be baseless because the Data Use Policy *was not*

25   *incorporated into any of the SRR versions attached to the TAC*, and was therefore not a part of

26   the contract.

27

28

---

[5] For example, Plaintiffs attach three versions of the same alleged Help Center page (TAC Exs. J, K, L), without explaining when the different pages were active.

Cooley LLP
Attorneys At Law
San Francisco

11.

DEF. FACEBOOK'S MOTION TO DISMISS
CASE NO. 5:12-MD-02314 EJD

The SRR versions attached to the TAC do not incorporate the Data Use Policy because none "clearly and unequivocally" reference the Data Use Policy.  (*See* TAC Exs. A-D.)   In fact, none of the SRR versions attached to the TAC even use the term "Data Use Policy."  Plaintiffs do not allege otherwise.   This alone precludes incorporation.  *Amtower*, 158 Cal. App. 4th at 1608 (finding without a "clear and unequivocal reference to the fact that the terms of the external document are incorporated," there is no incorporation); *Cariaga*, 154 F.3d at 1075 (rejecting incorporation where the agreement did not reference specifically the allegedly incorporated document); *Garcia v. GMRI, Inc.*, 2013 WL 10156088, at *6-7 (C.D. Cal. May 17, 2013) (rejecting incorporation where the document was not mentioned by its title).  Nothing in the SRR demonstrates an intent by the parties to incorporate the Data Use Policy as a set of binding terms.[6]  *See Troyk*, 171 Cal. App. 4th at 1332 (finding no incorporation where there was no suggestion of intent to incorporate); *Versaci v. Superior Court*, 127 Cal. App. 4th 805, 817 (2005) (same).

### 3. Even If the Help Center or Data Policy Were Incorporated Into the Contract, the Conduct Alleged Does Not Constitute a Breach of Any of the Statements Plaintiffs Identify

Assuming, *arguendo*, that Plaintiffs alleged that the Help Center pages were incorporated by reference into the SRR, Plaintiffs still fail to state a claim because the quoted Help Center pages either do not prohibit the alleged conduct and/or did not go live until after the relevant period.  The TAC references *eleven* alleged Help Center pages under the heading "Facebook Promised Not to Track Logged-Out Subscribers."  (TAC ¶¶ 62-67.)  Plaintiffs attach copies of each of the pages to which they cite (TAC Exs. I, J, K, L, M, MM, NN, OO, PP, R, S), but fail to specify which statement(s) form the basis for their breach of contract claim.  This is particularly problematic with regard to the Help Center pages included as Exhibits J, K, MM, NN, OO, PP, R, and S, because

---

[6] In contrast, later versions of the SRR, not attached to the Complaint, *do* incorporate the Data Use Policy.  For example, the current SRR states: "By using or accessing Facebook Services, you agree that we can collect and use such content and information in accordance with the Data Policy as amended from time to time."  But this incorporating language does not appear in any of the versions of the SRR attached to the Complaint.  The current Statement of Rights and Responsibilities, attached as Exhibit E to the Brown Decl., is available at: https://www.facebook.com/terms.  The Court can take notice of the current SRR for purposes of a motion to dismiss because it is a publicly available website.  *See, e.g., Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014) (publicly available websites are "[p]roper subjects of judicial notice …on a motion to dismiss").

Cooley LLP
Attorneys At Law
San Francisco

12.

Def. Facebook's Motion to Dismiss
Case No. 5:12-md-02314 EJD

none of these pages discuss anything even related to the conduct alleged in the TAC.

For example, Plaintiffs describe and quote from Exhibit J in the TAC as follows: "Facebook explained that it receives 'technical information' about IP addresses, browsers, and operating systems to help 'optimize your experience . . . or let[] us know that you are logged into Facebook.'" (TAC ¶ 63 (ellipsis in original).)  That is not a promise not to track logged-out users—the breaching conduct Plaintiffs allege here.  Similarly, Plaintiffs quote from Exhibit K as follows:  "If you are logged into Facebook, we also see your user ID number and email address."  (TAC ¶ 64 (emphasis omitted).)  Again, this does not prohibit the conduct alleged in the Complaint.  Plaintiffs' quotation from Exhibit MM fares no better.  (TAC ¶ 66.)  That alleged Help Center page answers this question:  "Does Facebook have the ability to see *what I'm doing* on non-Facebook sites?"  This is a question about whether Facebook can tell *what you do* when you visit a particular site, not about whether Facebook knows that you visited the site.  And it answers accordingly:

> Facebook cannot *track your actions* on external sites unless you decide to connect your Facebook account to that site and/or explicitly decide to publish a story to your Wall via the Like button. For example, if you are on Digg, and digg an article or comment on an article, Facebook will only be notified of the actions for which Digg wants to create a story. Facebook will have no access to other actions you have taken or other information involving your Digg account. To take advantage of the ability to generate stories from another site, you must "connect" your Facebook account to that site, or otherwise be logged into Facebook while you interact with one of these sites.

