1
2
3
4
5
6

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
MATTHEW D. BROWN (196972)
(brownmd@cooley.com)
KYLE C. WONG (224021)
(kwong@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:     (415) 693-2000
Facsimile:      (415) 693-2222

7
8

Attorneys for Defendant
FACEBOOK, INC.

9

UNITED STATES DISTRICT COURT

10

NORTHERN DISTRICT OF CALIFORNIA

11

SAN JOSE DIVISION

12

13

In re:  Facebook Internet Tracking Litigation

Case No.  5:12-md-02314 EJD

14
15
16

**DEFENDANT FACEBOOK, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THIRD AMENDED CONSOLIDATED COMPLAINT**

16
17

Date:            November 16, 2017
Time:           9:00 a.m.

18

Courtroom:     4
Judge:          Hon. Edward J. Davila
Trial Date:     None Set

19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................................... 1

II.    ARGUMENT ................................................................................................................. 1

    A.    Plaintiffs Fail to State a Claim for Breach of Contract (Count I) .......................... 1

          1.    The SRR does not incorporate the statements Plaintiffs claim .................. 2

               a.    Facebook's contract with its users does not reference or guide the reader to the help center pages at issue .......................... 2

               b.    Facebook's Help Center pages are not "known or easily available to the parties".................................................................... 4

          2.    Even if the Help Center was incorporated into the contract, the conduct alleged does not breach the incorporated terms ........................... 5

          3.    Plaintiffs fail to plead damages .................................................................. 7

    B.    Plaintiffs Fail to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II) ........................................................................... 9

          1.    Plaintiffs do not show they were deprived of the benefit of the bargain....................................................................................................... 9

          2.    Alleging a willful breach does not state an implied-covenant claim ........ 10

          3.    Plaintiffs' other allegations seek to impose requirements not in the contract .................................................................................................... 10

          4.    Plaintiffs have not shown damages .......................................................... 11

    C.    Plaintiffs' New Contractual Claims and Claims On Behalf of New Plaintiffs Do Not "Relate Back" and Are Therefore Barred By the Statute of Limitations .................................................................................................... 11

          1.    Plaintiffs' allegations that Facebook breached contractual obligations entered-into after Class Period I do not relate back .............. 11

          2.    Plaintiffs' additional Class Period II plaintiffs do not relate back ........... 13

                a.    Plaintiffs cannot allege tolling for delayed discovery................... 13

                b.    Class Period II plaintiffs do not relate back .................................. 14

III.    CONCLUSION .......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Similasan Corp.*,
  96 F. Supp. 3d 1063 (S.D. Cal. 2015) .................................................................................14

*Angeles v. U.S. Airways, Inc.*,
  2013 WL 622032 (N.D. Cal. Feb. 19, 2013) .........................................................................7

*In re Anthem, Inc. Data Breach Litig.*,
  2016 WL 3029783 (N.D. Cal. May 27, 2016) ....................................................................4, 5

*Architectural Res. Grp., Inc. v. HKS, Inc.*,
  2013 WL 568921 (N.D. Cal. Feb. 13, 2013) .......................................................................10

*Bernson v. Browning-Ferris Indus.*,
  7 Cal. 4th 926 (1994) ..........................................................................................................13

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
  222 Cal. App. 3d 1371 (1990).........................................................................................9, 10

*Cariaga v. Local No. 1184 Laborers Int'l Union of N. Am.*,
  154 F.3d 1072 (9th Cir. 1998).............................................................................................3, 4

*Carlsson v. McGraw-Hill Cos.*,
  2010 WL 3036487 (N.D. Cal. July 30, 2010) .......................................................................2

*Chan v. Drexel Burnham Lambert Inc.*,
  178 Cal. App. 3d 632 (1986)..................................................................................................3

*Darringer v. Intuitive Surgical, Inc.*,
  2015 WL 4623935 (N.D. Cal. Aug. 3, 2015) ......................................................................13

*Dunkel v. eBay Inc.*,
  2014 WL 1117886 (N.D. Cal. Mar. 19, 2014) ……...............................................................2

*In re eBay Litig.*,
  2012 WL 3945524 (N.D. Cal. Sept. 10, 2012) ......................................................................8

*Ericson v. Playgirl, Inc.*,
  73 Cal. App. 3d 850 (1977)....................................................................................................9

*Exxon Mobil Corp. v. Tredegar Corp.*,
  891 F. Supp. 2d 559 (S.D.N.Y. 2012)...................................................................................8

*In re Facebook Privacy Litigation*,
  192 F. Supp. 3d 1053 (N.D. Cal. 2016) ................................................................................8

*Fisher v. Biozone Pharmaceuticals, Inc.*,
2017 WL 1097198 (N.D. Cal. Mar. 23, 2017)................................................................8

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal.4th 797 (Cal. 2005)......................................................................................13

*Gautier v. Gen. Tel. Co.*,
234 Cal. App. 2d 302 (1965).....................................................................................7

*Gilbert St. Developers, LLC v. La Quinta Homes, LLC*,
174 Cal. App. 4th 1185 (2009) ...............................................................................12

*In re Google, Inc. Privacy Policy Litig.*,
2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ...........................................................7

*Guidotti v. Global Client Sols., LLC*,
2017 WL 1528693 (D.N.J. Apr. 26, 2017) ..............................................................2

*Job v. Simply Wireless, Inc.*,
160 F. Supp. 3d 891 (E.D. Va. 2015).......................................................................8

*Kashmiri v. Regents of Univ. of Cal.*,
156 Cal. App. 4th 809 (2007) ...................................................................................5

*Lakeland Tours, LLC v. Bauman*,
2014 WL 12570970 (S.D. Cal. Feb. 11, 2014) .......................................................10

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...............................................................7, 8

*Mitsui Mfrs. Bank v. Super. Ct.*,
212 Cal. App. 3d 726 (1989).................................................................................10

*Newland N. Am. Foods, Inc. v. Zentis N. Am. Operating, LLC*,
2013 WL 1870652 (N.D. Ind. May 3, 2013) ...........................................................8

