**DiCELLO LEVITT GUTZLER LLC**
David A. Straite (admitted *pro hac vice*)
60 East 42nd Street, Suite 2400
New York, New York 10165
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Ten North Dearborn Street, 6th Fl.
Chicago, Illinois 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*

*Counsel for Plaintiffs*

**GRYGIEL LAW LLC**
Stephen G. Grygiel (admitted *pro hac vice*)
301 Warren Avenue, Suite 405
Baltimore, MD 21230
Tel.: (407) 505-9463
*sgrygiel@silvermanthompson.com*

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE FACEBOOK INTERNET TRACKING LITIGATION<br><br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 5:12-MD-2314-EJD<br><br>**NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(e)(1); AND APPROVING FORM AND CONTENT OF CLASS NOTICE, WITH SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Edward J. Davila<br>Courtroom 4, 5th Floor<br>Hearing Date: March 31, 2022<br>Time: 9:00 a.m. |

1

**NOTICE OF MOTION AND MOTION**

2

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

3

**PLEASE TAKE NOTICE** that on March 31, 2022, at 9:00 a.m. in Courtroom 4 of the

4

United States District Court for the Northern District of California, Robert F. Peckham Federal

5

Building & United States Courthouse, 280 South First Street, San Jose, California 95113, the

6

Honorable Edward J. Davila presiding, the Lead Plaintiffs[1] will, and hereby do, move for an Order

7

pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"): (i) preliminarily approving

8

the proposed Settlement and Settlement Agreement ("Agreement" or "Agr't"); (ii) certifying a class

9

for settlement purposes; (iii) approving the form and manner of notice to the Settlement Class; (iv)

10

approving the selection of the Settlement Administrator; and (iv) scheduling a Final Fairness

11

Hearing before the Court.

12

The proposed Settlement provides two forms of relief for the proposed Settlement Class:

13

injunctive relief and monetary relief.  For the ***injunctive relief***, Defendant Meta Platforms, Inc.,

14

formerly Facebook, Inc. ("Meta" or "Defendant") has agreed to sequester and delete all data that

15

Plaintiffs alleged was wrongfully collected during the Settlement Class Period. For the ***monetary***

16

***relief***, the proposed Settlement also establishes a fully non-reversionary Settlement Fund of **$90**

17

**million**. The Settlement, if approved, will also resolve a parallel class action in California State

18

Court.

19

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points

20

and Authorities set forth below, the accompanying Joint Declaration of David A. Straite and

21

Stephen G. Grygiel in Support of Plaintiffs' Motion for Preliminary Approval of Proposed

22

Settlement dated February 14, 2022 ("Joint Declaration"), and its attached exhibits (including the

23

Settlement Agreement dated February 14, 2022 and its attached exhibits and appendices), the

24

pleadings and records on file in this Action, and other such matters and argument as the Court may

25

consider at the hearing of this motion.

26

27

28

---

[1] All capitalized words are defined in Settlement Agreement, unless otherwise defined herein.

**STATEMENT OF ISSUES TO BE DECIDED**

1
2
3
4
5
6
7

1.      Whether the proposed Settlement is within the range of fairness, reasonableness and adequacy as to warrant: (a) the Court's preliminary approval; (b) certification of a Settlement Class for settlement purposes; (c) the dissemination of Notice of the Settlement's terms to Settlement Class Members; and (d) setting a hearing date for final approval of the Settlement as well as motions or other applications for Fees and Expense Award and for Service Awards;

8
9
10

2.      Whether the proposed forms of Notice and Notice Plan adequately inform Settlement Class Members of the terms of the Settlement and their rights with respect to the Settlement;

11
12

3.      Whether the selection of Angeion Group as Settlement Administrator should be approved;

13
14

4.      Whether the proposed distribution of the Settlement Fund should be preliminarily approved; and

15

5.      Whether the Claim Form and Opt-Out Forms are sufficient.

16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

II.     SUMMARY OF THE LITIGATION .........................................................................2

III.    MEDIATION .......................................................................................................4

IV.     THE PROPOSED SETTLEMENT.............................................................................4

V.      ARGUMENT ........................................................................................................5

        A.  Legal Requirements for Preliminary Settlement Approval..........................................5

        B.  Conditional Certification of the Settlement Class and Re-Appointment of Class
            Counsel is Warranted ........................................................................................7

            1.  Rule 23(a)'s Requirements Are Met ...............................................................8

            2.  Rule 23(b)'s Test is Met................................................................................10

        C.  Preliminary Approval of the Proposed Settlement Should be Granted.......................11

            1.  Proposed Settlement Results from Arms-Length, Non-Collusive
                Negotiated Resolution ...............................................................................12

                a. Proposed Settlement is Product of Mediator's Proposal and is
                   Supported by Experienced Counsel.........................................................12

                b. The Stage of the Proceedings, and the Discovery Completed
                   Support Preliminary  Settlement Approval.............................................14

            2.  Procedural Guidance Factors for Class Action Settlements are Satisfied..............14

                a.  Guidance 1: Differences, Range and Plan of Allocation ...................................15

                    i. Guidance 1a.-d.: Differences in the Proposed Settlement Class
                       and the Class Proposed in the SAC........................................................15

                    ii. Guidance 1e: The Proposed Settlement Provides a Favorable
                        Recovery and Falls Within the Range of Approvability................................16

                    iii. Guidance 1f.-g.: Allocation Plan Merits Preliminary Approval...................17

                b. Guidance 2: The Proposed Settlement Administrator ...........................................18

                c. Guidance 3: Proposed Notices to Settlement Class are Approvable...................19

                d.  Guidance 4 and 5: Opt-Outs and Objections.........................................................21

                e.  Guidance 6: The Anticipated Attorneys' Fees and Expenses Request ...............21

                f.  Guidance 7: The Proposed Settlement and Proposed Service
                    Awards Do Not Unjustly Favor any Class Members, including
                    Named Plaintiffs .................................................................................................22

g. Guidance 8: Cy Pres Recipients ................................................................ 24

h. Guidance 9: Proposed Timeline ................................................................ 24

i. Guidance 10: Class Action Fairness Act .................................................... 25

j. Guidance 11: Past Distributions ................................................................ 25

VI.   CONCLUSION .................................................................................................. 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2

**TABLE OF EXHIBITS TO THE JOINT DECLARATION
OF DAVID STRAITE AND STEPHEN GRYGIEL**

3

| EXHIBIT | DESCRIPTION |
|---|---|
| 1 | Settlement Agreement |
| 1A | List of Related and Consolidated Actions |
| 1B | Declaration of Steven Weisbrot of Angeion Group, LLC re: Proposed Notice Plan |
| 1C | Notice of Proposed Settlement of Class Action |
| 1D | Claim Form |
| 1E | Opt-Out Form |
| 1F | Proposed Order Preliminarily Approving Settlement, Authorizing Notice to the Class, and Setting Fairness Hearing |
| 1G | Proposed Order of Final Approval |
| 1H | Proposed Judgment |
| 2 | Biography of David A. Straite of DiCello Levitt Gutzler LLC |
| 3 | Biography of Stephen G. Grygiel of Grygiel Law LLC |
| 4 | Biography of Jason "Jay" Barnes of Simmons Hanly Conroy LLC |
| 5 | Biographies of Margery Bronster and Robert Hatch of Bronster Fujichaku Robbins |
| 6 | Biography of William H. "Billy" Murphy, Jr. of Murphy Falcon Murphy |
| 7 | Biography of Barry Eichen of Eichen Crutchlow Zaslow LLP |
| 8 | Biography of Paul Kiesel of Kiesel Law LLP |
| 9 | Biography of Stephen Gorny of the Gorny Law Firm, LC |
| 10 | Biography of James Frickleton of Bartimus Frickleton Robertson Rader |
| 11 | Biography of William M. Cunningham, Jr. of Burns, Cunningham & Mackey, P.C. |
| 12 | Biography of Andrew J. Lyskowski of Bergmanis Law Firm LLC |
| 13 | Chart of Selected Data Privacy Class Action Settlements |

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Page(s)**

4

**Cases**

5

*Ahmed v. Beverly Health and Rehab. Servs., Inc.*,
  2018 WL 746393 (E.D. Cal. Feb. 7, 2018) ........................................................................ 6, 12

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ......................................................................................................... 10, 11

*Baker v. SeaWorld Entertainment, Inc.*,
  No. 14-cv-02129-MMA-AGS, 2020 WL 4260712 (S.D. Cal. July 24, 2020) ...................... 13

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) ........................................................................................... 22

*Briseno v. ConAgra Foods, Inc.*,
  844 F. 3d 1121 (9th Cir. 2017) ................................................................................................. 7

*Briseno v. Henderson*,
  998 F. 3d 1014 (9th Cir. 2021) ................................................................................................. 7

*Bryan v. Amrep Corp.*,
  429 F. Supp. 313 (S.D.N.Y. 1977) .......................................................................................... 11

*Camilo v. Ozuna*,
  No. 18-cv-02842-VKD, 2020 WL 1557428 (N.D. Cal. April 1, 2020) ................................. 13

*Campbell v. Facebook, Inc.*,
  951 F. 3d 1106 (9th Cir. 2020) ............................................................................................... 13

*In re: Cathode Ray Tube (Crt) Antitrust Litig.*,
  MDL No. 1917, 2016 WL 6778406 (N.D. Cal. Nov. 16, 2016) ............................................. 17

