**DiCELLO LEVITT GUTZLER LLC**
David A. Straite (admitted *pro hac vice*)
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, New York 10165
Tel.: (646) 933-1000
Fax: (646) 494-9648
*dstraite@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Ten North Dearborn Street, 6th Fl.
Chicago, Illinois 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*

*Counsel for Plaintiffs*

**GRYGIEL LAW LLC**
Stephen G. Grygiel (admitted *pro hac vice*)
127 Coventry Place
Clinton, NY 13323
Tel.: (407) 505-9463
*stephengrygiel22@gmail.com*

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE FACEBOOK INTERNET TRACKING LITIGATION | Case No. 5:12-MD-2314-EJD |
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, WITH SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |
| | Judge: Hon. Edward J. Davila, USDJ |
| | Courtroom 4, 5th Floor |
| | Hearing Date: October 27, 2022 |
| | Time: 9:00 a.m. |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 27, 2022, at 9:00 a.m., in Courtroom 4 of the United States District Court for the Northern District of California, Robert F. Peckham Federal Building & United States Courthouse, 280 South First Street, San Jose, California, 95113, the Honorable Edward J. Davila, presiding, Settlement Class Representatives in the MDL Action[1] will move, as they do here, for an Order:

(i)     Granting final certification of the Settlement Class under Federal Rules of Civil Procedure ("Rule") 23(a) and 23(b)(3);

(ii)    Granting, under Rule 23(e), final approval of the proposed Settlement between the Plaintiffs/Class Representatives and the Defendant, Meta Platforms, Inc., formerly Facebook, Inc. ("Meta" or "Defendant");

(iii)   Finding that notice was provided in accordance with the notice program approved by the Court in its March 31, 2022 Order Certifying Settlement Class; Granting Preliminary Approval of Class Action Settlement pursuant to Federal Rule of Civil Procedure 23(e)(1) and Approving Form and Content of Class Notice (ECF 241, the "March 31 Order"), and, further, that the notice program, as implemented, satisfied the requirements of Rule 23 and of due process; and

(iv)    Dismissing with prejudice the claims of Plaintiffs' and Settlement Class Members against Defendant.

This motion is based upon the Memorandum of Points and Authorities included within this motion; the Joint Declaration of David A. Straite and Stephen G. Grygiel, of even date herewith, in support of both this motion and Class Counsel's Motion for Award of Attorneys' Fees, Costs, and Service Awards ("Joint Declaration") and the exhibits thereto, also of even date herewith; the Class Action Settlement Agreement and Release ("Settlement Agreement") and its accompanying

---

[1] All capitalized words are defined in the Class Action Settlement Agreement and Release, dated February 14, 2022, ECF 233-1, unless otherwise noted herein. Following the Court's March 31, 2022 Preliminary Approval Order appointing Settlement Class Representatives, ECF 241, this motion uses the terms "Plaintiffs" and "Settlement Class Representatives" interchangeably.

exhibits; the pleadings, motions, and other records and documents on file in this Action, including, without limitation, the February 14, 2022 Notice of Motion and Motion for Certification of Settlement Class and Preliminary Approval of Class Action Settlement Pursuant to Federal Rule of Civil Procedure Rule 23(e)(1); and Approving Form and Content of Class Notice, with Supporting Memorandum of Points and Authorities (ECF 232, the "Preliminary Settlement Approval Brief"); the Court's Order Certifying Settlement Class; Granting Preliminary Approval of Class Action Settlement Pursuant to Federal Rule of Civil Procedure 23(e)(1); and Approving Form and Content of Class Notice, ECF 241, and such other facts, arguments and matters as the Court may consider at the hearing of, and in ruling on, this motion.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should grant final certification of the Settlement Class under Rules 23(a) and 23(b)(3);

2. Whether the Court should grant final approval of the Settlement as fair, reasonable and adequate based on the requirements of Rule 23 and due process, the Northern District of California's Procedural Guidance for Class Action Settlements ("Guidance"), and the settlement analysis and approval principles set forth in Ninth Circuit case law;

3. Whether the Plan of Allocation on an even per-class-member basis is fair, reasonable and adequate; and

4. Whether the Court should enter judgment of dismissal of Plaintiffs' and Settlement Class Members' claims against Defendant.

1

2

## TABLE OF CONTENTS

TABLE OF EXHIBITS ................................................................................................ vi

TABLE OF AUTHORITIES ...................................................................................... viii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................1

    I.      INTRODUCTION ...............................................................................1

    II.     PROCEDURAL HISTORY...................................................................3

          A.    Summary of the Litigation, Mediation and Settlement Negotiation Process ................................................................................................3

          B.    Reaction to the Settlement ........................................................3

          C.    Interim Status Report on Notice and the Claims Process ...........................4

          D.    The Notice Program Satisfies Due Process…………………………………..6

          E.    Class Response ........................................................................7

    III.    ARGUMENT .......................................................................................8

          A.    All Basic Settlement Approval Principles Support Final Approval.............8

                1.    Rigorous Judicial Scrutiny and No Presumption of Fairness ..........8

                2.    Settlement Is Evaluated as a Whole in Light of Case's Circumstances ................................................................................9

                3.    No Second-Guessing Whether Fair, Adequate and Reasonable Settlement Might Have Been Even Better ........................................9

                4.    Final Approval Focuses on Fairness, Adequacy and Reasonableness .........................................................................10

          B.    The Settlement Class Should Be Certified...................................11

          C.    Final Approval of the Settlement Should Be Granted ...............................11

                1.    No "Red Flags" Exist ...........................................................11

                2.    All Churchill Factors Are Satisfied............................................12

                        a.    Strength of Plaintiff's Case ................................................12

                        b.    Risk, Expense, Complexity and Likely Duration of Further Litigation ................................................................14

                        c.    Risk of Maintaining Class Action Status Throughout

Trial ....................................................................................15

d.     Amount Offered in Settlement ...........................................16

e.     Extent of Discovery and Stage of Proceedings ..................17

f.     Experience and Views of Counsel ......................................18

g.     Presence of Governmental Participant ..............................19

h.     Reaction of Class Members ................................................19

3.     All Rule 23(e)(2) Approval Factors Are Satisfied .......................20

a.     Class Was Well-Represented ..............................................20

b.     Settlement Negotiated at Arms-Length...............................21

c.     Relief Provided to Class Is Adequate.................................21

d.     Equitable Treatment of Class Members.............................23

4.     All N.D. Cal. Guidance Final Approval Factors Are Satisfied.......24

a.     Class Members' Response…………………………….…25

b.     Attorneys' Fees……………………………………………25

c.     Incentive Awards…………………………………………...25

IV.     CONCLUSION....................................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### TABLE OF EXHIBITS TO THE AUGUST 23, 2022 JOINT DECLARATION OF DAVID STRAITE AND STEPHEN GRYGIEL

| EXHIBIT | DESCRIPTION |
| --- | --- |
| 1 | Declaration of Steven Weisbrot, Angeion Group |
| 1A | Copy of the Email Notice |
| 1B | Copies of the Digital Banner Advertisements and Social Media Advertisements |
| 1C | Copies of the Sponsored Listings |
| 1D | List of People Requesting Exclusions |
| 2 | [Proposed] Order of Final Approval |
| 3 | [Proposed] Judgment |
| 4 | Declaration of Jason "Jay" Barnes of Simmons Hanly Conroy LLC |
| 5 | Declaration of Margery Bronster of Bronster Fujichaku Robbins |
| 6 | Declaration of William H. "Billy" Murphy, Jr. of Murphy Falcon Murphy |
| 7 | Declaration of Barry Eichen of Eichen Crutchlow Zaslow LLP |
| 8 | Declaration of Paul Kiesel of Kiesel Law LLP |
| 9 | Declaration of Stephen Gorny of Gorny Dandurand, LC |
| 10 | Declaration of James Frickleton of Bartimus Frickleton Robertson Rader |
| 11 | Declaration of William M. Cunningham, Jr. of Burns, Cunningham & Mackey, P.C. |
| 12 | Declaration of Andrew J. Lyskowski of Bergmanis Law Firm LLC |
| 13 | Declaration of Eric Lansverk of Hillis Clark Martin & Peterson P.S. |
| 14 | Declaration of Kim Richman of Richman Law & Policy |
| 15 | Declaration of Matthew Wessler of Gupta Wessler PLLC |
| 16 | Declaration of Class Representative Mrs. Perrin Davis |
| 17 | Declaration of Class Representative Dr. Brian Lentz |
| 18 | Declaration of Class Representative Cynthia Quinn |
| 19 | Declaration of Class Representative Matthew Vickery |
| 20 | Declaration of State Court Plaintiff Ryan Ung |
| 21 | Declaration of State Court Plaintiff Chi Cheng |
| 22 | Declaration of State Court Plaintiff Alice Rosen |

| EXHIBIT | DESCRIPTION |
|---|---|
| 23 | Cynthia J. LaRose and Natalie A. Prescott, *Facebook to Pay $90 Million to Settle Data Privacy Lawsuit*, NATIONAL LAW REVIEW, Vol. XII, No. 49 (Feb. 18, 2022) |
| 24 | Mike Swift, *Latest Facebook Privacy Settlement has Significance Beyond the Numbers*, MLEX (Feb. 16, 2022) |
| 25 | Mayank Sharma, *Meta's Settlement Could Be the Beginning of the End of Tracking Cookies*, LIFEWIRE (Feb. 17, 2022) |
| 26 | Paul Bond and Mark S. Melodia, *Facebook Stops Fighting Wiretap Act Litigation After More Than a Decade*, HOLLAND & KNIGHT CYBERSECURITY AND PRIVACY BLOG (Feb. 18, 2022) |
| 27 | Aggregate lodestar Report No. 1: by timekeeper, by firm |
| 28 | Aggregate lodestar Report No. 2: by timekeeper, by task code |
| 29 | Aggregate lodestar Report No. 3: by timekeeper, by year |
| 30 | Aggregate expense report |
| 31 | [Proposed] Order Granting Motion for Fees, Expenses and Service Awards |

