**DiCELLO LEVITT GUTZLER LLC**
David A. Straite (admitted *pro hac vice*)
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, New York 10165
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Ten North Dearborn Street, 6th Fl.
Chicago, Illinois 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*

*Class Counsel*

**GRYGIEL LAW LLC**
Stephen G. Grygiel (admitted *pro hac vice*)
127 Coventry Place
Clinton, NY 13323
Tel.: (407) 505-9463
*stephengrygiel22@gmail.com*

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE FACEBOOK INTERNET TRACKING LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 5:12-MD-2314-EJD<br><br>**JOINT DECLARATION OF STEPHEN G. GRYGIEL AND DAVID A. STRAITE IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**<br><br>Judge: Hon. Edward J. Davila<br>Courtroom: 4—5th Floor<br>Date: October 27, 2022<br>Time: 9:00 a.m. |

We, David A. Straite and Stephen G. Grygiel, jointly declare and state as follows:

1. I, David A. Straite, am a member of the bars of the States of New York, Delaware, Pennsylvania, New Jersey and District of Columbia and admitted to practice before this Court *pro hac vice*. I am a partner with the firm of DiCello Levitt Gutzler LLC.

2. I, Stephen G. Grygiel, am a member of the bars of the States of Maine, Massachusetts, Delaware, Maryland and New York, and admitted to practice before this Court *pro hac vice*. I am the founder of Grygiel Law LLC and, relevantly for this case, was formerly a partner in and then *of counsel* to Silverman Thompson Slutkin White and before that a partner in the law firm of Keefe Bartels.

3. We are co-lead counsel for the Settlement Class Representatives Plaintiffs and the Settlement Class. We have personal knowledge of the facts stated herein and of the claims, defenses, and proceedings in this case. If called as witnesses, we would and could competently testify thereto.

4. We respectfully submit this joint declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plaintiffs' Motion for Fees, Expenses and Service Awards, both filed August 23, 2022.

**EXHIBITS**

5. Attached hereto as **Exhibit 1** is a true and correct copy of the Declaration of Steven Weisbrot of Angeion Group, the Court-approved Claims Administrator, regarding status of implementation of the Notice Plan, including the following exhibits thereto:

   a. Exhibit 1A: copy of the email notice.

   b. Exhibit 1B: copies of the digital banner advertisements and social media advertisements.

   c. Exhibit 1C: copies of the sponsored listings.

   d. Exhibit 1D: list of people requesting exclusions.

6. Attached hereto as **Exhibit 2** is a true and correct copy of the [Proposed] Order of Final Approval, the same as the Word version to be emailed to the Court.

7. Attached hereto as **Exhibit 3** is a true and correct copy of the [Proposed] Final Judgment, the same as the Word version to be emailed to the Court.

8. Attached hereto as **Exhibit 4** is a true and correct copy of the Declaration of Jason "Jay" Barnes of Simmons Hanly Conroy LLC, Chair of the Plaintiffs' Executive Committee.

9. Attached hereto as **Exhibit 5** is a true and correct copy of the Declaration of Margery Bronster of Bronster Fujichaku Robbins, Chair of the Settlement/AG Committee.

10. Attached hereto as **Exhibit 6** is a true and correct copy of the Declaration of William H. "Billy" Murphy, Jr. of Murphy Falcon Murphy, Member of the Plaintiffs' Executive Committee and Chair of the Expert Committee.

11. Attached hereto as **Exhibit 7** is a true and correct copy of the Declaration of Barry Eichen of Eichen Crutchlow Zaslow LLP, Member of the Plaintiffs' Executive Committee.

12. Attached hereto as **Exhibit 8** is a true and correct copy of the Declaration of Paul Kiesel of Kiesel Law LLP, Member of the Plaintiffs' Executive Committee.

13. Attached hereto as **Exhibit 9** is a true and correct copy of the Declaration of Stephen Gorny of Gorny Dandurand, LC, Member of the Plaintiffs' Executive Committee.

14. Attached hereto as **Exhibit 10** is a true and correct copy of the Declaration of James Frickleton of Bartimus Frickleton Robertson Rader, Member of the Plaintiffs' Executive Committee.

15. Attached hereto as **Exhibit 11** is a true and correct copy of the Declaration of William M. Cunningham, Jr. of Burns, Cunningham & Mackey, P.C., Member of the Plaintiffs' Executive Committee.

