**DiCELLO LEVITT GUTZLER LLC**
David A. Straite (admitted *pro hac vice*)
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, New York 10165
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Ten North Dearborn Street, 6th Fl.
Chicago, Illinois 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*

*Class Counsel*

**GRYGIEL LAW LLC**
Stephen G. Grygiel (admitted *pro hac vice*)
127 Coventry Place
Clinton, NY 13323
Tel.: (407) 505-9463
*stephengrygiel22@gmail.com*

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| IN RE FACEBOOK INTERNET TRACKING LITIGATION<br><br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 5:12-MD-2314-EJD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. Edward J. Davila<br>Courtroom: 4—5th Floor<br>Date: October 27, 2022<br>Time: 9:00 a.m. |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 27, 2022 at 9:00 a.m., in Courtroom 4 of the United States District Court for the Northern District of California, Robert F. Peckham Federal Building & United States Courthouse, 280 South First Street, San Jose, California 95113, the Honorable Edward J. Davila, presiding, Settlement Class Representatives in the MDL Action[1] will and hereby move for an Order pursuant to Rules 23(h)(1) and 54(d)(2) of the Federal Rules of Civil Procedure ("Rule") awarding: (i) Attorneys' Fees to Settlement Class Counsel (including State Court Counsel) and Supreme Court Counsel of $26,100,000, which is 29% of the $90,000,000 non-reversionary Settlement Fund; (ii) unreimbursed expenses totaling $393,048.87 that Settlement Class Counsel (including State Court Counsel) and Supreme Court Counsel reasonably and necessarily incurred in the prosecution of these Actions; and (iii) Service Awards for Settlement Class Representatives of $5,000 each for MDL Plaintiffs and $3,000 each for State Court Plaintiffs.

This motion is based upon this Motion, the Memorandum of Points and Authorities, the accompanying Joint Declaration of David A. Straite and Stephen G. Grygiel dated August 23, 2022 ("Joint Decl.") and all exhibits attached thereto, including declarations from each of the plaintiff firms working on this matter, the pleadings on file in these Actions, and other such matters and argument as the Court may consider at the hearing on this motion.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should award $26,100,000, which is 29% of the $90,000,000 Settlement Fund, to Settlement Class Counsel and Supreme Court Counsel as Attorneys' Fees;

2. Whether the Court should award $393,048.87 in unreimbursed expenses that Settlement Class Counsel and Supreme Court Counsel incurred in furtherance of the Actions; and

3. Whether the Court should award Service Awards to the seven Settlement Class Representatives of $5,000 for the MDL Plaintiffs and $3,000 for the State Court Plaintiffs, for their work and time over the past 11 years in pursuing these Actions.

---

[1] All capitalized terms are defined in the Settlement Agreement, ECF 233-1, Ex. 1, unless expressly stated otherwise.

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

I.  INTRODUCTION ...................................................................................................... 1

II.  LITIGATION BACKGROUND ................................................................................. 1

III.  REQUESTED AWARDS .......................................................................................... 3

IV.  ARGUMENT ............................................................................................................ 4

    A.  Settlement Class Counsel and Supreme Court Counsel Should Be Awarded Attorneys' Fees from the Common Fund .......................................................... 4

    B.  Percentage of Fund Method Is the Most Appropriate Method for Calculating Reasonable Attorneys' Fees in This Common Fund Case ...................................... 4

    C.  The Requested Fee Award Is Reasonable .......................................................... 6

        1.  Settlement Class Counsel Achieved an Exceptional Result ....................... 7

        2.  There Was Substantial Risk ..................................................................... 9

        3.  The Litigation Required Skill and High-Quality Work ............................. 11

        4.  Class Counsel Worked for 11 Years on a Fully Contingent Basis ........... 14

        5.  The Requested Award Is Consistent with Similar Cases .......................... 15

    D.  The Lodestar Cross-Check Confirms Reasonableness .......................................... 16

        1.  The Number of Hours Devoted to the Case Was Reasonable ................... 16

        2.  Pre-Consolidation Hours ........................................................................ 18

        3.  Hourly Rates ......................................................................................... 19

        4.  Implied Multiplier ................................................................................. 20

    E.  Payment Schedule ............................................................................................ 21

    F.  The Litigation Expenses Are Reasonable and Should Be Approved ...................... 22

    G.  The Position of the Settlement Class .................................................................. 23

    H.  Request For Plaintiff Service Awards ................................................................ 23

V.  CONCLUSION ........................................................................................................ 24

1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

2

3

**Cases**

4

*Aboudi v. T-Mobile USA, Inc.*,
 No. 12cv2169 BTM (NLS), 2015 WL 4923602 (S.D. Cal. Aug. 18, 2015)............................ 4

5

6

*In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*,
 No. 09 MDL 2007-GW(PJW), 2014 WL 12591624 (C.D. Cal. Jan. 10, 2014) ..................... 5

7

*Allagas v. BP Solar Int'l, Inc.*,
 No. 3:14-cv-00560-SI (EDL), 2016 WL 9114162 (N.D. Cal. Dec. 22, 2016) ...................... 24

8

9

*In re Am. Apparel, Inc. S'holder Litig.*,
 No. CV 10-06352 MMM, 2014 WL 10212865 (C.D. Cal. July 28, 2014)............................ 14

10

*In re Anthem, Inc. Data Breach Litig.*,
 No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ............................. 15

11

12

*In re Apple Inc. Device Performance Litig.*,
 No. 18-MD-02827-EJD (N.D. Cal.) ...................................................................................... 12

13

14

*In re Apple Inc. Device Performance Litig.*,
 No. 5:18-md-02827-EJD, 2021 WL 1022866 (N.D. Cal. Mar. 17, 2021)............. 5, 14, 20, 21

15

*Barbosa v. Cargill Meat Sols. Corp.*,
 297 F.R.D. 431 (E.D. Cal. July 2, 2013).............................................................................. 13

16

17

*Bellinghausen v. Tractor Supply Co.*,
 306 F.R.D. 245 (N.D. Cal. Mar. 20, 2015) ................................................................ 5, 14, 23

18

19

*In re Black Farmers Discrimination Litig.*,
 953 F. Supp. 2d 82 (D.D.C. 2013) ....................................................................................... 18

20

*In re Bluetooth Headset Prods. Liab. Litig.*,
 654 F.3d 935 (9th Cir. 2011).................................................................................................. 6

21

22

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980)............................................................................................................... 4

23

24

*Bower v. Cycle Gear, Inc.*,
 No. 14-cv-02712-HSG, 2016 WL 4439875 (N.D. Cal. Aug. 23, 2016)................................ 11

25

*Calhoun v. Google LLC*,
 No. 4:20-cv-05146-YGR (SVK) (N.D. Cal.)..................................................................... 12, 19

26

27

*In re Capacitors Antitrust Litig.*,
 No. 3:17-md-02801-JD, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018)................................ 16

28

*Ching v. Siemens Indus. Inc.*,
  No. 11-cv-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) ................................ 15

*Destefano v. Zynga, Inc.*,
  No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .............................. 5, 11

*Dugan v. Lloyds TSB Bank, PLC*,
  No. C 12-02537-WHA, 2014 WL 1647652 (N.D. Cal. Apr. 24, 2014)................................ 16

*Eashoo v. Iovate Health Scis. U.S.A., Inc.*,
  No. CV 15-01726 BRO, 2016 WL 6205785 (C.D. Cal. Apr. 5, 2016) ................................. 9

*In re Facebook Biometric Info. Privacy Litig.*,
  522 F. Supp. 3d 617 (N.D. Cal. Feb. 26, 2021) .................................................... 11

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F. 3d 589 (9th Cir. 2020)........................................................... 3, 10

*Fleming v. Impax Labs. Inc.*,
  No. 16-cv-06557-HSG, 2022 WL 2789496 (N.D. Cal., July 15, 2022) ........................ *passim*

*Gergetz v. Telenav, Inc.*,
  No. 16-cv-04261-BLF, 2018 WL 4691169 (N.D. Cal. Sept. 27, 2018) ................................ 21

*In re Glumetza Antitrust Litig.*,
  No. C 19-05822 WHA, 2022 WL 327707 (N.D. Cal. Feb. 3, 2022) ................................ 7, 9

*In re Google, Inc. Cookie Placement Consumer Privacy Litig.*,
  C.A. No. 12-MD-2358 (D. Del.) ........................................................... 12

*Grace v. Apple, Inc.*,
  No. 17-CV-00551-LHK, 2021 WL 1222193 (N.D. Cal. Mar. 31, 2021) .............................. 16

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)............................................................. 6

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994)............................................................... 22

*Hausfeld v. Cohen Milstein Sellers & Toll, PLLC*,
  No. 06-CV-826, 2009 WL 4798155 (E.D. Penn. Nov. 30, 2009) ......................... 18

*Heeger v. Facebook, Inc.*,
  509 F. Supp. 3d 1182 (N.D. Cal. Dec. 24, 2020) .................................................. 10

