UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  | |
|---|---|---|
| IN RE: | FACEBOOK INTERNET TRACKING LITIGATION | Case No. 5:12-MD-2314-EJD <br><br> Judge: Hon. Edward J. Davila <br><br> OBJECTION TO SETTLEMENT AND MOTION TO FILE CONFIDENTIAL INFORMATION UNDER SEAL |

FILED AUG 26 2022 CLERK, U.S. DISTRICT NORTH DISTRICT OF CALIFORNIA SAN JOSE OFFICE

NOW COMES Class Member Eleni Gugliotta, through undersigned counsel, and hereby objects to the proposed class action settlement. As set forth below, the proposed settlement is not fair, reasonable, nor adequate, because, *inter alia*, it releases broad categories of claims for damages, pled and unpled, for inadequate consideration. Further, the proposed settlement improperly requires class member objectors to publically disclose additional personal identifying information within their objections, further exacerbating the harm caused by and following from the Defendant's actions in alleged in the initial complaint. Further still, the proposed settlement improperly requires class member objectors to sign their objections, even if represented by counsel. Finally, the legal fees are inappropriate in light of the structure of the proposed Settlement.

**I.    The Relief Provided by The Settlement Is Not Fair, Reasonable, and Adequate.**

A court may approve a class action settlement if it "is fundamentally fair adequate and reasonable." *Hanlon v. Chrysler Corp.* 150 F. 3d 1011, 1026 (9th Cir. 1998). The Court presented with a proposed settlement must also evaluate substantive fairness, including other

factors.

Instantly, the proposed settlement provides for a settlement of $90,000,000.00, with the class members receiving only a portion, after expenses and attorney fees, on a *claims made* basis. Firstly, this amount is entirely inadequate. Secondly, as the class counsel must know, the "claims made" basis for compensation provides for a de minimis financial benefit ONLY after the class members go through an unduly burdensome process in exchange for an unknown benefit.

While third party observers, as well as the proposed settlement, may simply concentrate on the overall number of $90,000,000, this is subterfuge, intentional or not, that distracts from the inadequacy of the recovery in relation to the harm caused. However, scratching this veneer with simple mathematics, a different picture is seen. Of the gross settlement amount, the Attorney Fees are estimated to $26,100,000 and "costs" are estimated about $200,000. This leaves $63,700,000 ("Net Settlement Proceeds") to be divided on a pro-rata basis among a pool of class members that is unidentified and un-estimated by the Settlement Agreement. This is deceiving.

Exhibit A is a Meta Earnings Presentation for Q2 2022 available fat www.investor.fb.com. This indicated that in Facebook has had between 196,000,000 to 198,000,000 Daily Active Users. Ex. A, Page 13. Since nowhere in the Notice or Settlement Agreement does it indicate how many users are potentially members of the class, it is reasonable to assume that each pro-rata share of the Net Settlement Proceeds could be a low as $0.33 per member. Assuming, *arugendo*, that the claims take rate is 100%, this number remains inadequate. Assume a more reasonable take rate of 5%, the Defendant in this matter will pay $3,185,00 to the actual injured parties.

An additional review of Exhibit A is enlightening in that it sheds light on the actual value

of class member data in the hands of the Defendant. Within the U.S. & Canada, Facebook Average Revenue per User is at least $48.29 per quarter. Ex. A, Page 15. This would translate to at least $193.16 per user, per year. The proposed settlement provides for the Defendant to relinquish less than 2/10th of 1 percent of the revenue made for each user, or less than ½ of a day's worth of revenue. This is the definition of "de minimis".

Further, a comparison of the proposed Settlement with other cases of improperly releasing user information shows the instant Settlement inadequate. For example:

> i.  T-Mobile settled a class action lawsuit filed by customers over a data breach inolving an estimated 76.6 million people by paying $350 million to settle the customers' claims. See
> https://www.cnet.com/tech/mobile/t-mobile-agrees-to-500m-settlement-in-massive-data-breach/
> This represents $4.57 per claimant, compared with the $0.33 in the instant case.
>
> ii. Equifax settled a class action lawsuit involving an estimated 147 million people by paying $380 million to settle the customers' claims. See
> https://www.reuters.com/legal/legalindustry/data-breach-class-action-litigation-changing-legal-landscape-2022-06-27/
> This represents $2.59 per claimant, compared with the $0.33 in the instant case.

