Kendrick Jan, CA SBN 105149
Kendrick Jan, APC
402 West Broadway, Suite 1520
San Diego, CA 92101
Telephone:  (619) 607-9750
kj@jan-law.com

John J. Pentz, Esq., Mass. Bar No. 561907
19 Widow Rites Lane
Sudbury, MA 01776
Telephone: (978) 261-5725
jjpentz3@gmail.com
(*pro hac vice forthcoming*)

Counsel for Objectors Sarah Feldman and Cameron Jan

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK INTERNET TRACKING LITIGATION | Case No. 5:12-MD-2314-EJD |
| | CLASS ACTION |
| This Document Relates to: ALL ACTIONS | OBJECTION OF CLASS MEMBERS SARAH FELDMAN AND CAMERON JAN TO PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLE-MENT, AND PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS, |
| | Hearing date:  October 27, 2022 Hearing time:  9:00 a.m. |

In the captioned matter, Class Members Sarah Feldman and Cameron Jan object to

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT ("Settlement

Motion"), and PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND

SERVICE AWARDS ("Fee Motion"), as follows:

## OBJECTION

## I.     INTRODUCTION AND OBJECTION PREREQUISITES

### A.     Summary of Objections

Objectors Feldman and Jan object to the Settlement Motion and the Fee Motion on the following generally stated grounds:

(1)     Lead Plaintiffs' Motion for Final Approval of Settlement ("Settlement Motion") seeks final appointment to the role of Named Plaintiff three individuals named as plaintiffs in a "parallel class action," two of whom are not Settlement Class members and do not qualify as representative parties under Rule 23(a).

(2)     The Settlement represents an unreasonable compromise of statutory damages available to Class members pursuant to the Electronic Communications Privacy Act of 1986 ("Wiretap Act").  *See* 18 U.S.C. § 2520(c)(2).

(3)     The Settlement represents an unreasonable compromise of minimum statutory damages available to Class members under California's Invasion of Privacy Act ("CIPA").  *See* Cal. Penal Code § 637.2.

(4)     The Notice Plan is not the best notice practicable under the circumstances and was not reasonably calculated to apprise members of the Settlement Class of those concerns set forth in Rule 23(c)(2)(B)(i) and (iii).

(5)     The Settlement neglects the Ninth Circuit's holding in *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (2020) that Class claims for violation of the Wiretap Act and CIPA were adequately alleged, including that "these statutory provisions codify a substantive right to privacy, the violation of which gives rise to

a concrete injury sufficient to confer standing." *Supra* at 598. The controlling Third Amended Complaint ("TAC"), however, states causes of action for only Breach of Contract (Count I) and Breach of the Covenant of Good Faith and Fair Dealing (Count II); the earlier dismissal of both of these causes of action was affirmed by the Ninth Circuit. *Supra* at 611. ("We affirm the district court's dismissal of the SCA, breach of contract, and breach of implied covenant claims.")

(6)     The parties have failed to satisfy this District's Procedural Standards for Approving Class Action Settlements. In particular, they have failed to provide potential recoveries if the Plaintiffs had prevailed on all of their claims, compare that amount to the actual $90 million recovery, and justify the enormous discount of 99.999927%. They have also failed to explain why the claims being released are different from and broader than the claims contained in the TAC. Because some claims are being released for no additional consideration, the Court should reject the settlement unless the release is narrowed to just the claims alleged in the TAC that are being compensated.

(7)     Even if the Court were to regard statutory damages as being a type of punitive damages, Plaintiffs could have settled this case for up to $900M (i.e., disgorgement damages of $90M + statutory damages of $810M = $900M) consistent with *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). (Punitive damages capped at 9x compensatory damages.) While a trillion dollar recovery was unlikely to survive appellate challenge, Supreme Court precedent permits the award of compensatory damages (including unjust enrichment), plus

punitive damages up to nine time compensatory damages. That means if Plaintiffs prevailed at trial on their wiretap claims, they could have expected an enforceable recovery of up to $900 million. The 90% discount on that figure, which represents NO statutory damages whatsoever, is indefensible in light of Plaintiffs victory in the Ninth Circuit.

