1  Shana E. Scarlett (SBN 217895)
   HAGENS BERMAN SOBOL SHAPIRO LLP
2  715 Hearst Avenue, Suite 202
   Berkeley, CA 94710
3  Telephone: (510) 725-3000
   Facsimile: (510) 725-3001
4  shanas@hbsslaw.com

5  Stephen A. Swedlow (admitted *pro hac vice*)
   QUINN EMANUEL URQUHART & SULLIVAN, LLP
6  191 N. Wacker Drive, Suite 2700
   Chicago, IL 60606
7  Telephone: (312) 705-7400
   stephenswedlow@quinnemanuel.com
8
   *Counsel for the Klein Plaintiff Objectors*
9  *(Interim Consumer Class Counsel in the Klein Litigation)*
   [*Additional Counsel Listed in Signature Block*]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE FACEBOOK INTERNET TRACKING LITIGATION<br><br>This Document Relates To: All Actions | Case No. 5:12-MD-02314-EJD<br><br>***KLEIN* PLAINTIFFS' STATEMENT OF OBJECTION TO *INTERNET TRACKING* CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE PENDING FURTHER CLARIFICATION**<br><br>The Hon. Edward J. Davila<br><br>Hearing Date: October 27, 2022 at 9:00 a.m. |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

    A.    Background Regarding *Klein* Litigation ...............................................................2

    B.    Background Regarding *Internet Tracking* Litigation ............................................4

    C.    The *Internet Tracking* Settlement and Release .....................................................4

II. LEGAL STANDARD ..........................................................................................................5

III. ARGUMENT .....................................................................................................................6

    A.    The Settlement Cannot Release the *Klein* Plaintiff Objectors' Claims ................6

    B.    In Any Case, the Settlement Provides Insufficient Notice of and Consideration for Any Release of the *Klein* Plaintiff Objectors' Claims ..................9

    C.    A Single Sentence Should be Added to Safeguard Due Process Rights .................11

    D.    Attendance at Final Approval Hearing .................................................................12

IV. CONCLUSION ................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dennis v. JPMorgan Chase & Co.*,
  Case No. 16-cv-6496-LAK, 2021 WL 1893988 (S.D.N.Y. May 11, 2021) ................................. 7

*Fraser v. Asus Computer Int'l*,
  Case No. 12-cv-00652-WHA, 2012 WL 6680142 (N.D. Cal. Dec. 21, 2012) ........................... 5

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................................................... 5

*Hendricks v. StarKist Co.*,
  Case No. 13-cv-00729-HSG, 2016 WL 692739 (N.D. Cal. Feb. 19, 2016) ...................... 5, 7, 10

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) ..................................................................................................... 6

*In re Currency Conversion Fee Antitrust Litig.*,
  264 F.R.D. 100 (S.D.N.Y. 2010) ............................................................................................... 8

*In re Lehman Bros. Sec. & Erisa Litig.*,
  No. 08-cv-05523-LAK, 2012 WL 2478483, (S.D.N.Y. June 29, 2012) ..................................... 8

*Lovig v. Sears, Roebuck & Co.*,
  Case No. 11-cv-00756-CJC, 2014 WL 8252583 (C.D. Cal. Dec. 9, 2014) ............................ 5, 6

*Marshall v. Northrop Grumman Corp.*,
  Case No. 2:16-cv-06794-AB, 2020 WL 5668963 (C.D. Cal. Sept. 18, 2020) ........................... 5

*McKeen-Chaplin v. Franklin Am. Mortg. Co.*,
  No. 10-cv-05243-SBA, 2012 WL 6629608 (N.D. Cal. Dec. 19, 2012) ................................... 10

*McKinney-Drobnis v. Massage Envy Franchising, LLC*,
  Case No. 16-cv-06450-MMC, 2017 WL 1246933 (N.D. Cal. Apr. 5, 2017) ............................ 8

*Raquedan v. Volume Servs., Inc.*,
  Case No. 18-cv-01139-LHK, 2018 WL 3753505 (N.D. Cal. Aug. 8, 2018) .............................. 7

*Staton v. Boeing*,
  327 F.3d 938 (9th Cir. 2003) ..................................................................................................... 5

*Williams v. Boeing Co.*,
  517 F.3d 1120 (9th Cir. 2008) ................................................................................................... 6

