1   Eric Alan Isaacson
    6580 Avenida Mirola
2   La Jolla, CA 92037-6231
    Telephone: (858) 263-9581
3   ericalanisaacson@icloud.com

4

5                   UNITED STATES DISTRICT COURT

6                   NORTHERN DISTRICT OF CALIFORNIA

7   IN RE FACEBOOK INTERNET          )   Case No. 5:12-MD-2314-EJD
    TRACKING LITIGATION              )
8                                    )   OJBECTION OF CLASS MEMBER
                                     )   ERIC ALAN ISAACSON, AND NOTICE OF
9                                    )   INTENT TO APPEAR AT HEARING
                                     )
10                                   )
    THIS DOCUMENT RELATES TO ALL     )   Judge: Hon. Edward J. Davila
11  ACTIONS                          )   Courtroom 4, 5th Floor
                                     )   Hearing Date: October 27, 2022
12                                   )   Time: 9:00 a.m.
                                     )
13  ─────────────────────────────────

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                                    i

1

**TABLE OF CONTENTS**

2  TABLE OF AUTHORITIES ..........................................................................................................ii

3  OBJECTION .............................................................................................................................1

4  I.      REASONS FOR THE OBJECTION.................................................................................1

5          A.      Filing of the complaints under seal improperly deprives class members—
                   and apparently even the Named Plaintiffs themselves—of critical
6                  information needed to evaluate the case and its settlement in violation of
                   fundamental due process, and both common-law and First Amendment
7                  rights of access to court records .................................................................1

8          B.      Based on the publicly available information, the Settlement appears to be
                   patently inadequate. ...................................................................................3
9
           C.      The requested "service awards" are illegal and inequitable ....................6
10
           D.      The request for attorney's fees is excessive and demonstrates that the
11                 Settlement is designed to favor the attorneys' interests over Class
                   Members ....................................................................................................8
12
    II.     CONCLUSION ............................................................................................................12
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2 **CASES**

3 *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP,*
      814 F.3d 132 (2d Cir. 2016)......................................................................................2

4

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP,*
5      No. 14-CV-6867 (VEC), 2016 WL 1071107 (S.D.N.Y. Mar. 18, 2016),
      *aff'd,* 814 F.3d 132 (2d Cir. 2016).............................................................................2

6

*In re Cendant Corp.,*
7      260 F.3d 183 (3d Cir. 2001)......................................................................................3

8 *Central R.R. & Banking Co. v. Pettus,*
      113 U.S. 116 (1885)..................................................................................................6

9

*Matter of Cont'l Illinois Sec. Litig.,*
10      962 F.2d 566 (7th Cir. 1992)....................................................................................8

11 *Chambers v. Whirlpool Corp.,*
      980 F.3d 645 (9th Cir. 2020)...............................................................................10-11

12

*City of Detroit v. Grinnell Corp.,*
13      495 F.2d 448 (2d Cir. 1974)....................................................................................10

14 *Cook v. Niedert,*
      142 F.3d 1004 (7th Cir. 1998)..................................................................................10

15

*Cooper Industries, Inc., v. Aviall Services, Inc.,*
16      543 U.S. 157 (2004)...................................................................................................7

17 *Courthouse News Serv. v. Planet,*
      947 F.3d 581 (9th Cir. 2020)......................................................................................2

18

*Desilets v. Wal-Mart Stores, Inc.,*
19      171 F.3d 711 (1st Cir. 1999)......................................................................................4

20 *In re Dry Max Pampers Litig.,*
      724 F.3d 713 (6th Cir. 2013)......................................................................................7

21

*In re Equifax Inc. Customer Data Sec. Breach Litig.,*
22      999 F.3d 1247 (11th Cir. 2021)..................................................................................6

23 *In Facebook, Inc. Internet Tracking Litig.,*
      956 F.3d 589 (9th Cir. 2020)..................................................................................3, 4

24

*Fischel v. Equitable Life Assur. Soc'y,*
25      307 F.3d 997 (9th Cir.2002)................................................................................10, 11

26 *Flowers v. Wiley,*
      675 F.2d 704 (5th Cir.1982)......................................................................................9

27

*FTC v. AbbVie Prods.,*
28      713 F.3d 54 (11th Cir.2013)......................................................................................2

*Fresno County Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,
    925 F.3d 63 (2d Cir.2019)........................................................................................9

*See Gelis v. BMW of N. Am., LLC*,
    No. 21-2093, 2022 WL 4113673 (3d Cir. Sept. 9, 2022)......................................11

*Hadix v. Johnson*,
    322 F.3d 895 (6th Cir.2003)....................................................................................7

*Hart v. BHH, LLC*,
    334 F.R.D. 74 (S.D.N.Y. 2020)..............................................................................12

