**DɪCELLO LEVITT LLC**
David A. Straite (admitted *pro hac vice*)
485 Lexington Avenue, 10th Floor
New York, New York 10017
Tel.: (646) 933-1000
Fax: (646) 494-9648
*dstraite@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Ten North Dearborn Street, 6th Floor
Chicago, Illinois 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*

*Counsel for Plaintiffs*

**GRYGIEL LAW LLC**
Stephen G. Grygiel (admitted *pro hac vice*)
127 Coventry Place
Clinton, NY 13323
Tel.: (407) 505-9463
*stephengrygiel22@gmail.com*

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| IN RE FACEBOOK INTERNET TRACKING LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 5:12-MD-2314-EJD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. Edward J. Davila, USDJ<br>Courtroom 4, 5th Floor<br>Hearing Date: October 27, 2022<br>Time: 9:00 a.m. |

## I.    INTRODUCTION

Settlement Class Representatives Perrin Davis, Dr. Brian Lentz, Michael Vickery and Cynthia Quinn (collectively, "Settlement Class Reps" or "Plaintiffs") respectfully submit this supplemental reply memorandum in support of their previously filed Motion (ECF 254) for entry of the proposed Final Approval Order and Judgment, attached as Exhibits 2 (ECF 255-2) and 3 (ECF 255-3) (respectively) to the August 23, 2022, Joint Declaration of David Straite and Stephen Grygiel ("Joint Dec.," ECF 255-1). If granted, the Final Approval Order will: (i) grant final approval of the Settlement on the terms and conditions stated in the Settlement Agreement; (ii) renew the Court's earlier order certifying a Settlement Class and appointing Settlement Class Counsel and Settlement Class Representatives; (iii) approve the proposed allocation plan; and (iv) dismiss the Settlement Class Representatives' and Settlement Class Members' claims against Defendant.

Plaintiffs' Memorandum in Support of Preliminary Settlement Approval (ECF 232) and Plaintiffs' Memorandum in Support of Final Approval of Class Action Settlement (ECF 254) detail the extensive background of this lengthy litigation and the outstanding relief provided in this Settlement. Although no opposition briefs to final approval were filed, Plaintiffs respectfully submit this reply memorandum to provide several important updates to the Court regarding additional positive reactions to the settlement, the claims process, and a new Ninth Circuit opinion. All of these updates further support granting final approval here. Also accompanying this reply is an omnibus reply to a handful of objections to the settlement; a reply brief in further support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards; and a further Joint Declaration of David A. Straite and Stephen G. Grygiel dated October 13, 2022 (the "Oct. Joint Decl.").

In sum, this is an excellent settlement:

- Settlement followed three rounds of mediation with respected mediator Randall Wulff (and a mediator's proposal), and mediation team chaired by former Hawai'i Attorney General Margery Bronster;

- Rarely won injunctive relief in the form of sequestration and ultimate

expungement of data allegedly improperly collected, which will benefit every person in the class, ***whether or not they made claims***;

- $90 million common fund ranks as one of the top 10 data privacy class action settlements to date;

- Praise in the press and even from the defense bar;

- Dual notice program (direct email, and saturated media notice program);

- Second-round email notice program launched in August to remind class members of the claims deadline;

- Ability to file online claims and to choose between paper check or electronic payment;

- Over *2 million* individuals filed claims seeking to share in the settlement fund, the second-largest claims effort in the history of claims administrator Angeion Group;

- Only *eight* individual objectors ask this Court to reject the settlement, three of whom lack standing and four of whom are (or are represented by) known repeat objectors.

- No Attorney General objections.

Plaintiffs respectfully request that the Court grant final approval.

## II.    ARGUMENT

### A.    Continued Press Coverage of the Settlement

Since the August 23, 2022, filing of Plaintiffs' Memorandum in Support of Final Approval of Class Action Settlement (ECF 254), the media reporting about this settlement has continued and has assisted in supporting the claims process. For example:

> **"Yes, the Facebook internet tracking settlement is real**
> A viewer asked us if an email about a class-action settlement with Facebook is real. We can VERIFY it is. Here's how to know if you qualify for payment."

