**DICELLO LEVITT LLC**
David A. Straite (admitted *pro hac vice*)
485 Lexington Avenue, 10th Floor
New York, New York 10017
Tel.: (646) 933-1000
Fax: (646) 494-9648
*dstraite@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Ten North Dearborn Street, 6th Floor
Chicago, Illinois 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*

*Class Counsel*

**GRYGIEL LAW LLC**
Stephen G. Grygiel (admitted *pro hac vice*)
127 Coventry Place
Clinton, NY 13323
Tel.: (407) 505-9463
*stephengrygiel22@gmail.com*

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| IN RE FACEBOOK INTERNET TRACKING LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 5:12-MD-2314-EJD<br><br>**PLAINTIFFS' OMNIBUS RESPONSE IN OPPOSITION TO OBJECTIONS**<br><br>Judge: Hon. Edward J. Davila, USDJ<br>Courtroom 4, 5th Floor<br>Hearing Date: October 27, 2022<br>Time: 9:00 a.m. |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .......................................................................................................... iii

I.      INTRODUCTION .......................................................................................................... 1

II.     BACKGROUND .............................................................................................................. 1

III.    LEGAL STANDARDS .................................................................................................... 2

IV.     PLAINTIFFS' RESPONSES TO OBJECTIONS............................................................ 2

      A.      Martin Suroor Corrado (ECF 234 and 235) ...................................................... 2

      B.      Michael Colley (ECF 248) .................................................................................. 3

      C.      Edward W. Orr (ECF 249, 251 and 263) ........................................................... 4

      D.      Eleni Gugliotta (ECF 257) ................................................................................. 4

      E.      Anne Barschall (ECF 261) ................................................................................. 6

      F.      Austin Williams (ECF 262) ................................................................................ 7

      G.      Sarah Feldman and Cameron Jan (ECF 265) .................................................... 8

            1.      *Incentive Awards for State Court Plaintiffs Chen and Rosen* .................... 8

            2.      *Settlement Below Full Statutory Damages*................................................... 9

            3.      *Notice Plan* ................................................................................................. 9

            4.      *Motion for Fees.* ......................................................................................... 10

      H.      Rachel Banks Kupcho, Sarah Grabert and Maximillian Klein (ECF 267) ............ 10

      I.      Eric Alan Isaacson, Esq. (ECF 269)..................................................................... 12

V.      CONCLUSION ............................................................................................................. 155

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Inc. Device Performance Litig.*,
No. 21-15758, 2022, WL 4492078 (9th Cir. Sept. 28, 2022) ...................................... 1, 2, 8, 13

*Broomfield v. Craft Brew All., Inc.*,
No. 17-cv-01027-BLF, 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020)...................................... 4

*Cottle v. Plaid Inc.*,
No. 20-cv-03056-DMR, 2022 WL 2829882 (N.D. Cal. July 20, 2022) .................................. 2

*In re Facebook Internet Tracking Litig.*,
17-17486, Order Granting Motion to Seal ............................................................. 10, 11, 12

*In re Facebook Internet Tracking Litig.*,
956 F. 3d 589 (9th Cir. 2020)................................................................................ 14

*In re Google Plus Profile Litig.*,
5:18-cv-06164-EJD-VKD, 2021 WL 242887 (N.D. Cal., Jan. 25, 2021) ...................... *passim*

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)................................................................................. 3

*Hefler v. Wells Fargo & Co.*,
No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .................................. 8

*Klein, et al. v. Meta Platforms, Inc.*,
3:20-cv-8570-JD (N.D. Cal.) ........................................................................... 1, 11, 12

*Linney v. Cellular Alaska P'Ship*,
151 F.3d 1234 (9th Cir. 1998)............................................................................ 3, 9

*Muransky v. Godiva Chocolatier, Inc.*,
905 F.3d 1200 (11th Cir. 2018)............................................................................. 12

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*
688 F.2d 615 (9th Cir. 1982).............................................................................. 3, 9

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542 (2010) ....................................................................................... 15

*Sandoval Ortega v. Aho Enterprises, Inc.*,
No. 19-cv-00404-DMR, 2021 WL 5584761 (N.D. Cal. Nov. 30, 2021)............................... 13

*In re Snap Inc. Sec. Litig.*,
No. 2:17-cv-03679-SVW, 2021 WL 667590 (C.D. Cal. Feb. 18, 2021) .................................. 2

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)................................................................................. 3, 15

*Tait v. BSH Home Appliances Corp.*,
    2015 WL 4537463 (C.D. Cal. July 27, 2015) ............................................................ 5

*In re TikTok, Inc., Consumer Privacy Litig.*,
    565 F. Supp. 3d 1076 (N.D. Ill. Sept. 30, 2021) ...................................................... 9

*U.S. v. Oregon*,
    913 F.2d 576 (9th Cir. 1999)................................................................................... 2

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*,
    No. 2:06-CV-00225-PMP-PAL, 2010 WL 786513 (D. Nev. Mar. 8, 2010) .......................... 8

