UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE FACEBOOK INTERNET
TRACKING LITIGATION

Case No.   5:12-md-02314-EJD

**ORDER GRANTING MOTION FOR
FINAL APPROVAL OF CLASS
ACTION SETTLEMENT; GRANTING
MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND SERVICE AWARDS;
JUDGMENT**

Re: Dkt. Nos. 254, 256

The Court previously granted a motion for preliminary approval of the Class Action

Settlement between Plaintiffs and Defendant Meta Platforms, Inc., formerly Facebook, Inc.,

("Defendant") on March 31, 2022.  *See* Order Granting Mot. for Class Certification and Prelim.

Approval of Class Action Settlement, Dkt. No. 241.  As directed by the Court's preliminary approval

order, Plaintiffs filed their motion for attorneys' fees, costs, and service awards on August 23, 2022.

Dkt. No. 256.  Thereafter, Plaintiffs filed their motion for final settlement approval on August 23,

2022.  Dkt. No. 254.  The Court held a hearing and took arguments from the parties and from the

following objectors: plaintiffs in the *Klein* litigation appearing through counsel, Mr. Eric Alan

Isaacson appearing on his own behalf, and Ms. Sarah Feldman and Mr. Cameron Jan appearing

through counsel on October 27, 2022.  *See* Dkt. No. 282.

Having considered the motion briefing, the terms of the Settlement Agreement, the

objections and response thereto, the arguments of counsel, and the other matters on file in this

action, the Court **GRANTS** the motion for final approval.  The Court finds the settlement fair,

adequate, and reasonable.  The provisional appointments of the class representatives and class

United States District Court
Northern District of California

counsel are confirmed.

The motion for attorneys' fees, expenses, and service Awards is **GRANTED**. The Court **ORDERS** that class counsel shall be paid $26,100,000 in attorneys' fees, $393,048.87 in litigation costs, and class representatives Plaintiffs Perrin Davis, Dr. Brian Lentz, Michael Vickery and Cynthia Quinn shall each be paid a service award of $5,000 and State Court Plaintiff Ryan Ung, Chi Cheng, and Alice Rosen shall each be paid a service award of $3,000.

## I.    BACKGROUND

### A.    Procedural History

Over a decade ago, on September 30, 2011, Class Members Perrin Aikens Davis, Petersen Gross, Dr. Brian K. Lentz, Tommasina Iannuzzi, Tracy Sauro, Jennifer Sauro, and Lisa Sabato filed an action (the "*Davis* Action") in this district on behalf of themselves and all others similarly situated against Defendant. *See Davis et al v. Facebook, Inc.*, No. 5:11-cv-04834-EJD. On February 8, 2012, the United States Judicial Panel on Multidistrict Litigation transferred a number of similar cases filed in other districts throughout the country for coordinated or consolidated pretrial proceedings. *See* Transfer Order, Dkt. No. 1. Shortly thereafter, the Court consolidated the actions and Plaintiffs subsequently filed the Consolidated Amended Complaint on May 17, 2012, followed by the Corrected First Amended Consolidated Class Action Complaint ("First Complaint") on May 23, 2012. *See* Dkt. Nos. 33, 35. The complaint alleges that Defendant knowingly intercepted and tracked users' internet activity on pages that displayed a "Like" button using "cookies," or small text file that the server creates and sends to the browser, which stores it in a particular directory on the user's computer in violation of state and federal laws.

Plaintiffs' First Complaint alleged violations of: (1) the Wiretap Act, 18 U.S.C. § 2510, *et. seq.*; (2) the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et. seq.*; (3) the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (4) invasion of privacy; (5) intrusion upon seclusion; (6) conversion; (7) trespass to chattels; (8) unfair competition or Cal. Bus, and Prof. Code § 17200, *et. seq.*; (9) the California Computer Crime Law ("CCCL") or Cal. Penal Code § 502; (10) the Invasion

United States District Court
Northern District of California

of Privacy Act or Cal. Penal Code § 630; and (11) the Consumer Legal Remedies Act or Cal. Civ. Code § 1750.  Dkt. No. 35.  On November 17, 2017, the Court granted Defendant's motion to dismiss plaintiffs' third amended consolidated class action complaint and entered judgment against Plaintiffs.  *See* Dkt. Nos. 174, 175.  Plaintiffs appealed, and the Ninth Circuit affirmed the dismissal of Plaintiffs' claims for violation of the SCA, breach of contract, and implied covenant of good faith and fair dealing; it reversed and remanded Plaintiffs' remaining claims.  *See* Dkt. No. 190. Defendant petitioned for writ of certiorari which the United States Supreme Court denied.  *See* Dkt. No. 209.  The parties provided notice of settlement shortly thereafter.  *See* Dkt. No. 215.

The parties reached a settlement prior to class certification with the assistance of an experienced mediator, Mr. Randall Wulff.  *See* Pl.'s Not. of Mot. & Mot. for Final Approval of Class Action Settlement with Supp. Mem. & Points of Auths., Dkt. No. 254.  Section 2.1 of the Settlement Agreement defines the class as:

> All persons who, between April 22, 2010 and September 26, 2011, inclusive, were Facebook Users in the United States that visited nonFacebook websites that displayed the Facebook Like button.

("the Settlement Class").  *See* Settlement Agreement ("Agreement"), Dkt. No. 233-1 §§ 2.1(a), 2.1(b)-(f) (defining those who are excluded from the class definition).  In its preliminary approval order, the Court conditionally certified the Settlement Class and provisionally appointed David A. Straite of DiCello Levitt Gutzler LLC and Stephen G. Grygiel of Grygiel Law LLC as Class Counsel; Plaintiffs Perrin Davis, Dr. Brian Lentz, Michael Vickery, and Cynthia Quinn (collectively, "Plaintiffs") and Ryan Ung, Chi Cheng, and Alice Rosen (collectively, "State Court Plaintiffs") as class representatives; and Angeion Group as the class administrator.[1]  *See* Dkt. No. 241.

**B.      Terms of the Settlement Agreement**

Under the terms of the Settlement Agreement, Defendant will pay $90,000,000 into a common settlement fund and sequester and expunge all improperly collected data without admitting

---

[1] The Settlement Agreement and Court Order also appoints Jay Barnes of Simmons Hanly Conroy LLC as Chair of the Plaintiffs' Counsel Executive Committee.  Lead Counsel and Mr. Barnes together are referred to herein as "Class Counsel."

liability.  Dkt. No. 254.  This amount includes attorneys' fees and costs, the cost of class notice and settlement administration, and the class representatives' service awards.