As is clear on its face, this Q&A is simply inapplicable, as it has nothing to do with Facebook's alleged tracking of the *URLs* a user visits while logged out of Facebook.[7]

Finally, Plaintiffs quote from Exhibit R.  (TAC ¶ 67.)  Like Exhibit MM, this alleged language discusses features of the Facebook user experience that are not relevant to this case.  Exhibit R, as quoted in the TAC, explains that only a logged-in Facebook user can use a plugin on another website (that is, can "like" an item on another website):

> *You only see a personalized experience with your friends if you are logged into your Facebook account*. If you are not already logged in, you will be prompted to log in to Facebook before you can use a plugin on another site. At a technical level, social plugins work when external websites put an iframe from Facebook.com on their sites,

---

[7] Plaintiffs also attach, and cite using a "see also" signal, Exhibits NN, OO, and PP that contain the same language as Exhibit MM.  These alleged Help Center pages are irrelevant for the same reasons that Exhibit MM is irrelevant.

as if they were agreeing to give Facebook some real estate on their websites. *When you visit one of these sites, the Facebook iframe can recognize if you are logged into Facebook. If you are logged in, it'll show personalized content within the plugin as if you were on Facebook.com directly*. Even though the iframe is not on Facebook, it is designed with all the privacy protections as if it were.

Again, this has nothing to do with the tracking of URLs.[8]

Equally fatal, Plaintiffs again fail to allege *when* any of these pages were displayed on Facebook's website—a failure that alone requires dismissal.  Indeed, the court identified precisely this deficiency in dismissing Plaintiffs' SAC:  "Plaintiffs fail to explain where or *when* these statements appeared."  (Order at 13 (emphasis added).)  As this Court has already recognized, Plaintiffs cannot allege a breach of contract without first identifying a contract provision that was binding at the time of the allegedly breaching conduct.

But this Plaintiffs cannot do, so they intentionally fail to allege "when" the statements they have identified actually became a binding part of the alleged contract, hoping to obfuscate what would otherwise be a glaring disconnect in their allegations.  The alleged Help Center pages depicted in Exhibits I and L did not go live until September 27, 2011 at the earliest, and the alleged Help Center page depicted in Exhibit M did not go live until September 28, 2011 at the earliest—after Plaintiffs conceded the allegedly breaching conduct ceased.[9]  *See* Section C, *infra*.  Plaintiffs cannot allege Facebook breached terms that *did not exist,* and were therefore not binding, when the alleged conduct occurred.

Plaintiffs' allegations regarding the Data Policy are similarly defective.  Plaintiffs quote as follows from the Data Use Policy:

We receive data whenever you visit a . . . site with a Facebook feature (such as a social plugin). This may include the date and time you visit the site; the web address, or URL, you're on; technical information about the IP address, browser and the operating system you use; and, if you are logged in to Facebook, your User ID.

(*Id.* ¶ 60 (ellipsis in original).)  This language discloses that Facebook *may* receive certain information.  It does not prohibit Facebook from doing anything.  Moreover, this language was only

---

[8] Plaintiffs also cite Exhibit S for the same language.

[9] The Exhibits attached to Plaintiffs' TAC reflect this date at the top of the page.  While it is not clear if the dates in these Exhibits represent the date that Facebook finalized the text for publication or actually published it, either way, the pages could not have been active until September 27 and 28, 2011 *at the earliest*.

Cooley LLP
Attorneys At Law
San Francisco

14.

Def. Facebook's Motion to Dismiss
Case No. 5:12-md-02314 EJD

allegedly present in the Data Policy starting on September 7, 2011.  (*Id.* ¶ 60.)  Plaintiffs cannot rely on this language to allege a breach-of-contract claim for a Class Period starting on April 22, 2010—over a year before they allege it was present.  (*Id.* ¶ 132 (indicating the class period).)

### 4.   Plaintiffs Fail to Plead Damages

Plaintiffs fare no better with their conclusory allegation of damages.  Plaintiffs claim they suffered "non-monetary privacy damages" (*Id.* ¶ 148), that Facebook was "unjustly enriched" (*id.* ¶ 146), and that they are entitled to nominal damages even if they cannot demonstrate actual damages (*id.* ¶ 147).  None of these theories are sufficient to allege damages under California law.