*Noll v. eBay, Inc.*,
282 F.R.D. 462 (N.D. Cal. 2012)..............................................................................5

*Oja v. U.S. Army Corps of Engineers*,
440 F.3d 1122 (9th Cir. 2006)................................................................................12

*Opperman v. Path, Inc.*,
84 F. Supp. 3d 962 (N.D. Cal. 2015) ........................................................................8

*Shaw v. Regents of Univ. of Cal.*,
58 Cal. App. 4th 44 (1997).......................................................................................4

*Smolinski v. Oppenheimer*,
2012 WL 2885175 (N.D. Ill. July 11, 2012)............................................................8

Cooley LLP
Attorneys At Law
San Francisco

-iii-

Def. Facebook's Reply ISO Motion to Dismiss
Case No. 5:12-md-02314 EJD

*Svenson v. Google Inc.*,
  65 F. Supp. 3d 717 (N.D. Cal. 2014) ...................................................................................8, 10

*Sweet v. Johnson*,
  169 Cal. App. 2d 630 (1959)...............................................................................................9

*In re Syntex Corp. Sec. Litig.*,
  95 F.3d 922 (9th Cir. 1996).................................................................................................14

*Troyk v. Farmers Grp., Inc.*,
  171 Cal. App. 4th 1305 (2009) .........................................................................................2, 4

*Walpole v. Prefab Mfg. Co.*,
  103 Cal. App. 2d 472 (1951)..............................................................................................7

*Ward v. Nat'l Entm't Collectibles Ass'n*,
  2012 WL 12885073 (C.D. Cal. Oct. 29, 2012)................................................................7, 8

*Willner v. Manpower Inc.*,
  2014 WL 2939732 (N.D. Cal. June 30, 2014) ................................................................14

*Woods v. Google Inc.*,
  2011 WL 3501403 (N.D. Cal. Aug. 10, 2011)...................................................................4

*In re Yahoo! Inc.*,
  2017 WL 3727318 (N.D. Cal. Aug. 30, 2017).............................................................6, 11

*In re Zynga Privacy Litig.*,
  2011 WL 7479170 (N.D. Cal. June 15, 2011) ...................................................................8

**Statutes**

Cal. Civ. Code § 1643 ...............................................................................................................5

**Other Authorities**

Cal. Rule of Ct. 8.1115 ..........................................................................................................2, 3

1    **I.    INTRODUCTION**

2          Plaintiffs' Opposition ("Opposition" or "Opp.") to Facebook's Motion to Dismiss

3    ("Motion" or "Mot.") demonstrates why Plaintiffs' Third Amended Consolidated Class Action

4    Complaint ("TAC") should meet the same fate as their first and second amended complaints.  Only

5    two claims—breach of contract and breach of the implied covenant of good faith and fair dealing—

6    remain.  But despite the Court's directive that Plaintiffs identify the alleged contractual statements

7    at issue, and where or when those statements appeared, Plaintiffs have again failed to do so.  Instead,

8    they attempt to mask this failure by suggesting the *entire* Facebook Help Center, consisting of

9    hundreds of constantly changing pages, is incorporated into the Facebook user agreement, even

10   though that agreement suggests nothing of the sort.  Moreover, Plaintiffs fail to identify any

11   statement that would amount to an agreement not to engage in the conduct alleged.  Plaintiffs cannot

12   cure this failure by alleging a breach of the implied covenant of good faith and fair dealing.

13         In addition, after nearly seven years of litigation and three different bites at the apple (and

14   after the Court has twice dismissed numerous claims for lack of standing), Plaintiffs still fail to

15   articulate how they have been damaged by any of the conduct about which they complain.

16   Plaintiffs' suggestion that they are entitled to litigate claims based solely on a nebulous assertion

17   of "non-monetary privacy damage" is contrary to law and should not be permitted.

18         Finally, Plaintiffs' belated attempt to expand their class definition to add new contract

19   claims that they chose not to bring when they initiated this litigation is barred by the statute of

20   limitations.  For these reasons and those that follow, the TAC should be dismissed with prejudice.

21   **II.   ARGUMENT**

22         **A.    Plaintiffs Fail to State a Claim for Breach of Contract (Count I)**

23         The Court dismissed Plaintiffs' Second Amended Complaint ("SAC") for failure to identify

24   the specific terms Plaintiffs claimed Facebook breached and for failing to explain how those terms

25   were incorporated into the SRR.  (Order, ECF No. 148 at 13-14.)  The TAC does not cure these

26   defects (Mot. at 7) and the Opposition fares no better.  The latter gives a list of "examples" of the

27   terms allegedly at issue, citing over a dozen exhibits to the TAC (Opp. 10-11), but only alludes

28   vaguely to some of the language Plaintiffs rely on in each exhibit, and again fails to show this

1    language was incorporated into the SRR.

2                    **1.    The SRR does not incorporate the statements Plaintiffs claim.**

3            The Opposition points to *fifteen* Help Center pages that supposedly serve as the bases for

4    Plaintiffs' claim.  As Facebook demonstrated in its Motion, these pages cannot form the basis of a

5    breach-of-contract claim because they are not part of the agreement between Facebook and its

6    users.  (Mot. at 8-12.)  The Opposition's attempts to establish the contrary lack merit.[1]

7                    a.    **Facebook's contract with its users does not reference or guide
                           the reader to the Help Center pages at issue.**
8

9            Plaintiffs do not dispute that under California law, a contract may incorporate an outside

10   document only if the contract makes a "clear and unequivocal" reference to the document.  *E.g.*,

11   *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1331 (2009).  The Opposition claims that the

12   SRRs incorporate the Privacy Policy, which in turn incorporates the Help Center pages at issue.[2]

13   To support this "chain incorporation" theory, Plaintiffs repeatedly assert that the Privacy Policy

14   links "directly" to "the Help Center pages."[3]  (Opp. at 6; *id.* at 7 n.7; *id.* at 8 n.8.)  That is simply