*In re Chrysler-Dodge-Jeep Ecodiesel Mkting, Sales Practices,
  and Prods. Liab. Litig.*,
  No. 17-md-02777-EMC, 2019 WL 536661 (N.D. Cal. Feb. 11, 2019) .................................. 15

*Cohorst v. BRE Properties, Inc.*,
  No. 3:10-cv-2666-JM-BGS, 2011 WL 7061923 (S.D. Cal. Nov. 14, 2011) ......................... 21

*Cottle v. Plaid, Inc.*,
  20-cv-3056-DMR, 2021 WL 5415252 (N.D. Cal., Nov. 19, 2021)........................................ 20

*Ebarle v. Lifelock, Inc.*,
  No. 15-cv-258-HSG, 2016 WL 234364 (N.D. Cal. Jan. 20, 2016) .......................................... 9

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Eddings v. Health Net, Inc.,*
    No. CV-10-1744-JST (RZX), 2013 WL 3013867 (C.D. Cal. June 13, 2013) ...................... 23

*In re Equifax Inc. Consumer Data Security Breach Litigation,*
    1:17-MD-2800-TWT (N.D. Ga.) ........................................................................ 25

*In re Facebook, Inc. Internet Tracking Litig.,*
    956 F. 3d 589 (9th Cir. 2020)............................................................................ 3

*Fleisher v. Phoenix Life Ins. Co.,*
    2013 WL 12224042 (S.D.N.Y. July 12, 2013) ....................................................... 11

*In re Haier Freezer Consumer Litig.,*
    No. 5:11-CV-02911-EJD, 2013 WL 2237890 (N.D. Cal. May 21, 2013
    (citation omitted)) ........................................................................................ 7

*Hanlon v. Chrysler Corp.*
    150 F. 3d 1011 (9th Cir. 1998)................................................................... 6, 13

*Hanon v. Dataproducts Corp.,*
    976 F. 2d 497 (9th Cir. 1992)............................................................................ 9

*Harrison v. Bank of America Corp.,*
    Nos. 19-cv-00316-LB, 19-cv-02491-LB, 20-cv-02119, 2021 WL 5507175
    (N.D. Cal. Nov. 24, 2021) .............................................................................. 21

*Hawkins v. The Kroger Company,*
    337 F.R.D. 518 (S.D. Cal. 2020)....................................................................... 10

*Kang and Moses v. Wells Fargo Bank, N.A.,*
    Nos. 17-cv-06220-BLF, 21-cv-00071-BLF, 2021 WL 5826230
    (N.D. Cal. Dec. 8, 2021) ................................................................................ 21

*Kendall v. Odonate Therapeutics, Inc.,*
    2022 WL 118416 (N.D. Cal. Jan. 11, 2022) ......................................................... 6

*Lane v. Facebook, Inc.,*
    696 F. 3d 811 (9th Cir. 2012)........................................................................... 19

*In re Linkedin User Privacy Litig.,*
    309 F.R.D. 573 (N.D. Cal. 2015)................................................................. 22, 23

*Magadia v. Wal-Mart Associates, Inc.,*
    324 F.R.D. 213 (N.D. Cal. 2018)...................................................................... 11

*In re Magsafe Apple Power Litig.,*
    No. 5:09-CV-01911-EJD, 2015 WL 428105 (N. D. Cal. Jan. 30, 2015).................... 22

*Marshall v. Northrop Grumman Corp.,*
    No. 2:16-cv-06794-AB-JC, 2017 WL 6888281 (C. D. Cal. Nov. 2, 2017)................. 8

*In re Netflix Privacy Litig.*,
   No. 5:11-CV-00379 EJD, 2012 WL 2598819 (N.D. Cal. July 5, 2012) ................................ 15

*Noll v. eBay, Inc.*,
   309 F.R.D. 593 (N.D. Cal. 2015) ................................................................................... 8, 10

*Norcia v. Samsung Telecommunications America, LLC*,
   Case No. 14-cv-00582-JD, 2021 WL 3053018 (N.D. Cal. July 20, 2021) ............................ 20

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ......................................................................................... 12

*In re Online DVD-Rental Antitrust Litig.*,
   779 F. 3d 934 (9th Cir. 2015) ............................................................................... 9, 22, 23

*Ortega v. Aho Enterprises, Inc.*,
   No. 19-cv-00404-DMR, 2021 WL 5584761 (N.D. Cal. Nov. 30, 2021) ..................... 6, 12, 16

*In re Pac. Enters. Sec. Litig.*,
   47 F. 3d 373 (9th Cir. 1995) ......................................................................................... 16

*Parker v. Cherne Contracting Corp.*,
   No. 18-cv-01912-HSG, 2021 WL 5834227 (N.D. Cal. Dec. 9, 2021) ................................. 12

*Parkinson v Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008) ...................................................................................... 8

*In re Portal Software Sec. Litig.*,
   No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ................................. 14

*Radcliffe v. Experian Info. Solutions, Inc.*,
   715 F. 3d 1157 (9th Cir. 2013) ................................................................................ 22, 24

*In re Regulus Therapeutics, Inc.*,
   No. 3:17-cv-182-BTM-RBB, No. 3:17-cv-267-BTM-RBB, 2020 WL 6381898
   (S.D. Cal. Oct. 30, 2020) ............................................................................................. 18

*Rodriguez v. W. Publ'g Corp.*,
   563 F. 3d 948 (9th Cir. 2009) ................................................................................... 6, 16

*Rosado v. eBay Inc.*,
   No. 5:12-cv-04005-EJD, 2016 WL 3401987 (N.D. Cal. June 21, 2016) .............................. 22

*Schneider v. Chipotle Mexican Grill, Inc.*,
   No. 16-cv-02200-HSG, 2020 WL 511953 (N.D. Cal. Jan. 31, 2020) .................................. 15

*Schueneman v. Arena Pharmaceuticals, Inc.*,
   No. 3:10-CV-01959-CAB-(BLM), 2020 WL 3129566 (S.D. Cal. June 12,
   2020) ......................................................................................................................... 18

*Senne v. Kansas City Royals Baseball Corp.*,
    2021WL 3129460 (N.D. Cal. July 23, 2021) ........................................................... 8

*Spann v. JC Penney Corp.*,
    314 F.R. D. 312 (C.D. Cal. 2016) ................................................................. 11, 15

*Staton v. Boeing Co.*,
    327 F. 3d 938 (9th Cir. 2003)). ................................................................. 22, 23

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ....................................................... 6

*Tait v. BSH Home Appliances Corp.*,
    2015 WL 4537463 (S.D. Cal. July 27, 2015) .......................................... 11, 12

*Taylor v. Shutterfly, Inc.*,
    No. 5:18-cv-00266-BLF, 2021 WL 5810294 (N.D. Cal. Dec. 7, 2021) ................. 20

*In re Tea Station Investment, Inc.*,
    2021 WL 4988436 ....................................................................................... 8

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*,
    209 F.R.D. 159 (C.D. Cal. 2002) ................................................................. 9

*In re Tik Tok, Inc. Consumer Privacy Litig.*,
    MDL No. 2498, Master Docket No. 20 C 4699, 2021 WL 4478403 (N.D. Ill.
    Sept. 30, 2021) ....................................................................................... 17

*Ung, et al. v. Facebook, Inc*.,
    112-cv-217244 (Cal. Super. Ct.) ................................................................. 2

*Van Bronkhorst v. Safeco Corp.*,
    529 F. 2d 943 (9th Cir. 1976) ..................................................................... 6

*Victorino v. FCA US LLC*,
    322 F.R.D. 403 (S.D. Cal. 2017) ................................................................. 10

*Villegas v. J.P. Morgan Chase & Co.*,
    No. CV-09-00261 SBA (EMC), 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ................. 13

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    No. 2672, CRB, 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ............................. 14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................. 8

*Wang v. Chinese Daily News*,
    737 F. 3d 538 (9th Cir. 2013) ..................................................................... 7

*In re: Yahoo! Inc. Customer Data Security Breach Litig.*,
    No. 16-MD-02572-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) .............................. 20

*Zinser v. Accufix Research Instit., Inc.*,
    253 F. 3d 1180, *amended by* 273 F. 3d 1266 (9th Cir. 2001) ................................... 11

**Statutes**

Cal. Civil Code § 1572 .......................................................................................................... 3

Cal. Civil Code § 1573 .......................................................................................................... 3

Cal. Civil Code § 1750 .......................................................................................................... 3

Cal. Penal Code § 484 ........................................................................................................... 3

Cal. Penal Code § 496 ........................................................................................................... 3

Cal. Penal Code § 502 ........................................................................................................... 3

Cal. Penal Code § 630 ........................................................................................................... 3

Violation of Cal. Bus, and Prof. Code § 17200 (UCL) ......................................................... 3

**Other Authorities**

Fed. R. Civ. P. 23(a) .............................................................................................................. 7

Fed. R. Civ. P. 23(b)(3) ......................................................................................................... 8

Fed. R. Civ. P. 23(b)(3)(C)-(D) ........................................................................................... 11

Fed. R. Civ. P. 23(e)(1) ........................................................................................................ 19

Fed. R. Civ. P. 23(g)(1)(A)(i) .............................................................................................. 10

Fed. R. Civ. P. 23(g)(1)(A)(iii) ........................................................................................... 10

Fed. R. Civ. P. 23(g)(1)(A)(iv) ........................................................................................... 10

Federal Trade Commission, <u>Consumers and Class Actions: A Retrospective and
    Analysis of Settlement Campaigns</u> (Sept. 2019) ......................................................... 17

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION AND SUMMARY OF ARGUMENT**

Named Plaintiffs Perrin Davis, Dr. Brian Lentz, Michael Vickery and Cynthia Quinn (collectively "Named Plaintiffs") respectfully request entry of the proposed Preliminary Approval Order, attached as Exhibit F to the Settlement Agreement.  The Preliminary Approval Order will: (i) grant preliminary approval of the Settlement on the terms and conditions stated in the Settlement Agreement; (ii) provisionally certify a Settlement Class and appoint Lead Counsel; (iii) approve the form and manner for providing notice to the Settlement Class of the proposed Settlement; (iv) approve the parties' joint selection of the Settlement Administrator; and (v) schedule the date for the Final Fairness Hearing and set the schedule for various deadlines in connection with the Settlement.