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahmed v. Beverly Health & Rehab. Servs., Inc.*,
    Civ. No. 2:16-1747 WBS KJN, 2018 WL 746393 .................................................. 22

*Alabsi v. Savoya, LLC*,
    No. 18-cv-06510-KAW, 2020 WL 587429 (N.D. Cal. Feb. 6, 2020) .................................... 10

*In re Apple Device Performance Litig.*,
    No. 5:18-md-02827-EJD, 2021 WL 1022867 (N.D. Cal. Mar. 17, 2021) ....................... 18, 19

*Bautista-Perez v. Juul Labs, Inc.*,
    No. 20-cv-01613-HSG, 2022 WL 2239838 (N.D. Cal., June 22, 2022) ............................. 19

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011).................................................................. 11, 12, 21

*Bowerman v. Field Asset Servs., Inc.*,
    Nos. 18-16303, 18-17275, 2022 WL 2433971 (9th Cir. July 5, 2022).................................. 14

*Boyd v. Bank of Am.*,
    No. SACV 13-0561-DOC, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ........................... 10

*Burnell v. Swift Transp. Co. of Ariz., LLC*,
    No. EDCV 10-00809-VAP, 2022 WL 1479506 (C.D. Cal. Apr. 28, 2022) ......................... 23

*Campbell v. Facebook*,
    315 F.R.D. 250 (N.D. Cal. May 18, 2016)............................................................... 13

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2022)............................................................................. 2

*Casey v. Doctor's Best, Inc.*,
    No. 8:20-cv-01325-JLS-JDE, 2022 WL 1726080 (C.D. Cal. Feb. 28, 2022).......................... 5

*Castillo v. Bank of America, NA*,
    980 F.3d 723 (9th Cir. 2020)............................................................................ 14

*In re Cathode Ray Tube (Crt) Antitrust Litig.*,
    2016 WL 3648478 (N.D. Cal. July 7, 2016)............................................................ 24

*Chun-Hoon v. McKee Foods Corp.*,
    716 F. Supp. 2d 848 (N.D. Cal. June 7, 2010)......................................................... 19

*Churchill Vill., LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004)........................................................... 9, 11, 12, 20

*Cottle v. Plaid*,
  No. 20-cv-03056-DMR, 2022 WL 2829882 (N.D. Cal. July 20, 2022) ................................. 8

*Criswell v. Boudreaux*,
  2021 WL 5811887 (E.D. Cal. Dec. 27, 2021).................................................................... 8, 10

*Desilets v. Wal-Mart Stores, Inc.*,
  171 F.3d 711 (1st Cir. 1999) ............................................................................................. 13

*DIRECTV, Inc. v. Hunyh*,
  No. C 04-3496 CRB, 2005 WL 5864467 (N.D. Cal. May 31, 2005) .................................... 13

*Edwards v. Andrews*,
  846 Fed. App'x 538 (9th Cir. 2021)...................................................................................... 7

*Edwards v. Nat'l Milk Producers Fed'n*,
  Nos. 11-cv-04766, 04791, 05253-JSW, 2017 WL 3623734 (N.D. Cal. June 26,
  2017) ..................................................................................................................................... 7

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F. 3d 589 (9th Cir. 2020)..................................................................................... 1, 8, 13

*FitzHenry-Russell v. Coca-Cola Co.*,
  No. 5:17-cv-00603-EJD, 2019 WL 6111378 (N.D. Cal. June 13, 2019) .............................. 6

*Fleming v. Impax Labs Inc.*,
  No. 16-cv-06557-HSG, 2022 WL 2789496 (N.D. Cal. July 15, 2022) .................................. 7

*In re Google St. View Elec. Commc'ns Litig.*,
  21 F.4th 1102 (9th Cir. 2021).............................................................................................. 22

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)................................................................................... 9, 10, 16

*Hawkins v. Kroger Co.*,
  No. 15-cv-2320 JM (AHG), 2022 WL 345639 (S.D. Cal. Feb. 4, 2022) ............................ 16

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019)............................................................................................... 14

*Jackson v. Fastenal*,
  No. 1:20-cv-00345-NONE-SAB, 2021 WL 5755583 (E.D. Cal. Dec. 23, 2021).................. 19

*Karl v. Zimmer Biomet Holdings, Inc.*
  2022 WL 658970 (N.D. Cal. Mar. 4, 2022) ......................................................................... 9

*Leyva v. Medline Indus., Inc.*,
  716 F.3d 510 (9th Cir. 2013)............................................................................................... 14

*Lindsay-Stern v. Garamszegi*,
   No. SACV 14-01970-CJC(DFMx), 2016 WL 11745948 (C.D. Cal. Oct. 13,
   2016) ......................................................................................................................... 14

*In re LinkedIn User Priv. Litig.*,
   309 F.R.D. 573 (N.D. Cal. Sept. 15, 2015) ............................................................. 24

*McKinney-Drobnis v. Oreshack*,
   16 F.4th 594 (9th Cir. 2021) ............................................................ 11, 12, 13, 16

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .................................................................................. 16

*Mondrian v. Trius Trucking, Inc.*,
   No. 1:19-cv-00884-DAD-SKO, 2022 WL 2306963 (E.D. Cal. June 7, 2022) ...................... 12

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ............................................................................................ 4, 6

*Musgrove v. Jackson Nurse Prof'ls, LLC*,
   No. CV 17-6565 FMO, 2022 WL 2092656 (C.D. Cal. Jan. 11, 2022) .................................. 10

*Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................. 9, 10

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) .................................................................................. 24

*Ontiveros v. Zamora*,
   303 F.R.D. 356 (E.D. Cal. Oct. 8, 2014) ................................................................. 23

*In re Optical Disk Drive Prods. Antitrust Litig.*,
   No. 3:10-md-2143 RS, 2016 WL 7364803 (N.D. Cal. Dec. 19, 2016), *vacated*
   *and remanded on other grounds*, 959 F.3d 922 (9th Cir. 2020) ............................. 7

*Ornelas v. Tapestry, Inc.*,
   2022 WL 1289047 (N.D. Cal. Apr. 29, 2022) ........................................................ 9

*Parker v. Cherne Cont. Corp.*,
   No. 18-cv-01912-HSG, 2021 WL 5834227 (N.D. Cal. Dec. 9, 2021) ................................. 19

*In re Pharmatrak, Inc.*,
   329 F.3d 9 (1st Cir. 2003) ...................................................................................... 13

*Quiruz v. Specialty Commodities, Inc.*,
   No. 17-cv-03300-BLF, 2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) ......................... 20, 22

*Rael v. The Children's Place, Inc.*,
   No. 16-cv-370-GPC-LL, 2021 WL 1226475 (S.D. Cal. Mar. 31, 2021) ................ 10, 12, 15

*Rahman v. Gate Gourmet, Inc.*,
    2021 WL 5973046 (N.D. Cal. Nov. 22, 2021) ........................................................... 8

*Rodriguez v. Nike Retail Servs., Inc.*,
    No. 14-cv-01508-BLF, 2022 WL 254349 (N.D. Cal. Jan. 27, 2022) ..................................... 19

*Roes 1-2 v. SFBSC Mgmt., LLC*,
    944 F.3d 10356 (9th Cir. 2019) ........................................................... 6

*Sanders v. Robert Bosch Corp.*,
    38 F.3d 736 (4th Cir. 1994) ........................................................... 13

*Sandoval Ortega v. Aho Enters., Inc.*,
    No. 19-cv-00404-DMR, 2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ............................... 24

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................... 9

*Taylor v. Shutterfly, Inc.*,
    No. 5:18-cv-00266-BLF, 2021 WL 5810294 (N.D. Cal. Dec. 7, 2021) ................................. 5

*In re TikTok Consumer Privacy Litig.*,
    565 F. Supp. 3d 1076 (N.D. Ill. Sept. 30, 2021) ........................................................... 8

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ........................................................... 6, 9

*Ung, et al. v. Facebook, Inc.*,
    112-cv-217244 (Cal. Super. Ct.) ........................................................... 1

*Young v. LG Chem, Ltd.*,
    783 Fed. App'x 727 (9th Cir. 2019) ........................................................... 7

*In re Zoom Video Commc'ns, Inc. Privacy Litig.*,
    2022 WL 1593389 (N.D. Cal. Apr. 21, 2022) ........................................................... 9

**Statutes**

18 U.S.C. § 2511 ........................................................... *passim*

**Rules**

Fed. R. Civ. P. 23 ........................................................... *passim*

**Other Authorities**

Cynthia J. LaRose and Natalie A. Prescott, *Facebook to Pay $90 Million to Settle
    Data Privacy Lawsuit*, NATIONAL LAW REVIEW, Vol. XII ........................................................... 4

*Decade*, HOLLAND & KNIGHT CYBERSECURITY AND PRIVACY BLOG (Feb. 18, 2022) ................... 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mayank Sharma, *Meta's Settlement Could Be the Beginning of the End of Tracking Cookies* ........................................................................................................ 4

Mike Swift, *Latest Facebook Privacy Settlement has Significance Beyond the Numbers* ..................................................................................................................... 4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Settlement Class Representatives Perrin Davis, Dr. Brian Lentz, Michael Vickery and Cynthia Quinn (collectively "Settlement Class Reps" or "Plaintiffs")[2] respectfully request entry of the proposed Final Approval Order and Judgment, attached as Exhibits 2 and 3 (respectively) to the August 23, 2022, Joint Declaration of David Straite and Stephen Grygiel ("Joint Dec."). If granted, the Final Approval Order will: (i) grant final approval of the Settlement on the terms and conditions stated in the Settlement Agreement; (ii) renew the Court's earlier order certifying a Settlement Class and appointing Settlement Class Counsel and Settlement Class Representatives; (iii) approve the proposed allocation plan; and (iv) dismiss the Settlement Class Representatives' and Settlement Class Members' claims against Defendant.