16. Attached hereto as **Exhibit 12** is a true and correct copy of the Declaration of Andrew J. Lyskowski of Bergmanis Law Firm LLC, Member of the Plaintiffs' Executive Committee.

17. Attached hereto as **Exhibit 13** is a true and correct copy of the Declaration of Kim Richman, State Court Counsel in the parallel State Court Action.

18. Attached hereto as **Exhibit 14** is a true and correct copy of the Declaration of Eric Lansverk, counsel to Settlement Class Representative Matthew Vickery.

19. Attached hereto as **Exhibit 16** is a true and correct copy of the Declaration of Settlement Class Representative Perrin Davis.

20. Attached hereto as **Exhibit 17** is a true and correct copy of the Declaration of Settlement Class Representative Dr. Brian Lentz.

21. Attached hereto as **Exhibit 18** is a true and correct copy of the Declaration of Settlement Class Representative Cynthia Quinn.

22. Attached hereto as **Exhibit 19** is a true and correct copy of the Declaration of Settlement Class Representative Matthew Vickery.

23. Attached hereto as **Exhibit 20** is a true and correct copy of the Declaration of Settlement Class Representative Ryan Ung (State Court Action).

24. Attached hereto as **Exhibit 21** is a true and correct copy of the Declaration of Settlement Class Representative Chi Cheng (State Court Action).

25. Attached hereto as **Exhibit 22** is a true and correct copy of the Declaration of Settlement Class Representative Alice Rosen (State Court Action).

26. Attached hereto as **Exhibit 23** is a true and correct copy of Cynthia J. LaRose and Natalie A. Prescott, *Facebook to Pay $90 Million to Settle Data Privacy Lawsuit*, NATIONAL LAW REVIEW, Vol. XII, No. 49 (Feb. 18, 2022).

27. Attached hereto as **Exhibit 24** is a true and correct copy of Mike Swift, *Latest Facebook Privacy Settlement has Significance Beyond the Numbers*, MLEX (Feb. 16, 2022).

28. Attached hereto as **Exhibit 25** is a true and correct copy of Mayank Sharma, *Meta's Settlement Could Be the Beginning of the End of Tracking Cookies*, LIFEWIRE (Feb. 17, 2022).

29. Attached hereto as **Exhibit 26** is a true and correct copy of Paul Bond and Mark S. Melodia, *Facebook Stops Fighting Wiretap Act Litigation After More Than a Decade*, HOLLAND & KNIGHT CYBERSECURITY AND PRIVACY BLOG (Feb. 18, 2022).

30. Attached hereto as **Exhibit 27** is a true and correct copy of a summary of report of lodestar across the case (including hours and hourly rate) reported by Settlement Class Counsel and Supreme Court Counsel as shown in the declarations above; for Lead Counsel the hours and hourly rates are supported below. For attorneys still working on the case, the hourly rate is the current hourly rate. For former attorneys, lodestar reflects historical rates. Hours and lodestar are reported here by timekeeper, by firm.

31. Attached hereto as **Exhibit 28** is a true and correct copy of the lodestar reported in the preceding paragraph and Exhibit 27 thereto, but organized by task code. "Task Codes" are ABA Litigation Task Codes, assigned to each entry by DiCello Levitt paralegal Sharon Banks to ensure uniformity across the case, under the supervision of David Straite and Steve Grygiel.

32. Attached hereto as **Exhibit 29** is a true and correct copy of lodestar reported in paragraph 30 and Exhibit 27 thereto, but organized by year. For time reported in 2012, the report separates reported time from January 1, 2012 through April 2, 2012 (added to "pre-consolidation time") and from April 3, 2012 through December 31, 2012 (added to "post-consolidation time"). "Consolidation" here means the Courts' order consolidating the related cases with and into MDL 2314.

33. Attached hereto as **Exhibit 30** is a true and correct copy of the summary report of all unreimbursed expenses incurred in this case from inception, based on the declarations included above and in the paragraphs below for firms affiliated with us.

34. Attached hereto as **Exhibit 31** is a true and correct copy of the [Proposed] Order Granting Motion for Fees, Expenses and Service Awards.