*Hefler v. Wells Fargo & Co.*,
  No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ............................ 16, 19

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ...................................................................... 7

*In re Heritage Bond Litig.*,
   No. 02-ML-1475-DT(RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) ....................... 12

*In re Informix Corp. Sec. Litig.*,
   No. 97-1289 CRB, 1999 WL 33456024 (N.D. Cal. Nov. 23, 1999) .................................... 15

*In re iPhone Application Litig.*,
   6 F. Supp. 3d 1004 (N.D. Cal. Nov. 25, 2013) ....................................................................... 10

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
   No. 16-cv-03698-NC, 2018 WL 2183253 (N.D. Cal. May 11, 2018) ................................... 23

*Kakani v. Oracle Corp.*,
   No. C 06-06493 WHA, 2007 WL 4570190 (N.D. Cal. Dec. 21, 2007) ................................. 10

*Kendall v. Odonate Therapeutics, Inc.*,
   No.: 3:20-cv-01828-H-LL, 2022 WL 1997530 (S.D. Cal. June 6, 2022) ............................. 15

*Kim v. Allison*,
   8 F.4th 1170 (9th Cir. 2021) ...................................................................................................... 8

*In re Korean Air Lines Co., Ltd. Antitrust Litig.*,
   No. CV 07-05107 SJO, 2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) ............................. 5, 6

*Kumar v. Salov N. Am. Corp.*,
   No.:14-CV-2411-YGR, 2017 WL 2902898 (N.D. Cal. July 7, 2017) ..................................... 6

*Larsen v. Trader Joe's Co.*,
   No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ................................. 8

*In re LendingClub Sec. Litig.*,
   No. C 16-02627 WHA, 2018 WL 4586669 (N.D. Cal. Sept. 24, 2018) ................................ 22

*In re Lenovo Adware Litig.*,
   No. 15-md-02624-HSG, 2019 WL 1791420 ........................................................ 7, 13, 15, 23

*Lesevic v. Spectraforce Techs. Inc.*,
   No. 19-CV-03126-LHK, 2021 WL 1599310 (N.D. Cal. Apr. 23, 2021) ............................... 18

*In re Lidoderm Antitrust Litig.*,
   No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ............................. 15

*Linney v. Cellular Alaska P'Ship*,
   151 F. 3d 1234 (9th Cir. 1998) ................................................................................................ 13

*Luna v. Universal City Studios, LLC*,
   No. CV 12-9286 PSG, 2016 WL 10646310 (C.D. Cal. Sept. 13, 2016) .............................. 14

*In re Media Vision Tech. Sec. Litig.*,
   913 F. Supp. 1362 (N.D. Cal. 1995) ....................................................................................... 22

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000).................................................................................. 13

*Meta Platforms, Inc. v. Brandtotal Ltd.*,
   3:20-cv-7182-JCS (N.D. Cal.) .............................................................................. 19

*Miller v. Ghirardelli Chocolate C.*,
   No. C-12-04936, 2014 WL 4978433 (N.D. Cal. Oct. 2, 2014) ........................... 22

*Moreyra v. Fresenius Med. Care Holdings, Inc.*,
   No. SACV 10-517 JVS (RZx), 2013 WL 12248139 (C.D. Cal. Aug. 7, 2013).............. 12, 13

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Antitrust Litig.*,
   768 F. App'x 651 (9th Cir. 2019) ......................................................................... 20

*Newell v. Ensign U.S. Drilling (Cal.) Inc.*,
   No. 1:19-cv-01314-JLT-BAK, 2022 WL 2704551 (E.D. Cal. July 12, 2022) ...................... 14

*In re Nexus 6P Prods. Liab. Litig.*,
   No. 17- cv-02185-BLF, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019)...................... 7, 15, 16

*Noll v. eBay, Inc.*,
   309 F.R.D. 593 (N.D. Cal. Sept. 15, 2015).......................................................... 23

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) .............................................. 6, 7, 13

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015)................................................................................ 23

*Ontiveros v. Zamora*,
   303 F.R.D. 356 (E.D. Cal. Oct. 8, 2014)................................................................. 7

*In re Optical Disk Drive Prods. Antitrust Litig.*,
   2016 WL 7364803 (N.D. Cal. Dec. 19, 2016) ...................................................... 22

*Patel v. Trans Union, LLC*,
   No. 14-cv-00522-LB, 2018 WL 1258194 (N.D. Cal. Mar. 11, 2018) .................... 16

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007)..................... 24

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000)................................................................................. 6

*In re Regulus Therapeutics Inc. Sec. Litig.*,
   2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ......................................................... 8

*Roberti v. OSI Sys., Inc.*,
   No. CV-13-09174 MWF (MRW), 2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) .................. 11

*Sheikh v. Tesla, Inc.*,
    No. 17-cv-02193-BLF, 2018 WL 5794532 (N.D. Cal., Nov. 2, 2018)..................................... 20

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)............................................................................................ 4, 9

*Steiner v. Am. Broad. Co.*,
    248 F. App'x 780 (9th Cir. 2007) ........................................................................................ 20

*In Re: T-Mobile Customer Data Sec. Breach Litig.*,
    MDL No. 3019 (W.D. Mo.) .................................................................................................. 13

*Tait v. BSH Home Appliances Corp.*,
    No. SACV 10-0711- DOC (ANx), 2015 WL 4537463 (C.D. Cal. July 27,
    2015) ...................................................................................................................................... 5

*Teitelbaum v. Sorenson*,
    648 F. 2d 1248 (9th Cir. 1981).............................................................................................. 7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ...................................................................... 22

*In re TikTok, Inc., Consumer Privacy Litig.*,
    No. 20 C 4699, 2022 WL 2982782 (N.D. Ill. Jul. 28, 2022) ................................ 10, 14, 16, 20

*In re Toys R Us-Del., Inc –Fair and Accurate Credit Transactions Act (FACTA)
    Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) ........................................................................................ 17

*In Re: U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
    MDL No. 2664 (D.D.C.) ...................................................................................................... 13

*Unutoa v. Interstate Hotels & Resorts, LLC*,
    No. 2:14-cv-09809-SVW-PJW, 2016 WL 7496127 (C.D. Cal. Aug. 23, 2016) ..................... 5

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002)......................................................................................*passim*

*Wallace v. Countrywide Home Loans, Inc.*,
    No. SACV 08-1463-JLS (MLGx), 2015 WL 13284517 (C.D. Cal. Apr. 17,
    2015) .................................................................................................................................... 12

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994)........................................................................................... 15, 20

*Weeks v. Google LLC*,
    No. 5:18-cv-00801-NC, 2019 WL 8135563 (N.D. Cal. Dec. 13, 2019).................................. 16

*Williams v. MGM-Pathe Commc'ns Co.*,
    129 F.3d 1026 (9th Cir. 1997)............................................................................................... 6

*Williamson v. McAfee, Inc.*,
  No. 5:14-cv-00158-EJD, 2017 WL 6033070 (N.D. Cal. Feb. 3, 2017) .................................. 4

*Wing v. Asarco Inc.*,
  114 F.3d 986, 989 (9th Cir. 1997) ........................................................................ 14

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  2020 WL 4212811 (N.D. Cal. July 22, 2020) ....................................................... 22

*In re Yahoo! Mail Litig.*,
  No. 13-cv-04980-LHK (N.D. Cal.) ........................................................................ 12

*Yastrab v. Apple Inc.*,
  173 F. Supp. 3d 972 (N.D. Cal. Mar. 25, 2016) ................................................... 10

*Zak v. Bose Corp.*,
  2019 WL 1437909 (N.D. Ill. Mar. 31, 2019) ........................................................ 10

*Zepeda v. PayPal, Inc.*,
  No. C 10-1668 SBA, 2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) .................... 12

*In re Zoom Video Commc'ns, Inc. Private. Litig.*,
  No. 20-cv-02155-LB, 2022 WL 1593389 (N.D. Cal. Apr. 21, 2022)...................... 7

**Rules**

F.R.C.P Rules 23 and 54 .............................................................................................. i

**Other Authorities**

5 W. Rubenstein, NEWBERG ON CLASS ACTIONS §§ 15:62, 15:65 (6th ed.)......................... 5

5 W. Rubenstein, NEWBERG ON CLASS ACTIONS § 15:89 tbl.2 (6th ed.)............................ 20

Ben Kochman, *Cybersecurity Group of the Year: Cooley,* Law360 (Dec. 4, 2020) .................... 14

Ben Kochman, *Cybersecurity Group of the Year: DiCello Levitt*, Law360 (Jan. 31, 2022) ...................................................................................................... 12

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3        Settlement Class Representatives Perrin Davis, Dr. Brian Lentz, Cynthia Quinn, and

4    Michael Vickery (the "MDL Lead Plaintiffs"), through Lead Counsel David Straite and Stephen

5    Grygiel, and Chair of the Executive Committee Jay Barnes,[2] respectfully move the Court for an

6    attorneys' fee award of $26,100,000, which is 29% of the $90,000,000 non-reversionary Settlement

7    Fund that Defendant Meta Platforms, Inc., formerly Facebook, Inc. ("Meta" or "Defendant") has

8    agreed to pay to settle this MDL and the parallel State Court Action. If approved, the monetary

9    component alone will rank as one of the ten largest data privacy class action settlements ever.