These anecdotal examples illustrate situations where the data was *stolen* by third party actors merely due to the negligence of the parties. In the instant litigation, the Defendant's actions were alleged to be *intentional* and *self initiated*, which would appear to be even more

egregious. It is as if Facebook robbed a bank and then, when caught, merely needs to return 1% of the ill-gotten gains.

Finally, a more objective metric to gauge reasonableness may be gleaned from other sources. During the time of the Defendant's actions, Congress submitted H.R. 2545 that dealt with such actions. Exhibit B. Such proposed legislation imposed a civil penalty on the unauthorized release of personal identifying information of $100 for each consumer for the release of first name, last name and one other item of personally identifying information, and $50 for each additional item of personally identifying information. While, of course, this is not presidential, it does indicate some thought behind what dollar amount Congress feels is an appropriate penalty in relatively analogous situations as the instant case.

## II. The Notice of Settlement is Deceptive or Defective.

Due process requires that absent class members receive adequate notice in order for their rights to be compromised through settlement. Proper notice "should describe the action and the plaintiffs' rights in it." *Phillips Petroleum Co. v. Shuits*, 472 U.S. 797, 811-12 (1985)(quoting a class-action settlement notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. Notice is adequate if it may be understood by the average class member." *Wal-Mart Stores, inc. v. Visa U.S.A., inc., 396* F.3d 96, 114 (2d Cir. 2005) (citation and internal quotation marks omitted). The class notice here did not satisfy those standards with respect to two crucial components of the settlement: (a) the number of class members so that each member can balance monetary compensation for what claims they are releasing, and (b) imposes an onerous and dangerous amount of public disclosure of personally identifying information in order to state an

objection.

(a) <u>Non-disclosure of Class Size.</u> An exemplary copy of a Notice of Proposed Settlement of Class Action is provided as Exhibit C. A review of this Notice identifies "WHO IS IN THE SETTLEMENT?" with a description of users' activities during a month period. However, it fails to indicate how large a cohort this could possibly be. Certainly the Defendant and Class Counsel must have this information; however, its absence appears calculate to distract from the *actual* amount a class member is receiving to surrender their claims. Further, this provides an appearance of adequacy due the prominent publication of "a Settlement Fund of ninety million dollars ($90,000,000.00).

The adequacy of notice is measured by the "average class member." An average person who does not have actual damages is incapable of calculating, based on the information in the notice, what he or she is giving up and for what amount of money. The Notice tells little or nothing of what is at stake, and makes it impossible to calculate a minimum, a maximum, or even a possible *range* of cash compensation for forfeiting all future claims.

Finally, the Settlement fails to include any *cy pres* recipient. Thus, in addition to not having a denominator for a pro-rata calculation, the average class member does not even have a numerator. Or, even more deceptively, is provided the *appearance* of a numerator of $90,000,000.00.

(b) <u>Onerous Objection Procedure.</u> According to the Notice, the follwing is *required* in order to state an Objection:

> "Your Objection must include: (i) the case name and number: In Re Facebook Internet Tracking Litigation, Case No. 5:12-MD-02314-EJD (N.D. Cal.); (ii) **the Objector's full name, address, telephone number, email address; Facebook account URL (if reasonably available); the email address and telephone number associated with the Settlement Class Member's Facebook account; and his or her signature;** (iii) the full

name, address, telephone number, and email address of the Objector's counsel (if the Objector is represented by counsel); and (iv) the grounds for the Objection, including any legal and factual support and any evidence in support of the Objection." Exhibit C **(emphasis added)**

Filings of Objections in this litigation are matters of public record. In order to exercise her due process rights to object to the proposed settlement, the present class member (and *any* class member) is required to disclose a dangerous amount of public disclosure of personally identifying information. This amount of information, if released by TransUnion or Equifax, would result in a fine or penalty almost 6-times the Net Settlement Proceeds in this instant case.

Somewhat ironically, the class representatives did not provide the equivalent personally identifying information, for public filing, within the signed settlement agreement. *See Doc 233-1 Filed 02/14/22*. There is no reason why other class members should be required to provide such information as a perquisite for the right to state their objection.