(8)     The requested 29% fee substantially exceeds both a reasonable common fund fee in this case and the Ninth Circuit's 25% benchmark.

(9)     The Settlement proposes to compromise for $90 million the collective claims of Class members' for statutory damages of over $1.24 trillion, a compromise of 99.999927%. Although the gross statutory damages are so great that a judgment would violate due process, the incredibly modest percentage recovery does not warrant an upward adjustment of the benchmark fee, but instead dictates a substantial downward adjustment.

(10)    The Settlement's extraordinary discount against statutory damages does not justify the sought lodestar multiplier of 3.14.

(11)    The Wiretap Act provides a fee shifting mechanism that allows for recovery of attorneys' fees. 18 U.S.C. § 2520(b)(3). In fee shifting cases, the fee is intended to be borne by the defendant, and the fees would ordinarily be in the amount of Class Counsel's lodestar, with a multiplier employed only in extraordinary circumstances. Here, the Class is being asked to pay the fee, and the recovery of only a very low percentage of available statutory damages does not support an award of a multiplier.

Objection of Class Members
Feldman and Jan to Settlement
Motion and Fee Motion

(12)    Class Counsel failed to direct notice of their fee motion to all class members in a reasonable manner, in violation of Rule 23(h) and *In re Mercury Interactive*. Class Counsel has not provided any detailed information in support of their lodestar calculations, in violation of this Court's procedural rules, and should be required to submit particularized data regarding timekeeper titles, work performed, hours worked, and hourly rate.

(13)    The Fee Motion seeks incentive awards for named plaintiffs in the parallel California action, who by their own admission are not Class Members because they were not Facebook users during the Class Period.  Non-Class Members may not receive incentive awards or any other amounts from the common fund.

**B.      Objectors' Class membership/standing**

Objector Sarah Feldman meets the definition of membership in and is a member of the certified Class in the captioned matter.  Order Certifying Settlement Class, ECF 241, p. 2, ¶ 2.  She has submitted a claim in the proposed settlement and has been assigned Submitted Claim ID: FBM51324873.  As a Class Member, Sarah has standing to object to the Settlement Motion, the proposed Settlement, and the Fee Motion, including without limitation as to Class Counsel's sought fee and certain named plaintiffs' sought service awards.  Sarah Feldman's objection applies to the entire class per FRCP Rule 23(e).

Objector Cameron Jan meets the definition of membership in and is a member of the certified Class in the captioned matter.  Order Certifying Settlement Class, ECF 241, p. 2, ¶ 2.  He has submitted a claim in the proposed settlement and has been assigned Submitted Claim ID:  FBM51324512.  As a Class Member, Cameron has standing to object

to the Settlement Motion, the proposed Settlement, and the Fee Motion, including without limitation as to Class Counsel's sought fee and certain named plaintiffs' sought service awards.  Cameron Jan's objection applies to the entire class per FRCP Rule 23(e).

## C.    Objectors' personal information

Sarah Feldman:  812 Haight Avenue, Alameda, CA 94501.  The email address and telephone number associated with the Sarah Feldman's Facebook account are: sarahlfeldman@yahoo.com and current phone number (513) 256-5230.

Cameron Jan:  2309 Fifth Avenue, Apt. 202, San Diego, CA 92101.  The email address and telephone number associated with Cameron Jan's Facebook account during the Class Period were:  spacemambo101@yahoo.com and (619) 922-7818.  His current email and phone number are:  hondojan@gmail.com and (619) 922-7818.  Cameron believes his Facebook account URL to be: Facebook.com/Hondo.jan.

Objectors should be contacted through their legal counsel, see below.

## D.    Identification of Objectors' counsel

Objectors are represented by attorneys Kendrick Jan and John Pentz.  Attorney Jan is licensed to practice law in the State of California and is a member of the bar of the United States District Court, Northern District of California; his contact information is:  Kendrick Jan, Attorney, Kendrick Jan, APC, 402 West Broadway, Suite 1520, San Diego, California 92101; telephone: 619.231.7702.  Attorney Pentz is licensed to practice law in the State of Massachusetts and the Ninth Circuit, and is seeking admission to the United States District Court, Northern District of California, *pro hac vice* in the captioned matter; his contact information is: John Pentz, Attorney, 18 Damon Street, Wayland, Massachusetts, 01778;

telephone: 978.261.5725.  (Note:  This objection is prepared and submitted with assistance of counsel.)