*Willner v. Manpower Inc.*,
  Case No. 11-cv-02846-JST, 2014 WL 4370694 (N.D. Cal. Sept. 3, 2014) ............................ 5, 6

**Statutes/Rules**

Fed. R. Civ. P. 23(e)(1) ................................................................................................................. 10

N.D. Cal. Civil L.R. 3-12(b) ............................................................................................................ 9

**Other Authorities**

3 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 8:17 (6th ed.) ................................................ 10

4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:60 (6th ed.) .............................................. 10

6 NEWBERG ON CLASS ACTIONS § 18:19 (5th ed.) ............................................................................. 6

Objectors Maximilian Klein, Sarah Grabert, and Rachel Banks Kupcho ("the *Klein* Plaintiff Objectors"), by and through their undersigned counsel, hereby object to final approval of the Class Action Settlement Agreement and Release ("the Settlement") pending further clarification regarding the scope of the Settlement's release.[1]

I. **INTRODUCTION**

The *Klein* Plaintiff Objectors are the proposed class representatives for the putative Consumer Class in the antitrust case captioned *Klein v. Meta Platforms*, *Inc.*, Case No 3:20-cv-08570-JD (N.D. Cal.), currently pending in the Northern District of California before Judge James Donato. In an abundance of caution, the *Klein* Plaintiff Objectors object to the Settlement as currently constructed because its release language is so broad that it may release distinct claims based on a different set of facts and legal theories which are currently being litigated before Judge Donato as part of the *Klein* litigation. In so doing, the Settlement risks providing a benefit to common defendant Meta Platforms, Inc. ("Facebook") for which it did not bargain and to which it is not entitled, to the detriment of both Settlement Class members in this action and proposed class members in the *Klein* litigation.

As set forth below, the *Klein* Plaintiff Objectors do not wish to unreasonably delay the ultimate approval of the Settlement and relief to Settlement Class Members. Instead, the *Klein* Plaintiff Objectors seek only to protect their and others' due process rights through the limited relief of clarification that the Settlement does not waive or otherwise limit the valuable, still-pending claims in *Klein*. This can be accomplished by simply inserting a single sentence into the Settlement: "This Release shall not bar or otherwise limit claims asserted in the case captioned *Klein v. Meta Platforms*, *Inc.*, Case No. 20-cv-08570 (N.D. Cal.)." This type of carve out is standard in class action settlements. Prior to filing this objection, the *Klein* Plaintiff Objectors' counsel conferred

---

[1] Supporting materials to this objection are submitted as exhibits to the declaration of Shana E. Scarlett ("Scarlett Decl."), which is submitted concurrently with this objection. Therefore, and unless otherwise specified, "Ex." references are to exhibits to the Scarlett Declaration. Each of the Klein Plaintiff Objectors also submit declarations in support of this objection.

with Settlement Counsel, who *confirmed that the Settlement is not intended to release or otherwise limit the Klein claims*.

### A. Background Regarding *Klein* Litigation

On December 3, 2020, two of the *Klein* Plaintiff Objectors—Maximilian Klein and Sarah Grabert—filed the first of the individual antitrust cases against Facebook in the Northern District of California that would be consolidated as the *Klein* litigation, originally before the Hon. Lucy H. Koh. Scarlett Decl. ¶ 2. In the following weeks, additional plaintiffs (including *Klein* Plaintiff Objector Rachel Banks Kupcho) filed their own antitrust lawsuits in the Northern District of California.[2] *Id.* Judge Koh then consolidated the various actions under a single case name ("*Klein*"), case number (Case No. 20-cv-08570), and active docket. Ex. A. Judge Koh later appointed interim class counsel and set dates for the filing of consolidated pleadings. Exs. B, C.

Broadly speaking, the consolidated *Klein* action consists of two sets of actions with separate complaints, putative classes, and court-appointed lead counsel. One group of actions asserts claims against Facebook on behalf of a class of "advertisers," who are individuals and entities that are purchasers of Facebook's advertising services. The other group of actions asserts claims against Facebook on behalf of a class of "consumers," who are users of Facebook's social networking and social media services. The *Klein* Plaintiff objectors are the proposed representatives of the "Consumer Class," and their undersigned counsel are the court-appointed interim counsel for that class.