*Hernandez v. Between the Bread 55th Inc.*,
    496 F.Supp. 3d 791 (S.D.N.Y. 2020)......................................................................12

*Hyland v. Navient Corp.*,
    No. 20-3765-CV, 2022 WL 4088061 (2d Cir. Sept. 7, 2022)..................................6

*Johnson v. NPAS Solutions, LLC*,
    975 F.3d 1244 (11th Cir. 2020), *reh'g denied,* 43 F.4th 1138 (11th Cir. 2022).....................6

*Littlejohn v. Bic Corp.*,
    851 F.2d 673 (3d Cir. 1988)....................................................................................3

*In re Larry's Apartment, L.L.C.*,
    249 F.3d 832 (9th Cir. 2001)....................................................................................7

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*,
    316 F.Supp. 3d 455 (D.D.C. 2018).........................................................................3

*Medical & Chiropractic Clinic, Inc. v. Oppenheim*,
    981 F.3d 983 (11th Cir.2020)...................................................................................6

*Melito v. Experian Mktg. Sols., Inc.*,
    923 F.3d 85 (2d Cir. 2019)......................................................................................6

*Moody v. Johnston*,
    66 F.2d 999 (9th Cir. 1933)......................................................................................7

*Pavlik v. FDIC*,
    No. 10-C-816, 2011 WL 5184445 (N.D. Ill. Nov.1, 2011)......................................8

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010)............................................................................................9-11

*Rosenbaum v. MacAllister*,
    64 F.3d 1439 (10th Cir.1995)..................................................................................9

*Rothfarb v. Hambrecht*,
    649 F.Supp. 183 (N.D. Cal. 1986).........................................................................10

*Sakamoto v. Duty Free Shoppers, Ltd.*,
    764 F.2d 1285 (9th Cir.1985)...................................................................................7

*Shane Group, Inc. v. Blue Cross Blue Shield of Mich.,*
   825 F.3d 299 (6th Cir.2016)..............................................................3, 7

*Sonner v. Premier Nutrition Corp.,*
   971 F.3d 834 (9th Cir.2020).....................................................................7

*In re Synthroid Mktg. Litig.,*
   264 F.3d 712 (7th Cir.2001).....................................................................8

*Trustees v. Greenough,*
   105 U.S. 527 (1882)......................................................................6-7, 10

*United States v. Kirilyuk,*
   29 F.4th 1128 (9th Cir.2022)....................................................................7

*Webster v. Fall,*
   266 U.S. 507 (1925)..................................................................................7


**CONSTITUTIONAL PROVISIONS**

First Amendment...........................................................................1-3

Fifth Amendment, due process clause.......................................................1-2


**STATUTES**

18 U.S.C. §2520(c)(2)........................................................................3-4


**RULES**

Fed.R.Civ.P. 23.........................................................................passim

Fed.R.Civ.P. 23(e)(2)(A)......................................................................2

23(e)(2)(C)(iii)..................................................................................8

Under Rule 23(e)(2)(D)......................................................................6, 7

Fed.R.Civ.P. Rule 23(a)(4)....................................................................2

Fed.R.Civ.P. 23(e)(5)(A)......................................................................1


**OTHER AUTHORITIES**

Theodore Eisenberg & Geoffrey P. Miller,
   *Attorneys' Fees and Expenses in Class Action Settlements,*
   7 J. Empirical L.Stud. 248 (2010).........................................................10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Theodore Eisenberg, Geoffrey Miller & Roy Germano,
*Attorneys' Fees in Class Actions,* 92 N.Y.U. L. Rev. 937 (2017)...........................................10

N.D. Cal., *Procedural Guidance for Class Action Settlements*.......................................................5

1

**OBJECTION**

2

3    Eric Alan Isaacson, a member of the putative class, hereby objects to the proposed

4    Settlement, and to the request for attorney's fees and incentive awards, in the above-captioned

5    matter, *In Re Facebook Internet Tracking Litigation,* Case No. 5:12-MD-02314-EJD (N.D.Cal.).

6    Objector's full name, address, telephone number, email address, and Facebook account URL are

7    as follows:

8        Eric Alan Isaacson
         6580 Avenida Mirola
9        La Jolla, CA 92037-6231
         (858) 263-9581
10       ericalanisaacson@icloud.com
11       https://www.facebook.com/Eric.Alan.Isaacson

12

13    The same email address and telephone number are associated with Isaacson's Facebook

account.

14

15    Isaacson hereby gives notice that he intends to appear at the final-approval hearing.

16    The objections stated herein apply not only to the objector, but also to the entire class. *See*

Fed.R.Civ.P. 23(e)(5)(A).