Case Decker, *Yes, the Facebook internet tracking settlement is real*, WCNC CHARLOTTE (Aug. 30,

2022).

> "If you used Facebook in 2010 and 2011, you might have received an email claiming you're entitled to some money in an internet tracking settlement. Is the Facebook internet tracking settlement legit? Yes, the settlement is legit."

Danielle Letenyei, *Facebook Internet Tracking Settlement Is Legit—Claim Deadline Approaching*, MARKET REALIST (Aug. 29, 2022).

> "Time has just about run out to get in on the $90 million class action settlement Facebook has agreed to following claims it illicitly tracked users across other websites. If you used the social media site back in 2011, you could be eligible for a payout -- but the deadline is just before midnight tonight . . . Read on to find out what the Facebook case is about, whether you're eligible for money and when payments might go out."

Dan Avery, *Facebook's $90 Million Data-Tracking Settlement: Today is the Last Day to File a Claim*, CNET (Sept. 22, 2022).

> "Facebook users who, between April 22, 2010, and September 26, 2011, visited non-Facebook websites that displayed a Facebook Like button, are eligible for a payment from the settlement. How can I file a claim? A claim can be submitted online here, or download the claim form here, no later than September 22nd, 2022."

John Clark, *How to file a claim in new $90M Facebook tracking class action lawsuit*, LIFEWIRE (Aug. 31, 2022). This continued media focus on the settlement aided the additional class notice efforts detailed in the next section. The overwhelming press positivity surrounding the Settlement underscores the fairness, reasonableness and adequacy of the settlement and supports granting final approval here.

**B.**     **Status Report on Notice and the Claims Process**

The Notice Plan and Claims Administration Program, ECF 233-1, pp. 60–71, 93–108, that the Court approved (ECF 241 ¶¶ 7–10) is robust and satisfies Rule 23(c)(2)(B)'s "best notice" that is "practicable" "under the circumstances" requirement, as well as the constitutional due process requirements for notice. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

On September 9, 2022, Plaintiffs filed a Supplemental Declaration of Steven Weisbrot (ECF

264) ("Suppl. Weisbrot Dec."), which supplements Mr. Weisbrot's two prior declarations by providing the Court with details regarding the additional, post-Preliminary Settlement Approval notice efforts undertaken by Angeion, at the Parties' direction. Angeion caused ***86,075,105*** reminder email notices to be sent and commenced an additional programmatic banner advertising campaign that created millions of new impressions. Suppl. Weisbrot Dec. ¶¶ 5–7. Importantly, even with these additional notice efforts, Angeion's total costs are still less than the originally estimated costs for settlement and claims administration. *Id*. ¶ 7.

Additionally, pursuant to the Northern District of California's August 4, 2022 amended "Procedural Guidance for Class Action Settlements" (not in force at the time of preliminary approval) Mr. Weisbrot proactively addressed Angeion's procedures for handling and protecting class member data. Although the Court's August 4, 2022 amended Guidance did not exist when the Court approved the selection of Angeion, Mr. Weisbrot's Supplemental Declaration describes Angeion's policies and procedures to secure its physical and network environments that ensure the protection and security of data, including policies on network access and security and keeping a copy of all data offline at all times. *Id*. ¶¶ 12–14. Overall, the additional notice efforts "meaningfully enhanced the court approved Notice Plan." *Id*. ¶ 15. Settlement Class Members have received "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