**Other Authorities**

Fed. R. Civ. P. 23 ....................................................................................................... 3, 13

Dorothy Atkins, *Footnotes, Eye-Popping Fee Bids Among Judges' "Pet Peeves,"*
    Law360 (April 22, 2021)................................................................................... 10

4 William B. Rubenstein et al., *Newberg on Class Actions* § 13:7 (5th ed.) ................................ 5

## I.      INTRODUCTION

Settlement Class Representatives Perrin Davis, Dr. Brian Lentz, Michael Vickery and Cynthia Quinn (collectively, "Settlement Class Reps" or "Plaintiffs") respectfully submit this omnibus response to all objections to the proposed settlement and objections to the motion for fees, expenses and incentive awards.[1]

## II.     BACKGROUND

Plaintiffs believe that the proposed settlement is an excellent result, and many in the media and even the defense bar agree, as detailed in the Motion for Final Approval. Now that the claims period has concluded, it is clear that the class agrees. More than *2 million* Facebook users filed claims asking to share in the settlement fund (*see* Declaration of Steven Weisbrot dated October 13, 2022, attached as Exhibit 1 to the October 13, 2022 Joint Declaration of David A. Straite and Stephen G. Grygiel ("Oct. Joint Dec.")) but only *eight* individuals ask this Court to block it. Three of them failed to establish standing as class members, and four are (or are represented by) known repeat objectors.[2]

All eight objectors (excluding the *Klein* objectors in n.2 below) oppose final approval of the settlement. Four objectors (Gugliotta, Feldman, Jan, and Isaacson) also object to Plaintiffs' fee request. Two objectors (Feldman and Jan) oppose awarding incentive awards to two State Court plaintiffs, but otherwise do not oppose awards to the other State Court plaintiff nor to the four MDL plaintiffs. One objector (Isaacson) asks this Court to declare categorically that incentive awards are per se illegal, but this argument was just completely foreclosed by the Ninth Circuit in the recent *Apple* ruling. *In re Apple Inc. Device Performance Litig.*, No. 21-15758, 2022, WL 4492078, at

---

[1] For efficiency, Plaintiffs respond to all objections in this omnibus response rather than spread those responses between the replies in further support of the motions for final approval and for fees, expenses and incentive awards, a practice accepted by Courts. *See, e.g., In re Google Plus Profile Litig.*, 5:18-cv-06164-EJD-VKD, 2021 WL 242887, at *1 (N.D. Cal., Jan. 25, 2021). Plaintiffs reserve the right to make additional arguments against the objections at oral argument.

[2] Three additional class members (Kupcho, Grabert, and Klein) do not challenge the settlement nor the fee request, but rather ask the Court to modify the release to expressly carve out their unrelated antitrust case, discussed below. *See* ECF 267. There was also one class member (Barschall, ECF 261) whose concern has been resolved, as discussed below, and thus she is not included in the tally.

*11–13 (9th Cir. Sept. 28, 2022)

Finally, no objector raised any objection to Plaintiffs' request for reimbursement of expenses, nor to the order certifying the class and appointing Class Counsel, nor to the allocation plan. Also, no objector raised any challenge to this Court's Article III jurisdiction.

## III.   LEGAL STANDARDS

Objectors bear the burden of proving any assertions they raise challenging the reasonableness of a class action settlement. *See, e.g., Cottle v. Plaid Inc.*, No. 20-cv-03056-DMR, 2022 WL 2829882, at *6 (N.D. Cal. July 20, 2022); *U.S. v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1999). In *In re Google Plus Profile Litig.*, No. 5:18-cv-06164-EJD (VKD), 2021 WL 242887, at *4 (N.D. Cal. Jan. 25, 2021), this Court cited *U.S. v. Oregon* in finding objectors had "failed to carry their burden of proving any assertions raised in challenging the reasonableness of the settlement." Objectors also bear the burden of establishing standing as members of the class. *In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-SVW, 2021 WL 667590, at *2 (C.D. Cal. Feb. 18, 2021) (quoting *In re Hydroxycut Mktg. & Sales Prac. Litig.*, 2013 WL 5275618, at *2 (S.D. Cal. Sept. 17, 2013) ("objectors bear 'burden of establishing that they are class members and therefore have standing to object to the proposed class settlement'").

## IV.   PLAINTIFFS' RESPONSES TO OBJECTIONS

### A.   Martin Suroor Corrado (ECF 234 and 235)

Mr. Corrado is proceeding *pro se,* and does not attempt to establish standing, i.e., that he was a Facebook subscriber who visited a Facebook partner website during the class period in the United States while logged out of his Facebook account. As a courtesy, Lead Counsel sent his email address to Angeion, but Angeion was also unable to locate any record of him establishing class membership. Oct. Joint Decl. ¶ 14. His objection should therefore be rejected.