### 1.    Attorneys' Fees and Costs

Under the Settlement Agreement, Class Counsel agreed to seek up to $26,100,000 in attorneys' fees exclusive of hours for State Court Counsel, which would be paid out of any award approved by the court, and no more than $393,048.87 in litigation costs inclusive of costs incurred in the parallel action in the Santa Clara Superior Court.[2]  Class Counsel represents that "State Court Counsel will not be making a separate fee or expense application here nor in the state court proceeding."  Dkt. No. 256 at 18.  The common settlement fund also includes a provision for $2,353,535.26 in settlement administration costs.  Weisbrot Fourth Decl. Dkt. No. 281 ¶ 7.  The Claims Administrator attests that Plaintiffs have incurred $1,655,782.54 in settlement administration costs and projects that it will incur an additional $697,752.72 in settlement costs.  *Id.* at ¶¶ 5-6.  In addition, service awards of $5,000 each will be paid to Plaintiffs Davis, Lentz, Vickery, and Quinn, and up to $3,000 each will be paid to the three State Court Plaintiffs Ung, Cheng, and Rosen in exchange for a general release of all claims against Defendant.  Mot. for Attorneys' Fees & Costs, Dkt. No. 256 at 23.

### 2.    Class Relief

After deductions from the common fund for fees, costs, and service awards, approximately $61,124,415.87 will remain to be distributed among the participating Class Members.  Weisbrot Fourth Decl. ¶ 7.  Class members will be paid an equal pro rata share of the Net Settlement Fund.  Dkt. No. 256 at 8.  Dividing this amount across the 1,558,805 valid claims submitted by participating Class Members yields an average recovery of approximately $39.21 per Class Member.  Weisbrot Fourth Decl. ¶ 7.  The Agreement provides that no amount will revert to Defendant.  In addition, the Agreement provides for injunctive relief where Facebook will sequester and delete all data that was wrongfully collected during the Class Period.  Dkt. No. 254.

---

[2] *Ung, et al. v. Facebook, Inc.,* Case No. 2012-1-CV-217244.

Case No.: 5:12-md-02314-EJD
ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;
GRANTING MOT. FOR ATTORNEYS' FEES, EXPENSES, & SERV. AWARDS; J.

United States District Court
Northern District of California

### 3. Unclaimed Payments

Pursuant to the Settlement Agreement, when checks mailed to participating Class Members are not redeemed or deposited within ninety (90) days, that Settlement Class Member waives and releases their claim for payment.  Dkt. No. 233-1 § 4.5.  Any unclaimed money in the Settlement Fund "(less any additional Administrative Costs) shall be distributed on an equal basis to each Authorized Claimant who received a Settlement Payment that was electronically processed or a check which was negotiated."  *Id.* at § 4.7.  At no point will any funds revert to Defendant or be paid to a *cy pres* recipient; rather, the Agreement provides that:

> To the extent that any second distribution is not administratively and economically feasible, as determined by the Settlement Administrator, or funds remain in the Net Settlement Fund for an additional one hundred (100) days after the second distribution, the Parties shall confer and present a proposal for treatment of the remaining funds to the Court.

*Id.* at § 4.8.  In exchange for the settlement awards, Class Members will release claims against Defendant as set forth in the Settlement Agreement at Section 9.

### C. Class Notice and Claims Administration

The Settlement Agreement is being administered by Angeion Group, LLC ("Angeion").  Following the Court's preliminary approval and conditional certification of the settlement, Angeion provided direct notice via email to all reasonably identifiable Settlement Class Members.  The "Notice Plan" includes a media campaign that uses "state-of-the-art targeted internet notice, social media notice, and a paid search campaign."  Dkt. No. 233-1, Ex. 1B ¶ 12.

The Class Administrator established a settlement website (the "Settlement Website") at www.fbinternettrackingsettlement.com, a dedicated email address to field questions at info@fbinternettrackingsettlement.com.  Weisbrot First Decl. Dkt. No. 255-1 ¶¶ 15-19.  The Settlement Website includes the settlement notices, the procedures for Class Members to submit claims or exclude themselves, a contact information page that includes address and telephone numbers for the claim administrator and the parties, the Settlement Agreement, the preliminary approval order, claim form, and opt-out form.  In addition, the motion for final approval and the application for attorneys' fees, costs, and service awards were uploaded to the website after they

were filed.  The Class Administrator also operated a toll-free number for Class Member inquiries.

Class members were given until September 12, 2022, to object to or exclude themselves from the Settlement Agreement.  Out of 1,558,805 total Class Members who submitted valid claims 1,374 persons filed timely requests to opt out of the Settlement Class.

A total of 2,054,346 claims were received by the administrator, of which 1,558,805 were accepted as valid.  Weisbrot Fourth Decl. Dkt. No. 281-1 ¶ 4.

## II.     FINAL APPROVAL OF SETTLEMENT

### A.     Legal Standard

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification.  Fed. R. Civ. P. 23(e)(2).  In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class.  *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1027 *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of Class Members to the proposed settlement.  *Id.* at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification also "require a higher standard of fairness."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011).

Case No.: 5:12-md-02314-EJD
ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOT. FOR ATTORNEYS' FEES, EXPENSES, & SERV. AWARDS; J.

### B.   Analysis

#### 1.   *The Settlement Class Meets the Prerequisites for Certification*

As the Court found in its order granting preliminary approval and conditional certification of the settlement class herein, the prerequisites of Rule 23 have been satisfied for purposes of certification of the Settlement Class, as discussed in more detail below. *See* Dkt. No. 241.