First, Plaintiffs claim "non-monetary privacy damages" that are so vaguely described as to be utterly meaningless.  In fact, the TAC does not contain a single sentence explaining or quantifying these alleged damages.  Such conclusory allegations are insufficient to survive a motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Swinerton Builders v. Am. Home Assur. Co.*, 2013 WL 1122022, at *1 n.1 (N.D. Cal. Mar. 15, 2013) (conclusory allegations of breach-of-contract damages are insufficient to satisfy Rule 8); *Architectural Res. Grp., Inc. v. HKS, Inc*., 2013 WL 568921, at *3 (N.D. Cal. Feb. 13, 2013) (dismissing breach-of-contract claim pleading "merely a 'formulaic recitation' of damages").  Nor do Plaintiffs' bare allegations of "non-monetary privacy damages" satisfy the requirement under California law that damages be "clearly ascertainable."  Cal. Civ. Code § 3301 ("No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin."); *Gautier v. Gen. Tel. Co*., 234 Cal. App. 2d 302, 305 (1965) (affirming demurrer of breach-of-contract claim where plaintiffs' alleged emotional distress damages were not "clearly ascertainable").  And non-monetary damages, such as for mental suffering or emotional distress, are virtually always prohibited in a claim for breach of a commercial contract.  *E.g.*, *Erlich v. Menezes*, 21 Cal. 4th 543, 558 (1999).[10]  As alleged in the TAC, the only impact Facebook's alleged breach has had on Plaintiffs is in their mere awareness that Facebook, at some point in time, may have possessed more

---

[10] The very narrow exceptions to this rule relate to contracts "in which emotional concerns are the essence of the contract" (*e.g.*, contracts regarding funeral services).  *Erlich*, 21 Cal. 4th at 559.

Cooley LLP
Attorneys At Law
San Francisco

15.

DEF. FACEBOOK'S MOTION TO DISMISS
CASE NO. 5:12-MD-02314 EJD

1  information about Plaintiffs than they previously believed to be the case; [11] this does not constitute

2  a compensable injury.

3        Second, unjust enrichment is not a proper measure of contract damages.  *Cty. of Ventura v.*

4  *Channel Islands Marina, Inc.*, 159 Cal. App. 4th 615, 627 (2008) ("Compensatory damages for

5  breach of contract are not measured by the gain to the breaching party.").  Unjust enrichment is

6  instead a quasi-contract principle, which is mutually exclusive to a claim for breach of contract.

7  *See Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996) ("[A]n

8  action based on an implied-in-fact or quasi-contract cannot lie where there exists between the

9  parties a valid express contract covering the same subject matter.").  And even if this was a valid

10 theory of contract damages, Plaintiffs have not plausibly alleged how Facebook was unjustly

11 enriched, since they have not claimed that Facebook profited from learning Plaintiffs' user IDs

12 when Plaintiffs visited webpages while logged off of Facebook.  *Accord Carpenter Found. v.*

13 *Oakes*, 26 Cal. App. 3d 784, 800 (1972) (affirming denial of damages where plaintiff could

14 demonstrate no actual damages nor evidence that defendant was unjustly enriched).

15       Third, Plaintiffs' claim for nominal damages in the absence of any showing of actual

16 damages does not suffice under California law.  As an initial matter, allowing a claim of nominal

17 damages to substitute for allegations of actual damages would effectively eliminate the element of

18 damages from a breach of contract claim—an outcome that is both contrary to common sense and

19 California law.  *See Buttram v. Owens–Corning Fiberglas Corp.*, 16 Cal. 4th 520, 531 n.4 (1997)

20 ("[T]o be actionable, harm must constitute something more than nominal damages, speculative

21 harm, or the threat of future harm-not yet realized" (quotations and citations omitted)); [12] *Patent*

22 *Scaffolding Co. v. William Simpson Const. Co.*, 256 Cal. App. 2d 506, 511 (1967) ("A breach of

23 contract without damage is not actionable."); *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d

24 1010, 1015 (9th Cir. 2000) ("Under California law, a breach of contract claim requires a showing

---

[11] The TAC acknowledges that Facebook discards any identifying information associated with social plugins after 90 days.  (TAC Ex. H at p.5.)