15   false.  As Plaintiffs well know, the Privacy Policy does ***not*** reference or link to any of the Help

16   Center pages Plaintiffs rely on.  Instead it links to a handful of other, unrelated Help Center pages

17   ─────────────────
     [1] Plaintiffs argue that incorporation is not properly adjudicated on the pleadings (Opp. at 7), but
18   their cases are inapposite.  For example, in *Guidotti v. Global Client Sols., LLC*, 2017 WL 1528693,
     at *2 (D.N.J. Apr. 26, 2017), the court noted that if the question of incorporation is based on the
19   construction of the contract's terms, as is the case here, it ***is a question of law***.  The court
     distinguished the "unique" circumstances in that case, where the jury had been asked to decide if
20   the plaintiff *assented* to certain terms through her conduct.  *Id.* at *1-2.  And *Carlsson v. McGraw-
     Hill Cos.*, 2010 WL 3036487, at *4 (N.D. Cal. July 30, 2010) had nothing to do with incorporation;
21   it found factual questions remained about the parties' "acts and conduct" after the contract was
     executed.  Moreover, incorporation is regularly determined at the pleadings stage.  *E.g., Dunkel v.*
22   *eBay Inc.*, 2014 WL 1117886, at *4 (N.D. Cal. Mar. 19, 2014) (Davila, J.).
     [2] Plaintiffs argue that this kind of chain incorporation is permissible, but improperly refer the court
23   to a single unpublished and uncitable case (Opp. at 6).  *See* Cal. Rule of Ct. 8.1115(a).  In any event,
     this approach to chain incorporation is inappropriate here because each Help Center page itself
24   links to multiple other pages, such as the Facebook "About" and "Careers" pages.  (*E.g.*,
     https://www.facebook.com/help/1573156092981768?helpref=popular_topics.)  Plaintiffs'
25   theory
     would mean that the SRR incorporates this indefinite web of pages.  That is untenable.
26   [3] The Opposition repeats the false claim that Facebook uses a "layered" contract that starts with the
     SRR and ends with the Help Center.  (*E.g.*, Opp. at 7.)  But as the TAC itself makes clear, Facebook
27   stated that its *Privacy Policy* is organized using a layered approach, not that its SRR or Privacy
     Policy is made up of layers of documents beyond the agreement or policy itself.  (TAC ¶ 42.)

not attached to the TAC.  In fact, despite the Court's instruction to do so (Order at 13-14), neither the TAC nor the Opposition ever clarify how many clicks it would take (if it is even possible) to get from the SRR (or the Privacy Policy) to the Help Center pages at issue.  As such, Plaintiffs have not come close to pleading incorporation of the relevant Help Center pages.  (Mot. at 9-10.)

The Opposition employs a few tactics to dodge this fatal defect.  First, it characterizes the various Help Center pages as "provisions" in a single Help Center "document."  (Opp. at 5-6.) Plaintiffs then claim it is "a mainstay of Internet contract law [] that customers are often contractually bound to individual ***provisions*** … even when the hyperlink only links to the ***broader document***."  (*Id.* (emphasis added).)  But this argument does not hold water.  The Help Center pages are not "provisions" in a "broader document" incorporated into the SRR; instead, the Help Center is made up of hundreds of individual documents on varying topics.  Indeed, Plaintiffs have attached each of the Help Center pages at issue *as separate exhibits* to the TAC.  Plaintiffs' "single document" approach does not comport with reality.

Next, Plaintiffs seem to argue that even if the Help Center is hundreds of discrete documents, they are *all* incorporated into the SRR because the Privacy Policy links to a few individual Help Center pages not at issue.  Specifically, Plaintiffs state "the TAC demonstrates clearly how that [sic] the Help Center generally (not just specific pages) are incorporated into the SRR."  (Opp. at 6.)  But Plaintiffs do not cite the TAC in support of this brazen assertion.

Nor do Plaintiffs provide authority holding that a large collection of discrete documents are incorporated into a contract merely because a small subset of those documents is referenced by the contract.  Nor could they, as this would not be incorporation by *reference*, but incorporation by *association* to a referenced document, which contradicts controlling case law.  All of the cases cited by both parties agree on one point:  A contract only incorporates an outside ***document*** if the contract clearly and unequivocally references ***that particular document***.  *See, e.g.*, *Cariaga v. Local No. 1184 Laborers Int'l Union of N. Am.*, 154 F.3d 1072, 1074-75 (9th Cir. 1998) (rejecting incorporation where a contract provision contained a "general reference" to terms and conditions, but did not identify the specific *documents* at issue); *Chan v. Drexel Burnham Lambert Inc.*, 178 Cal. App. 3d 632, 644 (1986) (effective incorporation "requires the incorporating document to refer

to the incorporated document with particularity"); *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *8 (N.D. Cal. May 27, 2016) (same).  And for good reason.  If a contract could incorporate terms from a document by merely referencing some *other*, allegedly associated document, parties could easily misunderstand what terms constitute the contract.  As Plaintiffs' own cases show, California's law on incorporation is designed to avoid this kind of contract-by-surprise by limiting incorporation to only those instances where the contract "clearly and unequivocal[ly]" references the incorporated document and "guides" to that specific document. *E.g.*, *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997); *see also Cariaga*, 154 F.3d at 1074-75.  Plaintiffs' theory of mass incorporation by association would eviscerate that doctrine.[4]

### b.    Facebook's Help Center pages are not "known or easily available to the parties"

Not only must a document be referenced by a contract to be incorporated, it also must be "known or easily available."  *E.g., Troyk*, 171 Cal. App. 4th at 1331.  "[K]nown or easily available" means that in addition to being "clear and unequivocally" referenced in the contract, the referenced document must also be definable and discrete.  *See Woods v. Google Inc.*, 2011 WL 3501403, *3-4 (N.D. Cal. Aug. 10, 2011) (rejecting incorporation where a website Help Center was not "known or easily available").  Were it otherwise, parties would not know the precise contours of their agreements.  *Id.*  Notably, *Woods* rejected *incorporation of a website help center*—one that, like Facebook's here, is comprised of at least hundreds of individual webpages.  (*See* Mot. at 10-11.) Remarkably, the Opposition does not even mention *Woods*, let alone distinguish it.