The proposed Settlement provides two forms of relief for the class. Standing alone, each would be sufficient to support settlement approval. Combined, they are unprecedented:

- *Injunctive Relief*: Defendant Meta Platforms, Inc., formerly Facebook, Inc. ("Meta" or "Defendant") has agreed to sequester and delete the data that Plaintiffs alleged was wrongfully collected during the Settlement Class Period. Such relief represents the "**gold standard**" of relief in data privacy class actions alleging improper data collection.

- *Monetary Relief*: The proposed settlement also establishes a fully non-reversionary Settlement Fund of **$90 Million**, which if approved, will be one of the ten largest data privacy class action settlements ever. *See* Joint Declaration, **Exhibit 13** (chart of data privacy class action settlements)**.** Plaintiffs calculate that the Settlement Fund represents disgorgement of at least 100% of the additional net profits during the Settlement Class Period related to the data the Lead Plaintiffs alleged was wrongfully obtained.

Even before the Settlement was reached, this litigation had already profoundly improved privacy rights. The Ninth Circuit clarified that when personal data is unlawfully copied and monetized, the result is economic harm (not just privacy harm) even if the value of the data in plaintiffs' hands does not diminish. Before the Ninth Circuit's ruling, courts were split regarding the question of whether economic harm required consequential diminution of the value of the data. The Ninth Circuit also ruled that Facebook is not a party to the communications that it allegedly intercepted within the meaning the Wiretap Act, firmly establishing that such data collection

requires actual consent. Defendant sought Supreme Court review, which was denied last year.

The proposed Settlement was also fully informed by discovery over several years and was made possible with the assistance of a leading mediator, Randall Wulff, over three sessions. *Id.* ¶¶ 19-23. Following mediation, the parties continued to negotiate the injunctive relief (among other provisions) over six months. *Id.* ¶ 24. The proposed Settlement is not the product of collusion: as noted below and in the Joint Declaration, no clear sailing (Defendant has the right to be heard on any fee application, including the right to oppose) clause exists and the Named Plaintiffs were not even informed of the proposed Service Awards until after they considered the deal terms and approved.[2] *Id.* ¶ 25. The selection of the proposed Claims Administrator followed competitive bidding and was jointly agreed by both Class Counsel and Defendant. *Id.* ¶¶ 26-27. Accordingly, the proposed Settlement is fair, adequate and reasonable, such that notice of the Settlement's terms should be disseminated to Settlement Class Members and a Final Fairness Hearing scheduled finally to approve the proposed Settlement.

## II.    SUMMARY OF THE LITIGATION

Illustrating the perseverance of Named Plaintiffs and Lead Counsel brought to this case, litigation began ten (10) years ago with the MDL Transfer Order of February 8, 2012. (Dkt. # 1). Having consensually ordered the leadership structure for the consolidated cases, Class Counsel and their colleagues consulted with three technology and privacy experts, Joint Decl. ¶ 28, carefully researched and drafted in succession three extensive Complaints describing in detail the nature of the alleged privacy violations, and briefed and argued Motions to Dismiss on all three Complaints. *See* Dkt. Nos. 18, 35, 44, 52-55, 59, 87 (First Amended Consolidated Class Action Complaint ("FAC")); Dkt. Nos. 90-93, 101, 104-105, 109, 119, 148 (Second Amended Consolidated Class Action Complaint ("SAC")); Dkt. Nos. 157, 162-163, 168, 171, 174 (Third Amended Consolidated Class Action Complaint ("TAC")).

The result of deep legal research and factual analysis, the FAC was some 43 pages long,

---

[2] Named Plaintiffs in the parallel State Court Action, *Ung, et al. v. Facebook, Inc.*, 112-cv-217244 (Cal. Super. Ct.), agree with the relief sought in this motion and also signed the Settlement Agreement.

contained 120 paragraphs of factual allegations, and alleged eleven substantive Counts.[3]  The SAC was some 57 pages long, set forth 154 paragraphs of factual allegations, and alleged eleven Counts.[4] In light of the Court's Orders dismissing the FAC (Dkt. # 87) and SAC (Dkt. # 148), the TAC set forth 110 paragraphs of factual allegations, and only two counts: Breach of Contract (Count I), and Breach of the Covenant of Good Faith and Fair Dealing (Count II), as allowed by the Court.

Plaintiffs undertook and responded to written discovery, Joint Decl. ¶ 29, briefed a Motion to Compel (Dkt. Nos. 110, 114-115, 141-142), briefed Defendant's Motion to Stay Discovery (Docket Nos. 108, 111, 112), established a document database, reviewed Defendant's productions of documents, and, before settlement was reached, had been negotiating with Defendant about the custodians and search terms for additional document production from Defendant.

Plaintiffs filed, briefed and argued an appeal to the Ninth Circuit. That appeal resulted in a ruling of first impression in the Ninth Circuit that "Facebook is not exempt from liability as a matter of law under the Wiretap Act or CIPA as a party to the communication." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F. 3d 589, 608 (9th Cir. 2020). Further, the Ninth Circuit's ruling found that Named Plaintiffs had sufficiently alleged economic harm and reversed the dismissal as to a number of Named Plaintiffs' other claims, listed below.  Underscoring its importance in privacy rights litigation, by Plaintiffs' count the Ninth Circuit's ruling has already been cited more than 50 times in reported cases just in the past 18 months.

Defendant then filed a petition for a writ of certiorari to the United States Supreme Court. Plaintiffs retained and worked with noted Supreme Court counsel (Gupta Wessler PLLC), jointly developing and briefing the arguments in opposition to the petition. The Supreme Court declined

---

[3]  Wiretap Act (Count I); SCA (Count II); CFAA (Count III); Invasion of Privacy (Count IV); Intrusion Upon Seclusion (Count V); Conversion (Count VI); Trespass to Chattels (Count VII); Violation of Cal. Bus, and Prof. Code § 17200 (UCL) (Count VIII); Cal. Penal Code § 502 (Count IX); Cal. Penal Code § 630 (CIPA) (Count X); and Cal. Civil Code § 1750 (CLRA) (Count XI).

[4]  Wiretap Act (Count I); SCA (Count II); CIPA (Count III); Invasion of Privacy (Count IV); Intrusion Upon Seclusion (Count V); Breach of Contract (Count VI); Breach of the Duty of Good Faith and Fair Dealing (Count VII); Civil Fraud/ Cal. Civil Code §§ 1572 and 1573; Trespass to Chattels (Count IX); Penal Code § 502 (Count X); and Larceny/Cal. Penal Code §§ 484 and 496.

to grant certiorari, and the case was remanded with eight (8) claims for litigation.[5]

## III.    MEDIATION

Plaintiffs and Defendant next agreed to mediate the case before Randy Wulff, a highly respected mediator. Joint Decl. ¶ 19. Further, Plaintiffs engaged an economic consultant to perform economic analyses of several alternative damages models, including the approximate net profits Defendant received from the information Plaintiffs alleged that Defendant improperly collected; royalty value of a license to monitor Internet browsing; and restitution models. Joint Decl. ¶ 28.

The parties briefed their positions for Mr. Wulff and engaged in an initial seven (7) hour mediation on April 27, 2021. Joint Decl. ¶ 19. Interim Lead Counsel appointed a Settlement Committee consisting of Lead Counsel plus former Hawai'i Attorney General Margery Bronster, Laurence King, Robert Hatch and Jay Barnes. Also assisting was counsel for State Court plaintiffs, Renee Wicklund. Joint Decl. ¶ 20. Mr. Wulff helped guide substantial additional document discovery in aid of mediation. Joint Decl. ¶ 21. Plaintiffs submitted a supplemental mediation brief on July 12, 2021, and the parties mediated again on July 13, 2021, this time for approximately ten (10) hours.  Joint Decl. ¶ 22. In a final effort to resolve the case consensually, the parties mediated again on July 23, 2021. After almost four (4) more hours of negotiations, the Parties agreed to accept a Mediator's proposal and reached a settlement agreement in principle. Joint Decl. ¶ 23. Following the agreement in principle, the parties spent approximately six (6) months negotiating the contours of the injunctive relief, vetted claims administrators, and evaluated the class member data set to transfer for claims processing. Joint Decl. ¶ 24.