As described in Plaintiffs' Memorandum in Support of Preliminary Settlement Approval (ECF 232), this settlement results from the persistence of the Plaintiffs and counsel for over ten (10) years of litigation. Among other work, as described in detail in Plaintiffs' preliminary approval papers, the MDL Action involved the research and drafting of three factually technical and legally sophisticated Complaints, consultations with privacy and technology experts, work with damages experts, briefing and arguing three Motions to Dismiss, written discovery and discovery motion practice, briefing and successfully arguing an appeal to the Ninth Circuit,[3] and then successfully briefing the opposition to Defendant's petition for a writ of certiorari to the Supreme Court.

Subsequent settlement mediation, under the guidance of highly respected mediator Randy Wulff, required substantial and detailed briefing, submission of an expert's report on potential damages models, and three separate and intense mediation sessions totaling twenty-one (21) hours.

---

[2] If approved, the Settlement Agreement will also resolve the parallel State Court Action, *Ung, et al. v. Facebook, Inc*., 112-cv-217244 (Cal. Super. Ct.). The Plaintiffs in the *Ung* Action agree with the relief sought in this motion, *see* Joint Decl. Exs. 20–22, and they also signed the Settlement Agreement. ECF 233-1, p. 45.

[3] The Ninth Circuit's opinion in this case, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F. 3d 589 (9th Cir. 2020), clarified the "party to the communication" defence to Wiretap Act liability on which Defendant, and many other privacy case defendants, had relied, as well as ruled that the allegedly illicit copying and monetization of personal data is *economic* harm as well as privacy harm. The Ninth Circuit's opinion had been cited in seventy-eight (78) cases as of July 26, 2022.

Ultimately the parties accepted Mr. Wulff's mediator's proposal and settlement in principle was reached. Negotiations continued for another six months over the nature and scope of injunctive relief, the data that Defendant would provide to the Claims Administrator for the notice program, and numerous other such issues. Just as the Action was hotly contested, the settlement was bargained hard at every step.

The process by which a class action settlement is reached is every bit as important as the result. Here, the process was as good as such a process gets; arms-length adversarial bargaining by experienced and competent counsel, overseen by a highly experienced and skilled mediator, with the parties fully aware of the strengths and weaknesses of their respective positions after over ten years of litigation. *See, e.g., Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1122 (9th Cir. 2022) (that settlement was "result of four in-person, arms'-length mediations before two different mediators" supported final approval). Lead Counsel also appointed Margery Bronster, the former Attorney General of the State of Hawai'i, to chair the settlement committee, and State Court Counsel also participated in all three mediations, *see* Joint Dec. ¶ 35, and everyone – Lead Counsel, State Court Counsel, the mediator, the settlement committee chair, and all Settlement Class Representatives in the MDL and in the State Court action -- ***agrees with this settlement***.

In addition, as discussed more below, there are no "red flags": no disproportionate attorneys' fees requested; no "clear sailing" provisions; and most importantly, the settlement fund is non-reversionary, underscoring the complete integrity of the settlement process. Furthermore, approval of the settlement is completely unconnected to approval of any application, in any amount, for an award of attorneys' fees and expenses. Lead Counsel also ensured that each Plaintiff approved the settlement terms prior to informing them of the Service Awards. Joint Dec. Exs. 16-22.

Finally, the releases required of Settlement Class Members are not overbroad but are coterminous with the claims remaining in the case, reaching only claims that were or could have been made in the Action and that arose during the Class Period.

Apart from the undeniably arms'- length and vigorously adversarial settlement process, the substance of the settlement is equally excellent. Rarely won injunctive relief in the form of

1   sequestration and ultimate expungement of data allegedly improperly collected, will benefit every
2   person in the class, whether or not they make claims, object or opt-out. As noted more below, this
3   component of the settlement has drawn praise in the press and even from the defense bar.

4       As for the settlement's *monetary* component, the $90 Million common fund ranks as one of
5   the top 10 data privacy class action settlements ever. Consistent with the Ninth Circuit's opinion,
6   Plaintiffs proposed an economic model to disgorge any unjust enrichment earned on the data.
7   Facebook contends that no profit was earned on the data, a contention that supports settlement. But
8   even Plaintiffs concede that it would be difficult to prove unjust enrichment above $90 million.
9   Furthermore, at Lead Counsels' insistence and with Meta counsel's good faith cooperation, the
10  claims process was streamlined to allow for electronic claims and electronic payments, if so
11  preferred by claimants. And Settlement Class Members who had active accounts with Defendant
12  are not required affirmatively to attest that they visited non-Facebook pages containing the
13  Facebook Like Button – that was determined automatically by Facebook.

14  **II.    PROCEDURAL HISTORY**

15      **A.    Summary of the Litigation, Mediation and Settlement Negotiation Process**

16      Plaintiffs incorporate by reference the "Summary of the Litigation," ECF 232 at 2–4, the
17  description of the Mediation, *id*. at 4, and the description of the proposed Settlement, *id*. at 4–5,
18  contained in the Motion for Preliminary Settlement Approval. Plaintiffs provide additional
19  procedural history in the Joint Declaration and in the Plaintiff declarations attached thereto.

20      **B.    Reaction to the Settlement**

21      The settlement has been reported widely in the press, and the reporting has been
22  overwhelmingly positive; the "data deletion" component has even garnered praise from the defense
23  bar. For example:

24          ". . . this settlement is significant and groundbreaking with respect to its reach,
            the amount, and the injunctive relief secured for the plaintiffs. In addition to
25          the monetary component, Facebook will also have to delete all of the user data
            that it had allegedly collected unlawfully—a significant potential precedent for
26          future settlements in a court system that has not previously focused on data
            deletion in privacy cases. . . . If this settlement is approved, it will become one
27          of the largest and noteworthy data privacy class action settlements in the

28

1

United States."

2

Cynthia J. LaRose and Natalie A. Prescott, *Facebook to Pay $90 Million to Settle Data Privacy*

3

*Lawsuit*, NATIONAL LAW REVIEW, Vol. XII, No. 49 (Feb. 18, 2022), Joint Dec. Ex. 23.

4

5

> "Meta will also 'sequester and delete the data that Plaintiffs alleged was wrongfully collected during the Settlement Class Period,' which . . . is a significant new development in data class action law."

6

Paul Bond, Mark S. Melodia, *Facebook Stops Fighting Wiretap Act Litigation After More Than a*

7

*Decade*, HOLLAND & KNIGHT CYBERSECURITY AND PRIVACY BLOG (Feb. 18, 2022), Jt Dec. Ex. 26.

8

9

10

11

> "Facebook's agreement to pay $90 million to settle allegations that it violated the federal Wiretap Act by tracking users on other websites who had logged out of its services would be the seventh-largest US privacy settlement in history — until another, larger settlement inevitably supplants it. More significant may be the legal commitment by the company now known as Meta Platforms to delete the personal data it collected through that tracking . . ."

12

Mike Swift, *Latest Facebook Privacy Settlement has Significance Beyond the Numbers*, MLEX

13

(Feb. 16, 2022), Joint Dec. Ex. 24.

14

15

16

17

> "On February 15, 2022, Meta agreed to pay $90 million to settle its decade-long data privacy lawsuit for its use of tracking cookies to follow Facebook users across the internet. 'This settlement is a huge win for consumer privacy around the world,' Nicola Nye, Chief of Staff at Fastmail, told Lifewire via email. '. . . its outcome is a glorious landmark for consumer rights.'"

18

Mayank Sharma, *Meta's Settlement Could Be the Beginning of the End of Tracking Cookies*,

19

LIFEWIRE (Feb. 17, 2022), Joint Dec. Ex. 25.

20

### C.      Interim Status Report on Notice and the Claims Process

21

The Notice Plan and Claims Administration Program, ECF 233-1, pp. 60-71, 93-108, that

22

the Court approved (ECF 241 ¶¶ 7–10) is robust and satisfies Rule 23(c)(2)(B)'s "best notice that

23

is practicable under the circumstances" requirement, as well as the constitutional due process

24

requirements for notice. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)

25

("notice reasonably calculated, under all the circumstances, to apprise interested parties of the

26

pendency of the action and afford them an opportunity to present their objections").

27

First, as described in detail in the Declaration of Steven Weisbrot ("Weisbrot Dec."), Joint

28

Dec. Ex.1, the vast majority of the class members, some 114,078,891, received plain language

direct email notice, after Angeion had "scrubbed" the class email list to ensure proper addresses and after Angeion had worked diligently to ensure that the email notices were not misdirected to class members' spam filters. *See* Guideline No. 3 (Prelim. Sett. Approval) (specifying email as form of acceptable notice); *Casey v. Doctor's Best, Inc.*, No. 8:20-cv-01325-JLS-JDE, 2022 WL 1726080, at *10 (C.D. Cal. Feb. 28, 2022); *Taylor v. Shutterfly, Inc.*, No. 5:18-cv-00266-BLF, 2021 WL 5810294, at * 2 (N.D. Cal. Dec. 7, 2021).