**ADDITIONAL FACTS REGARDING WORK PERFORMED**

35. The following is a non-exhaustive summary of the work in which we have been directly, substantially and personally involved:

    a. Researching and drafting an initial pre-consolidation Complaint;

    b. Working with co-counsel to develop a consensually-ordered case leadership structure that would most efficiently serve the class's interests;

|   |   |   |
|---|---|---|
| 1 | c. | Communicating with and advising the Named Plaintiffs; |
| 2 | d. | Drafting and filing the motion to centralize the individual cases in the Northern District of California; |
| 4 | e. | Traveling to and arguing the motion before the JPML in Miami; |
| 5 | f. | After the MDL Consolidation Order, researching and drafting the First Amended Complaint ("FAC"); Second Amended Complaint ("SAC") and Third Amended Complaint ("TAC"); |
| 8 | g. | Vetting potential experts and working with retained experts on technology, privacy and economic issues when drafting the Complaints and on other issues as the litigation progressed; |
| 11 | h. | Researching and drafting the Plaintiffs' Oppositions to the Defendant's Motions to Dismiss the FAC, SAC and TAC; |
| 13 | i. | Preparing for and arguing against the Defendants' Motions to Dismiss the FAC and the TAC, including travel; |
| 15 | j. | Drafting and arguing motions to compel discovery; |
| 16 | k. | Opposing Defendant's motion to stay discovery; |
| 17 | l. | Reviewing documents identified by document reviewers for production to Defendant; |
| 19 | m. | Interviewing Lead Plaintiffs to draft and verify Interrogatory responses; |
| 20 | n. | Supervising review of documents produced by Defendant in discovery, including creation of tags and codes and document review memoranda; |
| 22 | o. | Appellate briefing in the Ninth Circuit; |
| 23 | p. | Travel to and argue before the Ninth Circuit; |
| 24 | q. | Review and analysis of Ninth Circuit decision; |
| 25 | r. | Retention of Supreme Court counsel for, and the briefing of, the opposition to the Defendant's petition to the United States Supreme Court for a writ of certiorari after the Ninth's Circuit's ruling that re-instated most of the |

Plaintiffs' claims;

s. Researching and vetting potential mediators;

t. Drafting the Plaintiffs' initial and supplemental mediation briefing, including review of "hot documents" in support thereof;

u. Working with Plaintiffs' economic expert in developing a damages model and supporting expert reports for use in the mediation;

v. Working on the discovery in aid-of-mediation;

w. Conducting settlement discussions between the three mediation sessions with defense counsel;

x. Leading the three mediation sessions of seven hours on April 27, 2021, ten hours on July 13, 2021, and four hours on July 23, 2021, and consulting with Ms. Bronster (Chair of the Settlement/AG Committee) and other members of the settlement team, including State Court Counsel Renee Wicklund throughout all three mediations and in the intervals between them, a process that ultimately produced settlement agreement in principle through the proposal of the Mediator, Randy Wulff;

y. Working closely with co-counsel for some six (6) months after the initial settlement agreement in principle was reached, and further negotiating additional issues with Defendant's counsel, such as the scope of injunctive relief, that remained for resolution after the agreement-in-principle was reached to resolve the case;

z. Drafting the settlement agreement and coordinating with State Court Counsel;

aa. Analyzing and vetting proposals for the Claims and Notice Administrator role, and, after consultations with Defendants' counsel, selecting Angeion as the most appropriate entity to fill that role for this case;

bb. Researching and drafting the initial draft of the Plaintiffs' Memorandum of

Law In Support of Preliminary Settlement Approval and working closely with co-counsel in finalizing that brief and other papers filed in support of Preliminary Settlement Approval;

cc. Drafting, discussing and circulating numerous research memoranda in preparation for the oral argument for Preliminary Settlement Approval, including memoranda: (i) analyzing numerous Ninth Circuit cases addressing the fundamental settlement approval principles and discrete settlement analysis factors outlined in *Churchill Village, Hanlon, Bluetooth* and other cases and the additional analyses required by Rule 23(e) and the Northern District Guidance; the required settlement class certification factors; the somewhat inconsistent cases discussing the weight for settlement approval that Courts assign to the "views of experienced counsel;" and, in analyzing the "risk of continued litigation versus the benefits of the settlement" issue, outlining in detail the required elements of each of the remaining claims and the anticipated defenses to those claims, with the implications for class certification; (ii) analyzing the areas of overlap of Ninth Circuit settlement approval factors with the factors contained in Rule 23( e) and the Northern District Guidance; (iii) listing cases discussing the components of an unusually successful settlement; (iv) discussing thematic points supporting preliminary settlement approval; and (v) summarizing all cases cited in Plaintiffs' Memorandum of Law In Support of Preliminary Settlement Approval, listing and discussing them by category, e.g., class certification requirements, settlement approval factors, and notice requirements;