10   Defendant has also agreed to sequester and delete the data at issue, which, when combined with the

11   monetary component, makes this settlement unprecedented. Praise from the press, academics, and

12   even the defense bar, Joint Decl. Exs. 23-26, is not just gratifying but further supports approval.

13       Under Ninth Circuit and other relevant authority, as shown in detail below and in the

14   accompanying declarations, the requested fee award is fair and reasonable given the important

15   injunctive relief obtained—sequestration and ultimate deletion of the data Plaintiffs allege was

16   wrongfully obtained; the tremendous financial result; the pro-privacy changes in the law the

17   litigation achieved in a developing area of the law; and the many risks Settlement Class Counsel

18   took in pursuing this decade-long litigation through the District Court, the Ninth Circuit, and to the

19   Supreme Court and back.

20   **II.    LITIGATION BACKGROUND[3]**

21       More than ten years after this litigation began with the MDL Transfer Order of February 8,

22   2012, the Parties seek final approval of the Settlement, which will resolve the Settlement Class's

23   claims against Meta. The Settlement was reached only after multiple rounds of document and

24

---

25   [2] Today's Motion, if granted, will also resolve any and all claims for fees and expenses in the
26   parallel State Court Action. Settlement Agreement § 10. State Court Counsel Sandy Dumain at
     Milberg Coleman Bryson Phillips Grossman, PLLC, and Kim Richman at Richman Law & Policy,
27   are therefore included in the definition of Settlement Class Counsel in the Settlement Agreement.
     [3] Settlement Class Counsel incorporate by reference the Summary of the Litigation and Mediation
28   in their Preliminary Approval Papers. ECF 232, at 2–4.

written discovery; discovery motions; trips to the Ninth Circuit and United States Supreme Court; and prolonged, well-informed, and extensive arm's-length negotiations—including three in-person mediation sessions, focused and extremely important discovery in aid of mediation, and approximately six months of additional good faith negotiations—between experienced and knowledgeable counsel facilitated by Randy Wulff, a highly respected and experienced mediator who is very well versed in complex and class litigation.

The Settlement, based upon the mediator's proposal, was reached only after extensive litigation. During the litigation, Class Counsel, as well as Non-Class Counsel: (i) conducted wide-ranging research of the legal bases for and factual investigation into Plaintiffs' claims; (ii) filed three comprehensive complaints; (iii) researched, briefed, and conducted oral arguments in opposing Defendant's three separate motions to dismiss as to certain theories of liability; (iv) engaged in comprehensive discovery, including undertaking and responding to written discovery, briefing Defendant's motion to stay discovery, reviewing Defendant's four productions of documents, and negotiating custodians and search terms for additional document production from Defendant; and (v) consulted with five privacy, technology, and damages experts to, among other things, analyze theories of liability and develop damages models. Plaintiffs and Settlement Class Counsel had a thorough understanding of the relative strengths and weaknesses of the claims asserted at the time the Settlement was reached.

Settlement Class Counsel devoted more than 11,000 hours and advanced significant out-of-pocket expenses to develop and prosecute the litigation and be in a position to negotiate a favorable settlement for the Settlement Class. Settlement negotiations, documenting the settlement, working with the Claims Administrator and Defendant to ensure a wide-ranging and effective Notice Program and Supplemental Notice Program, responding to questions from Class Members, and briefing the Motions for Preliminary Settlement Approval and Final Settlement Approval, consumed a great deal of additional time. Further discussion of the litigation and Settlement Class Counsels' work appears in the Notice of Motion and Motion for Certification of Settlement Class and Preliminary Approval of Class Action Settlement, ECF 232 at 12–15, the concurrently filed

1  Plaintiffs' Motion for Final Approval of Settlement, the accompanying Declarations of even date

2  herewith, and time and billing records from all firms that represented Plaintiffs in this litigation.

3  **III.    REQUESTED AWARDS**

4          The requested Attorneys' Fees, Expense Reimbursement, and Service Awards are fair and

5  reasonable in light of the recovery, the challenges Plaintiffs faced in this consumer class action, the

6  risk to their counsel in representing them on a contingent basis, and prevailing attorneys' fee

7  jurisprudence in this District and Circuit. As the Court well knows, data privacy class actions are

8  risky to prosecute— this one was dismissed three times. Defendant Meta, one of the largest and

9  most well-resourced companies in the world, was represented by two superb national law firms,

10  Cooley LLP and Mayer Brown LLP, that vigorously defended Meta throughout the litigation and

11  mediation. Plaintiffs also successfully obtained a ruling in the Ninth Circuit that "Facebook is not

12  exempt from liability as a matter of law under the Wiretap Act or CIPA as a party to the

13  communication," *In re Facebook, Inc. Internet Tracking Litig.*, 956 F. 3d 589, 608 (9th Cir. 2020),

14  and also that unlawful copying and monetization of personal data creates economic harm even if

15  the value of the data did not diminish in the hands of the Plaintiff, *id.* at 600, both of which were

16  issues of first impression at the Ninth Circuit. Plaintiffs also successfully opposed Defendant's

17  petition for a writ of certiorari to the United States Supreme Court, and after remand, undertook

18  significant additional discovery efforts to aid mediation. Moreover, there was no guarantee that

19  Plaintiffs would have succeeded at class certification, summary judgment, trial, or on appeal. A

20  lodestar cross-check further supports the reasonableness of the requested fee, which represents an

21  implied multiplier of approximately 2.7 on MDL Counsel's lodestar. Even if the Court were to

22  exclude *all* pre-consolidation time as shown in Joint Decl., Ex. 20, and exclude *all* State Court

23  Counsel time, the implied multiplier is still only 3.28.[4] For the reasons below, the requested fee,

24  expense award, and service awards are fair and reasonable, and should be approved.

25  ───────────────

26  [4] State Court Counsel's time is reported in the Joint Declaration for transparency reasons, but are
excluded from the lodestar calculation to avoid even the appearance of duplication of efforts. If the

27  Court grants today's Motion, Lead Counsel will pay State Court Counsel from the fee award here
in the MDL, and State Court Counsel will not seek additional fees in the State Court Action. *See*

28  Settlement Agreement § 10.

## IV.   ARGUMENT

### A.   Settlement Class Counsel and Supreme Court Counsel Should Be Awarded Attorneys' Fees from the Common Fund

Under the "common fund" doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *accord Fleming v. Impax Labs. Inc.*, No. 16-cv-06557-HSG, 2022 WL 2789496, at *7 (N.D. Cal., July 15, 2022) (Gillam, J.). Where, as here, Settlement Class Counsel's work has created a common fund, the doctrine of unjust enrichment entitles them to reasonable attorneys' fees from the fund. *See Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) ("common fund doctrine permits the court to award attorneys' fees from monetary payments that the prevailing party recovered in the lawsuit"); *Boeing*, 444 U.S. at 478; *Aboudi v. T-Mobile USA, Inc.*, No. 12cv2169 BTM (NLS), 2015 WL 4923602, at *3 (S.D. Cal. Aug. 18, 2015) (providing minimum and maximum settlement fund, of which attorneys requested "25% of the excess sum over the Minimum Payment"); *Impax Labs.*, 2022 WL 2789496, at *7 (purpose of "common fund" doctrine is to avoid unjust enrichment at expense of "lawyers whose skill and effort helped create it") (internal citations omitted).

### B.   Percentage of Fund Method Is the Most Appropriate Method for Calculating Reasonable Attorneys' Fees in This Common Fund Case

Under Ninth Circuit law, "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *accord Williamson v. McAfee, Inc.*, No. 5:14-cv-00158-EJD, 2017 WL 6033070, at *1 (N.D. Cal. Feb. 3, 2017). However, the percentage-of-the-fund method is preferred in common fund cases. *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, No. CV 07-05107 SJO AGRX, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013) ("[t]he use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel."); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. Mar. 20, 2015) ("[b]ecause this case involves a common settlement

fund with an easily quantifiable benefit to the class, the Court will primarily determine attorneys' fees using the benchmark method but will incorporate a lodestar cross-check to ensure the reasonableness of the award."); *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *16 (N.D. Cal. Feb. 11, 2016) (same); *Unutoa v. Interstate Hotels & Resorts, LLC*, No. 2:14-cv-09809-SVW-PJW, 2016 WL 7496127, at * 3 (C.D. Cal. Aug. 23, 2016) ("California Supreme Court has recently affirmed that the percentage method is a valid approach to calculating attorneys' fees in California, especially in common fund cases . . . as it provides the simplest method of determining a reasonable fee award when the value of the settlement fund is definite and therefore is most likely to achieve a reasonable result." (citations omitted)); *In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD, 2021 WL 1022866, at *2–3 (N.D. Cal. Mar. 17, 2021) (using percentage of common fund); *In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*, No. 09 MDL 2007-GW(PJW), 2014 WL 12591624, at *5 (C.D. Cal. Jan. 10, 2014) ("use of the percentage method in common fund cases appears to be dominant").