The parties proposed and this Court approved objection procedures that are unnecessarily burdensome and calculated to discourage objections.

### III. The Signature Requirement For Objectors Improperly Discourages Objections And Should Not Be Permitted.

An additional procedure that was calculated to discourage objections is the requirement that the a class member's objection must be personally signed by the objector even if the objecting class member is represented by an attorney. This provision is contrary to Federal Rule of Civil Procedure 23(c)(2)(B)(iv), which provides that a class member "may enter an appearance through an attorney if the member so desires," and 28 U.S.C. § 1654, which allows individuals to appear and conduct their cases through counsel. Somewhat ironically, the class representatives did not sign the settlement agreement, but proceeded through their counsel. There is no reason

why other class members should not be able to object using that same procedure.

Beyond violating the Federal Rules and §*1654* and being unnecessary, the signature requirement may have a significant impact on how this Court views objections. As a result of the logistical burden of a personal signature, some class members and lawyers may forgo objecting or a lawyer may choose to file objections on behalf of only one client, rather than several, because the lawyer can make the same substantive point regardless of the number of objectors. Yet an objection on behalf of a few clients may have a lesser impact than an objection on behalf of several clients on the Court's consideration of the proposed settlement, because judges often take the number of objectors into account when assessing the fairness, adequacy, and reasonableness of a proposed class-action settlement. *See, e.g., Sullivan v. DB Investments, Inc.,* 667 F.3d 273, 321 (3d Cir. 2011) (noting that district court acted within its discretion in finding "that the minimal number of objections and requests for exclusion. . . favor[ed] settlement").

## IV.   The Class Members are Not the Foremost Beneficiary

The attorney's fees in the Settlement is not based on the value of Net Settlement Proceeds or the amount of claims filed and paid, but rather on the gross settlement fund. The class counsel know of the "4-5% take rate" estimation when negotiating this settlement, and instead of working for the benefit of the class negotiated a settlement that allows themselves to extract fees far outstripping the class's actual settlement benefit. The class counsel is guaranteed a fee of $26,100,000 regardless of the "take rate" and therefor seem to have no motivation to fight against the onerous and oppressive requirements placed on claimants or objectors. This is an impermissible distribution of settlement proceeds to class counsel and particularly unwarranted as class members stand to receive an unknown amount that could be as little as $0.33.

Merely increasing the fee award cannot correct this imbalance because counsel has

insulated its negotiated fee from the actual class recovery. In economic reality, the settlement compensates class counsel regardless of any benefits obtained for the class. The first sign of preferential treatment is "when counsel receive a disproportionate distribution of the settlement" *Bluetooth*, 654 F.3d at 947; see also American Law Institute, Principles of the Law of Aggregate Litigation § 3.05, comment b at 208 (2010) ("a proposed settlement in which the class receives an insubstantial payment while the fees requested by counsel are substantial could raise fairness concerns"). While a contingency fee of 29% of the settlement value would be appropriate if the class members were receiving adequate compensation for the value of their stolen data, such a fee is inappropriate in light of the terms of the proposed Settlement.

## CONCLUSION

The Court should deny final approval of the settlement.

## NOTICE OF INTENT TO APPEAR

Please note that objector, through counsel, intends to appear at the fairness hearing. A signed objection of the present Objector, including requisite confidential personal information, will be filed *under seal* pursuant to a contemporaneously filed Motion.

Dated: August 22, 2022

Respectfully submitted,

*/s/ John D. Gugliotta*
John D. Gugliotta (OH0062809)
Gugliotta & Gugliotta, LPA
3020 W. Market Street
Fairlawn, OH 44333
P (330) 253-2225
F (330) 253-6658
Email johng@inventorshelp.com

Objector's counsel

## CERTIFICATE OF MAILING

I hereby certify that on August 23, 2022, Objector, by and though their attorney, serviced its Objection via first class mail, postage prepaid, to:

Class Action Clerk
United States District Court for the Northern District of California
280 South 1st Street
San Jose, California 95113


Dated: August 23. 2022                                    Respectfully submitted,

                                                          */s/ John D. Gugliotta*
                                                          John D. Gugliotta (OH0062809)

                                                          Objector's counsel