**E.      Notice of intent to appear at Fairness Hearing**

Objectors Feldman and Jan intend to appear through counsel at the October 27, 2022 final approval hearing ("Fairness Hearing") to provide perspective and argument in support of this objection.

**F.      Objectors do not intend to call witnesses**

Objectors Feldman and Jan do not intend to call witnesses at the October 27, 2022 Fairness Hearing.

## II. PROCEDURAL HISTORY

**A.      Complaint filings**

Plaintiffs filed an original Complaint on September 30, 2011, a First Amended Complaint on April 3, 2012, a Corrected First Amended Consolidated Class Action Complaint on May 23, 2012, a Second Amended Consolidated Class Action Complaint on December 1, 2015, and a Third Amended Consolidated Complaint on August 8, 2017.

**B.      Motions to Dismiss and appeal**

Defendant Facebook filed Motions to Dismiss on Plaintiffs' Corrected First Amended Consolidated Class Action Complaint, Second Amended Consolidated Class Action Complaint, and Third Amended Consolidated Complaint.  Ultimately, Facebook's Motions to Dismiss were granted without leave and an appeal to the Ninth Circuit ensued. As described by the Ninth Circuit, based on defendant's motion to dismiss for lack of

standing and failure to state a claim, this Court[1] "determined that Plaintiffs had failed to show they had standing to pursue claims that included economic damages as an element, thus disposing of the claims for trespass to chattels, violations of the CDAFA, fraud, and statutory larceny" and "also dismissed for failure to state a claim, without leave to amend, Plaintiffs' claims for violations of the Wiretap Act, CIPA, and the SCA, as well as their common law claims for invasion of privacy and intrusion upon seclusion." *In re Facebook, Inc. Internet Tracking Litigation*, 955 F.3d 589, 597 (2020). On appeal, the Ninth Circuit determined "Plaintiffs have sufficiently alleged a clear invasion of the historically recognized right to privacy.  Therefore, Plaintiffs have standing to pursue their privacy claims under the Wiretap Act, SCA, and CIPA…" *Supra at* 599.  The Ninth Circuit further determined Plaintiffs had standing under common law trespass to chattels and fraud, statutory larceny, and violations of the CDAFA.  *Supra at 599* ("Plaintiffs also alleged theories of California common law trespass to chattels and fraud, statutory larceny, and violations of the CDAFA.  The district court dismissed these claims for lack of standing, concluding that the Plaintiffs failed to demonstrate that they had suffered the economic injury the district court viewed as necessary to bring each of these claims.  *We respectfully disagree.*"  Emphasis added.).

---

[1] This Court "properly concluded that Plaintiffs had established standing to bring claims for invasion of privacy, intrusion upon seclusion, breach of contract, breach of the implied covenant of good faith and fair dealing, as well as claims under the Wiretap Act and CIPA, because they adequately alleged privacy harms."  *In re Facebook, Inc. Internet Tracking Litigation*, 955 F.3d 589, 598 (2020).  This limited aspect of the Court's ruling was not appealed.

Objection of Class Members
Feldman and Jan to Settlement
Motion and Fee Motion

Regarding the sufficiency of Plaintiffs' pleading of the various causes of action, the

Ninth Circuit held:

- "Plaintiffs have sufficiently pleaded the 'reasonable expectation of privacy' and 'highly offensive' elements necessary to state a claim for intrusion upon seclusion and invasion of privacy to survive a 12(b)(6) motion to dismiss." *In re Facebook, Inc. Internet Tracking Litigation*, 955 F.3d 589, 606 (2020).

- "Plaintiffs also have sufficiently alleged that Facebook's tracking and collection practices violated the Wiretap Act and CIPA." *Supra* at 606.