***Klein* Consumer Class Definition.** At present, the *Klein* Consumer Class is defined as "[a]ll persons in the United States who maintained a Facebook profile at any point from 2007 up to the date of the filing of this action." Ex. D, ¶ 248. The *Klein* Consumer Class excludes Facebook and

---

[2] The Federal Trade Commission and a coalition of 48 State Attorneys General also filed their own respective antitrust lawsuits against Facebook in the District of Columbia, where they were assigned to the Hon. James E. Boasberg. Fact discovery is currently underway in the FTC case; the States' case is pending on appeal before the United States Court of Appeals for the District of Columbia Circuit.

its affiliates and officers, as well "any judge, justice, or judicial officer presiding over" the *Klein* litigation "and the members of their immediate families and judicial staff." *Id.*

**_Klein_ Consumer Claims and Theories.** The *Klein* Plaintiff Objectors—on behalf of the *Klein* Consumer Class—assert federal antitrust claims against Facebook for monopolization and attempted monopolization in violation of Section 2 of the Sherman Act. The *Klein* Plaintiff Objectors allege that, over time, Facebook has obtained and maintained monopoly power in two relevant antitrust markets—the Social Network and Social Media Markets—by deceiving those markets as to its data collection and use practices. Put differently, the *Klein* Plaintiff Objectors allege that Facebook has repeatedly touted its supposedly privacy-friendly data collection and use practices (which has allowed it to gain and maintain market share), but that later revelations have consistently demonstrated Facebook's representations to be false or misleading.

In this way, the *Klein* Plaintiff Objectors allege that Facebook's deception has anticompetitively thwarted rivals (such as Google+), which has allowed Facebook—free from competitive pressures—to artificially suppress the compensation that Facebook users receive for the data that Facebook obtains from them. Some of the instances of Facebook's deception that the *Klein* Plaintiff Objectors challenge as anticompetitive are Facebook's representations regarding Facebook's: "Beacon" feature; access to and provision of the data of Facebook users' *friends* (culminating in the Cambridge Analytica scandal); sharing of Facebook users' data with device manufacturers, "whitelisted" third parties, and "Preferred" business and integration partners; and use of cookies (including "the Like Button," which is an issue in the *Internet Tracking* case).

**Discovery in the *Klein* Litigation is Underway.** The parties in the *Klein* litigation (including Facebook) held a Rule 26(f) conference in July 2021, and discovery is underway. On January 14, 2022, Judge Koh largely denied Facebook's motion to dismiss the *Klein* Plaintiff Objectors' claims. Ex. E. Following Judge Koh's confirmation to the Ninth Circuit and the issuance of her motion to dismiss order, the *Klein* litigation was subsequently re-assigned to Judge Donato. Ex. F. In the time since, the parties have engaged in substantial discovery, including negotiating document requests, custodians, and search strings. Facebook has begun its review and production of custodial documents, and Judge Donato has set a fact-discovery cut-off for January 13, 2023,

1 | with opening class certification expert reports due on or before January 27, 2023.  Ex. G.

2 | **B.** **Background Regarding *Internet Tracking* Litigation**

The Judicial Panel on Multidistrict Litigation consolidated the *Internet Tracking* cases before this Court on February 8, 2012.  Dkt. 1.  The consolidated complaints have featured claims for violations of: (1) the Federal Wiretap Act; (2) the Stored Communications Act; (3) the Computer Fraud and Abuse Act; (4) invasion of privacy; (5) intrusion upon seclusion; (6) conversion; (7) trespass to chattels; (8) California's Unfair Competition Law ("UCL"); (9) California's Computer Crime Law; (10) California's Invasion of Privacy Act; (11) California's Consumer Legal Remedies Act ("CLRA"); (12) breach of contract; (13) breach of the covenant of good faith and fair dealing; (14) civil fraud; and (15) statutory larceny.  Dkts. 35, 157, 232.  In general, the *Internet Tracking* plaintiffs allege that Facebook "improperly obtained and collected data from Facebook Users in the United States who visited non-Facebook websites that displayed the Facebook Like button between April 22, 2010 and September 26, 2011[.]"  *See* Notice of Proposed Settlement of Class Action, available at: https://angeion-public.s3.amazonaws.com/www.FBInternetTrackingSettlement.com/docs/FB+MDL_Long+Form+Notice+FINAL+06.14.2022.pdf.