17

18   **I.        REASONS FOR THE OBJECTION**

19

20    Isaacson objects to the proposed Settlement, requested attorney's fee award, and "service

awards" for the following reasons:

21

22       **A.        Filing of the complaints under seal improperly deprives class
                     members—and apparently even the Named Plaintiffs themselves—of
23                   critical information needed to evaluate the case and its settlement in
                     violation of fundamental due process, and both common-law and First
24                   Amendment rights of access to court records**

25    Complaints in this matter have been filed under seal, with publicly available versions

26    featuring extensive redactions of material information needed by class members and the public to

27    evaluate the case and its settlement. *See* DE93 (REDACTED Second Amended Consolidated Class

28    Action Complaint); DE157 (REDACTED Third Amended Consolidated Class Action Complaint).

1    This obviously violates Class Members' right to fundamental due process of law. It also violates

2    their common-law and First Amendment rights of access to court records that directly affect their

3    own interests.

4         Not even the Named Plaintiffs were sufficiently informed to give meaningful approval of

5    the Settlement and its terms. Class Counsel's filings acknowledge as much: "Indeed, because

6    Facebook has designated most of the information 'Highly Confidential,' class counsel cannot even

7    fully inform the named plaintiffs of the full basis for their claims." DE97:1[ECFp2]. Named

8    Plaintiffs from whom the full basis for their claims has been kept secret obviously cannot "fairly

9    and adequately protect the interests of the class," as is required both for class certification under

10   Rule 23(a)(4), and also for settlement approval under Rule 23(e)(2)(A). Approval of the Settlement

11   under such circumstances deprives class members of fundamental due process. U.S. Const., Fifth

12   Amendment.

13        The sealing of Complaints and redactions also violate the First Amendment and common-

14   law rights of access to this critical information. "'A complaint, which initiates judicial proceedings,

15   is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint

16   is almost always necessary if the public is to understand a court's decision.'" *Bernstein v. Bernstein*

17   *Litowitz Berger & Grossmann LLP,* 814 F.3d 132, 140 (2d Cir.2016)(quoting *FTC v. AbbVie*

18   *Prods.,* 713 F.3d 54, 62 (11th Cir.2013)). "The fact that a suit is ultimately settled without a

19   judgment on the merits does not impair the 'judicial record' status of pleadings." *Bernstein,* 814

20   F.3d at 140.

21            Some civil complaints may never come up for judicial evaluation because
22       they may prompt the parties to settle. The public still has a right to know that the
         filing of the complaint in our courts influenced the settlement of the dispute: "When
23       a complaint is filed, and the authority of the people of the United States is thereby
         invoked, even if only as a threat to induce settlement, the American people have a
24       right to know that the plaintiff has invoked their power to achieve his personal
         ends."
25

26   *Courthouse News Serv. v. Planet,* 947 F.3d 581, 592-93 (9th Cir.2020)(quoting *Bernstein v.*

27   *Bernstein Litowitz Berger & Grossmann LLP,* No. 14-CV-6867 (VEC), 2016 WL 1071107, at *9

28   (S.D.N.Y. Mar. 18, 2016), *aff'd,* 814 F.3d 132 (2d Cir.2016).

1  That the case involves the settlement of a Rule 23 class action if anything intensifies the

2  rights of access that have been violated in this case:

3  > The right of public access is particularly compelling here, because many members
   > of the "public" are also plaintiffs in the class action. Accordingly, all the reasons ...

4  > for the right of access to public records apply with even greater force here. ...
   > Protecting the access right in class actions "promotes [class members'] confidence"

5  > in the administration of the case.

6

7  *In re Cendant Corp.,* 260 F.3d 183, 193 (3d Cir.2001) (quoting *Littlejohn v. Bic Corp.,* 851 F.2d

8  673, 678 (3d Cir.1988)). "[I]n class actions—where by definition some 'members of the public are

9  also parties to the [case]'—the standards for denying public access to the record 'should be applied

10 ... with particular strictness.'" *Shane Group, Inc. v. Blue Cross Blue Shield of Mich.,* 825 F.3d 299,

11 305 (6th Cir.2016) (quoting *Cendant Corp.,* 260 F.3d at 194); *accord, e.g., In re McCormick &*

12 *Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig*., 316 F. Supp. 3d 455, 465 (D.D.C. 2018)("by

13 its nature, a class action may create a greater need for public access").

14  With the Complaints under seal, and only heavily redacted versions available to Named

15 Plaintiffs, Class Members, and the public, the proposed Settlement cannot be approved.

16 **B.    Based on the publicly available information, the Settlement appears to**
        **be patently inadequate.**

17

18  How much is a Facebook user's right to privacy worth?

19  In this very case the Ninth Circuit cited "a study that values users' browsing histories at

20 $52 per year." *In Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 600 (9th Cir. 2020). But

21 that's the value to businesses seeking to use people's browsing histories; it obviously understates

22 the value to the users of the right to privacy.