The Settlement Class's response has also been overwhelmingly positive, which further supports final approval. The claims period concluded on September 22, 2022. As of that date, as shown in accompanying Declaration of Steven Weisbrot dated October 13, 2022 ("Weisbrot Oct. Dec.," attached as **<u>Exhibit 1</u>** to the Oct. Joint Dec.), 2.1 million claims were submitted from a class of 124 million individuals. That take rate is right in line with other large, recent privacy-related class actions. *See, e.g., In re TikTok Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1090 n.6 (N.D. Ill. Sept. 30, 2021) ("[a]ccording to the plaintiff's expert in *In re Facebook*, the average claims rate for classes above 2.7 million class members is less than 1.5% (citing 2d Expert Decl. Prof. William B. Rubenstein ¶ 5, *In re Facebook*, ECF. 517-2, and also citing, *inter alia*, *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 214–15 (W.D. Mo. Mar. 14, 2017), as "collecting cases that have approved settlements 'where the claims rate was less than one percent'") and *Cottle v. Plaid, Inc.*,

No. 20-cv-03056-DMR, 2022 WL 2829882, at *5 (N.D. Cal. July 20, 2022) (granting approval where "estimated claims rate is 1.28%"). If the Court were to grant Plaintiffs' fee request (which is paid from the common fund), each claimant would receive approximately $30.

Comparatively, approximately 1,300 class members requested exclusion, Weisbrot Oct. Decl. ¶ 7, and only eight individuals filed objections. When compared to the large number of claims, the comparatively small number of opt-outs and objections supports approval. *See Fleming v. Impax Labs. Inc.*, No. 16-cv-06557-HSG, 2022 WL 2789496, at *7 (N.D. Cal. July 15, 2022) ("'[t]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.'" (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. Jan. 5, 2004), and citing *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. Sept. 15, 2015), for proposition "'[a] low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.'

### C.   All Basic Settlement Approval Principles Support Final Approval

As detailed in Plaintiffs' Memorandum in Support of Final Approval of Class Action Settlement (ECF 254), this settlement fully satisfies every settlement approval requirement of Rule 23(e), the Guidance, and established Ninth Circuit settlement case law. The Settlement is fundamentally fair, adequate, and reasonable. Notably, no opposition briefs to final approval were filed and Plaintiffs' arguments in support of final approval stand unchallenged and unopposed with the exception of the objections.

For efficiency, Plaintiffs respond to the objections in the accompanying separate omnibus response. But in sum, none have merit. All eight objectors (excluding the "*Klein* objectors")[1] oppose final approval of the settlement. Four objectors (Gugliotta, Feldman, Jan, and Isaacson) also object to Plaintiffs' fee request. Two objectors (Feldman and Jan) oppose awarding incentive awards to two State Court plaintiffs, but otherwise do not oppose awards to the other State Court

---

[1] Three additional class members (Kupcho, Grabert, and Klein, or the "Klein Objectors") do not challenge the settlement nor the fee request, but rather ask the Court to modify the release to expressly carve out their unrelated antitrust case, *see* ECF 267.

plaintiff nor to the four MDL plaintiffs. One objector (Isaacson) asks this Court to declare categorically that incentive awards are per se illegal, but this argument was just completely foreclosed by the Ninth Circuit in the recent *Apple* ruling. *In re Apple Inc. Device Performance Litig.*, No. 21-15758, 2022 WL 4492078 (9th Cir. Sept. 28, 2022). But no objectors raise objections to class certification, nor to appointment of Class Counsel, nor to Plaintiffs' request for reimbursement of expenses, nor to the allocation plan. Also, no objector raises any Article III standing challenge.

Since Plaintiffs filed their Memorandum in Support of Final Approval of Class Action Settlement (ECF 254), nothing has changed to alter the settlement approval analysis other than the pro-approval facts of the supplemental notice program, the class response, and the absence of meritorious objections. Summarizing, no *Bluetooth* "red flags" exist.[2] The eight factors set forth in *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) are all satisfied here, as are the Rule 23(e)(2) approval factors and the N.D. Cal. Guidance factors. Plaintiffs address arguments regarding attorneys' fees, expenses, and incentive awards in a separate, concurrently filed brief.