Substantively, Mr. Corrado opposes final approval, alleging certain harm unique to him caused by Facebook and says that if his data is deleted as a result of the injunctive relief, "then the evidence of my abuse will be deleted with it." ECF 234 at 2. But without a litigation hold due to pending litigation or other legal obligation, Facebook has no duty to preserve his data even if this settlement had not been reached, and it is therefore unclear what remedy he seeks. Mr. Corrado

1   does not oppose Plaintiffs' motion for fees, expenses and incentive awards.

2   **B.      Michael Colley (ECF 248)**

3   Mr. Colley is also proceeding *pro se*, and also does not establish standing. As with Mr.

4   Corrado, Lead Counsel sent his information to Angeion as a courtesy, Oct. Joint Decl. ¶ 14, but

5   they also have no record of his attempt to establish class membership. His objection should

6   therefore be rejected.

7   Substantively, Mr. Colley objects that the amount of settlement is too small, specifically,

8   "an absurd amount for all of the problems Facebook has caused [its] subscribers." ECF 248 at 23.

9   This objection is devoid of any analysis of the settlement approval factors set forth in Ninth Circuit

10  case law, Fed. R. Civ. P. 23(e), and the Northern District of California Guidance, all of which show

11  the settlement fully warrants final approval. This objection, like the other objections, also ignores

12  numerous bedrock settlement approval principles. First, that settlements must be evaluated as a

13  whole. *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Second, that "[t]he law

14  favors the compromise and settlement of class action suits." *Google Plus Profile Litig.*, 2021 WL

15  242887, at *2 (citing 9th Circuit cases). Third, that "[s]ettlement is the offspring of compromise"

16  and "the question [the court] address[es] is not whether the final product could be prettier, smarter

17  or snazzier, but whether it is fair, adequate and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d

18  1011, 1027 (9th Cir. 1998); *see also Google Plus Profile Litig.*, 2021 WL 242887, at *2 ("The court

19  iterates that the proper standard for approval of the proposed settlement is whether it is fair,

20  reasonable, adequate, and free from collusion – not whether the class members could have received

21  a better deal in exchange for release of their claims" (citing *Hanlon*, 150 F.3d at 1027). Fourth, that

22  a settlement fund constitutes only a fraction of theoretically available damages does not make a

23  settlement unfair, unreasonable, or inadequate. *See Linney v. Cellular Alaska P'Ship*, 151 F.3d

24  1234, 1242 (9th Cir. 1998); *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San

25  Francisco* 688 F.2d 615, 628 (9th Cir. 1982).

26  Mr. Colley also alleges that he was harmed because he was suspended from the platform

27  three times and is considering filing his own claims. But the "problems" he alleges are not a part

28  of this settlement, which is limited to the alleged improper collection of web browsing information

from Facebook subscribers after they logged out of their accounts. Mr. Colley cites to no authority for the proposition that a settlement should be rejected for failing to address every alleged wrongdoing by the settling defendant, and nor could he.

Mr. Colley does not oppose Plaintiffs' motion for fees, expenses and incentive awards.

### C.      Edward W. Orr (ECF 249, 251 and 263)

Mr. Orr is a known *pro se* objector, including in this Court. *See, e.g., Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027-BLF, 2020 WL 1972505, at *19 (N.D. Cal. Feb. 5, 2020); *In re Google Plus Profile Litig.*, 2021 WL 242887, at *6. Despite the approximately 1,000 pages of argument and exhibits spread across three docket entries, Mr. Orr does not attempt to establish standing. As a courtesy, Lead Counsel worked with Angeion to investigate but there is no record of him filing a claim or otherwise trying to establish class membership, Oct. Joint Decl. ¶ 14, and his objections should be rejected.

Substantively, Mr. Orr objects that the settlement is too small in light of other, unrelated "grievous offenses" allegedly perpetrated by Facebook, but those allegations are beyond the scope of the case and cannot be a basis for objecting to the amount of the settlement here. It is also unclear from his objection if he is actually referring to alleged harms caused by Apple or Facebook. He also states his belief that this is a hacking case (even though Plaintiffs dropped their CFAA claims) and wants separate classes for those who were "hacked" and those who were not. But the class is already limited only to those Facebook users who had their internet use tracked after they logged out, and if this is what Mr. Orr means by "hacking," all members of the class were equally affected. There is nothing to separate. Finally, Mr. Orr asserts on page 51 of his initial objection that there was "not enough discovery," when the record demonstrates the opposite: four rounds of document productions; five experts; verified interrogatories; and additional information produced during mediation followed by a mediator's proposal. Mr. Orr does not articulate what additional discovery he believes is required before the settlement could be approved.

### D.      Eleni Gugliotta (ECF 257)

Eleni Gugliotta is a Facebook user represented by counsel, whom Plaintiffs understand may be her husband. Plaintiffs take her at her word that she is a class member and do not contest standing

in light of the evidence supporting that claim. Plaintiffs are not aware of any prior history of her objecting.