Likewise, the *Churchill* factors are satisfied. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). This case was hard-fought. The parties engaged in both discovery and substantive motion practice (three rounds of motions to dismiss), which ultimately disposed of Plaintiffs' claims. Plaintiffs successfully appealed to the Ninth Circuit and developed data privacy precedent in the process. Defendant went to great lengths to shield itself from Plaintiffs' claims and subsequently petitioned the Supreme Court for writ of certiorari, which was denied. While Plaintiffs believed in the strength of their case, Class Counsel recognized the substantial risk and cost in continued litigation, including novel and uncertain damage theories that may likely require a "battle of experts" to determine, for example, the value of the data and the extent of any damages calibrated to the Defendant's use of the data. Dkt. No. 254 at 12–15. Counsel also pointed to other considerations, such as obtaining class certification and "[a] fourth Motion to Dismiss, discovery, litigation class certification, summary judgment, trial and appeals would have consumed many more years, involving tremendous time and expense of the parties and the Court." *Id.* at 14.

Only after the Supreme Court denied Defendant's petition—almost eleven years after this action was initiated—did the parties agree to mediate. The parties negotiated at arms-length; they spent three days in mediation and six months in informal settlement discussions. This settlement fund constituted the seventh largest monetary settlement of its kind for data privacy cases at the time of settlement. Most significantly, however, the Settlement Agreement provides injunctive relief whereby Defendant must expunge the data at issue to the benefit of all Class Members, regardless of whether they filed a claim, opted out, or objected to the Settlement.

#### 2.   *Adequacy of Notice*

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all

Case No.: 5:12-md-02314-EJD
ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOT. FOR ATTORNEYS' FEES, EXPENSES, & SERV. AWARDS; J.

class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).  Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law. Phillips *Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).  Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court found that the parties' proposed notice procedures provided the best notice practicable and reasonably calculated to apprise Class Members of the settlement and their rights to object or exclude themselves.  Dkt. No. 241.  Pursuant to those procedures, the Class Administrator provided direct email notice to all reasonably identifiable Settlement Class embers, combined with a media campaign that used targeted internet notice, social media notice, and a paid search campaign.  Weisbrot First Decl. Dkt. No. 255-1 ¶ 5.   Angeion established a settlement website (www.fbinternettrackingsettlement.com), a dedicated email address to field questions (info@fbinternettrackingsettlement.com.), and a toll-free hotline (1-844-665-0905) dedicated to the settlement.  *Id.* ¶¶ 15-19.

The first round of notice was sent to 114,078,891 Class Members' email addresses and 86,075,107 of those emails were successfully delivered.  *Id.* ¶ 9.  The media campaign notice ran for four weeks and created 377,909,804 impressions.  *Id.* ¶ 11.  At the hearing, Mr. Weisbrot (the CEO of Angeion) reported that the media campaign reached slightly over 80% of all adults in the U.S. who are 18 years of age or older in addition to the 99% of all Class Members who were reached

United States District Court
Northern District of California

directly.  *See also* Weisbrot First Decl. ¶ 25.   Angeion also employed a "claims stimulation package" which consisted of sponsored listings on two class action settlement websites, such as www.topclassactions.com and www.classaction.org, and utilized active listening on Twitter to monitor Twitter traffic for discussion of the settlement and to provide notice and answer questions on Twitter as appropriate.  *Id.* ¶ 12.  In addition, Angeion sent email reminder notices to the 86,075,105 Class Members who had successfully received the first notice, extended the paid search campaign, and utilized a banner advertisement campaign for a month.  Weisbrot Second Decl. ¶ 5.

The Court finds that Plaintiffs' notice meets all applicable requirements of due process and is particularly impressed with Plaintiffs' methodology and use of technology to reach as many Class Members as possible.  Based upon the foregoing, the Court finds that the Settlement Class has been provided adequate notice.

### 3.    The Settlement Is Fair And Reasonable

As the Court previously found in its order granting preliminary approval, the *Hanlon* factors indicate the settlement here is fair and reasonable and treats Class Members equitably relative to one another.  Dkt. No. 241.

The reaction of the class was for the most part positive; there were very few objectors and opt-outs relative to the size of the Settlement Class.  There were a total of 9 objectors and 1,374 opt-outs as of the September 12, 2022 deadline.  These objections and opt-outs constitute a small fraction of the approximately 1,558,805 total Class Members who submitted valid claims by September 22, 2022.  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

In its preliminary approval order, the Court approved the proposed plan of allocation.  Dkt.

United States District Court
Northern District of California

No. 241.  That plan is straightforward; all Settlement Class members are entitled to equal cash payment, and payments will be based on final claims rates and the size of the Settlement Fund less fees and expenses.  *Id.* at 17.  The Court finds the plan of allocation to be fair and reasonable and to treat Class Members equitably and therefore approves the plan of allocation.

### 4.    *Objections*

The Court received written objections from nine (9) objectors in total, eight (8) of which were submitted by or on behalf of the following individuals: (1) Martin Suroor Corrado; (2) Michael E. Colley, (3) Edward W. Orr, (4) Eleni Gugliotta, (5) Austin Williams, (6) Sarah Feldman, (7) Cameron Jan, and (8) Eric Alan Isaacson.[3]  *See* Dkt. Nos. 234, 235, 248, 249, 251, 257, 262, 263, 265, 267, 269.  All eight of these objectors oppose the final approval of the settlement.  In addition, the Court received a ninth (9) objection from Class Members (the "Klein Objectors") in *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-08570-JD (N.D. Cal.) currently pending in the Northern District of California before Judge Donato.  Dkt. No. 267.  As discussed more below, the Klein Objectors do not oppose the fee request, and their opposition to the settlement is limited to the release of claims; they specifically seek clarification and assurance that the release language of the Settlement Agreement does not affect their antitrust litigation.  *Id.*

Finally, no objector opposed Plaintiffs' request for reimbursement of litigation expenses nor the allocation plan.  The Court has considered all objections and overrules them for the reasons stated on the record at oral argument and as further explained below.  The Court addresses each objector's arguments in turn.[4]

---

[3] The docket also indicates that Ms. Anne Barschall filed a letter with the Court.  *See* Dkt. No. 261.  At the hearing Class Counsel clarified that Ms. Barschall did not object to either motion, and that her inquiry regarding alternative methods to file her claim has since been resolved.  *See* Dkt. No. 273 at 6.

[4] The Court has reviewed and considered the objections from Mr. Corrado, Mr. Colley, and Mr. Orr.  Dkt. Nos. 234, 235, 248, 249, 251, and 263.  The Court finds that these objections raise issues that are not relevant to the scope of the Settlement nor the motions before the Court, and therefore overrules them.