[12] As decisions of the California Supreme Court are binding on issues of state law, *In re Kirkland*, 915 F.2d 1236, 1238–39 (9th Cir. 1990), Plaintiffs must show "more than nominal damages" to proceed with their claim.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16.

DEF. FACEBOOK'S MOTION TO DISMISS
CASE NO. 5:12-MD-02314 EJD

1   of appreciable and actual damage.").  Moreover, it would run afoul of California's prohibition on

2   recovery of contract damages that are "not clearly ascertainable in both their nature and origin."

3   Cal. Civ. Code § 3301; *Gautier*, 234 Cal. App. 2d at 305-06 (breach of contract is not actionable

4   where damages are not "clearly ascertainable").  "Uncertainty as to the fact of damage, that is, as

5   to the nature, existence, or cause of damage, is fatal to a recovery."  23 Cal. Jur. 3d Damages § 25.

6          The Court's previous Order finding that Plaintiffs have Article III standing to pursue their

7   contract claims under a nominal damages theory does not change the analysis.  Whether allegations

8   of nominal damages are sufficient to satisfy Article III requirements is simply irrelevant to the

9   question of whether Plaintiffs have adequately alleged the damages requirement of their contract

10  claims under California law.  The decision in *In re Facebook Privacy Litig.*, 192 F. Supp. 3d 1053,

11  1062 (N.D. Cal. 2016), on which the Court relied in its recent Order, determined that the plaintiff

12  had alleged a "concrete" and "particularized" "injury in fact" and thus had Article III standing.

13  Even if those requirements for *Article III standing* are satisfied here, that does not establish that

14  Plaintiffs' *breach-of-contract damages* are "clearly ascertainable in their nature and origin" as

15  required under Civil Code § 3301.  Furthermore, the SAC that the Court considered in its Order

16  differs from the TAC in a significant way with respect to damages.  Whereas the SAC contained

17  allegations from which it was possible, in the light most favorable to Plaintiffs, to infer that

18  information obtained by Facebook could have ascertainable economic value (*see* SAC ¶¶ 129-141),

19  the TAC contains no such allegations.  Instead, the TAC's sole allegations of actual damages are

20  that Plaintiffs suffered "non-monetary privacy damages."  (TAC ¶ 148.)

21         Finally, the reasoning of *In re Facebook Privacy Litigation* is not persuasive as to whether

22  Plaintiffs' allegations satisfy the damages requirement under California law.  First, to the extent *In*

23  *re Facebook Privacy Litigation* discussed damages as an element of breach of contract under

24  California law, its discussion was dicta and has been recently criticized by other courts in this

25  district.  *Svenson v. Google Inc.,* 2016 WL 8943301, at *10 (N.D. Cal. Dec. 21, 2016) (disagreeing

26  with in *In re Facebook Privacy Litig.*, and concluding that a plaintiff claiming nominal damages

27  was not relieved of the requirement to prove actual injury); *accord Opperman v. Path*, 84 F. Supp.

28  3d 962, 990 (N.D. Cal. 2015).  Second, in *In re Facebook Privacy Litigation*, the plaintiff alleged

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17.

DEF. FACEBOOK'S MOTION TO DISMISS
CASE NO. 5:12-MD-02314 EJD

that her personal information had been disseminated to advertisers. 192 F. Supp. 3d 1053, 1061 ("[I]t is Facebook's *transmission* [of personal information] plaintiffs allege caused Ms. Marfeo to be denied the benefit of the bargain.") (emphasis added).  Plaintiffs have alleged no such thing here. Further, the *In re Facebook Privacy* court concluded that plaintiff *had* alleged actual damages, though it was "skeptical about plaintiffs' ability to establish the value of [her damages]." 192 F. Supp. 3d at 1059.  In contrast, Plaintiffs here allege only that Facebook learned information about the pages they visited outside of the Facebook domain that they believed that Facebook would not learn.  Courts in this district have repeatedly found that such amorphous allegations of harm cannot satisfy the damages element of a breach-of-contract claim.  *See In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at *6 (N.D. Cal. Dec. 3, 2013) (rejecting plaintiffs' reliance on nominal damages and holding that comingling personal identification information did not articulate a contract injury); *Meneses v. U-Haul Int'l, Inc.*, 2012 WL 669518, at *6 (N.D. Cal. Feb. 29, 2012) (rejecting nominal damages as sufficient for contract injury where plaintiff alleged he was unable to patronize non-ADA compliant facilities that he had not visited nor stated an intent to visit).[13]