The Opposition instead focuses on an entirely unrelated point: whether users can easily find content on the Facebook Help Center.  Plaintiffs point to a statement Facebook allegedly made to

---

[4] The Opposition effectively abandons the allegation that Facebook breached a promise in the Data Use Policy ("DUP").  Facebook argued in its Motion that the versions of the SRR at issue do not reference or mention the DUP at all.  (Mot. at 11-12.)  The Opposition does not rebut Facebook's arguments; instead Plaintiffs only allege in passing that:  "The SRR incorporates the Privacy Policy (later, the Data Use Policy) by textual reference."  (Opp. at 2.)  *But the versions of the SRR at issue do not incorporate the DUP "by textual reference" or otherwise.*  In a footnote, Plaintiffs define the "Privacy Policy" to refer both to the document of that title *and* the DUP, which Plaintiffs assert is a later "iteration."  But merely referring to the documents by the same name in briefing does not make them the same document for purposes of incorporation.

Congress that users can locate content on the Help Center "quickly and easily." (Opp. at 8.) But *Woods* did not consider whether Google users would have trouble finding content on the Google Help Center, but rather whether the Help Center could cleanly be incorporated into a contract— that is whether it was a fixed, discrete set of terms. Plaintiffs intentionally misconstrue this argument because they cannot distinguish *Woods* and its reasoning.[5]

Adopting Plaintiffs' theory of incorporation would lead to absurd results and mire the courts and contracting parties in endless disputes. To start, it is not clear where the Help Center ends— for example, some pages in the Help Center link to the related "Help Community" where users can ask questions and receive answers both from Facebook staff and other users.[6] Would this changing content, some of which is user-generated, bind the parties to the SRR? Help Center pages are also frequently added, updated, and deleted. Would each of these events require new assent from users (before Facebook could, for example, change the method for resetting passwords or updating profile pictures)? These would be absurd results and the Court should reject Plaintiffs' approach. *See Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 842 (2007) ("The interpretation of a contract must be fair and reasonable, not leading to absurd conclusions." (quotations and citation omitted)); Cal. Civ. Code § 1643 ("A contract must receive such an interpretation as will make it lawful, operative, *definite, reasonable, and capable of being carried into effect*, if it can be done without violating the intention of the parties." (emphasis added)).[7]

### 2. Even if the Help Center was incorporated into the contract, the conduct alleged does not breach the incorporated terms.

The Opposition identifies fifteen "example" Help Center pages that contain language that Facebook allegedly breached. But even putting aside that these pages are not part of the contract, *none* of these Help Center pages would contractually prohibit the alleged conduct.

---

[5] Plaintiffs also cite *Anthem*, 2016 WL 3029783 and *Noll v. eBay, Inc.*, 282 F.R.D. 462, 467 (N.D. Cal. 2012). (Opp. at 9.) But neither of these decisions concerned the incorporation of an entire website help center or addressed the issues raised in *Woods* and in the Motion.

[6] https://www.facebook.com/help/community.

[7] Plaintiffs claim that the SRR should be interpreted against the drafter. (Opp. at 7.) But the cases they cite make clear that this principle only applies where there is an ambiguity in the contract— there is none here. And none of these cases considered incorporation by reference.

**The Help Center pages found in Exhibits I, L, M, and N were not active during the relevant time period.**  Four of the Help Center pages at issue were not even active during the relevant time period.  To hide this fact, the TAC, in defiance of the Court's order, is silent about when each Help Center page became effective. (Mot. at 14.)  But the Opposition concedes that the Help Center pages were not effective before the date printed on each Help Center page exhibit. (Opp. at 4.)  The Help Center pages found at Exhibits I, L and N are dated September 27, 2011, and Exhibit M is dated September 28, 2011.  But Plaintiffs alleged in the FAC and SAC that Facebook "fixed" the alleged conduct by September 26, 2011 (FAC ¶ 19; SAC ¶ 4), before any of these four pages went live.  Plaintiffs' attempt to "solve" this problem by simply extending the class period indefinitely must be rejected for the reasons set forth below. (*See* Section C.2, *infra*.)

**The Help Center pages found in Exhibits J, K, O-S, and NN-PP do not prohibit the alleged conduct.**  None of the other Help Center pages on which Plaintiffs rely prohibit the alleged conduct.  Facebook's Motion demonstrated this point (Mot. at 12-14), but Plaintiffs have ignored those arguments entirely.  Instead, the Opposition inexplicably argues that the language found in these Help Center pages was misleading or incomplete as if it was arguing the propriety of a fraud claim.  For example, Plaintiffs claim Exhibit J should have included a more detailed disclosure and that Exhibits O, P, and Q were misleading or confusing.  Plaintiffs even pincite case law regarding the pleading standard for fraud claims. (Opp. at 11 (citing *In re Yahoo! Inc.*, 2017 WL 3727318, at *29 (N.D. Cal. Aug. 30, 2017)).)  *But Plaintiffs' fraud claims were already dismissed with prejudice*.  The truth is these Help Center pages do not come close to contractually prohibiting the alleged conduct.  The Motion already addressed most of these pages without any rebuttal in the Opposition. (Mot. at 12-14.)

**Facebook did not admit to breaching the contract.**  Finally, Plaintiffs claim that Facebook "admitted" to breaching the contract. (Opp. at 9.)  But the emails and press releases cited by Plaintiffs offer no support for this assertion. (*Id.*)  For example, the Opposition claims: "If no contrary promise existed, Facebook would not have admitted . . . that it would 'be fixing that [tracking] today.'" (*Id.* (bracket in original).)  But Facebook makes statements all the time about its services for reasons unrelated to alleged contract liability.