## IV.    THE PROPOSED SETTLEMENT

The Settlement provides an excellent result for Settlement Class Members who do not opt out, including the following terms: (1) **Monetary Consideration --** $90 million in a non-reversionary Settlement Fund (*see* Agr't §§ 1.42, 4.1, 7.8) ; (2) **Injunctive Relief** - Defendant committed to expunge the data Plaintiffs alleged had been impermissibly gathered, subject only to preservation of that data in a restricted-access location for this litigation pending final judgment

---

[5] (1) Wiretap Act (2) CIPA (3) intrusion upon seclusion; (4) invasion of privacy; (5) statutory larceny; (6) trespass; (7) Cal. Computer Crime Law; and (8) statutory fraud.

and dismissal of all appeals, and pledged not to use that data for any other purposes (*see* Agr't §§ 1.42, 5.1 – 5.6); (3) **Scope of Releases** – commensurate with the Settlement Consideration paid by the Defendant (*see* Settlement Agreement § 1.42), Settlement Class Members who do not opt-out will release only claims that were asserted or could have been asserted in the Actions and that arose during the Class Period (*see* Agr't §§ 1.33, 1.36, 1.37, 9); (4) **Notice** – Lead Counsel chose a "belt and suspenders" approach that includes publication notice and direct notice, either of which alone is robust. In Lead Counsel's judgment, this approach is appropriate given the vintage of the case. The vast majority of the Settlement Class Members will receive direct email notice of the Settlement, which will be supplemented by publication notice and Settlement Website Notice (*see* Agr't §§ 1.27, 1.29, 1.45, 1.46, 7.2) ; (5) **Administrative Costs** - the costs of Notice and the Settlement Administrator would be paid by the Settlement Fund (*see* Agr't § 7.6) ; (6) **Settlement Class Definition** – all persons who, between April 22, 2010 and September 26, 2011, inclusive, were Facebook Users in the United States that visited non-Facebook websites that displayed the Facebook Like button, with no attestation requirement that Settlement Class Members with active accounts affirmatively state that they visited non-Facebook pages containing the Facebook Like button (*see* Agr't § 1.10); (7) **Service Awards** - the Named Plaintiffs in the Federal Court Action and in the State Court Action may receive Service Awards upon Lead Counsel's application to the Court (amount of the request may not exceed $5,000 per Named Plaintiff) (*see* Agr't §§ 1.39, 11); (8) **No Clear Sailing** – Lead Counsel will move for a Fee and Expense Award and Defendant retains the right to object, oppose, support or otherwise respond, for any good faith reason, to any such Motion (*see* Agr't § 10.1); and (9) **Unconditional Settlement** - the Settlement is not conditioned on the Court's award of Attorneys' Fees or Expenses or any Service Awards, or on the award of any amount of Attorneys' Fees and Expenses or Service Awards. *See* Agr't § 10.4. As noted in the proposed Notice, Plaintiffs intend to request up to 29% of the Settlement Fund, plus reasonable expenses, but Defendant retains the right to oppose.

## V.   ARGUMENT

### A.  *Legal Requirements for Preliminary Settlement Approval*

"In the Ninth Circuit, there is a 'strong judicial policy that favors settlements' of class

actions." *Ortega v. Aho Enterprises, Inc*., No. 19-cv-00404-DMR, 2021 WL 5584761, at * 5 (N.D. Cal. Nov. 30, 2021) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). The judiciary's foundational pro-settlement principle is rooted in the public interest. *See Van Bronkhorst v. Safeco Corp.*, 529 F. 2d 943, 950 (9th Cir. 1976) ("[T]here is an overriding public interest in settling and quieting litigation…***particularly true in class action suits***." (emphasis added)).

Preliminary settlement approval "has both a procedural and a substantive component." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). "Courts often begin by examining the process that led to the settlement's terms to ensure that those terms are 'the result of vigorous, arms-length bargaining' and then turn to the substantive terms of the agreement." *Ahmed v. Beverly Health and Rehab. Servs., Inc.*, 2018 WL 746393, at * (E.D. Cal. Feb. 7, 2018) (citing *West v. Circle K Stores, Inc.*, Civ. No. 04-438 WBS GGH, 2006 WL 1652598, at * 11 (E.D. Cal. June 13, 2006)). First, the Court must find that a Rule 23 class exists. *Id.* If, as here, it does, the Court then turns to the familiar Rule 23 requirements, analyzing whether the proposed settlement "is fundamentally fair adequate and reasonable." *Hanlon v. Chrysler Corp.* 150 F. 3d 1011, 1026 (9th Cir. 1998). The Court is not looking to see if the settlement might have been better, but, rather, whether the settlement's terms "fall within the range of possible approval." *Ortega*, 2021 WL 5584761, at *5. This preliminary approval "range of reasonableness" inquiry does not require the Court to "specifically weigh[ ] the merits of the class's case against the settlement amount and quantif[y] the expected value of fully litigating the matter." *Rodriguez v. W. Publ'g Corp.*, 563 F. 3d 948, 965 (9th Cir. 2009); *accord*, *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 118416, at * 6 (N.D. Cal. Jan. 11, 2022).

The Court must find that the settlement is "the product of an arms-length, non-collusive, negotiated resolution[ ]." *Id.* Preliminary approval is warranted where the Court finds that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Tableware*, 484 F. Supp. 2d at 1079 (citing Manual For Complex Litigation 2d § 30.44 (2d ed. 1985)). Crucially

1  important in this threshold inquiry is the presence – or absence – of "red flags" suggesting that the

2  settlement is in some way "collusive" or otherwise improper.  *See Briseno v. Henderson*, 998 F. 3d

3  1014, 1019 (9th Cir. 2021).   Such "red flags" can include: "(1) 'when counsel receive[s] a

4  disproportionate distribution of the settlement;' (2) 'when the parties negotiate a clear sailing

5  arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon

6  attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns

7  unawarded fees to the defendant, rather than the class." *Id.* at 1023 (quoting *In re Bluetooth Headset*

8  *Prods. Liab. Litig.*, 654 F. 3d 935, 947 (9th Cir. 2011). None of "these so-called *Bluetooth* factors,"

9  or any other factors suggesting "potential collusion," appear in the proposed Settlement. *Briseno*,

10  998 F. 3d at 1023.

11      Where the proposed settlement fulfills the required criteria for preliminary approval, the

12  Court will "schedule[e] a fairness hearing where it will make a final determination of the class

13  settlement."  *In re Haier Freezer Consumer Litig.*, No. 5:11-CV-02911-EJD, 2013 WL 2237890,

14  at * 3 (N.D. Cal. May 21, 2013 (citation omitted)).

15      **B. *Conditional Certification of the Settlement Class and Re-Appointment of Class***
16      ***Counsel is Warranted***

17      The Settlement is conditioned upon the Court's approval, for settlement purposes only, of

18  a Settlement Class consisting of "All persons who, between April 22, 2010 and September 26,

19  2011, inclusive, were Facebook Users in the United States that visited non-Facebook websites that

20  displayed the Facebook Like button." Agr't. § 1.37. Facebook can determine class membership

21  internally for current subscribers and attestations are only required for former subscribers.[6]

22      Class certification under Rule 23 requires two steps.  First, the plaintiff must show that the

23  numerosity, commonality, typicality and adequacy requirements are satisfied.  *See* Fed. R. Civ. P.

24  23(a).  The Court applies a "'rigorous analysis.'" *Wang v. Chinese Daily News*, 737 F. 3d 538, 542

25  (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). Second, the

26  plaintiff must demonstrate satisfaction of at least one of the Rule 23(b) requirements. Here, that is

---

27  [6]  *Briseno v. ConAgra Foods, Inc*., 844 F. 3d 1121, 1133 (9th Cir. 2017) (certification appropriate
28  even where class membership relies on class member's self-identification).

the predominance and superiority mandate of Rule 23(b)(3), that "questions of law or fact common to Class Members predominate over any questions affecting only individual members, and …[that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## 1. *Rule 23(a)'s Requirements Are Met*

**Numerosity.** Rule 23(a)(1)'s numerosity requirement means that a proposed class must be "so numerous that joinder of all members is impracticable." With over 124 million Settlement Class Members, based on Defendant's internal data, numerosity is satisfied.

**Commonality.** Rule 23(a)(2)'s commonality requirement entails a showing that "there are questions of law or fact common to the class." For Rule 23(a)(2) purposes, a single common question suffices (*see Wal-Mart*, 564 U.S. at 359), if it is "of such a nature that it is capable of classwide-resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. "[T]he threshold for meeting the commonality requirement is relatively low." *Senne v. Kansas City Royals Baseball Corp.*, 2021WL 3129460, at * 18 (N.D. Cal. July 23, 2021). *See also Marshall v. Northrop Grumman Corp.*, No. 2:16-cv-06794-AB-JC, 2017 WL 6888281, at * 6 (C. D. Cal. Nov. 2, 2017) (commonality is permissive standard (citation omitted)); *Parkinson v Hyundai Motor Am.*, 258 F.R.D. 580, 594 (C.D. Cal. 2008) (commonality is low bar).

What matters for commonality is "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350-351. *Accord*, *Noll v. eBay, Inc.*, 309 F.R.D. 593, 603 (N.D. Cal. 2015). Whether the Defendant tracked Facebook users when those users visited non-Facebook pages containing the Facebook Like button is a common issue that is central to the validity of all of the Settlement Class Members' claims. Here the "'common issues'" are "'of sufficient importance to the case that…the most efficient method of determining the rights of the parties is through a class action.'" *In re Tea Station Investment, Inc.*, 2021 WL 4988436, at * 13 (C.D. Cal. October 26, 2021 (quoting *Krzneskiak v. Cendant Corp.*, 2007 WL 1795703, at * 7 (N.D. Cal. June 20, 2007)). Commonality is satisfied.