As also approved by the Court, Angeion augmented direct notice with a Media Notice program, employing Programmatic Display Advertising (a form of internet advertising), outreach on Social Media through the ubiquitous platforms such as Twitter, and a Paid Search Campaign on Google. *See* Weisbrot Dec. ¶ 12.

Angeion also implemented a Claims Stimulation Package, putting sponsored listings on two leading class action settlement sites and including "active listening" on Twitter. *See id.* ¶¶12-13. Still further, Angeion established a Settlement Website with a URL designed to attract class members' attention, www.FBInternetTrackingSettlement.com. That website has a clearly written homepage introducing the settlement and provides easily accessible drop-down menus. Those menus, the contents of which are in clear, direct and plain language, provide direct links to the process for submitting claims and objections, instructions for opting out, important documents (including, among many others, others, the Long Form Notice, the Complaints filed in the Actions, the Settlement Agreement and the Preliminary Approval Order), and frequently asked questions. Any class member can readily find and understand the settlement information. The settlement website included a toll-free telephone number operative 24 hours a day, 7 days a week, with English and Spanish-speaking operators. *See id.* ¶¶ 15-20.  Class Counsel also directly fielded inquiries from class members. *See* Joint Dec. ¶ 44.

As the Weisbrot Declaration describes in detail, Angeion, working with Class Counsel and Defendant's counsel, implemented the Notice Program described in the Settlement Agreement and approved by the Court's March 31 Order. Angeion received class member information from the Defendant, and began rolling out email notices in June, in time to meet the July 15, 2022, completion date**.** Angeion limited the volume of the initial tranches of email notice to permit

Angeion and counsel to identify and remedy any problems, in particular spam bounce-backs. After taking further steps to ensure that email notices were not directed to spam filters, the email notice dissemination ramped up, and email notice was completed on time.

After discussions between Angeion, Class Counsel and Defendant's counsel, on or about August 19, 2022, Angeion commenced a supplemental notice program which involves sending email settlement reminder notices of the settlement and deadlines and a renewed media campaign involving programmatic banners and a paid search component. Joint Dec. ¶ 45. Plaintiffs will provide additional reports after the claims period concludes on September 22, 2022.

### D.     The Notice Program Satisfies Due Process

Fundamentally, class members are entitled to "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice, claim forms, and all related documents must be clearly written in plain English and easily understandable. *See, e.g., FitzHenry-Russell v. Coca-Cola Co.*, No. 5:17-cv-00603-EJD, 2019 WL 6111378, at *5 (N.D. Cal. June 13, 2019) (approving notice and claim form documents that were "written in plain English, are easy to comprehend, and fully comply with the requirements of the Due Process clause."); *see also* Fed. R. Civ. P. 23(c)(2)(B)(i)-(iv) (notice document requirements). As the March 31 Order recognized, the proposed notice documents here satisfied each required notice element.

Notice's due process requirement mandates notice "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314; *accord Roes 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1045–46 (9th Cir. 2019) (citing *Mullane*). Reflecting the realities of many class actions, the "best notice [that is] practicable under the circumstances" standard, as reflected in the case law, does not require actual notice to every class member. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374–75 (9th Cir. 1993) (rejecting contention that "approximately one-third" of class received untimely notice, stating that notice sufficiency "is not whether some individual shareholders got adequate notice, but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement").

Notice need not (and should not) not regurgitate every provision of the underlying Settlement Agreement. Rather, "notice is sufficient if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Young v. LG Chem, Ltd.*, 783 Fed. App'x 727, 736 (9th Cir. 2019) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019)). Even cursory review of the notice documents here proves that standard is met. Using plain language and corresponding closely to the subject of the case, the "FBInternetTrackingSettlement.com" settlement website's URL succeeded in driving traffic to the settlement website beyond expectations. *See generally* Weisbrot Dec.

This case involves what is surely one of the largest direct notice programs authorized by this Court, with over 120 million potential class members. Of that number, the vast majority received direct notice, not even counting the media notice program. *See id.* That readily meets the Due Process Standard. *See, e.g., Edwards v. Andrews*, 846 Fed. App'x 538, 539 (Mem.) (9th Cir. 2021) (due process met where expert opined 75% of class received notice); *Edwards v. Nat'l Milk Producers Fed'n*, Nos. 11-cv-04766, 04791, 05253-JSW, 2017 WL 3623734, at * 2 (N.D. Cal. June 26, 2017) (finally approving settlement where "at least 75[%] of the class received notice"); *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143 RS, 2016 WL 7364803, at *3 (N.D. Cal. Dec. 19, 2016), *vacated and remanded on other grounds*, 959 F.3d 922 (9th Cir. 2020) (approving final settlement where "notice administrator confirms that at least 70% of the class has received notice").

**E.    Class Response**

Because the September 12, 2022, deadline for opt-outs and objections and the September 22, 2022, deadline for claims come after the date of this Motion, their exact number cannot be definitively stated. However, the Class's response thus far has been strongly positive and fully supports final settlement approval. *See Fleming v. Impax Labs Inc.*, No. 16-cv-06557-HSG, 2022 WL 2789496, at *7 (N.D. Cal. July 15, 2022) ("'[t]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.'" (quoting *Nat'l. Rural Telecomms. Coop. v.*

*DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. Jan. 5, 2004), and citing *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. Sept. 15, 2015), for proposition "'[a] low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.'"). Only two objections have been received to date, and Class Counsel looks forward to responding to these and any other objections following the September 12, 2022, deadline.

To date, 1,352,214 claims have been filed and processed. *See* Weisbrot Dec. ¶ 21. While this interim figure suggests a typical rate of cases of this nature, *see, e.g., In re TikTok Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1090 n. 6 (N.D. Ill. Sept. 30, 2021) ("[a]ccording to the plaintiff's expert in *In re Facebook*, the average claims rate for classes above 2.7 million class members is less than 1.5% (citing 2d Expert Decl. Prof. William B. Rubenstein ¶ 5, *In re Facebook*, ECF. 517-2, and also citing, *inter alia*, *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 214–15 (W. D. Mo. Mar. 14, 2017), as "collecting cases that have approved settlements 'where the claims rate was less than one percent'") and *Cottle v. Plaid*, No. 20-cv-03056-DMR, 2022 WL 2829882, at *5 (N.D. Cal. July 20, 2022) (granting approval where "estimated claims rate is 1.28%"), Lead Counsel met with Angeion and Meta counsel on August 12, 2022 to discuss ways to increase the rate and authorized a supplemental round of email notice and media notice to "stimulate" further claims. Joint Dec. ¶ 45. This supplemental program is in progress and results will be reported after the September 22, 2022, deadline.

## III.   ARGUMENT

### A.   All Basic Settlement Approval Principles Support Final Approval

#### 1.   *Rigorous Judicial Scrutiny and No Presumption of Fairness*

"[T]he law favors the compromise and settlement of class action suits." *Criswell v. Boudreaux*, 2021 WL 5811887, at *4 (E.D. Cal. Dec. 27, 2021) (citing, *inter alia*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)). But that policy preference is subordinate to the rule that particularly searching judicial scrutiny is required before approval of a pre-certification settlement, like this one. *See, e.g., Rahman v. Gate Gourmet, Inc.*, 2021 WL 5973046, at *4 (N.D. Cal. Nov. 22, 2021) (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946–947 (9th Cir. 2011)). No thumb on the settlement approval scale through any "presumption of fairness" is

desired or needed here. This settlement fully satisfies all of the settlement approval requirements of Rule 23(e), the Guidance and established Ninth Circuit settlement case law.[4]

   2.   *Settlement Is Evaluated as a Whole in Light of Case's Circumstances*

Given the fact-specific, case-by-case nature of the settlement approval inquiry, settlements must be evaluated as a whole. *See Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) (evaluate not "component parts" but "settlement as whole"); *see also Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982) ("complete package" of settlement, not "individual component parts . . . must be examined for overall fairness"). Depending on the case, some settlement inquiries may be less relevant or entirely irrelevant, while a single factor might be dispositive. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (established list of settlement approval factors "is not exclusive and different factors may predominate in different factual contexts" (citing *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F. 2d 615, 625 (9th Cir. 1982), *cert. denied* 459 U.S. 1217 (1983)) and finding "[h]ere one factor predominates [the defendant's precarious financial condition] to make clear that the district court acted within its discretion" in approving settlement). Approval is, in the end, "nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice,'" in light of "the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Id.* at 625.