dd. Preparing and circulating a detailed oral argument outline for the Preliminary Settlement Approval hearing;

ee. Oral argument in support of Preliminary Settlement Approval;

ff. Working closely with Angeion and Defendant's counsel in handling settlement administration issues, crafting proper notice, ensuring the settlement communications were clear and concise, working to ensure the success of the notice program, and responding to class member inquiries;

gg. Communications to the Named Plaintiffs and other counsel for Plaintiffs;

hh. Researching and writing the initial draft of Plaintiffs' Memorandum of Law In Support of Final Settlement Approval, and continuing to work on revisions to that brief and its supporting documents;

ii. Working with Angeion and Defendant's counsel on a Supplemental Notice Program, negotiating the cost of that program and seeing to its funding and prompt implementation;

jj. Communicating directly with class members about the settlement; and

kk. Supervising the preparation of all exhibits to this Declaration.

## **WORK PERFORMED THROUGH AFFILIATED FIRMS**

36. When this litigation commenced, Mr. Grygiel was a partner in the Red Bank, New Jersey law firm of Keefe Bartels. He was the partner in charge of the case at Keefe Bartels, and personally performed the vast majority of Keefe Bartels's substantive work on the case.

37. In April 2014 Mr. Grygiel became a partner at the Baltimore law firm of Silverman Thompson Slutkin White ("STSW"). He was the partner in charge of the case at STSW and personally performed the vast majority of STSW's substantive work on the case.

38. In May 2019 Mr. Grygiel formed Grygiel Law, LLC, personally handled all of Grygiel Law, LLC's work on this case, and funded all of Grygiel Law, LLC's shares of the various expenses of the litigation, including expert costs and mediation expenses.

39. Mr. Straite was a partner with Stewarts Law US LLP in Wilmington, Delaware and New York, NY, where he was the partner in charge of this case.

40. In 2013, Mr. Straite moved his practice to Kaplan Fox & Kilshiemer LLP in New York, NY. At Kaplan Fox, Mr. Straite was the partner in charge of this case and performed a

majority of the work.

42. In 2021, Mr. Straite moved his practice to DiCello Levitt Gutzler LLC, including this case, with the consent of Kaplan Fox. Kaplan Fox partner Laurence D. King continued to serve on the Mediation/Settlement committee until the case resolved.

## **REVIEW OF TIME AND EXPENSE RECORDS**

42. Mr. Grygiel has reviewed the time and expense records of Keefe Bartels, STSW and Grygiel Law, LLC (collectively "T&E Records"). Mr. Grygiel states as follows:

    a.    Although I keep contemporaneous and detailed time records (with the occasional delay of a day or two), I do not believe the T&E Records reflect all of the hours I have dedicated to this case. My lead role in this very important privacy rights case, the many twists and turns the litigation took, the sometimes conflicting developments of privacy rights law in the jurisprudence of different courts, the various potential damages calculation methods, the complexities and difficulty of the settlement negotiations, all ensured that I was often thinking about this case, and how to succeed in litigating or resolving it, even when I was not directly researching, drafting, arguing or mediating.

    b.    The chart below summarizes the time entries from the T&E Records of Keefe Bartels, STSW and Grygiel Law, LLC. Because Keefe Bartels's involvement in the case, which occurred through me, pre-dated the April 3, 2012 Consolidation Order, the Keefe Bartels entry reflects three (3) different compilations: (i) total recorded time; (ii) total recorded time less *all* pre-MDL Consolidation time; and (iii) total recorded time less all pre-MDL Consolidation time *except* for certain pre-MDL Consolidation time reflecting work that I reasonably believe inured to the common benefit of the class and the ultimate success of the case. All of STSW's and Grygiel Law, LLC's time occurred after the entry of the Consolidation Order, so no

adjustments for pre-consolidation time are necessary.