Courts prefer the percentage method because it confers "significant benefits . . . including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires." *Tait v. BSH Home Appliances Corp.*, No. SACV 10-0711-DOC (ANx), 2015 WL 4537463, at *11 (C.D. Cal. July 27, 2015); *see* 5 W. Rubenstein, NEWBERG ON CLASS ACTIONS §§ 15:62, 15:65 (6th ed.) (courts generally employ the percentage method with a lodestar cross-check).

The nature of these Actions warrants application of percentage-of-the-fund approach, the principal and "prevailing practice in the Ninth Circuit" to determine the reasonableness of Settlement Class Counsel's fee request. *Korean Air Lines*, 2013 WL 7985367, at *1. Where the "benefit to the class is easily quantified in common-fund settlements," district courts may "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2018 WL 2234598, at *3 (N.D. Cal. May 15, 2018) (citing *In re Bluetooth Headset Prods. Liab.*

1     *Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)). Here, the $90 million Settlement Fund is non-

2     reversionary, and therefore the amount is fixed and easily quantifiable. This weighs in favor of

3     employing the percentage of the fund method. *Id.*

4          **C.**      **The Requested Fee Award Is Reasonable**

5          In applying the percentage of the fund method, the Ninth Circuit has established 25% as a

6     benchmark, which may be adjusted up or down depending on the circumstances of a case. *Vizcaino*,

7     290 F.3d at 1047; *Powers v. Eichen*, 229 F.3d 1249, 1257 (9th Cir. 2000); *Hanlon v. Chrysler*

8     *Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d

9     1026, 1027 (9th Cir. 1997). The 25% benchmark is "of the total settlement value, including both

10    monetary and non-monetary recovery." *Kumar v. Salov N. Am. Corp.*, No.:14-CV-2411-YGR,

11    2017 WL 2902898, at * 7 (N.D. Cal. July 7, 2017) (citing *Six (6) Mexican Workers v. Arizona*

12    *Citrus Growers*, 904 F. 2d 1301, 1311 (9th Cir. 1990)). That benchmark represents "a starting point

13    for analysis" and "[s]election of the benchmark or any other rate must be supported by findings that

14    take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. Here, the

15    requested fee amount of 29% is within "the usual range" in common fund cases. *Vizcaino*, 290 F.3d

16    at 1047; *see In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. Jan. 9, 2008) ("in

17    most common fund cases, the award exceeds that [25 percent] benchmark").

18         In determining whether to depart from the 25% benchmark, courts consider: "(1) the results

19    achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent

20    nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar

21    cases." *In re Lenovo Adware Litig.*, No. 15-md-02624-HSG, 2019 WL 1791420, at *8 (N.D. Cal.

22    Apr. 24, 2019) (citing *Vizcaino*, 290 F.3d at 1050–51; *In re Nexus 6P Prods. Liab. Litig.*, No. 17-

23    cv-02185-BLF, 2019 WL 6622842, at *11 (N.D. Cal. Nov. 12, 2019) (same); *Impax Labs.*, 2022

24    WL 2789496, at *8 (same). Applying the requisite "special rigor" to the consideration of each of

25    these factors compels the conclusion that an upward adjustment to 29% is warranted. *In re Zoom*

26    *Video Commc'ns, Inc. Private. Litig.*, No. 20-cv-02155-LB, 2022 WL 1593389, at *10 (N.D. Cal.

27    Apr. 21, 2022) (citing *Vizcaino*, 290 F. 3d at 1052).

28

1               1.      *Settlement Class Counsel Achieved an Exceptional Result*

"Exceptional results are a relevant circumstance" in the fee calculation. *Vizcaino*, 290 F. 3d at 1048 (citing, *inter alia*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993)). "The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Omnivision Techs.*, 559 F. Supp. 2d at 1046.[5] Here, the exceptional overall result and the benefit to the Settlement Class warrant upward adjustment of the 25% benchmark to 29%. Importantly, the exceptional result comes directly from Settlement Class Counsel's work and dedication. *See In re Glumetza Antitrust Litig.*, No. C 19-05822 WHA, 2022 WL 327707, at *10 (N.D. Cal. Feb. 3, 2022) (settlements under $100 million "reflect a much more direct connection between the efforts of counsel and the ultimate recovery" than larger, megafund settlements do).

- ***First***, Settlement Class Counsel made new pro-privacy law establishing that the class suffered <u>economic</u> harm as well as privacy harm and rejecting the "party to the communication" defense to Wiretap Act liability. Bringing about important legal change, particularly in an unsettled and developing area of the law, such as electronic privacy, warrants an upward departure. *See, e.g., Ontiveros v. Zamora*, 303 F.R.D. 356, 373 (E.D. Cal. Oct. 8, 2014) ("novelty of legal arguments may constitute 'special circumstances' justifying a departure from the benchmark"); *Teitelbaum v. Sorenson*, 648 F. 2d 1248, 1250 (9th Cir. 1981) ("[a]ctions based on novel legal theories generally require greater attorney effort than actions based upon familiar legal theories.")

- ***Second***, the injunctive relief obtained in the Settlement Agreement should be considered the "gold standard" in data collection cases—sequestration followed by deletion of the allegedly wrongfully collected data. ***And this relief benefits every class member, whether or not they file a claim, opt-out, or object***.

- ***Third***, the $90 Million Settlement Fund monetary relief is excellent—one of the ten

---

[5] The Supreme Court has said the same thing in the civil rights fee-shifting context. *See Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) ("extent of a plaintiff's success is a crucial factor in determining" attorneys' fees award).

largest monetary settlements of its kind.

- **Fourth**, the Settlement Fund represents disgorgement of unjust enrichment in an amount greater than Plaintiffs could likely have proven; Facebook, in fact, had arguments that there was no unjust enrichment all. *Cf. Impax Labs.*, 2022 WL 2789496, at *8 (upward departure from benchmark when settlement fund achieved 12.5% of actual damages); *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) (approving attorney's fees of 28% for settlement amounting to "50% of the recovery plaintiffs' could have received had the case gone to trial"); *see also In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at * 6–7 (S.D. Cal. Oct. 30, 2020) (approving fees of 25% where "gross settlement amount . . . represents a recovery of 1.99% of total estimated damages" and citing cases approving settlements with estimated recoveries of 3.8% and "between 1.6% and 5%").

Like *Larsen*, the Settlement here also involves additional relief, namely, the comprehensive benefit to the Settlement Class of "gold standard" injunctive relief, the sequestration and deletion of the data that Plaintiffs alleged was wrongfully collected. Settlement Class Counsel recognize the difficulties of valuing injunctive relief, and the need for courts to "exercise caution" when valuing injunctive relief in determining attorneys' fees. *See Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021); *see also Staton v. Boeing Co.*, 327 F.3d 938, 945–46 (9th Cir. 2003) ("injunctive relief . . . should generally be excluded from the value of the common fund when calculating attorneys' fees"). Accordingly, Settlement Class Counsel has neither assigned a discrete value to the injunctive relief, nor based their attorneys' fees claim on any such value. But the obvious benefit to the class members from the data sequestration and destruction here—whether or not they make a claim, opt-out, or object—nonetheless counts as a "relevant circumstance" in weighing the fee request against the benefit to the class. *Staton*, 327 F. 3d at 974 (citing *Vizcaino*, 290 F. 3d at 1049).

As for individual recoveries, Settlement Class Members who make valid claims will receive an equal share of the Net Settlement Fund. Based on current claims information (i.e., approximately

1.35 million claims filed so far), Settlement Class Members would receive in excess of $40 per person.  *See* Joint Decl. Ex. 1 (Weisbrot Declaration). This figure will of course decrease as more claims are filed, but the likely payment to Settlement Class Members will be substantial relative to recoverable damages.

2.    *There Was Substantial Risk*

The risk associated with the litigation is also a key consideration in determining whether a requested fee award is reasonable. *See Vizcaino*, 290 F.3d at 1048 ("[r]isk is a relevant circumstance" in applying the percentage of the fund method); *Eashoo v. Iovate Health Scis. U.S.A., Inc.*, No. CV 15-01726 BRO (PJWx), 2016 WL 6205785, at *9 (C.D. Cal. Apr. 5, 2016) ("[t]he risk that further litigation might result in no recovery is a significant factor in assessing the fairness and reasonableness of an award of attorneys' fees.") (internal quotation marks and citation omitted).