- [W]e conclude that Facebook is not exempt from liability as a matter of law under the Wiretap Act or CIPA as a party to the communication." *Supra* at 608.

- "Plaintiffs' claims for relief under the SCA are insufficient, and the district court correctly dismissed them." *Supra* at 609.

- "The district court also property held that the Plaintiffs have not stated a breach of contract claim." *Supra* at 610.

- "Plaintiffs also alleged that Facebook's tracking practices violated the implied covenant of good faith and fair dealing.  However, as pleaded, the allegations did not go beyond the breach of contract theories asserted by Plaintiffs and were thus properly dismissed." *Supra* at 611.

Thus, the Ninth Circuit affirmed "the district court's dismissal of the SCA, breach

of contract, and breach of implied covenant claims," but it concluded that Plaintiffs had

"adequately pleaded their remaining claims" and remanded "these issues to the district

court for further consideration." *Supra* at 611.

This District's *Procedural Guidance for Class Action Settlements* requires the

parties to explain "any differences between the claims to be released and the claims in the

operative complaint … and [ ] why the differences are appropriate."[2]

---

[2] https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/

C.      **Controlling pleadings**

During appeal proceedings, a Third Amended Consolidated Class Action Complaint for Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing ("TAC") was filed.  *See* ECF Document 157.  The TAC is the most current, and apparently controlling, complaint in the captioned matter, yet the two causes of action stated in the TAC were earlier properly dismissed by this Court.

Class Counsel contend that "the releases required of Settlement Class Members are not overbroad but are coterminous with the claims remaining in the case, reaching only claims that were or could have been made in the Action and arose during the Class Period." Settlement Motion, p. 2, l. 24.  That is not the test.  Pursuant to this Court's procedural guidelines, the Parties must limit their discussion to the claims in the operative complaint — which Objectors Feldman and Jan believe to be the TAC.  *See Procedural Guidance for Class Action Settlements* ("Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate.").

### III. ARGUMENT

A.      **The proposed $90 million Settlement represents a 99.999927% discount of available statutory damages in a case that has overcome all substantial legal defenses, and therefore is not fair, reasonable, or adequate**

1.      <u>Settlement amount compared to statutory damages</u>.  Neither the Motion for Preliminary Approval nor the Final Approval Motion comports with the Northern District of California's *Procedural Guidance for Class Action Settlements* which required Class Counsel provide the Court with "[T]he class recovery under the settlement (including

details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount."

In keeping with *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) the District Court is required to apply heightened scrutiny to this pre-certification settlement, and in *Roes 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) definitively rejected the presumption advocated by Class Counsel.  This Ninth Circuit most recently reiterated the required approach in *Saucillo v. Peck*, 25 F.4th 1118 (9th Cir. 2022).

> But such a presumption of fairness is not supported by our precedent, and the district court cites no Ninth Circuit case which adopted this standard. … we not only have never endorsed applying a broad presumption of fairness, but have actually required that courts do the opposite—by employing extra caution and more rigorous scrutiny – when it comes to settlements negotiated prior to class certification, the district court's declaration that a presumption of fairness applied was erroneous, a misstatement of the applicable legal standard which governs analysis of the fairness of the settlement.

*Saucillo* at 1131, quoting *Roes,* at 1048.

The proposed settlement would provide a $90 million cash fund in a case that has calculable statutory damages of $1.24 trillion – calculated based on there being over 124 million Settlement Class Members" (ECF 232, p. 19, l. 7-8) and individual Class Member minimum statutory damages[3] of $10,000 per 18 U.S.C. 2520(c)(2).  Simply put, the proposed recovery amount is not at all proportionate to Facebook's misconduct and causes

---

[3] Per Cornell Law School, Legal Information Institute:  "Statutory damages are a type of damages awarded in a successful claim to compensate for an injury or loss, whose amount is pre-established by statute. Statutory damages are commonly used in areas of the law in which it might be complex to establish the degree of harm or loss caused to the plaintiff."

of actions available to Plaintiffs, and a compromise of available statutory damages by more than 99.999927% does not satisfy the Rule 23 standard and should not be approved.