**C.** **The *Internet Tracking* Settlement and Release**

After a mediation session on July 23, 2021—which is after the *Klein* Plaintiff Objectors filed their distinct lawsuit—Facebook and the *Internet Tracking* plaintiffs reached a settlement in principle of the *Internet Tracking* case.  Dkt. 233, ¶ 23.  The parties then negotiated a long-form settlement agreement for approximately six months.  *Id.* ¶ 24.  The provisions of the Settlement pertinent to the *Klein* Plaintiffs Objectors' objection are set forth below.

***Internet Tracking* Settlement Class.**  The Settlement defines the "Settlement Class" as "all persons who, between April 22, 2010 and September 26, 2011, inclusive, were Facebook Users in the United States that visited non-Facebook websites that displayed the Facebook Like button[.]"  Dkt. 233-1 at 11, § 1.39.

**Released Claims in *Internet Tracking* Settlement.**  The Settlement defines "Released Claims" as:

> ***any and all claims***, demands, actions, causes of action, lawsuits,

> arbitrations, damages, or liabilities, ***whether known or unknown***, legal, equitable, or otherwise that were asserted or could have been asserted in the Actions, regarding the alleged collection, storage, or internal use by Facebook of data related to browsing history (such as IP address, Uniform Resource Locator (URL), referrer header information, and search terms) obtained from cookies stored on the devices of Facebook Users in the United States who visited non-Facebook websites that displayed the Facebook Like button during the Settlement Class Period . . . .

Dkt. 233-1 at 9–10, § 1.33 (emphasis added).

**Scope of Release in *Internet Tracking* Settlement.** The Settlement's release provides that:

> Upon the Effective Date of this Agreement, the Releasing Parties, on behalf of themselves and their heirs, executors, administrators and assigns, ***and any person(s) they represent***, shall be deemed by this Settlement to, and shall, release, dismiss, and finally and forever discharge the Released Claims, and will not in any manner pursue the Actions or any claims that were asserted or could have been asserted in the Actions; and shall be deemed by this Settlement to, and shall be forever barred from asserting, instituting, prosecuting, or maintaining against the Released Parties, any and all Released Claims. It is the intention of the Parties that ***any liability of the Released Parties relating to the Released Claims be eliminated***.

Dkt. 233-1 at 33–34, § 9.2 (emphasis added).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, reasonable, and accurate." *Staton v. Boeing*, 327 F.3d 938, 959 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). In so doing, "[t]he focus must be on protecting the rights of absent class members" because "[t]heir rights are the rights to be extinguished by a class settlement." *Fraser v. Asus Computer Int'l*, Case No. 12-cv-00652-WHA, 2012 WL 6680142, at *3 (N.D. Cal. Dec. 21, 2012).

In reviewing a class action settlement agreement's fairness, the Court may withhold preliminary approval of the settlement based on an overbroad release contained in the settlement. *See Lovig v. Sears, Roebuck & Co.*, Case No. 11-cv-00756-CJC, 2014 WL 8252583, at *2 (C.D. Cal. Dec. 9, 2014) (denying preliminary approval of a settlement on these grounds); *Willner v. Manpower Inc.*, Case No. 11-cv-02846-JST, 2014 WL 4370694, at *7 (N.D. Cal. Sept. 3, 2014) (same). The same is also true for ***final*** approval of a class action settlement. *See, e.g.*, *Marshall v. Northrop Grumman Corp.*, Case No. 2:16-cv-06794-AB, 2020 WL 5668963, at *2 (C.D. Cal. Sept.

18, 2020); *Hendricks v. StarKist Co.*, Case No. 13-cv-00729-HSG, 2016 WL 692739, at *2 (N.D. Cal. Feb. 19, 2016). In making this determination, "a release of claims that go beyond the scope of the allegations of the operative complaint is impermissible." *Lovig*, 2014 WL 8252583 at *2 (internal citation and quotation marks omitted). An overly broad release of claims may be cured, however, by "narrow[ing] the scope of release . . . ." *Id.*; *Willner*, 2014 WL 4370694, at *7.