23  Congress put a value on that right to privacy. Under the Wiretap Act, each class members

24 may recover "***the greater of***—(A) the sum of the actual damages suffered by the plaintiff and any

25 profits made by the violator as a result of the violation; or (B) ***statutory damages of whichever is***

26 ***the greater of $100 a day for each day of violation or $10,000***." 18 U.S.C. §2520(c)(2) (emphasis

27 added); *see* DE35:32-33¶¶144-45 ("Section 2520 provides for preliminary, equitable and

28 declaratory relief, in addition to statutory damages of the greater of $10,000 or $100 a day for each

1   day of violation or actual damages, punitive damages in appropriate cases, reasonable attorneys'

2   fees, and other litigation costs reasonably incurred."); DE93:40¶182; DE93:42¶192. "Whatever

3   the circumstances," the First Circuit has concluded, "if violations occur on 100 days or less, then

4   ***the minimum statutory award of $10,000 must be paid***. If, on the other hand, violations occur on

5   more than 100 days, then of course the higher statutory award of $100 per day must be paid*."

6   *Desilets v. Wal-Mart Stores, Inc.,* 171 F.3d 711, 714 (1st Cir.1999)(emphasis added). The starting

7   point for the Wiretap Act statutory damages is $10,000 per class member. And while the statute

8   grants the district court some discretion, any exercise of that discretion must be consistent under

9   Rule 23 with the Court's obligation to act as a fiduciary to the class. Moreover, given the Ninth

10   Circuit's holding that the conduct alleged in this case is "'highly offensive' to a reasonable person,

11   and 'sufficiently serious' and unwarranted so as to constitute an 'egregious breach of the social

12   norms,'" *Facebook,* 956 F.3d at 606, a denial of statutory damages would be indefensible. For this

13   court to deny an award of such damages would, moreover, violate class members' right under the

14   Seventh Amendment to a jury trial on defendants' liability and damages.

15       So, what does the Settlement recover? Dividing the $90 million common fund by 124

16   million class members yields 73 cents apiece. Subtract 29% for the requested attorney's fee award,

17   the Settlement yields just 52 cents per class member. After deducting administrative and notice

18   expenses, the Settlement yields about fifty cents per class member. That is an egregiously

19   insufficient recovery, given a record showing that users' browsing histories are worth $52 per year,

20   *Facebook,* 956 F.3d at 600, and sustaining Wiretap Act claims supporting statutory damages of

21   $10,000 per class member. *See id.* at 606; 18 U.S.C. §2520(c)(2). It is less than one-hundredth of

22   one-percent of the recovery that class members could have received had the case gone to trial.

23       Class Counsel assert that because few class members will submit claims, those who do

24   might receive more than 52 cents or 73 cents apiece:

25       Based on current claims information (i.e., approximately 1.35 million claims filed
         so far), Settlement Class Members would receive in excess of $40 per person. See
26       Joint Decl. Ex. 1 (Weisbrot Declaration). This figure will of course decrease as
         more claims are filed, but the likely payment to Settlement Class Members will be
27       substantial relative to recoverable damages.

28

1   DE256:8-9[ECFpp.34-35].

2          But as the September 22, 2022, deadline approaches, several million more class members

3   might submit claims, easily cutting the per-class-member payments to less than ten dollars apiece.

4   The likely payments are by no means "substantial relative to recoverable damages" of $10,000 per

5   class member for the Wiretap Act claims.

6          Named Plaintiffs say that the Settlement nonetheless may be presumed fair, reasonable,

7   and adequate because this Court granted preliminary approval. No such presumption may be

8   indulged, as the preliminary approval was not an adversary proceeding; it determined merely that

9   notice should be given to the Class so that the Settlement's proposed terms could in fact be tested.

10  Indulging a presumption on the basis of the preliminary approval would be particularly

11  inappropriate in this case, where the settling parties failed to provide pertinent information required

12  by this Court's *Procedural Guidance for Class Action Settlements*. Paragraph 1)e. of the

13  *Procedural Guidance* required disclosure of "[t]he anticipated class recovery under the settlement,

14  the potential class recovery if plaintiffs had fully prevailed on each of their claims, and an

15  explanation of the factors bearing on the amount of the compromise." *Proposed Guidance* ¶1)e.

16  Seeking preliminary approval of the Settlement, Named Plaintiffs conceded: "The Guidance

17  requires comparative analysis of the anticipated Settlement Class recovery and the potential class

18  recovery if the Named Plaintiffs fully prevailed on their claims, and an explanation of why the

19  amounts differ, as they almost always will in any large class action settlement."