Finally, nothing has changed in Ninth Circuit case law to prevent granting final approval of the Settlement, including in the new Ninth Circuit opinion in *In re Apple Inc. Device Performance Litig.*; this settlement already comports with all aspects of that ruling, and further supports final approval here.[3] Out of an abundance of caution, however, the three State Court Plaintiffs are

---

[2] *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011).

[3] Ultimately, the Ninth Circuit vacated—but did not reverse—approval of the settlement, because the district court's Approval Order contained language "stat[ing] that the court applied a presumption that the settlement was fair and reasonable," although the Ninth Circuit "commend[ed] the district court's thoughtful and thorough analysis, which suggests that the [C]ourt took great care in considering the terms of the settlement." *Id.* at * 2. Essentially, the Court rigorously scrutinized the settlement, as required, but the language of the Approval Order reflected an incorrect standard. *See id.* at * 9 ("Here, while the district court's probing analysis suggests that it may have applied heighted scrutiny, it written order relied on a flawed legal standard."). That is not a problem here. Plaintiffs have consistently and explicitly presented arguments in favor of final approval under a rigorous scrutiny standard, *without* any presumption of fairness. *See* Plaintiffs' Memorandum in Support of Final Approval of Class Action Settlement (ECF 254) at 8–9. *See also* Transcript of Oral Argument on Preliminary Settlement Approval, at 20:12–17 ("Now, we understand that the scrutiny that is applied to a settlement when it occurs pre-certification is a heightened level of

submitting supplemental declarations (all attached to the Oct. Joint Decl.) to ensure full compliance with the *Apple* Court's directions regarding incentive awards.

### III.   CONCLUSION

For all of the reasons discussed in Plaintiffs' Memorandum in Support of Final Approval of Class Action Settlement (ECF 254); this reply brief; and the briefing, exhibits and oral argument in Support of Preliminary Settlement Approval, Plaintiffs respectfully request that the Court confirm certification of the Settlement Class and grant final approval of this important and highly successful data privacy class action settlement.

Dated: October 13, 2022                                Respectfully Submitted,

**DiCELLO LEVITT GUTZLER LLC**              **GRYGIEL LAW LLC**

_____*/s/ David Straite*_____                              _____*/s/ Stephen Grygiel*_____
David A. Straite (admitted *pro hac vice*)        Stephen G. Grygiel (admitted *pro hac vice*)
485 Lexington Avenue, 10th Floor                   127 Coventry Place
New York, New York 10017                             Clinton, NY 13323
Tel.: (646) 933-1000                                         Tel.: (407) 505-9463
Fax: (646) 494-9648                                         *stephengrygiel22@gmail.com*
*dstraite@dicellolevitt.com*

                                                                        **SIMMONS HANLY CONROY LLC**
Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)              _____*/s/ Jay Barnes*_____
Ten North Dearborn Street, 6th Floor             Jason 'Jay' Barnes (admitted *pro hac vice*)
Chicago, Illinois 60602                                    112 Madison Avenue, 7th Floor
Tel.: (312) 214-7900                                        New York, NY 10016
*akeller@dicellolevitt.com*                              Tel.: (212) 784-6400
*aprom@dicellolevitt.com*                              Fax: (212) 213-5949
                                                                        *jaybarnes@simmonsfirm.com*

---

scrutiny. One need only quickly read *Staton*, and *Hanlon*, and *Churchill* and *Bluetooth* and numerous other cases to know that as Your Honor well knows certainly better than I do."); 29:24–30:4 ("*We understand, Your Honor, there's no presumption of fairness*. *Briseno* says that . . . *Roes 1-2 versus SFBSC Management*. We don't need it. There's a . . . heightened scrutiny in the precertification settlement analysis, *Bluetooth* and *Amchem*, we satisfy that."). (Emphasis added.)

1

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)**

2

I, David A. Straite, attest that concurrence in the filing of this document has been obtained

3

from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

4

Executed this 13th day of October, 2022, at Marbletown, New York.

5

6

*/s/ David Straite*

7

David A. Straite

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28