Ms. Gugliotta objects to the amount of the settlement when compared to Facebook's global revenues and number of subscribers, but as with Mr. Williams' objection (discussed below), Ms. Gugliotta does not articulate a reason why these metrics are relevant. Also, like Mr. Williams, she uses global numbers when this case is limited to Facebook usage in the United States. But even if global revenues and subscriber numbers were somehow relevant, Ms. Gugliotta also incorrectly uses current figures; the Class Period, however, ended in September 2011, when Facebook was much smaller.

Ms. Gugliotta also objects to the settlement being a "claims made" settlement. Leaving aside her objection to such settlements theoretically, she is mistaken: this is not a claims-made settlement, but instead a common fund settlement. A claims-made settlement, in contrast, is "a settlement that does not have a fixed settlement fund, but rather provides that the defendant will pay claims of class members who file them, usually up to some fixed ceiling." 4 William B. Rubenstein et al., *Newberg on Class Actions* § 13:7 (5th ed.). Even if claims must be filed, common fund settlements are not considered "claims made" unless unclaimed funds revert to the defendant. *Tait v. BSH Home Appliances Corp.*, 2015 WL 4537463, at *6 (C.D. Cal. July 27, 2015). Here, not a penny of the settlement fund could ever revert to defendant, and thus the settlement here is considered a common-fund settlement.

Next, Ms. Gugliotta objects to the Notice and claims process. She first argues that the Notice was deficient because it did not disclose the number of class members, but she is mistaken. The Court and the Class was informed that there are 124 million class members. *See* ECF 232 at 19. Indeed, objectors Feldman and Jan use this very cite. *See* ECF 265 at 11. Ms. Gugliotta next objects to the requirement that objectors provide basic personal information. But this same information is required of claiming class members, to reduce the risk of fraud; objectors should not have a lower bar. In any event, Ms. Gugliotta cites no authority for the proposition objectors may proceed anonymously nor does she explain how such a process could possibly be structured in a way to weed out fraudulent objections. Ms. Gugliotta also objects that the parties did not identify any *cy*

*pres* recipients, but that is because the settlement is designed not to have any. The parties negotiated a second-round distribution of any unclaimed funds to the claiming class members, not to *cy pres* recipients. If there are still unclaimed funds that exceed administration costs after the second round, the parties would then approach the Court and (under Court supervision) decide whether a third-round is appropriate.

Ms. Gugliotta next objects to having to sign her objection, as opposed to permitting counsel to sign. But claiming class members are required to sign their claims, and objectors should not have a lower burden. Regardless, there can be no serious argument as to burdens – if an objector shoulders the burden of retaining counsel and reviewing and approving the objection, there can be no serious argument that personally signing the objection herself is an undue burden.

Ms. Gugliotta also objects that Plaintiffs' fee request is untethered to the "take rate" among the class, but without any supporting authority for this argument. Also, Plaintiffs are requesting reimbursement for work performed without pay for eleven years at enormous risk. Ms. Gugliotta does not explain how or to what extent the Court should factor three additional months of work during the claims period into the evaluation of 11 years of work. In any event, even if such efforts were relevant to the Court's evaluation, it would support an even higher fee, given the enormous efforts Lead Counsel devoted to responding to class member inquiries and to spreading the word in the media. Oct. Joint Decl ¶ 9.

She also raises no objection to Plaintiffs' request for reimbursement of expenses.

### E.    Anne Barschall (ECF 261)

Ms. Barschall is a class member who did not formally object to the settlement, but instead wrote to the Court with an objection to filing her claim online; she preferred instead to file her claim by mail. The settlement process approved by the Court already provided an option to submit a claim by mail, and so Co-Lead Counsel Stephen Grygiel emailed and spoke with Ms. Barschall and then coordinated with Ms. Barschall and the claims administrator (Angeion) to help her file a written claim in September. Oct. Joint Decl. ¶ 15. Lead Counsel believe the issue has been resolved. *Id*. Ms. Barschall did not otherwise object to the settlement nor to Plaintiffs' motion for fees, expenses and incentive awards.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### F.      Austin Williams (ECF 262)

Mr. Williams is a *pro se* objector with no known history of prior objections. He claims without evidence or verification that he is a "Settlement Class Member," and without proof of class membership, he has not met his burden of establishing standing and his objections should be rejected. However, because he is proceeding pro se, Lead Counsel as a courtesy contacted Angeion and confirmed that Mr. Williams received a claim notice and submitted a claim. Oct. Joint Decl. ¶ 14. Plaintiffs therefore have no objection if the Court found standing.

Even if he does have standing, however, the Court should still reject his objections on the merits. First, Mr. Williams claims that $90 million is inadequate when compared with Facebook's global gross revenues, ignoring the long-established settlement approval principles that, applied to this case, show the monetary settlement component is eminently approvable. Further, Mr. Williams does not explain why global gross revenues is a relevant metric in this analysis: the case is limited to Facebook use in the United States (not in any other country), and does not explain why gross revenues rather than net profits should be used in a case where the Ninth Circuit used an unjust enrichment measure of damages, which is measured by net profits, not gross revenues. More importantly, Mr. Williams does not explain what portion of Facebook's class-period profits or revenues are attributable to the post-logout tracking.