Case No.: 5:12-md-02314-EJD
ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOT. FOR ATTORNEYS' FEES, EXPENSES, & SERV. AWARDS; J.

United States District Court
Northern District of California

### a.      Objector Gugliotta

Objector Ms. Eleni Gugliotta through her counsel objects to approval of the settlement on the grounds that it is not fair, reasonable, nor adequate.  Dkt. No. 257.  Ms. Gugliotta asserts that the settlement amount is too low compared to Defendant's yearly earnings and to other class action settlements which have yielded larger settlement amounts.  *Id.* at 2–4.  Ms. Gugliotta also contends that Class Counsel's notice is deficient because it failed to disclose the class size and it imposed an onerous amount of public disclosure of personal information to state an objection.  *Id.* at 4.  As to the former objection, Class Counsel responds that these metrics are not relevant to gauge reasonableness, but even so, Ms. Gugliotta relies on global current figures to make her comparison rather than using data limited to the U.S. and relevant to the class period time frame ending in September 2011.  Dkt. No. 273.

Class Counsel contend that the settlement amount is reasonable because it is one of the top ten data privacy class action settlements ever and it is a "disgorge[ment] of any unjust enrichment earned on the data."  Dkt. No. 254 at 3.  In response to the latter objection, Counsel notes that the Class was in fact informed that there are approximately 124 million Class Members in Plaintiffs' motions—which would permit a Class Member to calculate what monetary and injunctive relief they are accepting to release the claims—and contends that the disclosure of basic information in objections is to reduce risk of fraud.  *Id.* at 4.

Ms. Gugliotta also objects to the signature requirement, contending that an objector represented by counsel should not be required to sign the objection because it is logistically burdensome.[5]  *Id.* at 7.  The Court finds this argument unpersuasive.  Accordingly, the Court overrules Ms. Gugliotta's objections, finding that the objection disclosure requirements are not so burdensome as to discourage objections; the settlement amount is fair, reasonable, and adequate; the

---

[5] Ms. Gugliotta also objects on the grounds that the Agreement does not identify a *cy pres* recipient and to the settlement being a "claims made" settlement.  Dkt. No. 257 at 2, 5.  Class Counsel clarifies that this is a common fund settlement, not a claims-made-settlement.  Dkt. No. 273 at 5.  Moreover, it is true that the Agreement does not identify a *cy pres* recipient because it provides a different method for handling unclaimed funds as discussed in *supra* Section B(2).

United States District Court
Northern District of California

1    notice provided was not deficient; and the objection signature requirement is not logistically

2    burdensome.

3                              b.      Objector Williams

4            Pro se Objector Austin Williams filed an objection contesting the settlement amount for

5    providing inadequate compensation to victims.  Dkt. No. 262.  Mr. Williams expressed his concern

6    that the settlement will not deter Defendant from unlawfully collecting and using user data in the

7    future because the settlement is such a small fraction of Facebook's annual revenue of $1.97 billion

8    and $3.7 billion in 2010 and 2011 respectively.  *Id.* at 1.  In reference to the injunctive relief, Mr.

9    Williams also expressed his doubt that the data could ever be fully deleted from existence despite

10   Defendant's promise to expunge the data pursuant to the Agreement.  *Id.* at 2.

11           Class Counsel responds that, like Ms. Gugliotta, Mr. Williams relies on Facebook's global

12   revenue during the years at issue, rather than limiting it to the United States, and that he fails to

13   explain why gross revenues rather than net profits should be used in this case "where the Ninth

14   Circuit used an unjust enrichment measure of damages, which is measured by net profits."  Dkt. No.

15   273 at 7.  Regarding Mr. Williams' deletion of data concern, Class Counsel notes that Defendant

16   provided a sworn declaration stating that it will sequester and delete the data and there is no reason

17   to assume that Defendant will defraud the Court.  Dkt. No. 262 at 2.

18           Mr. Williams also objects to approval of the settlement on the grounds that either further

19   discovery or trial could have uncovered additional wrongdoing.  Dkt. No. 262 at 2.  The Court

20   acknowledges Mr. Williams' concerns but is not persuaded by speculation, particularly where

21   substantial and exhaustive discovery has already occurred.  For the foregoing reasons, the Court

22   overrules Mr. Williams' objection.

23                              c.      Objectors Feldman and Jan

24           Objectors Sarah Feldman and Cameron Jan jointly object to approval of the settlement and

25   the requested fees and expenses by and through their counsel.[6]  Dkt. No. 265.  First, Feldman and

26

27   [6] Feldman and Jan oppose the settlement agreement for two other reasons.  First, they oppose
28   ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;
     GRANTING MOT. FOR ATTORNEYS' FEES, EXPENSES, & SERV. AWARDS; J.

United States District Court
Northern District of California

Jan oppose the settlement fund as not fair, reasonable, nor adequate because the settlement amount is well below the recoverable statutory damages.  They contend that the settlement amount is not justifiable compared to the potentially recoverable $1.24 trillion in statutory damages according to their calculations, which they obtained by multiplying the $10,000 minimum statutory damages recoverable per Class Member by the 124 million Class Members.  *Id.* at 10–11.  Feldman and Jan assert that Plaintiffs were required to provide a calculation of the potential class recovery if Plaintiffs had fully prevailed on each of their claims and a justification of any such discount.  *Id.*

Class Counsel responds that the real measure of damages is closer to $900 million in consideration of the Supreme Court's dicta in *State Farm*, reasoning that while there is no rigid benchmark, statutory damages would likely be capped at a multiplier of ten.  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 410, 424–26 (2003) ("[F]ew awards exceeding a single-digit ratio between punitive and compensatory damages will satisfy due process."); Dkt. No. 273 at 9.  Feldman and Jan acknowledge that a trillion-dollar recovery is unlikely and that Class Members could reasonably expect recovery of up to $900 million if the Court were to regard statutory damages as punitive damages but nonetheless assert that the settlement amount is indefensible.  Plaintiffs argue that settlement is reasonable because it is a complete disgorgement of all net profits earned on the allegedly improperly collected data.  Dkt. Nos. 256 at 8.  By Class Counsel's

---

service awards to non-Class member State Court Plaintiffs Chi Cheng and Alice Rosen because they allegedly "disavow[ed] class membership" since they were not Facebook users during the Class Period.  Dkt. No. 265 at 20.  Class Counsel responds that Objectors Feldman and Jan misread the complaint, as Cheng and Rosen pled that, at the time of filing the complaint in state court, they were nonFacebook users—not that they did not have Facebook accounts during the relevant class period from April 22, 2010 to September 26, 2011.  State Court Plaintiffs Cheng and Rosen are participants in this settlement based on their surrender of related claims in the state action.  Dkt. No. 271 at 8–9.