## B. Plaintiffs Fail to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)

To successfully allege breach of the implied covenant, Plaintiffs must show (1) a valid contract; (2) that Plaintiffs performed or were excused from performing under the contract; (3) that Facebook unfairly interfered with Plaintiffs' rights to receive the benefits of the contract; and (4) that Plaintiffs were harmed as a result.  *Avila v. Countrywide Home Loans*, 2010 WL 5071714, at

---

[13] Two unpublished Ninth Circuit cases upholding the sufficiency of nominal damages can be reconciled with cases rejecting nominal damages by comparing whether the plaintiff alleged an amorphous or intellectual injury, rather than a concrete injury for which evidence of damages was elusive.  *Compare Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) (where other employees had been laid off, plaintiffs consequent "fear of future layoff" was not a cognizable injury supporting a breach of contract claim) and *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) (where a third party had learned plaintiff's social security number, "fear of future identity theft" was not a cognizable injury under California law) with *Raiser v. Ventura Coll. of Law*, 488 F. App'x 219, 222 (9th Cir. 2012) (where defendant breached obligation to provide a hearing, plaintiff was entitled to nominal damages even though he could not demonstrate that the hearing would have alleviated subsequent harm) and *Haagen v. Saks & Co.*, 160 F. App'x 621, 624 (9th Cir. 2005) (where defendant breached obligation to keep reliable books, nominal damages was appropriate even though plaintiff could not show that accurate books would evidence his entitlement to money).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18.

DEF. FACEBOOK'S MOTION TO DISMISS
CASE NO. 5:12-MD-02314 EJD

*5 (N.D. Cal. Dec. 7, 2010). Plaintiffs must allege something beyond a breach of the contract terms themselves. *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394-95 (1990). They "must show that the conduct of the defendant . . . demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Id.* Plaintiffs duplicate their breach-of-contract claim, attempt to create new obligations not present in the contract, fail to show that their rights to receive the benefits of the contract were interfered with, and, as above, fail to show damages.

### 1. Plaintiffs' Implied-Covenant Claim Is Entirely Duplicative of their Breach-of-Contract Claim

Plaintiffs' implied-covenant claim is based on the exact same allegations as their breach-of-contract claim. The allegations in Plaintiffs TAC that support their implied-covenant claim demonstrate this. Plaintiffs allege that, "[d]espite its *contractual* privacy promises not to track users while they were logged-off, Facebook took actions *in breach of those contractual promises*[.]" (TAC ¶ 157 (emphasis added).) This allegation is substantively identical to Plaintiffs breach-of-contract allegation. (TAC ¶ 142.) And Plaintiffs' TAC does not contain any allegations of wrongful conduct beyond the claimed breach. As the California Supreme Court has held, such claims mandate dismissal: "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Careau & Co.*, 222 Cal. App. 3d at 1395; *see also Croshal v. Aurora Bank, F.S.B.*, 2014 WL 2796529, at *6 (N.D. Cal. June 19, 2014) (same).[14]

### 2. Plaintiffs Improperly Attempt to Use Their Implied-Covenant Claim to Create New Requirements Not Present in the Parties' Contract

Plaintiffs also fail in their attempt to identify implied-covenant obligations that are not

---

[14] Moreover, as Count II essentially restates Count I, the same arguments regarding incorporation and damages raised above apply.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19.

DEF. FACEBOOK'S MOTION TO DISMISS
CASE NO. 5:12-MD-02314 EJD

derived from the contract. The implied covenant cannot fix a defective breach-of-contract claim by creating new substantive obligations not found in the agreement. (*See* Order at 13-14 ("'[T]he implied covenant of good faith and fair dealing cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.'") (quoting *Agosta v. Astor*, 120 Cal. App. 4th 596, 607 (2004))); *Careau & Co.*, 222 Cal. App. 3d at 1393 ("The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes."). Accordingly, Plaintiffs' attempt to assert an implied-covenant claim based on alleged extra-contractual statements must be rejected. (*See* TAC ¶ 155 (listing Facebook's "assurances given outside of the contractual context").)

Likewise, Plaintiffs' unsupported contention that Facebook did not disclose its conduct (TAC ¶ 160) does nothing to remedy the TAC's fatal deficiencies because Plaintiffs fail to locate a contractual obligation for disclosure. *See Am. Exp. Bank, FSB v. Kayatta*, 190 Cal. App. 4th 563, 570 (2010) (implied covenant did not require defendant to disclose information that contract did not specifically promise); *Svenson*, 2015 WL 1503429, at *6 (allegation that defendant failed to inform users that their personal information would be shared did not state an implied covenant claim without evidence that the contract imposed a duty to inform).