1

### 3. Plaintiffs fail to plead damages.

Facebook's Motion demonstrated that where the pleadings do not establish ascertainable and cognizable contract damages, California law and Rule 8 mandate dismissal. (Mot. at 15 (collecting authorities).) In response, Plaintiffs defend only two of their damages theories, but neither overcomes the pleading deficiencies here.[8]

**"Non-monetary privacy damages."** Plaintiffs fail to engage with the cases cited in Facebook's Motion, and instead claim, without citation, that "non-monetary privacy damages" are ascertainable under California law. (Opp. at 12.) But they make no effort to distinguish their asserted damages from the types of non-monetary harm that California courts have repeatedly held are not ascertainable in contract claims. *See*, *e.g.*, *Gautier v. Gen. Tel. Co.*, 234 Cal. App. 2d 302, 306 (1965) (emotional distress damages not "clearly ascertainable"); *Walpole v. Prefab Mfg. Co.*, 103 Cal. App. 2d 472, 489 (1951) (plaintiff not entitled to contract damages for injury to name, character, or personal reputation); *see also In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at *6 (N.D. Cal. Dec. 3, 2013) (commingling personal identification information did not constitute contract injury under California law).

Even were such damages proper under California law, Plaintiffs' conclusory damage allegations do not satisfy their burden under Rule 8.[9] They have not provided any basis for concluding that Facebook's alleged breach affected them in any way, beyond the mere knowledge that Facebook may have retained information about websites they visited.[10] Courts in this district have repeatedly held that allegations of conclusory contract damages that lack any facially plausible basis as to how damages or monetary loss could be assessed are insufficient under Rule 8. *See Low*

---

[8] Plaintiffs do not dispute that unjust enrichment is not a cognizable measure of damages under California contract law (Mot. at 16) and therefore concede the issue. *See Angeles v. U.S. Airways, Inc.*, 2013 WL 622032, at *4 (N.D. Cal. Feb. 19, 2013) (arguments not opposed are conceded).

[9] Even if they did, compliance with Rule 8 does not suffice where the alleged damages are not cognizable under California law, as Plaintiffs' own cases demonstrate. *See Ward v. Nat'l Entm't Collectibles Ass'n*, 2012 WL 12885073, at *6 (C.D. Cal. Oct. 29, 2012) (dismissing claim despite satisfying Rule 8 because California does not recognize emotional distress damages for fraud).

[10] Plaintiffs note that the jury determines "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." (Opp. at 12.) This precisely illustrates the problem. Plaintiffs' TAC does not contain any basis for determining whether Plaintiffs suffered any detriment.

*v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1029 (N.D. Cal. 2012) (conclusory allegation of contract damages did not satisfy Rule 8 where plaintiffs alleged unauthorized collection of personal information); *In re Zynga Privacy Litig.*, 2011 WL 7479170, at *2-3 (N.D. Cal. June 15, 2011) (same); *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 724-25 (N.D. Cal. 2014) (dismissing breach-of-contract claim where plaintiff failed to plead a cognizable basis for damages).  Plaintiffs' citations to tort cases where courts determined that plaintiffs plausibly pled emotional distress and tortious interference damages,[11] or contract cases concerning allegations of quantifiable monetary damages where a factual basis for calculating damages was facially obvious,[12] are inapposite.

**Nominal damages.**  Claiming nominal damages cannot cure this deficiency, as Facebook demonstrated in its Motion.  (Mot. at 16-18.)  Plaintiffs mainly rely on *In re Facebook Privacy Litigation*, 192 F. Supp. 3d 1053 (N.D. Cal. 2016),[13] but that case is not persuasive precedent here for the reasons detailed in Facebook's Motion.  (Mot. at 17-18.)  Further, numerous cases have held that nominal damages are only available where plaintiffs can first show ascertainable damages. *E.g., In re eBay Litig.*, 2012 WL 3945524, at *5 (N.D. Cal. Sept. 10, 2012) (availability of nominal damages does not eliminate the need to show actual damages for breach of contract in California); *accord Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 990–91 (N.D. Cal. 2015) ("Section 3360 sets forth the rule that a plaintiff who has suffered an injury, but whose damages are speculative, is entitled to nominal damages.").  Moreover, the California cases principally relied on by *In re Facebook Privacy Litigation* dealt with situations where plaintiffs lacked adequate proof of the

---

[11] *Smolinski v. Oppenheimer*, 2012 WL 2885175, at *3 (N.D. Ill. July 11, 2012) (plausibly alleged emotional distress damages in Fair Debt Collections Practices Act action); *Newland N. Am. Foods, Inc. v. Zentis N. Am. Operating, LLC*, 2013 WL 1870652, at *4 (N.D. Ind. May 3, 2013) (plausibly alleged tortious interference damages under Indiana law); *cf. Ward*, 2012 WL 12885073, at *6 (Rule 8 did not bar conclusory emotional distress damages for fraud but claim was nevertheless noncognizable under California law).

[12] *Exxon Mobil Corp. v. Tredegar Corp.*, 891 F. Supp. 2d 559, 566-67 (S.D.N.Y. 2012) (Plaintiffs provided "a factual basis" for damages and the court concluded that there was a basis for inferring monetary injury); *Job v. Simply Wireless, Inc.*, 160 F. Supp. 3d 891, 900 & n.10 (E.D. Va. 2015) (breach of contract for failure to make installment payments stated claim despite lack of specificity regarding the amount of damages).

[13] Plaintiffs cite *Fisher v. Biozone Pharmaceuticals, Inc.*, 2017 WL 1097198 (N.D. Cal. Mar. 23, 2017) (Opp. at 13), which merely quoted dicta from *In re Facebook Privacy Litigation* in considering the impact of plaintiffs' failure to plead damages on a preliminary injunction request.