**Typicality.** Rule 23(a)(3) requires that "the claims or defenses of the representative parties

are typical of the claims or defenses of the class." The typicality requirement "assure[s] that the interest[s] of the named representative[s] align[ ] with the interests of the class." *Ebarle v. Lifelock, Inc.*, No. 15-cv-258-HSG, 2016 WL 234364, at * 4 (N.D. Cal. Jan. 20, 2016) (citing *Hanon v. Dataproducts Corp.*, 976 F. 2d 497, 508 (9th Cir. 1992)). Typicality's test: "whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F. 2d at 508. Like commonality, typicality has a "'low threshold.'" *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 165 (C.D. Cal. 2002) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F. 3d 154, 182 (3d Cir. 2001)).

Satisfying the typicality requirement can be done through either plaintiff-focused (same or similar injury) or defendant-focused (same or similar conduct towards class members) showings. Either approach here confirms typicality is satisfied. All Settlement Class Members suffered essentially the same injury –Defendant's alleged tracking of their cyberspace comings and goings. Defendant behaved the same way towards all class members in performing that tracking, including the Named Plaintiffs.

**Adequacy.** Rule 23(a)'s adequacy requirement is two-fold. First, no conflicts of interest can exist between the class members on one hand and, on the other hand, the Named Plaintiffs and Lead Counsel. Second, the Named Plaintiffs and Lead Counsel must show they will vigorously pursue the case on the class's behalf. *See Ebarle*, 2016 WL 234364, at * 4 (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 462 (9th Cir. 2000)).

Both prongs of Rule 23(a)(4)'s adequacy test are met here. Only a "fundamental" conflict going "to the heart of the litigation" will prevent a finding of Rule 23(a)(4) adequacy. *In re Online DVD-Rental Antitrust Litig.*, 779 F. 3d 934, 942 (9th Cir. 2015). No fact shows or inference suggests any, let alone "fundamental," conflict of interest between the absent class members and the Named Plaintiffs and Lead Counsel.

The track record in this case shows that Named Plaintiffs and Lead Counsel have and will continue to be fully committed to prosecuting the case for the benefit of the entire class. *See*

*Hawkins v. The Kroger Company*, 337 F.R.D. 518, 540 (S.D. Cal. 2020) ("lengthy and contentious proceedings thus far demonstrate Plaintiff's counsel's vigorousness"). Lead Counsels' long record of experience in class actions, and privacy rights class actions in particular, provides further support for a finding of Rule 23(a)(4) adequacy. Joint Decl. Exs. 2-4.

Finally, analysis under Rule 23(g), which is part of the Rule 23(a)(4) adequacy analysis (*see Victorino v. FCA US LLC*, 322 F.R.D. 403, 406 (S.D. Cal. 2017)) shows the adequacy requirement is met. Lead Counsel have done a great deal of work, over many years, "identifying or investigating potential claims" (Fed. R. Civ. P. 23(g)(1)(A)(i)); has, as their resumes demonstrate, demonstrable experience and has achieved substantial success in complex litigation and class actions, including privacy rights litigation (Fed. R. Civ. P. 23(g)(1)(A)(i)); possesses extensive "knowledge of the applicable law" (Fed. R. Civ. P. 23(g)(1)(A)(iii)); and has committed enormous resources, in time, work, and hard costs "to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(iv).

## 2. **Rule 23(b)'s Test is Met**

Named Plaintiffs seek conditional certification under Rule 23(b)(3), authorizing a class action where: (1) questions of law and fact common to the class members predominate over questions pertaining only to individual class members, and (2) a class action is superior to other adjudicative methods in achieving fair and efficient litigation of the controversy. Every Settlement Class Member suffered substantially the same type of injury from the same or substantially the same conduct by the Defendant. This uniform and class-unifying predicate question can be resolved for all Settlement Class Members in a single class-wide adjudication.

Named Plaintiffs must also show that a class action is the "most efficient and effective means of resolving the controversy." *eBay*, 309 F.R.D. at 604 (quoting *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010)). A class action is the most efficient adjudicative procedure here, given the vast number of Settlement Class Members and the centrality of the predominant and class-unifying common questions.

Nor does the theoretical availability of substantial individual damages mitigate against a finding of superiority. While a principal purpose of the class device is the aggregation of small claims that are uneconomic to litigate (*see Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617

(1997)), the theoretical availability of non-trivial damages recoverable by individual litigants is no bar to class certification. *See Fleisher v. Phoenix Life Ins. Co.*, 2013 WL 12224042, at * 17 (S.D.N.Y. July 12, 2013) ("the existence of large individual claims that are sufficient for individual suits is no bar to a class when the advantages of unitary adjudication exist to determine the defendant's liability" (quoting *Board of Trustees of the AFTRA Ret. Fund v. J.P. Morgan Bank*, 269 F.R.D. 340, 355  (S.D.N.Y. 2010)); *accord*, *Bryan v. Amrep Corp.*, 429 F. Supp. 313, 318 (S.D.N.Y. 1977) ("Where there is a need to remedy a common legal grievance, and where a class action serves to achieve economies of time, effort and expense, it is 'superior' to other forms of litigation even though individual claims are large.").

First, the potential availability of statutory damages and attorneys' fees awards under the Wiretap Act do not undermine a finding of superiority. *See Zinser v. Accufix Research Instit., Inc.*, 253 F. 3d 1180, 1190-1191, *amended by* 273 F. 3d 1266 (9th Cir. 2001); *accord*, *Magadia v. Wal-Mart Associates, Inc.*, 324 F.R.D. 213, 226 (N.D. Cal. 2018) (wage and hour case; rejecting defendant's argument that superiority was unmet because of potentially large damages "in the multiple thousands of dollars" available to individual litigants). Second, whatever damages any individual litigant might theoretically recover, the difficulty of the legal and factual issues – as reflected in the case's long journey through this Court, the Ninth Circuit, to the United States Supreme Court and back - individual litigations here are not just impractical but highly unlikely to be brought in the first place. Third, any individual Settlement Class Member can opt out of the Settlement Class and pursue individual litigation.[7]

### C.  *Preliminary Approval of the Proposed Settlement Should be Granted*

A cognate of the "strong judicial policy favoring class settlements," *Tait v. BSH Home Appliances Corp.*, 2015 WL 4537463, at * 4 (S.D. Cal. July 27, 2015), is the principle that the

---

[7] "[I]n the context of settlement, the other requirements of Rule 23(b)(3), such as 'the desirability or undesirability of concentrating the litigation of the claims in the particular forum' and 'the likely difficulties in managing a class action[,]' *see* Fed. R. Civ. P. 23(b)(3)(C)-(D), 'are rendered moot and are irrelevant.'" *Spann v. JC Penney Corp.*, 314 F.R. D. 312, 323 (C.D. Cal. 2016) (quoting *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 444 (E.D. Cal. 2013); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)

reviewing Court's role does not extend to "second-guess the agreement's terms." *Id.* (citing *Officers for Justice*, 688 F. 2d at 625).  After all, settlement's "very essence…is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (quoting *Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977)).  And "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'" *Parker v. Cherne Contracting Corp.*, No. 18-cv-01912-HSG, 2021 WL 5834227, at * 5 (N.D. Cal. Dec. 9, 2021) (quoting *Rodriguez v. West Pub. Corp.*, 563 F. 3d 948, 963 (9th Cir. 2009)).

Where, as here, "the settlement agreement is the result of formal and informal settlement negotiation, including the voluntary exchange of extensive information and documents related to claims in [the case]…the decision to settle was informed by the time and expense that both sides would incur in the course of further litigation" the Court should "see[ ] no reason to second-guess counsel's determination that settlement is in the best interest of the class."  *Ahmed*, 2018 WL 746393, at * 9 (citing *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 942 (N.D. Cal. 2013), as "holding that a settlement reached after informed negotiations 'is entitled to a degree of deference as the private consensual decision of the parties'" (quoting *Hanlon*, 150 F. 3d at 1027)).

As the lengthy docket shows, this case's litigation future carried a number of serious risks.  Those risks permeated class certification, summary judgment and trial.  This Settlement, on the other hand, produces an immediate cash benefit to Settlement Class Members, is undeniably a favorable resolution of the Actions and eliminates the risk that after years of continued litigation and appeals, the Settlement Class Members might receive nothing.

### 1.  Proposed Settlement Results from Arms-Length, Non-Collusive Negotiated Resolution

#### a.  Proposed Settlement is Product of Mediator's Proposal and is Supported by Experienced Counsel

"The Ninth Circuit 'put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution' in approving a class action settlement."  *Ortega* 2021 WL 5584761, at * 9 (quoting *Rodriguez*, 563 F. 3d at 965).  This is just such a case.  It was litigated

over almost a decade.  Settlement ultimately came after days of negotiations over three separate and intense mediation sessions by Zoom conferences on April 27, 2021; July 13, 2021; and July 23, 2021.  Each session was conducted by Randy Wulff, a highly respected mediator well-versed in the strengths and weaknesses of each side's arguments.  Numerous other settlement communications were interspersed with the actual mediations. The final dollar amount of the Settlement was based on the Mediator's proposal.

No discussion of attorneys' fees and expenses occurred in any of the Mediation sessions. The Parties and Mediator proceeded on the understanding that, at the appropriate time, Class Counsel would make an application for a Fee and Expense Award from the Settlement Fund.