   3.   *No Second-Guessing Whether Fair, Adequate and Reasonable Settlement Might Have Been Even Better*

A cognate of the pro-settlement policy and required holistic settlement assessment is rooted in the reality that "settlement is the offspring of compromise." *Hanlon v. Chrysler Corp.*, 150 F.3d

---

[4] Substantial overlap exists between these three distinct sets of settlement approval guideposts. *See, e.g., In re Zoom Video Commc'ns, Inc. Privacy Litig.*, 2022 WL 1593389, at * (N.D. Cal. Apr. 21, 2022) (Fed. R. Civ. P. 23(e)(2) "factors 'are substantially similar to those articulated' in *Hanlon*...." *(quoting Student A v. Berkeley Unified Sch. Dist.*, No. 17-cv-02510-JST, 2021 WL 6332353, at *2 n. 2 (N.D. Cal. July 8, 2021)). *See also Ornelas v. Tapestry, Inc.*, 2022 WL 1289047, at *1 (N.D. Cal. Apr. 29, 2022) (discussing mandatory evaluation of "eight *Churchill* factors" in "final fairness assessment" and required consideration of "overlapping set of factors" in Rule 23(e)(2)). Overlap notwithstanding, settlement proponents must address, and the Court must analyze, every applicable requirement, regardless of its provenance. *See Karl v. Zimmer Biomet Holdings, Inc.* 2022 WL 658970, at * 3 (N.D. Cal. Mar. 4, 2022).

1011, 1027 (9th Cir. 1998). Accordingly, the Court does not ask "whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id. See also Officers for Justice*, 688 F.2d at 625 ("it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." (citing cases)). The Court does not "second-guess the agreement's terms." *Boyd v. Bank of Am.*, No. SACV 13-0561-DOC (JPRx), 2014 WL 6473804, at *4 (C.D. Cal. Nov. 18, 2014) (citing *Officers for Justice*, 688 F.2d at 625)).

### 4.     *Final Approval Focuses on Fairness, Adequacy and Reasonableness*

"At the final approval stage, the primary inquiry is whether the proposed settlement 'is fundamentally fair, adequate and reasonable.'" *Criswell*, 2021 WL 5811887, at *4 (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012), and citing *Hanlon*, 150 F.3d at 1026, *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)). But the Court does not start from scratch. The importance of the preliminary settlement approval—which was based here on a compellingly strong record and after a hearing—weighs heavily in the final settlement approval calculus.[5] *See Musgrove v. Jackson Nurse Prof'ls, LLC*, No. CV 17-6565 FMO (SSx), 2022 WL 2092656, at *4 (C.D. Cal. Jan. 11, 2022) ("[a]lthough '[c]loser scrutiny is reserved for the final approval hearing[,]' . . . 'the showing at the preliminary approval stage—given the amount

---

[5] Courts often describe the preliminary settlement approval process in seemingly more lenient terms than the final approval process. *See, e.g., Alabsi v. Savoya, LLC*, No. 18-cv-06510-KAW, 2020 WL 587429, at *4 (N.D. Cal. Feb. 6, 2020) ("[a]t the preliminary approval stage, courts in this district 'have stated that the relevant inquiry is whether the settlement falls within the range of possible approval or within the range of reasonableness.'" (quoting *Cotter v. Lyft*, 176 F. Supp. 3d, 939, 935 (N.D. Cal. Apr. 7, 2016)). But close review of the cases shows that at final approval the Court must look at *additional* factors that could not be examined at the preliminary approval stage, such as the implementation of the notice plan, the success of the notice plan, the numbers of opt-outs, the nature and number of objections, and any changes in the factors assessed at preliminary approval. *See, e.g., Rael v. The Children's Place, Inc.*, No. 16-cv-370-GPC-LL, 2021 WL 1226475, at *6 (S.D. Cal. Mar. 31, 2021) ("[a]t the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination." (citing *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1063 (C.D. Cal. Feb. 26, 2010)).

of time, money, and resources involved in, for example sending out . . . class notice[ ]—should be good enough for final approval.'" (quoting respectively, *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011), and *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 310 (C.D.Cal. Jan. 5, 2016), and citing 4 <u>Newberg on Class Actions</u> § 13:10 (5th ed.)).

**B.      The Settlement Class Should Be Certified**

Nothing has changed since the March 31 Order that would alter the Court's certification of a settlement class. All requirements of Rule 23(a) and Rule 23(b)(3) remain satisfied. Accordingly, Plaintiffs incorporate by reference here their previous arguments for class certification. [ECF 232, pp. 8–11]. *See also* Transcript, pp. 19–28.

**C.      Final Approval of the Settlement Should Be Granted**

**1.      *No "Red Flags" Exist***

The stringent scrutiny given to pre-certification settlements—even those that satisfy all eight of the *Churchill* factors discussed below—entails determining whether any of the *Bluetooth* "red flags" exist, and, if so, whether any of them suggest possible shortchanging of the class's best interests. *See McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609–10 (9th Cir. 2021). None of those red flags appear here.

First, as discussed in more detail in Plaintiffs' Memorandum in Support of Award of Attorneys' Fees, Expenses and Service Awards, Class Counsel will not "'receive a disproportionate distribution of the settlement.'" *Bluetooth*, 654 F.3d at 937 (quoting *Hanlon*, 150 F.3d at 1021). Class Counsel seek only 29% of the Settlement Fund, an entirely reasonable award in light of every "reasonable fee"—criterion, including, among others, the 25% fee benchmark in the Ninth Circuit and the lodestar cross-check; the years of litigation dedicated to this case; the attendant risks Class Counsel took working entirely on a contingency basis for over a decade; the tremendous result achieved; and the significant pro-privacy change in the law the case produced through the Ninth Circuit's opinion and the Supreme Court's denial of Defendant's request to demonstrate that the Ninth Circuit erred.

Second, no "clear sailing" agreement appears. *Bluetooth*, 654 F.3d at 947. To the contrary, Class Counsel is required to move separately for an award of fees and costs and Defendant retained

1  the right to object to the award of *any* attorneys' fees and expenses at all.

2  　　　　Third, not a penny of the Settlement Fund will revert to the Defendants. *Id.*

3  　　　　Additional facts confirm Class Counsel's assiduous fulfillment of their duties to the Class.

4  The required releases are properly cabined to the claims "that were asserted or could have been

5  asserted in the Actions." ECF 233-1, p. 33, § 9.2. *See Mondrian v. Trius Trucking, Inc.*, No. 1:19-

6  cv-00884-DAD-SKO, 2022 WL 2306963, at *19 (E.D. Cal. June 7, 2022) (released claims

7  "appropriately track the claims at issue in this case and are not overbroad"). *See also Rael*, 2021

8  WL 1226475, at *10 ("released claims must 'arise from the same nucleus of operative fact' as those

9  alleged in the complaint" (quoting *Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268, 1290 (9th Cir.

10  1992)). The issue of Class Counsel's fees and costs, and of service payments to the Plaintiffs,

11  remained completely off the table and undiscussed until all the other material settlement terms had

12  been negotiated and agreed upon. ECF 233 ¶ 25. Plaintiffs were not told of the proposed Service

13  Awards until after they had reviewed the settlement and given their approval. ECF 233 ¶ 25; *see*

14  *also* Joint Dec. Exs. 16-22. Far from putting their own interests first, or even considering them,

15  Settlement Class Counsel continued to negotiate the scope and nature of the injunctive relief for

16  some six months after reaching the agreement in principle to settle and before the final terms were

17  finally fixed. ECF 233 ¶ 24.

18  　　　　　　　　　2.　　*All Churchill Factors Are Satisfied*

19  　　　　"Before Rule 23(e)'s 2018 amendment provided factors for courts to consider in assessing

20  settlement approval," the Ninth Circuit "'filled in the gaps' . . . by instructing courts to weigh" the

21  eight factors set forth in *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

22  *Oreshack*, 16 F.4th at 609 (quoting *Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021)).

23  Even after Rule 23(e)'s amendment the "*Churchill* factors" remain applicable to the court's

24  "holistic assessment of settlement." *Oreshack*, 16 F.4th at 609, n.4 ("amended Rule 23(e) did not

25  'displace' this court's previous articulation of the relevant factors"). Analyzing the *Churchill*

26  factors compels settlement approval.

27  　　　　　　　　　a.　　Strength of Plaintiff's Case

28  　　　　Plaintiffs obviously believe their case is strong. The Ninth Circuit's appellate ruling

1   reinstating most of the claims, the Supreme Court's denial of Defendant's petition for a writ of

2   certiorari, support Plaintiffs' belief. But, as discussed below, Plaintiffs faced a substantial number

3   of serious factual and legal obstacles in litigating, proving and recovering damages. Rejecting a

4   highly favorable good-faith settlement in favor of continued years of litigation and appeals in this

5   already decade-old case, with no assurance of ultimate victory and the possibility class members

6   might ultimately recover nothing, would have been not just imprudent but a dereliction of Class

7   Counsel's fiduciary duty to the class. *See Oreshack*, 16 F.4th at 598 (class counsel's "fiduciary duty

8   owed to absent class members").

9        Plaintiffs' continued risk is exemplified by on their federal wiretap claims and parallel state

10  statutory claims. Defendant's loss of the "party to the communication" defense to Wiretap Act

11  liability did not mean Plaintiffs would prevail on their Wiretap Act claim. All the other elements

12  of Wiretap Act liability remained for litigation, and Defendant had declared its intent to file a fourth

13  Motion to Dismiss on those elements, such as "intentional interception," "contents" and "device."

14  Defendants would also have sought to prove that no liability could attach because the interception

15  at issue was an unintentional error, an artifact of complex browser and server functionality. *See,*

16  *e.g., In re Pharmatrak, Inc.*, 329 F.3d 9, 23 (1st Cir. 2003); *Sanders v. Robert Bosch Corp.*, 38 F.3d

17  736, 742–43 (4th Cir. 1994). Even were Plaintiffs to clear every one of those liability hurdles, no

18  guarantee existed that statutory damages would follow. Not only are Wiretap Act damages

19  discretionary, but they are also "all or nothing." *See Campbell v. Facebook*, 315 F.R.D. 250, 268

20  (N.D. Cal. May 18, 2016). *See also DIRECTV, Inc. v. Hunyh*, No. C 04-3496 CRB, 2005 WL

21  5864467, at *6 (N.D. Cal. May 31, 2005) (same, noting "peculiar damages structure of . . . [18

22  U.S.C. §] 2520(c)(2)).[6] Plaintiffs had no assurance that the Court would exercise its "all or nothing"

23  statutory damages discretion in Plaintiffs' favor.