| Firm | Total Time | Total Time Less *All* Pre-Consolidation Time | Total Time Less All Pre-Consolidation Time *Except* for Certain Common Benefit Pre-Consolidation Time |
|---|---|---|---|
| Keefe Bartels | $574,332.50 | $440,020,00 | $524,610 (includes 76.9 hours of S. Grygiel pre-Consolidation work) |
| STSW | $471,384.50 | N/A | N/A |
| Grygiel Law, LLC | $664,510 | N/A | N/A |

c. I analyzed the T&E Records in seeking to ensure that inefficiencies and duplications were identified and removed. Given the age of the case, and the sometimes terse descriptions of some work, I cannot state that all inefficiencies and duplications were removed. However, because the T&E Records primarily reflect my own work, I can state that any unremoved inefficiencies and duplications are, in the context of the overall T&E Reports in this case, immaterial.

d. My pre-consolidation time at Keefe Bartels involved substantial legal research into many of the claims that ultimately were reinstated by the Ninth Circuit, working with co-counsel on the drafting of an initial Complaint, working with experts, gaining insight and knowledge about the technology at issue, analyzing potential statutory and common law damages calculations, and working with other counsel to develop an appropriate, efficient and effective leadership structure for the efficient prosecution of the case. All of that work remained not just useful, but important, in my post-

Consolidation work on the case. My pre-Consolidation work was the crucial foundation on which the rest of my work in the case built and that ultimately produced what is undeniably a superb final settlement result. Put still another way, my pre-consolidation work "conferred benefits on the multidistrict class." *In re Volkswagen and Audi Warranty Extension Litig.*, 89 F.Supp. 3d 155, 180-181 (D. Mass. 2015) (analyzing pre-consolidation time and construing "record generously" in favor of compensating for such time where, among other factors, "there is little evidence that…pre-consolidation fees" were incurred for "opportunistic or copycat work which is undeserving of compensation").

e. I have used a billing rate of $1,100/hr. for all of my work in this case. Given my qualifications and experience, and upon review of recent Ninth Circuit law concerning billing rates (addressing rates approved for lawyers at various levels of experience; the relevant jurisdiction for determining prevailing rates; the use of current versus historical rates, and other issues), I believe that $1,100/hr. is a fair and reasonable rate for my work in this class action case, undertaken entirely on a contingency basis with a high degree of risk.

f. For the other lawyers whose work is reflected in my affiliated firms' T&E Records, I have used the billing rate in effect for them when they performed the tasks reflected.

g. The following chart summarizes the expenses incurred by Keefe Bartels, STSW and Grygiel Law, LLC. Grygiel Law, LLC's expenses include no charges for computerized legal research, paper and copying, and other such

charges for which many firms do properly and customarily charge.

| FIRM | TOTAL EXPENSES |
|---|---|
| Keefe Bartels | $20,164.50 (includes $13,366.05 in pre-consolidation expenses) |
| STSW | $45,261.19 |
| Grygiel Law, LLC | $15,600.54 |

43. Mr. Straite has reviewed the time and expense records of Stewarts Law, Straite PLLC, Kaplan Fox and DiCello Levitt (collectively the "T&E Records"). Mr. Straite states as follows:

    a. I keep contemporaneous and detailed time records and the hours reflected in my affiliated firms' T&E records appear accurate. I also personally supervised timekeepers at my affiliated firms, and reviewed the time reports at each firm repeatedly over the years to ensure accuracy.

    b. The chart below summarizes the time from my affiliated firms. Because Stewarts Law's involvement in the case, which occurred through me, pre-dated the April 3, 2012 Consolidation Order, the entry reflects: (i) total recorded time; and (ii) total recorded time less *all* pre-MDL Consolidation time. All of other time at my affiliated firms occurred after the entry of the Consolidation Order, so identification of pre-consolidation time is necessary.

| Firm | Total Time | Total Time Less *All* Pre-Consolidation Time |
|---|---|---|
| Stewarts Law | $1,046,386.50 | $586,336.00 |
| Straite PLLC | $6,380.00 | N/A |
| Kaplan Fox | $1,896,501.50 | N/A |
| DiCello Levitt | $826,860.50 | N/A |

c. I analyzed the T&E Records in seeking to remove duplication. Given that I personally supervised all tasks and most of the work was done personally by me, I can state with a high degree of confidence that the reported hours are accurate.