This case was filed when electronic privacy law was in its toddler stage, if not its infancy. Many cases had already gone poorly for plaintiffs. In filing the case despite the risks posed by the then-existing legal landscape and the risk that privacy law developments might become worse, rather than better, for plaintiffs, and pursuing it through many setbacks, Settlement Class Counsel took on a great deal of risk. *See Glumetza*, 2022 WL 327707, at *11 (noting risk was reduced because, among other things, case was filed after a favorable Supreme Court ruling improved chances of success, stating "[t]he greater the risk, the greater the justification for a high multiplier."). Settlement Class Counsel, for example, had no guarantee that the Ninth Circuit would follow the approach of the First and Seventh Circuits, and not the Third Circuit, in analyzing the "party to the communication" exception to Wiretap Act liability. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607–608; *cf. Zak v. Bose Corp.*, 2019 WL 1437909, at *3 (N.D. Ill. Mar. 31, 2019) (party to communication exception applies "when the defendant is a participant, even if the defendant was not an *intended* participant, and even if the defendant became a participant 'through a fraud in the inducement'" (citing, *inter alia*, *In re Google, Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 143 (3d Cir. 2015)).

Here, as the dismissals of the FAC, SAC and TAC alone show, Settlement Class Counsel

faced numerous hurdles over the course of the litigation that could have substantially narrowed or precluded entirely any recovery, supporting the requested fee. Consumer class actions are inherently risky. *See Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 WL 4570190, at *4 (N.D. Cal. Dec. 21, 2007) (distinguishing riskiness of consumer fraud and securities cases from wage and hour cases). That risk is especially pronounced in consumer cases against technology companies; those involving privacy-related claims are often dismissed (as this one was, three times) and class certification is difficult. *See In re TikTok, Inc., Consumer Privacy Litig.*, No. 20 C 4699, 2022 WL 2982782, at *28 (N.D. Ill. Jul. 28, 2022) ("[d]ata privacy law is a relatively undeveloped and technically complex body of law, which creates uncertainty and, therefore, additional risk for Class Counsel."); *see also Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1186 (N.D. Cal. Dec. 24, 2020) (largely dismissing two related class actions challenging Facebook's collection of personal location data); *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1007 (N.D. Cal. Nov. 25, 2013) (granting summary judgment and denying class certification as moot in case involving Apple's data collection practices); *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 976 (N.D. Cal. Mar. 25, 2016) (dismissing claims based on software updates that purportedly removed features from iPhones).

Settlement Class Counsel assumed the risk of challenging Meta, a wealthy and powerful defendant that would have continued to vigorously defend its business practices had the litigation gone forward. Meta contested its liability from the very beginning, asserting that members of the Settlement Class had failed adequately to allege any viable claims, filing three sequential and successful motions to dismiss, forcing Plaintiffs to appeal to the Ninth Circuit, and then pursuing a petition for a writ of certiorari to the United States Supreme Court. Indeed, it was only through Settlement Class Counsel's legal ability and perseverance that the Ninth Circuit reinstated most of Plaintiffs' claims and the Supreme Court rejected Defendant's petition for a writ of certiorari.

Absent settlement, Meta signaled that it intended to file a fourth motion to dismiss, and it had the opportunity to file a motion for summary judgment and also oppose Plaintiffs' motion for class certification. All of which underscores the very real possibility that Settlement Class Members

might have recovered nothing after many more years of litigation and appeals. Plaintiffs would have faced a predictably serious battle on Plaintiffs' eventual motion for class certification, with no guarantee that any claims would be certified. And even if Plaintiffs were to have successfully obtained class certification, no assurances existed that Plaintiffs would have prevailed at trial and maintained certification on appeal. *See generally In re Facebook Biometric Info. Privacy Litig.*, 522 F. Supp. 3d 617, 626 (N.D. Cal. Feb. 26, 2021) ("[a]ll good trial lawyers and judges know that it is a fool's errand to predict a jury verdict. Consequently, it makes little sense to say that a payout to class members is adequate or not because there is a 5% or 65% chance of success at trial."). Meta has already demonstrated in this litigation its willingness to take appeals all the way to the Supreme Court. The risk of little or no recovery weighs heavily in favor of the requested fee award. *See Bower v. Cycle Gear, Inc.*, No. 14-cv-02712-HSG, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016) (considerable risks related to obtaining class certification, surviving summary judgment, prevailing at trial, and "withstanding a potential appeal"); *see also Destefano*, 2016 WL 537946, at *17 (noting "substantial" risk associated with "obtaining [and maintaining] class certification"); *Roberti v. OSI Sys., Inc.*, No. CV-13-09174 MWF (MRW), 2015 WL 8329916, at *6 (C.D. Cal. Dec. 8, 2015) (defendant's "vigorous opposition" represented "substantial" risk weighing in favor of the requested attorney's fees).

### 3.   *The Litigation Required Skill and High-Quality Work*

This case died three times before Settlement Class Counsel was able to resuscitate it in the Ninth Circuit, keep it out of the Supreme Court, and then mediate it to an excellent conclusion. In short, this case's extensive history shows that Settlement Class Counsel's experience, and the skill they brought to bear in this case, also favor the 29% fee award. *See Nexus 6P*, 2019 WL 6622842, at *12 (finding class counsel's "experience[ ]" and "'expertise'" in consumer class actions 'proved particularly beneficial in this action. . . . This factor, therefore, favors an upward adjustment" (quoting *Zepeda v. PayPal, Inc.*, No. C 10-1668 SBA, 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017)). Settlement Class Counsel have industry-leading expertise in privacy and other class actions. *See* Dkt. Nos. 233-2 through 233-12 (biographies of Settlement Class Counsel and Non-

Class Counsel); *In re: Google, Inc. Cookie Placement Consumer Privacy Litig.*, C.A. No. 12-MD-2358 (D. Del.) (Steve Grygiel, co-lead counsel; preliminary settlement approval granted, final approval pending); *Calhoun v. Google LLC*, No.:20-cv-05146-YGR(SVK) (N.D. Cal.) (David Straite and Jay Barnes, co-lead counsel); *In re Apple Inc. Device Performance Litig.*, No. 18-MD-02827-EJD (N.D. Cal.) (product case including computer intrusion claims; David Straite on lead counsel team); *In re Yahoo! Mail Litig.*, No. 13-cv-04980-LHK (N.D. Cal.) (David Straite on lead counsel team; challenged defendant's former practice of scanning incoming and outgoing mail for content; settlement approved August 2016); *see also* Ben Kochman, *Cybersecurity Group of the Year: DiCello Levitt*, Law360 (Jan. 31, 2022) (Straite is "privacy bar veteran").

The quality of Settlement Class Counsel's representation is reflected in the work they performed throughout the case and, ultimately, in the favorable settlement for the Settlement Class. *See Moreyra v. Fresenius Med. Care Holdings, Inc.*, No. SACV 10-517 JVS (RZx), 2013 WL 12248139, at *3 (C.D. Cal. Aug. 7, 2013) (noting that the result is "[t]he single clearest factor reflecting the quality of class counsels' services") (quoting *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005)); *see Wallace v. Countrywide Home Loans, Inc.*, No. SACV 08-1463-JLS (MLGx), 2015 WL 13284517, at *9 (C.D. Cal. Apr. 17, 2015) (noting customary factors reflecting counsel's skill such as developing the facts and legal claims, conducting discovery, reviewing documents, retaining experts, motion practice, and negotiating and drafting the settlement).

As discussed above, the Settlement was hard-won. The litigation was difficult and the mediation, requiring twenty-one (21) hours over three days, followed suit as Meta's aggressive defense remained consistent and required Settlement Class Counsel's best work to counter. *See Moreyra*, 2013 WL 12248139, at *3 (observing that counsel's skill was reflected in "diligently investigating and developing the claims"; "efficient discovery"; and "well-researched legal arguments"). Over the course of over ten years, Settlement Class Counsel advanced the litigation in the face of multiple motions to dismiss, appeals, and other roadblocks. Class Counsel also aggressively pursued discovery, resulting in the review and analysis of four rounds of document

production, motions to compel, negotiations over additional production, and interrogatories answered by Plaintiffs. Joint Decl. ¶ 35.[6] All this effort put Settlement Class Counsel in the best possible position to negotiate a favorable resolution for the class. *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. July 2, 2013) (class counsel used their "specialized skill" in the particular area of law which represented an asset to class members and weighed in favor of the fee request); *Omnivision Techs.*, 559 F. Supp. 2d at 1047 ("[t]hat Plaintiffs' case withstood two such motions, despite other weaknesses, is some testament to Lead Counsel's skill. This factor also supports the requested fee."); *Heritage Bond*, 2005 WL 1594403, at *19 (fact investigation, detailed complaints, extensive motion practice, review of numerous documents, and the taking of multiple depositions demonstrated class counsel's legal skills); *Lenovo*, 2019 WL 1791420, at *8 (noting favorable result given that the case had "been actively litigated for the past four years, and required complex legal and factual research and analysis by Class Counsel").