In the Wiretap Act, Congress made no provision restricting enforcement of claims through a class action or capping/limiting the available statutory damages in a class action to a particular collective dollar amount. "Had Congress been sufficiently concerned about disproportionate damages as a result of class actions, it would have limited class availability or aggregate damages." *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 720 (9th Cir. 2010). "While a statute remains on the books, however, it must be enforced rather than subverted. An award that would be unconstitutionally excessive may be reduced, see *State Farm Mutual Automobile Insurance Co. v. Campbell,* 538 U.S. 408, (2003), but constitutional limits are best applied after a class has been certified." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953–954 (7th Cir. 2006).[4]

Class Counsel is obligated to provide the District Court with "the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims." *Procedural Guidance for Class Action Settlements.*[5] Class Counsel has failed to provide the Court with this analysis.

The scrutiny to be applied by the Court to the proposed Settlement of statutory and common law claims available to Plaintiffs requires that a settlement must be justifiable in

---

[4] Further, where statutory damages are available, the Supreme Court permits that "[T]the likelihood that some (even many) plaintiffs will be induced to sue by the availability of a class action is just the sort of "incidental effec[t]" we have long held does not violate § 2072(b)" *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.* (2010) 559 U.S. 393, 408 citing *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 445 (1946).
[5] https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/

view of a combination of potentially recoverable statutory damages and litigation risk.  In these circumstances, failure to garner a reasonable recovery in view of these informed analytical factors compels rejection of the Settlement.

        2.      <u>Disgorgement is not an available standard of reasonableness for this Settlement</u>.  Plaintiffs rely on the Ninth Circuit's earlier opinion regarding minimum standing in support of disgorgement as the measure of a reasonable settlement, and claims Facebook has disgorged all its earnings connected to Facebook's alleged misconduct.  *See* Settlement Motion, p. 3, l. 6 ("Plaintiffs proposed an economic model to disgorge any unjust enrichment earned on the data.") and p. 3, l. 8 ("even Plaintiffs concede that it would be difficult to prove unjust enrichment above $90 million.").  *See also* Preliminary Approval Motion, p. 27, l. 16a-17a ("Plaintiffs estimate that the Settlement Fund represents a *complete disgorgement* of all net profits earned on the data that Plaintiffs contend was improperly collected."  (Emphasis in the original.)).  The Wiretap Act is not, however, limited to disgorgement.  In fact disgorgement becomes irrelevant in an application of the Act's statutory damage scheme to the instant case.  *See* 18 U.S.C. § 2520 ("the court may assess as damages whichever is *the greater of* the sum of the *actual damages suffered by the plaintiff and any profits* made by the violator as a result of the violation*; or statutory damages of* whichever is the greater of $100 a day for each day of violation or *$10,000.*"  (Emphasis added.)).  Comparing the Settlement to Facebook's earnings on its tracking violations is misguided and incomplete.

Rather than using Facebook's estimated net profit as the yardstick, both this District's own rules and *Churchill* [6] require that the Settlement be compared to the statutorily provided $10,000 per Class Member ($1.24 trillion) discounted by the risk of further litigation.

3.     <u>Ranking is a not a valid measure of reasonableness</u>.  Class Counsel describe "the settlement's *monetary* component, the $90 Million common fund ranks as one of the top 10 data privacy class action settlements ever."  Settlement Motion, p. 3, l. 4-5.  Class Counsel describe "the likely payment to Settlement Class Members will *be substantial relative to recoverable damages*."  Fee Motion, p. 9, l. 3-4.  Class Counsel neglects to mention that the compromise against statutory damages (i.e. 99.999927%) is by far the greatest in any case to date, and the recovery compared to these statutorily-calculated damages is actually the smallest ever.  In reality, the likely payment to Class Members will be an *insubstantial* amount relative to recoverable damages.

4.     <u>The low percentage of claimants is a result of inadequate notice</u>.  As of August 23, 2022, filing of the Settlement Motion, only 1,352,214 of 124,000,000 Class Members had filed claims and had those claims processed.  *See* Settlement Motion, p. 8, l. 6 ("To date, 1,352,214 claims have been filed and processed.")  It is Objectors' contention that the low percentage of Class Members making claims is at least in part due to the failure to provide Class Members with "the best notice that is practicable under the circumstances."  Here the notice program failed to use Facebook Messenger – the best notice practicable under the circumstances – to apprise Class Members of the Settlement.