## III. ARGUMENT

### A. The Settlement Cannot Release the *Klein* Plaintiff Objectors' Claims

The Settlement purports to release "***any and all claims*** . . . ***whether known or unknown*** . . . regarding the alleged collection, storage, or internal use by Facebook of data related to browsing history (such as IP address, Uniform Resource Locator (URL), referrer header information, and search terms) obtained from cookies stored on the devices of Facebook Users in the United States who visited non-Facebook websites that displayed the Facebook Like button[.]" Dkt. 233-1 at 9–10, § 1.33 (emphasis added). The Settlement further provides that "[i]t is the intention of the Parties that ***any liability of the Released Parties relating to the Released Claims be eliminated***." *Id.* at 33–34, § 9.2 (emphasis added). The Settlement cannot and does not, however, release the *Klein* Plaintiff Objectors' (nor the *Klein* Consumer Class's) distinct antitrust claims, even to the extent they are based, in part, on Facebook's deception regarding off-site tracking and the Like Button.[3] Indeed, Settlement Counsel confirmed to the *Klein* Plaintiff Objectors' counsel that the Settlement's release is not intended to release or otherwise limit the *Klein* claims.

A settlement agreement may only release claims that are "based on the identical factual predicate as that underlying the claims in the settled class action." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008)); *see*

---

[3] The *Klein* Plaintiff Objectors challenge as anticompetitive a number of instances of Facebook's deception as to its data collection and use practices. Judge Koh's January 14, 2022 motion to dismiss order held that the *Klein* Plaintiff Objectors had sufficiently alleged that Facebook had engaged in deception as to these practices, including with respect to the Like Button, and that such deception was anticompetitive for purposes of the antitrust laws. Ex. E at 47–48, 55, 60.

*also* 6 NEWBERG ON CLASS ACTIONS § 18:19 (5th ed.) ("For [class action] settlement judgments, courts . . . giv[e] preclusive effect to releases contained in settlements so long as the released conduct arises out of the 'identical factual predicate' as the claims at issue in the case."). Importantly, "[s]uperficial similarity between the two class actions is insufficient to justify the release of the later claims by the settlement of the former." *Hendricks*, 2016 WL 692739, at *2. Thus, the "identical factual predicate" test is not met—and other claims are not barred—where "none of" the "causes of action" asserted in one case "are substantively the same as those asserted in" the settled class action. *Raquedan v. Volume Servs., Inc.*, Case No. 18-cv-01139-LHK, 2018 WL 3753505, at *7 (N.D. Cal. Aug. 8, 2018).

Here, the *Klein* Plaintiff Objectors (and the *Klein* Consumer Class) pursue antitrust claims against Facebook based on Section 2 of the Sherman Act. Thus, as Judge Koh determined, the *Klein* Plaintiff Objectors must, among other things, establish Facebook's "possession of monopoly power in the relevant market." Ex. E at 5. That, in turn, requires the *Klein* Plaintiff Objectors to establish: (1) the existence of a relevant antitrust market; and (2) Facebook's power within it, through circumstantial evidence (such as high market share and entry barriers) or through direct evidence. Ex. E at 8–9. The *Internet Tracking* plaintiffs did not pursue any antitrust claims whatsoever and thus need not and did not establish these and other elements of the *Klein* Plaintiff Objectors' antitrust claims. *See Dennis v. JPMorgan Chase & Co.*, Case No. 16-cv-6496-LAK, 2021 WL 1893988, at *5 (S.D.N.Y. May 11, 2021) (noting that under "identical factual predicate" test, "[c]laims that rely 'upon proof of further facts,' . . . cannot be released.").

Similarly, the injuries at issue in the *Internet Tracking* and *Klein* litigations are fundamentally different. The *Internet Tracking* plaintiffs pursued statutory damages, damages related to "invasion of their privacy," "non-monetary privacy damages," and disgorgement. Dkt. 92, ¶¶ 192, 208, 219, 231, 241, 252, 269. By contrast, the *Klein* Plaintiff Objectors do not seek to recover for psychological harms (such as emotional harms based on "invasion of their privacy"). And, their damages are based on the diminished compensation that they received for their data because of Facebook's destruction of competition—*i.e.*, the compensation (in the form of better services or monetary consideration) they would have received from Facebook or its would-be

competitors had the Social Network and Social Media Markets not been distorted by Facebook's anticompetitive acts.[4] *McKinney-Drobnis v. Massage Envy Franchising, LLC*, Case No. 16-cv-06450-MMC, 2017 WL 1246933, at *5 (N.D. Cal. Apr. 5, 2017) ("identical factual predicate" test not met where cases presented "different injuries.").