20  DE232:16[ECFp.27]. Yet deliberately they failed to provide any such analysis. Also missing was

21  "an estimate of the number and/or percentage of class members who are expected to submit a claim

22  in light of the experience of the selected claims administrator and/or counsel from other recent

23  settlements of similar cases, the identity of the examples used for the estimate, and the reason for

24  the selection of those examples." *Procedural Guidance* ¶1)g.

25         Finally, although the Named Plaintiffs tout injunctive relief as some sort of "gold

26  standard," they have provided no basis for placing any valuation upon it. They say: "As non-

27  financial consideration and injunctive relief for the Settlement Agreement, Defendant will delete

28  the sequestered Settlement Class Data from Defendant's systems to the extent not already deleted

CASE NO. 5:12-MD-2314-EJD
OBJECTION OF ERIC ALAN ISAACSON                                                    - 5 -

1  in accordance with provisions of this section." DE233-1:22§5.1 (emphasis added). What does "to

2  the extent not already deleted" mean? Has the information already been deleted? If so, the so-

3  called "injunctive" relief is a sham.

4          The Settlement cannot be approved as fair, reasonable, and adequate.

5          **C.     The requested "service awards" are illegal and inequitable**

6          Under Rule 23(e)(2)(D), as amended in 2018, this Court cannot approve a settlement unless

7  it "treats class members equitably relative to each other." Fed.R.Civ.P. 23(e)(2)(D). The

8  Settlement in this case does not, for while all other individual Class Members recover very little,

9  each Named Plaintiff is seeking for themselves additional payments from the Class Members'

10  common fund of thousands of dollars apiece. In fact, the Settlement authorizes, and the Named

11  Plaintiffs are seeking, "service awards" (also known as "incentive awards") for the Settlement

12  Class Representatives of $5,000 apiece for the MDL Plaintiffs, and of $3,000 each for the State

13  Court Plaintiffs.

14          Such awards are inequitable—and illegal—in a common fund cases. The Supreme Court's

15  foundational common-fund decisions hold that while representative plaintiffs may seek

16  reimbursement of reasonable litigation expenses, including attorney's fees, from a common-fund

17  recovery, any payments to the class representatives for personal services rendered are strictly

18  prohibited. *See Trustees v. Greenough,* 105 U.S. 527, 537-38 (1882) ("*Greenough*"); *Central R.R.*

19  *& Banking Co. v. Pettus,* 113 U.S. 116, 122 (1885) ("*Pettus*"). Plainly stated, "Supreme Court

20  precedent prohibits incentive awards." *Johnson v. NPAS Solutions, LLC,* 975 F.3d 1244, 1255

21  (11th Cir.2020), *reh'g denied,* 43 F.4th 1138 (11th Cir.2022); *accord, e.g., In re Equifax Inc.*

22  *Customer Data Sec. Breach Litig*., 999 F.3d 1247, 1257 (11th Cir. 2021); *Medical & Chiropractic*

23  *Clinic, Inc. v. Oppenheim,* 981 F.3d 983, 994 n.14 (11th Cir.2020); *but see Hyland v. Navient*

24  *Corp.,* No. 20-3765-CV, 2022 WL 4088061, at *9 (2d Cir. Sept. 7, 2022)(declining to follow

25  *Greenough* and *Pettus*); *Melito v. Experian Mktg. Sols., Inc.,* 923 F.3d 85, 95 (2d Cir.2019)(same).

26          This Court is bound to follow the Supreme Court's decisions barring service-award

27  payments to class representatives in common-fund cases. *See Johnson v. NPAS Solutions,* 975 F.3d

28  at 1255-61, 1264. Ninth Circuit precedents allowing incentive awards all fail to address whether

1   *Greenough* and *Pettus* prohibit them. "'Questions which merely lurk in the record, neither brought

2   to the attention of the court nor ruled upon, are not to be considered as having been so decided as

3   to constitute precedents.'" *Cooper Industries, Inc., v. Aviall Services, Inc.,* 543 U.S. 157, 170

4   (2004)(quoting *Webster v. Fall,* 266 U.S. 507, 511 (1925)); *see, e.g., United States v. Kirilyuk,* 29

5   F.4th 1128, 1134 (9th Cir.2022); *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, 842 n.5 (9th

6   Cir.2020); *In re Larry's Apartment, L.L.C.,* 249 F.3d 832, 839 (9th Cir. 2001); *Sakamoto v. Duty

7   Free Shoppers, Ltd.,* 764 F.2d 1285, 1288 (9th Cir.1985); *Moody v. Johnston,* 66 F.2d 999, 1001

8   (9th Cir.1933). Moreover, decisions sustaining incentive awards fail to take account of the 2018

9   amendment to Rule 23(e) requiring district courts to consider whether a proposed settlement "treats

10  class members equitably relative to each other." Fed.R.Civ.P. 23(e)(2)(D). As *Greenough* and

11  *Pettus* are common-fund class-action decisions of the Supreme Court while sitting in equity, the

12  2018 amendment to Rule 23 must be deemed to incorporate their holdings that service payments

13  to class representatives are inequitable and unlawful.