Mr. Williams also objects that further discovery and/or a trial could have uncovered additional wrongdoing beyond the scope of this case. But he cites to no authority for denying a settlement reached prior to trial on speculation that further discovery might have revealed additional wrongdoing.

Mr. Williams also objects that the data-at-issue might not be deleted. But Meta has provided a sworn declaration and Mr. Williams cites to no authority to support rejecting a class action settlement on the unsupported assumption that the defendant is defrauding the Court. Mr. Williams' assumption is further illogical given the vintage of the data (coming from 2010 and 2011) the value of which diminishes with time. Mr. Williams offers only rank speculation and innuendo that

1    Facebook would not follow this Court's injunction.[3]

2            Mr. Williams does not raise any objections to Plaintiffs' motion for fees, expenses or service

3    awards.

4            **G.    Sarah Feldman and Cameron Jan (ECF 265)**

5            Objectors Sarah Feldman and Cameron Jan are well-known objectors represented by even

6    more well-known objector counsel John J. Pentz and Kendrick Jan. For example, in *Hefler v. Wells*

7    *Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at \*16 n.19 (N.D. Cal. Dec. 18, 2018),

8    this Court noted Mr. Pentz's history as a "serial, meritless objector"); *accord*, *In re Wal-Mart Wage*

9    *& Hour Emp't Practices Litig.*, No. 2:06-CV-00225-PMP-PAL, 2010 WL 786513, at \*1 (D. Nev.

10   Mar. 8, 2010) (noting Pentz's "documented history of filing notices of appeal from orders

11   approving other class action settlements, and thereafter dismissing said appeals when they and their

12   clients were compensated by the settling class or counsel for the settling class"). Feldman and Jan

13   also objected to the settlement before this Court in *Apple Device Performance*, on bases that were

14   rejected by the Ninth Circuit. *In re Apple Inc. Device Performance Litig.*, No. 21-15758, 2022 WL

15   4492078, at \*11–12 (9th Cir. Sept. 28, 2022) (vacating final approval of settlement on different

16   grounds). Both Feldman and Jan submitted claims and Plaintiffs do not contest standing.

17           Feldman and Jan throw just about every objection at the wall but none of them stick. They

18   object to the settlement, to the notice plan, incentive awards to two State Court plaintiffs, and the

19   motion for fees. They do not, however, oppose incentive awards for one State Court plaintiff nor

20   for the four MDL plaintiffs, nor do they raise any objection to Plaintiffs' request for reimbursement

21   of expenses. Each of these objections is addressed in turn.

22           **1.    *Incentive Awards for State Court Plaintiffs Chen and Rosen*:** In a single

23   paragraph without elaboration, Objectors Feldman and Jan contend that two of the California State

24   representative plaintiffs "disavow membership in this case" and so "[t]he fact that they claim to

25   have filed a claim in their declarations indicates a failure by Class Counsel to protect the Settlement

26   Fund from fraudulent claims." (ECF 265 at 20.) The Objectors' contention, however, is without

---

[3] Mr. Williams also claims that there are 800 million class members, but he is mistaken. As disclosed to the Court and to the Class, there are only 124 million class members. ECF 232 at 19.

factual foundation. The Amended Class Action Complaint, California Superior Court, Santa Clara (ECF 241), which the Objectors cite as the basis of their argument, was filed July 31, **2012**. State Plaintiffs Chi Cheng and Alice Rosen (those identified by Objectors Feldman and Jan) plead that, *at that time*, they were non-Facebook Users whose data was nonetheless being tracked (*id.* ¶¶ 7–8, 16). They make no statement as to whether they were Facebook Users during the class period for this Settlement, i.e., April 22, 2010 and September 26, 2011. But both filed claim forms with Angeion and the Objectors present no evidence that Cheng or Rosen was untruthful. More importantly, the California State representative plaintiffs are participants in this Settlement based on their surrender of related claims in the State Action. Notwithstanding any conjecture from Objectors Feldman and Jan about the propriety of Cheng's and Rosen's claim forms, they are undisputedly proper representatives of the proposed State Action class.

> **2.**      ***Settlement Below Full Statutory Damages***: Objectors claim that full statutory damages in this case would be in the trillions of dollars and thus a "mere" $90 million is an absurdly discounted settlement. But Objectors admit in their brief that "trillions" of dollars is not the real measure of damages, and instead concede it is closer to $900 million in light of binding Supreme Court precedent capping such damages. ECF 265 at 3. Thus, by Objectors' admission, the settlement here achieved 10% of statutory damages, but the Objectors then fail to meet their burden to explain why a 10% recovery would be unfair. It is not, as incontrovertible precedent, rooted in a wholistic evaluation of settlement results, teaches. *See, e.g., Linney,* 151 F.3d at 1242; *Officers for Justice*, 688 F.2d at 628.