Second, Feldman and Jan oppose the settlement for failing to comply with the Court's Procedural Guidance for Class Action Settlements which requires any explanation as to any differences between the claims to be released and the claims in the "operative complaint."  Dkt. No. 265 at 10.  Feldmand and Jan take issue with what constitutes the "operative complaint" here because, after two rounds of motion to dismiss, only Plaintiffs' breach of contract and breach of the covenant of good faith and fair dealing remained in the TAC.  *See* Third Amended Complaint ("TAC"), Dkt. No. 157.  However, the operative claims here are those identified by the Ninth Circuit on appeal.

Case No.: 5:12-md-02314-EJD
ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOT. FOR ATTORNEYS' FEES, EXPENSES, & SERV. AWARDS; J.

United States District Court
Northern District of California

1  calculations, the settlement fund is 10% of the potentially recoverable statutory damages; Feldman

2  and Jan do not explain why 10% recovery plus injunctive relief is unfair under these circumstances.

3  Dkt. No. 273 at 9.

4      Objectors Feldman and Jan also oppose the notice plan and contend that the low percentage

5  of claims submitted by Class Members is, in part, due to Plaintiffs' failure to provide Class Members

6  with the best notice practicable.  Dkt. No. 265 at 14.  At the hearing, Feldman and Jan's counsel

7  contended that Plaintiffs should have utilized social media to effect notice.  In their opinion, notice

8  should have been provided via Facebook Messenger rather than through email.  Class counsel

9  responds that the take rate "is approaching 2%" which is a satisfactory claims rate for class sizes in

10 the millions.  Dkt. No. 273 at 9 (citing *In re TikTok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d

11 1076, 1090 n.6 (N.D. Ill. Sept. 30, 2021) ("[a]ccording to the plaintiff's expert in *In re Facebook*, the

12 average claims rate for classes above 2.7 million class members is less than 1.5%."); *Pollard v.*

13 *Remington Arms Co.*, LLC, 320 F.R.D. 198, 214–15 (W.D. Mo. Mar. 14, 2017) (collecting cases that

14 have approved settlements "where the claims rate was less than one percent").  During the hearing

15 Mr. Weisbrot responded that Plaintiffs did in fact use social media (Twitter) to effect notice.  *See*

16 *also* Dkt. No. 255-1.  Moreover, Mr. Weisbrot considered the plan very successful, as it reached

17 99% of Class Members directly and reached approximately 80% of *all* adults 18 years or older in the

18 United States. (emphasis added).

19     For these reasons and the reasons discussed above, the Court finds the notice plan to be

20 adequate.

21                 d.     Objector Isaacson

22     Pro se Objector Eric Allan Isaacson, who is an attorney and a member of the bar of this

23 Court, objects to the settlement, the requested attorneys' fees, and the service awards.  Dkt. No.

24 269 at 7.  At the outset Mr. Isaacson objects to the filing of the complaints under seal (with

25 publicly available redacted versions) as improperly depriving class members of information

26 needed to evaluate the case.  However, as Class Counsel points out, the Ninth Circuit affirmed the

27 Case No.: 5:12-md-02314-EJD

28 ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;
GRANTING MOT. FOR ATTORNEYS' FEES, EXPENSES, & SERV. AWARDS; J.

1    sealing and the Court cannot now relitigate this issue.  Dkt. No. 173 at 12.

2           Next, Mr. Isaacson objects on the grounds that monetary relief is too low because,

3    according to his calculations, the settlement amount would yield approximately fifty cents per

4    class member after deducting all fees and expenses.  Dkt. No. 269 at 4.  To reach this conclusion

5    Mr. Isaacson divided the net settlement fund by all 124 million potential class members (rather

6    than by the number of Settlement Class Members who submitted a valid claim).  *Id.*  Like

7    Objectors Jan and Feldman, Mr. Isaacson focuses on the potential recoverable statutory damages

8    under the Wiretap Act, finding the settlement fund lacking relative to these damages.  *Id.* at 4–5.

9    Class Counsel projected that Settlement Class Members would receive approximately $40 per

10   person after factoring in the number of claims received and those still anticipated to be received.

11   Dkt. No. 256 at 9.  In terms of the potential statutory damages, Class Counsel reiterates that:

> [T]he maximum Wiretap Act recovery[,] assuming all the many
> remaining liability hurdles were cleared—would likely never pass
> Due Process muster, and their argument that $900 million in Wiretap
> Act damages is a reasonable figure (passing, for the moment, the
> problem that Wiretap Act damages are (i) discretionary in the first
> instance and (ii) "all or nothing" in nature) means that a $90 million
> settlement, if all allocable to the Wiretap Act damages, is 10% of the
> recoverable damages.

16   Dkt. No. 273 at 13–14.  Class Counsel attests to having analyzed maximum recoveries in the "best

17   day in court" scenario and weighing it against the barriers to achieving such a result before

18   accepting settlement.  *Id.*; *see* Dkt. No. 254 at 12–14 (describing factual and legal obstacles in

19   litigating).

20          Next, Mr. Isaacson argues that Plaintiffs failed to provide information required by the

21   Court's Procedural Guidance for Class Action Settlements ¶ 1)e in failing to provide a calculation

22   of the potential class recovery if plaintiffs had fully prevailed on each of their claims and an

23   explanation as to why the settlement amount differs.  Dkt. No. 269 at 5.  In addition, he contends

24   that Counsel did not provide "'an estimate of the number and/or percentage of class members who

25   are expected to submit a claim… the identity of the examples used for the estimate, and the reason

26   for the selection of those examples.'"  *Id.* (quoting Procedural Guidance ¶1)g).  Class Counsel

United States District Court
Northern District of California

1  explains that they provided this information in their motion for preliminary approval, which

2  identified an estimated "take rate" under 5% consistent with FTC research, and in Angeion's

3  declaration, which provided updated claim administration cost estimates based on 1%, 3% or 5%

4  take rates.  Dkt. No. 254 at 14.