Plaintiffs cannot accomplish in Count II, under the guise of the implied covenant, what they failed to accomplish in Count I—the invention of a new contract term.

### 3. Aside from the Alleged Breach of Contract, Plaintiffs Have Not and Cannot Allege Any Conduct By Facebook That Prevented Them From Receiving the Benefit of the Bargain

"'The implied promise [of good faith and fair dealing] requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement.'" *Avidity Partners, LLC v. State of Cal.*, 221 Cal. App. 4th 1180, 1204 (2013) (citation omitted). A breach of the implied covenant is shown where, for example, a party acts in such a way as to unfairly deprive a party of an explicit benefit provided by the contract, or fails to exercise discretion granted under the contract in good faith. *See, e.g.*, *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 819

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20.

DEF. FACEBOOK'S MOTION TO DISMISS
CASE NO. 5:12-MD-02314 EJD

(1979) (defendant could not frustrate plaintiff's right to have his insurance claim investigated by performing that investigation in bad faith); *Thrifty Payless, Inc. v. Americana at Brand, LLC*, 218 Cal. App. 4th 1230, 1244 (2013) (plaintiff lessee stated an implied covenant claim by alleging defendant improperly exercised its discretion to apportion pro-rata share of costs as provided in the contract). An implied-covenant claim is not stated where plaintiffs fail to show that defendants' conduct deprived them of a specific benefit provided by the contract. *See In re iPhone Application Litig.*, 2011 WL 4403963, at *9 (N.D. Cal. Sept. 20, 2011) (dismissing implied-covenant claim where plaintiffs failed to identify a benefit provided by the contract that they were allegedly deprived); *Am. Exp. Bank, FSB*, 190 Cal. App. 4th at 570 (dismissing implied covenant claim where plaintiff's rights to receive the benefits of the contract were not frustrated by defendant's alleged failure to disclose). Here, Plaintiffs' boilerplate allegation that they "did not receive the benefit of the bargain for which they contracted" (TAC ¶ 161) does not satisfy these obligations. Plaintiffs fail to point to any specific contractual benefit they were entitled to that was frustrated by Facebook's conduct.

### 4.    Plaintiffs Do Not Allege Damages

An implied-covenant claim requires that the plaintiff suffered damages. *Avila*, 2010 WL 5071714, at *5. Plaintiffs offer nothing more than a conclusory damages recitation (TAC ¶ 161) that fails for the same reasons Plaintiffs' breach-of-contract damages allegations fail. *See Stoval v. Basin St. Props.*, 2013 U.S. Dist. LEXIS 161265, at *21 (N.D. Cal. Nov. 12, 2013).

### C.    Plaintiffs' Amendment Impermissibly Expands their Allegations and the Scope of the Class Period Beyond the Applicable Statute of Limitations

Plaintiffs' improper attempt to enlarge the putative class and the scope of the previously asserted claims after more than six years of litigation is barred by the statute of limitations as it does not relate back to Plaintiffs' prior complaints.[15]   As the TAC was filed on August 25, 2017,

---

[15] The TAC also exceeds the scope of the Court's leave to amend and should be dismissed on that ground as well. *See McKee v. Peoria Unified Sch. Dist.*, 963 F. Supp. 2d 911, 919 (D. Ariz. 2013) (dismissing claims added to amended complaint in violation of the scope of the court's order permitting amendment). The Court previously dismissed each of Plaintiffs' claims with prejudice, permitting leave to amend only Plaintiffs' claims for breach of contract and breach of the duty of good faith and fair dealing. (Order at 14.) Plaintiffs also told the Court at the case management

Cooley LLP
Attorneys At Law
San Francisco

21.

DEF. FACEBOOK'S MOTION TO DISMISS
CASE No. 5:12-MD-02314 EJD

contract claims against Facebook for conduct that occurred prior to August 25, 2013 are time-barred under California's four-year statute of limitations (Cal. Civ. P. Code § 337). Thus, Plaintiffs' new allegations must be dismissed unless they can establish that they "relate back" to their previous complaints under Rule 15(c). Plaintiffs bear the burden of showing the applicability of that principle where, as here, the claims appear from the face of the complaint to be time-barred. *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980).