*amount*, rather than the *existence*, of damages.  *See, e.g., Sweet v. Johnson*, 169 Cal. App. 2d 630, 632 (1959) (where plaintiffs failed to prove the amount of damages at trial, nominal damages were appropriate); *Ericson v. Playgirl, Inc.*, 73 Cal. App. 3d 850, 859 (1977) (same).[14]

**B.**     **Plaintiffs Fail to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II).**

Plaintiffs concede that their implied-covenant claim must allege more than a mere contract breach to survive a motion to dismiss.  (Opp. at 14.)  *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990).  But their flawed attempt to identify a non-duplicative basis for their claim fails, as it misinterprets applicable case law and seeks to impose obligations on Facebook not found in the contract.

**1.**     **Plaintiffs do not show they were deprived of the benefit of the bargain.**

Plaintiffs do not identify any manner in which Facebook deprived them of the benefit of the bargain that is not duplicative of their breach-of-contract claim.  The implied covenant is "a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract."  Plaintiffs' Opposition merely cites to identical transgressions of the alleged express covenants, demonstrating that this claim is duplicative.  (*Compare* Opp. at 17 (citing TAC ¶¶ 6, 60, 62, 64-67) *with* Opp. at 4 (citing TAC ¶¶ 60, 62-67).)  Merely recasting these same contractual breaches as depriving Plaintiffs of "contractual privacy benefit[s]" or "benefit of the bargain" (Opp. at 17, 13) does not change this result.

Nor do Plaintiffs' references to Facebook's "discretionary power over contractual administration" (*id*. at 18) and the general statement in the SRR that "[y]our privacy is very important to us" (*id*. at 17) give rise to an implied-covenant claim.  User privacy is and always has been very important to Facebook.  But nothing in that statement gives rise to an actionable contract claim, nor does anything in the TAC allege otherwise. And Plaintiffs do not explain what

---

[14] Moreover, many of the California cases awarding nominal damages have also done so after trial where the nominal damages award averted the inequitable result of defendants becoming the de facto prevailing party and being awarded attorneys' fees.  *E.g., Sweet*, 169 Cal. App. 2d at 632.

1   "discretionary power over contractual administration" is, where it is found in the contract, or how

2   it establishes a claim for breach of the implied covenant.

### 2.   Alleging a willful breach does not state an implied-covenant claim.

4   Plaintiffs argue that they have stated an implied-covenant claim because they have alleged

5   Facebook's conduct was "conscious and deliberate."  (Opp. at 14.)  But a breach-of-contract claim

6   is not transformed into an implied-covenant claim just by alleging a breach is willful.  Instead, case

7   law is clear that an implied-covenant claim is duplicative when plaintiffs, "relying on the same

8   alleged acts, simply seek the same damages or other relief."  *Careau*, 222 Cal. App. 3d at 1395.[15]

9   Plaintiffs cite no cases to the contrary.  And numerous cases have dismissed implied-covenant

10  claims as duplicative even where willful conduct in breaching a contract was alleged.  *See, e.g.*,

11  *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 726 (N.D. Cal. 2014) (dismissing implied-covenant

12  claim as duplicative despite allegations of bad-faith conduct); *Lakeland Tours, LLC v. Bauman*,

13  2014 WL 12570970, at *10 (S.D. Cal. Feb. 11, 2014) (same).  Here, Plaintiffs rely on the same

14  allegations of willful breach with respect to both their breach-of-contract and implied-covenant

15  claims.  (*See, e.g.*, TAC ¶¶ 6, 80, 83, 149.)

### 3.   Plaintiffs' other allegations seek to impose requirements not in the contract.

17  Plaintiffs' final argument is that Facebook breached the implied-covenant by failing to

18  disclose what information it retained about users.  But Plaintiffs cannot import a tort standard for

19  misleading disclosure into their contract claim, as their Opposition attempts to do.  Plaintiffs

20  concede that an implied-covenant claim "must rest upon the existence of some specific contractual

21  obligation"[16] (Opp. at 15), but fail to cite a single provision of the contract that imposes this

---

[15] *Architectural Res. Grp., Inc. v. HKS, Inc.*, 2013 WL 568921, at *6 (N.D. Cal. Feb. 13, 2013) did not consider whether the breach-of-contract and breach-of-implied-covenant claims were duplicative, as it dismissed both for failure to state a claim.  Plaintiffs cite *Mitsui Mfrs. Bank v. Super. Ct.*, 212 Cal. App. 3d 726 (1989), for factors that allegedly support recognition of an implied-covenant claim.  But Plaintiffs quotation is of factors that might take a contract outside of the ordinary commercial context and potentially lead to recovery in tort. And *Mitsui* ultimately *granted* summary judgment for defendant on an implied-covenant claim seeking tort damages.

[16] Plaintiffs misread Facebook's Motion, suggesting that Facebook wrongly imposed an obligation on Plaintiffs to identify obligations not in the contract to support their implied-covenant claim. (Opp. at 15.)  To the contrary, Facebook stated that Plaintiffs' allegations of extra-contractual

obligation.  Instead, they suggest that a duty arises automatically because Facebook has exclusive knowledge of its conduct, citing *In re Yahoo!*, 2017 WL 3727318, at *29.  But *In re Yahoo!* considered disclosure obligations in the context of a claim of fraud under California's unfair competition law and is therefore inapposite.[17]  As Facebook's authority makes clear, a failure to disclose can only lead to contractual liability where the contract imposes an obligation to disclose.  (Mot. at 20 (citing cases).)  Plaintiffs' Opposition does not locate this obligation in the SRR.

### 4.  Plaintiffs have not shown damages.

Plaintiffs argue again, as they do for their breach-of-contract claim, that they "plausibly allege the fact of damages."  (Opp. at 19.)  For reasons articulated above, that argument fails.

### C.  Plaintiffs' New Contractual Claims and Claims On Behalf of New Plaintiffs Do Not "Relate Back" and Are Therefore Barred By the Statute of Limitations.