The crucial independent role played by Mr. Wulff strongly supports settlement. *See Villegas v. J.P. Morgan Chase & Co.*, No. CV-09-00261 SBA (EMC), 2012 WL 5878390, at * 6 (N.D. Cal. Nov. 21, 2012) (private mediation "tends to support the conclusion that the settlement process was not collusive"); *Campbell v. Facebook, Inc.*, 951 F. 3d 1106, 1122 (9th Cir. 2020) (that settlement resulted from four in-person, arms-length mediations before two different mediators supported settlement approval); *Camilo v. Ozuna*, No. 18-cv-02842-VKD, 2020 WL 1557428, at * 8 (N.D. Cal. April 1, 2020) ("While the participation of a neutral mediator is not, by itself, dispositive of whether the settlement is fair, adequate and reasonable, it nonetheless is 'a factor weighing in favor of a finding of non-collusiveness.'" (quoting *In re Bluetooth*, 654 F. 3d at 948)); *Baker v. SeaWorld Entertainment, Inc.*, No. 14-cv-02129-MMA-AGS, 2020 WL 4260712, at * 6 (S.D. Cal. July 24, 2020) (where "Settlement Agreement was reached through intensive, good-faith bargaining in several mediation sessions" with Magistrate Judge and then with another professional mediator, "these negotiations support approval of the Settlement Agreement"(internal citations omitted).

Settlement Class Counsel carefully considered the pros and cons of the Settlement ultimately achieved, and equally carefully weighed the Settlement's fairness to the Settlement Class Members. Nor did negotiations stop after the final mediation session. The Parties continued to diligently negotiate the terms of the Settlement Agreement until reaching a final draft that Settlement Class Counsel is convinced is entirely fair to the Settlement Class Members. *See, e.g., Campbell,* 951 F. 3d at 1106; *Hanlon*, 150 F. 3d at 1026.

Throughout the litigation, mediation and settlement process, the Defendant has been zealously represented by extremely able and highly experienced attorneys from two major law firms: Cooley LLP and Mayer Brown. Their strong advocacy ensured that any settlement would necessarily only come from hard-fought negotiations and that further litigation would be full of risks for the Settlement Class Members.  Both support preliminary settlement approval.

### b. The Stage of the Proceedings, and the Discovery Completed Support Preliminary Settlement Approval

In making a preliminary settlement approval ruling, the Court examines the work Lead Counsel did to investigate their claims and to obtain discovery to support those claims.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672, CRB (JSC), 2016 WL 6248426, at * 14 (N.D. Cal. Oct. 25, 2016) ("extensive review of discovery materials indicates [Plaintiffs have] sufficient information to make an informed decision about the settlement. As such, this factor favors approving the Settlement.").  *See also In re Portal Software Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at * 4 (N.D. Cal. Nov. 26, 2007).

As the FAC, SAC and TAC show, and the numerous dismissal briefs, supplemental authority filings, Ninth Circuit appeal and Supreme Court papers demonstrate, Lead Counsel thoroughly investigated their claims and fully understood the legal and factual arguments concerning those claims.  Lead Counsel retained four internet, technology and privacy experts and a fourth expert to develop damages modeling used at mediation. Joint Decl. ¶ 28. Lead Counsel propounded (and responded to) interrogatories, received and carefully reviewed multiple rounds of document productions, filed a Motion to Compel to obtain further document production from additional custodians based on expanded search terms, and negotiated and obtained further document discovery in aid of mediation. Joint Decl. ¶¶ 21, 29. Plaintiffs also engaged a mock jury and focus group consultant in July 2021 in advance of mediation to help decide how far they could push the negotiations. Joint Decl. ¶ 30. Lead Counsel thus had a clear understanding of the risks that summary judgment and trial would entail.

### 2. Procedural Guidance Factors for Class Action Settlements are Satisfied

Adopted on November 1, 2018, the Northern District of California's Procedural Guidance

1   for evaluating class action settlements applies here. As discussed below, each of the Guidance

2   factors supports preliminary settlement approval.

### a.  Guidance 1: Differences, Range and Plan of Allocation

### i.  Guidance 1a.-d.: Differences in the Proposed Settlement Class and the Class Proposed in the SAC

Section 1 of the Guidance requires discussion concerning any differences between the Settlement Class and the class proposed in the Operative Complaint (here, the SAC).  Reflecting the compromises inherent in settlements and the necessity of corresponding adjustments, courts routinely approve settlement classes defined differently from the operative complaint's definition, and changes between claims released in a settlement and claims to be certified for class treatment. *See, e.g., In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2012 WL 2598819, at * 1 (N.D. Cal. July 5, 2012) (approving settlement class different from class defined in Consolidated Class Action Complaint); *In re Chrysler-Dodge-Jeep Ecodiesel Mkting, Sales Practices, and Prods. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 536661, at * 3-7 (N.D. Cal. Feb. 11, 2019) (same); *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG, 2020 WL 511953, at 5-6 (N.D. Cal. Jan. 31, 2020) (approving settlement class defined differently from classes certified); *Spann*, 314 F.R.D. at 318-15 (same).

Here the proposed Settlement Class differs from that described in the SAC.  The SAC (Dkt. # 93) described:

> [A] Class of all persons who had active Facebook accounts and used Facebook between April 22, 2010 and September 26, 2011, both dates inclusive, and whose Internet use was tracked at times not logged into their Facebook accounts. Plaintiffs Quinn, Davis and Lentz also bring claims on behalf of a Subclass of Facebook subscribers who used Internet Explorer between April 22, 2010 and September 17, 2010, and whose Internet use was tracked while not logged into their Facebook accounts.

The Settlement Agreement defines the class as "[a]ll persons who, between April 22, 2010 and September 26, 2011, inclusive, were Facebook Users in the United States that visited non-Facebook websites that displayed the Facebook Like button." Agr't § 1.37.

The reason for this change is simple and benefits the class. The revised definition conforms

to discovery and removes the necessity for Settlement Class Members to attest in their Claim Forms, based on their Internet usage a decade ago, that, while logged out of their Facebook accounts, they visited non-Facebook web pages containing the Facebook Like button. This revised Settlement Class definition also permits equal treatment of all Settlement Class Members, eliminates a number of technical hurdles in confirming class membership and streamlines Settlement Administration by allocating settlement payments on a per-Claimant basis.

ii.  **Guidance 1e: The Proposed Settlement Provides a Favorable Recovery and Falls Within the Range of Approvability**

The Guidance requires comparative analysis of the anticipated Settlement Class recovery and the potential class recovery if the Named Plaintiffs fully prevailed on their claims, and an explanation of why the amounts differ, as they almost always will in any large class action settlement. The Settlement provides for a non-reversionary Settlement Fund of $90,000,000.00 Class Counsel's research shows that this is one of the ten largest monetary settlements in data privacy class action history, which alone is a powerful indication that the settlement falls within the range of possible approval. Joint Decl. Ex. 13. Indeed, Plaintiffs estimate that the Settlement Fund represents a ***complete disgorgement*** of all net profits earned on the data that Plaintiffs contend was improperly collected. *Id*. ¶ 28.

The following discussion should not be interpreted as the Named Plaintiffs' and Lead Counsel's concession that they would not have prevailed on their claims.  Rather, it is a candid and clear-eyed explanation of the risk-reward calculus, performed by experienced and well-informed Lead Counsel, about the proof issues of each claim, the potential damages available for each claim, and the implications for certification of a litigation class, in light of the best interests of the Settlement Class.  *See Rodriguez*, 563 F. 3d at 963 (court should consider "the experience and views of counsel"); *Ortega*, 2021 WL 5584761, at * 8 ("The experience and views of counsel weigh in favor of approving the settlement."); *In re Pac. Enters. Sec. Litig.*, 47 F. 3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").

### iii. **Guidance 1f.-g.: Allocation Plan Merits Preliminary Approval**

Section 1 of the Guidance requires the Named Plaintiffs to detail their proposed allocation plan, their expectation of the number of anticipated claims by Settlement Class Members, and whether any reversion of the Settlement Fund will occur.

The Settlement's allocation plan is straightforward. All Settlement Class Members will be entitled to an equal cash payment. *See* Agr't § 4.4. Calibrating payments by individual Settlement Class Member's frequency of Facebook usage, the dates during the Class Period when they were using their Facebook accounts and visiting pages with the Like button, and other similarly individualized metrics would, even if technically possible (which is uncertain) have created an enormously expensive and complex administrative regime and reduced the settlement funds available to all Claimants. *See In re: Cathode Ray Tube (Crt) Antitrust Litig.*, MDL No. 1917, 2016 WL 6778406, at * (N.D. Cal. Nov. 16, 2016) ("[A]lthough it is possible that a more precise allocation plan could be fashioned, undertaking such an effort would be time-consuming and costly… Moreover, the standard of review requires only an allocation plan that has a 'reasonable, rational basis;' it does not require the best possible plan of allocation." (quoting *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014).

Payments to Settlement Class Members will be based on final claims rates and the size of the Net Settlement Fund (the Settlement Fund remaining net of Settlement Administration Expenses, an Award of Attorneys' Fees and Expenses, and the requested Service Awards. *See* Agr't § 4.2. A recent Federal Trade Commission study, based on data from more than 100 consumer class actions, calculated the weighted mean claims rate between 4%-5%.[8]  Because the majority of Settlement Class Members will receive direct email notice (*see* Agr't §7.2), Class Counsel anticipates a "take rate" within the mean calculated by the FTC. *Cf. In re Tik Tok, Inc. Consumer Privacy Litig.*, MDL No. 2498, Master Docket No. 20 C 4699, 2021 WL 4478403, at *11, n. 6

---

[8] *See* Federal Trade Commission, <u>Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns </u>(Sept. 2019) at p. 21.  Accessible at
https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf (last reviewed February 10, 2022**)**.