24       Even the common law privacy claims remained unsettled after the Ninth Circuit's ruling,

25  which the Court noted was just "at the pleading stage." *In re Facebook*, 956 F.3d at 606. Plaintiffs

26  could not be sure that Defendant's counterarguments—that any intrusion was unintentional, a by-

27

28  [6] A few cases, in what appears to be the minority position, have held ECPA/Wiretap Act damages
    are mandatory. *See, e.g., Desilets v. Wal-Mart Stores, Inc.*, 171 F.3d 711, 714 (1st Cir. 1999)).

product of Internet functionality and no actual harm resulted—would fail at summary judgment or trial. *See, e.g., Hammerling,* 2022 WL 2812188, at *10 (N.D. Cal. July 18, 2022) ("[t]his district sets a high bar when assessing the 'highly offensive' requirement." (citing *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d, 968, 988 (N.D. Cal. July 21, 2014)). Eliminating the risk posed by those arguments through a highly advantageous settlement is plainly prudent.

Likewise, continued litigation would have required the Court to visit novel damages theories with uncertain outcomes. The Ninth Circuit's ruling that a Defendant's copying and monetization of class members' personal data is not just privacy harm but economic harm, even if the value of the data in class members' hands is undiminished, gave Plaintiffs a good damages starting place for this claim. But a "battle of the experts" was readily foreseeable on many issues such as the inherent value of the data, the value of the data in Defendant's hands, and the extent of any damages calibrated to the Defendant's use of the data, rendering any compensatory damages recovery uncertain. Relatedly, Defendant would have argued that while "emotional damages" are recoverable under Section 502(e)(1) (*Lindsay-Stern v. Garamszegi*, No. SACV 14-01970-CJC(DFMx), 2016 WL 11745948, at *6 (C.D. Cal. Oct. 13, 2016)), such claims are inherently individualized and unsuitable for class litigation.[7]

        b.     Risk, Expense, Complexity and Likely Duration of Further Litigation

This factor is largely subsumed within the preceding discussion of the strengths and attendant potential vulnerabilities of the Plaintiffs' case. Plaintiffs faced a substantial number of risks in proving their claims, with liability victories no assurance of damages awards. A fourth Motion to Dismiss, discovery, litigation class certification, summary judgment, trial and appeals would have consumed many more years, involving tremendous time and expense of the parties and the Court.

---

[7] Individualized damages issues do not by themselves preclude class certification. *See, e.g., In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 560 (9th Cir. 2019); *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). However, Defendant would have argued that the individualized issue was not "the *calculation*" of emotional damages but "the *existence* of [such] damages in the first place." *Bowerman v. Field Asset Servs., Inc.*, Nos. 18-16303, 18-17275, 2022 WL 2433971, at *8 (9th Cir. July 5, 2022) (discussing *Castillo v. Bank of America, NA*, 980 F.3d 723, 731–32 (9th Cir. 2020), and reversing class certification (emphasis by *Bowerman* court)).

The expense—which Class Counsel was prepared to bear, as evidenced by the resources already dedicated to the case—was sure to be substantial. Litigating against a rich and powerful Defendant, represented by two large and extremely competent law firms sparing no expense in pursuit of victory would inevitably spawn great further expense. Liability experts—for example, did the technological nature of the data acquisition betoken intentional privacy breaches or an unintended systemic bug?—and damages experts—for example, the extent of the Wiretap Act statutory damages derived from the number of days of violation as to each class member, and the method of their calculation - alone would have inevitably driven future expenses into the hundreds of thousands of dollars.

The complexity of further litigation was assured, given the eight claims at issue, their numerous distinct elements and the overlay of the class certification issue for each such claim. The Wiretap Act claim alone proves the Point. Plaintiffs would have to prove "intentional interception," using a "device," of messages containing "contents."

As for duration, the antiquity of this case speaks volumes. With a fourth Motion to Dismiss sure to come, and further discovery and its invariably attendant motion practice, followed by class certification, summary judgment, trial, appeals, in this era of COVID delays and resulting docket backlogs, this case's litigation future was virtually certain to continue for years more. *See Rael v. The Children's Place*, No. 16-cv-370-GPC-LL, 2021 WL 1226475, at *7 (S.D. Cal. Mar. 31, 2021) (approving settlement in light of alternative of years of continued litigation, with numerous attendant risks and unsettled damages issues, finding "[u]ltimately, the identified risks in this case weigh heavily in determining that the proposed settlement is fair").

### c.   Risk of Maintaining Class Action Status Throughout Trial

As discussed above, the risk of obtaining class certification on all—or even most—claims, and maintaining class action status throughout trial, was not insubstantial. Plaintiffs believe their claims were both certifiable and maintainable through trial. But, as a canvass of case law shows, litigation class certification in privacy cases is never guaranteed. Defendant would have vigorously opposed class certification, seeking to atomize every claim into its discrete elements, and then further disassembling each of those elements in seeking to demonstrate that individualized issues

predominated. Plaintiffs believe they would defeat those "every claim is individualized" arguments—but in the face of the settlement's benefits, the risk was simply not worth taking when compared to Defendant's good faith settlement offer that included the important data-deletion component.

d.      Amount Offered in Settlement

This factor strongly weighs in favor of settlement approval. As set forth in Plaintiffs' preliminary settlement approval papers and, in particular the chart analyzing 75 Data Privacy and Data Breach Class Action Settlements, ECF 233-13, $90 Million was, at that time, the seventh largest monetary settlement of its kind, and remains in the top ten following two recent announced settlements. Facebook denies that it earned any unjust enrichment from the data at issue, and even Plaintiffs' economic consultant would have a difficult time proving unjust enrichment north of $90 million. "[T]he economic reality of the settlement relief" (*Oreshack*, 16 F.4th at 610) is both indisputable and highly advantageous. Beyond that, the settlement's injunctive relief, the sequestration and ultimate expungement of the data collected, is meaningful and benefits every class member, even those who object or opt-out.

Any arguments that the settlement should be disapproved because the $90 million and data expungement is insufficient compared to the theoretically available *statutory* damages goes nowhere. First, "[s]ettlement is the offspring of compromise" and the crucial question "is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. Second, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Third, the court's settlement approval analysis does not involve making determinations about how contested issues of fact and law might have been resolved but asks whether class members have been properly protected and whether the settlement as a whole is fair, adequate and reasonable. *See Hawkins v. Kroger Co.*, No. 15-cv-2320 JM (AHG), 2022 WL 345639, at *5 (S.D. Cal. Feb. 4, 2022) ("'proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class'" (quoting *Nat'l Rural Telecomms.*

*Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. Jan. 5, 2004)). Fourth, because "it may be possible that years from now the class would succeed on the merits only to 'recover nothing' in damages" (*Rael,* 2021 WL 1226475, at *7 (S.D. Cal. Mar. 31, 2021)), a $90 million settlement now, **with injunctive relief**, is a far superior outcome. Finally, reflecting the Ninth Circuit's pro-settlement policy, "'[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Hawkins*, 2022 WL 345639, at * 4 (quoting *Nat'l Rural Telecomms*, 221 F.R.D at 526)).

e.       Extent of Discovery and Stage of Proceedings

This requirement, fully met here, measures whether Class Counsel had done the work required fully to identify, develop and understand the strengths and weaknesses of their claims. Consulting with five privacy, technology and damages experts, Class counsel researched and drafted three Amended Complaints. The First Amended Complaint ("FAC") was forty-three pages long, contained 120 discrete and detailed factual allegations and alleged eleven substantive Counts. The Second Amended Complaint ("SAC") was some fifty-seven pages long, set forth 154 paragraphs of factual allegations and alleged eleven causes of action. The Third Amended Complaint included 110 factual allegation paragraphs, and two counts.

Class counsel analyzed, researched, briefed and argued Defendant's motions to dismiss those three Complaints. *See* ECF 18, 35, 44, 52–55, 59, 87 (FAC); 90–93, 101, 104–105, 109, 119, 148 (SAC); 157, 162-163, 168, 171, 174 (TAC). Class Counsel researched, briefed and argued the successful Ninth Circuit appeal. Then, with retained Supreme Court counsel Gupta Wessler, Class Counsel analyzed Defendant's petition for a writ of certiorari to the Supreme Court and researched and briefed the opposition to that petition.

Plaintiffs and Class Counsel undertook and responded to written discovery, briefed Motions to Compel, ECF 110, 114–115, 141–142, opposed Defendant's Motion to Stay Discovery ECF 108, 111, 112, established a document database, reviewed four rounds of documents produced by Defendant, searched for and produced Plaintiff documents to Defendant, and, before settlement was reached, was negotiating with Defendant about custodians and search terms for additional document productions from Defendant in the event settlement failed.

Class Counsel researched and drafted briefs concerning the propriety of judicial notice of certain documents, ECF 56–58, and filed notices of supplemental authority as privacy rights case law developed. ECF 61, 69, 70, 73, 76-78, 124–127, 130, 133, 135–137, 139–140, 146.