d. My pre-consolidation time at Stewarts Law involved substantial legal research into many of the claims that ultimately were included in the Complaint, working with experts, gaining insight and knowledge about the technology at issue, analyzing potential statutory and common law damages calculations, and working with other counsel to develop an appropriate, efficient and effective leadership structure for the efficient prosecution of the case. I also personally argued at the pre-consolidation CMCs, and drafted the motion to centralize filed with the JPML, and personally argued before the Panel. All of that work remained not just useful, but important, in my post-Consolidation work on the case. My pre-Consolidation work was the foundation on which the rest of my work in the case built. Put still another way, my pre-consolidation work conferred benefits on the multidistrict class. I believe it appropriate that the pre-consolidation time be included in lodestar.

e. I have used a billing rate of $1,100/hr. for all of my work in this case. Given my qualifications and 26 years of experience, and upon review of recent Ninth Circuit law concerning billing rates (addressing rates approved for lawyers at various levels of experience; the relevant jurisdiction for determining prevailing rates; the use of current versus historical rates, and other issues), I believe that $1,100/hr. is a fair and reasonable rate for my

work in this class action case, undertaken entirely on a contingency basis with a high degree of risk.

    f. Magistrate Judge Susan van Keulen earlier this year awarded fees to my firm based on my hourly rate of $1,100.00, and $600 for associate Adam Prom, and $350 for paralegals. *See Calhoun v. Google LLC*, 4:20-cv-5146-YGR-SVK (N.D. Cal.).

    g. For the other lawyers whose work is reflected in my affiliated firms' T&E Records, I have used the billing rate in effect for them when they performed the tasks reflected if that timekeeper withdrew from working on the case, or current rates if they continued working on the case. I believe the hourly rates requested therein are appropriate.

    h. I have been coordinating with State Court Counsel to ensure that MDL Counsel are apprised of T&E claimed in that Action. The State Court Counsel lodestar is excluded from total lodestar reported to the Court to avoid the appearance of duplication. Counsel at Milberg reported lodestar of $671,137.50 to me, and expenses of $37,533.95. Counsel at Richman Law Group reported his firm's lodestar in Exhibit 14 hereto, but again, only for transparency and not for inclusion in total lodestar reported to the Court.

    i. The following chart summarizes the unreimbursed expenses incurred by my affiliated firms:

| FIRM | TOTAL EXPENSES |
| --- | --- |
| Stewarts Law | $13,745.94 |
| Straite PLLC | $10,582.18 |
| Kaplan Fox | $105,913.52 |

| DiCello Levitt | $12,087.69 |

## **ADDITIONAL FACTS REGARDING CLAIMS ADMINISTRATION AND IN FURTHER SUPPORT OF FINAL APPROVAL**

44. During the claims administration process, class members were instructed to contact Angeion with questions about the case or the claims process. Nevertheless, some contacted counsel, and communications are recorded in a central system at DiCello Levitt. As of the date of this declaration, Lead Counsel and our firms have responded to 48 inquiries and to our knowledge all 48 were resolved successfully. After the conclusion of the claims process, Lead Counsel will file a full report of these communications and any later communications.

45. Also during the claims administration process, Lead Counsel and Defense counsel checked in with Angeion for periodic updates. On August 12, 2022, during a Zoom call with Defense counsel, Lead Counsel and representatives of Angeion, we asked Angeion to provide a quote to initiate a supplemental direct and media notice program, re-noticing the class and reminding class members of the September deadlines. Defendant and Lead Counsel approved, and Defendant agreed to pre-fund the costs. The purpose of the supplemental program was to further increase the claims rate. This supplemental program is detailed in the Weisbrot Declaration, Ex. 1 hereto.

We declare under penalty of perjury that the foregoing is true and correct.

Dated: August 23, 2022

 */s/ David Straite*  */s/ Stephen Grygiel*
David A. Straite (admitted *pro hac vice*)  Stephen G. Grygiel (admitted *pro hac vice*)
At New York, New York  At Clinton, New York

CASE NO. 5:12-MD-2314-EJD
JOINT DECLARATION            16

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)**

I, David A. Straite, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of August, 2022, at New York, NY

*/s/ David Straite*
David A. Straite