The high quality of opposing counsel should also be considered when evaluating the performance of Class Counsel. *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("[i]n addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully.") (citing *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997)). Meta's lawyers from Cooley LLP and Mayer Brown LLP, are legally highly skilled, have substantial experience defending cases like this one, and possess abundant resources. *See* Ben Kochman, *Cybersecurity Group of the Year: Cooley*, Law360 (Dec.

---

[6] This case included multiple rounds of document discovery (from and to Plaintiffs), verified interrogatories, motions to compel, appellate and Supreme Court review, three rounds of mediation facilitated by a skilled mediator, and months of post-mediation negotiations over the injunctive relief component. The litigation did not include depositions, but that is no basis to discount Class Counsel's extensive work and the significant relief provided for in this Settlement. *See, e.g.*, *In Re: T-Mobile Customer Data Sec. Breach Litig.*, MDL No. 3019 (W.D. Mo.) (Dkt. No. 158) ($350 million settlement reached before depositions taken); *In Re: U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, MDL No. 2664 (D.D.C.) (Dkt. No. 197-1); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *Linney v. Cellular Alaska P'Ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). To hold otherwise would create a perverse incentive against making (or accepting) good faith and strong offers of compromise.

4, 2020). This factor, therefore, weighs in favor of the requested fee award. *See Heritage Bond*, 2005 WL 1594403, at *20 ("no dispute that the plaintiffs in this litigation were opposed by highly skilled and respected counsel with well-deserved local and nationwide reputations for vigorous advocacy in the defense of their clients."); *In re TikTok, Inc., Consumer Privacy Litig.*, No. 20 C 4699, 2022 WL 2982782, at *28 ("[t]he need to provide financial incentives for zealous and effective representation of consumers in legally and technologically complex data privacy cases such as this—especially in the age of pervasive social media—weighs in favor of granting the [fee] request.").

### 4.    *Class Counsel Worked for 11 Years on a Fully Contingent Basis*

The contingency fee market paradigm supports the 29% fee request. "[W]hen counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Bellinghausen*, 306 F.R.D. at 261; *see also Newell v. Ensign U.S. Drilling (Cal.) Inc.*, No. 1:19-cv-01314-JLT-BAK, 2022 WL 2704551, at *10 (E.D. Cal. July 12, 2022) ("[t]he Court recognizes that contingency-based law firms need to recover more than their actual expended hours in cases they win to offset cases with no recovery.").

This Court has noted that "[t]he contingent nature of representation in this case supports an award of attorneys' fees." *In re Apple Inc. Device Performance Litig.*, 2021 WL 1022866, at *6. So does its exceptionally long duration. *See Luna v. Universal City Studios, LLC*, No. CV 12-9286 PSG (SSx), 2016 WL 10646310, at *7 (C.D. Cal. Sept. 13, 2016) ("the duration of the case—lasting now for over three years—counsels in favor of a larger attorneys' fees award"). Settlement Class Counsel took this matter on a full contingency basis and advanced all necessary professional time and expenses for over 11 years. Joint Decl. ¶¶ 42, 43. "This substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees." *Nexus 6P*, 2019 WL 6622842, at *13 (quoting *Omnivision Techs.*, 559 F. Supp. 2d at 1047). "Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work." *Ching v. Siemens Indus. Inc.*, No. 11-cv-04838-MEJ, 2014 WL

2926210, at * 8 (N.D. Cal. June 27, 2014); *see also In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.").

5.    *The Requested Award Is Consistent with Similar Cases*

Plaintiffs' request for a modest upward departure from the 25% benchmark is supported by awards in this Circuit in similar-sized cases. *See, e.g, In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695, at *1 (N.D. Cal. Sept. 20, 2018) (awarding one-third of $105 million settlement as attorneys' fees); *In re Informix Corp. Sec. Litig.*, No. 97-1289 CRB, 1999 WL 33456024, at *1 (N.D. Cal. Nov. 23, 1999) (awarding 29.2% of $137 million settlement fund); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *15, 34 (N.D. Cal. Aug. 17, 2018) (awarding 27% of the $115 million settlement); *Kendall v. Odonate Therapeutics, Inc*., No.: 3:20-cv-01828-H-LL, 2022 WL 1997530, at * 6–7 (S.D. Cal. June 6, 2022) (awarding 33.3% and noting "[d]istrict courts in the Ninth Circuit have also frequently awarded fees of one-third of the common fund").

The requested amount is also within the range awarded in other complex privacy and consumer class actions where novel issues are tested. *Nexus 6P*, 2019 WL 6622842, at *13 (approving 30% in complex smartphone technology case); *In re Lenovo Adware Litig.*, No. 15-md-02624-HSG, 2019 WL 1791420, at *8 (N.D. Cal. Apr. 24, 2019) (awarding 30% in a privacy class action); *Grace v. Apple, Inc.*, No. 17-CV-00551-LHK, 2021 WL 1222193, at *2 (N.D. Cal. Mar. 31, 2021) (awarding 28% of the settlement fund in technical case and novel claim involving FaceTime calls); *In re TikTok, Inc., Consumer Privacy Litig.*, No. 20 C 4699, 2022 WL 2982782, at *27 (awarding 33% of common fund and noting that such an amount is typical in other data privacy settlements and routine for class action settlements in similarly complex fields). Judge Alsup has held that a 35% fee was reasonable in an action alleging consumer protection claims. *Dugan v. Lloyds TSB Bank, PLC*, No. C 12-02537-WHA, 2014 WL 1647652, at *3 (N.D. Cal. Apr. 24, 2014); *see also Weeks v. Google LLC*, No. 5:18-cv-00801-NC, 2019 WL 8135563, at *4 (N.D.

Cal. Dec. 13, 2019) (awarding 30% of the common fund); *Patel v. Trans Union, LLC*, No. 14-cv-00522-LB, 2018 WL 1258194, at *5 (N.D. Cal. Mar. 11, 2018) (awarding one-third of the settlement fund in a consumer class action matter involving erroneous information on credit reports). Accordingly, the request for 29% of the Settlement Fund is well within the range of fees awarded in analogous cases, obtaining similarly exceptional results.

### D.       The Lodestar Cross-Check Confirms Reasonableness

"As a final check on the reasonableness of requested attorneys' fees, courts often compare the amount counsel would receive under the percentage-of-recovery method with the amount counsel would have received under the lodestar method." *Nexus 6P*, 2019 WL 6622842, at *12; *see also Vizcaino*, 290 F.3d at 1050 ("[c]alculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). Under a lodestar cross-check, "a court takes the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (citations omitted).

In performing the cross-check, however, courts "should not, become green-eyeshade accountants" but rather "do rough justice, not to achieve auditing perfection." *Id.* (citations omitted); *see In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) (the cross-check does not require "mathematical precision nor bean-counting") (citation omitted); *In re Toys R Us-Del., Inc – Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 460 (C.D. Cal. 2014) ("[i]n cases where courts apply the percentage method to calculate fees, they should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award.").

#### 1.       *The Number of Hours Devoted to the Case Was Reasonable*

As reflected in the Joint Declaration and supporting declarations, Settlement Class Counsel and Supreme Court Counsel did a great deal of work, including research and preparing the multiple complaints; working with five different experts on privacy, technology, and damages modeling; researching, briefing, and arguing Defendant's three motions to dismiss, Plaintiffs' Motions to

Compel, opposing Defendant's Motion to Stay Discovery and other filings; briefing and arguing the Ninth Circuit appeal; retaining and working with Supreme Court counsel, Gupta Wessler, in opposing Defendant's petition for a writ of certiorari; engaging in substantial written and document discovery and document review; preparing for and participating in three mediations as well as informal settlement discussions with Defendant's counsel; negotiating the scope of injunctive relief and other matters for another six (6) months after the settlement in principle was reached; working with Defendant and the Claim Administrator (Angeion) to ensure all relevant class member information was provided to Angeion and to ensure that the Notice Program was properly developed and implemented (and then supplemented), and responding to numerous Class Member inquiries. *See* Joint Decl. ¶¶ 35 & 44-45.

Moreover, Lead Counsel closely oversaw and monitored the work assignments given to the Executive Committee members after consolidation, increasing efficiency and minimizing duplication. *Id*. ¶¶ 42-43. In two instances, Lead Counsel also appointed committee chairs (Expert Committee and Settlement/Mediation Committee) to further ensure efficiency and reduce duplication, appointments confirmed by the Court in the Preliminary Approval Order. And Lead Counsel have supervised and personally participated in administration of the Settlement after the Court granted preliminary approval. *Id*. ¶¶ 44-45. Lead Counsel reviewed the time and expense records of each participating firm prior to filing this Motion, and one paralegal assigned ABA Litigation Task Codes to each and every time entry to ensure uniformity. *Id*. ¶ 31. That review process corrected errors in task code designation and removed some attorney time that, in the judgment of Lead Counsel, was not appropriate for reimbursement. *Id*.