---

[6] *See Churchill Vill., LLC v. Gen. Elec,*, 361 F.3d 566 (9th Cir. 2004).

Instead, the Parties relied on "direct notice" in the form of an email from Angeion – an email source likely unknown to Class Members – to provide notice.  While Class Counsel recites that "some 114,078,891 [Class Members] received plain language direct email notice," they have not and cannot say how many Class Members were actually informed of the Settlement by these emails.  Messages to Class Members via Facebook Messenger would have been seen as a coming from a known and reliable source, and this method of giving notice should have been utilized by the parties.

When considering the adequacy of the proposed settlement, the Court should focus on the amount recovered per class member, rather than the average claim payment, although either number represents huge discounts against available damages.

5.    Settlement lacks deterrent effect.  Facebook has committed an obvious statutory violation through their active non-consensual collection and commercial exploitation of Class Member personal data.  The Settlement Amount reflects a dramatic and unwarranted reduction from the $10,000 per Class Member that Congress set as the baseline.  The ridiculously low recovery-to-damages ratio, coupled with Facebook's knowing conduct and financial wherewithal, renders the proposed Settlement inadequate. The proposed Settlement would establish a very modest precedent that neglects statutory protective enforcement standards, and would have no real deterrent effect among Facebook and its peers.

**B.    Class Counsel should receive less than the benchmark percentage fee in this megafund recovery**

When class counsel are seeking a common fund fee, their interest is adverse to the interest of their class clients, and the Ninth Circuit has long held that a district court has a

fiduciary duty to protect the interests of the class at the fee setting stage. *See e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002); *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) ("As a fiduciary for the class, the district court must 'act with a jealous regard to the rights of those who are interested in the fund in determining what a proper fee award is.'"); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994) (same); *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) (court has fiduciary role for class at fee-setting stage).

1.      The sought greater-than-benchmark fee is unwarranted.  The Ninth Circuit has recognized "[w]here awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." *In re Bluetooth Headset Products Liability Litigation*, 654 F. 3d 939, 942-943 (9th Cir. 2011).

While grossly inadequate, the $90 million recovery here is nonetheless a megafund recovery that requires a downward adjustment from this Circuit's 25% benchmark.  Class Counsels' request for a 29% fee and a 3.14 lodestar multiplier is wholly unjustified by the results of this case.  A 20% fee, or $18 million, provides Class Counsel with a more than adequate lodestar multiplier of greater than 2.  On the record of this case, Class Counsel cannot establish that anything greater than that is necessary to eliminate unjust enrichment of the Class, and therefore it would be an abuse of discretion to award Class Counsel more than the average fee percentage in settlements of this size.

2.      Lodestar crosscheck.   Northern District of California's *Procedural Guidance for Class Action Settlements* requires:

> [A]ll requests for approval of attorneys' fees must include detailed lodestar information, even in if the requested amount is based on a percentage of the settlement fund.  Declarations of class counsel as to the number of hours spent on various categories of activities related to the action by each biller, together with hourly billing rate information may be sufficient, provided that the declarations are adequately detailed. Counsel should be prepared to submit copies of detailed billing records if the court orders.

Procedural Guidance for Class Action Settlement, Final Approval, 2) Attorneys' Fees.[7]

Class Counsel, however, have provided only summary numbers in support of their claimed lodestar.[8]  *See* ECF 255-27 and -29.  Not only is this clearly insufficient to advise the Court of the possibility of excessive, redundant or otherwise unnecessary hours, it completely fails to apprise the Class of services and hours claimed to support a percentage fee sought to be charged against them.