Moreover, while it is true that the *Klein* Plaintiff Objectors' antitrust claims involve Facebook's data collection and use practices, that does not mean that any privacy settlement involving Facebook can and does extinguish or otherwise limit the *Klein* Plaintiff Objectors' claims. *See In re Lehman Bros. Sec. & Erisa Litig.*, No. 08-cv-05523-LAK, 2012 WL 2478483, at *7 (S.D.N.Y. June 29, 2012) (rejecting assertion "that the claims involve losses from the same securities against the same defendants is enough to meet the 'identical factual predicate' test."). The *Klein* Plaintiff Objectors' claims are not "privacy" claims—Facebook's deception about its data collection and use practices is simply the vehicle by which the *Klein* Plaintiff Objectors allege that Facebook obtained its monopoly (*i.e.*, the *Klein* Plaintiff Objectors' theory of anticompetitive/exclusionary conduct). *See* Ex. E at 38–39 (Judge Koh's motion to dismiss order describing deception as viable theory of anticompetitive conduct).

That one of the many instances of Facebook's deception the *Klein* Plaintiff Objectors challenge as anticompetitive—relating to Facebook's Like Button—is also at issue in the *Internet Tracking* litigation and Settlement does not alter the analysis. *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 119 (S.D.N.Y. 2010) (rejecting assertion that "any allusion to American Express's foreign currency conversion practices in the Complaint—even though these claims bear no transactional relationship to American Express's currency conversion charges—is sufficient to invoke the LiPuma Release."). Indeed, the *Klein* Plaintiff Objectors also challenge a number of other instances relating to Facebook's data collection and use practices that were not and could not have been raised in the *Internet Tracking* litigation. These include, for example,

---

[4] In addition to their antitrust claims, the *Klein* Plaintiff Objectors previously pursued a claim for unjust enrichment. However, that claim sought disgorgement of Facebook's monopoly profits. In any case, Judge Koh dismissed the claim, and the *Klein* Plaintiff Objectors elected not to amend it.

-8- Case No. 5:12-MD-02314-EJD
*KLEIN* PLAINTIFFS' STATEMENT OF OBJECTION TO INTERNET TRACKING
CLASS ACTION SETTLEMENT AGREEMENT

Facebook's continued access to and provision of the data of Facebook users' *friends* (exposed in the 2018 Cambridge Analytica scandal), as well as Facebook's sharing of Facebook users' data with device manufacturers, "whitelisted" third parties, and "Preferred" business and integration partners, culminating in Facebook's 2019 consent decree with the FTC and payment of a $5 billion fine. Ex. D, ¶¶ 117 n.87, 139, 141, 146, 149, 183. These events necessarily occurred after the time period at issue in the *Internet Tracking* litigation: 2010–2011. Dkt. 233-1 at 11, § 1.39.

Finally, none of the *Internet Tracking* parties have raised the existence of the *Klein* case with this Court. For example, Northern District Local Rule 3-12(b) provides that "[w]henever a party knows or learns that an action, filed in or removed to this district is (or the party believes that the action may be) related . . . the party *must* promptly file . . . an Administrative Motion to Consider Whether Cases Should be Related[.]" Civil L.R. 3-12(b) (emphasis added). Yet, no party ever filed an administrative motion suggesting that *Klein* was "related" to the *Internet Tracking* litigation. Similarly, the Northern District's "Procedural Guidance for Class Action Settlements" section on "Overlapping Cases" provides that "[w]ithin one day of filing of the preliminary approval motion, *the defendants should serve a copy on counsel for any plaintiffs with pending litigation, . . . asserting claims on a representative . . . basis that defendants believe may be released by virtue of the settlement*." § 13, Procedural Guidance for Class Action Settlements, available at: https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (emphasis added). Facebook did not do so. These are telling indicia that the *Klein* and *Internet Tracking* litigations *do not* arise from an "identical factual predicate."

### B. In Any Case, the Settlement Provides Insufficient Notice of and Consideration for Any Release of the *Klein* Plaintiff Objectors' Claims

As explained *supra*, the Settlement cannot and does not release the *Klein* Plaintiff Objectors' claims (nor the *Klein* Consumer Class's claims) because those antitrust claims do not arise from "the identical factual predicate" that forms the basis for the *Internet Tracking* claims. Even were

Facebook[5] to now claim otherwise, that assertion must fail for at least two reasons.