14      Any expectation of an incentive award would, moreover, impair the ability of Named

15  Plaintiffs to adequately represent other class members' interests. The Sixth Circuit has oft

16  "expressed a 'sensibl[e] fear that incentive awards may lead named plaintiffs to expect a bounty

17  for bringing suit or to compromise the interest of the class for personal gain." *In re Dry Max

18  Pampers Litig.,* 724 F.3d 713, 722 (6th Cir.2013)(quoting *Hadix v. Johnson,* 322 F.3d 895, 897

19  (6th Cir.2003)); *accord Shane Group,* 825 F.3d at 311. Such awards may create, "in fact 'a

20  ***disincentive*** for the [named] class members to care about the adequacy of relief afforded unnamed

21  class members[.]'" *Shane Group,* 825 F.3d at 311 (quoting *Dry Max,* 724 F.3d at 722 (emphasis

22  in original)).

23      Named Plaintiffs hope to avoid any adverse inferences concerning their own incentives

24  and motivations, by parroting denials that they had any idea they might be eligible for such

25  payments. *See* DE255-16:3¶17[ECFp.4] (Named Plaintiff Perrin Davis declares "I was not even

26  aware of the possibility of any Service Award"); DE255-17:3¶18[ECFp.5] (Named Plaintiff Dr.

27  Brian Lentz declares "I was not even aware of the possibility of any Service Award"); DE255-

28  19:3¶17[ECFp.4] (Named Plaintiff Matthew Vickery declares "I was not even aware of the

1    possibility of any Service Award"); DE255-20:3¶17[ECFp.4] (Named Plaintiff Ryan Ung declares

2    "I was not even aware of the possibility of any Service Award"); DE255-21:3¶17[ECFp.4]

3    (Named Plaintiff Chi Cheng declares "I was not even aware of the possibility of any Service

4    Award"); DE255-22:3¶18[ECFp.4] (Named Plaintiff Alice Rosen declares "I was not even aware

5    of the possibility of any Service Award").

6         If that is true, it eliminates any justification for paying them the requested service awards.

7    For if even one representative plaintiff "would have stepped forward without the lure of an

8    'incentive award,' there is no need for such additional compensation." *In re Synthroid Mktg. Litig.,*

9    264 F.3d 712, 723 (7th Cir.2001). An incentive award is unwarranted if there was "a named

10   plaintiff willing to charge a price of zero." *Matter of Cont'l Illinois Sec. Litig.,* 962 F.2d 566, 572

11   (7th Cir.1992). Here, the Named Plaintiffs have attested that each of them was willing to charge a

12   price of zero. "The market rate for incentive reimbursements here is accordingly zero." *Synthroid,*

13   264 F.3d at 723. "This is a classic example of a case where the Named Plaintiffs "would have

14   stepped forward without the lure of an 'incentive award,' and therefore 'there is no need for such

15   additional compensation.'" *Pavlik v. FDIC,* No. 10 C 816, 2011 WL 5184445, at *5 (N.D. Ill.

16   Nov.1, 2011)(quoting *Synthroid Mktg. Litig.,* 264 F.3d at 723).

17        At a minimum, the request for incentive awards must be denied. And a Settlement that

18   allowed for them should not be approved.

19   **D.    The request for attorney's fees is excessive and demonstrates that the
            Settlement is designed to favor the attorneys' interests over Class**
20          **Members**

21        Under Rule 23(e)(2)(C)(iii), as amended in 2018, this Court may approve a Settlement only

22   after considering "the terms of any proposed award of attorney's fees, including timing of

23   payment." Here it appears that Class Counsel negotiated a Settlement placing their own interests

24   before those of the Class, by agreeing to a Settlement that compromises Class claims for a tiny

25   fraction of their value, while ensuring that Class Counsel may receive attorney's fees around three

26   times their reasonable hourly rates—with $ 26,100,000 to be paid to the attorneys ***before*** Class

27   Members are paid a penny, with no provision to secure repayment of the attorney's fees in the

28

1  event that the Ninth Circuit vacates or reduces them. These are grounds for not only  rejecting

2  Class Counsel's attorney's fee application but also, under Rule 23(e)(2)(C)(iii), for rejecting the

3  Settlement itself.

4      The requested attorney's fee award is plainly excessive, given the paltry compensation

5  obtained for the Class that is so insubstantial compared to the potentially recoverable damages.