> **3.**      ***Notice Plan***: Objectors posit that the Notice Plan must be defective because the take rate is "low." But the take rate here is approaching 2%, and Objectors do not support their claim why this figure is unusual in a case like this. *See, e.g., In re TikTok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1090 n.6 (N.D. Ill. Sept. 30, 2021) ("[a]ccording to the plaintiff's expert in *In re Facebook*, the average claims rate for classes above 2.7 million class members is less than 1.5% (citing 2d Expert Decl. Prof. William B. Rubenstein ¶ 5, *In re Facebook*, ECF 517-2, and also citing, *inter alia*, *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 214–15 (W.D. Mo. Mar. 14, 2017), as collecting cases that have approved settlements "where the claims rate was

less than one percent"). More importantly, Objectors' preference for in-app notice (as opposed to email notice) ignores the vintage of this case and the large numbers of class member who no longer have Facebook accounts; those Class Members cannot be reached by in-app notice and email is actually superior. Objectors also ignore the robust media notice program that augmented the direct notice program.

**4.** ***Motion for Fees***: Plaintiffs request $26.1 million in fees, or 29% of the common fund, a modest upward departure from the 25% benchmark; instead, Objectors propose 20%, or $18 million, which is closer to a 2X multiplier when one calculates the lodestar cross-check, which they say is more appropriate. ECF 265 at 16. But Objectors start their analysis by calling this a "megafund" case, which it is not (that term is typically reserved for much larger settlements, and never those below $100 million). Objectors also fail to explain why a lower multiplier is more appropriate, and completely ignore the unusually long commitment Class Counsel made to this case and the factors, all of which are satisfied here, that Ninth Circuit courts have found warrant an upward adjustment from the benchmark. Even if a 3X multiplier is normally considered high, that only begins, and certainly does not end, the conversation given the specifics of ***this case***. Fee awards, like settlements, must be evaluated for reasonableness on their own merits, in light of the facts and circumstances of the particular case. For example, the Hon. Beth Freeman expressed concerns about requests for "extreme" multipliers last year at a class action law forum, but she offered that they are appropriate when the settlement—like this one—changes the law. Dorothy Atkins, *Footnotes, Eye-Popping Fee Bids Among Judges' "Pet Peeves,"* Law360 (April 22, 2021) ("Certainly enormous multipliers can be justified when the settlement moves the law along"). Objectors' other objections to Plaintiffs' fee request mirror those made by Mr. Isaacson and are addressed below. In short, fees must be reasonable and here the 29% request is eminently reasonable in light of all the facts and circumstances.

**H.    Rachel Banks Kupcho, Sarah Grabert and Maximillian Klein (ECF 267)**

Objectors Kupcho, Grabert and Klein (the "*Klein* Objectors") are lead plaintiffs in an unrelated antitrust case against Facebook's parent company, pending in this District. *See Klein, et al. v. Meta Platforms, Inc.*, 3:20-cv-8570-JD (N.D. Cal.). They are represented by respected and

well-known outside counsel and are not repeat objectors. They make no objections to the settlement and do not oppose Plaintiffs' request for fees, expenses or incentive awards. Instead, they request that the Court modify the release in the settlement agreement to specifically exclude claims in their case.

The requested relief is unnecessary and should be denied. This concern is conjectural as nothing in the release purports to affect any other pending case. The scope of the release in this case relates only to the "alleged collection, storage or internal use by Facebook of data related to browsing history (such as IP address, Uniform Resource Locator (URL) referrer header information, and search terms) obtained from cookies stored on devices of Facebook Users in the United States who visited Facebook websites that displayed the Facebook Like button" from April 2010 through September 2011. ECF 233-1 at 9–10. In other words, the only claims that could possibly be released are those that were brought or could have been brought *based on these facts*. And there is nothing about these facts that could possibly give rise to antitrust claims in 2010 or 2011.

The *Klein* Plaintiffs effectively admit this very point. Plaintiffs in the case at bar filed their First Amended Complaint in 2012 based solely on public information and testing by experts who also relied only on public information; their Second Amended Complaint was then filed in 2015, and their Third Amended Complaint in 2017, both based on the same fact pattern as the FAC. The *Klein* Plaintiffs, in contrast, filed their consolidated consumer class action complaint in 2021, alleging that consumers could not have discovered the existence of anticompetitive facts regarding Facebook until *March 17, 2018. Klein* Complaint, ¶¶ 233–36, attached to *Klein* objection at ECF 267-4. Quinn Emanuel, co-counsel for the *Klein* Plaintiffs, were in fact aware of this *Facebook Internet Tracking* case prior to filing the *Klein* complaint, because they published an article in 2020 praising the Ninth Circuit ruling and asking if it was a "watershed" moment for privacy rights. *See* Oct. Joint Decl., Ex. 8. They could not have permissibly pled equitable tolling if they thought the complaint in an unrelated, high-profile, 11-year-old action included facts that could have given rise to antitrust claims.