5  Finally, Mr. Isaacson takes issue with the injunctive relief insofar as Plaintiffs have stated

6  that "Defendant will delete the sequestered Settlement Class Data from Defendant's systems *to the*

7  *extent not already deleted*."[7]  Dkt. No. 269 at 5–6 (italicized for emphasis).  Mr. Isaacson

8  questions the meaning of this phrase and whether such data has already been deleted before

9  settlement, in which case he believes that the injunctive relief would be of little value to Class

10 Members.  *Id.*  At the hearing, Counsel clarified that regardless of whether Defendant had deleted

11 some or all (though unlikely) of the allegedly improperly collected data, Defendant was not

12 required to do so before it was imposed by the parties' settlement.  The purpose of the injunctive

13 relief was to ensure that the data would be completely expunged.

14 Accordingly, the Court overrules Mr. Isaacson's objections.

15                    e.    The *Klein* Objectors

16 Kupcho, Grabert and Klein (the "Klein Objectors") are lead plaintiffs in an antitrust case

17 against Defendant's parent company presently before Judge Donato in *Klein v. Meta Platforms, Inc.*,

18 Case No. 20-cv-08570 (N.D. Cal.).[8]  Dkt. No. 267 at 1.  The Klein Objectors do not oppose the fees

19 award and only oppose the Settlement out of concern that the language of the release clause is too

20 broad and may release claims such as those asserted in their litigation.  The Settlement Agreement

21 defines "released claims" as:

22           *[A]ny and all claims, demands, actions, causes of action, lawsuits,*

---

[7] Plaintiffs did not assign a monetary value on the injunctive relief in accordance with Ninth
Circuit law, which disfavors attempting to assign monetary values on injunctions in common fund
cases.  Instead, in determining whether to depart from the 25% benchmark, Class Counsel asks
that the fees be awarded based on the monetary component but also in consideration of the
injunctive relief as a "relevant circumstance."  Dkt. No. 273 at 14; *See Boeing*, 327 F.3d at 974.

[8] The Klein Objectors are the proposed representatives of the "Consumer Class," and their counsel
are the court-appointed interim counsel for that class.

Case No.: 5:12-md-02314-EJD
ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;
GRANTING MOT. FOR ATTORNEYS' FEES, EXPENSES, & SERV. AWARDS; J.

> ***arbitrations, damages, or liabilities, whether known or unknown***, legal, equitable, or otherwise that were asserted ***or could have been asserted in the Actions***, regarding the alleged collection, storage, or internal use by Facebook of data related to browsing history (such as IP address, Uniform Resource Locator (URL), referrer header information, and search terms) obtained from cookies stored on the devices of Facebook Users in the United States who visited nonFacebook websites that displayed the Facebook Like button during the Settlement Class Period . . . .

Dkt. 233-1 at 9–10, § 1.33 (emphasis added).  They seek either (i) clarification that the Settlement is not intended to release or otherwise limit the *Klein* claims or (ii) insertion of language in the Settlement Agreement release clause that carves out their claims.  *Id.* at 11–12.  Class Counsel represents that the Settlement Agreement is not intended to release or otherwise limit the *Klein* claims and urges the Court to deny the Klein Objector's requested relief for a host of reasons, including Defendant's waiver of any argument that the release clause bars the *Klein* claims by failing to comply with the Procedural Guidance on overlapping cases.  *Id.* at 2, 10 n.5, 12 (citing to Northern District of California Procedural Guidance for Class Action Settlements, Preliminary Approval ¶ 13).  At the hearing, Defendant would not state on the record whether the release clause impacts the *Klein* litigation without having first reviewed the *Klein* pleadings.

The Court overrules this objection without determining whether the claims asserted in *Klein* are released by this Settlement Agreement.[9]

### 5.    *Certification Is Granted and the Settlement Is Approved*

After reviewing all of the required factors, the Court finds the Settlement Agreement to be fair, reasonable, and adequate, and certification of the Settlement Class as defined therein to be proper.  The Settlement Agreement specifies those are excluded from the Settlement Class.  Dkt. No. 233-1 §§ 1.41, 2.1(b)-(f).

---

[9] Because Defendant has not substantively responded to whether the *Klein* action would be released under the Settlement Agreement at the hearing, the Court declines to rule on any issues of preclusion in this instance.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 747 (9th Cir. 2006).

Case No.: 5:12-md-02314-EJD
ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOT. FOR ATTORNEYS' FEES, EXPENSES, & SERV. AWARDS; J.

United States District Court
Northern District of California

### III.   MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS

Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h).  Such fees must be found "fair, reasonable, and adequate" in order to be approved.  Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).  To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963.  "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise.  *Id.* at 964.

Class counsel requests an attorneys' fee award of $26,100,000.  Based on the declarations submitted by counsel, the attorneys' fees sought amount to approximately 29% of the percentage-of-the-fund.  Defendants do not oppose the fee request.

The Court analyzes an attorneys' fee request based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  The Ninth Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944–45 (citing *Vizcaino,* 290 F.3d at 1050–51.)

Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate.  *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate.  A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'").  Under the percentage-of-the-fund method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d

1301, 1311 (9th Cir. 1990)).  The benchmark should be adjusted when the percentage recovery

would be "either too small or too large in light of the hours devoted to the case or other relevant

factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.  When using the percentage-of-recovery

method, courts consider a number of factors, including whether class counsel " 'achieved

exceptional results for the class,' whether the case was risky for class counsel, whether counsel's

performance 'generated benefits beyond the cash settlement fund,' the market rate for the

particular field of law (in some circumstances), the burdens class counsel experienced while

litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled

on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir.

2015) (quoting *Vizcaino*, 290 F.3d at 1047-50. "[T]he most critical factor [in determining

appropriate attorney's fee awards] is the degree of success obtained." *Hensley v. Eckerhart*, 461

U.S. 424, 436 (1983).