The inquiry here, governed by Rule 15, is two-fold. First, an amendment as to new factual allegations—such as Plaintiffs' added claim that Facebook breached a contractual agreement entered into after Class Period I—only relate back to the date of an original pleading when it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Second, an amendment seeking to expand a class period— here, from September 27, 2011 to an undefined future period—is treated as akin to an amendment to add additional plaintiffs, which is governed by Rule 15(c)(1)(C). *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 935 (9th Cir. 1996); *see Martell v. Trilogy Ltd.*, 872 F.2d 322, 324 (9th Cir. 1989) (differentiating between the applicable relate-back standard when new claims versus new parties are added). Plaintiffs cannot carry their burden under either of these Rule 15 inquiries.

### 1. Plaintiffs' Allegations That Facebook Breached Contractual Obligations Entered-Into After Class Period I Do Not Relate Back

The purported contractual promises alleged in the TAC that are not mentioned in the original complaint and that post-date Class Period I do not satisfy Rule 15(c)(1)(B) and are therefore barred by the statute of limitations. Breach of a contract not previously raised in a prior complaint is a classic example of an allegation that does not arise out of the same conduct, transaction, or occurrence. 6A Wright & Miller, Federal Practice and Procedure § 1497 (2d ed. 2010) (identifying breach of an independent contract as an example of the sort of allegations that are not permitted in an amendment under Rule 15(c)(1)(B)); *Trafalgar Power Inc. v. Aetna Life*

---

conference that "to our knowledge every single help center page that's relevant for our claim did appear during the class period." (Tr. at 3:9-11 (emphasis added).) Plaintiffs' TAC exceeds the scope of the Court's leave to amend by alleging additional claims on behalf of an expanded class, premised on alleged contractual violations that occurred outside of the original class period.

**DEF. FACEBOOK'S MOTION TO DISMISS**
**CASE NO. 5:12-MD-02314 EJD**

*Ins. Co.*, 396 B.R. 584, 592 (N.D.N.Y. 2008) (holding that allegations of breach of a 1995 contract did not relate back to a prior complaint alleging breach of a 1996 contract).  The TAC adds precisely these impermissible novel allegations: that statements made in the Help Center pages that post-date Class Period I, and were not mentioned in either of their earlier complaints, constitute the contractual promises that Facebook breached.  (TAC ¶¶ 62, 65; *Id.* Exs. I, M, L.)  These new allegations do not relate back and are barred by the statute of limitations.

Any alleged similarities between the previously pled and newly pled contractual promises do not alter this conclusion.  *See Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1134 (9th Cir. 2006) (separate unlawful disclosures of same material constituted separate events and did not relate back); *In re Alcatel Sec. Litig.*, 382 F.Supp.2d 513, 528 (S.D.N.Y. 2005) (rejecting argument that "new misstatements made in furtherance of that same alleged scheme" related back where they alleged separate transactions).

A key test for whether an amendment satisfies Rule 15(c)(1)(B) is whether a party had fair notice of the claim.  *Martell*, 872 F.2d at 325; *BF&W Assocs. v. Motorola, Inc.*, 2006 WL 1156381, at *6 (N.D. Cal. May 2, 2006) (breach of contract allegations did not relate back to an earlier complaint: "it is unreasonable to conclude that Motorola would have been on notice of allegations that are related to a contract that was not referenced in the original complaint").  Plaintiffs' SAC alleges that Facebook's conduct in breach of its contractual obligations ceased on September 26, 2011 (SAC ¶ 4 (the date Facebook "cho[se] to fix the problem"), whereas the TAC alleges that Facebook breached promises made *after* September 26, 2011.  (TAC ¶¶ 62, 66.)  Accordingly, Plaintiffs' earlier complaints could not possibly have put Facebook on notice of these later facts.

### 2. Plaintiffs' Additional Class Period II Plaintiffs Do Not Relate Back

Plaintiffs' claims with respect to Class Period II plaintiffs do not relate back because Plaintiffs cannot show that (1) the original complaint gave Facebook adequate notice of the claims of the newly proposed plaintiffs; (2) the relation back does not unfairly prejudice Facebook; and (3) there is an identity of interests between the original and newly proposed plaintiffs.  *In re Syntex Corp.*, 95 F.3d at 935.

***Adequate Notice.***  As above, Plaintiffs' prior complaints did not provide Facebook with

Cooley LLP
Attorneys At Law
San Francisco

23.