Facebook's Motion demonstrated that Plaintiffs' new contract claims post-dating allegations in prior complaints do not satisfy the standard for relation-back of new claims under Rule 15(c)(1)(B), and the new class of plaintiffs do not satisfy the standard for relation-back of new plaintiffs under Rule 15(c)(1)(C) (as derived from the *Syntex* factors), and thus both are barred by the statute of limitations.  (Mot. at 21-25.)  Nothing in Plaintiffs' Opposition alters this analysis.

### 1.  Plaintiffs' allegations that Facebook breached contractual obligations entered-into after Class Period I[18] do not relate back.

Case law is clear that an amended complaint that asserts breaches of new contracts not previously alleged in prior complaints do not relate back under Rule 15(c)(1)(B).  (Mot. at 22-23 (collecting authorities).)  Instead of distinguishing this precedent, Plaintiffs mischaracterize the new contract allegations in the TAC as simply "new evidence," the addition of which they claim is permissible under Rule 15(c)(1)(B).  (Opp. at 22-23.)  But that is contradicted by the allegations in the TAC.  The TAC alleges that these newly identified Help Center pages are *part of the contract*

---

promises could not support a claim for breach of the implied covenant.  (Mot. at 19-20.)

[17] Plaintiffs' discussion of materiality for "failure to disclose" arises out of the tort standard, which is not applicable here.

[18] Class Period I relates to the class period ending September 26, 2011 asserted in the FAC and SAC.  Class Period II relates to the period from September 27, 2011 to "a later date to be determined upon the completion of discovery" (TAC ¶ 132), the TAC's proposed extension of the class period.

1  between the parties.  (TAC ¶¶ 61, 62, 65.)[19]

2        Alternatively, Plaintiffs argue that even if they have alleged new contract claims, these

3  contracts relate back to earlier contracts because the new contractual provisions are *similar* to ones

4  asserted in prior complaints.  (Opp. at 23.)  But similarities do not satisfy the relation-back doctrine,

5  as Facebook's Motion demonstrates.  (*See* Mot. at 23.)  Plaintiffs only address one case cited by

6  Facebook, grossly mischaracterizing *Oja v. U.S. Army Corps of Engineers*, 440 F.3d 1122, 1134

7  (9th Cir. 2006), by suggesting that the court rejected allegations in the new complaint because the

8  prior complaint was untimely.  (Opp. at 23-24.)  To the contrary, the *Oja* court performed the

9  relation-back analysis and held that "[t]he fact that the language in the two disclosures is identical

10  is inapposite because Oja's claims under the Privacy Act are based on the acts of disclosure

11  themselves, each of which is distinct in time and place, if not substance."  *Oja*, 440 F.3d at 1134.

12  Similarly, here, because the new Help Center pages that went live after the close of Class Period I

13  are distinct in time, place, *and* substance, it is irrelevant that the newly alleged contract provisions

14  are "similar" to those alleged in the SAC.  Nor can the newly alleged contractual obligations be

15  construed as part of the overall contract alleged in the SAC as Plaintiffs admit that these new

16  provisions only became effective as of the date printed on them (Opp. at 4)—September 27 and 28,

17  2011 (Exs. I, L, N, and M)—whereas the latest-in-time SRR contract alleged in Plaintiffs' SAC is

18  dated April 26, 2011 (Ex. D).  *See Gilbert St. Developers, LLC v. La Quinta Homes, LLC*, 174 Cal.

19  App. 4th 1185, 1193-94 (2009) (a later drafted document was not part of an earlier dated contract).

20        Facebook's Motion also demonstrated that relation-back with respect to new contract

21  allegations is improper because it had no notice of claims based on the new contracts.  (Mot. at 23.)

22  Plaintiffs' contention that Facebook has known of the "gravamen" of those claims since the SAC

23  was filed (Opp. at 24) fails.  Plaintiffs offer no support for their contention that notice of Plaintiffs'

24  allegations of breach of one contract as to a certain class of plaintiffs should be considered

25  equivalent to notice of breach of a separate contract as to a different class of plaintiffs.  Indeed, the

26  authority cited by Facebook is explicitly to the contrary.  (Mot. at 23.)

27

28  [19] Moreover, the Help Center pages that were in effect after Class Period I cannot serve as evidence of Facebook's breach of different Help Center "terms" that were in effect earlier.

2.      **Plaintiffs' additional Class Period II plaintiffs do not relate back.**

Plaintiffs offer two arguments in support of the TAC's addition of Class Period II plaintiffs—first, that the statute of limitations should be tolled for delayed discovery, and second, that the new class of plaintiffs relates back.  Both arguments fail.

a.      **Plaintiffs cannot allege tolling for delayed discovery.**

The TAC and earlier complaints do not support Plaintiffs' claim that they did not discover their cause of action with respect to new class members until April 2014. (Opp. at 20.)  Plaintiffs bear the burden of showing in their complaint that the delayed-discovery rule applies; Plaintiffs' failure to do that in the TAC dooms their argument.  *Darringer v. Intuitive Surgical, Inc.*, 2015 WL 4623935, at *4 (N.D. Cal. Aug. 3, 2015) (dismissing time-barred claim where complaint failed to allege sufficient facts supporting equitable tolling under the delayed-discovery rule).

Additionally, Plaintiffs' FAC directly contradicts their belated assertion in their Opposition that they discovered their cause of action in April 2014.  Plaintiffs claim that at the time of their initial complaint in May 2012, they "only had evidence of Facebook's breaches through September 25, 2011" and did not discover that the problem may have continued past that date until they obtained discovery in 2014 concerning the alleged use of the *datr* cookie post-logout. (*Id.* at 20.)  But Plaintiffs' FAC establishes that Plaintiffs knew this information since the inception of this litigation.  (*See* FAC ¶ 83 (Facebook "tracked logged out users with its *datr* tracking cookie alone, without the need for an additional Facebook cookie containing a Facebook user ID"); *id.* ¶ 15 (Facebook used the *datr* cookie at least as late as October 10, 2011).)  Thus Plaintiffs' own words establish that they suspected the basis for the enlarged class period at least by May 17, 2012.[20]  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 807 (Cal. 2005) (a cause of action accrues when a plaintiff "has reason at least to suspect a factual basis for its elements" (citation omitted)).  The analysis does not change because Plaintiffs received information in discovery that they claim supports previous allegations about the *datr* cookie.  *See Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 932 (1994) ("Aggrieved parties generally need not know the exact manner in which their

---

[20] Plaintiffs' suggestion that this information was added as soon as they learned of it is further belied by the fact that their November 29, 2015 SAC did not include these expanded allegations.