(N.D. Ill. Sept. 30, 2021) (noting that Prof. William B. Rubenstein found that the "average claims rate for classes above 2.7 million class members is less than 1.5%").

In no event will any of the Settlement Fund revert to the Defendant or be paid to Class Counsel. *See* Agr't § 4.9. If the Net Settlement Fund has funds remaining after the initial Settlement Payments are made, a second payment will be made, on a *pro rata* basis, to each Authorized Claimant who received an initial Settlement Payment.  *See* Agr't § 4.8. If the Settlement Administrator determines that such second payments are not economically feasible to send to Authorized Claimants who elected to receive a mailed check rather than electronic transfer, the second round of payments will be distributed, on a *pro rata* basis, only to Authorized Claimants who elected to receive electronic payments.  *See id*. § 4.8.

If a second distribution of Settlement Payments is not, in the Settlement Administrator's opinion, economically and administratively feasible, or if funds remain in the Net Settlement Fund for an additional 100 days after any second distribution, the Parties will confer and present the Court with a proposal for handling those remaining funds.  *See id*. §§ 4.7, 4.9. The proposed Plan of Allocation "'need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.'"  *In re Regulus Therapeutics, Inc.*, No. 3:17-cv-182-BTM-RBB, No. 3:17-cv-267-BTM-RBB, 2020 WL 6381898, at * 5 (S.D. Cal. Oct. 30, 2020) (quoting *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002).  *See also Schueneman v. Arena Pharmaceuticals, Inc.*, No. 3:10-CV-01959-CAB-(BLM), 2020 WL 3129566, at * 7 (S.D. Cal. June 12, 2020) (same). That standard is met here.  The allocation formula has a reasonable and rational basis for distribution and provides for equal cash payments, on a *pro rata* basis, to any Settlement Class Member who submits an Approved Claim.  *See Schueneman*, 2020 WL 3129666, at * 7 (approving allocation plan that "generally treats all class members' losses in the same way and awards a pro rata share to every Authorized Claimant").

### b.  Guidance 2: The Proposed Settlement Administrator

The Parties request that the Court authorize the retention of Angeion Group ("Angeion") as the Settlement Administrator.  *See* Agr't §1.41. Angeion has worked previously with Class Counsel and Defendant's counsel, Joint Decl. ¶ 27, and is a nationally recognized notice and claims

administration firm with extensive experience in class actions and a thorough understanding of the due process requirements for notice.

The Parties reviewed proposals from two additional potential Settlement Administrators besides Angeion, and, on balance and based upon their previous work with Angeion, decided that Angeion was the best choice for to administer this Settlement.

### c.  Guidance 3: Proposed Notices to Settlement Class are Approvable

Rule 23(c)(2)(B) requires that settlement notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See also* Rule 23(e)(1) ("The court must direct notice in a reasonable manner to all class members would be bound by the propos[ed settlement]."). Notice "must generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F. 3d 811, 826 (9th Cir. 2012) (citation omitted).

The proposed Notice describes in plain English the proposed Settlement and, among other things, clearly describes: (1) the nature, history and status of the litigation; (2) the definition of the Settlement Class and who is excluded from the Settlement Class; (3) the reasons the Parties propose the Settlement; (4) the Settlement Consideration; (5) the estimated reimbursement per individual Claimant; (6) the Settlement Class's claims and issues; (7) the Parties' disagreements over liability and damages; (8) the rights to opt-out from and object to the proposed Settlement; (9) the Releases required by the proposed Settlement; (10) the amount of Service Awards for the Named Plaintiffs; (11) the plan for distributing the Settlement Payment to Settlement Class Members who submit valid claim forms; (12) the maximum amount of Attorneys' Fees and expenses that Class Counsel will seek; (13) the date, time and place of the Final Fairness Hearing.

The Defendant will supply the Settlement Administrator with the email addresses for Settlement Class Members for whom Defendant has such email addresses, which is the vast majority of the Settlement Class.  The Settlement Administrator will then cause direct email notices to be sent to all Settlement Class Members for which it receives such addresses, including with each transmission the complete Settlement Notice, links to the Claim Form and Settlement Website,

and contact information for the Settlement Administrator. *See* Agr't §§ 1.19, 1.27, 7.2, 7.5(a). For Settlement Class Members for whom the Defendant lacks an email address, and for direct email notices that "bounce back" as undelivered, the Settlement Administrator will search public records databases for valid mailing addresses and seek to effect Notice through the United States mail. Further, the Settlement Administrator will effect publication notice. Joint Decl. Ex. B.

Here, direct email notice to the vast majority of Settlement Class Members for whom the Defendant has email addresses, supplemented by media notice, and the notice provided through the Settlement Website that will include downloadable copies of the Notice, the Claim Form and various other Court Orders and filings (*see* Agr't §§ 1.45. 1.46. 7.2, 7.5) fully satisfy the requirements of Rules 23(c)(2)(B) and 23(e). *See, e.g., Taylor v. Shutterfly, Inc.*, No. 5:18-cv-00266-BLF, 2021 WL 5810294, at *2 (N.D. Cal. Dec. 7, 2021) (approving direct email notice to class members by Angeion); *Cottle v. Plaid, Inc.*, 20-cv-3056-DMR, 2021 WL 5415252, at * 5-6 (N.D. Cal., Nov. 19, 2021). (preliminarily approving settlement administered by Angeion that included email notice).

Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties, and, for motions by class counsel, directed to class members in a reasonable manner." The proposed Notice here satisfies that requirement, because it informs Settlement Class Members that Class Counsel will apply to the Court for a Fee and Expense Award as a percentage of and to be paid from the Settlement Fund, states the maximum amount Lead Counsel will seek, and describes the effect on Settlement Class Members of any such award.

Courts have routinely approved similar notice programs as compliant with Rule 23 and due process. *See, e.g., Norcia v. Samsung Telecommunications America, LLC*, Case No. 14-cv-00582-JD, 2021 WL 3053018, at * 2 (N.D. Cal. July 20, 2021) (email notice, two publication notices and settlement website); *In re: Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-MD-02572-LHK, 2020 WL 4212811, at *19-20 (N.D. Cal. July 22, 2020) (email, publication in two magazines, online advertisements; finding notice program compliant even though only 0.6% of class made claims, citing, *inter alia*, *Perkins v. Linkedin Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255, at * 7 (N.D. Cal. Feb. 16, 2016) as "approving notice plan that provided for email notice and

settlement website")); *Cohorst v. BRE Properties, Inc.*, No. 3:10-cv-2666-JM-BGS, 2011 WL 7061923, at * 2 (S.D. Cal. Nov. 14, 2011) (website, publication and email notice program).

### d.  Guidance 4 and 5: Opt-Outs and Objections

The proposed Notice complies with Rule 23(e)(5) as it explains a Settlement Class Member's right to: (1) request to opt-out of the Settlement and the manner in which such opt-out request must be submitted; (2) object to the Settlement in whole or in part, and the requirements for filing and serving objections; and (3) participate in the Settlement and instructions for completing and submitting a Claim Form to the Settlement Administrator.  *See* Agr't §§ 8.1 – 8.12, and Ex. D thereto.  The proposed Notice provides Lead Counsel's contact information and the Court's postal address.  *Id.*

### e.  Guidance 6: The Anticipated Attorneys' Fees and Expenses Request

Lead Counsel anticipate requesting an award of attorneys' fees up to 29% of the Settlement Fund, or $26.1 million, plus reimbursement of reasonable out-of-pocket expenses.  The Defendant has the right to object to this request – indeed to *any* request for attorneys' fees and expenses (*see* Agr't §10.1) - but the requested award is entirely justified. "Having obtained excellent results for the…class, class counsel seek compensation for their efforts as they have a right to do under relevant case law."  *Kang and Moses v. Wells Fargo Bank, N.A.*, Nos. 17-cv-06220-BLF, 21-cv-00071-BLF, 2021 WL 5826230, at * 10 (N.D. Cal. Dec. 8, 2021).

"In common fund cases it is appropriate to use a percentage calculation with a lode-star cross check to determine an attorneys' fees award." *Id.* at * 16 (citing *Lafitte v. Robert Half Internat, Inc.*, 1 Cal. 5th 480, 503 (2016)).  That is because of "'[t]he recognized advantages of the percentage method – including relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation.'"[9] *Kang and Moses*, 2021 WL 58262230, at * 16 (quoting *Lafitte*, 1 Cal. 5th at 503).  *See also Harrison*

---

[9] Obviously the proposed Settlement is not "early." But prolonging litigation of this ten-year-old case, in light of the large settlement fund and injunctive relief obtained, seemed squarely to contradict the settlement class's best interests.

*v. Bank of America Corp.*, Nos. 19-cv-00316-LB, 19-cv-02491-LB, 20-cv-02119, 2021 WL 5507175, at * (N.D. Cal. Nov. 24, 2021) ("When the settlement involves a common fund, courts typically award attorney's fees based on a percentage of the settlement fund.").

    f.   **Guidance 7: The Proposed Settlement and Proposed Service Awards Do Not Unjustly Favor any Class Members, including Named Plaintiffs**

Lead Counsel may request Service Awards of up to $5,000 for the Named Plaintiffs. Defendant has agreed not to oppose.  *See* Agr't §11,1, 11.2.