Consulting with their retained economic expert, Class Counsel also researched and drafted an opening mediation brief and analyzed Defendant's opening mediation brief before the initial seven-hour mediation on April 27, 2021. Class counsel obtained discovery in aid of mediation that was crucial to driving the settlement. *See* Joint Dec. ¶ 35. With progress in the opening session, Class Counsel submitted a supplemental mediation brief on July 12, 2021. *Id*. The parties mediated again for approximately ten hours on July 13, 2021. In a last-ditch effort at resolution, the parties mediated a third time on July 23, 2021. *Id.*. After almost four more hours of mediation, the Parties accepted the Mediator's proposal and reached a settlement agreement in principle, followed by six months of negation, largely related to the injunctive relief. *Id*.

As the foregoing demonstrates, Class Counsel, who are highly experienced in class actions and in privacy rights cases in particular, ECF 233-2 – 233-12, fully understood the facts and law of their case, Defendant's counterarguments, and the pros and cons of continued litigation.

f.      Experience and Views of Counsel

Here, highly experienced Class Counsel, fully informed about their case, unreservedly believe the settlement is not just fair, adequate and reasonable, but provides an exceptional result for the class. Nor is it just a few lawyers urging settlement approval. Plaintiffs were represented in all three mediations by other counsel as well – including Margery Bronster (the former Attorney General of the State of Hawai'i) and Renee Wicklund who represented the State Court Plaintiff. All support the settlement. The "experience and views of counsel" factor strongly favors settlement approval. *See, e.g., In re Apple Device Performance Litig.*, No. 5:18-md-02827-EJD, 2021 WL 1022867, at \*10 (N.D. Cal. Mar. 17, 2021) ("experience and views of well-informed and experienced Class Counsel favor approval of the settlement;" "'that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight'" (quoting *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. Feb. 7, 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981)). *See also Jackson v. Fastenal*, No. 1:20-cv-00345-NONE-SAB,

1  2021 WL 5755583, at *9 (E.D. Cal. Dec. 23, 2021) ("significant weight" accorded to

2  recommendation of experienced counsel familiar with facts).[8]

3  g.  Presence of Governmental Participant

4       No governmental agency participated in this settlement, rendering this factor of no material

5  importance. However, CAFA notice was duly given to the Attorney General Offices of all states.

6  ECF No. 239.

7  h.  Reaction of Class Members

8       As discussed above, the deadline to submit claims runs for another month, until September

9  22, 2022, and just last week Lead Counsel and Meta counsel authorized Angeion to run a

10  supplemental email and media notice program. Plaintiffs will update the Court with final figures at

11  the conclusion of the claims period. But even the early results are encouraging. Total claims are

12  already over 1.3 million, and so far, there are only three objections. *See Bautista-Perez v. Juul Labs,*

13  *Inc.*, No. 20-cv-01613-HSG, 2022 WL 2239838, at * (N.D. Cal., June 22, 2022) ("'[T]he absence

14  of a large number of objections to a proposed class action settlement raises a strong presumption

15  that the terms of a proposed class settlement action are favorable to the class members.'" (quoting

16  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. Jan 5, 2004);

17  also citing *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. Sept. 15, 2015), for

18  proposition: "'A low number of opt-outs and objections in comparison to class size is typically a

19  factor that supports settlement approval.'").

20

21

---

22  [8] One recent case noted that "courts have diverged on the weight to assign counsel's opinions."
23  *Parker v. Cherne Cont. Corp.*, No. 18-cv-01912-HSG, 2021 WL 5834227, at *5 (N.D. Cal. Dec. 9, 2021). But the case *Parker* cited for the "less weight" side of the ledger, *Chun-Hoon v. McKee*
24  *Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. June 7, 2010), although stating "this court is reluctant to put much stock in counsel's pronouncements" ultimately found that the impact of
25  counsel's views was "modest but favors settlement." And numerous recent cases continue to assign meaningful weight to counsel's views. *See, e.g., Jackson*, 2021 WL 5755583, at *9; *In re Apple*
26  *Device Performance Litig.*, 2021 WL 1022867, at *10; *Rodriguez v. Nike Retail Servs., Inc.*, No. 14-cv-01508-BLF, 2022 WL 254349, at *4 (N.D. Cal. Jan. 27, 2022) ("experience and views of
27  counsel . . . favors approving the settlement" noting counsel's "thorough understanding" of case and "extensive experience").

28

---

3. *All Rule 23(e)(2) Approval Factors Are Satisfied* [9]

a. Class Was Well-Represented

Rule 23(e)(2)(A) requires that the Plaintiffs and Class Counsel "have adequately represented the class." As the long history of the litigation, the mediation process, and the excellent results obtained demonstrate more powerfully than any verbiage can, representation here was superior, not just "adequate." *See* Transcript of Prelim. App. Hearing 03/31/2022 at 9:13–20 (case took "a very important path . . . new law was made here. This case has had serious litigation at both the trial court level, at the appellate court level, and also an attempt to get to the Supreme Court, and that's not a feat that should go unnoticed").

Pursuing what were, at the time, novel legal claims in a highly complex technological setting, through the FAC, SAC, and TAC, then in trips to the Ninth Circuit and Supreme Court, the Plaintiffs and Class Counsel persevered. Plaintiffs worked closely with Class Counsel, responded to production requests, and provided verified interrogatory responses. ECF 233 at ¶ 29. Class Counsel, at their own expense, hired and worked with five technology, privacy, and economic consulting experts, ECF 233 at ¶ 28, paid for and established a document database, reviewed Defendant's production, and prior to settlement had been negotiating additional document custodians and search terms with Defendant. ECF 233 at ¶ 29. Class Counsel also started focus-grouping various issues in advance of the second mediation. ECF 233 at ¶ 30. Class Counsel obtained additional discovery in aid of mediation at the direction of the mediator. ECF 233 at ¶ 21.

After twenty-one hours of hard bargaining, and the settlement in principle was reached, Class Counsel continued for six more months to negotiate the injunctive relief with Defendant, obtained and vetted bids from three different Claims Administrators to ensure the best and most cost-effective notice and claims program for the class, and worked with Defendant to make sure

---

[9] Although "Rule 23 has been amended to list the factors most central to approval of a class action settlement . . . '[s]everal of the *Churchill* factors were incorporated into Rule 23(e)(2) as amended.'" *Quiruz v. Specialty Commodities, Inc.*, No. 17-cv-03300-BLF, 2020 WL 6562334, at *5 (N.D. Cal. Nov. 9, 2020) (quoting *Walters v. Target Corp.*, No. 3:16-CV-1678-L-MDD, 2020 WL 6277436, at * 5 (S.D. Cal. Oct. 26, 2020). To avoid confusion about exactly where the overlap exists between Rule 23(e)(2) and the *Churchill* test, but at the unavoidable risk of some duplication, Plaintiffs address all of the *Churchill* and Rule 23(e) factors separately.

that class member data was provided to the Claims Administrator. ECF 233 ¶¶ 24, 26. Not a whiff of any "collusive" behavior exists, or can be conjured up, anywhere in the conduct of the litigation, the mediation, or the ultimate settlement. ECF 233 ¶ 25.

b.      Settlement Negotiated at Arms-Length

Rule 23(e)(2)(B)'s mandate that the settlement have been "negotiated at arm's length" is beyond dispute. The length and intensity of the mediation, the crucial role played by Mr. Wulff, the six months of continued negotiations after agreement in principle was reached, and the absence of any of the *Bluetooth* "red flags" suffice to prove the point.

c.      Relief Provided to Class Is Adequate

**Costs, Risks, Delay of Trial.** The first metric for measuring compliance with Rule 23(e)(2)(C) is whether the settlement provides adequate relief to the class considering "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). As discussed in detail above, deciding to settle for $90 million and important injunctive relief was the right decision. Forgoing those benefits for the class in lieu of continuing to litigate for years with a non-negligible risk of ending up with nothing for the class would have been foolhardy.

**Settlement Distribution and Claims Processing.** The second Fed. R. Civ. P. 23(e)(2)(C) metric for measuring the adequacy of the settlement relief is "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). Angeion, a world-class notice and claims administrator, selected after a competitive bidding process,[10] provided the Court with Plaintiffs' Motion for Preliminary Settlement Approval Angeion's well-developed plan, based on years of experience in cases such as this, for identifying and giving notice to class members, and for processing class-member claims. ECF 233-1. The notice program has built-in redundancies, Angeion has established methods for seeking alternative delivery for returned-as-undelivered notices, all settlement communications are written in readily understandable language and the claim form is simple. If Settlement Funds remain after the initial settlement distribution is calculated, the initial payment per Class Member will be

---

[10] The selection of Angeion was also approved by Meta counsel after the proposed contract was shared with and vetted by them.

increased in an equal amount for each Class Member.

**Attorneys' Fees.** The third metric for measuring the adequacy of settlement relief, "the terms of any proposed award of attorney's fees, including timing of payment" (Fed. R. Civ. P. 23(e)(2)(C) (iii)), shows the settlement was completely untethered to the attorneys' fees issue and that the class's recovery is not impaired by excessive attorney's fees. Incorporating by reference here Plaintiffs' Memorandum In Support of Award of Attorneys' Fees, Costs and Service Awards, Plaintiffs highlight only a few key points here.