In total, following this audit process, MDL Counsel and Supreme Court Counsel collectively spent 11,413.50 hours on this matter through August 22, 2022.[7] Joint Decl. Exs. 27–

---

[7] Time incurred post-settlement is compensable and thus is included in the figures reported in the Joint Declaration. *See, e.g., In re Black Farmers Discrimination Litig.*, 953 F. Supp. 2d 82, 97 (D.D.C. 2013) (time spent assisting class members, including with claims, is compensable); *Hausfeld v. Cohen Milstein Sellers & Toll, PLLC*, No. 06-CV-826, 2009 WL 4798155, at *17 (E.D. Penn. Nov. 30, 2009) ("[w]here attorneys provide additional services post-settlement . . . courts should award fees for those services."). However, consistent with Northern District practice, time

29. As noted above in the Introduction, the Joint Declaration also <u>reports</u> total hours and lodestar for State Court Counsel, for transparency, but does <u>not include</u> them in the total, to avoid even the appearance of duplication. Joint Decl. ¶ 43. State Court Counsel would thus be paid out of any award approved by the Court here – and State Court Counsel will not be making a separate fee or expense application here nor in the State Court proceeding.

### 2.   *Pre-Consolidation Hours*

As noted in the Joint Declaration, lodestar is reported first using all reported time throughout the litigation; and second, using a smaller figure that completely ***excludes*** MDL Counsel time spent by counsel prior to the creation of the MDL. *See* Joint Decl. Exs. 27–29. Lead Counsel request some pre-consolidation time be included, for reasons detailed in the Joint Declaration ¶¶ 42-43 but of course defer to the Court's discretion regarding which of these approaches to use, or any other option. The recent case *In re Volkswagen and Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155 (D. Mass. 2015), provides a useful analysis of pre-consolidation work by non-lead counsel who did not receive work assignments in the consolidated action. The court "look[ed] to the approach taken" in *In re Cendant Corp. Secs. Litig.*, 404 F. 3d 173, 194–95 (3d Cir. 2005), which "concluded that when [work performed by non-lead counsel prior to the appointment of a lead plaintiff and the designation of lead counsel] confers benefits on the class, it deserves to be compensated." *In re Volkswagen*, 89 F. Supp. 3d at 180. While the "mere filing of a copycat complaint, or other duplicative action adding no new value" merits court's "deep skepticism" (*id.* at 181), "pre-consolidation contributions…ought to receive the benefit of the doubt and deserve recognition unless it is clear that the work contributed nothing to, or actively detracted from, the class's interests." *Id.* Finally, the *In re Volkswagen* court noted that recognizing pre-consolidation work of "Non-Class Counsel…is one way to encourage attorneys to participate in multidistrict litigation and improve judicial efficiency across our system." *Id.* The Joint Declaration reports pre-consolidation time separately, and several supporting declarations of counsel support their requests for inclusion of this time, and Plaintiffs leave it to the Court's discretion whether to include no (or

---

spent on this fee application is *excluded. Lesevic v. Spectraforce Techs. Inc*., No. 19-CV-03126-LHK, 2021 WL 1599310, at *6 (N.D. Cal. Apr. 23, 2021).

1    some) pre-consolidation time in the lodestar cross-check analysis.

2              3.      *Hourly Rates*

3          Each supporting declaration of counsel verifies that the rates charged by each timekeeper

4    and included in the lodestar calculation for each firm is accurate. Joint Decl. Exs. 4-12. The range

5    for attorneys, including associates, counsel, and partners across all firms is $300–$1,200 and for

6    paralegals is $125–$375. In addition, Plaintiffs are not seeking to test new limits with these rates;

7    instead, the rates are conservative and well within ranges previously approved by judges in the

8    Northern District of California, *Impax Labs*, 2022 WL 2789496, at *9 (e.g., finding $760 to $1,325

9    for partners to be reasonable); *see also id*. at *8 (relevant rates are those charged in the District

10   where the Court sits); *see also Hefler*, 2018 WL 6619983, at *14 (rates "from $650 to $1,250 for

11   partners or senior counsel, from $400 to $650 for associates, and from $245 to $350 for paralegals"

12   deemed reasonable). Just last week, Meta (in an unrelated action) cited to Judge Gillam's *Impax*

13   ruling to support the reasonableness of the hourly rates of its outside counsel at Wilmer Hale. *Meta*

14   *Platforms, Inc. v. Brandtotal Ltd*., 3:20-cv-7182-JCS (N.D. Cal.), Motion for Attorney's Fees dated

15   August 17, 2022, at 14 (*Brandtotal* Dkt. No. 368).  All attorneys on the Executive Committee

16   agreed not to exceed these rates even where they have charged greater rates in the past. *See, e.g.*,

17   Declaration of Paul Kiesel, Joint Dec. Ex. 8.

18         Further support for the request rates come from two current privacy class actions against

19   Google LLC, where Magistrate Judge Susan van Keulen awarded sanctions to Plaintiffs' counsel

20   following a finding of discovery misconduct by Google—and in one of these two cases, she applied

21   the rates of partner David Straite and associate Adam Prom from DiCello Levitt Gutzler LLC

22   ($1,100 and $600, respectively), within the same range of rates requested here. *See Calhoun, et al.*

23   *v. Google LLC*, Case No. 20-cv-05146-YGR-SVK (N.D. Cal.) (Dkt. Nos. 601, 685); *see also id*.

24   (approving paralegal rate of $350).

25         Settlement Class Counsel's rates are even more facially reasonable when compared to the

26   hourly rates charged by large, top defense firms, which now consistently approach $2,000. *See* Roy

27   Strom, *Big Law Rates Topping $2000 Leave Value "In Eye of Beholder"* (Bloomberg, June 9,

28

2022) (reporting that after "a two-year burst in demand," many partners at large law firms charge hourly rates of $2,000 or more).[8] Plaintiffs here are not asking for these rates, and instead only note that the conditions in the legal marketplace and the delay in payment for Settlement Class Counsel in this decade-long case further support the reasonableness of the more modest rates requested in today's Motion.[9]

### 4.   *Implied Multiplier*

Based on the collective hours spent by Settlement Class Counsel (excluding State Court Counsel) and Supreme Court Counsel, after appointment, and their reasonable and customary hourly rates, they have a combined lodestar of $7,949,963.97. Thus, the requested award of fees of $26,100,000 represents a multiplier of 3.28 when only including post-consolidation time; the multiplier is of course lower when including some or all of the pre-consolidation time.

The implied multiplier here is reasonable. "Multipliers of 1 to 4 are commonly found to be appropriate in common fund cases." *Sheikh v. Tesla, Inc.*, No. 17-cv-02193-BLF, 2018 WL 5794532, at *8 (N.D. Cal., Nov. 2, 2018) (citation omitted); *see also In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) (approving 3.66 multiplier in $200 million settlement); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (even a multiplier of 6.85 was "well within the range of multipliers that courts have allowed"); *In re Apple Inc. Device Performance Litig.*, 2021 WL 1022866, at *8 (applying a 2.232 multiplier, equal to about 26% of the $310 million settlement); *In re TikTok, Inc., Consumer Privacy Litig.*, No. 20 C 4699, 2022 WL 2982782, at *29 (awarding a lodestar multiplier of 2.04, equal to 33% of the common fund, but noting that 2.04 "is well below average for a fund of [$92 million]" citing 5 W. Rubenstein, NEWBERG ON CLASS ACTIONS § 15:89 tbl.2 (6th ed.) (for fund sizes over $44 million, the mean multiplier was 2.39)).

Here, Settlement Class Counsel has obtained a substantial benefit for the Settlement Class,

---

[8] Available at https://news.bloomberglaw.com/business-and-practice/big-law-rates-topping-2-000-leave-value-in-eye-of-beholder (last accessed August 23, 2022).

[9] The hourly rates are current rates for all work done in the case for attorneys still actively working in the case, as permitted by the Ninth Circuit in *Washington Pub. Power*, 19 F.3d at 1305. For attorneys no longer on the case, the rates used are historical rates.

1   where the $90 million Settlement Fund represents disgorgement of all that Plaintiffs claim is the

2   unjust enrichment during the Settlement Class Period related to the data allegedly wrongfully

3   obtained (and Facebook contends there was no unjust enrichment at all). *Cf. Impax Labs*., 2022 WL

4   2789496, at *9 (12.5% recovery supported a lodestar multiplier of 2.6). For fee awards, "the

5   benchmark should be increased based on the exceptional results achieved, the risk of litigation, the

6   fine quality of Class Counsel's work, and the contingent nature of the fee." *Gergetz v. Telenav,*

7   *Inc.*, No. 16-cv-04261-BLF, 2018 WL 4691169, at *7 (N.D. Cal. Sept. 27, 2018).

8        **E.**     **Payment Schedule**

9        Far from "clear sailing," Plaintiffs must make their fees and expenses case to the Court, and

10   Meta has the right to oppose, support, comment, or say nothing, to ensure fairness and remove any

11   possible appearance of collusion. ECF. 233-1, Ex. 1, at § 10.1. As importantly, the Parties

12   purposefully de-linked settlement approval from approval of any fee award. ECF No. 233-1, Ex. 1

13   at §10.4.