The court must be provided sufficient details "to form a judgment on whether [the fee applicant's] fees were legitimate" in order to determine "whether the work was an appropriate basis for fees." *Democratic Party of Wash. State v. Reed*, 388 F.3d 1282, 1286 (9th Cir. 2004). *See also Garcia* at * 24 (Lodestar filings must "contain enough specificity

---

[7] https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/

[8] It is also unclear from Class Counsel's declaration(s) and exhibits filed in support of their Fee Motion whether Class Counsel include any administrative or paralegal charges in their lodestar.  Although the Supreme Court and this Court permit paralegal fees to be included as part of an attorneys' fee award in fee-shifting cases in order to "encourage [ ] cost effective delivery of legal services." *See Missouri v. Jenkins*, 491 U.S. 274, 288-289 (1989) ("reasonable attorney's fee" provided for by statute should compensate the work of paralegals, as well as that of attorneys.").  At least one court has held that paralegal time is not properly subjected to a risk enhancement. "The Court finds it unreasonable to multiply the hourly rate requested by any contingency factor. *Although they provide a valuable service, for which compensation should be given, paralegals are not members of the bar and do not share in the attorneys' risk of litigation.*" *In re Equity Funding Corp. of America Securities Litig.,* 438 F.Supp. 1303, 1330 (C.D. Cal. 1977) (internal citations omitted) (emphasis added).

as to individual tasks to ascertain whether the amount of time spent performing them was reasonable."). A district court "does not discharge its duty simply by taking at face value the word of the prevailing party's lawyer for the number of hours expended on the case." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018). Rather, it must disallow inclusion of "excessive, redundant, or otherwise unnecessary" hours in lodestar. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

While Class Counsel may elect to share their fees as permitted by law, fees for unrelated, duplicative, or unproductive work may not be included in class Counsel's lodestar to the detriment of the Class. *See In re Volkswagon Clean Diesel* 914 F.3d 623, 645 (9th Cir. 2019) ("The mere fact that a non- designated counsel worked diligently and competently with the goal of benefiting the class is *not* sufficient to merit compensation. Instead, only attorneys 'whose efforts create, discover, increase, or preserve' the class's ultimate recovery will merit compensation from that recovery." *Quoting Cendant* at 197 (*quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 820 n.39 (3d Cir. 1995)).  Class Counsel have the burden of establishing the work included in lodestar added value and was not merely duplicative or superfluous. *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 200 (3d Cir. 2005) ("[C]ounsel's proof must be specific: it must show what its efforts were, how they created a benefit, and why that benefit would not have been created absent its efforts."). *See also Hensley* 461 U.S. at 436.  Instead, Class Counsel have summarily described that 13 firms have accumulated post-consolidation lodestar of $7.969 million.

3.    <u>Class Counsel have waived the value of injunctive relief as a fee factor</u>. While Class Counsel purport to recognize the difficulties attendant to placing a value on injunctive relief, and describe:

> "[T]he need for courts to "exercise caution" when valuing injunctive relief in determining attorneys' fees. *See Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021); *see also Staton v. Boeing Co.*, 327 F.3d 938, 945–46 (9th Cir. 2003) ("injunctive relief . . . should generally be excluded from the value of the common fund when calculating attorneys' fees"). *Accordingly, Settlement Class Counsel has neither assigned a discrete value to the injunctive relief, nor based their attorneys' fees claim on any such value*. But the obvious benefit to the class members from the data sequestration and destruction here—whether or not they make a claim, opt-out, or object—nonetheless counts as a "relevant circumstance" in weighing the fee request against the benefit to the class. *Staton*, 327 F. 3d at 974 (citing *Vizcaino*, 290 F. 3d at 1049)."  (Emphasis added.)

Fee Motion, p. 8, l. 16-28.

Nonetheless, Class Counsel has included "the important injunctive relief obtained for all class members through the sequestration and deletion of the data allegedly wrongfully collected by the Defendant" as a justification of the sought fee.  *See [Proposed] Order*, ECF 255-31, p. 2.