*First*, neither the Settlement nor any of its attendant documents refers at all to the *Klein* litigation or the antitrust claims presented therein. Therefore, it does not follow that the Settlement somehow releases or otherwise limits claims in the *Klein* litigation—claims that are being actively litigated before Judge Donato—and which may very well yield a substantial recovery for the *Klein* Consumer Class (some of whom may also be Settlement Class Members). *Cf.* 3 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 8:17 (6th ed.) ("To safeguard class members' opportunity to object, notice must be sufficiently clear and informative to make those opportunities meaningful."). Indeed, the Advisory Committee's notes on the 2018 Amendment to Rule 23(e)(1) provide that "the parties should provide information about the existence of other pending or anticipated litigation on behalf of class members involving claims that would be released under the proposal." Fed. R. Civ. P. 23(e)(1) advisory committee's notes to 2018 amendment. Tellingly, the *Internet Tracking* parties did not do so, and in the event that Facebook now reverses course, the Court should reject any belated assertion that the Settlement somehow releases or otherwise limits the *Klein* Consumer Class members' claims in the *Klein* litigation. *See* 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:60 (6th ed.) ("[C]ourts are wary when they are not informed of pending related cases during the settlement approval process.").

*Second*, the Settlement does not provide consideration in return for any supposed release of the *Klein* Plaintiff Objectors' distinct claims (nor the claims of *Klein* Consumer Class members). The Settlement allots $90 million to the Settlement Class (minus Service, Expense, and Attorneys' Fee Awards). Dkt. 233-1 at 13, § 1.45. However, Settlement Counsel has indicated "that the Settlement Fund represents a complete disgorgement of *all* net profits earned on the data that Named Plaintiffs contend was improperly collected." Dkt. 233 at 6, ¶ 28 (emphasis in original). Thus, the Settlement Fund necessarily reflects payment for the claims at issue in the *Internet Tracking* case

---

[5] Prior to filing this objection, the *Klein* Plaintiff Objectors raised their concerns with Settlement Counsel. Settlement Counsel confirmed that the Settlement's release was not intended to release or otherwise limit the *Klein* claims and indicated that they do not intend to assert otherwise.

and those claims only; it therefore does not and cannot constitute consideration for release of the different claims—based on distinct injuries and additional Facebook misconduct—presented in the *Klein* litigation.[6] *See Hendricks*, 2016 WL 692739, at *4 (determining that class action settlement's release did not bar separate antitrust claims against same defendant where "[t]here has been no showing that class members 'have been independently compensated for the broad release of claims related to antitrust conspiracies.'"); *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. 10-cv-05243-SBA, 2012 WL 6629608, at *5 (N.D. Cal. Dec. 19, 2012) (separate claims not released because "[t]here has been no showing that Plaintiffs have been independently compensated for the broad release of claims unrelated to any dispute regarding FLSA coverage or wages due, including, among others, claims for discrimination under Title VII, intentional infliction of emotional distress, and 'outrageous conduct.'").

### C. A Single Sentence Should be Added to Safeguard Due Process Rights

As stated above, the *Klein* Plaintiff Objectors maintain that the Settlement cannot and does not release or otherwise limit their distinct antitrust claims in the *Klein* litigation, even to the extent those claims in some manner involve Facebooks' deception regarding the Like Button (along with many other instances of deception as to Facebook's data collection and use practices, over a much longer time period, that are not at issue in the *Internet Tracking* litigation). Nonetheless, the Court can avoid any such confusion—and prevent any future attempt by Facebook to use the Settlement to undermine the still-pending, valuable claims in the *Klein* litigation—by requiring the addition of a single sentence to the Settlement, such as to Section 9.2, *i.e.*, the "Releases" provision. Dkt. 233-1 at 33–34, § 9.2.

For example, the *Internet Tracking* parties could amend this "Releases" provision to include the following language: "This Release shall not bar or otherwise limit claims asserted in the case captioned *Klein v. Meta Platforms*, *Inc.*, Case No. 20-cv-08570 (N.D. Cal.)." Such "carve outs" are

---

[6] To be clear, the *Klein* Plaintiff Objectors' point is simply that the $90 million allotted for the Settlement cannot and does not also serve as consideration for a release of, or limit on, the claims in the *Klein* litigation.

common in class action settlements where legally distinct, parallel actions exist. *E.g.*, Superseding & Am. Definitive Class Settlement Agmt. at 34, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, Case No. 1:05-md-01720-MKB (E.D.N.Y. Sept. 18, 2018), Dkt. 7257-2 (class action settlement agreement providing that "Notwithstanding anything to the contrary in Paragraphs 29-33 above, the release . . . above shall not release . . . [a]ny claims asserted in *B&R Supermarket*, *Inc.*, *et al. v. Visa*, *Inc.*, *et al.*, No 17-cv-02738 (E.D.N.Y.), . . .").