6  Given the poor results for the Class, no upward adjustment from the Ninth Circuit's 25%

7  benchmark for common-fund fee awards is warranted. Neither is any substantial multiplier of

8  Class Counsel's lodestar appropriate. Class Members get *a fraction of a percent* of their

9  recoverable damages, while Class Counsel ask to walk away attorney's fees compensating them

10 at roughly *three times* their claimed hourly rates. The requested fee award should be denied, and

11 the Settlement set aside because it was designed to further the financial interests of Class Counsel

12 at the expense of the Class. Had Class Counsel proceeded to trial *and won,* their compensation

13 would have been limited to their unenhanced lodestar as presumptively reasonable compensation

14 for time and effort on the case. *See Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 546 (2010).

15 They should not receive several times their lodestar for quitting, and selling the Class out for the

16 tiniest fraction of recoverable damages.

17     A multiplier of three times (or nearly) the plaintiffs' attorney's reasonable hourly rates

18 should not be countenanced in a common-fund case because it "deviate[s] wildly from the

19 unenhanced lodestar fee." *Fresno County Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,

20 925 F.3d 63, 72 (2d Cir.2019). A multiplier of several times Class Counsel's reasonable hourly

21 rates cannot be reconciled with either Class Counsel's—or this Court's—fiduciary duty to the

22 Class. *Cf. Rosenbaum v. MacAllister,* 64 F.3d 1439, 1447 (10th Cir.1995)("our conscience is

23 shocked by an award of a 3.16 multiplier"); *Flowers v. Wiley,* 675 F.2d 704, 707 (5th Cir.1982)(a

24 multiplier of 1.5 "increasing the hourly compensation rate by fifty percent was an abuse of

25 discretion"). The Seventh Circuit has suggested that multipliers, where permitted, should be

26

27

28

capped at 2.[1] And empirical data demonstrates that mean multipliers generally are below 2.[2] The extravagant multiplier sought here is wholly unwarranted in light of the relatively paltry recovery.

This Court acts as a fiduciary to the Class when it evaluates the Settlement and awards attorney's fees.

> In a class action suit, the district court must act as a fiduciary to guard the rights of absent class members. Objections by class members are rare, and defendants, having made their contribution to the settlement, are uninterested in the distribution. It is, therefore, incumbent upon the trial court judge to act with "moderation and a jealous regard to the rights of those who are interested in the fund" in determining what is a reasonable fee to be paid to class counsel for their efforts in settling the litigation and creating the fund. *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 469 (2d Cir. 1974) ("*Grinnell I*"), quoting *Trustees v. Greenough,* 105 U.S. 527, 536, 15 Otto 527, 536, 26 L.Ed. 1157 (1881).

*Rothfarb v. Hambrecht*, 649 F.Supp. 183, 237 (N.D. Cal. 1986). A fiduciary would not award class counsel several times their lodestar, given the Supreme Court's holdings that counsel's lodestar is presumptively sufficient to compensate them for litigating a class action on a contingent-fee basis. "[T]here is a strong presumption that the lodestar is sufficient; factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar; and a party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified." *Perdue,* 559 U.S. at 546.

*Perdue* was a fee-shifting case, no doubt, but the Ninth Circuit holds in common-fund cases too that "[t]here is a 'strong presumption' that the lodestar figure represents a reasonable fee." *Fischel v. Equitable Life Assur. Soc'y,* 307 F.3d 997, 1007 (9th Cir.2002)(citation omitted). "Thus, although a court can adjust the lodestar upward or downward based on certain factors, adjustments are 'the exception rather than the rule.'" *Id.* at 1007. "Because of a 'strong presumption that the

---

[1] *See, e.g., Cook v. Niedert,* 142 F.3d 1004, 1038 (7th Cir.1998)("a multiplier of 2 may be a sensible ceiling.").

[2] *See* Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements,* 7 J. EMPIRICAL L. STUD. 248, 273 (2010) (1.81 mean multiplier for cases between 1993 and 2008); Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions,* 92 N.Y.U. L. REV. 937, 965 (2017)(1.48 mean multiplier for cases between 2009 and 2013).

1   lodestar is sufficient,' a multiplier is warranted only in 'rare and exceptional circumstances.'"

2   *Chambers v. Whirlpool Corp.,* 980 F.3d 645, 665 (9th Cir. 2020)(quoting *Perdue,* 559 U.S. at 546-

3   52. And, as *Perdue* itself emphasizes, "factors subsumed in the lodestar calculation cannot be used

4   as a ground for increasing an award above the lodestar." *Perdue,* 559 U.S. at 546.