Defendant Meta likewise also cannot argue that this settlement releases claims in the *Klein*

matter. The Northern District of California Procedural Guidance for Class Action Settlements required Meta to notify the Klein plaintiffs (if they thought otherwise) within one day of the motion for preliminary approval—i.e., by February 15, 2022:

> OVERLAPPING CASES—Within one day of filing of the preliminary approval motion, the defendants should serve a copy on counsel for any plaintiffs with pending litigation, whether at the trial court or appellate court level, whether active or stayed, asserting claims on a representative (e.g., class, collective, PAGA, etc.) basis that defendants believe may be released by virtue of the settlement.

Northern District of California Procedural Guidance for Class Action Settlements, Preliminary Approval ¶ 13. Even if Meta theoretically could have argued for application of the release to bar claims in *Klein*, the argument was waived long ago, and no basis exists to modify the release here.

## I.     Eric Alan Isaacson, Esq. (ECF 269)

Mr. Isaacson is proceeding *pro se*, but he is an attorney and a repeat objector. *See, e.g., Muransky v. Godiva Chocolatier, Inc*., 905 F.3d 1200 (11th Cir. 2018). Plaintiffs do not contest his standing to file his objection. Mr. Isaacson opposes the settlement, and the request for attorney fees, and the request for service awards. He does not, however, raise any objections to Plaintiffs' request for reimbursement of costs.

Mr. Isaacson first objects that portions of the complaint remain under seal. ECF 269 at 7. But as the record reflects, Plaintiffs opposed sealing, and lost; on appeal, Plaintiffs again opposed sealing, but the Ninth Circuit agreed with Judge Davila and kept the sealed portions sealed. *See In re Facebook Internet Tracking Litig*., 17-17486, Order Granting Motion to Seal dated June 4, 2018 (9th Cir. 2018). That decision is now binding on this Court, despite Mr. Isaacson's attempt to relitigate it, and he cites to no authority that would require (or even allow) a District Court to reject a settlement because the Ninth Circuit sealed portions of the complaint.

Mr. Isaacson also complains that the monetary relief component ($90 million) is too low, an argument addressed above. He also misrepresents Plaintiffs' argument regarding the standard of review. ECF 269 at 11. Plaintiffs do not request a "presumption" of fairness. Far from it. Plaintiffs affirmatively pointed out that no such presumption is proper and that this settlement should be approved under a heightened scrutiny standard. *See, e.g.,* ECF 254 at 8–9 ("Rigorous Judicial

Scrutiny and No Presumption of Fairness" argument heading, noting "rule that particularly searching judicial scrutiny is required before approval of any pre-certification settlement, like this one" and that "[n]o thumb on the settlement approval scale through any 'presumption of fairness' is desired or needed here" (citing cases). *See also* Transcript of Hearing on Motion for Preliminary Settlement Approval, March 31, 2022 at 29/1–30:1-3 (Plaintiffs' Counsel: "We understand, Your Honor, there's no presumption of fairness. *Briseno* says that…*Roes, 1-2 v. SFBSC Management.* We don't need it. There's a heightened…scrutiny in the precertification settlement analysis, *Bluetooth* and *Amchem*, we satisfy that.")

Next, Mr. Isaacson asks this Court to find that service awards are "illegal and inequitable." *Id*. at 12. But the Ninth Circuit's recent *Apple* decision completely now forecloses this argument, which in any event is eviscerated by decades of Ninth Circuit precedent. *See In re Apple Inc. Device Performance Litig.*, 2022 WL 4492078 at *11–13 (9th Cir. Sept. 28, 2022). Furthermore, the declarations from each Class Representative support their request as much if not more than those approved in *Apple*.

Next, Mr. Isaacson objects that Plaintiffs did not provide an analysis of maximum recoveries available under each claim and reasons for the deviation from that maximum in the settlement. ECF 269 at 11. This is also incorrect. First, this analysis is inherent in the first two *Churchill* settlement analysis factors. *See, e.g.,* ECF 254 at 12–15. *See, e.g., Sandoval Ortega v. Aho Enterprises, Inc.*, No. 19-cv-00404-DMR, 2021 WL 5584761, at *5 (N.D. Cal. Nov. 30, 2021) ("The Court will also consider the Northern District of California's Procedural Guidance for Class Action Settlement to the extent the guidelines are not encompassed within the *Churchill* and Rule 23(e)(2) factors."). Second, as the Court found in granting Preliminary Settlement Approval, Class Counsel was fully informed about the strengths and weaknesses of their case before reaching settlement on the proposal of the Mediator, Randall Wulff, whom this Court has described as "highly capable." *In Re Google Plus Profile Litig.*, 2021 WL 242887, at *3. Third, as even the Feldman and Jan objectors note, the maximum Wiretap Act recovery—assuming all the many remaining liability hurdles were cleared - would likely never pass Due Process muster, and their argument that $900 million in Wiretap Act damages is a reasonable figure (passing, for the moment,