Using the percentage-of-the-fund method, the Court finds the attorneys' fees sought to be

reasonable.  Here, the settlement value is $90,000,000 and Class Counsel requests $26,100,000 in

attorneys' fees, which equals 29%-of-the-fund.  The Court may adjust the benchmark " 'upward or

downward to account for any unusual circumstances involved in the case.' " *In re Google St. View

Elec. Commc'ns Litig.*, 21 F.4th 1102, 1120 (9th Cir. 2021) (quoting *Fischel v. Equitable Life

Assurance Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002)).  Class Counsel requests an upward

adjustment of 4% above the 25% benchmark because Counsel created "new law" after appealing

and arguing before the Ninth Circuit, and achieved an exceptional result for the Class in obtaining

both monetary and injunctive relief.[10]  Dkt. No. 256 at 22–23.  *Ontiveros v. Zamora*, 303 F.R.D.

356, 373 (E.D. Cal. Oct. 8, 2014) ("[N]ovelty of class counsel's legal arguments may constitute

'special circumstances' justifying a departure from the benchmark" and concluding such upward

departure was warranted (citing *Teitelbaum v. Sorenson*, 648 F.2d 1248, 1250 (9th Cir. 1981)).

---

[10] *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F. 3d 589, 608 (9th Cir. 2020).  As of the
date of filing motion for preliminary approval, Plaintiffs mentioned that the Ninth Circuit's ruling
had been cited more than 50 times in reported cases in the past 18 months.  Dkt. No. 232 at 3.

United States District Court
Northern District of California

1    The injunctive relief is particularly meaningful here because the deletion of the data at issue

2    benefits all Class Members, regardless of whether they filed a claim, opted out, or objected to the

3    Settlement.  The Court agrees therefore that both considerations warrant an upward adjustment

4    from the benchmark

5            The Court also considered a cross-check of the percentage-of-the-fund using the lodestar

6    method.  The lodestar figure for post-consolidation hours is 9,233.98 hours at $863.02 rate for a

7    total of $7,969,186.5.  *See* Dkt. No. 255-27.  Plaintiffs claim hourly rates that are commensurate

8    with their experience and with the legal market in this district, citing to a range for attorneys,

9    including associates, counsel, and partners across all firms as $300–$1,200 and paralegals at

10   $125–$375 an hour.  Dkt. No. 256 at 19.  On the basis of these reasonable hourly rates and

11   amounts, class counsel calculates the combined lodestar to be $7,969,186.5, which represents a

12   multiplier of 3.28 exclusive of any pre-consolidation time.  Dkt. No. 256 at 20.  The Court finds

13   that the hours claimed were reasonably incurred and that the rates charged are reasonable and

14   commensurate with those charged by attorneys with similar experience in the market.  The Court

15   also finds that Class Counsel represented their clients with skill and diligence for over ten years on

16   a contingent fee basis and obtained an excellent result for the class, taking into account the

17   possible outcomes and risks of proceeding trial.

18           **A.      Objections**

19           Objectors Gugliotta, Feldman, Jan, and Isaacson also opposed Plaintiffs' fee request in

20   addition to opposing final approval of settlement.

21           Objector Gugliotta opposes the attorneys' fees award because it is based on the gross

22   settlement fund rather than "on the value of the Net Settlement Proceeds or the amount of claims

23   filed and paid."  Dkt. No. 257 at 9.  Gugliotta further asserts that the fee award disproportionately

24   compensates Class Counsel despite what she considers inadequate benefits obtained for the class.

25   *Id.* at 8.  In response Class Counsel points out that Gugliotta does not offer any support for her

26   contention that the fee request should be tethered to the take-rate of the class.  The Court is

27

28   Case No.: 5:12-md-02314-EJD
     ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;
     GRANTING MOT. FOR ATTORNEYS' FEES, EXPENSES, & SERV. AWARDS; J.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    inclined to agree.  Counsel sufficiently demonstrated how their advocacy, which spanned 11 years,

2    warranted a 29% fee award after having successfully appealed the class's dismissed claims and

3    developed new law in data privacy.  For these reasons the Court overrules Gugliotta's objections.

4         Objectors Feldman and Jan challenge the $26.1 million in requested attorneys' fees (29%

5    of the fund, which is greater than a 3x lodestar multiplier) and instead propose a 20% fee which is

6    closer to a 2x lodestar multiplier, or $18 million.  Dkt. No. 265 at 10.  Class Counsel responds that

7    courts will find an upward adjustment of the 25% benchmark to be appropriate in certain

8    circumstances, particularly one that results in a change in the law, and that Defendants fail to

9    justify a fee below the benchmark in this case.  Dkt. No. 273 at 10.  Feldman and Jan also contend

10   that Plaintiffs lodestar crosscheck is insufficient because it provides only "summary numbers" in

11   support of their claimed lodestar.  Dkt. No. 265 at 11.  However, this is not true—each attorney

12   complied with the Northern District of California's Procedural Guidance for Class Action

13   Settlements by filing declarations inclusive of their rates, hours, and summaries of their roles and

14   time spent in the case.  Dkt. No. 255.  For these reasons the Court overrules Feldman and Jan's

15   objections.

16        Finally, Objector Mr. Isaacson opposed the request for attorneys' fees and costs as

17   excessive, particularly given what Mr. Isaacson perceives as poor results compared to potentially

18   recoverable damages.  Dkt No. 269 at 9.  Mr. Isaacson contends that the multiplier on Class

19   Counsel's lodestar (3.28) is far too high.  *Id.*   In response, Class Counsel refers back to their

20   motion brief where Counsel cites to a number of cases supporting the reasonableness of the

21   requested multiplier.  *See e.g.*, *Sheikh v. Tesla, Inc.*, No. 17-cv-02193-BLF, 2018 WL 5794532, at

22   *8 (N.D. Cal., Nov. 2, 2018); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Antitrust

23   Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783

24   (9th Cir. 2007); *In re Apple Inc. Device Performance Litig.*, 2021 WL 1022866, at *8.  Mr.

25   Isaacson also objects to the Settlement because it purportedly permits Class Counsel to be paid

26   before Class Members receive payment.  *Id.* at 12 (citing to *Hart v. BHH, LLC*, 334 F.R.D. 74, 77

27   Case No.: 5:12-md-02314-EJD

28   ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;
     GRANTING MOT. FOR ATTORNEYS' FEES, EXPENSES, & SERV. AWARDS; J.

United States District Court
Northern District of California

1   (S.D.N.Y. 2020)).  The Court declines to find the settlement unreasonable based on this argument.