DEF. FACEBOOK'S MOTION TO DISMISS
CASE NO. 5:12-MD-02314 EJD

adequate notice of their new breach-of-contract allegations based on statements allegedly published *after* the close of the previously-defined class period.  Courts have routinely rejected the argument that an expanded class period relates back where it relies on new conduct not mentioned in an earlier complaint.  In *In re Alcatel Securities Litigation*, 382 F. Supp. 2d 513, 529 (S.D.N.Y.2005), the court rejected an amendment extending the class period and alleging new misrepresentations that predated the prior class period.  The court reasoned that "nothing in the initial complaint put Defendants on notice that they would be subject to claims for stock purchases" that predated the originally-alleged class period.  *Id.*; *see also In re Bausch & Lomb Sec. Litig.*, 941 F. Supp. 1352, 1366 (W.D.N.Y. 1996) (holding that claims brought on behalf of an expanded class did not relate back because "nothing in the prior pleadings put defendants on notice that they would be subject to claims by persons who had bought B & L stock before December 14, 1993").  The same is true here.  Nothing in Plaintiffs' earlier complaints could have put Facebook on notice that they would be subject to claims for supposed contractual obligations that post-dated the events described in earlier complaints.

*Identity of Interests.*  The original and newly proposed class members do not share an identity of interests because the alleged promises that they were allegedly exposed to and therefore the contract claims that they seek to allege are fundamentally different.  *See In re Syntex Corp.*, 95 F.3d at 935 (finding no identity of interests where the "claims of the proposed plaintiffs are different because the newly proposed class members bought stock at different values and after different disclosures and statements were made by Defendants and analysts"); *In re Mercury Interactive Corp. Sec. Litig.*, 2007 WL 2209278, at *5 (N.D. Cal. July 30, 2007) (dismissing claims of newly added plaintiffs who viewed different statements prior to the purchases at issue, because they did not share an identity of interests).  Indeed, the Class Period I plaintiffs allege that Facebook made statements during the class period that "implied" that it would not learn their User ID when they logged out of Facebook and visited pages with social plugins.  (TAC ¶¶ 60, 63, 64.)  In contrast, the alleged contractual statements that post-date September 26, 2011, and would govern the Class Period II plaintiffs, contain explicit statements, such as "[w]hen you log out of Facebook, we remove the cookies that identify your particular account" and "because you're not logged in to

Cooley LLP
Attorneys At Law
San Francisco

24.

Def. Facebook's Motion to Dismiss
Case No. 5:12-md-02314 EJD

Facebook, we don't receive your user ID." (TAC ¶¶ 62, 65.) Because the newly proposed plaintiffs seek to assert contractual claims based on substantively different statements by Facebook, they do not share an identity of interests. *In re Syntex Corp. Sec. Litig.*, 95 F.3d at 935.

**Prejudice.** Facebook will be prejudiced by the addition of new claims based on different representations made to nearly six additional years of putative plaintiffs (from September 27, 2011 until Plaintiffs filed their TAC on August 25, 2017). Plaintiffs have litigated this case for five years on the explicit premise that the conduct they challenge ceased as of September 26, 2011. But now, because the actual evidence does not support their breach of contract allegations, Plaintiffs seek to abandon that limitation in favor of an open-ended, "to be determined" close of the class period. To allow this abrupt change in course would not only force Facebook to litigate claims it did not have adequate notice of, but would transform the focus of this case from one about the conduct that Plaintiffs previously acknowledged was remedied as of September 26, 2011 to one about other practices Plaintiffs find objectionable. This change in course will undoubtedly include an attempt by Plaintiffs to expand the scope of discovery (as Plaintiffs previously agreed that the relevant period for Facebook's document production ended December 25, 2011), forcing Facebook to repeat its prior discovery efforts (*i.e.*, the collection, review and production of more than 65,000 pages of documents). (Decl. ¶ 2.)

Accordingly, even if the Court were to find that Plaintiffs' contractual allegations postdating the end of Class Period I stated a contract claim, the Court should dismiss these allegations and Plaintiffs' claims on behalf of Class Period II plaintiffs as barred by the statute of limitations.

**VI.   CONCLUSION**

Plaintiffs have been given ample opportunity to cure the defects this Court identified in its serial complaints, but they have not. Their claims should be dismissed with prejudice. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, '[t]he district court's discretion to deny leave to amend is particularly broad.'" (citations omitted)).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25.

DEF. FACEBOOK'S MOTION TO DISMISS
CASE NO. 5:12-MD-02314 EJD

1     Dated:   September 8, 2017              COOLEY LLP

2

3                                         */s/ Matthew D. Brown*
                                        Matthew D. Brown

4                                         Attorneys for Defendant FACEBOOK, INC.

5

6
   149665932

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cooley LLP
Attorneys At Law
San Francisco

26.

Def. Facebook's Motion to Dismiss
Case No. 5:12-md-02314 EJD