1   injuries were effected" for their cause of action to accrue. (citation omitted)).  Accordingly, the

2   claims of new class members are time-barred unless they relate back to Plaintiffs' SAC.

3                      **b.      Class Period II plaintiffs do not relate back.**

4          Plaintiffs further argue that even if the limitations period did expire prior to the filing of the

5   TAC, they can add new Class Period II Plaintiffs because they meet the three-factor *Syntex* test.

6   (Opp. at 20); *see In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 935 (9th Cir. 1996) (setting forth three-

7   factor test for the addition of new plaintiffs through extension of the class period).  They do not.

8   First, Plaintiffs do not and cannot cite a single line from the SAC to demonstrate how "the original

9   complaint gave Facebook adequate notice of the claims of the newly proposed plaintiffs," as the

10  first prong of *Syntex* requires.  Instead, Plaintiffs claim that "Facebook knew that the original

11  proposed class period ended on the date Plaintiffs incorrectly understood the offending conduct had

12  ended."  (Opp. at 21.)  But to the extent that this jumbled argument focuses on their speculation

13  about what Facebook may have known,[21] it misreads *Syntex*.  *Syntex* requires Plaintiffs to identify

14  allegations in their prior complaint sufficient to put Facebook on notice that additional individuals

15  would bring claims.  *See Willner v. Manpower Inc.*, 2014 WL 2939732, at *4 (N.D. Cal. June 30,

16  2014) (that defendant may have known additional individuals had claims was irrelevant because

17  "the limited class definition in the prior complaints" could not have put defendant on notice that

18  additional individuals would be a part of the action).  Similarly, as shown in its Motion, based on

19  the limited class definition in the prior complaints, Facebook could not have known that Plaintiffs

20  would seek to assert claims on behalf of newly identified Class Period II plaintiffs.[22]  (Mot. at 24.)

21         Plaintiffs argue that the second *Syntex* prong requiring an "identity of interests" with the

22  original class members is met because the Class Period I plaintiffs and Class Period II plaintiffs

23

---

24  [21] Plaintiffs' speculation is incorrect.  Since Plaintiffs have known of the facts underlying their
    Class Period II allegations since this case began—and indeed Plaintiffs' FAC was filed with insight
25  from more than thirty initial complaints drafted by other law firms— Facebook had no reason to
    suspect that Plaintiffs' limitation of their class was a mistake rather than a tactical decision.
26  [22] Plaintiffs cite *Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063, 1069 (S.D. Cal. 2015) in support of
27  their argument that Facebook had notice.  But in *Allen*, the court held that defendants were on notice
    of additional named plaintiffs who *had previously been putative class members*.  As the individuals
28  Plaintiffs seek to add here were not within the class defined in the SAC, *Allen* is inapplicable.

**DEF. FACEBOOK'S REPLY ISO MOTION TO DISMISS
CASE NO. 5:12-MD-02314 EJD**

allege the same conduct, and allege contract language that is "functionally the same." (Opp. at 21-22.)  But Plaintiffs provide no support for their argument and fail to address any of Facebook's authority demonstrating that differences between the circumstances and statements relied on by different groups of plaintiffs controvert an "identity of interests." (Mot. at 24.)  Indeed, both the conduct and contractual statements alleged by Plaintiffs differ between Class Periods I and II.  First, in Class Period I, Plaintiffs allege that user ID cookies were not cleared after a user logged out; however, Plaintiffs admit that this issue was resolved at the inception of Class Period II. (TAC ¶¶ 7-8, 105.)  Second, the allegedly controlling terms are different for Class Period I and II members.  Specifically, Class Period I plaintiffs rely on statements in the DUP and Help Center such as "[Facebook] receives . . . 'technical information' . . . [that] lets us know that you are logged into Facebook" (TAC ¶ 63), and "[i]f you are logged into Facebook, we *also* see your user ID number and email address" (TAC ¶ 64) that Plaintiffs do not allege were explicitly contravened.  Class Period II plaintiffs point to different statements, both in substance and kind, found only in the Help Center that do relate to the conduct Plaintiffs allege: "[w]hen you log out of Facebook, we remove the cookies that identify your particular account[.]" (TAC ¶ 62.)  Because Plaintiffs allege different conduct by Facebook, different contractual provisions, and different legal theories for Class Period I and Class Period II plaintiffs, the new plaintiffs do not share an "identity of interests."[23]

Finally, Plaintiffs fail to analyze the third element of *Syntex*—prejudice—instead arguing that they need not analyze this element because the "identity of interests" prong is met. (Opp. at 22.)  As Class Period II plaintiffs do not share an identity of interests, as explained above, Plaintiffs cannot rely on this theory to show that no prejudice will result.  As Facebook argued in its Motion, the addition of Class Period II plaintiffs undoubtedly will prejudice Facebook by belatedly changing the scope of discovery and the issues being litigated more than six years after the events precipitating this litigation. (Mot. at 25.)  Plaintiffs have offered no response to these arguments.

**III.   CONCLUSION**

For these reasons, Court should grant Facebook's Motion to Dismiss with prejudice.

---

[23] For the same reason, the claims of Class Period I and Class Period II plaintiffs are unlikely to be proven by the same kind of evidence, as Plaintiffs suggest. (Opp. at 23.)

1    Dated: October 27, 2017              COOLEY LLP

2

3                                          /s/ Matthew D. Brown

4                                         Matthew D. Brown
                                          Attorneys for Defendant
5                                         FACEBOOK, INC.

6

7

8    152285851

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28