In determining if a Settlement improperly grants preferential treatment to Named Plaintiffs, the Court may consider whether there is a "significant disparity between the incentive award[ ] and the payments to the rest of the class members" such that it creates a conflict of interest. *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F. 3d 1157, 1165 (9th Cir. 2013).  Here the Court considers "the number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards."  *In re Online DVD-Rental Antitrust Litig.*, 779 F. 3d 934, 947 (9th Cir. 2015) (quoting *Staton v. Boeing Co.*, 327 F. 3d 938, 977 (9th Cir. 2003)).  The Court may also consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F. 3d at 977. *See also In re Magsafe Apple Power Litig.*, No. 5:09-CV-01911-EJD, 2015 WL 428105, at * 15 (N. D. Cal. Jan. 30, 2015) (same). Finally, the Court must determine if a conflict exists where the incentive award is conditioned on the class representative's approval and support of the Settlement.  *See Radcliffe*, 715 F. 3d at 1161.

The proposed maximum Service Awards are well within the approvability range. "Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases). Courts in the Northern District of California have found awards of $5,000 presumptively reasonable.  *See In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015); *Rosado v. eBay Inc.*, No. 5:12-cv-04005-EJD, 2016 WL 3401987, at * 9 (N.D. Cal. June 21, 2016). Here, the proposed Settlement is not conditioned on approval of any Service Awards (*see* Agr't § 3.6) and the proposed Service Awards are not

conditioned on the Named Plaintiff's support of the Settlement. *See id.* § 11.4. These facts strongly support a finding that the Settlement does not grant preferential treatment to the Named Plaintiffs.

The Service Awards requested for the Named Plaintiffs are several times greater than the estimated Settlement Payments to Settlement Class Members. But this disparity, common in cases of this type and size, does not constitute improper preferential treatment, as courts have regularly ruled. *See, e.g., Linkedin*, 309 F.R.D. at 582 (approving $5,000 incentive award where class members would receive approximately $14.81); *Online DVD Rental*, 779 F. 3d at 947-948 (approving incentive award of $5,000, "roughly 417 times larger than the $12 individual award, noting $5,000 was "an amount we said was reasonable in *Staton* [327 F. 3d at 976-977]").

In any event, the amount of each Service Award is less important than the cumulative amount of Service Awards in analyzing whether impermissible preferential treatment exists. *See Online DVD Rental*, 779 F. 3d at 947-948 (citing *Staton*, 327 F. 3d at 948-949, 976-977). The maximum amount of the proposed Service Awards in aggregate would be only $35,000, a mere fraction of one percent of the Net Settlement Fund, showing the absence of preferential treatment and is eminently approvable. *See Online DVD Rental*, 779 F. 3d at 947-948 (approving Service Awards constituting 0.17% of settlement fund). *Cf. Staton*, 327 F. 3d at 976-977 (rejecting Service Awards comprising 6.0% of settlement fund).

The Plaintiffs spent many hours working with Lead Counsel, reviewing pleadings, responding to interrogatories and reviewing and producing documents (the federal Action Named Plaintiffs), corresponding with Lead Counsel throughout the case and discussing its various twists and turns, and discussing the Mediation and ultimate proposed Settlement with Class Counsel – *for more than ten years*. No Named Plaintiff ever withdrew from the case. Their dedication to the case, the time and work they did in prosecuting it, all with no guarantees of any recovery at all, support the Court's granting of the full amount of the requested Service Awards. *See, e.g., Eddings v. Health Net, Inc.*, No. CV-10-1744-JST (RZX), 2013 WL 3013867, at * 7 (C.D. Cal. June 13, 2013) (approving $6,000 service award from $600,000 settlement to compensate named plaintiff for time, effort and risk).

In absolute dollar terms and in their percentage of the Settlement Fund, the Service Awards

do not grant improper preferential treatment to the Named Plaintiffs or to any chosen segment of the Settlement Class.  No conflict of interest exists between the Named Plaintiffs and the rest of the Class Members. *See Radcliffe*, 715 F. 3d at 611.

### g.  Guidance 8: Cy Pres Recipients

The Agreement does not contemplate cy pres distributions. The Parties will confer about the distribution of any Net Settlement Funds that cannot be economically or administratively feasibly distributed to Settlement Class Members after two rounds, and present  the Court a proposal for the treatment of any such funds.  *See* Settlement Agreement § 4.9.  In light of the large class size, and the proposed Settlement's plan for secondary distributions where they can be efficiently made (*see id.* § 4.8), the Parties do not anticipate a large residue of undistributed funds.  In no event will any such undistributed funds revert to the Defendant or Class Counsel.  *Id.* § 4.9.

### h.  Guidance 9: Proposed Timeline

In connection with preliminary Settlement approval, the Court must set dates for a number of related proceedings and events.  The Parties suggest the following schedule:

| **Event** | **Proposed Timeline** |
|---|---|
| Deadline for Defendant to provide names, emails, mailing addresses of Settlement Class Members to Settlement Administrator. | Not later than thirty (30) days following entry of the Preliminary Approval Order. |
| Deadline for Settlement Administrator to complete email and/or mail notice to Settlement Class Members (the "Notice Date"). | Not later than seventy-five (75) days after receipt of information from Defendant. |
| Deadline for Settlement Class Members to submit Claim Forms. | Postmarked or submitted no later than seventy (70) days from the Notice Date. |
| Deadline for Objectors either to deliver written Objections by hand or postmarked/sent by First Class Mail. | Postmarked or submitted no later than sixty (60) days from the Notice Date. |
| Deadline for Settlement Class Members to submit an Opt-Out Form. | Postmarked or submitted no later than sixty (60) days from the Notice Date. |
| Deadline to submit opening briefs and supporting documents in favor of Final Approval of the Settlement | Not later than sixty-five (65) days before the Final Fairness Hearing. |
| Deadline to submit opening briefs and supporting documents for Motion Fee and Expense Award and for  Service Awards | Not later than sixty-five (65) days before the Final Fairness Hearing. |
| Final Fairness Hearing | Scheduled at the Court's discretion. |

1

#### i.  **Guidance 10: Class Action Fairness Act**

As required by Section 10 of the Guidance, and the Class Action Fairness Act, 28 U.S.C. § 1711, *et seq.*, the Settlement Administrator, at Defendant's direction, will serve notice of the Settlement and other required documents upon the appropriate government officials, and will provide proof of such service prior to the Preliminary Approval hearing. *See* Agr't §§ 1.6, 7.3.

#### j.  **Guidance 11: Past Distributions**

Lead Counsel identify the settlements below as a useful comparisons; Lead Counsel also refer the Court to Exhibit 13 of the Joint Declaration which is a chart of 75 selected data privacy and data breach class action settlements which could also inform the Court's analysis.

| Case Name | *In re Google Plus Profile Litigation*, 5:18-cv-06164-EJD (N.D. Cal.) | *In re Ashley Madison Customer Data Security Breach Litigation*, 4:15-md-02669-JAR (E.D. Mo.) |
|---|---|---|
| **Settlement Fund** | $7,500,000 | $11,200,000 |
| **Number of Class Members** | Approximately 300 million class members | Tens of millions |
| **Number of Class Members to whom Notice was sent** | Notice to approximately 161 million email addresses | Media only |
| **Notice Methods** | Email | Print & digital media, press release |
| **Claim Forms Submitted (Number and Amount)** | 1,820,606 claim submissions of which 1,720,029 were valid (NSF was $3,709,830.48 | 4,236 claim submissions, of which 3,861 were valid (NSF was $3,647,961.66) |
| **Average Claimant Recovery** | $2.15 | $944.82 |
| **Distributions to Cy Pres Recipients** | TBD | Yes |
| **Administrative Costs** | $1,939,611.29 | $309,240 |
| **Attorneys' Fees and Costs** | $1,875,000 fees and $68,558.23 costs | $3,733,333.33 fees and $78,032.38 costs |

### VI.  **CONCLUSION**

For all of the reasons discussed in the foregoing, the Named Plaintiffs respectfully request that the Court certify a Settlement Class for settlement purposes, preliminarily approve the proposed Settlement, approve Notice and the selection of Angeion as the Settlement Administrator, and set a Final Fairness Hearing.

Dated: February 14, 2022

Respectfully Submitted,

**DiCELLO LEVITT GUTZLER LLC**

_/s/ David Straite_

David A. Straite (admitted _pro hac vice_)
60 East 42nd Street, Suite 2400
New York, New York 10165
Tel.: (646) 933-1000
_dstraite@dicellolevitt.com_

Amy E. Keller (admitted _pro hac vice_)
Ten North Dearborn Street, 6th Fl.
Chicago, Illinois 60602
Tel.: (312) 214-7900
_akeller@dicellolevitt.com_

**GRYGIEL LAW LLC**

_/s/ Steve Grygiel_

Stephen G. Grygiel (admitted _pro hac vice_)
301 Warren Avenue, Suite 405
Baltimore, MD 21230
Tel.: (407) 505-9463
_sgrygiel@silvermanthompson.com_

**SIMMONS HANLY CONROY LLC**

_/s/ Jay Barnes_

Jason 'Jay' Barnes (admitted _pro hac vice_)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949

1

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)

2

I, David A. Straite, attest that concurrence in the filing of this document has been obtained

3

from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

4

Executed this 14th day of February, 2022, at New York, NY

5

6

_/s/ David Straite_

David A. Straite

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28