First and fundamentally, the parties agreed on no amount of fees, the process for and Court ruling on a motion for attorneys' fees and costs was "not a material term of the Settlement or this [Settlement] Agreement," and the Settlement Agreement was expressly untethered to approval of any particular application for fees and costs. Class Counsel is required to make a separate request for an award of fees and costs and Defendant has the right to object to any award of fees and costs at all. ECF 233-1, §§ 3.6, 10.1–10.5. Second, the request for fees not exceeding 29% of the Settlement Fund is close to the long-established 25% benchmark in the Ninth Circuit. *See In re Google St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1120 (9th Cir. 2021) ("'in the Ninth Circuit, the benchmark fee award is 25%'" (quoting *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002)). Further, "in most common fund cases, the award exceeds [the 25%] benchmark." *Ahmed v. Beverly Health & Rehab. Servs., Inc.*, Civ. No. 2:16-1747 WBS KJN, 2018 WL 746393, at *11 (E.D. Cal. Feb. 7, 2018 (quoting *Bond v. Ferguson Enters., Inc.*, Civ. No. 1:09-1662 OWW MJS, 2011 WL 2648879, at *9 (E.D. Cal. June 30, 2011), and citing cases). *See also Quiruz v. Special Commodities, Inc.*, No. 17-cv-03300-BLF, 2020 WL 6562334, at *10 (N.D. Cal. Nov. 9, 2020) ("'typical range of acceptable attorneys' fees" in Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage'" (quoting *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. July 2, Cal. 2013)).

Third, long-standing law teaches that the benchmark can be adjusted "'upward or downward to account for any unusual circumstances involved in the case.'" *Google St. View*, 21 F.4th at 1120 (quoting *Fischel*, 307 F.3d at 1006)). One basis for upward adjustment is Class Counsel's success in making what the Court described correctly in the Preliminary Approval Hearing as "new law."

*See Ontiveros v. Zamora*, 303 F.R.D. 356, 373 (E.D. Cal. Oct. 8, 2014) ("novelty of class counsel's legal arguments may constitute 'special circumstances' justifying a departure from the benchmark" and concluding such upward departure was warranted (citing *Teitelbaum v. Sorenson*, 648 F.2d 1248, 1250 (9th Cir. 1981), for proposition "'Actions based on novel legal theories generally require greater attorney effort than actions based on familiar legal theories.'").

Class Counsel's achieving an "'exceptional' result" is another basis for an increase from the 25% benchmark. *Burnell v. Swift Transp. Co. of Ariz., LLC*, No. EDCV 10-00809-VAP (OPx), 2022 WL 1479506, at *9 (C.D. Cal. Apr. 28, 2022) ("[u]pward departures from the benchmark typically require an 'exceptional' result" (citing *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 456 (E.D. Cal. May 14, 2013)). This settlement, one of the ten largest monetary settlement in cases of its kind, ECF 233-13, coupled with important injunctive relief, is an exceptional result.

Fifth, no "agreement required to be identified under Rule 23(e)(3)" (Fed. R. Civ. P. 23(e)(2)(C)(iv)), which is "any agreement made in connection with the proposal" for settlement approval (Fed. R. Civ. P. 23(e)(3),) creates any doubt about the fairness, reasonableness and adequacy of the settlement. The Angeion contract is available to the Court. Class Counsel engaged Gupta Wessler as Supreme Court counsel, from which the class benefited greatly. If Final Settlement Approval is granted and the Court awards attorneys' fees and costs, Gupta Wessler will be paid out of whatever amount the Court awards to Class Counsel.

### d.      Equitable Treatment of Class Members

Rule 23(e)(2)'s final determinant of the fairness, reasonableness and adequacy of a settlement is whether it "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here the answer is plainly "Yes." Authorized Claimants will all receive equal payments. ECF 233.1, § 4.3. If Residual Funds remain in the Net Settlement Fund after the initial payments to Authorized Claimants, and a further distribution is economically feasible, the Authorized Claimants will receive additional payments on an equal basis. ECF 233-1, § 4.7.[11]

---

[11] However, if the Settlement Administrator determines that it is not administratively and economically feasible to make a secondary distribution that includes payment by mailed checks, the secondary distribution will be made, on an equal basis, only "to Authorized Claimants who

1
2
3
4
5
6
7
8
9

Nor will Service Awards for each of the four Settlement Class Representatives in the MDL Action and in the State Court Action, ECF 233-1, § 11.2, create any inequity within Rule 23(e)'s intendment. All of the Settlement Class Representatives reviewed the Settlement Agreement's term sheet *before* they were informed of the proposed Service Awards. ECF 233, ¶ 25. The proposed Settlement is not conditioned on the approval of any Service Awards, in any amount. ECF 233-1, § 3.6. The proposed Service Awards are not conditioned on the Settlement Class Representatives' approval of the Settlement. ECF 233-1, § 11.4. Awards of $3,000 are "presumptively reasonable." *See Sandoval Ortega v. Aho Enters., Inc.*, No. 19-cv-00404-DMR, 2021 WL 5632673, at *10–11 (S.D. Cal. Nov. 30, 2021).

10
11
12
13
14
15

Finally, the proposed awards do not create any "adequacy" problem by being disproportionate to the average anticipated Authorized Claimant's recovery, as numerous courts have ruled. *See, e.g., LinkedIn*, 309 F.R.D. at 582 (approving $5,000 service award where class members would receive approximately $14.81); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947–48 (9th Cir. 2015) (approving $5,000 service award, "roughly 417 times larger than the $12 individual award").

16
17
18
19
20
21

In addition, the amount of each Service Award is less important than the cumulative amount of Service Awards in analyzing whether impermissibly preferential treatment exists. *Id.* (quoting *Staton*, 327 F.3d at 948–49, 976–77). Here, the aggregate Service Awards are a fraction of a fraction of the settlement (0.03%). By comparison, the aggregate Service Awards approved in *Online DVD* constituted ".17% of the total settlement fund" (*Online DVD*, 779 F.3d at 948), a much larger percentage than is involved in our case.

22

4. *All N.D. Cal. Guidance Final Approval Factors Are Satisfied*

23
24
25
26

The Northern District's Guidance factors are not mandatory but, as their title implies, are "simply…guidance." *See In re Cathode Ray Tube (Crt) Antitrust Litig.*, 2016 WL 3648478, at *7 (N.D. Cal. July 7, 2016) (noting introduction and title of Guidance). But here, all Guidance factors for final approval are fully met.

27
28

elected to receive a Settlement Payment through ACH, PayPal, Zelle, Venmo, or a virtual prepaid Mastercard." ECF. 233-1, §4.7.

1

2               a.      Class Members' Response

As discussed above, this Motion precedes the deadlines for claims submissions, objections

and opt-outs, so Plaintiffs can only address the first part of the first of the five elements under the

first Final Approval Guidance, the "[n]umber of undeliverable notices and claim packets." *See*

Weisbrot. Dec. ¶ 9.  Plaintiffs will provide responses to the other four elements (final numbers of

valid claims, opt-outs, objections and responses to any objections) in the reply filing prior to the

Final Approval Hearing.

8               b.      Attorneys' Fees

Plaintiffs are filing contemporaneously with this Motion a separate Motion for Approval of

Attorneys' Fees, Expenses and Service Awards. That Motion includes "[d]etailed lodestar

information…[s]ufficiently detailed Class Counsel Declarations" reflecting the "hours spent on

various activity categories by each billing attorney," and "hourly billing rates." Further, the hearing

on the Attorneys' Fees and Expenses Motion is, as the Guidance suggests, taking place "on the

same date as the final approval hearing."

15              c.      Incentive Awards

Plaintiffs incorporate by reference the discussion above and Declarations of Plaintiffs

demonstrating why the Service Awards are reasonable and warranted.[12]

**IV.     CONCLUSION**

For all of the reasons discussed in the foregoing, the Plaintiffs respectfully request that the

Court confirm certification of the Settlement Class and grant final approval of this important data

privacy class action settlement.

---

[12] Plaintiffs have, and will continue to comply, with the fourth Final Approval Guidance factor by emailing all proposed orders and judgments to Chambers. Plaintiffs will also comply with the Guidance's suggestions for Post-Distribution Accounting and Posting of Post-Distribution Accounting.

1
2
Dated: August 23, 2022                                    Respectfully Submitted,

3
**DiCELLO LEVITT GUTZLER LLC**                    **GRYGIEL LAW LLC**

4
_____/s/ David Straite_____                    _____/s/ Stephen Grygiel_____
David A. Straite (admitted *pro hac vice*)          Stephen G. Grygiel (admitted *pro hac vice*)

5
One Grand Central Place                             127 Coventry Place
60 East 42nd Street, Suite 2400                     Clinton, NY 13323

6
New York, New York 10165                           Tel.: (407) 505-9463

7
Tel.: (646) 933-1000                                *stephengrygiel22@gmail.com*
Fax: (646) 494-9648

8
*dstraite@dicellolevitt.com*                        **SIMMONS HANLY CONROY LLC**

9
Amy E. Keller (admitted *pro hac vice*)            _____/s/ Jay Barnes_____

10
Adam Prom (admitted *pro hac vice*)                Jason 'Jay' Barnes (admitted *pro hac vice*)
Ten North Dearborn Street, 6th Fl.                  112 Madison Avenue, 7th Floor

11
Chicago, Illinois 60602                             New York, NY 10016
Tel.: (312) 214-7900                                Tel.: (212) 784-6400

12
*akeller@dicellolevitt.com*                         Fax: (212) 213-5949
*aprom@dicellolevitt.com*                           *jaybarnes@simmonsfirm.com*

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)**

2

I, David A. Straite, attest that concurrence in the filing of this document has been obtained

3

from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

4

Executed this 23rd day of August, 2022, at New York, New York.

5

6

*/s/ David Straite*

7

David A. Straite

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28