14        In the same vein, the Settlement Agreement contains no agreements as to the *timing* of the

15   distribution of the awards requested in this Motion, ECF. 233-1, Ex. 1 at § 10.3. If the Court were

16   to grant final approval of the Settlement, Meta is required to fund the balance of the Settlement

17   Fund (over and above administration costs already funded) no later than "thirty [30] days after the

18   issuance of the Court's Final Approval Order," ECF 233-1, Ex. 1 at § 4.1, but the date of distribution

19   from the Settlement Fund to counsel is at the Court's discretion. Plaintiffs respectfully request that

20   the Court authorize payment of any approved fee or expense awards immediately following

21   funding. Given the decade this case has consumed, during all of which Settlement Class Counsel

22   worked without any compensation whatsoever while putting their own money at risk to fund the

23   many litigation expenses (travel to court hearings, computerized research, salaries for associates

24   and paralegals, document database, payments to experts, mediation costs, and a myriad of others),

25   to retain and work with experts, and to pay the Mediation costs, Lead Counsel respectfully submit

26   that fairness requires distribution of approved fees and expenses at that time.

27        Plaintiffs' request is neither unusual nor problematic: "'[f]ederal courts…routinely approve

28

settlements that provide for payment of attorneys' fees prior to final disposition in in complex class actions.'" *In re Apple Device Performance Litig.*, 2021 WL 1022866, at \*10 (N.D. Cal. Mar. 17, 2021) (quoting *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at \* 40 (N.D. Cal. July 22, 2020), *in turn quoting In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at \* 1 (N.D. Cal. Dec. 27, 2011)); *see also In re Optical Disk Drive Prods. Antitrust Litig.*, 2016 WL 7364803, at \* 13 (N.D. Cal. Dec. 19, 2016) (such provisions "are common practice in the Ninth Circuit." (citing *In re TFT-LCD (Flat Panel Antitrust Litig.*, 2011 WL 7575004, at \*1, and *Miller v. Ghirardelli Chocolate C.*, No. C-12-04936, 2014 WL 4978433 (N.D. Cal. Oct. 2, 2014); *In re Yahoo!*, 2020 WL 4212811, at \* 40 ("'the size of the settlement fund available to the class will be the same regardless of when the attorneys get paid.'") (quoting *Pelzer v. Vassalle*, 655 Fed. App'x 352, 365 (6th Cir. 2016). The parties have also asked the Court to retain jurisdiction through the completion of the settlement process and final order closing the case. ECF No. 233-1, Ex. 1 at § 15.4. Thus, the Court can readily handle any issues that arise.

## F.       The Litigation Expenses Are Reasonable and Should Be Approved

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit[.]" *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citation omitted). An attorney is entitled to recover as part of the award of attorney's fees "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted).

Settlement Class Counsel and Supreme Court Counsel have incurred $393,048.87 in unreimbursed litigation expenses, including costs advanced in connection with experts, consultants, legal research, court reporting services, travel and travel-related meals and hotels, mediation, copying and mailing, and other customary litigation expenses, Joint Decl. Exs. 4 through 15 and 30, all categories routinely approved by judges in this District. *See, e.g., Impax Labs.*, 2022 WL 2789496, at \*9–10*; In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2018 WL 4586669, at \*3 (N.D. Cal. Sept. 24, 2018) (expenses such as expert and consultant fees, court fees, travel and

lodging costs, legal research fees, and copying expenses were reasonable and recoverable); *Thomas*, 2018 WL 2234598, at *4 (granting requests for costs consisting of "court fees, online research fees, postage and copying, travel costs, electronic discovery expenses, deposition costs, mediation charges, and travel costs"). Lead Counsel required each submitting firm to verify accuracy of their carried expenses under oath, which they did in Exhibits 4 through 15 to the Joint Declaration. Plaintiffs are requesting reimbursement at cost, without any markup or interest. Lead counsel also report expenses across the case by category in Exhibit 30 to the Joint Declaration.

### G.      The Position of the Settlement Class

The reaction of the Settlement Class has been favorable to date. While the deadline to opt out or object is September 12, 2022, and the deadline to submit a claim is September 22, 2022, the Settlement Administrator has already received 1,352,214 claims. Weisbrot Decl. ¶ 21. And while three objections have been filed so far, none objects to fees.

### H.      Request For Plaintiff Service Awards

Service awards are "intended to compensate class representatives for work undertaken on behalf of a class" and "are fairly typical in class action cases." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (internal quotation marks and citation omitted). Service awards of $5,000 are "presumptively reasonable" in this District. *Bellinghausen*, 306 F.R.D. at 266. Here, Settlement Class Counsel request Service Awards of $5,000 each for the four Settlement Class Representatives in the MDL, and $3,000 each for three State Court plaintiffs, for a total of $29,000. The request is precisely the "presumptively reasonable" incentive award. *Id.*; *Noll v. eBay, Inc.*, 309 F.R.D. 593, 611 (N.D. Cal. Sept. 15, 2015) (Davila, J.).

In considering whether to make a service award, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, …and the amount of time and effort the plaintiff expended in pursuing the litigation." *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-cv-03698-NC, 2018 WL 2183253, at *8 (N.D. Cal. May 11, 2018) (alterations and citation omitted); *Lenovo*, 2019 WL 1791420, at *9–10 (same). Here, Settlement Class Representatives were willing to step forward to represent and protect the

interests of the Settlement Class by, among other things, actively monitoring the status of the litigation for more than ten years, communicating regularly with Settlement Class Counsel, searching for and producing responsive documents, and reviewing significant pleadings prior to their filing, including the three consolidated complaints. Joint Decl. Exs. 16 through 22. All Settlement Class Representatives were also instructed to be on standby during each of the three mediations in case questions arose, and in the MDL, all four Named Plaintiffs also responded to and verified interrogatories. Importantly, all seven Settlement Class Representatives approved the terms of the settlement prior to being told that Settlement Class Counsel had negotiated the right to seek them – again, assiduously avoiding even the *appearance* of collusion. *Id.*

Courts have awarded service awards for similar work on behalf of the class and time commitments. Moreover, Settlement Class Representatives seek a total of $29,000 or 0.0004% of the $90 million Settlement Fund. This amount is reasonable considering how small the award is in relation to the full amount of the Settlement Fund. Finally, the Settlement does not improperly grant preferential treatment to Settlement Class Representatives or segments of the Settlement Class. *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007). Because Settlement Class Representatives' Service Awards request is "in line with precedent," *Allagas v. BP Solar Int'l, Inc.*, No. 3:14-cv-00560-SI (EDL), 2016 WL 9114162, at *4 (N.D. Cal. Dec. 22, 2016) (citations omitted), the Court should therefore grant Service Awards.

## V.   CONCLUSION

Class Counsel devoted thousands of hours to this 10+-year litigation, including substantial time even before they were appointed in a leadership capacity. As a result of their hard work, against one of the largest and most formidable technology companies in the world, they brought about very important pro-privacy changes in the law and successfully negotiated a settlement of historic proportions Based on this result, and consistent with the factors applied by federal courts, including in the Northern District of California, Settlement Class Counsel respectfully request that the Court issue an Order awarding $26,100,000 in attorneys' fees, approving reimbursement of $393,048.87 in litigation expenses, and approving Services Awards of $5,000 to each of the Settlement Class

1    Representatives in the MDL and $3,000 to each in the State Court Action.

2    Dated: August 23, 2022                          Respectfully submitted,

3    **DiCELLO LEVITT GUTZLER LLC**          **GRYGIEL LAW LLC**

4

5          */s/ David Straite*                              */s/ Stephen Grygiel*
     David A. Straite (admitted *pro hac vice*)    Stephen G. Grygiel (admitted *pro hac vice*)
6    One Grand Central Place                     127 Coventry Place
     60 East 42nd Street, Suite 2400             Clinton, NY 13323
7    New York, New York 10165                    Tel.: (407) 505-9463
     Tel.: (646) 933-1000                        *stephengrygiel22@gmail.com*
8    *dstraite@dicellolevitt.com*

9                                                **SIMMONS HANLY CONROY LLC**
     Amy E. Keller (admitted *pro hac vice*)
10   Adam Prom (admitted *pro hac vice*)              */s/ Jay Barnes*
     Ten North Dearborn Street, 6th Fl.          Jason 'Jay' Barnes (admitted *pro hac vice*)
11   Chicago, Illinois 60602                     112 Madison Avenue, 7th Floor
     Tel.: (312) 214-7900                        New York, NY 10016
12   *akeller@dicellolevitt.com*                 Tel.: (212) 784-6400
     *aprom@dicellolevitt.com*                   *jaybarnes@simmonsfirm.com*
13

14                                  *Class Counsel*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)**

2

I, David A. Straite, attest that concurrence in the filing of this document has been obtained

3

from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

4

Executed this 23rd day of August, 2022, at New York, NY.

5

6

*/s/ David Straite*

David A. Straite

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28