4.    <u>The Class has not been apprised of Class Counsel's fee motion</u>.  Neither the email notice sent to Class Members nor the Long-Form Notice posted on the case settlement website (i.e. at: https://www.fbinternettrackingsettlement.com/important-documents.php) provide any information about Class Counsel's fee request beyond the percentage sought.  This is inadequate.  *See In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 993 (9th Cir. 2010).  In addition, in clear violation of *Mercury Interactive*, Class Counsel and the Settlement Administrator failed to post the Fee Motion, along with supporting declarations and exhibits, to the case website.  *See In re Mercury Interactive Corp.*

19          Objection of Class Members
Feldman and Jan to Settlement
Motion and Fee Motion

*Securities Litigation* 618 F.3d at 993 (9th Cir. 2010) (Not providing timely notice of motion to the class "borders on a denial of due process because it deprives objecting class members of a full and fair opportunity to contest class counsel's fee motion.").    Consequently, Class Members are generally uninformed regarding the basis for the fees sought by Class Counsel, and have been denied the ability to knowledgeably contest such fees.

**C.     Class Counsel have requested incentive awards for non-Class Member California plaintiffs**

In their complaint filed in California state court, two of the California plaintiffs, Chi Cheng and Alice Rosen, disavow class membership in this case.  Specifically, in their Amended Class Action Complaint, it is alleged that Cheng and Rosen are each a "non-Facebook member" during the relevant Class Period, and did not have Facebook accounts during that time period.  The Class definition includes only "Facebook Users."  ECF 241, p. 2, l. 25.  As non-Class Members, California plaintiffs Cheng and Rosen may not receive an incentive award from the common fund recovered on behalf of the Class, or file a claim against the Settlement fund.  The fact that they claim to have filed a claim in their declarations indicates a failure by Class Counsel to protect the Settlement Fund from fraudulent claims.

## IV.   CONCLUSION

For the foregoing reasons, this Court should: (1) deny approval to the proposed Settlement; (2) before granting Class Counsel any fees, order the public filing of adequately detailed information regarding Class Counsel's timekeepers, timekeeper roles, work performed, and hourly rates charged; (3) before granting Class Counsel any fees, provide Class Members with reasonable notice of the Fee Motion and supporting documents, as well as opportunity to be heard regarding such; (4) award Class Counsel a fee of no more than $18 million, and (5) deny the requested incentive awards to the identified state-named plaintiffs.

Respectfully submitted,
Sarah Feldman and Cameron Jan
by their attorneys,

*s/ Kendrick Jan*
Kendrick Jan, APC
402 West Broadway, Suite 1520
San Diego, CA 92101
Tel: (619) 231-7702
kj@jan-law.com

John J. Pentz, Esq., *pro hac vice forthcoming*
19 Widow Rites Lane
Sudbury, MA 01776
Phone: (978) 261-5725
jjpentz3@gmail.com

## CONFIRMATION OF OBJECTOR SARAH FELDMAN

By her signature below, Objector Sarah Feldman confirms her objections as set forth in the foregoing OBJECTION OF CLASS MEMBERS SARAH FELDMAN AND CAMERON JAN TO PLAINTIFFS MOTION FOR FINAL APPROVAL OF SETTLEMENT, AND PLAINTIFFS' MOTION FOR ATTORNEYS'S FEE, EXPENSES, AND INCENTIVE AWARDS.

Date: _____9/11/22_____

_____
Sarah Feldman

<u>CONFIRMATION OF OBJECTOR CAMERON JAN</u>

By his signature below, Objector Cameron Jan confirms his objections as set forth in the foregoing OBJECTION OF CLASS MEMBERS SARAH FELDMAN AND CAMERON JAN TO PLAINTIFFS MOTION FOR FINAL APPROVAL OF SETTLEMENT, AND PLAINTIFFS' MOTION FOR ATTORNEYS'S FEE, EXPENSES, AND INCENTIVE AWARDS.

Date:____9-11-2022_____

_____
Cameron Jan

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true copy of the foregoing OBJECTION OF CLASS MEMBERS SARAH FELDMAN AND CAMERON JAN TO PLAINTIFFS MOTION FOR FINAL APPROVAL OF SETTLEMENT, AND PLAINTIFFS' MOTION FOR ATTORNEYS'S FEE, EXPENSES, AND INCENTIVE AWARDS was filed with the Clerk of Court using CM/ECF on September 11, 2022, and as a result has been served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.


By: _s/ Kendrick Jan_