### D. Attendance at Final Approval Hearing

Pursuant to § 8.5 of the Settlement, the *Klein* Plaintiff Objectors hereby provide notice that their counsel intends to appear at the final approval hearing currently set for October 27, 2022.

## IV. CONCLUSION

For the foregoing reasons, final approval of the Settlement and its release as constructed risks violating the *Klein* Plaintiff Objectors' (and the *Klein* Consumer Class's) due process rights. Therefore, the Court should not grant final approval of the Settlement unless and until the *Klein* claims are specifically carved out of the Settlement by a single sentence addition to the Settlement's release.

| | | |
|---|---|---|
| 1 | DATED: September 12, 2022 | Respectfully submitted, |
| 2 | | |
| 3 | By: */s/ Shana E. Scarlett*<br>**HAGENS BERMAN SOBOL SHAPIRO LLP** | Stephen A. Swedlow (*pro hac vice* in *Klein*) |
| | Shana E. Scarlett (Bar No. 217895) | stephenswedlow@quinnemanuel.com |
| 4 | shanas@hbsslaw.com | Michelle Schmit (*pro hac vice* in *Klein*) |
| | 715 Hearst Avenue, Suite 202 | michelleschmit@quinnemanuel.com |
| 5 | Berkeley, CA 94710 | 191 N. Wacker Drive, Suite 2700 |
| | Telephone: (510) 725-3000 | Chicago, IL 60606 |
| 6 | | Telephone: (312) 705-7400 |
| | Steve W. Berman (*pro hac vice* in *Klein*) | |
| 7 | steve@hbsslaw.com | Kevin Y. Teruya (Bar No. 235916) |
| | 1301 Second Avenue, Suite 2000 | kevinteruya@quinnemanuel.com |
| 8 | Seattle, WA 98101 | Adam B. Wolfson (Bar No. 262125) |
| | Telephone: (206) 623-7292 | adamwolfson@quinnemanuel.com |
| 9 | | Brantley I. Pepperman (Bar No. 322057) |
| | **LOCKRIDGE GRINDAL NAUEN P.L.L.P.** | brantleypepperman@quinnemanuel.com |
| 10 | W. Joseph Bruckner (*pro hac vice* in *Klein*) | 865 South Figueroa Street, 10th Floor |
| | wjbruckner@locklaw.com | Los Angeles, CA 90017 |
| 11 | Robert K. Shelquist (*pro hac vice* in *Klein*) | Telephone: (213) 443-3000 |
| | rkshelquist@locklaw.com | |
| 12 | Brian D. Clark (*pro hac vice* in *Klein*) | Manisha M. Sheth (*pro hac vice* in *Klein*) |
| | bdclark@locklaw.com | manishasheth@quinnemanuel.com |
| 13 | Rebecca A. Peterson (Bar No. 241858) | 51 Madison Avenue, 22nd Floor |
| | rapeterson@locklaw.com | New York, New York 10010 |
| 14 | Arielle S. Wagner (*pro hac vice* in *Klein*) | Telephone: (212) 849-7000 |
| | aswagner@locklaw.com | |
| 15 | Kyle J. Pozan (*pro hac vice* in *Klein*) | *Counsel for the Klein Plaintiff Objectors* |
| | kjpozan@locklaw.com | *(Interim Consumer Class Counsel in the Klein* |
| 16 | Laura M. Matson (*pro hac vice* in *Klein*) | *Litigation)* |
| | lmmatson@locklaw.com | |
| 17 | 100 Washington Avenue South, Suite 2200 | |
| | Minneapolis, MN 55401 | |
| 18 | Telephone: (612) 339-6900 | |

## ATTESTATION OF SHANA E. SCARLETT

This document is being filed through the Electronic Case Filing (ECF) system by attorney Shana E. Scarlett. By her signature, Ms. Scarlett attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: September 12, 2022  /s/ *Shana E. Scarlett*
Shana E. Scarlett

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2022, the foregoing document was transmitted to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.

Dated: September 12, 2022  /s/ *Shana E. Scarlett*
Shana E. Scarlett