5       Class Counsel's claimed lodestar is not adequately documented in any event. A district

6   court has discretion to determine whether to award fees either based on the attorneys' lodestar, or

7   as a percentage of the common fund recovered. rate. *Fischel,*, 307 F.3d at 1006-07. But here, Class

8   Counsel's summary tables provide insufficient information for either this Court, or the Class, to

9   evaluate Class Counsel's claimed lodestar. *See Gelis v. BMW of N. Am., LLC,* No. 21-2093, 2022

10  WL 4113673, at *4 (3d Cir. Sept. 9, 2022). This makes it impossible for this Court to exercise an

11  informed discretion in choosing between a lodestar and a percent-of-fund award. It also precludes

12  placing reliance on Class Counsel's assertions concerning the hours billed and whether they were

13  reasonable. *See id.*

14      Even taking those assertions at face value, however, the requested fee award is excessive.

15  Class Counsel's fee memorandum asserts: "Based on the collective hours spent by Settlement

16  Class Counsel (excluding State Court Counsel) and Supreme Court Counsel, after appointment,

17  and their reasonable and customary hourly rates, they have a combined lodestar of $7,949,963.97.

18  Thus, the requested award of fees of $26,100,000 represents a multiplier of 3.28 when only

19  including post-consolidation time; the multiplier is of course lower when including some or all of

20  the pre-consolidation time." DE256:20(ECFp.29). Elsewhere the memorandum asserts that "A

21  lodestar cross-check further supports the reasonableness of the requested fee, which represents an

22  implied multiplier of approximately 2.7 on MDL Counsel's lodestar." DE256:3[ECFp.12]. Either

23  way, if Class Counsel's assertions are accepted, they seek a multiplier of roughly three times their

24  claimed hourly rates, which run up to $1,200 an hour. They seek compensation of up to $3,600 an

25  hour for time billed by certain senior partners. That is too much.

26      Class Counsel claim that such fees are justified by the "exceptional results," under which

27  Class Members' $10,000 claims are released for 73 cents apiece. Those are not exceptionally good

28  results in a case in which "Meta, a wealthy and powerful defendant," DE256:10[ECFp.19], plainly

1   can pay far more. Class Counsel say that by settling on such terms, they have avoided "the very

2   real possibility that Settlement Class members might have recovered nothing." DE256:10-

3   11[ECFpp.19-20]. But there really is not much difference between 73 cents and nothing, in a case

4   in which each class member's statutory damages come to $10,000 apiece. Class Members plainly

5   would be better off taking a chance on a significant recovery, in the thousands of dollars apiece,

6   at the risk losing the Settlement's provision of just 73 cents each.

7          The Settlement nonetheless permits Class Counsel to be paid $26,100,000 before Class

8   Members receive even a penny. Class Counsel's fee motion states: "Plaintiffs respectfully request

9   that the Court authorize payment of any approved fee or expense awards immediately following

10  funding." DE256:21(ECFp.30). This is a further ground for rejecting the Settlement. *See Hart v.*

11  *BHH, LLC,* 334 F.R.D. 74, 77 (S.D.N.Y. 2020)(rejecting settlement under which class counsel's

12  attorney's fees would be paid immediately, while class members would have to wait for an

13  Effective Date following any objectors' appeals); *cf. Hernandez v. Between the Bread 55th Inc*.,

14  496 F. Supp. 3d 791, 808 (S.D.N.Y. 2020)(disapproving settlement agreement under which class

15  counsel would be paid before the class). The Common Fund belongs to the Class, not to Class

16  Counsel. What if, after Class Counsel have withdrawn 39% of the fund as attorney's fees,

17  distributing the money to the hundreds of plaintiffs' attorneys involved in the case, the Ninth

18  Circuit reverses and vacates or reduces the fee award? How will Class Members get the money

19  back?

20         They should not be required to pursue the lawyers to whom the money has been

21  distributed—who by then may well have spent it. If attorney's fees are to be distributed before

22  class members are paid Class Counsel should be required to post a bond securing payment to the

23  Class in the event any portion of their attorney's fee award is reversed.

24  **II.      CONCLUSION**

25         The Court should order the sealed complaints be unsealed, and the motions for settlement

26  approval, attorney's fees, and incentive awards, should all be denied.

27

28

1    DATED:  September 12, 2022              Respectfully submitted,

2

3

4                                                        /s/ Eric Alan Isaacson
                                                         Eric Alan Isaacson

5                                            6580 Avenida Mirola
                                             La Jolla, CA 92037-6231
6                                            Telephone: (858) 263-9581
                                             ericalanisaacson@icloud.com
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

3        I hereby certify that, on September 12, 2022, I am filing and serving the foregoing

4    document through the Court's CM/ECF system, which will send notice to all counsel of record.

5

6

7                                                          /s/ Eric Alan Isaacson
                                                   Eric Alan Isaacson, pro se
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28