the problem that Wiretap Act damages are (i) discretionary in the first instance and (ii) "all or nothing" in nature") means that a $90 million settlement, if all allocable to the Wiretap Act damages, is 10% of the recoverable damages. No court has said that such a recovery percentage is inadequate in a case in this posture. Fourth, Plaintiffs described just some of the major barriers to recovery of statutory damages under the Wiretap Act and CIPA. *See* ECF 254 at 12-14. In short, Plaintiffs very carefully analyzed the maximum recoveries potentially available under the "best day in court" scenario, then equally carefully examined the many hurdles to achieving such a result, before deciding to accept settlement at the Mediator's Proposal. Mr. Isaacson's notion that Plaintiffs failed to analyze their maximum potential recoveries and consider the factors compelling discounting those potential recoveries is simply wrong.

Mr. Isaacson also objects that the Plaintiffs did not provide an estimate of expected claims, and this is also incorrect. In their motion for preliminary approval, Plaintiffs expressly identified an estimated "take rate" under 5% consistent with FTC research, see ECF 232 at 28, and Angeion even provided updated claim administration cost estimates based on 1%, 3% or 5% take rates. ECF 247.

Mr. Isaacson also comments on the injunctive relief, but it is unclear if this is styled as an "objection." First, he says that Plaintiffs do not attempt to put a "value" on the injunction, and this is true, based on Ninth Circuit law that disfavors attempting to put monetary values on injunctions in common fund cases; instead, fees should be awarded based on the monetary component, with the extra injunctive relief being a "relevant circumstance" in determining whether to depart from the 25% benchmark. *See Boeing*, 327 F.3d at 974. Plaintiffs here complied with *Boeing*—they are not asking the Court to value the injunction and increase the size of the common fund, but rather are asking the Court to consider the injunction as a "relevant factor" when evaluating Plaintiffs' request for a percentage of the $90 million common fund.

Finally, Mr. Isaacson objects to the fee request, saying that departing from the 25% benchmark by 4% is "excessive." First, he cites *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010) for the proposition that Class Counsel should be denied any lodestar multiplier, but that case is a Section 1983 case where Congress specifically limited attorneys' fees, which is not

applicable here, a fact he only acknowledges later in the brief. Mr. Isaacson also ignores the ample authority in Plaintiffs' fee motion supporting the reasonableness of the requested multiplier here. Second, Mr. Isaacson objects that the three summary charts of attorney and paralegal time are insufficiently detailed. ECF 269 at 17. But they comport with (and exceed) the Procedural Guidance, which only requires summary hours reported by "categories" if supported by attorney declarations, exactly as was done here; Lead Counsel also had a single paralegal review time entries for all timekeepers and assign uniform task codes (ABA Litigation Task Code Set). Indeed, Plaintiffs voluntarily provided an additional summary chart breaking down the summary time still further by year (and for 2012, broken down still further between pre-consolidation and post-consolidation). These summary charts and the supporting declarations comply with the Procedural Guidance and the objection should be rejected.[4] Mr. Isaacson also objects to Plaintiffs' request for distribution of fees and expenses to counsel immediately following final approval, rather than waiting for objector appeals to be resolved. Leaving aside that counsel have worked without payment for eleven years (and have advanced all expenses out of pocket), delaying distribution creates an obvious incentive for objectors to file nuisance appeals and use the leverage in bad faith. If a fee award were to be reduced, Mr. Isaacson proffers no evidence that any Class Counsel would be unable to unwilling to return the reduced portion to the Fund.

## V.    CONCLUSION

Plaintiffs respectfully request that the Court reject the objections, grant final approval, and grant the motion for fess, expenses and service awards.

Dated: October 13, 2022                            Respectfully Submitted,

**DiCELLO LEVITT LLC**                             **GRYGIEL LAW LLC**

_____/s/ David Straite_____                        _____/s/ Stephen Grygiel_____
David A. Straite (admitted *pro hac vice*)         Stephen G. Grygiel (admitted *pro hac vice*)
485 Lexington Avenue, 10th Floor                   127 Coventry Place

---

[4] The Plaintiffs also provide a fourth summary chart, attached as Exhibit 2 to the October Joint Declaration, providing hourly summaries and billing rates for each timekeeper. This is the identical data reported previously by firm, by task code and by year, but this fourth chart further breaks down the summaries by timekeeper.

New York, New York 10017
Tel.: (646) 933-1000
Fax: (646) 494-9648
*dstraite@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Ten North Dearborn Street, 6th Floor
Chicago, Illinois 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*

Clinton, NY 13323
Tel.: (407) 505-9463
*stephengrygiel22@gmail.com*

**SIMMONS HANLY CONROY LLC**

_____/s/ Jay Barnes_____
Jason 'Jay' Barnes (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)**

I, David A. Straite, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of October, 2022, at Marbletown, New York.

/s/ David A. Straite
David A. Straite