2          Based on the foregoing, the Court finds an award of attorneys' fees in the amount of

3   $26,100,000 to be fair, reasonable, and adequate and approves Class Counsel's request.

4          **B.      Costs Award**

5          Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses.  Fed. R.

6   Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may

7   recover reasonable expenses that would typically be billed to paying clients in non-contingency

8   matters).  Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by

9   law or by the parties' agreement." Fed. R. Civ. P. 23(h).  Here, class counsel seeks reimbursement

10  for litigation expenses, and provides records documenting those expenses, in the amount of

11  $393,048.87.  None of the objectors oppose Class Counsel's requested costs.  Accordingly, the

12  Court finds this amount reasonable, fair, and adequate and approves Class Counsel's request for

13  litigation expenses.

14         **C.      Service Awards**

15         The district court must evaluate named plaintiff's requested service award (also referred to

16  as "incentive awards") using relevant factors including "the actions the plaintiff has taken to

17  protect the interests of the class, the degree to which the class has benefitted from those actions . . .

18  [and] the amount of time and effort the plaintiff expended in pursuing the litigation."  *Staton*, 327

19  F.3d at 977.  "Such awards are discretionary . . . and are intended to compensate class

20  representatives for work done on behalf of the class, to make up for financial or reputational risk

21  undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private

22  attorney general."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009).  The

23  Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards [and

24  service awards] to determine whether they destroy the adequacy of the class representatives."

25  *Radcliffe v. Experian Info. Sols.*, 715 F.3d 1157, 1163 (9th Cir. 2013).

26         Here, the Plaintiffs came forward to represent the data privacy interests of more than 124

27  Case No.: 5:12-md-02314-EJD

28  ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;
GRANTING MOT. FOR ATTORNEYS' FEES, EXPENSES, & SERV. AWARDS; J.

United States District Court
Northern District of California

million others for over a ten year period with very little personally to gain.  Plaintiff compiled documents, answered interrogatories in response to discovery requests, regularly corresponded with counsel telephonically and by email, and took the substantial risk of litigation which, at a minimum, involves a risk of losing and paying the other side's costs.  Because the laws are not self-enforcing, it is appropriate to incentivize those who come forward with little to gain and at personal risk and who work to achieve a settlement that confers substantial benefits on others— particularly when these individuals dedicate ten years to doing so.  The Court also considers "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment."  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  Here, the aggregate $29,000 sought for seven (7) Service Awards constitutes a very small fraction (0.0004%) of the $90 million Settlement Fund.  Dkt. No. at 256.

Objector Isaacson opposes the requested award for class representatives.  First, he objects to the service awards as "illegal and inequitable" in common fund cases, citing to *Trs. v. Greenough*, 105 U.S. 527, 537–38 (1882) and *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 122 (1885).  However, the Ninth Circuit squarely addressed this argument in *Apple*, where the objectors similarly asserted that such awards conflict with Supreme Court precedent.  *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785 (9th Cir. 2022).  The Ninth Circuit "previously considered this nineteenth century caselaw in the context of incentive awards and found nothing discordant," and concluded that service or incentive awards are permissible so long as they are reasonable.  *Id.*; *see also* Dkt. No. 273 at 13.

Mr. Isaacson ceded this point at the hearing but takes issue with the class representatives' declarations where at least two of the named plaintiffs indicate that they were "not even aware of the possibility of any Service Award" until after reviewing and approving of the Settlement Agreement.  Davis Decl., Dkt. No. 255-16 ¶ 17; *see also* Lentz Decl., Dkt. No. 255-19 ¶ 18.  Class Counsel responded that, as a matter of practice, they do not inform class representatives of service awards until *after* they have examined the Settlement Agreement in order to ensure that any award

United States District Court
Northern District of California

1   would not influence the class representatives' acceptance of the terms.  *See* Dkt. No. at 256 at 24.

2   Mr. Isaacson therefore opposes the awards on the grounds that they could not have incentivized

3   Plaintiffs Davis or Lentz since neither of them were aware of such awards at the time they agreed

4   to represent the class.  Dkt. No. 269 at 7.

5        In consideration of Objector Isaacson's point, the Court clarifies that in this case the

6   awards are best characterized as a "service" award rather than an "incentive" award.  This

7   characterization more appropriately captures the purpose of the award in this instance.  The class

8   representatives are being rewarded for their service to the class.  *In re Online DVD-Rental*

9   *Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) ("[Service or] incentive awards [] are intended

10  to compensate class representatives for work undertaken on behalf of a class.").  Moreover,

11  service or incentive awards may also serve to incentivize the participation of future lead plaintiffs.

12  The Court therefore overrules Mr. Isaacson's objection.

13       Accordingly, the Court approves the requested service award payment for all

14  aforementioned Named Plaintiffs.

15  **IV.   CONCLUSION**

16       Based upon the foregoing, the motion for final approval of class settlement is **GRANTED**.

17  The motion for attorneys' fees, costs, and service awards is **GRANTED** as follows: Class Counsel is

18  awarded $26,100,000 in attorneys' fees and $393,048.87 in litigation costs.

19       Plaintiffs Davis, Lentz, Vickery, and Quinn are granted a service award of $5,000 each, and

20  State Court Plaintiffs Ung, Cheng, and Rosen are granted a service award of $3,000 each.

21       Without affecting the finality of this order in any way, the Court retains jurisdiction of all

22  matters relating to the interpretation, administration, implementation, effectuation and enforcement

23  of this order and the Settlement.

24       **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that final judgment is

25  **ENTERED** in accordance with the terms of the Settlement, the Order Granting Preliminary

26  Approval of Class Action Settlement filed on March 31, 2022, and this order.  This document will

27
28

constitute a final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

As provided in the Settlement Agreement, the parties shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements within 21 days after the distribution of the settlement funds and payment of attorneys' fees.  The Court **SETS** a compliance deadline on **Friday, February 10, 2023** to verify timely filing of the post-distribution accounting.

**IT IS SO ORDERED.**

Dated:  November 10, 2022

EDWARD J. DAVILA
United States District Judge

Case No.: 5:12-md-02314-EJD
ORDER GRANTING MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;
GRANTING MOT. FOR ATTORNEYS' FEES, EXPENSES, & SERV. AWARDS; J.
25

United States District Court
Northern District of California